CODY R. LEJEUNE (CSB No. 249242)
cody@lejeunelawfirm.com
LEJEUNE LAW, P.C.
445 S. Figueroa St.
Suite 3100
Los Angeles, CA 90071
Telephone: (985) 713-4964

Attorneys for Plaintiff
CONOR WOULFE, an individual, and PETER
MICHAEL ROSZA, an individual

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONOR WOULFE, an individual, and PETER MICHAEL ROSZA, an individual, | CASE NO.:  2:22-cv-459 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | |
| v. | **DEMAND FOR JURY TRIAL** |
| UNIVERSAL CITY STUDIOS LLC, d.b.a., UNIVERSAL PICTURES, a California limited liability company; and DOES 1-20, inclusive, | |
| Defendant, | |

Plaintiffs Conor Woulfe and Peter Michael Rosza ("Plaintiffs") bring this class action complaint against Defendant Universal City Studios LLC, doing-business-as Universal Pictures ("Defendant"), individually and on behalf of all others similarly situated, and allege upon personal knowledge as to Plaintiffs' acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiffs' attorneys.

## NATURE OF THE ACTION

1.      This is a consumer protection class action arising out of Defendant's false, deceptive, and misleading advertising of the 2019 movie *Yesterday*.

2.      Defendant is an American film production and distribution company that advertises, sells, broadcasts, licenses, and distributes feature films, including a movie released in the year 2019 entitled *Yesterday*.

3.      Among other deceptions, Defendant's nationwide advertising and promotion of the movie *Yesterday* represents to prospective movie viewers that the world famous actress Ana De Armas has a substantial character role in the film.

4.      Defendant's movie *Yesterday*, however, fails to include any appearance of Ana De Armas whatsoever. Accordingly, Defendant's advertising and promotion of the movie *Yesterday* is false, misleading, and deceptive.

5.      Plaintiffs bring this action individually and on behalf of all other similarly situated consumers to halt the dissemination of Defendant's false, deceptive, and misleading representations, to correct the false, deceptive, and misleading perception Defendant's representations have created in the minds of consumers, and to obtain redress for those who have purchased, rented, licensed, or otherwise paid for attending showings of the movie *Yesterday*.

## PARTIES

6.     Plaintiff Peter Michael Rosza ("Plaintiff Rosza") is a forty-four year-old citizen of the State of California, and, at all times relevant to this action, resided in San Diego County, California.

7.     On or about October 31, 2021, Plaintiff Rosza watched Defendant's advertisement of the movie *Yesterday*, in the form of a movie trailer accessed and viewed using Amazon.com's internet movie streaming service. The movie trailer which Plaintiff Rosza viewed was false, misleading, and deceptive. Among other false representations, the trailer promoted Ana De Armas as an actress that would appear in the film. Plaintiff Rosza viewed the movie trailer at his home in San Diego County, California. Persuaded by the movie trailer to view the film *Yesterday* because of its false representations, Plaintiff Rosza rented the movie. Upon watching the rented movie, Plaintiff Rosza discovered that, among other deceptions, Ana De Armas does not appear in the film.

8.     Relying on the Defendant's false, deceptive, and misleading representations, Plaintiff Rosza purchased rights to view the movie *Yesterday* for approximately $3.99. By paying to view the falsely advertised movie, Plaintiff suffered injury-in-fact and lost money.

9.     Plaintiff Conor Woulfe ("Plaintiff Woulfe") is a thirty-eight year-old citizen of the State of Maryland, and, at all times relevant to this action, resided in Howard County, Maryland.

10.     On or about July 12, 2021, Plaintiff Woulfe watched Defendant's advertisement of the movie *Yesterday*, in the form of a movie trailer accessed and viewed using Amazon.com's internet movie streaming service. The movie trailer which Plaintiff Woulfe viewed was false, misleading, and deceptive. Among other false representations, the trailer promoted Ana De Armas as an actress that would appear in the film. Plaintiff

Woulfe viewed the movie trailer at his home in Howard County, Maryland. Persuaded by the movie trailer to view the film *Yesterday* because of its false representations, Plaintiff Woulfe rented the movie. Upon watching the rented movie, Plaintiff Woulfe discovered that, among other deceptions, Ana De Armas does not appear in the film.

11.  Relying on the Defendant's false, deceptive, and misleading representations, Plaintiff Woulfe purchased rights to view the movie *Yesterday* for approximately $3.99. By paying to view the falsely advertised movie, Plaintiff suffered injury-in-fact and lost money.

