KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
VIRGINIA GRACE DAVIS (State Bar No. 336732)
grace.davisfisher@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:  (415) 512-4000
Facsimile:   (415) 512-4077

BETHANY W. KRISTOVICH (State Bar No. 241891)
bethany.kristovich@mto.com
BENJAMIN G. BAROKH (State Bar No. 318629)
benjamin.barokh@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Defendant
UNIVERSAL CITY STUDIOS LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONOR WOULFE and PETER MICHAEL ROSZA, <br><br> Plaintiffs, <br><br> vs. <br><br> UNIVERSAL CITY STUDIOS LLC, d.b.a., UNIVERSAL PICTURES, <br><br> Defendant. | Case No. 2:22-cv-00459-SVW-AGR <br><br> **NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE § 425.16; AND [2] MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6); MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **Filed Concurrently:  Request for Judicial Notice; [Proposed] Order** <br><br> Date:   July 25, 2022 <br> Time:  1:30 p.m. <br> Judge:  Hon. Stephen V. Wilson <br> Courtroom:  10A |

## NOTICE OF MOTIONS AND MOTIONS

TO THE COURT AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 25, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard in the First Street Courthouse, located at 350 West 1st Street, Courtroom 10A, Los Angeles, California, before the Honorable Stephen V. Wilson, Defendant Universal City Studios LLC ("Universal"[1]) will and hereby does move (1) to strike the First Amended Complaint, Dkt. 17 ("FAC") in its entirety under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16; and (2) to dismiss the FAC in its entirety with prejudice under Federal Rule of Civil Procedure 12(b)(6), and to dismiss the FAC's request for injunctive relief with prejudice under Rule 12(b)(1).[2]

As set forth in the accompanying Memorandum of Points and Authorities, the FAC targets activity protected under the anti-SLAPP statute, and Plaintiffs do not and cannot show they have plausibly alleged any claim for relief.  In addition, Plaintiffs lack standing to seek injunctive relief.

These Motions are based on this Notice of Motions and Motions, the attached Memorandum of Points and Authorities, the contemporaneously filed Request for Judicial Notice ("RJN"), any papers filed in reply, all other papers and records on file in this matter, and any other materials or argument the Court may receive at or before the hearing on these Motions.

These Motions are made following the conference of counsel, pursuant to Civil L.R. 7-3, which took place on April 28, 2022.

---

[1] Abbreviations used in this Notice of Motions are also used in the accompanying Memorandum of Points and Authorities.

[2] Universal also reserves its right to seek recovery for its attorney's fees and costs in connection with its anti-SLAPP motion.  *See* Cal. Civ. Proc. Code § 425.16(c)(1).

1  DATED:  May 5, 2022                    Respectfully submitted,

2                                         MUNGER, TOLLES & OLSON LLP

3

4

5                                         By:      /s/ Kelly M. Klaus

6                                                KELLY M. KLAUS
                                          Attorneys for Defendant
7                                         UNIVERSAL CITY STUDIOS LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................... 1

II.    BACKGROUND ...................................................................................... 3

     A.    The *Yesterday* Trailer ................................................................ 3

     B.    Plaintiffs' Complaint And FAC ................................................. 6

III.   LEGAL STANDARDS GOVERNING UNIVERSAL'S MOTIONS ............ 6

     A.    Universal's Anti-SLAPP Motion To Strike ............................... 6

     B.    Universal's Rule 12(b)(6) And Rule 12(b)(1) Motions ............... 7

IV.   PLAINTIFFS' CLAIMS SHOULD BE STRICKEN UNDER THE ANTI-SLAPP STATUTE ........................................................................ 8

     A.    Step One:  Plaintiffs' Claims Are Based On Universal's Acts In Furtherance Of Its Free Speech Rights In Connection With Public Issues ............................................................................... 9

         1.    The *Yesterday* Trailer Is An "Act In Furtherance" Of Universal's Right To Free Speech ....................................... 9

         2.    The *Yesterday* Trailer Is Expressive Conduct "In Connection With A Public Issue Or An Issue Of Public Interest" .......................................................................... 10

     B.    Step Two:  Plaintiffs Fail To State Any Claim For Relief ......... 12

V.     PLAINTIFFS FAIL TO STATE ANY CLAIM FOR RELIEF .................... 12

     A.    All Of Plaintiffs' Claims Fail Because Plaintiffs Do Not Plead They Relied On A Misrepresentation Of Fact In Deciding To Pay To View *Yesterday* .................................................................. 13

     B.    Rosza's UCL Claim Fails ........................................................ 15

         1.    Rosza Fails To State A Claim Under The "Unlawful" Prong .................................................................................. 16

         2.    Rosza Fails To State A Claim Under The "Fraud" Prong ......... 17

         3.    Rosza Fails To State A Claim Under The "Unfair" Prong ......... 17

         4.    Rosza Cannot Recover Monetary Relief Under Any Prong ....... 17

     C.    Rosza's FAL Claim Fails ......................................................... 20

     D.    Rosza's CLRA Claim Fails ...................................................... 20

# TABLE OF CONTENTS
## (Continued)

Page

E.    Plaintiffs' Claims For Unjust Enrichment Fail ..................................... 22

F.    Plaintiffs' Express Warranty Claims Fail ............................................ 22

G.    Woulfe's Implied Warranty Claim Fails ............................................. 24

VI.   PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF FAIL ...................... 25

A.    Plaintiffs Lack Article III Standing To Seek Injunctive Relief ........... 25

B.    Plaintiffs Have Not Alleged An Inadequate Remedy At Law .............. 27

VII.  PLAINTIFFS CANNOT PROCEED WITH THEIR CLAIMS UNDER
      THE FIRST AMENDMENT ...................................................................... 28

VIII. AMENDMENT WOULD BE FUTILE ....................................................... 30

IX.   CONCLUSION .......................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adams v. Cole Haan, LLC,*
2020 WL 5648605 (C.D. Cal. Sept. 3, 2020)............................................20, 27, 28

*Alaei v. Gov't Emps. Ins.,*
2021 WL 1165067 (S.D. Cal. Mar. 25, 2021)......................................................19

*Anderson v. Apple, Inc.,*
500 F. Supp. 3d 993 (N.D. Cal. 2020)......................................................13, 26, 31

*Anthony v. Buena Vista Home Ent., Inc.,*
2016 WL 6836950 (C.D. Cal., Sept. 28 2016)....................................8, 23, 24, 32

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001) ................................................................................26

*Asghari v. Volkswagen Grp. of Am., Inc.,*
42 F. Supp. 3d 1306 (C.D. Cal. 2013)..................................................................22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...............................................................................................8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...............................................................................................7

*Benn v. Allstate Ins.,*
2021 WL 5049101 (C.D. Cal. Oct. 29, 2021) ......................................................19

*Bolger v. Youngs Drug Prod. Corp.,*
463 U.S. 60 (1983) ...............................................................................................28

*Bonin v. Calderon,*
59 F.3d 815 (9th Cir. 1995) ..................................................................................30

*Bradley v. Chiron Corp.,*
136 F.3d 1317 (Fed. Cir. 1998) ............................................................................17

*Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.,*
823 F. Supp. 2d 334 (D. Md. 2011) ......................................................................25

*City of Cincinnati v. Discovery Network, Inc.,*
507 U.S. 410 (1993) .............................................................................................29

1
2

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

3
4
*City of L.A. v. Lyons*,
    461 U.S. 95 (1983) ................................................................ 26

5
6
*Cordes v. Boulder Brands USA, Inc.*,
    2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ........................... 26

7
*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ................................... 8, 25, 26

8
9
*Davis v. HSBC Bank Nev., N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ................................................ 16

10
11
*Doe v. Gangland Prods., Inc.*,
    730 F.3d 946 (9th Cir. 2013) .................................... 7, 9, 12

12
13
*Doll v. Ford Motor Co.*,
    814 F. Supp. 2d 526 (D. Md. 2011) ......................................... 25

14
15
*Fabian v. LeMahieu*,
    2019 WL 4918431 (N.D. Cal. Oct. 4, 2019) ............................. 17

16
17
*Ferrington v. McAfee, Inc.*,
    2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ............................. 21

18
19
*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
    483 F. Supp. 3d 838 (C.D. Cal. 2020) ..................................... 14

20
21
*Forsyth v. Motion Picture Ass'n of Am., Inc.*,
    2016 WL 6650059 (N.D. Cal. Nov. 10, 2016) ........................... 29

22
23
*Germain v. J.C. Penney Co.*,
    2009 WL 1971336 (C.D. Cal. July 6, 2009) ............................. 19

24
25
*Gilles v. Wineteer*,
    2019 WL 6037422 (S.D. Cal. Nov. 14, 2019) ........................... 17

26
27
*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
    352 F.3d 367 (9th Cir. 2003) .................................................. 14

28
*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
    742 F.3d 414 (9th Cir. 2014) .................................................... 9

DEFENDANT'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1
2

# TABLE OF AUTHORITIES
### (Continued)

Page(s)

3
4

*Gudgel v. Clorox Co.*,
514 F. Supp. 3d 1177 (N.D. Cal. 2021)......................................................13, 17, 20

5
6

*H & M Co. v. Tech. Heat Transfer Servs., Inc.*,
2015 WL 1472000 (D. Md. Mar. 30, 2015)......................................................23, 24

7

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017)......................................................17

8
9

*Hall v. Sea World Ent., Inc.*,
2015 WL 9659911 (S.D. Cal. Dec. 23, 2015)......................................................21, 32

10
11

*Hanscom v. Reynolds Consumer Prods. LLC*,
2022 WL 591466 (N.D. Cal. Jan. 21, 2022)......................................................18, 28

12
13

*Heredia v. Sunrise Senior Living LLC*,
2021 WL 819159 (C.D. Cal. Feb. 10, 2021)......................................................18, 20

14
15

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2010)......................................................10

16
17

*Johnson v. Ocwen Loan Servicing, LLC*,
2017 WL 10581088 (C.D. Cal. Dec. 11, 2017)......................................................17

18
19

*Joseph Burstyn, Inc. v. Wilson*,
343 U.S. 495 (1952)......................................................10, 29

20

*Jovel v. Boiron Inc.*,
2013 WL 12164622 (C.D. Cal. Aug. 16, 2013)......................................................27

21
22

*Keegan v. Am. Honda Motor Co.*,
838 F. Supp. 2d 929 (C.D. Cal. 2012)......................................................8

23
24

*KeraLink Int'l, Inc. v. Stradis Healthcare, LLC*,
2021 WL 4420636 (D. Md. Sept. 27, 2021)......................................................24

25
26

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
114 F. Supp. 3d 852 (N.D. Cal. 2015)......................................................15

