KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
VIRGINIA GRACE DAVIS (State Bar No. 336732)
grace.davisfisher@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:  (415) 512-4000
Facsimile:   (415) 512-4077

BETHANY W. KRISTOVICH (State Bar No. 241891)
bethany.kristovich@mto.com
BENJAMIN G. BAROKH (State Bar No. 318629)
benjamin.barokh@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Defendant
UNIVERSAL CITY STUDIOS LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONOR WOULFE and PETER MICHAEL ROSZA, <br><br> Plaintiffs, <br><br> vs. <br><br> UNIVERSAL CITY STUDIOS LLC, d.b.a., UNIVERSAL PICTURES, <br><br> Defendant. | Case No. 2:22-cv-00459-SVW-AGR <br><br> **NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE § 425.16; AND [2] MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6); MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **Filed Concurrently:  Request for Judicial Notice; [Proposed] Order** <br><br> Date:    September 12, 2022 <br> Time:    1:30 p.m. <br> Judge:  Hon. Stephen V. Wilson <br> Courtroom:  10A |

## <u>NOTICE OF MOTIONS AND MOTIONS</u>

TO THE COURT AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 12, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard in the First Street Courthouse, located at 350 West 1st Street, Courtroom 10A, Los Angeles, California, before the Honorable Stephen V. Wilson, Defendant Universal City Studios LLC ("Universal"[1]) will and hereby does move (1) to strike the Second Amended Complaint, Dkt. 36 ("SAC") in its entirety under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16; and (2) to dismiss the SAC in its entirety with prejudice under Federal Rule of Civil Procedure 12(b)(6), and to dismiss the SAC's request for injunctive relief with prejudice under Rule 12(b)(1).[2]

As set forth in the accompanying Memorandum of Points and Authorities, the SAC targets activity protected under the anti-SLAPP statute, and Plaintiffs do not and cannot show they have plausibly alleged any claim for relief.  In addition, Plaintiffs lack standing to seek injunctive relief.

These Motions are based on this Notice of Motions and Motions, the attached Memorandum of Points and Authorities, the contemporaneously filed Request for Judicial Notice ("RJN"), any papers filed in reply, all other papers and records on file in this matter, and any other materials or argument the Court may receive at or before the hearing on these Motions.

These Motions are made following the conference of counsel, pursuant to Civil L.R. 7-3, which took place on April 28, 2022 and June 27, 2022.

---

[1] Abbreviations used in this Notice of Motions are also used in the accompanying Memorandum of Points and Authorities.

[2] Universal reserves the right to seek recovery for its attorney's fees and costs in connection with its anti-SLAPP motion.  *See* Cal. Civ. Proc. Code § 425.16(c)(1).

1   DATED:  July 15, 2022             Respectfully submitted,

2                                     MUNGER, TOLLES & OLSON LLP

3

4

5                                     By:    _/s/ Kelly M. Klaus_____

6                                            KELLY M. KLAUS
                                      Attorneys for Defendant
7                                     UNIVERSAL CITY STUDIOS LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S SPECIAL MOT. TO STRIKE AND MOT. TO DISMISS SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ............................................................................................. 2

A.    The *Yesterday* Trailer ....................................................................... 3

B.    Plaintiffs' Multiple Amendments To Their Complaint ...................... 5

III.  LEGAL STANDARDS GOVERNING UNIVERSAL'S MOTIONS ............ 6

A.    Universal's Anti-SLAPP Motion To Strike ...................................... 6

B.    Universal's Rule 12(b)(6) And Rule 12(b)(1) Motions ...................... 7

IV.   PLAINTIFFS' CLAIMS SHOULD BE STRICKEN UNDER THE
      ANTI-SLAPP STATUTE ............................................................................... 8

A.    Step One:  Plaintiffs' Claims Are Based On Universal's Acts In
      Furtherance Of Its Free Speech Rights In Connection With
      Public Issues ....................................................................................... 8

      1.    The *Yesterday* Trailer Is An "Act In Furtherance" Of
            Universal's Right To Free Speech ............................................ 9

      2.    The *Yesterday* Trailer Is Expressive Conduct "In
            Connection With A Public Issue Or An Issue Of Public
            Interest" .................................................................................. 10

B.    Step Two:  Plaintiffs Fail To State Any Claim For Relief ................ 11

V.    PLAINTIFFS FAIL TO STATE ANY CLAIM FOR RELIEF ..................... 12

A.    All Of Plaintiffs' Claims Fail Because Plaintiffs Do Not Plead
      They Relied On A Misrepresentation Of Fact In Deciding To Pay
      To View *Yesterday* ........................................................................... 12

      1.    *Yesterday*'s Trailer Does Not Represent That De Armas
            Or The "Something" Song-Joke Will Be In The Final
            Movie ...................................................................................... 13

      2.    Plaintiffs Lack Standing To Rely On Assertions Universal
            Allegedly Made In Places Other Than *Yesterday*'s Trailer ........ 15

B.    Rosza's UCL Claim Fails ................................................................ 16

      1.    Rosza Fails To State A Claim Under The "Unlawful"
            Prong ...................................................................................... 16

      2.    Rosza Fails To State A Claim Under The "Fraud" Prong .......... 18

      3.    Rosza Fails To State A Claim Under The "Unfair" Prong ......... 18

4.      Rosza Cannot Recover Monetary Relief Under Any Prong ....... 18

C.      Rosza's FAL Claim Fails ......................................................... 21

D.      Rosza's CLRA Claim Fails ...................................................... 21

E.      Plaintiffs' Claims For Unjust Enrichment Fail ...................................... 24

F.      Plaintiffs' Express Warranty Claims Fail ............................................. 24

G.      Plaintiffs' Implied Warranty Claims Fail ............................................. 27

VI.     PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF FAIL ...................... 28

A.      Plaintiffs Lack Article III Standing To Seek Injunctive Relief ........... 29

B.      Plaintiffs Have Not Alleged An Inadequate Remedy At Law .............. 30

VII.    PLAINTIFFS CANNOT PROCEED WITH THEIR CLAIMS UNDER THE FIRST AMENDMENT .................................................. 31

VIII.   LEAVE TO AMEND IS UNWARRANTED .................................................. 34

IX.     CONCLUSION ..................................................................................... 34

DEFENDANT'S SPECIAL MOT. TO STRIKE AND MOT. TO DISMISS SECOND AMENDED COMPLAINT

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Adams v. Cole Haan, LLC*,
   2020 WL 5648605 (C.D. Cal. Sept. 3, 2020)...........................................21, 30, 31

*Alaei v. Gov't Emps. Ins.*,
   2021 WL 1165067 (S.D. Cal. Mar. 25, 2021).......................................................20

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011)............................................................................26, 28

*Anderson v. Apple, Inc.*,
   500 F. Supp. 3d 993 (N.D. Cal. 2020)...............................................................12, 15

*Anthony v. Buena Vista Home Ent., Inc.*,
   2016 WL 6836950 (C.D. Cal. Sept. 28, 2016)..............................................passim

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001)..................................................................................29

*Asghari v. Volkswagen Grp. of Am., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. 2013)....................................................................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................7

*Barrus v. Sylvania*,
   55 F.3d 468 (9th Cir. 1995).....................................................................................17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................7

*Benn v. Allstate Ins.*,
   2021 WL 5049101 (C.D. Cal. Oct. 29, 2021) ........................................................21

*Bolger v. Youngs Drug Prod. Corp.*,
   463 U.S. 60 (1983) .................................................................................................31

*Bonin v. Calderon*,
   59 F.3d 815 (9th Cir. 1995)....................................................................................34

*Botts v. Johns Hopkins Univ.*,
   2021 WL 1561520 (D. Md. Apr. 21, 2021) ...........................................................14

*Bradley v. Chiron Corp.*,
    136 F.3d 1317 (Fed. Cir. 1998) ........................................................ 18

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ............................................................ 30

*Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*,
    823 F. Supp. 2d 334 (D. Md. 2011) ................................................. 28

*City of Cincinnati v. Discovery Network, Inc.*,
    507 U.S. 410 (1993) ......................................................................... 32

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990) ............................................................ 17

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ................................................. 8, 29, 30

*Davis v. HSBC Bank Nev., N.A.*,
    691 F.3d 1152 (9th Cir. 2012) .......................................................... 16

*Doe v. Gangland Prods., Inc.*,
    730 F.3d 946 (9th Cir. 2013) ................................................... 7, 9, 11

*Durkee v. Ford Motor Co.*,
    2014 WL 4352184 (N.D. Cal. Sept. 2, 2014) ................................... 20

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ............................................................ 14

*Fabian v. LeMahieu*,
    2019 WL 4918431 (N.D. Cal. Oct. 4, 2019) .................................... 18

*Ferrington v. McAfee, Inc.*,
    2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) .................................... 22

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab.
Litig.*,
    483 F. Supp. 3d 838 (C.D. Cal. 2020) ............................................. 14

*Forsyth v. Motion Picture Ass'n of Am., Inc.*,
    2016 WL 6650059 (N.D. Cal. Nov. 10, 2016) ................................. 33

*Garlough v. FCA US LLC*,
    2021 WL 4033177 (E.D. Cal. Sept. 3, 2021) ................................... 16

*Germain v. J.C. Penney Co.*,
    2009 WL 1971336 (C.D. Cal. July 6, 2009) ........................................................ 20

*Gilles v. Wineteer*,
    2019 WL 6037422 (S.D. Cal. Nov. 14, 2019) ...................................................... 18

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
    352 F.3d 367 (9th Cir. 2003) ...................................................................... 13, 14

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
    742 F.3d 414 (9th Cir. 2014) ........................................................................... 8

*Gudgel v. Clorox Co.*,
    514 F. Supp. 3d 1177 (N.D. Cal. 2021) ............................................... 12, 18, 21

*H & M Co. v. Tech. Heat Transfer Servs., Inc.*,
    2015 WL 1472000 (D. Md. Mar. 30, 2015) ........................................................ 26

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................ 18

*Hall v. Sea World Ent., Inc.*,
    2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) .................................................... 22

*Hanscom v. Reynolds Consumer Prods. LLC*,
    2022 WL 591466 (N.D. Cal. Jan. 21, 2022) ...................................................... 20

*Heredia v. Sunrise Senior Living LLC*,
    2021 WL 819159 (C.D. Cal. Feb. 10, 2021) ................................................ 19, 21

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ............................................................................ 9

*Johnson v. California*,
    543 U.S. 499 (2005) ...................................................................................... 29

*Johnson v. Ocwen Loan Servicing, LLC*,
    2017 WL 10581088 (C.D. Cal. Dec. 11, 2017), aff'd, 744 F. App'x
    418 (9th Cir. 2018) ....................................................................................... 18

*Joseph Burstyn, Inc. v. Wilson*,
    343 U.S. 495 (1952) ................................................................................... 9, 32

*Jovel v. Boiron Inc.*,
    2013 WL 12164622 (C.D. Cal. Aug. 16, 2013) .................................................. 29

*Keegan v. Am. Honda Motor Co.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012) .......................................................... 7

*KeraLink Int'l, Inc. v. Stradis Healthcare, LLC*,
    2021 WL 4420636 (D. Md. Sept. 27, 2021) ................................................ 26

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
    114 F. Supp. 3d 852 (N.D. Cal. 2015) ........................................................ 15

*Lazebnik v. Apple, Inc.*,
    2014 WL 4275008 (N.D. Cal. Aug. 29, 2014) ...................................... 23, 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) .................................................................................... 17