12.  But for Defendant's false and/or misleading representations and deceptions promoting the movie, Plaintiffs would not have paid to view the movie *Yesterday*.

13.  Defendant is a limited liability company with a principal place of business at 100 Universal City Plaza, Universal City, California 91608.

14.  Defendant developed and produced the movie *Yesterday* in California and marketed, advertised, screened, promoted, distributed, licensed, rented, and sold the movie to hundreds of thousands, if not millions, of consumers in California and Maryland. Likewise, and more specifically, Defendant's false, deceptive, and misleading advertisements were shown and distributed in California and Maryland.

## JURISDICTION AND VENUE

15.  The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) ("Class Action Fairness Act" or "CAFA") because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, and some of the members of the class are citizens of states different from Defendant, thus satisfying the minimal diversity requirement.

16.     This Court has personal jurisdiction over Defendant because Defendant conducts business in California. Defendant developed, produced, marketed, advertised, screened, promoted, distributed, licensed, rented, and sold the movie *Yesterday* in and from California, rendering exercise of jurisdiction by California courts permissible.

17.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district. Venue also is proper under 18 U.S.C. § 1965(a) because Defendant  transacts substantial business in this district.

## **FACTUAL ALLEGATIONS**

### **The Actress Ana De Armas**

18.     Ana De Armas (hereinafter Ms. De Armas) is a talented, successful, and famous actress, that has starred in such movies as *Blade Runner 2049*, *War Dogs*, and *Knives Out*.

19.     Demonstrating her demand in the film industry, Ms. De Armas was chosen to be a female lead in the movie *No Time to Die*, co-starring Daniel Craig. *No Time to Die* debuted on or about October 8, 2021 and is the latest film in the James Bond franchise. *No Time to Die* is an important movie for its studio because it is the last James Bond film expected to feature Actor Daniel Craig.

20.     Ms. De Armas was also recently selected to star in the upcoming film *Blonde*, playing the role of deceased movie star Marilyn Monroe. She is also set to star in *Deep Water*, co-starring her former boyfriend Ben Affleck (hereinafter Mr. Affleck).

21.     Ms. De Armas' 2015 movie *Knock Knock*, co-starring Keanu Reeves, was identified by Netflix as one of its most popular movies. Indeed, *Knock Knock* achieved the status of the "most-watched" movie on Netflix's streaming service during 2020.

22.     Ms. De Armas currently has approximately 5.3 million followers on Instagram.

23.     In 2020, Ms. De Armas was the Golden Globe Nominee for Best Actress in a Comedy or Musical for her performance in the movie *Knives Out*.

24.     Ms. De Armas is famous throughout America and the world because of her successful movie and other media appearances.

### *Yesterday* **and its Trailer**

25.     The movie *Yesterday* started filming in April 2018 and was released on May 4, 2019. *Yesterday* is a film about a failed musician Jack Malik, who hits his head during a black-out only to wake-up to discover that that the world's knowledge of The Beatles has been erased. Taking advantage of this opportunity, the protagonist Malik adopts The Beatles' songs as his own, quickly becoming world famous.

26.     Ms. De Armas was originally cast to co-star in the film *Yesterday* as a character named Roxanne. Accordingly, scenes featuring Ms. De Armas as the character Roxanne were shot for inclusion in the original version of the movie. In the original version of the movie, the character, Roxanne, was written as a known actress that meets the protagonist Malik during a late night talk show appearance.  During the talk show appearance, the host first suggests that Malik write a song about Roxanne. Immediately revising his song writing request, the talk show host subsequently tells Malik to write a song about "something." Malik – in reply – plays the The Beatles' song *Something* seated next to and gazing at Roxanne. As the scene appears in the movie trailer for *Yesterday*, a romantic attraction is immediately sparked between the two characters.  Roxanne, in the scene, appears charmed by Malik's perceived song writing talent and they ultimately embrace. The film's female lead Ellie, played by the relative unknown actress Lily James, witnesses the meeting on television from home. In the scene as it appears in the *Yesterday*

5

movie trailer, Ellie is visibly upset that she might lose Malik to Roxanne. Dialogue in the trailer also suggests that Ellie is concerned that Malik is distracted by his newfound fame and glamor of actress Roxanne. Ellie, herself, does not portray a famous or glamorous character in the film, but is simply Malik's longtime, hometown friend.