27
28

*Lazebnik v. Apple, Inc.*,
2014 WL 4275008 (N.D. Cal. Aug. 29, 2014)......................................................21, 22, 24

### TABLE OF AUTHORITIES
#### (Continued)

**Page(s)**

*In re MacBook Keyboard Litig.,*
    2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ..................................27, 28

*Miami Herald Pub'g Co. v. Tornillo,*
    418 U.S. 241 (1974) ...................................................................... 30

*Morris v. Biomet, Inc.,*
    491 F. Supp. 3d 87 (D. Md. 2020) ..........................................22, 25, 31

*Moss v. U.S. Secret Serv.,*
    572 F.3d 962 (9th Cir. 2009) ............................................................ 8

*Nguyen v. Nissan N. Am., Inc.,*
    2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) ................................... 22

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
    890 F.3d 828, amended by 897 F.3d 1224 (9th Cir. 2018) ................... 7

*Rice v. Sunbeam Prods., Inc.,*
    2013 WL 146270 (C.D. Cal. Jan. 7, 2013) ....................................... 13

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,*
    487 U.S. 781 (1988) ...................................................................... 29

*Sarver v. Chartier,*
    813 F.3d 891 (9th Cir. 2016) ...................................................passim

*Shroyer v. New Cingular Wireless Servs., Inc.,*
    622 F.3d 1035 (9th Cir. 2010) ........................................................ 31

*Shupe v. Nationstar Mortg. LLC,*
    231 F. Supp. 3d 597 (E.D. Cal. 2017) ............................................. 16

*Singh v. Lenovo (U.S.) Inc.,*
    510 F. Supp. 3d 310 (D. Md. 2021) ................................................ 15

*Sonner v. Premier Nutrition Corp.,*
    971 F.3d 834 (9th Cir. 2020) ...................................................passim

*Stanley v. Cent. Garden & Pet Corp.,*
    891 F. Supp. 2d 757 (D. Md. 2012) ................................................ 13

DEFENDANT'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1
2

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

3
4

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ........................................... 8

5
6

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003) ................................ 20

7
8

*Todd v. Lovecruft*,
   2020 WL 60199 (N.D. Cal. Jan. 6, 2020) ...................... 9

9

*Tryan v. Ulthera, Inc.*,
   2018 WL 3955980 (E.D. Cal. Aug. 17, 2018) .................. 26

10
11

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) ................................. 7

12
13

*United States v. Elias*,
   921 F.2d 870 (9th Cir. 1990) ................................ 18

14
15

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
   143 F. Supp. 3d 982 (N.D. Cal. 2015) ......................... 7

16
17

*Vega v. Ocwen Fin. Corp.*,
   2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) .................. 16

18
19

*White v. City of Sparks*,
   500 F.3d 953 (9th Cir. 2007) ................................ 10

20

*William O'Neil & Co. v. Validea.com Inc.*,
   202 F. Supp. 2d 1113 (C.D. Cal. 2002) ....................... 29

21
22

*Williams v. Apple, Inc.*,
   2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) .................. 18

23
24

*Wixon v. Wyndham Resort Dev. Corp.*,
   2008 WL 1777590 (N.D. Cal. Apr. 18, 2008) .................. 21

25

**STATE CASES**

26
27

*Bel Air Internet, LLC v. Morales*,
   20 Cal. App. 5th 924 (2018) ................................. 12

28

1
2

<u>**TABLE OF AUTHORITIES**</u>
(Continued)

<u>Page(s)</u>

3
4
*Berry v. Am. Express Publ'g, Inc.*,
   147 Cal. App. 4th 224 (2007)................................................................32

5
6
*Berryman v. Merit Prop. Mgmt., Inc.*,
   152 Cal. App. 4th 1544 (2007)..............................................................15

7
*Bona v. Graefe*,
   264 Md. 69 (1972)................................................................................23

8
9
*Colgan v. Leatherman Tool Grp., Inc.*,
   135 Cal. App. 4th 663 (2006)................................................................20

10
11
*Day v. AT&T Corp.*,
   63 Cal. App. 4th 325 (1998)..................................................................19

12
13
*Fairbanks v. Superior Court*,
   46 Cal. 4th 56 (2009)............................................................................21

14
15
*First Union Nat'l Bank v. Steele Software Sys. Corp.*,
   154 Md. App. 97 (2003).................................................................passim

16
17
*Guglielmi v. Spelling-Goldberg Prods.*,
   25 Cal. 3d 860 (1979) ....................................................................10, 29

18
19
*Howe v. Deck*,
   46 Cal. App. 2d 569 (1941)...................................................................16

20
*Hunter v. CBS Broad. Inc.*,
   221 Cal. App. 4th 1510 (2013)............................................................9, 11

21
22
*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002)..........................................................................28

23
24
*Lee v. Luxottica Retail N. Am., Inc.*,
   65 Cal. App. 5th 793 (2021)..................................................................17

25
26
*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997)..................................................................16

27
28
*Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*,
   205 Cal. App. 3d 1415 (1988)...............................................................13

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Polydoros v. Twentieth Century Fox Film Corp.*,
  67 Cal. App. 4th 318 (1997) ...................................................................... 29

*Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*,
  2016 WL 6583892 (Md. Ct. Spec. App. Nov. 4, 2016) ........................... 13

*Rezec v. Sony Pictures Ent., Inc.*,
  116 Cal. App. 4th 135 (2004) ................................................................... 28

*Sheeskin v. Giant Food, Inc.*,
  20 Md. App. 611 (1974) ............................................................................ 24

*Shepard v. Alexian Bros. Hosp.*,
  33 Cal. App. 3d 606 (1973) ...................................................................... 23

*Stewart v. Rolling Stone LLC*,
  181 Cal. App. 4th 664 (2010) ............................................................. 11, 28

*Symmonds v. Mahoney*,
  31 Cal. App. 5th 1096 (2019) ................................................................... 11

*Tamkin v. CBS Broad., Inc.*,
  193 Cal. App. 4th 133 (2011) ..................................................................... 9

*Wilson v. Cable News Network, Inc.*,
  7 Cal. 5th 871 (2019) ................................................................................ 30

**FEDERAL STATUTES**

28 U.S.C. § 1332(d)(2) ................................................................................. 6

**CALIFORNIA STATUTES**

Cal. Bus. & Prof. Code § 17200 ................................................................. 15

Cal. Bus. & Prof. Code § 17500 ................................................................. 20

Cal. Civ. Code § 1572 .......................................................................... 16, 17

Cal. Civ. Code § 1573 ................................................................................. 17

Cal. Civ. Code § 1761 ............................................................................ 6, 20

DEFENDANT'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

Cal. Civ. Code § 1770.................................................................... 1, 20

Cal. Civ. Proc. Code § 425.16 ........................................................passim

Cal. Civ. Proc. Code § 425.17 .............................................................. 10

Cal. Com. Code § 2102........................................................................ 22

Cal. Com. Code § 2103........................................................................ 23

Cal. Com. Code § 2105................................................................... 22, 23

Cal. Com. Code § 2106(1).................................................................... 23

Cal. Com. Code § 2313................................................................... 22, 23

**MARYLAND STATUTES**

Md. Code, Com. Law § 2-102 .............................................................. 22

Md. Code, Com. Law § 2-103 .............................................................. 23

Md. Code, Com. Law § 2-105 ....................................................22, 23, 24

Md. Code, Com. Law § 2-106 .........................................................23, 24

Md. Code, Com. Law § 2-313 .........................................................22, 23

Md. Code, Com. Law § 2-314 .........................................................13, 24

Md. Code, Com. Law § 2-315 .............................................................. 24

Md. Code, Com. Law § 2-607 .............................................................. 25

Md. Code, Com. Law § 13-301 ............................................................ 12

**FEDERAL RULES**

Rule 9 ................................................................................................. 8

Rule 12 ........................................................................................passim

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

**OTHER AUTHORITIES**

2 McCarthy, Rights of Publicity and Privacy § 8:69 .................................................. 29

David Houghton, *30 Scenes from Trailers that Never Appeared in the Movie*, gamesradar+ (Feb. 6, 2019), https://www.gamesradar.com/30-trailer-scenes-not-in-the-finished-films/ ......................................................................................................... 4

Kieran Judge, *The Greatest Film Trailer of All time? Psycho (1960)*, The Film Magazine (Jan. 20, 2021), https://www.thefilmmagazine.com/greatest-film-trailer-hitchcock-psycho/ ....................................................................................................... 4

Mark Harrison, *25 Films That Hid What They Were in the Trailer*, Den of Geek (Apr. 2, 2019), https://www.denofgeek.com/movies/25-films-that-hid-what-they-were-in-the-trailer/ ...................................... 4

*Missing Trailer Scene*, tvtropes, https://tinyurl.com/bdfrujhd (last visited May 5, 2022) ......................................................................... 4, 14

*Scenes from Trailers that Aren't in the Final Film*, reddit, https://tinyurl.com/mswtm7ax (last visited May 5, 2022) ..................... 14

Todd Gilchrist, *The 25 Best Movie Trailers of All Time*, Mental Floss (May 26, 2021), https://www.mentalfloss.com/article/646956/best-movie-trailers-of-all-time (discussing iconic trailers for movies including *Jaws*, *Pulp Fiction*, and *Alien*) .............................................. 3

Tres Dean, *The Most Epic Movie Trailers of All Time*, Looper (Dec. 11, 2020, 3:53 PM), https://www.looper.com/95202/epic-movie-trailers-time/ ...................................................................................... 4

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This lawsuit is a misguided effort to challenge protected expressive conduct through ill-fitting and baseless consumer protection claims.  Specifically, Plaintiffs allege they were misled into paying to view a motion picture, *Yesterday*, because a seconds-long scene in a trailer for that movie featured images of the actor Ana de Armas and a pun-type play on the Beatles' song "Something," neither of which was in the film's final cut.  Plaintiffs' claims fail for multiple reasons:

- No Misrepresentation:  All the FAC's claims fail because Plaintiffs do not and cannot allege that the *Yesterday* trailer made any affirmative misrepresentation of fact on which Plaintiffs relied in deciding to pay to view *Yesterday*.

- Unfair Competition Law ("UCL"):  Plaintiff Rosza (a California resident) has no UCL claim because he fails to allege the violation of any statute, as required to state a claim under the UCL's "unlawful" prong; a misrepresentation on which he relied, as required to state a "fraud" prong claim; or any facts stating a claim under the "unfair" prong.

- Consumers Legal Remedies Act ("CLRA"):  The CLRA applies only to specified acts involving "goods" or "services," Cal. Civ. Code § 1770(a), but Rosza alleges only that he paid for a stream of the movie, which is neither a good nor a service under the CLRA.