*In re MacBook Keyboard Litig.*,
    2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ....................................... 30, 31

*Madrigal v. Hint, Inc.*,
    2017 WL 6940534 (C.D. Cal. Dec. 14, 2017) ............................................ 19

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) .................................................................... 34

*Miami Herald Pub'g Co. v. Tornillo*,
    418 U.S. 241 (1974) .................................................................................... 33

*Morris v. Biomet, Inc.*,
    491 F. Supp. 3d 87 (D. Md. 2020) ............................................................. 24

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ........................................................................ 7

*Nguyen v. Nissan N. Am., Inc.*,
    2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) ............................................ 24

*Palmer v. CVS Health*,
    2019 WL 6529163 (D. Md. Dec. 4, 2019) ................................................. 29

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828, amended by 897 F.3d 1224 (9th Cir. 2018) ........................... 7

*Rhynes v. Stryker Corp.*,
    2011 WL 2149095 (N.D. Cal. May 31, 2011) ...................................... 20

*Rice v. Sunbeam Prods., Inc.*,
    2013 WL 146270 (C.D. Cal. Jan. 7, 2013) ........................................... 12

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
    487 U.S. 781 (1988) ........................................................................... 33

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ..................................................... passim

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ........................................................... 16

*Shupe v. Nationstar Mortg. LLC*,
    231 F. Supp. 3d 597 (E.D. Cal. 2017) ................................................ 16

*Singh v. Lenovo (U.S.) Inc.*,
    510 F. Supp. 3d 310 (D. Md. 2021) .................................................... 15

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..................................................... passim

*In re Sony PS3 Other OS Litig.*,
    551 F. App'x 916 (9th Cir. 2014) ................................................ 28, 29

*Stanley v. Cent. Garden & Pet Corp.*,
    891 F. Supp. 2d 757 (D. Md. 2012) .................................................... 13

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .............................................................................. 8

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) ........................................................... 21

*Todd v. Lovecruft*,
    2020 WL 60199 (N.D. Cal. Jan. 6, 2020) ............................................. 8

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (9th Cir. 1999) ............................................................... 6

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
    143 F. Supp. 3d 982 (N.D. Cal. 2015) .................................................. 6

DEFENDANT'S SPECIAL MOT. TO STRIKE AND MOT. TO DISMISS SECOND AMENDED COMPLAINT

*Valencia v. Merck & Co.*,
    2009 WL 3365848, at *8 (E.D. Cal. Oct. 16, 2009) ........................................... 18

*Vega v. Ocwen Fin. Corp.*,
    2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) ..................................................... 17

*White v. City of Sparks*,
    500 F.3d 953 (9th Cir. 2007) .................................................................................. 9

*William O'Neil & Co. v. Validea.com Inc.*,
    202 F. Supp. 2d 1113 (C.D. Cal. 2002) ................................................................ 33

*Williams v. Apple, Inc.*,
    2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ..................................................... 19

*Wixon v. Wyndham Resort Dev. Corp.*,
    2008 WL 1777590 (N.D. Cal. Apr. 18, 2008) ...................................................... 22

**STATE CASES**

*Bel Air Internet, LLC v. Morales*,
    20 Cal. App. 5th 924 (2018) ................................................................................. 11

*Bona v. Graefe*,
    264 Md. 69 (1972) ................................................................................................. 25

*Colgan v. Leatherman Tool Grp., Inc.*,
    135 Cal. App. 4th 663 (2006) ............................................................................... 21

*Day v. AT&T Corp.*,
    63 Cal. App. 4th 325 (1998) ............................................................................ 20, 21

*Fairbanks v. Superior Court*,
    46 Cal. 4th 56 (2009) ............................................................................................ 22

*First Union Nat'l Bank v. Steele Software Sys. Corp.*,
    154 Md. App. 97 (2003) ........................................................................................ 13

*Guglielmi v. Spelling-Goldberg Prods.*,
    25 Cal. 3d 860 (1979) ....................................................................................... 9, 32

*Howe v. Deck*,
    46 Cal. App. 2d 569 (1941) .................................................................................. 17

DEFENDANT'S SPECIAL MOT. TO STRIKE AND MOT. TO DISMISS SECOND AMENDED COMPLAINT

*Hunter v. CBS Broad. Inc.*,
   221 Cal. App. 4th 1510 (2013) ........................................................................ 8, 11

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) ................................................................................... 31

*Lee v. Luxottica Retail N. Am., Inc.*,
   65 Cal. App. 5th 793 (2021) ........................................................................ 18

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) ........................................................................ 17

*Lynx, Inc. v. Ordnance Prods., Inc.*,
   273 Md. 1 (1974) ................................................................................... 26, 28

*Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*,
   205 Cal. App. 3d 1415 (1988) ..................................................................... 12

*Polydoros v. Twentieth Century Fox Film Corp.*,
   67 Cal. App. 4th 318 (1997) ........................................................................ 32

*Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*,
   2016 WL 6583892 (Md. Ct. Spec. App. Nov. 4, 2016) ................................. 13

*Rezec v. Sony Pictures Ent., Inc.*,
   116 Cal. App. 4th 135 (2004) ...................................................................... 31

*Sheeskin v. Giant Food, Inc.*,
   20 Md. App. 611 (1974) ........................................................................ 27, 28

*Shepard v. Alexian Bros. Hosp.*,
   33 Cal. App. 3d 606 (1973) ........................................................................ 25

*Stewart v. Rolling Stone LLC*,
   181 Cal. App. 4th 664 (2010) ................................................................. 10, 31

*Symmonds v. Mahoney*,
   31 Cal. App. 5th 1096 (2019) ...................................................................... 10

*Tamkin v. CBS Broad., Inc.*,
   193 Cal. App. 4th 133 (2011) ........................................................................ 9

*Wilson v. Cable News Network, Inc.*,
   7 Cal. 5th 871 (2019) ................................................................................... 33

**FEDERAL STATUTES**

15 U.S.C. § 1125(a) .................................................................................. 16, 17

17 U.S.C. § 202 ............................................................................................. 26

**CALIFORNIA STATUTES**

Cal. Bus. & Prof. Code § 17200 ................................................................. 1, 16

Cal. Bus. & Prof. Code § 17500 ....................................................................21

Cal. Civ. Code § 1572 ............................................................................... 16, 17

Cal. Civ. Code § 1573 ............................................................................... 16, 18

Cal. Civ. Code § 1709 ....................................................................................16

Cal. Civ. Code § 1711 ............................................................................... 16, 18

Cal. Civ. Code § 1761 ................................................................................. 5, 22

Cal. Civ. Code § 1770(a) ............................................................................ 1, 22

Cal. Civ. Code § 1791.1 ......................................................................... 13, 27, 28

Cal. Civ. Code § 1792 .......................................................................... 20, 27, 28

Cal. Civ. Code § 1792.1 ..................................................................................28

Cal. Civ. Proc. Code § 425.16 ................................................................. passim

Cal. Civ. Proc. Code § 425.17 ............................................................... 2, 9, 10

Cal. Com. Code § 2102 ........................................................................... 24, 27

Cal. Com. Code § 2103(1)(d) .........................................................................25

Cal. Com. Code § 2105(1) ....................................................................24, 25, 27

Cal. Com. Code § 2106(1) .............................................................................25

Cal. Com. Code § 2313 ........................................................................... 24, 25

Cal. Com. Code § 2314 ........................................................................... 13, 27

Cal. Com. Code § 2315 ........................................................................... 27, 28

Cal. Com. Code § 2607(3)(A) ..................................................................... 26

**MARYLAND STATUTES**

Md. Code, Com. Law § 2-102 ............................................................... 24, 27

Md. Code, Com. Law § 2-103(1)(d) ............................................................. 25

Md. Code, Com. Law § 2-105(1) ...................................................... 24, 25, 27

Md. Code, Com. Law § 2-106(1) ................................................................. 25

Md. Code, Com. Law § 2-313 ............................................................... 24, 25

Md. Code, Com. Law § 2-314 ............................................................... 13, 27

Md. Code, Com. Law § 2-315 ............................................................... 27, 28

Md. Code, Com. Law § 2-607(3)(a) ........................................................... 26

Md. Code, Com. Law § 13-301 ...................................................... 12, 13, 14

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) ..................................................................................... 7

Fed. R. Civ. P. 12 .............................................................. 2, 7, 11, 34

**LOCAL RULES**

Local Rule 7-3 .......................................................................................... 6

Local Rule 15-1 ........................................................................................ 6

**LEGISLATIVE MATERIALS**

*Marketing Violence to Children: Hearing Before the S. Committee on
   Commerce, Science, and Transportation*, 106th Cong. 50 n.13
   (2000) .................................................................................................. 32

**OTHER AUTHORITIES**

2 McCarthy, The Rights of Publicity and Privacy § 8:69 ......................... 32

Alfred Hitchcock's *Psycho* (1960) ............................................................. 3

Case No. 2:22-cv-00459-SVW-AGR
DEFENDANT'S SPECIAL MOT. TO STRIKE AND MOT. TO DISMISS SECOND AMENDED COMPLAINT

David Houghton, *30 Scenes from Trailers that Never Appeared in the Movie*, gamesradar+ (Feb. 6, 2019), https://www.gamesradar.com/30-trailer-scenes-not-in-the-finished-films/ ................................................................................................................4

Kieran Judge, *The Greatest Film Trailer of All time? Psycho (1960)*, The Film Magazine (Jan. 20, 2021), https://www.thefilmmagazine.com/greatest-film-trailer-hitchcock-psycho/ ..............................................................................................................3

Mark Harrison, *25 Films That Hid What They Were in the Trailer*, Den of Geek (Apr. 2, 2019), https://www.denofgeek.com/movies/25-films-that-hid-what-they-were-in-the-trailer/ ...........................................4

*Missing Trailer Scene*, tvtropes, https://tinyurl.com/bdfrujhd (last visited July 15, 2022) ..................................................................................4

Steven Spielberg's *Jurassic Park* (1993) ..................................................3

Todd Gilchrist, *The 25 Best Movie Trailers of All Time*, Mental Floss (May 26, 2021), https://www.mentalfloss.com/article/646956/best-movie-trailers-of-all-time .......................................................................3

Tres Dean, *The Most Epic Movie Trailers of All Time*, Looper (Dec. 11, 2020, 3:53 PM), https://www.looper.com/95202/epic-movie-trailers-time/ ........................................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The SAC is Plaintiffs' third misguided attempt to challenge protected expressive conduct through ill-fitting and baseless consumer protection claims. Plaintiffs allege they were misled into paying to view a motion picture, *Yesterday*, because a seconds-long scene in a trailer featured images of the actor Ana de Armas and a pun-type play on the Beatles' song "Something," neither of which was in the film's final cut.  Plaintiffs' claims fail for multiple reasons, including:

- <u>No Misrepresentation</u>:  All the SAC's claims fail because Plaintiffs do not and cannot allege that the *Yesterday* trailer made any affirmative misrepresentation of fact on which Plaintiffs relied in deciding to pay to view *Yesterday*.

- <u>Unfair Competition Law ("UCL")</u>:  Plaintiff Rosza (a California resident) has no claim because he fails to allege the violation of any statute, as required to state a claim under the "unlawful" prong; a misrepresentation on which he relied, as required to state a "fraud" prong claim; or any facts stating a claim under the "unfair" prong.