27.   According to the director Danny Boyle, Ms. De Armas' portrayal of Roxanne in the original film cut was "brilliant" and Ms. De Armas was "radiant" in the role. More specifically, according to the film's director:

> "When you watched [the scene with Ms. De Armas] alone, it was fantastic[.]"

> "[S]he was brilliant in it. I mean really radiant."

> "[I]t's some of our favorite scenes from the film[.]" (sic)

28.   Director Boyle expressed similar flattering views pertaining to character Jack Malik's response to the request to play "something" in the same scene featuring Ms. De Armas. According to Boyle:

> "Actually, we cut one of my favorite jokes from the film, which my son thought of. Because James Corden used to say, 'Why don't you write something right now? I hear you can write things really quickly, write something right now.' And so he wrote 'Something.' [Jack] actually sang the song 'Something,' and I was so delighted by that joke."

29.   The principal actors in the movie Yesterday were largely unknown before the film was released. For example, the actor which played protagonist Malik, Himesh Patel, had never acted or starred in a film prior to *Yesterday*. Similarly, the actress who played Ellie, Lily James, was a relatively unknown name to the casual movie watcher.

30.    Consequently, because none of the *Yesterday* film leads were famous, Defendant could not rely on their fame to promote the movie to entice viewership.

31.    In contrast to the film's lead actors, Ms. De Armas is and was a known movie star. Moreover, according to the director of the film, she was "radiant" and "brilliant" in the movie scenes originally shot for the film.

32.    Unable to rely on fame of the actors playing Jack Malik or Ellie to maximize ticket and movie sales and rentals, Defendant consequently used Ms. De Armas's fame, radiance and brilliance to promote the film by including her scenes in the movie trailers advertising *Yesterday*. Ms. De Armas, in contrast to the actors playing Jack Malik or Ellie, is famous and is a viewership draw by herself.  Moreover, the Ms. De Armas scene which Defendant included in the trailer was described by director Boyle as fantastic. Accordingly, the inclusion of such a fantastic scene would be expected to entice viewership and thereby boost movie sales and rentals.

33.    Although Defendant included the scenes with Ms. De Armas in the movie trailer advertisements, for the purposes of promoting *Yesterday* and enticing film sales and rentals, Ms. De Armas is not and was never in the publicly released version of the movie. Therefore, any consumer that purchased theater tickets or rented or purchased the film *Yesterday* online did not see Ms. De Armas in the film.

34.    Adding to its deceptiveness, the trailer for *Yesterday* also included the "something"-song-joke, which director Boyle described as one of his "favorites" and which he explained "delighted" him. In that scene, the character Malik plays The Beatles' song "Something" as a punchline to the comedic set-up of the scene. Notably the song "Something" is also demonstrably famous. From the Beatles' 1969 album *Abbey Road,* "Something" was written by George Harrison and topped the Billboard Hot 100 in the United States, as well as charts in Australia, Canada, New Zealand and West Germany. Still popular today, one upload of the song alone has achieved over 72 million views on

YouTube. Although in the movie trailer which advertises and promotes *Yesterday*, the scene with the "something"-song-joke, in which Malik plays The Beatles' song "Something", is not in the publicly released version of the film.

35.     Defendants' false representations that an actress, song, and other scene elements would appear in the film *Yesterday*, when they did not, collectively comprise a false, deceptive, and misleading movie trailer advertisement.

36.     Evincing Defendant's intent to deceive consumers (the term "consumers" including Plaintiffs and Class members), Defendant knows and has always known that Ms. De Armas is and was not in the publicly released film *Yesterday*.

37.     Also evincing Defendant's intent to deceive consumers, Defendant knows and has always known that the "something"-song-joke, in which Malik plays The Beatles' song "Something", is and was not in the publicly released film *Yesterday*.

38.     Despite knowing that Ms. De Armas was not in the released version of the movie *Yesterday*, Defendant has consistently promoted Ms. De Armas as a character starring in the film, by including her scenes in *Yesterday's* movie trailers. Indeed, Defendant continues to promote Ms. De Armas as appearing in the film more than two years after its initial release, in advertisements for movie sales and rentals. More specifically, the film *Yesterday* premiered on or about May 4, 2019, but movie trailers featured in January of 2022 still include the scenes with Ms. De Armas and the "something"-song joke. These movie trailers are viewable, prior to purchasing or renting the movie *Yesterday*, from electronic streaming services, including, but not limited to, Amazon (via Amazon Prime) and Google (via Google Play).  These same trailers were also used to advertise the movie *Yesterday* prior to its theatrical release.