- Warranty Claims:  Plaintiffs' express and implied warranty claims fail because those claims are limited to the "sale" of "goods," and a license to receive a stream of a movie is neither; Plaintiff Woulfe (a Maryland resident) does not and cannot allege, as he must for a Maryland express warranty claim, that he was in privity with Universal; and Woulfe does not and cannot allege, as he must for an implied warranty claim under

1  Maryland law, that he informed Universal of the alleged breach before

2  filing suit.

3  In addition, Plaintiffs cannot as a matter of law obtain either of the primary

4  remedies they request.  They cannot recover the equitable remedy of restitution

5  under the UCL, False Advertising Law ("FAL"), CLRA, or an unjust enrichment

6  theory because they allege they have an adequate remedy at law, and because the

7  FAC makes clear they received what they paid for, i.e., a license to watch *Yesterday*

8  on Amazon.  Plaintiffs lack standing to obtain injunctive relief under any claim

9  because, as they allege, they know de Armas and the "Something" scene are not in

10 *Yesterday* and therefore will not pay to see it again.  FAC ¶ 12; Fed. R. Civ. P.

11 12(b)(1).

12 Plaintiffs' failure to plead any actionable claim requires dismissal under Rule

13 12.  But that is not the only problem with the FAC.  Plaintiffs' claims target

14 protected speech on issues of public interest.  Because those claims fail on the

15 pleadings, the FAC should be stricken in its entirety under California's anti-SLAPP

16 statute.  *See* Cal. Civ. Proc. Code § 425.16.  The California Legislature expressly

17 carved out trailers and other materials promoting motion pictures from an

18 amendment that made the statute inapplicable to advertising generally.  *Id*.

19 § 425.17(d)(2).  This confirms what is obvious about trailers generally and the

20 *Yesterday* trailer in particular:  they are expressive works in their own right and may

21 not be relegated to a class of "commercial" speech that receives watered-down First

22 Amendment protection.

23 The threat that Plaintiffs' brazen claims pose to free expression is palpable.  If

24 Plaintiffs can spin a liability claim based on the FAC's patently deficient

25 allegations, nothing will stop the next plaintiff from claiming a trailer led them to

26 believe they would see more (or less) of a particular actor in a film; that the film

27 would have a different ending or storyline; that the film would be better than it was;

28 or any one of an unlimited number of theories that enterprising class-action lawyers

might dream up based on the inherently expressive choices that go into creating a full-length motion picture and the shorter motion picture trailers that are tied to it.

Neither the First Amendment nor any of the statutes or doctrines underlying Plaintiffs' claims allows this result.  The FAC should be stricken under the anti-SLAPP statute and dismissed with prejudice under Federal Rule 12.

## II.   BACKGROUND

This case concerns the motion picture *Yesterday*, released in theaters in June 2019, and its theatrical trailer, released several months earlier.  FAC ¶ 2.  *Yesterday* tells the story of Jack Malik (played by Himesh Patel), a struggling musician who awakens after a bicycle accident, which occurs during a worldwide power outage, to a world in which it appears no one besides Jack has heard of the Beatles or their music.  Capitalizing on this fact, Jack starts to perform Beatles songs from memory.  The people around Jack, and soon the entire world, react to Jack's singing the songs much as the world reacted to the Fab Four.  FAC ¶ 25.  The movie portrays Jack dealing with the consequences of his newfound fame and his love for his longtime friend, Ellie (played by Lily James).  FAC ¶¶ 26, 29.  *Yesterday* premiered at the Tribeca Film Festival and won critical and popular acclaim.  FAC ¶ 25.

### A.   The *Yesterday* Trailer

Trailers, including the *Yesterday* trailer at issue here, tell stories using pictures and (almost always) audio.  Trailers are intended to generate interest in and excitement for a movie.  They give a sense of the film while not giving away in advance too much of the film's plot.  Trailers are inherently expressive works.  Many have become iconic in their own right.[3]

By definition, a trailer will not, and cannot, include every scene in the full-length film or divulge every aspect of the film's plot.  The converse also is true:  not

---

[3] Todd Gilchrist, *The 25 Best Movie Trailers of All Time*, Mental Floss (May 26, 2021), https://www.mentalfloss.com/article/646956/best-movie-trailers-of-all-time (discussing iconic trailers for movies including *Jaws*, *Pulp Fiction*, and *Alien*).

every element in a trailer will necessarily be in the final version of the film.  A six-minute theatrical trailer for Alfred Hitchcock's *Psycho* (1960), for example, "contains no footage from the film at all," but instead shows Hitchcock giving a tour of the Bates Motel and the sinister house overlooking it.[4]  Likewise, a trailer for Steven Spielberg's *Jurassic Park* (1993) was comprised entirely of archeologists excavating amber-frozen mosquitos and extracting dinosaur DNA—scenes that did not appear in the film.[5]  Trailers for many other movies, from *Frozen* to various installments in the *Spider-Man* and *Star Wars* franchises, contain scenes that the directors and producers did not ultimately include in the films.[6]  It has never been the case that everything depicted in a trailer was guaranteed to be in the movie itself.

Plaintiffs assert that in July and October 2021, more than two years after *Yesterday*'s release, they watched a trailer for the movie on Amazon's streaming service.  FAC ¶¶ 7, 10.  The trailer Plaintiffs say they watched is freely available on YouTube.  FAC ¶ 69; RJN Ex. 1.  The trailer, which is approximately three minutes long, includes a variety of scenes and music.

---

[4] Kieran Judge, *The Greatest Film Trailer of All time? Psycho (1960)*, The Film Magazine (Jan. 20, 2021), https://www.thefilmmagazine.com/greatest-film-trailer-hitchcock-psycho/; RJN Ex. 2 (link to trailer on YouTube).

[5] Tres Dean, *The Most Epic Movie Trailers of All Time*, Looper (Dec. 11, 2020, 3:53 PM), https://www.looper.com/95202/epic-movie-trailers-time/; RJN Ex. 3 (link to trailer on YouTube).

[6] *See, e.g.*, David Houghton, *30 Scenes from Trailers that Never Appeared in the Movie*, gamesradar+ (Feb. 6, 2019), https://www.gamesradar.com/30-trailer-scenes-not-in-the-finished-films/; Mark Harrison, *25 Films That Hid What They Were in the Trailer*, Den of Geek (Apr. 2, 2019), https://www.denofgeek.com/movies/25-films-that-hid-what-they-were-in-the-trailer/.  One industry commentator has noted that "almost every movie with a sufficient amount of promotional material will feature at least some shots not in the final movie," and that this often happens because "[u]sually the trailers are released while the film itself is still being edited, so the Trailer footage may end [up] becoming a Deleted Scene or replaced by an alternate take in the final cut."  *Missing Trailer Scene*, tvtropes, https://tinyurl.com/bdfrujhd (last visited May 5, 2022).

1       Plaintiffs' claims are based on a single portion of the trailer lasting

2   approximately 15 seconds.  It is one of several scenes illustrating Jack's rise to fame

3   and his performance of the Beatles' music.  In this scene, Jack appears on the set of

4   what appears to be *The Late Late Show with James Corden*, seated with Corden and

5   a woman whose name is never mentioned.  Plaintiffs allege that Ana de Armas plays

6   the woman.  FAC ¶ 26.  Corden says to Jack:  "We would like you to write

7   something, right now!"  Jack pauses for a moment, and the trailer cuts to him

8   singing "Something," followed by the studio audience's rapturous applause and the

9   woman kissing him on the cheek.  The trailer displays "cards" listing the names of

10   *Yesterday's* stars (Patel and James) and referencing the prior works of the movie's

11   director and screenwriter.  Plaintiffs do not and cannot allege that the *Yesterday*

12   trailer identifies the name of any cast member other than Patel and James.

13       The "Something" scene did not appear in the final cut of *Yesterday* released

14   into theaters.  FAC ¶ 33.  This fact was well known.  As Plaintiffs allege, in June

15   2019, *Yesterday's* director, Danny Boyle, gave a published interview centered on the

16   scene and the entire plot involving de Armas not being in the final movie.  FAC

17   ¶¶ 27-28, 32, 34.  The article's title could not have more clearly described the very

18   discrepancy that Plaintiffs allege Universal hid from the public:  "*Yesterday Cut An*

19   *Entire Character From The Film That Would Have Changed The Plot*."  RJN Ex. 4.

20   In the interview, Boyle discussed the fact there originally was an entire storyline

21   involving the woman seated next to Jack.  That character was an actress named

22   "Roxanne," played by de Armas.  FAC ¶¶ 27-28.  The creators conceived Roxanne

23   as an additional love interest as Jack became consumed with success.  Boyle further

24   explained the creative decision was made not to not include the Roxanne story line

25

26

27

28

1  because the love triangle detracted from the story of Jack's relationship with Ellie.

2  RJN Ex. 4.[7]

3  **B.     Plaintiffs' Complaint And FAC**

4       Plaintiffs allege that, as a result of watching the trailer on Amazon, they paid

5  $3.99 to stream *Yesterday* because they wanted to see de Armas and the scene with

6  the "Something" song-joke.  FAC ¶¶ 7-8, 10-11.  They allege that, having watched

7  *Yesterday*, they know that neither de Armas nor the song-joke is in the movie and as

8  a result, they will not pay to see the movie again.  FAC ¶¶ 7, 10, 12, 131.

9       Plaintiffs styled their Complaint as a class action meeting the jurisdictional

10  requirements of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  They

11  originally alleged six claims under California and Maryland law.

12       On March 24, 2022, Plaintiffs filed their FAC, adding a claim under

13  California's CLRA, Cal. Civ. Code § 1761.[8]

14  **III.   LEGAL STANDARDS GOVERNING UNIVERSAL'S MOTIONS**

15  **A.     Universal's Anti-SLAPP Motion To Strike**

16       California's anti-SLAPP statute was "enacted to allow early dismissal of

17  meritless first amendment cases aimed at chilling expression through costly, time-

18  consuming litigation."  *Sarver v. Chartier*, 813 F.3d 891, 896 (9th Cir. 2016).  The

19  statute authorizes a defendant to bring a "special motion to strike" any claim that

20  arises "from any act … in furtherance of the … right of petition or free speech … in

21  connection with a public issue," unless "the plaintiff has established that there is a

22

23  ───────────────────

[7] To the extent any person wishes to view the deleted scene with de Armas and

24  "Something," that scene is widely available on YouTube and as part of the film's

25  bonus features in various formats.  *See. e.g.*, RJN Ex. 6 (DVD of film with bonus
   features including deleted scene).