- <u>Consumers Legal Remedies Act ("CLRA")</u>:  The CLRA applies only to specified acts involving "goods" or "services," Cal. Civ. Code § 1770(a), but Rosza alleges only that he paid for a stream of the movie, which is neither a good nor a service under the CLRA.

- <u>Warranty Claims</u>:  Plaintiffs' express and implied warranty claims fail because those claims are limited to the "sale" of "goods," and a license to receive a stream of a movie is neither; and Plaintiffs cannot allege they informed Universal of the alleged breach before filing suit.

In addition, Plaintiffs cannot as a matter of law obtain either of the primary remedies they request.  They cannot recover the equitable remedy of restitution under the UCL, False Advertising Law ("FAL"), CLRA, or an unjust enrichment

theory because they allege they have an adequate remedy at law, and because the SAC makes clear they received what they paid for, i.e., a license to watch *Yesterday* on Amazon. Plaintiffs lack standing to obtain an injunction on any claim because, as they allege, they know de Armas and the "Something" scene are not in *Yesterday* and will not pay to see it again. SAC ¶¶ 12, 136; Fed. R. Civ. P. 12(b)(1).

Plaintiffs' repeated failure to plead any actionable claim requires dismissal under Rule 12. But that is not the only problem with the SAC. Plaintiffs' claims target protected speech on issues of public interest. Because those claims fail on the pleadings, the SAC should be stricken in its entirety under California's anti-SLAPP statute. *See* Cal. Civ. Proc. Code § 425.16. The California Legislature expressly carved out trailers and other materials promoting motion pictures from an amendment that made the statute inapplicable to advertising generally. *Id*. § 425.17(d)(2). This confirms what is obvious about trailers generally and the *Yesterday* trailer in particular: they are expressive works in their own right and may not be relegated to a class of "purely commercial" speech that receives watered-down First Amendment protection.

The threat that Plaintiffs' brazen claims pose to free expression is palpable. If Plaintiffs can spin a liability claim based on the SAC's patently deficient allegations, nothing will stop the next plaintiff from claiming a trailer led them to believe they would see more (or less) of a particular actor in a film; that the film would have a different ending or storyline; that the film would be better than it was; or any one of an unlimited number of theories that enterprising class-action lawyers might dream up based on the inherently expressive choices that go into creating a full-length motion picture and the shorter motion picture trailers that are tied to it.

## II.    BACKGROUND

This case concerns the motion picture *Yesterday*, released in theaters in June 2019, and a theatrical trailer, released several months earlier. SAC ¶ 2. *Yesterday* tells the story of Jack Malik (played by Himesh Patel), a struggling musician who

awakens after a bicycle accident, which occurs during a worldwide power outage, to a world in which it appears no one besides Jack has heard of the Beatles or their music.  Capitalizing on this fact, Jack starts to perform Beatles songs from memory.  The people around Jack, and soon the world, react to Jack's renditions much as the world reacted to the Fab Four's.  SAC ¶ 39.  The movie portrays Jack dealing with the consequences of his newfound fame and his love for his longtime friend, Ellie (played by Lily James).  SAC ¶¶ 40, 43.  *Yesterday* won critical and popular acclaim.  SAC ¶ 39.

## A.    The *Yesterday* Trailer

Trailers, including the *Yesterday* trailer, tell stories using pictures and (usually) audio.  Trailers generate interest in and excitement for a movie.  They give a sense of the film while not giving away in advance too much of the film's plot.  Trailers are inherently expressive works.  Many have become iconic in their own right.[3]

By definition, a trailer will not, and cannot, include every scene in the full-length film or divulge every aspect of the film's plot.  The converse also is true:  not every element in a trailer will necessarily be in the final version of the film.  A six-minute theatrical trailer for Alfred Hitchcock's *Psycho* (1960), for example, "contains no footage from the film at all," but instead shows Hitchcock giving a tour of the Bates Motel and the sinister house overlooking it.[4]  Likewise, a trailer for Steven Spielberg's *Jurassic Park* (1993) was comprised entirely of archeologists excavating amber-frozen mosquitos and extracting dinosaur DNA—scenes that did

---

[3] Todd Gilchrist, *The 25 Best Movie Trailers of All Time*, Mental Floss (May 26, 2021), https://www.mentalfloss.com/article/646956/best-movie-trailers-of-all-time (discussing iconic trailers for movies including *Jaws*, *Pulp Fiction*, and *Alien*).
[4] Kieran Judge, *The Greatest Film Trailer of All time? Psycho (1960)*, The Film Magazine (Jan. 20, 2021), https://www.thefilmmagazine.com/greatest-film-trailer-hitchcock-psycho/; RJN Ex. 2 (link to trailer on YouTube).

not appear in the film.[5]  Trailers for many other movies, from *Frozen* to various installments in the *Spider-Man* and *Star Wars* franchises, contain scenes that the directors and producers did not ultimately include in the films.[6]

Plaintiffs assert that in July and October 2021, more than two years after *Yesterday*'s release, they watched a trailer for the movie on Amazon's streaming service.  SAC ¶¶ 7, 10.  The trailer Plaintiffs say they watched is freely available on YouTube.  SAC ¶ 83; RJN Ex. 1.  The trailer, which is approximately three minutes long, includes a variety of scenes and music.

Plaintiffs' claims are based on a single portion of the trailer lasting approximately 15 seconds.  It is one of several snippets that illustrate Jack's rise to fame.  Jack appears on the set of what appears to be *The Late Late Show with James Corden*, seated with Corden and a woman, portrayed by de Armas, whose name is never mentioned.  SAC ¶ 40.  Corden says to Jack:  "We would like you to write something, right now!"  Jack pauses for a moment, and the trailer cuts to him singing "Something," followed by the studio audience's rapturous applause and the woman kissing him on the cheek.  The trailer displays "cards" listing the names of *Yesterday*'s stars (Patel and James) and referencing the prior works of the movie's director and screenwriter.  The trailer does not identify the name of any cast member

---

[5] Tres Dean, *The Most Epic Movie Trailers of All Time*, Looper (Dec. 11, 2020, 3:53 PM), https://www.looper.com/95202/epic-movie-trailers-time/; RJN Ex. 3 (link to trailer on YouTube).

[6] *See, e.g.*, David Houghton, *30 Scenes from Trailers that Never Appeared in the Movie*, gamesradar+ (Feb. 6, 2019), https://www.gamesradar.com/30-trailer-scenes-not-in-the-finished-films/; Mark Harrison, *25 Films That Hid What They Were in the Trailer*, Den of Geek (Apr. 2, 2019), https://www.denofgeek.com/movies/25-films-that-hid-what-they-were-in-the-trailer/.  One industry commentator has noted that "almost every movie with a sufficient amount of promotional material will feature at least some shots not in the final movie," and that this often happens because "[u]sually the trailers are released while the film itself is still being edited, so the Trailer footage may end [up] becoming a Deleted Scene or replaced by an alternate take in the final cut."  *Missing Trailer Scene*, tvtropes, https://tinyurl.com/bdfrujhd (last visited July 15, 2022).

other than Patel and James.

The "Something" scene did not appear in the final cut of *Yesterday* released into theaters. SAC ¶ 47. This fact was well known. As Plaintiffs allege, in June 2019, *Yesterday*'s director, Danny Boyle, gave a published interview centered on the scene and the entire plot involving de Armas not being in the final movie. SAC ¶¶ 41–42, 46, 48. The article's title could not have more clearly described the very discrepancy that Plaintiffs allege Universal hid from the public: "*Yesterday Cut An Entire Character From The Film That Would Have Changed The Plot.*" RJN Ex. 4. In the interview, Boyle discussed the fact there originally was an entire storyline involving the woman seated next to Jack. That character was an actress named "Roxanne," played by de Armas. SAC ¶¶ 40–41. The creators conceived Roxanne as an additional love interest as Jack became consumed with success. SAC ¶ 40. Boyle further explained the creative decision was made to not include the Roxanne storyline because the love triangle detracted from the story of Jack's relationship with Ellie. RJN Ex. 4.[7]

**B.      Plaintiffs' Multiple Amendments To Their Complaint**

Plaintiffs allege that, as a result of watching the trailer on Amazon, they paid $3.99 to stream *Yesterday* because they wanted to see de Armas and the "Something" scene. SAC ¶¶ 7–8, 10–11. Having watched *Yesterday*, Plaintiffs say they know that neither is in the movie and therefore they will not pay to see the movie again. SAC ¶¶ 7, 10, 12, 165.

Plaintiffs originally alleged six claims under California and Maryland law. On March 24, Plaintiffs filed their First Amended Complaint ("FAC"), adding a claim under California's CLRA, Cal. Civ. Code § 1761.

---

[7] To the extent any person wishes to view the deleted scene with de Armas and "Something," that scene is widely available on YouTube and as part of the film's bonus features in various formats. *See. e.g.*, RJN Ex. 6 (DVD of film with bonus features including deleted scene).

1      On May 4, in response to the Local Rule 7-3 meet-and-confer and Universal's

2  intention to file these motions, Plaintiffs applied ex parte for leave to file the SAC.

3  Dkt. 28.  On May 5, the due date for responding to the FAC, Universal filed its

4  motions.  Dkt. 31.  On May 26, the Court granted Plaintiffs' request for leave to file

5  the SAC.  Dkt. 35.

6      On June 6, Plaintiffs filed the operative SAC.  Dkt. 36.  Although Local Rule

7  15-1 required Plaintiffs to file the SAC they had attached to their ex parte, Plaintiffs

8  did not do that.  They instead filed an SAC with multiple pages of new allegations,

9  ostensibly to address Universal's filed motions.  Plaintiffs also added two new

10  claims for breach of implied warranty in Count IV.  On June 13, the Court accepted

11  the new SAC for filing.  Dkt. 39.

12  **III.  LEGAL STANDARDS GOVERNING UNIVERSAL'S MOTIONS**

13      **A.      Universal's Anti-SLAPP Motion To Strike**

14      The anti-SLAPP statute was "enacted to allow early dismissal of meritless

15  first amendment cases aimed at chilling expression through costly, time-consuming

16  litigation."  *Sarver v. Chartier*, 813 F.3d 891, 896 (9th Cir. 2016).  A defendant may

17  file a "special motion to strike" any claim that arises "from any act … in furtherance

18  of the … right of petition or free speech … in connection with a public issue,"

19  unless "the plaintiff has established that there is a probability that the plaintiff will

20  prevail on the claim."  Cal. Civ. Proc. Code § 425.16(b)(1).[8]

21      Courts "evaluate anti-SLAPP motions in two steps."  *Sarver*, 813 F.3d at 901.

22

23  [8] Anti-SLAPP laws apply to state law claims brought in federal court.  *United States*

24  *ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971–73 (9th Cir.
   1999).  Plaintiffs' claims under Maryland law are subject to California's anti-

25  SLAPP statute because Plaintiffs filed suit in this State.  *See United Tactical Sys.,*

26  *LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1000–01 (N.D. Cal. 2015)
   (agreeing with the Second Circuit that California's anti-SLAPP statute can be

27  applied to causes of action brought under another state's law when the case is filed

28  in California).