39.     Similarly, on or about June 25, 2019 in a post-release national television appearance promoting the film *Yesterday*, director Boyle was interviewed alongside actor Himesh Patel (who plays Jack Malik) on CBS television. Although Ms. De Armas is not

in the film, the scene featuring Ms. De Armas was played during Boyle's television appearance to a national television audience. A true and accurate screen capture from the television appearance is reproduced below:



Ms. De Armas is the actress in the white outfit depicted in the above image.

40.    Even though Ms. De Armas would never be in the film to entertain its viewers, Defendant played this scene on national television because Defendant knew it would lure viewers, sales, and movie rentals, because it was a "fantastic" scene in which Ms. De Armas was "radiant" and "brilliant." Moreover, when this scene was featured on national television, the movie *Yesterday* had already been released to the public. Accordingly, Defendant already knew that Ms. De Armas would not and did not appear in the final version of the film.

41.    Movie trailers are the *de facto* standard for advertising movies (or films) in the United States.

42.    Movie trailers are understood by movie viewers and consumers to convey what actors will appear in the advertised film.

43.     Defendant's *Yesterday* movie trailers were used by Defendant as advertisements for the film.

44.     Defendant's *Yesterday* movie trailers were used by Defendant as the primary advertisements for the film.

45.     Defendant knew that consumers would rely on the content of the *Yesterday* movie trailers when making decisions whether to pay for purchasing or viewing the film.

46.     Defendant creates, distributes, and publishes its movie trailers, including the movie trailer for *Yesterday*, for the purpose of enticing consumers to pay for purchasing or viewing Defendant's films, including the film *Yesterday*.

47.     Defendant expected that consumers would rely on the content of the *Yesterday* movie trailers when making decisions whether to pay for purchasing or viewing the film.

48.     Defendant's *Yesterday* movie trailers, aired or accessible during 2019, included scenes with Ana De Armas.

49.     Defendant's *Yesterday* movie trailers, aired or accessible during 2020, included scenes with Ana De Armas.

50.     Defendant's *Yesterday* movie trailers, aired or accessible during 2021, included scenes with Ana De Armas.

51.     Defendant's *Yesterday* movie trailers, aired or accessible during 2022, included scenes with Ana De Armas.

52.     On online movie streaming services such as Amazon.com's Amazon Prime, Defendant uses the *Yesterday* movie trailer with Ana De Armas to convince consumers to purchase or rent the movie *Yesterday*.

53.     After watching the movie trailer for *Yesterday* on Amazon Prime, and other online movie streaming services, consumers are able to purchase or rent the movie *Yesterday* on the same user interface.

54.     Defendant's movie trailers for *Yesterday* are accessible on the same display screen, such as a television screen, as the point-of-purchase or rental opportunity for purchasing or renting the movie *Yesterday*.

55.     Online streaming services such as Amazon Prime are designed to include movie trailers on the same screen, such as a television screen, as the point-of-purchase or rental opportunity for purchasing or renting the movie featured in the trailer, so that consumers can make instant decisions to purchase or rent a movie, without consulting other sources.

56.     Movie consumers typically make decisions to view, purchase, or rent a movie – or not - based on the content of movie trailers viewed by such consumers.

57.     The decision to purchase or rent a movie is binary. A consumer either rents or purchases a movie, or not. A movie trailer is the advertising vehicle which Defendant uses to persuade movie consumers, when such consumers are making such binary movie purchase or rental decisions.

58.     Defendant's inclusion of Ana De Armas in *Yesterday* movie trailers leads viewers to believe that Ana De Armas is in the film.

59.     Defendant used movie trailers, which included scenes with Ana De Armas, to promote the theatrical release of the film *Yesterday*.

60.     Defendant used movie trailers, which included scenes with Ana De Armas, to promote online movie sales and rentals of the film *Yesterday*.

61.     Ana De Armas does not appear in Defendant's publicly released 2019 movie *Yesterday*.

62.     Ana De Armas does not appear in the version of Defendant's publicly released movie *Yesterday* which has been sold and rented to consumers, and exhibited at pay-for-view movie theaters, during the years 2019, 2020, 2021, and 2022.

63.    Ana De Armas does not appear in any publicly released version of Defendant's publicly released movie *Yesterday*

64.    All of Defendant's theatrical presentations, sales, rentals, and licenses, of the movie *Yesterday* injure consumers in the same way because the film sold, rented, and licensed is the same, regardless of medium, and does not include Ana De Armas and does not include the "something"-song-joke, in which Malik plays The Beatles' song "Something".