26  [8] Plaintiffs have filed an ex parte motion to amend their complaint once again.  Dkt.

27  28.  As discussed in Section VIII, *infra*, Plaintiffs' proposed new allegations
   confirm that any amendment would be futile.

28

1   probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code

2   § 425.16(b)(1).[9]

3     Courts "evaluate anti-SLAPP motions in two steps." *Sarver*, 813 F.3d at 901.

4   First, a defendant must "make a prima facie showing that the plaintiff's suit arises

5   from an act by the defendant made in connection with a public issue in furtherance

6   of the defendant's right to free speech under the United States or California

7   Constitution." *Id.* "Second, if the defendant has made such showing, [courts]

8   evaluate whether the plaintiff has established a reasonable probability that the

9   plaintiff will prevail on his or her ... claim." *Id.* (internal quotation marks omitted).

10   At this second step, "the burden shifts to [the] plaintiff to demonstrate a probability

11   of prevailing on the merits of each" claim. *Doe v. Gangland Prods., Inc.*, 730 F.3d

12   946, 953 (9th Cir. 2013). When an anti-SLAPP motion is filed in federal court at

13   the dismissal stage, the test under prong two of the anti-SLAPP statute is Rule

14   12(b)(6)'s plausibility standard. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for*

15   *Med. Progress*, 890 F.3d 828, 833, *amended by* 897 F.3d 1224 (9th Cir. 2018).

16     **B. Universal's Rule 12(b)(6) And Rule 12(b)(1) Motions**

17     Universal seeks dismissal under two provisions of Rule 12(b). *First*, all of

18   Plaintiffs' claims should be dismissed under Rule 12(b)(6), which requires dismissal

19   where the plaintiff does not allege well-pleaded facts sufficient to "state a claim to

20   relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

21   (2007). The complaint's "factual content" and reasonable inferences therefrom

22   must be "plausibly suggestive of a claim entitling the plaintiff to relief"; conclusory

23   

---

24   [9] Anti-SLAPP laws apply to state law claims brought in federal court. *United States*

 *ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971–73 (9th Cir.

25   1999). Plaintiffs' claims under Maryland law are subject to California's anti-

 SLAPP statute because Plaintiffs filed suit in this State. *See United Tactical Sys.,*

26   *LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1000–01 (N.D. Cal. 2015)

27   (agreeing with Second Circuit that California's anti-SLAPP statute can be applied to

 causes of action brought under another state's law when case is filed in California).

28

1   allegations must be disregarded.  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 968–69

2   (9th Cir. 2009).  A complaint that offers mere "labels and conclusions" or "a

3   formulaic recitation of the elements of a cause of action will not do."  *Anthony v.*

4   *Buena Vista Home Ent., Inc.*, 2016 WL 6836950, at *2 (C.D. Cal. Sept. 28, 2016)

5   (Wilson, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Moreover,

6   because all of Plaintiffs' claims other than for breach of warranty sound in fraud,

7   Plaintiffs must allege facts supporting each element of those claims with

8   particularity under Rule 9(b).  *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d

9   929, 957–58 (C.D. Cal. 2012).

10      *Second*, Universal seeks dismissal of Plaintiffs' request for injunctive relief

11   on the ground Plaintiffs have no standing to seek such relief.  Fed. R. Civ. P.

12   12(b)(1).  Under Rule 12(b)(1), Plaintiffs bear the burden of showing their alleged

13   injury-in-fact is "concrete, particularized, and actual or imminent; fairly traceable to

14   the challenged action; and redressable by a favorable ruling."  *Davidson v.*

15   *Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  "For injunctive relief,

16   which is a prospective remedy, the threat of injury must be 'actual and imminent,

17   not conjectural or hypothetical.'"  *Id.* (quoting *Summers v. Earth Island Inst.*, 555

18   U.S. 488, 493 (2009)).

19   **IV.   PLAINTIFFS' CLAIMS SHOULD BE STRICKEN UNDER THE ANTI-SLAPP STATUTE**

20      Plaintiffs' claims are a frivolous attempt to shoehorn a challenge to protected

21   expressive conduct into consumer protection claims.  Universal satisfies its burden

22   at step one of the anti-SLAPP test because the *Yesterday* trailer is an act in

23   furtherance of Universal's free speech rights in connection with the movie and an

24   expressive work in its own right.  Plaintiffs cannot meet their burden at step two

25   because they have not plausibly pleaded any claim for relief and because they

26   cannot pursue their claims consistent with the First Amendment.

27

28

### A. Step One: Plaintiffs' Claims Are Based On Universal's Acts In Furtherance Of Its Free Speech Rights In Connection With Public Issues

Universal satisfies its step-one burden by showing that Plaintiffs' claims "aris[e] from any act … in furtherance" of (1) the right to free speech (2) in connection with a public issue. Cal. Civ. Proc. Code § 425.16(b)(1). California courts have interpreted this requirement "rather loosely, and have held that a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary." *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014) (internal quotation marks and citations omitted). As a result, "[t]he defendant's burden on [the first] step is not a particularly demanding one." *Todd v. Lovecruft*, 2020 WL 60199, at *11 (N.D. Cal. Jan. 6, 2020) (internal quotation marks omitted).

In assessing whether a claim "arises from" protected conduct, courts "examine the principal thrust or gravamen of a plaintiff's cause of action." *Hunter v. CBS Broad. Inc.*, 221 Cal. App. 4th 1510, 1520 (2013). Here, the "gravamen or principal thrust" of each claim is the same: that Universal's protected exercise of editorial discretion in determining what scenes to include in the challenged *Yesterday* trailer and, ultimately, in *Yesterday* itself may be punished under multiple consumer protection statutes and common law doctrines.

#### 1. The *Yesterday* Trailer Is An "Act In Furtherance" Of Universal's Right To Free Speech

Universal meets the "act in furtherance" requirement, Cal. Civ. Proc. Code § 425.16(e)(4), for two independent reasons.

*First*, the trailer furthers Universal's right of free speech in *Yesterday*. *Gangland Prods.*, 730 F.3d at 953. "An act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right." *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143 (2011) (defendants' acts

were protected because they "helped to advance or assist in the creation, casting, and broadcasting of an episode of a popular television show").  Trailers "further" or "assist" the First Amendment-protected movie by promoting public awareness and discussion of it.  *See Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 873 (1979) (Bird, C.J., concurring) ("It would be illogical to allow respondents to exhibit the film but effectively preclude any advance discussion or promotion of their lawful enterprise.").

*Second*, the trailer itself is a protected expressive work.  *Hilton v. Hallmark Cards*, 599 F.3d 894, 904 (9th Cir. 2010) ("communicative" activity "suffice[s]" to satisfy this requirement).  The Supreme Court has long held that "arts and entertainment," including movies, are entitled to full First Amendment protection. *White v. City of Sparks*, 500 F.3d 953, 955 (9th Cir. 2007); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952); *Sarver*, 813 F.3d at 903.  The California Legislature recognized this fact when, in amending the anti-SLAPP statute in 2011 to exclude claims targeting commercial advertising, Cal. Civ. Proc. Code § 425.17(c), the Legislature expressly provided that this exception does *not* apply to the "advertisement, or other similar promotion of … a motion picture." *Id.* § 425.17(d)(2).  This provision of the anti-SLAPP statute confirms what is clear under the case law and common sense:  the *Yesterday* trailer is a protected act in furtherance of Universal's free speech rights.

### 2. The *Yesterday* Trailer Is Expressive Conduct "In Connection With A Public Issue Or An Issue Of Public Interest"

Universal also meets the requirement of showing that the *Yesterday* trailer furthered Universal's free speech rights "in connection with a public issue or an issue of public interest."  Cal. Civ. Proc. Code 425.16(e)(4).  Courts applying California law "have construe[d] 'public issue or public interest' … broadly in light of the statute's stated purpose to encourage participation in matters of public importance or consequence." *Sarver*, 813 F.3d at 901 (cleaned up).  There are

"three categories of public issues" for purposes of the anti-SLAPP statute, including two that plainly apply here:  "(1) statements concerning a person or entity in the public eye … [and] [2] a topic of widespread, public interest."  *Id.*

*First*, the *Yesterday* trailer is a "statement[] concerning a person or entity in the public eye" because it previews a story about what the world would be like if the Beatles—one of the most popular bands in history—did not record their music but someone else did.  *Id*. (internal quotation marks omitted).  "[T]here is a public interest which attaches to people who, by their accomplishments, mode of living, professional standing or calling, create a legitimate and widespread attention to their activities."  *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 677–78 (2010); *see Symmonds v. Mahoney*, 31 Cal. App. 5th 1096, 1109 (2019) (musician Eddie Money's conduct occurred "in connection with an issue of public interest" because his "music and concerts were of interest to the public").

*Second*, there is "widespread, public interest" in the process of making movies and trailers.  *Sarver*, 813 F.3d at 901 (internal quotation marks omitted); *see* FAC ¶¶ 27-28 (quoting interview of *Yesterday* director Danny Boyle regarding editing decisions concerning the film).  Plaintiffs challenge the editorial decision to include in a trailer images from a scene that ultimately did not make the final cut of the released movie.  That decision necessarily involves matters of public interest surrounding the creation and dissemination of motion pictures and trailers—an interest that is only heightened in the context of well-known feature films like *Yesterday*.  *See, e.g.*, *Hunter*, 221 Cal. App. 4th at 1527 (CBS's hiring of weather news anchors was protected under § 425.16(e)(4) because "weather reporting is a matter of public interest" and "CBS's decisions regarding who would present those reports to the public during its broadcasts [were] necessarily 'in connection' with that public issue").

*Third*, even though the trailer does not represent that de Armas appears in *Yesterday*, Plaintiffs' claims are based on de Armas appearing in the trailer and

DEFENDANT'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

Plaintiffs' express allegations she is the subject of immense public interest.  FAC ¶¶ 18-24.  Universal may rely on those allegations without admitting them, *see Bel Air Internet, LLC v. Morales*, 20 Cal. App. 5th 924, 936 (2018), to show that Plaintiffs' claims are directed to Universal's free speech concerning a "person or entity in the public eye."  *Sarver*, 813 F.3d at 901.

In sum, Universal meets its burden under the first step of the anti-SLAPP analysis.

### B.   Step Two:  Plaintiffs Fail To State Any Claim For Relief

Because Plaintiffs' claims "arise from" Universal's protected conduct, they bear the burden of demonstrating "a probability of prevailing on the merits of each" claim.  *Gangland Prods.*, 730 F.3d at 953.  Plaintiffs do not and cannot make this showing for two independent reasons.  *First*, as explained in Sections V and VI, all of Plaintiffs' claims and requests for relief fail on the merits.  *Second*, even if Plaintiffs claims did not fail in their own right (which they do), Plaintiffs could not proceed with their challenge to the trailer's and movie's content under well-settled First Amendment principles.  Section VII, *infra*.