First, a defendant must "make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution." *Id.* "Second, if the defendant has made such showing, [courts] evaluate whether the plaintiff has established a reasonable probability that the plaintiff will prevail on his or her … claim." *Id.* (internal quotation marks omitted). At this second step, "the burden shifts to [the] plaintiff to demonstrate a probability of prevailing on the merits of each" claim. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013). At the dismissal stage in federal court, the prong two standard is Rule 12(b)(6)'s plausibility standard. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833, *amended by* 897 F.3d 1224 (9th Cir. 2018).

## B.    Universal's Rule 12(b)(6) And Rule 12(b)(1) Motions

*First*, all of Plaintiffs' claims should be dismissed under Rule 12(b)(6), because Plaintiffs have not alleged well-pleaded facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint's "factual content" and reasonable inferences therefrom must be "plausibly suggestive of a claim entitling the plaintiff to relief"; conclusory allegations must be disregarded. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 968–69 (9th Cir. 2009). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Anthony v. Buena Vista Home Ent., Inc.*, 2016 WL 6836950, at *2 (C.D. Cal. Sept. 28, 2016) (Wilson, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Because all of Plaintiffs' claims other than for breach of warranty sound in fraud, Plaintiffs must allege facts supporting each element of those claims with particularity under Rule 9(b). *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 957–58 (C.D. Cal. 2012).

*Second*, Universal seeks dismissal of Plaintiffs' request for injunctive relief based on lack of standing. Under Rule 12(b)(1), Plaintiffs must show their alleged

injury-in-fact is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). "For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

## IV.   PLAINTIFFS' CLAIMS SHOULD BE STRICKEN UNDER THE ANTI-SLAPP STATUTE

Universal satisfies its step-one burden because the trailer is an act in furtherance of Universal's free speech rights in connection with the movie and an expressive work in its own right. Plaintiffs cannot meet their step-two burden because they have not plausibly pleaded any claim for relief and cannot pursue their claims under the First Amendment.

### A.   Step One:  Plaintiffs' Claims Are Based On Universal's Acts In Furtherance Of Its Free Speech Rights In Connection With Public Issues

Universal satisfies its step-one burden by showing that Plaintiffs' claims "aris[e] from any act … in furtherance" of (1) the right to free speech (2) in connection with a public issue. Cal. Civ. Proc. Code § 425.16(b)(1). California courts have interpreted this requirement "rather loosely, and have held that a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary." *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014) (cleaned up). As a result, "[t]he defendant's burden on [the first] step is not a particularly demanding one." *Todd v. Lovecruft*, 2020 WL 60199, at *11 (N.D. Cal. Jan. 6, 2020) (cleaned up).

In assessing whether a claim "arises from" protected conduct, courts "examine the principal thrust or gravamen of a plaintiff's cause of action." *Hunter*

*v. CBS Broad. Inc.*, 221 Cal. App. 4th 1510, 1520 (2013).  Here, the "gravamen or principal thrust" of each claim is that Universal's protected exercise of editorial discretion in determining what scenes to include in the challenged trailer (and, ultimately, in *Yesterday* itself) may be punished under multiple consumer protection statutes and common law doctrines.

### 1.    The *Yesterday* Trailer Is An "Act In Furtherance" Of Universal's Right To Free Speech

Universal meets the "act in furtherance" requirement, Cal. Civ. Proc. Code § 425.16(e)(4), for two independent reasons.

*First*, the trailer furthers Universal's free-speech rights regarding the movie it released.  *Gangland Prods.*, 730 F.3d at 953.  "An act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right."  *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143 (2011) (defendants' acts were protected because they "helped to advance or assist in the creation, casting, and broadcasting of an episode of a popular television show").  Trailers "further" or "assist" the First Amendment-protected movie by promoting public awareness and discussion of it.  *See Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 873 (1979) (Bird, C.J., concurring) ("It would be illogical to allow respondents to exhibit the film but effectively preclude any advance discussion or promotion of their lawful enterprise.").

*Second*, the trailer itself is a protected expressive work.  *Hilton v. Hallmark Cards*, 599 F.3d 894, 904 (9th Cir. 2010) ("communicative" activity "suffice[s]" to satisfy this requirement).  The Supreme Court has long held that "arts and entertainment," including movies, are entitled to full First Amendment protection. *White v. City of Sparks*, 500 F.3d 953, 955 (9th Cir. 2007); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952); *Sarver*, 813 F.3d at 903.  The California Legislature recognized as much in its 2011 amendments to the anti-SLAPP statute. The Legislature excludes claims targeting commercial advertising, Cal. Civ. Proc.

Code § 425.17(c), but expressly provided this exception does *not* apply to the "advertisement, or other similar promotion of … a motion picture." *Id.* § 425.17(d)(2).  This amendment confirms what is clear under the case law and common sense:  the trailer is a protected act in furtherance of Universal's free speech rights.

## 2. The *Yesterday* Trailer Is Expressive Conduct "In Connection With A Public Issue Or An Issue Of Public Interest"

Universal also shows that the trailer furthered Universal's free speech rights "in connection with a public issue or an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e)(4).  Courts applying California law "have construe[d] 'public issue or public interest' … broadly in light of the statute's stated purpose to encourage participation in matters of public importance or consequence." *Sarver*, 813 F.3d at 901 (cleaned up).  Two "categories of public issues" plainly apply here: "(1) statements concerning a person or entity in the public eye … [and] [2] a topic of widespread, public interest." *Id.*

*First*, the trailer is a "statement[] concerning a person or entity in the public eye" because it previews a story about what the world would be like if the Beatles— one of the most popular bands in history—did not record their music but someone else did.  *Id*. (internal quotation marks omitted).  "[T]here is a public interest which attaches to people who, by their accomplishments, mode of living, professional standing or calling, create a legitimate and widespread attention to their activities." *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 677–78 (2010); *see Symmonds v. Mahoney*, 31 Cal. App. 5th 1096, 1109 (2019) (musician Eddie Money's conduct occurred "in connection with an issue of public interest" because his "music and concerts were of interest to the public").

*Second*, there is "widespread, public interest" in the process of making movies and trailers. *Sarver*, 813 F.3d at 901 (internal quotation marks omitted); *see* SAC ¶¶ 41–42 (quoting interview of *Yesterday* director Danny Boyle regarding

DEFENDANT'S SPECIAL MOT. TO STRIKE AND MOT. TO DISMISS SECOND AMENDED COMPLAINT

editing decisions concerning the film).  Plaintiffs challenge the editorial decision to include in a trailer images from a scene that ultimately did not make the final cut of the released movie.  That decision necessarily involves matters of public interest surrounding the creation and dissemination of trailers (and the movies to which they relate), an interest that is heightened where, as here, a well-known feature film is involved.  *See, e.g.*, *Hunter*, 221 Cal. App. 4th at 1527 (CBS's hiring of weather news anchors was protected because "weather reporting is a matter of public interest" and "CBS's decisions regarding who would present those reports to the public during its broadcasts [were] necessarily 'in connection' with that public issue").

*Third*, although the trailer does not represent that de Armas appears in *Yesterday*, Plaintiffs' claims are based on de Armas's appearance and the allegation she is the subject of immense public interest.  SAC ¶¶ 32–38.  Universal may rely on those allegations without admitting them, *see Bel Air Internet, LLC v. Morales*, 20 Cal. App. 5th 924, 936 (2018), to show that Plaintiffs' claims are directed to speech concerning a "person or entity in the public eye."  *Sarver*, 813 F.3d at 901.  Universal meets its burden under step one.

### B.    Step Two:  Plaintiffs Fail To State Any Claim For Relief

Plaintiffs bear the burden of demonstrating "a probability of prevailing on the merits of each" claim.  *Gangland Prods.*, 730 F.3d at 953.  Plaintiffs cannot make this showing for two independent reasons.  *First*, as explained in Sections V and VI, all of Plaintiffs' claims and requests for relief fail on the merits.  *Second*, even if Plaintiffs' claims did not fail in their own right, Plaintiffs could not proceed with their challenge under the First Amendment.  Section VII.  Because all of the arguments set forth in Sections V–VII apply to both the anti-SLAPP and Rule 12 motions, those arguments constitute Universal's step-two arguments for purposes of the anti-SLAPP motion.

# V.  PLAINTIFFS FAIL TO STATE ANY CLAIM FOR RELIEF

Plaintiffs allege nine distinct claims under California and Maryland law. Plaintiff Rosza (from California) alleges claims under the UCL, FAL, and CLRA, as well as for unjust enrichment, breach of express warranty, and breach of implied warranty under the Commercial Code and the Song-Beverly Act.  Plaintiff Woulfe (from Maryland) alleges claims under the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law § 13-301, and for unjust enrichment, breach of express warranty, and breach of implied warranty under Maryland law.  Plaintiffs fail to plausibly plead any claim.

## A.  All Of Plaintiffs' Claims Fail Because Plaintiffs Do Not Plead They Relied On A Misrepresentation Of Fact In Deciding To Pay To View *Yesterday*

To have Article III standing to assert any claim, Plaintiffs must allege that they relied on an actionable misrepresentation of fact in deciding to pay to view *Yesterday*.  "In claims involving misrepresentations to consumers, courts have often required that the consumers plausibly allege that they 'actually relied' on an allegedly misleading statement to plead Article III standing.  The theory behind requiring actual reliance is that a consumer's injury cannot be 'fairly traceable' to the defendant's alleged misrepresentation unless that consumer actually relied on the misrepresentation."  *Anderson v. Apple, Inc.*, 500 F. Supp. 3d 993, 1005 (N.D. Cal. 2020) (citations omitted).

The requirement of a misrepresentation of fact is also a common element of all of Plaintiffs' claims.[9]  Plaintiffs cannot satisfy this fundamental requirement

---

[9] *See Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1186–88 (N.D. Cal. 2021) (dismissing UCL, FAL, CLRA, and unjust enrichment claims "because plaintiff alleges no facts showing an affirmative misrepresentation"); *Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1423 (1988) (an unjust enrichment claim fails if the defendant made no actionable misrepresentation); *Rice v. Sunbeam Prods., Inc.*, 2013 WL 146270, at *12 (C.D. Cal. Jan. 7, 2013) (dismissing an express warranty claim absent an "unequivocal statement" constituting a

because the only thing Plaintiffs say they relied on—the *Yesterday* trailer—does not make any affirmative representation that de Armas or the "Something" song-joke will actually be in the movie's final cut.

### 1. *Yesterday*'s Trailer Does Not Represent That De Armas Or The "Something" Song-Joke Will Be In The Final Movie

To be actionable, a representation must be concrete and definitive. "[G]eneralized, vague and unspecific assertions" will not suffice. *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003); *see First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 164 (2003) (rejecting assertion "so vague and general as to be incapable of particular application").

The *Yesterday* trailer makes no factual representation that de Armas or the song-joke scene will be in the movie. Nothing in the trailer states that, if a consumer pays to see *Yesterday*, de Armas or the song-joke scene will be in it. De Armas's name does not appear in the trailer; she is visible for less than 15 seconds; and she does not utter a word in that time. "Something" is also audible for only about 10 seconds. By contrast, the trailer *does* list others by name who appear in or were involved in making the movie. For example, the trailer states that *Yesterday* was directed by "the Academy Award Winning Director of Slumdog Millionaire" (at 1:31), was written by "the writer of Love Actually" (at 1:34), and features actors "Lily James" (at 2:32) and "Himesh Patel" (at 2:35). RJN Ex. 1. The trailer's *de minimis* inclusion of de Armas and a snippet of the song-joke scene is too vague and

representation); *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 765 (D. Md. 2012) (dismissing an express warranty claim because "the statement alone [did] not represent" what the plaintiffs said it did); *Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*, 2016 WL 6583892, at *16 (Md. Ct. Spec. App. Nov. 4, 2016) (under the MCPA "statements are not actionable as a matter of law … where the claim depends on an objectively unreasonable interpretation of the statement"); Md. Code, Com. Law § 2-314(2)(f) (requiring "promises" or "affirmations" for an implied warranty claim); Cal. Com. Code § 2314(2)(f) (same); Cal. Civ. Code § 1791.1(a)(4) (same).

non-specific to definitely represent that viewers will see the actress or the song-joke scene in the movie. *See Glen Holly Ent.*, 352 F.3d at 379.