65.    Defendant had sufficient control and authority to determine whether Ana De Armas would appear in the *Yesterday* movie trailer.

66.    Defendant chose to continue to utilize *Yesterday* movie trailers featuring Ana De Armas as advertisements, even though Defendant knew that Ana De Armas was not in the film *Yesterday*.

67.    Defendant's trailer for the movie *Yesterday* is used to advertise the movie to solicit purchases and rentals of the movie from online movie services such as Amazon Prime and Google Play. Defendants' *Yesterday* trailer, used on such services to advertise the movie, includes scenes with Ana De Armas.

68.    The following images are true and accurate screen shots from Defendant's movie trailer for *Yesterday*:

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20



21
22
23
24
25
26
27
28







Actress Ana De Armas is the actress wearing a white outfit in the above images.

69.    Defendant's official trailer for the movie *Yesterday* was also published by Defendant on YouTube and has been viewed more than 32.6 million times on YouTube since February 12, 2019.  The number 32.6 million meets or exceeds the number of viewers of the movie *Yesterday* that paid to view it or purchased it.

70.    Relying on false, deceptive, and misleading advertisements for its promotion, Defendant's movie *Yesterday* has thus far grossed approximately $150,000,000 (one-hundred fifty million) United States dollars.

**Defendant's False and Deceptive Advertising**

71.    Plaintiffs reassert and reallege all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

72.    Defendant, through its movie trailers for *Yesterday*, has consistently conveyed to consumers throughout the United States that the movie *Yesterday* features actress Ana De Armas.

73.     Despite Defendant's representations in movie trailer advertising, Ana De Armas is not in the film *Yesterday*.

74.     Defendant also deceived consumers by including the "something"-song-joke, and the performance of The Beatles' song Something, in movie trailers promoting *Yesterday*.

75.     The "something"-song-joke, and the performance of The Beatles' song Something, is not in the publicly released version of the movie *Yesterday*.

76.     Defendant's movie trailer advertisements for the movie *Yesterday*, featuring Ana De Armas, are literally false advertisements.

77.     Defendant's movie trailer advertisement of the movie *Yesterday*, featuring scene elements which were not included in the publicly released film, are collectively a literally false advertisement.

78.     Defendant's movie trailer advertisements for the movie *Yesterday*, featuring Ana De Armas, are false, deceptive, and misleading.

79.     Defendant's movie trailer advertisement of the movie *Yesterday*, featuring scene elements which were not included in the publicly released film, are false, deceptive, and misleading.

80.     Consumers, including movie viewers, purchasers, and renters of the movie *Yesterday*, relied on the content of the trailer for the film when deciding whether to spend money to view or purchase the film.

81.     Because consumers were not provided with the movie product that they were promised by the *Yesterday* movie trailer, the were effectively provided with no value at all.

82.     Because consumers were promised a movie with Ana De Armas by the trailer for *Yesterday*, but did not receive a movie with any appearance of Ana De Armas at all, such consumers were not provided with any value for their rental or purchase.

83.     Defendant's false, deceptive, and misleading advertisements have been disseminated to the public continuously since at least 2019, and are still being disseminated in January of 2022, and Defendant will continue to deceive the public with such advertisements unless it is enjoined from continuing to engage in such unlawful conduct.

## CLASS DEFINITION AND ALLEGATIONS

84.     Plaintiffs reassert and reallege all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

85.     Plaintiffs, pursuant to Fed. R. Civ. Pro. 23(b)(2) and 23(b)(3), bring this action on behalf of themselves and those similarly situated and seek certification of the following classes:

### California Class

All persons who purchased in the state of California any tickets for theater viewership, or who rented or purchased physical or electronic copies of the movie *Yesterday* within California, within the applicable statute of limitations, for personal use until the date notice is disseminated.

### Maryland Class

All persons who purchased in the state of Maryland any tickets for theater viewership, or who rented or purchased physical or electronic copies of the movie *Yesterday* within Maryland, within the applicable statute of limitations, for personal use until the date notice is disseminated.

86.     Excluded from each Class is Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who viewed, purchased, or rented the movie *Yesterday*, all persons who make a timely election to be excluded from the Class, the judge to whom this case is assigned and any immediate family members thereof.

87.     Certification of Plaintiffs' claims for class wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

## Numerosity – Federal Rule of Civil Procedure 23(a)(1)

88.     The members of the Class are so numerous that individual joinder of all Class members is impracticable. Defendant has sold at least hundreds of thousands of movie tickets, or online or physical movie rentals or purchases, to Class members.

## Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)

89.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)     Whether the representations discussed herein that Defendant made about *Yesterday* were or are true, misleading, or likely to deceive;

(b)     Whether Defendant's conduct violates public policy;

(c)     Whether Defendant engaged in false or misleading advertising;

(d)     Whether Defendant's conduct constitutes violations of the laws asserted herein;

(e)     Whether Plaintiffs and the other Class members have been injured and the proper measure of their losses as a result of those injuries; and

(f)    Whether Plaintiffs and the other Class members are entitled to injunctive, declaratory, or other equitable relief.

## Typicality – Federal Rule of Civil Procedure 23(a)(3)

90.    Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

## Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)

91.    Plaintiffs are adequate representatives of the Class because Plaintiffs' interests do not conflict with the interests of the other Class members Plaintiffs seek to represent; Plaintiffs have retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

## Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)

92.    Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief  and declaratory relief, as described below, with respect to Class as a whole.

## Superiority – Federal Rule of Civil Procedure 23(b)(3)

93.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small

compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **Violation of the California Unfair Competition Law ("UCL")**
### **Cal. Bus. & Prof. Code §§ 17200, *et seq.***
(On behalf of the California Class)

94.     Plaintiffs reassert and reallege all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

95.     Plaintiff Rosza brings this claim individually and on behalf of the California Class.

96.     Plaintiff and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

97.     The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. Prof. Code § 17200.

98.     In the course of conducting business, Defendant committed unlawful business practices by, among other things, making the representations (which also constitutes advertising within the meaning of § 17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711,

1770(a)(5), (7), (9) and (16) and Business & Professions Code §§ 17200, *et seq.*, 17500, *et seq.*, and the common law.

99.    Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

100.   In the course of conducting business, Defendant committed "unfair" business practices by, among other things, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts regarding the movie *Yesterday* in its advertising, as set forth more fully herein. There is no societal benefit from false advertising – only harm. Plaintiff and the other Class members paid for a product that did not deliver the content promised by Defendant's advertising. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

101.   Further, as set forth in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California and other states, resulting in harm to consumers. Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq.*

102.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Business & Professions Code § 17200, *et seq.*, also prohibits any "fraudulent business act or practice." In the course conducting business, Defendant committed "fraudulent business

act or practices" by, among other things, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts regarding the movie *Yesterday*, as set forth more fully herein. Defendant made the misrepresentations and omissions regarding the content of the film *Yesterday,* among other ways, by misrepresenting that Ana De Armas would appear in the publicly released film when Defendant knew she would not.

103.   Defendant's actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq*.

104.   Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom paid to view or purchased Defendant's film *Yesterday*. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of paying to view or purchasing the movie *Yesterday* due to Defendant's unlawful, unfair, and fraudulent practices.

105.   Defendant knew and intended, or at least should have known, that its material misrepresentations and omissions would be likely to deceive and harm the consuming public and result in consumers making payments to Defendant for its falsely advertised film.

106.   As a result of its deception, Defendant was unjustly enriched by receiving payments from Plaintiff and the Class in return for providing Plaintiff and the Class a movie product that does not include the actress Ana De Armas as advertised.

107.   Unless restrained and enjoined, Defendant will continue to engage in the unlawful, unfair and fraudulent conduct described herein. Accordingly, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the

general public, seeks restitution from Defendant of all money obtained from Plaintiff and the other members of the Class collected as a result of Defendant's unfair competition, and for an injunction prohibiting Defendant from continuing and further engaging in its unlawful, unfair and fraudulent conduct, requiring corrective advertising, and awarding all other relief this Court deems appropriate.

**COUNT II**
**Violation of the California False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**
(On behalf of the California Class)

108.   Plaintiffs reassert and reallege all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

109.   Plaintiff Mike Rosza brings this claim individually and on behalf of the California Class.

110.   The FAL, in relevant part, states that "[i]t is unlawful for any … corporation …with intent … to dispose of … personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated …from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement … which is *untrue* or *misleading*, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500 (emphasis added).

111.   The required intent is the intent to dispose of property, not the intent to mislead the public in the disposition of such property.

112. Defendant violated the FAL by making literally false and misleading representations in the movie trailer that Ana de Armas was in the movie *Yesterday* when, in reality, she did not make an appearance in the movie *Yesterday*.

113. As a direct and proximate result of Defendant's untrue and misleading advertising, Plaintiff and the Class members have suffered injury in fact and have lost money.