Because all of the arguments set forth in Sections V–VII apply to both the anti-SLAPP and Rule 12 motions, those arguments constitute Universal's step-two arguments for purposes of the anti-SLAPP motion.

### V.   PLAINTIFFS FAIL TO STATE ANY CLAIM FOR RELIEF

Together, Plaintiffs allege seven distinct claims under California and Maryland law.  Plaintiff Rosza, who purports to represent a California class, alleges claims under the UCL, FAL, and CLRA, as well as for unjust enrichment and breach of express warranty under California law.  Plaintiff Woulfe, who purports to represent a Maryland class, alleges claims under the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law § 13-301 *et seq.*, and for unjust enrichment, breach of express warranty, and breach of implied warranty under Maryland law. Plaintiffs fail to plead any of these claims.

### A.  All Of Plaintiffs' Claims Fail Because Plaintiffs Do Not Plead They Relied On A Misrepresentation Of Fact In Deciding To Pay To View *Yesterday*

To state a claim for relief in federal court under any of their asserted causes of action, Plaintiffs must allege that they relied on an actionable misrepresentation of fact in deciding to pay to view *Yesterday*. *See Anderson v. Apple, Inc.*, 500 F. Supp. 3d 993, 1005 (N.D. Cal. 2020) ("In claims involving misrepresentations to consumers, courts have often required that the consumers plausibly allege that they 'actually relied' on an allegedly misleading statement to plead Article III standing. The theory behind requiring actual reliance is that a consumer's injury cannot be 'fairly traceable' to the defendant's alleged misrepresentation unless that consumer actually relied on the misrepresentation.") (citations omitted).

Plaintiffs cannot satisfy this fundamental requirement because the only thing they say they relied on—the *Yesterday* trailer—does not make any affirmative representation that de Armas or the "Something" song-joke will actually be in the movie's final cut.  The requirement of a misrepresentation of fact is a common element of all of Plaintiffs' claims.[10]  FAC ¶¶ 98-100, 112, 119, 130, 141, 158, 166. And, to be actionable, a representation must be concrete and definitive.

---

[10] *See Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1186-88 (N.D. Cal. 2021) (dismissing UCL, FAL, CLRA, and unjust enrichment claims "because plaintiff alleges no facts showing an affirmative misrepresentation"); *Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1423 (1988) (unjust enrichment claim fails if the defendant made no actionable misrepresentation); *Rice v. Sunbeam Prods., Inc.*, 2013 WL 146270, at *12 (C.D. Cal. Jan. 7, 2013) (dismissing express warranty claim absent an "unequivocal statement" constituting a representation); *Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*, 2016 WL 6583892, at *16 (Md. Ct. Spec. App. Nov. 4, 2016) (under MCPA "statements are not actionable as a matter of law … where the claim depends on an objectively unreasonable interpretation of the statement"); *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 765 (D. Md. 2012) (dismissing express warranty claim because "the statement alone does not represent" what the plaintiffs say it does); Md. Code, Com. Law § 2-314(2)(f) (requiring "promises" or "affirmations" for implied warranty claim).

"[G]eneralized, vague and unspecific assertions" will not suffice. *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003); *see First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 164 (2003) (rejecting assertion "so vague and general as to be incapable of particular application").

The *Yesterday* trailer makes no factual representation that de Armas or the "Something" song-joke scene will be in the movie's final cut. Nothing in the trailer states that, if a consumer pays to see *Yesterday*, de Armas or the "Something" song-joke will be in it. Ana de Armas's name does not appear anywhere in the trailer. She is visible for less than 15 seconds. And she does not utter a word in that time. "Something" is also audible for only about 10 seconds. By contrast, the trailer *does* list others by name who appear or were involved in making the movie. For example, the trailer states that *Yesterday* was directed by "the Academy Award Winning Director of Slumdog Millionaire" (at 1:31), was written by "the writer of Love Actually" (at 1:34), and features actors "Lily James" (at 2:32) and "Himesh Patel" (at 2:35). RJN Ex. 1. The *de minimis* inclusion of de Armas and the "Something" song-joke in the trailer is too vague and non-specific to definitely represent that viewers will see the actress and see or hear the "Something" joke and song in the full-length movie. *See Glen Holly Ent.*, 352 F.3d at 379.

The trailer's context also "undermine[s] the reasonableness of Plaintiff's claimed understanding," and, like the *de minimis* nature of the scene itself, renders Plaintiffs' claim of having been misled by the trailer "simply implausible." *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 483 F. Supp. 3d 838, 844–45 (C.D. Cal. 2020). As noted, trailers for decades have previewed what a movie is about. They have never been found to represent that every image, actor, line of dialogue, or song used in the trailer will be in the final movie. *See supra* at 3–4. Indeed, "almost every movie with a sufficient amount of promotional material will feature at least some shots not in the final movie." *Missing Trailer Scene*, tvtropes, https://tinyurl.com/bdfrujhd (last visited May 5, 2022); *see also Scenes*

DEFENDANT'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

*from Trailers that Aren't in the Final Film*, reddit, https://tinyurl.com/mswtm7ax (last visited May 5, 2022) (Reddit thread dedicated to this topic).  In addition, as Plaintiffs themselves admit, director Danny Boyle publicly disclosed in June 2019, before the movie's release and roughly two years before Plaintiffs had even watched the trailer, that neither de Armas nor the scene would be in the movie.  FAC ¶¶ 27–28, 32, 34.

What is more, Plaintiffs' theory lacks a principled limit, offering no objective criteria to measure what a trailer actually represents.  For instance, suppose that here the relevant 15-second portion from the trailer had been in the movie.  Could Plaintiffs (or other consumers) still complain that the trailer represented that de Armas would be in *more* than 15 seconds of the movie?  Could they complain that, even if they saw more of her, the trailer represented she would speak lines?  Or play a specific "romantic" role?  *See, e.g.*, FAC ¶ 26.  Could they also complain that the trailer represented they would hear all, most, a third, or some other amount of "Something" in the movie?  Plaintiffs would open the floodgates to claims like these, where answers depend purely on subjective judgments about what representations a trailer purportedly makes, or how or when it makes them.  *See L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 861 (N.D. Cal. 2015) (finding statement non-actionable where there was "no discernible way to measure" compliance with it); *Singh v. Lenovo (U.S.) Inc.*, 510 F. Supp. 3d 310, 330 (D. Md. 2021) (statement must be "quantifiable").

## B.     Rosza's UCL Claim Fails

The UCL proscribes any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent."  *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007).  Rosza alleges a violation of all three.  FAC ¶¶ 98, 100, 102.  None are viable as matter of law.

Moreover, Rosza cannot recover monetary relief for the claimed UCL violation; at a minimum, that request should be stricken.

### 1.     Rosza Fails To State A Claim Under The "Unlawful" Prong

"To be 'unlawful' under the UCL, the advertisements must violate another 'borrowed' law." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (affirming dismissal of UCL claim because advertisements did not violate alleged predicate statute). Rosza alleges underlying violations of the UCL, FAL, CLRA, and multiple other provisions of the California Civil Code (§§ 1572, 1573, 1709, 1711). FAC ¶ 98.

For the reasons stated *supra* at 13–15 and *infra* at 17–22, the UCL, FAL, and CLRA claims fail and cannot serve as predicate violations. As for the four other Civil Code provisions, Rosza does not explain what those statutes are, much less how Universal violated them. That alone compels their dismissal as predicate violations. *See Shupe v. Nationstar Mortg. LLC*, 231 F. Supp. 3d 597, 605 (E.D. Cal. 2017) (dismissing UCL claim under "unlawful" prong where allegations supporting predicate violations "are fully conclusory and wholly devoid of facts").

Rosza's failure to elaborate on his claims under the four other Civil Code provisions is explained by the fact that he has no claim under any of them. All four provisions require a misrepresentation of fact, and as explained, *supra* at 13–15, Rosza does not and cannot allege that the source of his alleged reliance (the trailer) makes any misrepresentation of fact. *See Vega v. Ocwen Fin. Corp.*, 2015 WL 1383241, at *11 (C.D. Cal. Mar. 24, 2015) (dismissing these predicate violations because "Vega has failed to allege any conduct that could be fairly considered fraud or deceit").

Moreover, Section 1572 does not apply because Rosza has not alleged that he and Universal are parties to the same contract. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997) ("Clearly, the fraud allegations in LiMandri's complaint do not fall within the purview of Section 1572, as they establish no contractual or

precontractual relationship between LiMandri and Judkins."); *Howe v. Deck*, 46 Cal. App. 2d 569, 578 (1941) (rejecting application of Section 1572 because "[t]he appellant was not a party to the contracts under which the interests in question were purchased").

Likewise, Section 1573 does not apply because Rosza has not alleged that he and Universal share a fiduciary or confidential relationship. *See Gilles v. Wineteer*, 2019 WL 6037422, at *5 (S.D. Cal. Nov. 14, 2019) (dismissing Section 1573 claim because "Plaintiff fails to allege any 'fiduciary or confidential relationship'"); *Fabian v. LeMahieu*, 2019 WL 4918431, at *14 (N.D. Cal. Oct. 4, 2019) (same); *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1326 (Fed. Cir. 1998) (same).

### 2.     Rosza Fails To State A Claim Under The "Fraud" Prong

Rosza's claim under the "fraud" prong fails because he "alleges no facts showing an affirmative misrepresentation" in the trailer, which is the basis for his claimed reliance. *Gudgel*, 514 F. Supp. 3d at 1185–88.

### 3.     Rosza Fails To State A Claim Under The "Unfair" Prong

Rosza's theory under the UCL's "unfair" prong overlaps entirely with his theory on the other UCL prongs.  FAC ¶¶ 100-101.  Because he cannot state a claim under the two other prongs, he necessarily cannot do so under this prong either.  *See Johnson v. Ocwen Loan Servicing, LLC*, 2017 WL 10581088, at *8 (C.D. Cal. Dec. 11, 2017), *aff'd*, 744 F. App'x 418 (9th Cir. 2018); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017).

### 4.     Rosza Cannot Recover Monetary Relief Under Any Prong

Under any prong of the UCL, "the only monetary relief available is restitution." *Lee v. Luxottica Retail N. Am., Inc.*, 65 Cal. App. 5th 793, 800 (2021) (alterations omitted); *see* FAC ¶ 107.  To the extent Rosza seeks monetary relief, his claim for restitution fails as a matter of law for two independent reasons.