The trailer's context also "undermine[s] the reasonableness of Plaintiff[s'] claimed understanding" that de Armas and the song-joke scene would be in the movie and renders Plaintiffs' claims the trailer misled them "simply implausible." *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 483 F. Supp. 3d 838, 844–45 (C.D. Cal. 2020). Plaintiffs have never cited, and Universal has not found, any case that suggests, much less holds, that every actor, line of dialogue, or snippet of a scene featured in a trailer is thereby guaranteed to be in the full-length movie. Given the undisputed fact (which the Court may judicially notice on these motions) that trailers for decades have included some material not in the released movie, *see supra* at 3–4, this absence of authority speaks volumes about the alleged reasonableness of Plaintiffs' alleged belief they would see de Armas or the song-joke scene.

Plaintiffs fail to plead the reasonableness of their purported belief by alleging they *themselves* have "never seen a movie trailer that featured an actor or actress that didn't also appear in the film being advertised," or that a handful of anonymous and unspecified internet posters purportedly said they expected to see de Armas in *Yesterday*. SAC ¶¶ 7, 10, 89. Plaintiffs' "claims under the California consumer protection statutes are governed by the 'reasonable consumer' test," which "requires more than a mere possibility that" an assertion "might conceivably be misunderstood by some few consumers"; instead, Plaintiffs must show "a probability that *a significant portion of the general consuming public or of targeted consumers*, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (emphasis added) (cleaned up); *see Botts v. Johns Hopkins Univ.*, 2021 WL 1561520, at *19–20 (D. Md. Apr. 21, 2021) (same for MCPA). Plaintiffs have not remotely alleged this level of confusion.

Plaintiffs' theory lacks a principled limit, offering no objective criteria to

-14-

measure what a trailer actually represents.  For instance, suppose that here the relevant 15-second portion from the trailer had been in the movie.  Could Plaintiffs (or other consumers) still complain that the trailer represented that de Armas would be in *more* than 15 seconds of the movie?  Could they complain that, even if they saw more of her, the trailer represented she would speak lines?  Or play a specific "romantic" role?  *See, e.g.*, SAC ¶ 40.  Could they also complain that the trailer represented they would hear all, most, a third, or some other amount of "Something" in the movie?  Plaintiffs would open the floodgates to claims like these, where answers depend purely on subjective judgments about what representations a trailer purportedly makes, or how or when it makes them.  *See L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 861 (N.D. Cal. 2015) (finding a statement non-actionable where there was "no discernible way to measure" compliance with it); *Singh v. Lenovo (U.S.) Inc.*, 510 F. Supp. 3d 310, 330 (D. Md. 2021) (the statement must be "quantifiable").

### 2. Plaintiffs Lack Standing To Rely On Assertions Universal Allegedly Made In Places Other Than *Yesterday's* Trailer

The SAC includes new allegations that the VUDU streaming service's and IMDb's webpages for *Yesterday* at one time listed de Armas as a cast member. SAC ¶¶ 23–31, 86–87.  Those allegations avail Plaintiffs nothing, because Plaintiffs *do not allege they viewed either of these sites* before deciding to pay to see *Yesterday*.  Plaintiffs allege only that they viewed the trailer on Amazon's streaming service and then decided to pay to see the movie on that service.  SAC ¶¶ 7, 10, 85. Plaintiffs do not have Article III standing to assert claims based on alleged statements they did not see and on which they do not and cannot allege having relied:  "If a defendant makes a misrepresentation and the plaintiff, without knowing of that misrepresentation, coincidentally purchases the product in question, *her injury is not traceable to the misrepresentation*."  *Anderson*, 500 F. Supp. 3d at 1005

(emphasis added).[10]

## B. Rosza's UCL Claim Fails

Rosza alleges a violation under all three prongs of the UCL, Cal. Bus. & Prof. Code § 17200.  SAC ¶¶ 130–141.  None is viable as matter of law.  Moreover, Rosza cannot recover monetary relief for the claimed UCL violation; at a minimum, that request should be stricken.

### 1. Rosza Fails To State A Claim Under The "Unlawful" Prong

"To be 'unlawful' under the UCL, the advertisements must violate another 'borrowed' law." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (affirming dismissal of a UCL claim because the advertisements did not violate the alleged predicate statute).  Rosza alleges underlying violations of the UCL, FAL, CLRA, Lanham Act (15 U.S.C. § 1125(a)), and four other provisions of the California Civil Code (§§ 1572, 1573, 1709, 1711).  SAC ¶ 130.[11]

For the reasons stated *supra* at 12–16 and *infra* at 18–24, the UCL, FAL, and CLRA claims fail and cannot serve as predicate violations.  As for the Lanham Act and four Civil Code provisions, Rosza does not explain what those statutes are, much less how Universal violated them.  That alone compels their dismissal as predicate violations.  *See Shupe v. Nationstar Mortg. LLC*, 231 F. Supp. 3d 597, 605

---

[10] Even if Plaintiffs had Article III standing to complain about alleged statements on VUDU (which they do not), Plaintiffs have failed to plead that *Universal* made those statements.  Plaintiffs make the conclusory allegation that because Universal and VUDU have a common corporate parent, "VUDU acts in concert with and under the direction of" Universal to promote *Yesterday*.  SAC ¶ 25.  The mere fact that two corporate entities have common ownership does not suffice to establish that actions of one are chargeable to the other.  *See Garlough v. FCA US LLC*, 2021 WL 4033177, at *2–3 (E.D. Cal. Sept. 3, 2021) ("[c]onclusory allegations of 'alter ego' status are insufficient to state a viable claim").

[11] Rosza appears to allege common law violations, SAC ¶ 130, but the common law cannot supply a predicate violation.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010).

1   (E.D. Cal. 2017) (dismissing UCL claim under "unlawful" prong where allegations

2   supporting predicate violations "are fully conclusory and wholly devoid of facts").

3          Apart from that ground for dismissal, Rosza cannot allege a violation of the

4   Lanham Act or the Civil Code provisions because all of these statutes require a

5   misrepresentation of fact.  As explained, *supra* at 12–16, Rosza does not and cannot

6   allege that the source of his alleged reliance (the trailer) makes any

7   misrepresentation of fact.  *See Vega v. Ocwen Fin. Corp.*, 2015 WL 1383241, at *11

8   (C.D. Cal. Mar. 24, 2015) (dismissing predicate violations under the same Civil

9   Code provisions because "Vega has failed to allege any conduct that could be fairly

10  considered fraud or deceit"); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*

11  *Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (dismissing a Lanham Act claim where the

12  alleged representation "[was] not actionable" because it was "merely general" and

13  "[did] not contain the kind of detailed or specific factual assertions that are

14  necessary to state a false advertising cause of action under the Act").

15         Moreover, the Lanham Act does not apply because Rosza, a consumer, cannot

16  "allege an injury to a commercial interest in reputation or sales," which is a

17  prerequisite to a claim under 15 U.S.C. § 1125(a).  *Lexmark Int'l, Inc. v. Static*

18  *Control Components, Inc.*, 572 U.S. 118, 131–32 (2014).  "A consumer who is

19  hoodwinked into purchasing a disappointing product … cannot invoke the

20  protection of the Lanham Act."  *Id.* at 132; *see Barrus v. Sylvania*, 55 F.3d 468, 470

21  (9th Cir. 1995) ("[a]s consumers, [plaintiffs] have alleged neither commercial injury

22  nor competitive injury" and thus "lack standing").

23         The Civil Code provisions likewise are inapplicable for independent reasons.

24  Section 1572 is inapplicable because Rosza does not, and cannot, allege he and

25  Universal are parties to the same contract.  *See LiMandri v. Judkins*, 52 Cal. App.

26  4th 326, 337 (1997) ("Clearly, the fraud allegations in LiMandri's complaint do not

27  fall within the purview of Section 1572, as they establish no contractual or

28  precontractual relationship between LiMandri and Judkins."); *Howe v. Deck*, 46 Cal.

1    App. 2d 569, 578 (1941) (same).

2        Section 1573 does not, and cannot, apply because Rosza does not allege he

3    and Universal share a fiduciary or confidential relationship. *See Gilles v. Wineteer*,

4    2019 WL 6037422, at *5 (S.D. Cal. Nov. 14, 2019) (no claim because "Plaintiff

5    fails to allege any 'fiduciary or confidential relationship'"); *Fabian v. LeMahieu*,

6    2019 WL 4918431, at *14 (N.D. Cal. Oct. 4, 2019) (same); *Bradley v. Chiron*

7    *Corp.*, 136 F.3d 1317, 1326 (Fed. Cir. 1998) (same).

8        And Section 1711 does not apply because the statute does not independently

9    proscribe any conduct. *See Valencia v. Merck & Co.*, 2009 WL 3365848, at *8

10   (E.D. Cal. Oct. 16, 2009) (Section 1711 "concerns only the intent to defraud, and

11   simply points out that one who makes false representations with fraudulent intent

12   need not have any particular victim in mind." (cleaned up)).

13              **2.    Rosza Fails To State A Claim Under The "Fraud" Prong**

14       Rosza's claim under the "fraud" prong fails because he "alleges no facts

15   showing an affirmative misrepresentation" in the trailer, which is the basis for his

16   claimed reliance. *Gudgel*, 514 F. Supp. 3d at 1185–88.

17              **3.    Rosza Fails To State A Claim Under The "Unfair" Prong**

18       Rosza's theory under the UCL's "unfair" prong overlaps entirely with his

19   theory on the other UCL prongs. SAC ¶¶ 132–134.  Because Rosza cannot state a

20   claim under the two other prongs, he necessarily cannot do so under this prong. *See*

21   *Johnson v. Ocwen Loan Servicing, LLC*, 2017 WL 10581088, at *8 (C.D. Cal. Dec.

22   11, 2017), *aff'd*, 744 F. App'x 418 (9th Cir. 2018); *Hadley v. Kellogg Sales Co.*, 243

23   F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017).

24              **4.    Rosza Cannot Recover Monetary Relief Under Any Prong**

25       Under any prong of the UCL, "the only monetary relief available is

26   restitution." *Lee v. Luxottica Retail N. Am., Inc.*, 65 Cal. App. 5th 793, 800 (2021)

27   (alterations omitted); *see* SAC ¶ 140.  Rosza's claim for restitution fails as a matter

28

1    of law for two independent reasons.

2        *First*, because restitution is an equitable remedy, a plaintiff seeking restitution

3    "must establish that she lacks an adequate remedy at law." *Sonner v. Premier*

4    *Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal of UCL

5    restitution claims where adequate legal remedy existed).  "Accordingly, a federal

6    court cannot grant relief under the UCL … if Plaintiffs have an adequate remedy at

7    law." *Williams v. Apple, Inc.*, 2020 WL 6743911, at *9 (N.D. Cal. Nov. 17, 2020).