114. Accordingly, Plaintiff requests that the Court order Defendant to restore the money Defendant has received from Plaintiff and the members of the Class, and that the Court enjoin Defendant from continuing its unlawful practices, and engage in corrective advertising.

**COUNT III**
**Unjust Enrichment (Pleading in the Alternative)**
(On behalf of the California and Maryland Class)

115. Plaintiffs reassert and reallege all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

116. Plaintiffs bring this claim individually and on behalf of the Class.

117. This claim is pleaded in the alternative to the other claims set forth herein.

118. As the intended and expected result of its conscious wrongdoing, Defendant has profited from and benefitted from the sales, rentals, licenses, and public theater presentations of the movie *Yesterday*.

119. Defendant has intentionally sought and voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiffs and the Class were not receiving a product – the *Yesterday* movie – of the quality, nature, fitness or value that had been represented by Defendant, and that a reasonable consumer would expect. Specifically,

Plaintiffs and the Class members expected that when they purchased or rented the movie *Yesterday*, Ana de Armas would have a role in the movie and that other scenes appearing in the *Yesterday* trailer would appear in the film.

120.   Defendant has been unjustly enriched by its fraudulent, deceptive, unlawful, and unfair conduct, and its withholding of benefits and unearned monies from Plaintiffs and the Class, at the expense of these parties.

121.   Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

**COUNT IV**
**Breach of Implied Warranty**
**(MD Comm. L. Code § 2-314, 2-315, 2-316)**
(On behalf of the Maryland Class)

122.   Plaintiffs reassert and reallege all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

123.   Plaintiff Woulfe brings this claim individually and on behalf of the Maryland Class.

124.   The laws governing the sale of goods imply a warranty that the goods conform to the representations and specifications suppliers/merchants supply for the goods and that the goods are fit for the purposes underlying the goods sold.

125.   The laws governing the sale of goods also imply a warranty that the goods conform to the promises or affirmations of fact made when advertising the product.

126.   The purpose of these warranties is to protect consumers, as the intended beneficiaries of those warranties.

127.   Plaintiff Woulfe and Maryland Class Members are the intended beneficiaries of the implied warranty contract.

128.   Defendant is the merchant that sells the movie *Yesterday* to consumers.

129.   The movie *Yesterday* is the consumer good.

130.   Defendant breached its implied warranties pertaining to the content of the movie *Yesterday*, because the movie *Yesterday* did not contain Ana de Armas or other omitted content, as Defendant's movie trailer promised to consumers.

131.   Defendant cannot provide a remedy or provide conforming goods because the movie *Yesterday* has already been displayed to Plaintiff Woulfe and Maryland Class Members without Ana de Armas and other scenes.

132.   Defendant's breach of the implied warranty of merchantability injured Plaintiff Woulfe and the Maryland Class by inducing Maryland movie viewers to pay for purchasing or viewing the movie *Yesterday,* using advertising which falsely warranted the movie as including content, including a performance by the actress Ana De Armas, which it did not.

133.   Defendant's actions breached implied warranties made to consumers in violation of Maryland law.

134.   Defendant's unlawful conduct entitles Plaintiffs and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order enjoining Defendant from continuing to offer the movie *Yesterday* for sale or rent or license without Ana De Armas or without other scenes falsely advertised as included within the film.

## COUNT V
**Violation of Maryland's Unfair and Deceptive Trade Practices Action**
**MD Comm. L. Code § 13-301 *et seq.***
(On behalf of the Maryland Class)

135.   Plaintiffs reassert and reallege all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

136.   Plaintiff Woulfe brings this claim individually and on behalf of the members of the Maryland Class.

137.   Plaintiff Woulfe and the Maryland Class members are consumers within the meaning of the Maryland Consumer Unfair and Deceptive Trade Practices Act, §13-201 et seq. (the "Maryland Act").

138.   The Maryland Act expressly notes that unfair or deceptive trade practices include:

    a.   False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

    b.   Representation that:

        i.   Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;

    c.   Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:

        i.   The promotion or sale of any consumer goods, consumer realty, or consumer service.

139.   Maryland Code, Commercial Law Article, 13-408, a provision of Maryland's Consumer Protection Act, expressly authorizes civil actions by consumers, like Plaintiff Woulfe.

140.   Defendant engages in "trade" and "commerce" generally and as it pertains to the distribution of the movie *Yesterday* for sale or rent to consumers within the state of Maryland.