*First*, because restitution is an equitable remedy, a plaintiff wishing to pursue restitution "must establish that she lacks an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal of UCL restitution claims where adequate legal remedy existed).  "Accordingly, a federal court cannot grant relief under the UCL … if Plaintiffs have an adequate remedy at law." *Williams v. Apple, Inc.*, 2020 WL 6743911, at *9 (N.D. Cal. Nov. 17, 2020).

Rosza's complaint suffers the same deficiencies as the complaint in *Sonner*. "Initially, the operative complaint does not allege that [Rosza] lacks an adequate legal remedy." *Sonner*, 971 F.3d at 844.  To the contrary, the complaint makes clear that he *does* allege he has such a remedy:  he requests "actual damages" under the CLRA and for breach of warranty in the form of the return of the money he paid to stream *Yesterday*.  FAC ¶¶ 160, 171, 174.  This is exactly the restitutionary remedy Rosza seeks under the UCL.  FAC ¶ 107 (seeking restitution "of all money obtained from Plaintiff").  As in *Sonner*, Rosza's request for "the same amount of money" in actual damages as in restitution "for the exact same harm" shows that he has an adequate remedy at law, and his request for restitution cannot survive.  *Sonner*, 971 F.3d at 844; *see Heredia v. Sunrise Senior Living LLC*, 2021 WL 819159, at *4 (C.D. Cal. Feb. 10, 2021) (dismissing UCL claim with prejudice because the plaintiffs' "claims for damages … are based on the same factual predicate as their claim for restitution and seek the same relief, *i.e.* the return of fees paid").

Rosza cannot avoid *Sonner* on the ground that Universal argues his claims for money damages under the CLRA and for breach of warranty also fail.  *See supra* 13–15; *infra* 20–25.  Rosza's "inability to obtain damages here results from [those] claims' failure on the merits," not "an inherent limitation of the legal remedy that renders it inadequate." *Hanscom v. Reynolds Consumer Prods. LLC*, 2022 WL 591466, at *3 (N.D. Cal. Jan. 21, 2022); *see also United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990) ("Failure to comply with a remedy at law does not make it

1  inadequate so as to require the district court to exercise its equitable jurisdiction.").

2  Rosza thus cannot seek monetary relief under the UCL.

3       *Second*, the purpose of restitution is "to make whole, equitably, the victim of

4  an unfair practice," *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998), but here,

5  there is nothing with which to make Rosza "whole," as he received the benefit of

6  what he paid for.  The *Day* requirement "includes two separate components[:]  The

7  offending party must have obtained something to which it was not entitled *and* the

8  victim must have given up something which he or she was entitled to keep."  *Id.* at

9  340.  As such, restitution is unavailable to "a consumer who … obtains the

10 full value of what was paid for and therefore has given up nothing, *regardless of*

11 *whether he or she was improperly induced to purchase the [product] in the first*

12 *place*."  *Id.* (emphasis added).  Thus, a consumer who claimed they were misled into

13 believing an auto insurance policy included collision coverage could not recover

14 restitution for that alleged deception, since he still received a comprehensive

15 insurance policy and accordingly "obtain[ed] the full value of what was paid for."

16 *Alaei v. Gov't Emps. Ins.*, 2021 WL 1165067, at *8 (S.D. Cal. Mar. 25, 2021); *see,*

17 *e.g.*, *Germain v. J.C. Penney Co.*, 2009 WL 1971336, at *6 (C.D. Cal. July 6, 2009)

18 (consumers who "retained and used" clothing "have not 'lost money or property,'"

19 even if they were falsely promised a free airline ticket with their purchase).

20       Rosza received exactly what he paid $3.99 for:  the ability to stream on

21 Amazon a full-length movie about a musician who discovers "that that the world's

22 knowledge of The Beatles has been erased" and "adopts The Beatles' songs as his

23 own."  FAC ¶ 25.  By the same token, Universal did not receive any money to

24 which it was not entitled as consideration for permitting Rosza to watch the movie.

25 *See Benn v. Allstate Ins.*, 2021 WL 5049101, at *6 (C.D. Cal. Oct. 29, 2021)

26 (dismissing UCL claim because "[t]he only thing that Allstate obtained from [the

27 plaintiff] was her premium payments for her policy.  And if Allstate were forced to

28 return its premiums, there would be no consideration for the insurance policy to

-19-

1  exist.").  It is irrelevant whether, as Rosza alleges, the trailer misled him.  *Day*, 63

2  Cal. App. 4th at 340.

3  **C.   Rosza's FAL Claim Fails**

4  At the outset, Rosza's FAL claim fails because, as noted above, he has not

5  alleged any "untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17500;

6  *see Gudgel*, 514 F. Supp. 3d at 1187 (finding "no support for the argument that the

7  challenged statements, even when viewed in their totality, would lead a reasonable

8  consumer to believe that the product" bore the alleged characteristics).

9  In addition, as with the UCL, restitution is the only available monetary

10  remedy for a violation of the FAL.  *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.

11  App. 4th 663, 695 (2006); *see* FAC ¶ 114.  Under *Sonner*, Rosza must plausibly

12  plead an inadequate remedy at law.  *See Adams v. Cole Haan, LLC*, 2020 WL

13  5648605, at *1–3 (C.D. Cal. Sept. 3, 2020) (dismissing FAL claim for this reason).

14  Rosza has not done so.  Nor can he do so for the same reasons that doom his request

15  for restitution under the UCL:  Rosza expressly pleads he has a remedy at law, FAC

16  ¶ 114 ("Plaintiff requests that the Court order Defendant to restore the money

17  Defendant has received from Plaintiff."); and Rosza received what he paid for.

18  *Supra* at 19–20.  Rosza's FAL claim thus cannot survive to the extent it seeks

19  monetary relief.  *See Heredia*, 2021 WL 819159, at *5 (dismissing with prejudice

20  where plaintiffs had adequate remedy at law).

21  **D.   Rosza's CLRA Claim Fails**

22  The CLRA "is not a law of 'general applicability.'"  *Ting v. AT&T*, 319 F.3d

23  1126, 1148 (9th Cir. 2003).  The CLRA proscribes a limited set of "unfair or

24  deceptive acts or practices" that are "intended to result or that result[] in the sale or

25  lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  "Goods"

26  are defined as "tangible chattels" while "[s]ervices" refers to "work, labor, and

27  services for other than a commercial or business use."  Cal. Civ. Code § 1761(a)–

28

-20-

(b).  Because Rosza bought neither a good nor a service as defined, the CLRA does not apply.  *See Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61 (2009).[11]

Rosza admits that he only "purchased rights to view the movie."  FAC ¶ 8. He thereby acquired only a time-limited license to watch the movie on Amazon.  As Amazon's terms explain, "[s]ubject to payment of any charges to rent, purchase, or access [*Yesterday*]," Rosza received "a non-exclusive, non-transferable, non-sublicensable, limited license, during the applicable Viewing Period, to access and view the [film] in accordance with the Usage Rules, for personal, non-commercial, private use."  RJN Ex. 5, § 4(h) (Amazon Prime Video Terms of Use).  Rosza could not "transfer, copy or display" the movie, or otherwise "sell, rent, lease, distribute, or broadcast any right to" it.  *Id.* § 4(k).

As a licensee, Rosza did not receive a "tangible chattel" or "work, labor, [or] services" from Amazon.  The CLRA does not cover temporary licenses to access or use a product.  *See, e.g.*, *Ferrington v. McAfee, Inc.*, 2010 WL 3910169, at *18–19 (N.D. Cal. Oct. 5, 2010) (license to use computer software); *Hall v. Sea World Ent., Inc.*, 2015 WL 9659911, at *14–15 (S.D. Cal. Dec. 23, 2015) (license to access an amusement park); *Wixon v. Wyndham Resort Dev. Corp.*, 2008 WL 1777590, at *4 (N.D. Cal. Apr. 18, 2008) (license to use and access timeshare property).  For example, in *Lazebnik v. Apple, Inc.*, Apple sold a "Season Pass" allowing consumers to stream on iTunes "all current and future episodes of Breaking Bad, Season 5" as they were released.  2014 WL 4275008, at *1 (N.D. Cal. Aug. 29, 2014).  Noting that the Season Pass was "either software or a license" which "federal courts have

---

[11] Rosza seeks both actual damages and restitution under the CLRA.  FAC ¶¶ 172, 174.  As with the UCL and FAL, *supra* at 17–20, his request for restitution is foreclosed because he has an adequate remedy at law and received exactly what he paid for.  *See Sonner*, 971 F.3d at 844 (affirming dismissal of CLRA claim for restitution where adequate legal remedy exists).

DEFENDANT'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1    excluded … from the reach of the CLRA," the court dismissed the claim.  *Id.* at *5.

2    The same result follows here.

3    **E.      Plaintiffs' Claims For Unjust Enrichment Fail**

4           Plaintiffs seek restitution for unjust enrichment.  FAC ¶¶ 120-121, Request

5    for Relief ¶ B.  As with the UCL, FAL, and CLRA, to recover this equitable remedy

6    under California law, Rosza must plead an inadequate remedy at law.  *See Nguyen v.*

7    *Nissan N. Am., Inc.*, 2017 WL 1330602, at *4–5 (N.D. Cal. Apr. 11, 2017)

8    (dismissing unjust enrichment claim for this reason).  For the same reasons, he

9    cannot.  *Supra* at 17–19.  Moreover, both Plaintiffs received exactly what they paid

10   for, further foreclosing any relief under this claim.  *Supra* at 19–20.

11   **F.      Plaintiffs' Express Warranty Claims Fail**

12          To prevail on their express warranty claims, Plaintiffs must prove, among

13   other things, that an express warranty existed under Cal. Com. Code § 2313 and Md.

14   Code, Com. Law § 2-313.  *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d

15   1306, 1333 (C.D. Cal. 2013); *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 107 (D.

16   Md. 2020).  They cannot do so as a matter of law for three independent reasons.

17          *First*, in both California and Maryland, an express warranty can arise only in

18   "transactions in *goods*."  *Asghari*, 42 F. Supp. 3d at 1333 (emphasis added) (quoting

19   Cal. Com. Code § 2102); Md. Code, Com. Law § 2-102.  This requirement derives

20   from the texts of the States' express warranty statutes (themselves based on the

21   UCC), which repeatedly refer to the existence of warranties only for "goods."  Cal.

22   Com. Code § 2313(1)(a)-(c); Md. Code, Com. Law § 2-313(a)-(c).  "Goods," in

23   turn, "means all things … which are *movable* at the time of identification to the

24   contract for sale."  Cal. Com. Code § 2105(1) (emphasis added); Md. Code, Com.