8        Rosza alleges he has an adequate remedy at law:  he requests "damages"

9    under the CLRA and for breach of warranty in the form of the return of the money

10   he paid to stream *Yesterday*.  SAC ¶¶ 169, 196, 214.  This is the restitutionary

11   remedy Rosza seeks under the UCL.  SAC ¶ 140 (seeking restitution "of all money

12   unlawfully obtained from Plaintiff").  As in *Sonner*, Rosza's request for "the same

13   amount of money" in actual damages as in restitution "for the exact same harm"

14   shows he has an adequate remedy at law; his request for restitution thus fails.

15   *Sonner*, 971 F.3d at 844; *see Heredia v. Sunrise Senior Living LLC*, 2021 WL

16   819159, at *4 (C.D. Cal. Feb. 10, 2021) (dismissing UCL claim because the

17   plaintiffs' "claims for damages … are based on the same factual predicate as their

18   claim for restitution and seek the same relief, *i.e.* the return of fees paid").

19       Rosza tries to avoid *Sonner* by pleading his UCL claim "in the alternative,"

20   alleging that if the CLRA and warranty claims fail, he has no adequate remedy at

21   law.  SAC ¶¶ 127, 156–169, 191–196, 197–216; *see supra* 12–16; *infra* 21–28.

22   Courts have rejected precisely this attempt to end-run *Sonner*:  "[L]egal and

23   equitable claims based on the same factual predicates are not true alternative

24   theories of relief but rather are duplicative." *Madrigal v. Hint, Inc.*, 2017 WL

25   6940534, at *5 (C.D. Cal. Dec. 14, 2017) ("Plaintiff may not plead her equitable

26   claims in the alternative to her claims of breach of warranty, breach of contract, and

27   damages under CLRA.").  Rosza's "inability to obtain damages here results from

28   [those] claims' failure on the merits," not from "an inherent limitation of the legal

-19-                        Case No. 2:22-cv-00459-SVW-AGR

DEFENDANT'S SPECIAL MOT. TO STRIKE AND MOT. TO DISMISS SECOND AMENDED COMPLAINT

remedy that renders it inadequate." *Hanscom v. Reynolds Consumer Prods. LLC*, 2022 WL 591466, at *3 (N.D. Cal. Jan. 21, 2022); *see also, e.g.*, *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) ("Plaintiffs' argument that they will have no adequate remedy at law if their other claims fail is unavailing. Where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable."); *Durkee v. Ford Motor Co.*, 2014 WL 4352184, at *3, *9 (N.D. Cal. Sept. 2, 2014) (dismissing a UCL claim because "plaintiffs have an adequate remedy at law for the alleged Song-Beverly Act violation," even though the court went on to dismiss the Song-Beverly Act claim on the merits).  Rosza thus cannot seek monetary relief under the UCL.

*Second*, the purpose of restitution is "to make whole, equitably, the victim of an unfair practice," *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998), but here, there is no need to make Rosza "whole."  He received the benefit of what he paid for.  The *Day* requirement "includes two separate components[:]  [1] The offending party must have obtained something to which it was not entitled *and* [2] the victim must have given up something which he or she was entitled to keep."  *Id.* at 340.  Restitution is unavailable to "a consumer who … obtains the full value of what was paid for and therefore has given up nothing, *regardless of whether he or she was improperly induced to purchase the [product] in the first place*."  *Id.* (emphasis added).  Thus, a consumer who claimed he was misled into believing an auto insurance policy included collision coverage could not recover restitution for that alleged deception, since he still received a comprehensive insurance policy and accordingly "obtain[ed] the full value of what was paid for."  *Alaei v. Gov't Emps. Ins.*, 2021 WL 1165067, at *8 (S.D. Cal. Mar. 25, 2021); *see, e.g.*, *Germain v. J.C. Penney Co.*, 2009 WL 1971336, at *6 (C.D. Cal. July 6, 2009) (consumers who "retained and used" clothing "have not 'lost money or property,'" even if they were falsely promised a free airline ticket with their purchase).

Rosza received exactly what he paid $3.99 for:  the right to receive a stream

Case No. 2:22-cv-00459-SVW-AGR

DEFENDANT'S SPECIAL MOT. TO STRIKE AND MOT. TO DISMISS SECOND AMENDED COMPLAINT

on Amazon of a full-length movie about a musician who discovers "that the world's knowledge of The Beatles has been erased" and "adopts The Beatles' songs as his own." SAC ¶ 39. By the same token, Universal did not receive any money to which it was not entitled as consideration for permitting Rosza to watch the movie. *See Benn v. Allstate Ins.*, 2021 WL 5049101, at *6 (C.D. Cal. Oct. 29, 2021) (dismissing UCL claim because "[t]he only thing that Allstate obtained from [the plaintiff] was her premium payments for her policy. And if Allstate were forced to return its premiums, there would be no consideration for the insurance policy to exist"). It is irrelevant to Rosza's entitlement to restitution under *Day* whether the trailer misled him. *Day*, 63 Cal. App. 4th at 340.

### C.   Rosza's FAL Claim Fails

Rosza's FAL claim fails, first, because he has not alleged any "untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17500; *see Gudgel*, 514 F. Supp. 3d at 1187 (finding "no support for the argument that the challenged statements, even when viewed in their totality, would lead a reasonable consumer to believe that the product" bore the alleged characteristics).

In addition, as with the UCL, restitution is the only available monetary remedy for a violation of the FAL. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 695 (2006); *see* SAC ¶ 148. Under *Sonner*, Rosza must plausibly plead an inadequate remedy at law. *Adams v. Cole Haan, LLC*, 2020 WL 5648605, at *1–3 (C.D. Cal. Sept. 3, 2020) (dismissing FAL claim for this reason). He cannot do so for the same reasons that doom his request for restitution under the UCL: Rosza expressly pleads he has a remedy at law, and he received what he paid for. *Supra* at 18–21. Rosza's claim for monetary relief under the FAL therefore fails. *See Heredia*, 2021 WL 819159, at *5 (dismissing with prejudice where the plaintiffs had an adequate remedy at law).

### D.   Rosza's CLRA Claim Fails

The CLRA "is not a law of 'general applicability.'" *Ting v. AT&T*, 319 F.3d

1126, 1148 (9th Cir. 2003).  The CLRA proscribes a limited set of "unfair or deceptive acts or practices" that are "intended to result or that result[] in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  "Goods" are defined as "tangible chattels," while "[s]ervices" refers to "work, labor, and services for other than a commercial or business use."  Cal. Civ. Code § 1761(a)–(b).  Because Rosza bought neither a good nor a service as defined, the CLRA does not apply.  *See Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61 (2009).[12]

Rosza admits that he only "purchased rights to view the movie."  SAC ¶ 8.  He thereby acquired only a time-limited license to watch the movie on Amazon.  As Amazon's terms explain, "[s]ubject to payment of any charges to rent, purchase, or access [*Yesterday*]," Rosza received "a non-exclusive, non-transferable, non-sublicensable, limited license, during the applicable Viewing Period, to access and view the [film] in accordance with the Usage Rules, for personal, non-commercial, private use."  RJN Ex. 5, § 4(h) (Amazon Prime Video Terms of Use in effect when Plaintiffs streamed the movie).  Rosza could not "transfer, copy or display" the movie, or otherwise "sell, rent, lease, distribute, or broadcast any right to" it.  *Id.* § 4(k).

As a licensee, Rosza did not receive a "tangible chattel" or "work, labor, [or] services" from Amazon.  The CLRA does not cover temporary licenses to access or use a product.  *See, e.g.*, *Ferrington v. McAfee, Inc.*, 2010 WL 3910169, at *18–19 (N.D. Cal. Oct. 5, 2010) (license to use computer software); *Hall v. Sea World Ent., Inc.*, 2015 WL 9659911, at *14–15 (S.D. Cal. Dec. 23, 2015) (license to access an amusement park); *Wixon v. Wyndham Resort Dev. Corp.*, 2008 WL 1777590, at *4

---

[12] Rosza seeks both actual damages and restitution under the CLRA.  SAC ¶¶ 212, 214.  As with the UCL and FAL, *supra* at 18–21, his request for restitution is foreclosed because he has an adequate remedy at law and received exactly what he paid for.  *See Sonner*, 971 F.3d at 844 (affirming dismissal of CLRA claim for restitution where adequate legal remedy existed).

1  (N.D. Cal. Apr. 18, 2008) (license to use and access timeshare property).  For

2  example, in *Lazebnik v. Apple, Inc.*, Apple sold a "Season Pass" allowing consumers

3  to stream on iTunes "all current and future episodes of Breaking Bad, Season 5" as

4  they were released.  2014 WL 4275008, at *1 (N.D. Cal. Aug. 29, 2014).  Noting

5  that the Season Pass was "either software or a license" which "federal courts have

6  excluded … from the reach of the CLRA," the court dismissed the claim.  *Id.* at *5.

7  The same result follows here.

8       Rosza tries to avoid this result by adding numerous paragraphs to the SAC

9  alleging that "theatrical presentations, ... physical DVD movie sales, and online

10  movie rentals and sales of the movie *Yesterday* are 'goods' or 'services' within the

11  meaning of the CLRA."  SAC ¶ 200; *see, e.g.*, SAC ¶¶ 19–22 (describing "physical

12  film reels" and "physical movie copies" used in theaters, as well as "plug-in

13  devices" used to access streaming platforms on TVs).  These allegations are

14  irrelevant to Rosza, who does not allege he watched *Yesterday* on DVD, in theaters,

15  or by using a plug-in device to stream the movie.[13]

16       Rosza's allegation that Amazon provided services in displaying *Yesterday* on

17  Rosza's monitor also is irrelevant.  *See* SAC ¶ 202.  Rosza's complaint is not with

18  how the movie was displayed or the features Amazon makes available while the

19  movie is displayed; it is with the *content* of the movie.  *See Anthony*, 2016 WL

20  6836950, at *4 (distinguishing between "the expressive content of intellectual

21  property and the physical product that conveys that content," and noting the same

22  result for "DVDs" and "live movies" as for "streaming services" since only "the

23

24  _____

    [13] In any event, Rosza is incorrect that these allegations would suffice under the
25  CLRA.  Even in DVD and other formats, a consumer acquires a license to view the
    movie's expressive content, not rights in the underlying movie itself.  *See Anthony*,
26  2016 WL 6836950, at *4 (noting no differences between "DVDs," "live movies,"
27  and "streaming services" where only the movie's expressive content is at issue);
    *infra* at 25–26.
28

expressive content" of the movie was at issue).  To invoke the CLRA, Rosza must allege that the *license* he purchased to view the movie's *content* is a tangible chattel or service.  Rosza cannot do this.  *See Lazebnik*, 2014 WL 4275008, at *1.

### E.   Plaintiffs' Claims For Unjust Enrichment Fail

Plaintiffs seek restitution for unjust enrichment.  SAC ¶¶ 154–155, Request for Relief ¶ B.  As with the UCL, FAL, and CLRA, to recover this equitable remedy under California law, Rosza must plead an inadequate remedy at law, *see Nguyen v. Nissan N. Am., Inc.*, 2017 WL 1330602, at *4–5 (N.D. Cal. Apr. 11, 2017) (dismissing unjust enrichment claim for this reason), which he cannot do.  *Supra* at 18–20.  Moreover, both Plaintiffs received exactly what they paid for, further foreclosing any relief under this claim.  *Supra* at 21–22.