141.   Defendant's movie trailer for the film *Yesterday* represents that the actress Ana De Armas, as well as certain omitted scenes, would be featured in the movie *Yesterday*, when she is not and the scenes are not.

142.   The movie trailer for *Yesterday* is false, deceptive, and misleading because it represents that actress Ana de Armas, and other omitted scenes, would be featured in the movie *Yesterday*, when she is not and the scenes are not.

143.   The content of Defendant's movie trailer for the movie *Yesterday,* which was omitted from the publicly released film, is and was collectively material to a reasonable consumer and is and was designed to affect consumer decisions and conduct.

144.   Defendant understood and intended that the representations in the movie trailer for *Yesterday* would influence consumer behavior.

145.   Defendant understood that it has an obligation to ensure the honesty of all promotions and to avoid misleading the public regarding the movie *Yesterday*.

146.   Defendant's misleading movie trailer constitutes an unfair method of competition and unfair and/or deceptive acts or practices in the conduct of trade or commerce for movie sales and rentals and licenses to consumers.

147.   Defendant's acts and practices offend public policy as established by statute.

148.   Defendant's acts and practices are immoral, unethical, oppressive, and unscrupulous.

149.   Defendant's conduct substantially injured actual and potential consumers, the public and competition. Defendant knowingly induced viewership, sales, rentals, and licenses of the movie *Yesterday* within the state of Maryland, using a false and deceptive movie trailer for monetary gain from Plaintiff Woulfe, the Maryland Class members, and other consumers who would not have paid to view, rent, buy, or license Yesterday but for Defendant's false and misleading conduct.

150.   Defendant's conduct materially affected available information regarding its *Yesterday* movie within Maryland.

151.   Defendant's conduct improperly distorted the information available to the public regarding the movie *Yesterday*.

28

152.   Defendant's actions caused consumers to pay for the movie *Yesterday*, by deceiving consumers into believing the movie had content that it does not. These injuries are not outweighed by any countervailing benefits to consumers or competition. No legally cognizable benefit to consumers or competition results from Defendant's misconduct.

153.   Plaintiff Woulfe and the Maryland Class purchased the movie *Yesterday* for personal, family or household use. Thus, the practices discussed above constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of the Maryland Act.

154.   The foregoing unfair and deceptive practices directly, foreseeably, and proximately caused Plaintiff Woulfe and the Maryland Class to suffer ascertainable losses when they were deceived into paying to view, buy, rent, or license the movie *Yesterday*, when they would not have but for Defendant's false, deceptive, and misleading advertisements and representations. Consequently, Defendant has been unjustly enriched by gaining revenues for movie sales, rentals, and licenses, which it only gained because of its unlawful conduct.

155.   Plaintiff Woulfe and the Maryland Class are entitled to recover damages and other appropriate relief, as alleged below.

## COUNT VI
## Breach of Express Warranty in Violation of the Uniform Commercial Code
### (on behalf of the California and Maryland Class)

156.   Plaintiffs reassert and reallege all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

157.   Plaintiffs bring this claim individually and on behalf of the California and Maryland Class.

158.   Defendant's *Yesterday* movie trailer expressly warrants that the movie *Yesterday* would feature Ana de Armas and other omitted scenes.

159.   Defendants breached their express warranties to Plaintiffs and the Maryland and California Class because actress Ana de Armas, and other omitted but promoted scenes, did not appear in the movie *Yesterday*.

160.   As a result of Defendant's breach of its express warranties, Plaintiffs and the Maryland and California Class have suffered actual damages because they purchased or rented or licensed products that they would not have, but for Defendant's unlawful conduct.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the proposed Class, respectfully request that the Court enter judgment in Plaintiffs' favor and against Defendant as follows:

A.   Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives and appointing   the undersigned counsel as Class Counsel;

B.   Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the Class members as a result of Defendant's unlawful, unfair and fraudulent business practices;

C.   Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

D.   Ordering damages, including punitive damages, for Plaintiffs and the Classes;

E.   Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

F.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

G.    Ordering such other and further relief as may be just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs respectfully demand a trial by jury in this action.

Respectfully submitted,

**LEJEUNE LAW, P.C.**

Dated: January 21, 2022    By:   */s/* Cody R. LeJeune

Cody R. LeJeune
445 S. Figueroa St.
Suite 3100
Los Angeles, CA 90071
Telephone: (985) 713-4964

Attorneys for Plaintiff
CONOR WOULFE, an individual, and
PETER MICHAEL ROSZA, an individual

31

CLASS ACTION COMPLAINT

2:22-cv-459