25   Law § 2-105(1) (same).

26          As explained above, Plaintiffs purchased a time-limited license to stream

27   *Yesterday* on Amazon.  *See* FAC ¶¶ 8, 11 (alleging that Plaintiffs "purchased rights

28   to view the movie").  They did not purchase a "movable" item.  This Court reached

precisely that conclusion in *Anthony*, where, applying a substantively identical definition of "goods" to an implied warranty claim, the Court held that "streaming services" sell only "a license to view the expressive content," the plaintiff did not purchase any "items that can be moved," and the plaintiff therefore could not state a warranty claim.  2016 WL 6836950, at *4.  The same result applies here.

*Second*, in both California and Maryland, only a "seller" can create an express warranty.  Cal. Com. Code § 2313(1); Md. Code, Com. Law § 2-313(1).  A "'[s]eller' means a person who sells or contracts to sell goods," Cal. Com. Code § 2103(1)(d); Md. Code, Com. Law § 2-103(1)(d), while a "'sale' consists in the passing of title from the seller to the buyer for a price," Cal. Com. Code § 2106(1); Md. Code, Com. Law § 2-106(1).  A "sale is an essential element to impose liability under warranties."[12]  *Shepard v. Alexian Bros. Hosp.*, 33 Cal. App. 3d 606, 614 (1973); *see Bona v. Graefe*, 264 Md. 69, 73 (1972).

Plaintiffs have not alleged that Universal is a "seller," *i.e.*, that it transferred title to its movie.  *See* FAC ¶¶ 156-160.  Nor could they.  Again, as this Court explained in *Anthony*, "[i]n the case of … streaming services, the title to the video content remains with the copyright owner," while the purchaser "only purchases a license to view the expressive content."  2016 WL 6836950, at *4.  "As a result," when streaming a movie, "there has been no sale with respect to the expressive video content because title has not been passed."  *Id.*

*Third*, absent allegations of personal injury (of which there are none here), "privity is a required element" for breach of express warranty in Maryland.  *H & M Co. v. Tech. Heat Transfer Servs., Inc.*, 2015 WL 1472000, at *4 (D. Md. Mar. 30, 2015).  Woulfe has not alleged that he is in contractual privity with Universal:  he

---

[12] This follows also from the definition of "[g]oods," which presumes that a "good" is covered only if identified in a "contract for *sale*."  Cal. Com. Code § 2105(1) (emphasis added); Md. Code, Com. Law § 2-105(1) (same).

streamed *Yesterday* on Amazon's platform by engaging solely with Amazon, FAC ¶ 10, which in turn contracted with Universal to stream the movie. *See H & M Co.*, 2015 WL 1472000, at *4 (dismissing claim because "H & M's contract was solely with TJO, and it was TJO that, in turn, contracted with THTS"); *KeraLink Int'l, Inc. v. Stradis Healthcare, LLC*, 2021 WL 4420636, at *13 (D. Md. Sept. 27, 2021) (same where product went through intermediaries before reaching the plaintiff).

### G.   Woulfe's Implied Warranty Claim Fails

Woulfe alleges that Universal violated the implied warranty of merchantability, Md. Code, Com. Law § 2-314, and the implied warranty of fitness for particular use, § 2-315.  FAC ¶¶ 124, 132.  The former warrants that a good is, among other things, "fit for the ordinary purposes for which such goods are used." Md. Code, Com. Law § 2-314(2)(c).  The latter warrants that a good is fit for the buyer's "particular purpose." *Id.* § 2-315(1).  Neither theory is viable here for several independent reasons.

*First*, like express warranties, these implied warranties can only exist for "goods," *id.* §§ 2-314, 2-315, 2-102, defined as "movable" items, § 2-105(1); *see Sheeskin v. Giant Food, Inc.*, 20 Md. App. 611, 623 n.3 (1974) (implied warranty does not arise in transactions for real property, because those "do not involve movable things").  As above, Woulfe cannot allege that the license he purchased is movable.  *See Anthony*, 2016 WL 6836950, at *4; *cf. Lazebnik*, 2014 WL 4275008, at *5.

*Second*, the implied warranties exist only "in a contract for … sale," Md. Code, Com. Law § 2-314, and may only be given by a "seller at the time of contracting," § 2-315.  Although Woulfe alleges that Universal "sells the movie," FAC ¶ 128, just as with his express warranty claim, he does not allege that Universal transferred title to *Yesterday*.  *See Anthony*, 2016 WL 6836950, at *4. "[T]he implied warranties" in Maryland "are inapplicable" to "transactions in which title does not pass."  *Sheeskin*, 20 Md. App. at 623 n.3; *see* §§ 2-106(1), 2-103(1)(d).

-24-

1    *Third*, to recover on either theory of breach of implied warranty, the buyer

2    must "inform the seller of the breach, the particular goods that have been impaired,

3    and set forth the nature of the nonconformity." *Doll v. Ford Motor Co.*, 814 F.

4    Supp. 2d 526, 542 (D. Md. 2011) (dismissing claim for failure to give notice); *see*

5    § 2-607(3)(a). Woulfe did not do that, and neither the filing of his complaint nor

6    Rosza's CLRA notice excuse Woulfe's failure. *See Morris*, 491 F. Supp. 3d at 106

7    ("a lawsuit cannot constitute notice of a breach under Maryland law").

8    *Finally*, to state a claim for breach of the implied warranty of fitness for

9    particular use, Woulfe must plausibly allege that "the seller at the time of

10   contracting ha[d] reason to know any particular purpose for which the goods are

11   required and that the buyer [was] relying on the seller's skill or judgment to select or

12   furnish suitable goods." § 2-315(1). Woulfe has not alleged a unique purpose for

13   seeing the movie. And even if his intention was solely to see de Armas and the

14   "Something" song-joke scene, Woulfe has not alleged any fact showing how

15   Universal could have known that. *See Casey v. Geek Squad Subsidiary Best Buy*

16   *Stores, L.P.*, 823 F. Supp. 2d 334, 359 (D. Md. 2011) (dismissing claim absent

17   allegation "that the buyer have a particular purpose for the goods, unique from the

18   'normal use of the goods,'" and without evidence "that Mr. Casey expressed any

19   such purpose to Defendant").

20   ## VI.   PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF FAIL

21   In addition to damages and restitution, Plaintiffs seek injunctive relief on a

22   number of claims, including requiring Universal "to engage in a corrective

23   advertising campaign." *E.g.*, FAC ¶¶ 83, 92, 107, 114, 172; Request for Relief, ¶ C.

24   Plaintiffs cannot seek injunctive relief for two independent reasons.

25   ### A.   Plaintiffs Lack Article III Standing To Seek Injunctive Relief

26   "A plaintiff must demonstrate constitutional standing separately for each form

27   of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir.

28   2018). "[W]here, as here, a plaintiff seeks prospective injunctive relief, he must

-25-

demonstrate that he is realistically threatened by a repetition of the violation." *Armstrong v. Davis*, 275 F.3d 849, 860–61 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005). "[T]he threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson*, 889 F.3d at 967 (internal quotation marks omitted). "In other words, the 'threatened injury must be *certainly impending*'" and "allegations of *possible* future injury are not sufficient." *Id.* (emphasis in original).

Plaintiffs cannot make that showing. Having seen *Yesterday*, Plaintiffs know that de Armas and the scene with "Something" do not appear in the movie. FAC ¶¶ 7, 10. Plaintiffs cannot be misled by the trailer in the future and therefore are not at risk of any further harm from it. *See City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983) (plaintiff lacked standing "[a]bsent a sufficient likelihood that he will again be wronged in a similar way").

To be sure, "[k]nowledge that the advertisement or label was false in the past does not" always "equate to knowledge that it will remain false in the future." *Davidson*, 889 F.3d at 969. But that is only when "plaintiffs sufficiently allege their intention to repurchase the product at issue" and cannot "rely on the product's advertising or labeling in the future," perhaps because they "may reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70 & n.5; *see, e.g.*, *Tryan v. Ulthera, Inc.*, 2018 WL 3955980, at *9–10 (E.D. Cal. Aug. 17, 2018) (no standing "in the absence of any such plausible allegations that either Plaintiff would undergo Ultherapy again"); *Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) (no standing because "Plaintiff has not alleged that he has any interest in purchasing the Product in the future"); *Anderson*, 500 F. Supp. 3d at 1008 (no standing because plaintiffs have not "alleged (in the FAC) a desire to purchase the iPhone XR in the future").

Plaintiffs have not alleged their intention to pay to see *Yesterday* again. To the contrary, they repeatedly allege that they would not pay to see the movie without

DEFENDANT'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

de Armas or "Something."  *E.g.*, FAC ¶ 12 ("But for Defendant's false and/or misleading representations and deceptions promoting the movie, Plaintiffs would not have paid to view the movie *Yesterday*.").  And where, as here, plaintiffs "admit[] in the FAC that" had they "known the truth about Defendants' misrepresentation and omissions," they "would not have purchased Defendants' Product," plaintiffs lack standing to seek prospective relief.  *Jovel v. Boiron Inc.*, 2013 WL 12164622, at *6 (C.D. Cal. Aug. 16, 2013) (Wilson, J.).

### B.   Plaintiffs Have Not Alleged An Inadequate Remedy At Law

Even if Plaintiffs have standing, they cannot allege an inadequate remedy at law.  As with restitution, *supra* at 18–19, injunctive relief is an equitable remedy subject to the equitable principle that plaintiffs requesting such relief "are required to allege that they lack an adequate remedy at law."  *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (citing *Sonner*).  Accordingly, "numerous courts … have applied *Sonner* to injunctive relief claims."  *Id.*; *see, e.g.*, *Adams*, 2020 WL 5648605, at *3.  In addition, as "a fundamental principle for well over a century that state law cannot expand or limit a federal court's equitable authority," *Sonner* applies no matter the state law at issue, be it California or Maryland, and regardless of whether the "state authorizes its courts to provide equitable relief when an adequate legal remedy exists."  *Sonner*, 971 F.3d at 841.