### F.   Plaintiffs' Express Warranty Claims Fail

To plead their express warranty claims, Plaintiffs must plausibly allege, among other things, that an express warranty existed under Cal. Com. Code § 2313 and Md. Code, Com. Law § 2-313.  *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1333 (C.D. Cal. 2013); *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 107 (D. Md. 2020).  They cannot do so for multiple reasons.

*First*, in both California and Maryland, an express warranty can arise only in "transactions in *goods*."  *Asghari*, 42 F. Supp. 3d at 1333 (emphasis added) (quoting Cal. Com. Code § 2102); Md. Code, Com. Law § 2-102.  This requirement derives from the texts of the States' express warranty statutes (themselves based on the UCC), which cover warranties only for "goods."  Cal. Com. Code § 2313(1)(a)–(c); Md. Code, Com. Law § 2-313(a)–(c).  "Goods," in turn, "means all things … which are *movable* at the time of identification to the contract for sale."  Cal. Com. Code § 2105(1) (emphasis added); Md. Code, Com. Law § 2-105(1) (same).

As explained *supra* at 22, Plaintiffs purchased a time-limited license to receive a stream of *Yesterday* on Amazon.  *See* SAC ¶¶ 8, 11.  They did not purchase a "movable" item and so have no warranty claims.  This Court reached that

DEFENDANT'S SPECIAL MOT. TO STRIKE AND MOT. TO DISMISS SECOND AMENDED COMPLAINT

conclusion in *Anthony*:  applying a substantively identical definition of "goods" to an implied warranty claim, the Court held that "streaming services" sell only "a license to view the expressive content," the plaintiff did not purchase any "items that can be moved," and the plaintiff therefore could not state a warranty claim.  2016 WL 6836950, at *4.  The same result follows here.

*Second*, in both states, only a "seller" can create an express warranty.  Cal. Com. Code § 2313(1); Md. Code, Com. Law § 2-313(1).  A "'[s]eller' means a person who sells or contracts to sell goods," Cal. Com. Code § 2103(1)(d); Md. Code, Com. Law § 2-103(1)(d), while a "'sale' consists in the passing of title from the seller to the buyer for a price," Cal. Com. Code § 2106(1); Md. Code, Com. Law § 2-106(1).  A "sale is an essential element to impose liability under warranties."[14] *Shepard v. Alexian Bros. Hosp.*, 33 Cal. App. 3d 606, 614 (1973); *see Bona v. Graefe*, 264 Md. 69, 73 (1972).

Plaintiffs do not allege that when they purchased a license to receive a stream, Universal then transferred title to the movie.  Plaintiffs try to get around this fatal defect by alleging that Universal transfers title to the underlying movie when it sells DVDs.  SAC ¶ 21.  This theory is irrelevant here because Plaintiffs do not allege they bought DVDs containing *Yesterday*.[15]  The theory also is flatly wrong.  As this Court explained in *Anthony*, "courts have distinguished between the expressive content of intellectual property and the physical product that conveys that content." 2016 WL 6836950, at *4.  Here, Plaintiffs take issue with "the story depicted in the movie," and "there is no way to characterize [that] as an aspect of the physical item, such as the DVD."  *Id*.  Instead, just like "live movies" and "streaming services," the

---

[14] This follows also from the definition of "[g]oods," which presumes that a "good" is covered only if identified in a "contract for *sale*."  Cal. Com. Code § 2105(1) (emphasis added); Md. Code, Com. Law § 2-105(1) (same).

[15] Also, notably, the scene containing Ms. De Armas and "Something" is available as a bonus feature in the DVD format.  *See* n.7, *supra*.

DVD represents merely "a license to view the expressive content." *Id.* (noting that in all such cases only "the expressive content" is at issue, not "the tangible media that conveys that content").  "As a result, while a sale occurs with respect to the physical DVD, there has been no sale with respect to the expressive video content" because "the title to the video content remains with the copyright owner" and "has not been passed." *Id.* (citing 17 U.S.C. § 202).

*Third*, to recover for any breach of warranty, the buyer must "notify the seller of breach." Cal. Com. Code § 2607(3)(A); Md. Code, Com. Law § 2-607(3)(a).  In both California and Maryland, notice is due "prior to the institution of the action," without which "the right to bring the action does not exist." *Lynx, Inc. v. Ordnance Prods., Inc.*, 273 Md. 1, 17 (1974); *see Alvarez v. Chevron Corp.*, 656 F.3d 925, 932–33 (9th Cir. 2011) (finding notice insufficient when served simultaneously with the complaint, because under California law "the notice requirement means pre-suit notice").  Here, Rosza gave Universal notice of his CLRA (but not warranty) claim on February 9, 2022, 19 days *after* he filed this lawsuit on January 21.  SAC ¶ 168 & Ex. B.  And Woulfe still has not provided Universal any notice whatsoever.

*Fourth*, absent allegations of personal injury (of which there are none here), "privity is a required element" for breach of express warranty in Maryland. *H & M Co. v. Tech. Heat Transfer Servs., Inc.*, 2015 WL 1472000, at *4 (D. Md. Mar. 30, 2015).  Woulfe has not alleged that he is in contractual privity with Universal:  he streamed *Yesterday* on Amazon's platform by engaging solely with Amazon, SAC ¶ 10, which in turn contracted with Universal to stream the movie. *See H & M Co.*, 2015 WL 1472000, at *4 (dismissing claim because "H & M's contract was solely with TJO, and it was TJO that, in turn, contracted with THTS"); *KeraLink Int'l, Inc. v. Stradis Healthcare, LLC*, 2021 WL 4420636, at *13 (D. Md. Sept. 27, 2021) (same where the product went through intermediaries before reaching the plaintiff).  Although Woulfe alleges that he was the intended beneficiary of any express warranty, SAC ¶ 192, that allegation is wholly conclusory and unsupportable.

### G.     Plaintiffs' Implied Warranty Claims Fail

Plaintiffs allege that Universal violated the implied warranty of merchantability, Md. Code, Com. Law § 2-314; Cal. Com. Code § 2314; and the implied warranty of fitness for particular use, Md. Code, Com. Law § 2-315; Cal. Com. Code § 2315.  SAC ¶¶ 156–169.  The former warrants that a good is, among other things, "fit for the ordinary purposes for which such goods are used" and "[c]onform[s] to the promises or affirmations of fact made on the container or label if any."  Md. Code, Com. Law § 2-314(2)(c), (f); Cal. Com. Code § 2314(2)(c), (f).  The latter warrants that a good is fit for the buyer's "particular purpose."  Md. Code, Com. Law § 2-315(1); Cal. Com. Code § 2315.  Plaintiffs also allege that Universal violated the same warranties imposed by the California's Song-Beverly Act.  Cal. Civ. Code § 1791.1(a)(2), (a)(4), (b).  These claims fail for multiple reasons.

*First*, like express warranties, these implied warranties can exist only for "goods,"[16] defined as "movable" items.[17]  As explained above, Plaintiffs do not and cannot plead they purchased "goods."  *Supra* at 24–25.

*Second*, the alleged implied warranties exist only "in a contract for … sale," Md. Code, Com. Law § 2-314; Cal. Com. Code § 2314, and may only be given by a "seller at the time of contracting," Md. Code, Com. Law § 2-315; Cal. Com. Code § 2315.  *See* Cal. Civ. Code §§ 1792 (Song-Beverly applies to the "sale of consumer goods"), 1792.1 (same).  As explained above, Plaintiffs do not and cannot plead that Universal transferred title to *Yesterday*.  *Supra* at 25–26; *see, e.g.*, *Anthony*, 2016

---

[16] Md. Code, Com. Law §§ 2-314, 2-315, 2-102; Cal. Com. Code §§ 2314, 2315, 2102; Cal. Civ. Code § 1792 (Song-Beverly Act applies to "consumer goods").

[17] Md. Code, Com. Law § 2-105(1); Cal. Com. Code § 2105(1); *Anthony*, 2016 WL 6836950, at *4 ("[c]onsumer goods" under Song-Beverly Act "are tangible items that can be moved, serviced, or repaired"); *Sheeskin v. Giant Food, Inc.*, 20 Md. App. 611, 623 n.3 (1974) (an implied warranty does not arise in transactions for real property because they "do not involve movable things").

WL 6836950, at *4 (dismissing a Song-Beverly Act claim because title to the movie did not pass); *Sheeskin*, 20 Md. App. at 623 n.3 ("the implied warranties" in the UCC "are inapplicable" to "transactions in which title does not pass").

*Third*, as with their express warranty claims, Plaintiffs' UCC implied warranty claims fail because Plaintiffs did not give Universal pre-suit notice of their claims. *See supra* at 26; *Lynx, Inc.*, 273 Md. at 17; *Alvarez*, 656 F.3d at 932–33.

*Fourth*, Woulfe's implied warranty claim fails because he is not in privity with Universal, and his allegation that he is an intended beneficiary of any implied warranty, SAC ¶ 161, is wholly conclusory and unsupportable. *See supra* at 26.

*Finally*, to state a claim for breach of the implied warranty of fitness for particular purpose under either the UCC or the Song-Beverly Act, Plaintiffs must plausibly allege that "the seller at the time of contracting ha[d] reason to know any particular purpose for which the goods are required and that the buyer [was] relying on the seller's skill or judgment to select or furnish suitable goods."  Md. Code, Com. Law § 2-315(1); Cal. Com. Code § 2315(1); *see* Cal. Civ. Code §§ 1791.1(b), 1792.1 (substantially similar for Song-Beverly Act).  Plaintiffs have not alleged a unique purpose for seeing the movie.  And even if their intention was solely to see de Armas and the "Something" song-joke scene, they have not alleged any fact showing how Universal could have known that.  *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 359 (D. Md. 2011) (dismissing a claim absent an allegation "that the buyer have a particular purpose for the goods, unique from the 'normal use of the goods,'" and without evidence "that Mr. Casey expressed any such purpose to Defendant"); *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 920 (9th Cir. 2014) (affirming dismissal where "Plaintiffs fail to allege that Sony had reason to know that Plaintiffs purchased the PS3 for any particular purpose" (cleaned up)).

## VI.   PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF FAIL

In addition to damages and restitution, Plaintiffs seek injunctive relief on a

1   number of claims, including requiring Universal "to engage in a corrective

2   advertising campaign." *E.g.*, SAC ¶¶ 141, 148, 169, 212, Request for Relief, ¶ C.