For reasons similar to the defects in their requests for restitutionary remedies, Plaintiffs' request for injunctive relief fails because Plaintiffs allege they have an adequate remedy at law.  "Courts generally hold that monetary damages are an adequate remedy for claims based on an alleged product defect, and reject the argument that injunctive relief requiring repair or replacement is appropriate."  *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (citing cases).  Here, Plaintiffs do "not explain why [they] could not sufficiently be 'made whole' by monetary damages."  *Id.*  Instead, they expressly allege under both California and Maryland

-27-

DEFENDANT'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

law that they should receive damages totaling the amount they paid to stream *Yesterday*. *E.g.*, FAC ¶¶ 134, 155, 160, 171, 174. Thus, "[b]ecause Plaintiffs' claims rest on their alleged overpayments and [Universal's] failure to issue refunds, … monetary damages would provide an adequate remedy for the alleged injury." *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at \*4; *see also Adams*, 2020 WL 5648605, at \*3 ("the injury that Adams alleges is 'lost money,' a form of harm for which legal damages does seem to be an adequate remedy").

As before, Plaintiffs cannot avoid *Sonner* simply because Universal seeks dismissal of their monetary damages claims. *See supra* 18, 20–25; *Hanscom*, 2022 WL 591466, at \*3. Nor can they cure this deficiency by amending their complaint because "the availability of an adequate legal remedy is clear from the face of the" FAC. *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at \*4 (dismissing with prejudice).

## VII. PLAINTIFFS CANNOT PROCEED WITH THEIR CLAIMS UNDER THE FIRST AMENDMENT

The Court does not have to reach any First Amendment issues because Plaintiffs' claims fail for the non-constitutional reasons set forth in Sections V and VI. But if the Court were to reach the issue, settled law makes clear that Plaintiffs cannot pursue their claims consistent with the First Amendment.

California courts have long recognized the First Amendment problems that would arise by applying laws designed to regulate pure advertising and other forms of commercial speech to expressive works. Accordingly, "California's consumer protection laws, like the unfair competition law, govern only commercial speech." *Rezec v. Sony Pictures Ent., Inc.*, 116 Cal. App. 4th 135, 145 (2004); *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 953–56 (2002). Commercial speech is speech that "does no more than propose a commercial transaction." *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66 (1983). "If speech is not 'purely commercial'—that is,

-28-

DEFENDANT'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

*if it does more than propose a commercial transaction*—then it is entitled to full First Amendment protection." *Stewart*, 181 Cal. App. 4th at 685 (cleaned up).

*First,* it is evident that the *Yesterday* trailer, like the full-length motion picture to which it is tied, is in itself an expressive work that does more than propose a commercial transaction.[13]  The fact that the trailer was produced with an economic motivation (generating audience interest in a movie) does not make it ineligible for First Amendment protection.  *See Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 325, (1997) (promotions for a film are "merely an adjunct to the exhibition of the film" and are protected to the same degree as the film itself, regardless of whether "the advertisements may have increased the profitability of the film" (quoting *Guglielmi*, 25 Cal. 3d at 872)); 2 McCarthy, Rights of Publicity and Privacy § 8:69 ("Advertising for constitutionally protected expressive media shares the constitutional immunity of the media use itself."); *Burstyn*, 343 U.S. at 502 ("[E]xpression by means of motion pictures" is protected).

*Second*, regardless of whether the trailer is deemed to be commercial in some respects, the consumer protection statutes still would not apply because the trailer is inextricably intertwined with *Yesterday* itself, which is "plainly entitled to full First Amendment protection." *Forsyth v. Motion Picture Ass'n of Am., Inc.*, 2016 WL 6650059, at *3 (N.D. Cal. Nov. 10, 2016).  Even speech that might be deemed commercial in some contexts loses that "commercial character when it is inextricably intertwined with otherwise fully protected speech." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988); *William O'Neil & Co. v. Validea.com Inc.*, 202 F. Supp. 2d 1113, 1119 (C.D. Cal. 2002) ("[B]ecause the

---

[13] The *Yesterday* trailer—which does not include statements like "See *Yesterday* for $3.99" or "Watch *Yesterday* now on Amazon"—is readily distinguishable from the kind of statements on "price and quantity" found to be commercial speech. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993) (statements on "price and quantity information" are commercial speech).

book cover, flyleaf, and other material advertising *The Market Gurus* is 'an adjunct' of *The Market Gurus*, it is protected to the same extent as the book itself."). Here, the *Yesterday* trailer, including the specific scene that is the basis for Plaintiffs' claims, tells part of the story of the movie and is inextricably bound up with the content of the movie itself.

*Third*, Plaintiffs' claims inherently challenge the decision about what content to include in the trailer and what content to include in the movie. The claims are a direct attack on editorial choices concerning the trailer and movie, and the First Amendment does not permit challenges to the exercise of such editorial discretion. *See Miami Herald Pub'g Co. v. Tornillo*, 418 U.S. 241 (1974); *Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 895 (2019) (courts must leave "untrammeled the full freedom and liberty of the petitioner to publish the news as it desires" and avoid "unconstitutional interference with a newspaper's editorial judgment" (internal quotation marks omitted)).

In sum, even if Plaintiffs' claims did not fail under the terms of the consumer protection statutes and doctrines on which they are based, the First Amendment would independently prohibit such claims. For all of these reasons, Plaintiffs' claims fail at step two of the anti-SLAPP analysis and under Rule 12.

## VIII.  AMENDMENT WOULD BE FUTILE

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Plaintiffs have sought leave to file a Second Amended Complaint ("SAC"), which they reason will "address the alleged deficiencies in the FAC." Dkt. 28 at 2. But their proposed amendment only confirms that Plaintiffs cannot save their claims.

As an initial matter, the SAC does not even attempt to address the vast majority of the deficiencies Universal has identified in Plaintiffs' FAC. The SAC includes some additional allegations, apparently intended to remedy deficiencies in

some of Plaintiffs' claims. The new allegations do nothing of the kind and instead serve to confirm why any amendment would be futile.

*First*, the lion's share of Plaintiffs' proposed new allegations concern statements allegedly made on VUDU and other online sources. *See, e.g.*, Dkt. 28-3 at ¶¶ 23-30, 86-88. But Plaintiffs never allege that they viewed any such statements; they allege only that they watched the trailer on Amazon's streaming service which, as explained above, did not constitute an affirmative representation. *Id.* at ¶¶ 7, 10. Plaintiffs do not have Article III standing to assert a claim based on these other allegations, because they do not and cannot allege that they actually relied on these alleged statements. *See Anderson*, 500 F. Supp. 3d at 1005 ("If a defendant makes a misrepresentation and the plaintiff, without knowing of that misrepresentation, coincidentally purchases the product in question, her injury is not traceable to the misrepresentation."). In short, Plaintiffs cannot save their claims with allegations about statements that allegedly appear on platforms Plaintiffs did not view.

*Second*, for purposes of the UCL, Rosza alleges in the SAC additional "unlawful" conduct on Universal's behalf: "fraud in contract and breach of [the] covenant of good faith and fair dealing." *Id.* at ¶ 130. These predicate claims, too, require reliance on an actionable misrepresentation of fact, which Rosza cannot allege. And, in any event, standing alone, "a common law violation such as breach of contract is insufficient" to state a claim under the UCL's "unlawful" prong. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010).

*Third*, with respect to the implied warranty claim, Woulfe alleges in the SAC that he provided Universal the requisite notice "via the First Amended Complaint served on Defendant." Dkt. 28-3 at ¶ 166. But Maryland law is clear that "a lawsuit cannot constitute notice of a breach." *Morris*, 491 F. Supp. 3d at 106.

*Fourth*, Rosza alleges that "DVD versions of the movie . . . are 'goods'" under the CLRA and that his "ongoing ability to access, view, and stream the video content for a period of time," as well as "theatrical presentations and online movie

-31-

DEFENDANT'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1    rentals and sales," are "'services' within the meaning of the CLRA." Dkt. 28-3

2    ¶¶ 199-200. Rosza does not allege he watched *Yesterday* on DVD or in theaters, so

3    those allegations are irrelevant to his standing to raise any claim.[14] Moreover,

4    "courts have distinguished between the expressive content of intellectual property

5    and the physical product that conveys that content." *Anthony*, 2016 WL 6836950, at

6    \*4; *see, e.g.*, *Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224, 229 (2007)

7    (a credit card, though itself a physical good, "exists only as indicia of the credit

8    extended to the card holder," and credit itself is not a good or service covered by the

9    CLRA); *Hall*, 2015 WL 9659911, at \*15 (a ticket to access an amusement park is

10   merely a temporary license, and a temporary license is not a good under the CLRA).

11   Here, Plaintiffs take issue with "the story depicted in the movie," and "there is no

12   way to characterize [that] as an aspect of the physical item, such as the DVD" or the

13   movie ticket itself. *Anthony*, 2016 WL 6836950, at \*4. Instead, those items

14   represent merely "a license to view the expressive content," which as explained

15   above is not covered by the CLRA. *Anthony*, 2016 WL 6836950, at \*4 (same result

16   for "DVDs" and "live movies" as for "streaming services," since in all cases only

17   "the expressive content" was at issue).

18        Similarly, the notion Amazon provided a service by displaying *Yesterday* on

19   Rosza's television misses the point. Rosza's complaint is not with how the movie

20   was displayed; it is with the content of the film itself. *See id.* (noting that the

21   complaint concerned only "the expressive content" of the movie, not "the tangible

22   media that conveys that content"). To invoke the CLRA, Rosza must allege that the

23   *license* he purchased to view the movie's content is a tangible chattel or service. He

24   cannot do so. *See Hall*, 2015 WL 9659911, at \*15 (dismissing complaint with

25

26

27   ───────────────

     [14] In any event, Plaintiffs do not and cannot allege that the "Something" scene was

28   not available on other media, including the *Yesterday* DVD. *See supra* n.7.

prejudice because a license to access an amusement park is not a service under the CLRA).

*Finally*, Plaintiffs attempt to save their request for injunctive relief by alleging they intend to see *other* Universal movies. Dkt. 28-3 at ¶ 139. But Plaintiffs do not allege they intend to see *Yesterday* again. On the contrary, Plaintiffs continue to make clear they will not pay to see *Yesterday* again because they know de Armas and the "Something" joke-song scene are not in it.

## IX. CONCLUSION

For the foregoing reasons, Universal respectfully requests that the Court enter an Order striking the FAC in its entirety under Cal. Civ. Proc. Code § 425.16; dismissing all of Plaintiffs' claims with prejudice under Rule 12(b)(6); and dismissing Plaintiffs' claims for injunctive relief with prejudice under Rule 12(b)(1). Universal also reserves its right to seek attorney's fees and costs in connection with its anti-SLAPP motion under Cal. Civ. Proc. Code § 425.16(c)(1).

DATED:  May 5, 2022                  Respectfully submitted,

                                     MUNGER, TOLLES & OLSON LLP


                                     By:  _____*/s/ Kelly M. Klaus*_____
                                          KELLY M. KLAUS
                                     Attorneys for Defendant
                                     UNIVERSAL CITY STUDIOS LLC