3   Plaintiffs cannot seek injunctive relief for two reasons.

4   **A.    Plaintiffs Lack Article III Standing To Seek Injunctive Relief**

5   "A plaintiff must demonstrate constitutional standing separately for each form

6   of relief requested." *Davidson*, 889 F.3d at 967. "[W]here, as here, a plaintiff seeks

7   prospective injunctive relief, he must demonstrate that he is realistically threatened

8   by a repetition of the violation." *Armstrong v. Davis*, 275 F.3d 849, 860–61 (9th

9   Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499

10  (2005). "[T]he threat of injury must be 'actual and imminent, not conjectural or

11  hypothetical.'" *Davidson*, 889 F.3d at 967 (internal quotation marks omitted). "In

12  other words, the 'threatened injury must be *certainly impending*'" and "allegations

13  of *possible* future injury are not sufficient." *Id.*

14  Plaintiffs cannot make that showing. Having seen *Yesterday*, Plaintiffs know

15  that de Armas and the scene with "Something" do not appear in the movie. SAC

16  ¶¶ 7, 10. Plaintiffs cannot be misled by the trailer in the future and therefore are not

17  at risk of any further harm from it. Indeed, Plaintiffs repeatedly allege that they

18  would not pay to see the movie again without de Armas or "Something." *E.g.*, SAC

19  ¶¶ 12, 136. And where, as here, plaintiffs "admit[]" that had they "known the truth

20  about Defendants' misrepresentation," they "would not have purchased Defendants'

21  Product," plaintiffs lack standing to seek prospective relief. *Jovel v. Boiron Inc.*,

22  2013 WL 12164622, at *6 (C.D. Cal. Aug. 16, 2013) (Wilson, J.); *see, e.g.*,

23  *Davidson*, 889 F.3d at 969 n.5; *Palmer v. CVS Health*, 2019 WL 6529163, at *4 (D.

24  Md. Dec. 4, 2019).

25  Plaintiffs cannot manufacture standing by alleging that they anticipate

26  watching *other* Universal movies, or that they "would be interested in viewing a

27  version of *Yesterday* which did include Ana De Armas." SAC ¶ 141. The

28  injunction Plaintiffs seek does not implicate any other Universal movies. *See*

-29-

1  *Davidson*, 889 F.3d at 967 ("allegations of *possible* future injury are not sufficient"

2  (internal quotation marks omitted)); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761

3  F.3d 732, 740 (7th Cir. 2014) (no standing to seek an injunction because "Camasta's

4  claim is based solely on the conjecture that because JAB harmed him in the past,

5  they are likely to harm him in the future").  Nor do Plaintiffs seek an injunction

6  compelling Universal to release a version of *Yesterday* with de Armas and the song-

7  joke scene.[18]

8  ### B.    Plaintiffs Have Not Alleged An Inadequate Remedy At Law

9  Even if Plaintiffs had standing to seek injunctive relief (which they do not),

10  their request for injunctive relief would fail because they cannot allege an

11  inadequate remedy at law.  As with restitution, *supra* at 18–19, injunctive relief is an

12  equitable remedy subject to the equitable principle that plaintiffs requesting such

13  relief "are required to allege that they lack an adequate remedy at law."  *In re*

14  *MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020)

15  (citing *Sonner*).  Accordingly, "numerous courts … have applied *Sonner* to

16  injunctive relief claims."  *Id.*; *see, e.g.*, *Adams*, 2020 WL 5648605, at *3.  Because

17  "state law cannot expand or limit a federal court's equitable authority," *Sonner*

18  applies regardless of the state law in issue (California or Maryland), and regardless

19  of whether the "state authorizes its courts to provide equitable relief when an

20  adequate legal remedy exists."  *Sonner*, 971 F.3d at 841.

21  For reasons similar to the defects in their requests for restitutionary remedies,

22  Plaintiffs' request for injunctive relief fails because Plaintiffs allege they have an

23  adequate remedy at law.  "Courts generally hold that monetary damages are an

24  adequate remedy for claims based on an alleged product defect, and reject the

25  argument that injunctive relief requiring repair or replacement is appropriate."  *In re*

26  

27  _____

[18] As noted, n.7, *supra*, Universal *has* released the deleted scene as part of the bonus

28  material on DVD.

1    *MacBook Keyboard Litig.*, 2020 WL 6047253, at \*3 (citing cases).  Here, Plaintiffs

2    do "not explain why [they] could not sufficiently be 'made whole' by monetary

3    damages."  *Id.*  Instead, they expressly allege under both California and Maryland

4    law that they should receive damages totaling the amount they paid to stream

5    *Yesterday*.  *E.g.*, SAC ¶¶ 169, 190, 196, 214.  Thus, "[b]ecause Plaintiffs' claims

6    rest on their alleged overpayments and [Universal's] failure to issue refunds, …

7    monetary damages would provide an adequate remedy for the alleged injury."  *In re*

8    *MacBook Keyboard Litig.*, 2020 WL 6047253, at \*4; *see Adams*, 2020 WL

9    5648605, at \*3 ("the injury that Adams alleges is 'lost money,' a form of harm for

10    which legal damages does seem to be an adequate remedy").[19]

11    **VII.  PLAINTIFFS CANNOT PROCEED WITH THEIR CLAIMS UNDER THE FIRST AMENDMENT**

12

13         The Court does not have to reach any First Amendment issues because

   Plaintiffs' claims fail for the non-constitutional reasons set forth in Sections V and

14    VI.  But if the Court were to reach the issue, settled law makes clear that Plaintiffs

15    cannot pursue their claims consistent with the First Amendment.

16         California courts have long recognized the First Amendment problems that

17    would arise by applying laws designed to regulate pure advertising and other forms

18    of commercial speech to expressive works.  Accordingly, "California's consumer

19    protection laws, like the unfair competition law, govern only commercial

20    speech."  *Rezec v. Sony Pictures Ent., Inc.*, 116 Cal. App. 4th 135, 145 (2004);

21    *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 953–56 (2002).  Commercial speech is speech

22    that "does no more than propose a commercial transaction."  *Bolger v. Youngs Drug*

23    *Prod. Corp.*, 463 U.S. 60, 66 (1983).  "If speech is not 'purely commercial'—that is*,*

24    *if it does more than propose a commercial transaction*—then it is entitled to full

25    First Amendment protection."  *Stewart*, 181 Cal. App. 4th at 685 (cleaned up).  The

26

27    _____

28    [19] Plaintiffs cannot avoid *Sonner* simply by pleading their claims "in the alternative" to Universal seeking dismissal of their monetary damages claims.  *See supra* 19–20.

DEFENDANT'S SPECIAL MOT. TO STRIKE AND MOT. TO DISMISS SECOND AMENDED COMPLAINT

trailer is not purely commercial speech.

*First*, the *Yesterday* trailer, like the full-length motion picture to which it is tied, is an expressive work that does more than propose a commercial transaction.[20] The fact that the trailer was produced with an economic motivation (generating audience interest in a movie) does not make it ineligible for First Amendment protection.  *See Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 325 (1997) (promotions for a film are "merely an adjunct to the exhibition of the film" and are protected to the same degree as the film itself, regardless of whether "the advertisements may have increased the profitability of the film" (quoting *Guglielmi*, 25 Cal. 3d at 872)); *Burstyn*, 343 U.S. at 502 (rejecting the argument that "motion pictures do not fall within the First Amendment's aegis because their production, distribution, and exhibition is a large-scale business conducted for private profit"); 2 McCarthy, Rights of Publicity and Privacy § 8:69 ("Advertising for constitutionally protected expressive media shares the constitutional immunity of the media use itself.").[21]

---

[20] The *Yesterday* trailer—which does not include statements like "See *Yesterday* for $3.99" or "Watch *Yesterday* now on Amazon"—is readily distinguishable from the kind of statements on "price and quantity" found to be commercial speech.  *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993) (statements on "price and quantity information" are commercial speech).

[21] Plaintiffs' reliance on extraneous documents, none of which concern whether trailers are commercial speech under the First Amendment, changes nothing.  *See* SAC ¶¶ 93–95 (alleging unspecified SEC filings, Congressional testimony, and other documents purportedly describing trailers as movie advertisements and claiming trailers are thus necessarily commercial speech).  Indeed, the Congressional testimony Plaintiffs appear to cite recognizes the First Amendment concerns raised by "government regulation of advertising and marketing— especially if it involves content-based restrictions."  *Marketing Violence to Children: Hearing Before the S. Committee on Commerce, Science, and Transportation*, 106th Cong. 50 n.13 (2000) (statement of FTC Chairman Robert Pitofsky).  Plaintiffs' reliance on the Motion Picture Association, Inc.'s ("MPA") advertising rules, SAC ¶ 93, is misplaced.  The MPA rules govern the use of MPA

*Second*, regardless of whether the trailer is deemed to be commercial in some respects, the trailer would not be pure commercial speech, and the consumer protection statutes would not apply, because the trailer is inextricably intertwined with *Yesterday* itself, which is "plainly entitled to full First Amendment protection." *Forsyth v. Motion Picture Ass'n of Am., Inc.*, 2016 WL 6650059, at *3 (N.D. Cal. Nov. 10, 2016).  Even speech that might be deemed commercial in some contexts loses that "commercial character when it is inextricably intertwined with otherwise fully protected speech." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988); *William O'Neil & Co. v. Validea.com Inc.*, 202 F. Supp. 2d 1113, 1119 (C.D. Cal. 2002) ("[B]ecause the book cover, flyleaf, and other material advertising *The Market Gurus* is 'an adjunct' of *The Market Gurus*, it is protected to the same extent as the book itself.").  Here, the *Yesterday* trailer, including the specific scene that is the basis for Plaintiffs' claims, tells part of the story of the movie and is inextricably bound up with the content of the movie itself.

*Third*, Plaintiffs' claims inherently challenge the decision about what content to include in the trailer and what content to include in the movie.  The claims are a direct attack on editorial choices concerning what content would be in the trailer and what content would be in the released movie.  The First Amendment does not permit challenges to the exercise of such editorial discretion.  *See Miami Herald Pub'g Co. v. Tornillo*, 418 U.S. 241 (1974); *Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 895 (2019) (courts must leave "untrammeled the full freedom and liberty of the petitioner to publish the news as it desires" and avoid "unconstitutional interference with a newspaper's editorial judgment" (internal quotation marks omitted)).

In sum, even if Plaintiffs' claims did not fail under the terms of the consumer protection statutes and doctrines on which they are based, the First Amendment

---

ratings (G, PG, etc.) in connection with movie trailers.  Those rules do not purport to say that trailers are pure commercial speech under the First Amendment.

1   would independently prohibit such claims.  For all of these reasons, Plaintiffs'

2   claims fail at step two of the anti-SLAPP analysis and under Rule 12.

3   **VIII.  LEAVE TO AMEND IS UNWARRANTED**

4        Plaintiffs have amended their Complaint three times, including two times in

5   framing an SAC to respond to Universal's motions.  Having repeatedly failed to fix

6   known defects that "persisted in every prior iteration of the" complaint, Plaintiffs do

7   not deserve a fourth bite at the apple.  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*,

8   540 F.3d 1049, 1072 (9th Cir. 2008) (noting "particularly broad" discretion to deny

9   leave where the "plaintiff has previously amended the complaint" (internal quotation

10  marks omitted)).  For the reasons stated above, further amendment would be futile.

11  *See Bonin v. Calderon*, 59 F.3d 815, 845–46 (9th Cir. 1995).

12  **IX.   CONCLUSION**

13       For the foregoing reasons, Universal respectfully requests that the Court enter

14  an Order striking the SAC in its entirety under Cal. Civ. Proc. Code § 425.16;

15  dismissing all of Plaintiffs' claims with prejudice under Rule 12(b)(6); and dismissing

16  Plaintiffs' claims for injunctive relief with prejudice under Rule 12(b)(1).  Universal

17  reserves its right to seek fees and costs.  Cal. Civ. Proc. Code § 425.16(c)(1).

18

19  DATED:  July 15, 2022        Respectfully submitted,

20                           MUNGER, TOLLES & OLSON LLP

21

22

23                     By:     */s/ Kelly M. Klaus*

24                         KELLY M. KLAUS

25                     Attorneys for Defendant
                   UNIVERSAL CITY STUDIOS LLC

26

27

28