CODY R. LEJEUNE (CSB No. 249242)
cody@lejeunelawfirm.com
**LEJEUNE LAW, P.C.**
445 S. Figueroa St.
Suite 3100
Los Angeles, CA 90071
Telephone: (985) 713-4964

MATTHEW A. PEQUIGNOT (admitted pro hac vice)
mpequignot@mpiplaw.com
**PEQUIGNOT + MYERS**
2585 Ala Namahana Pkwy, #1007
Kilauea, HI 96754
Telephone: 202-328-1200

Attorneys for Plaintiffs
CONOR WOULFE, an individual, and PETER
MICHAEL ROSZA, an individual

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONOR WOULFE, an individual, and PETER MICHAEL ROSZA, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNIVERSAL CITY STUDIOS LLC, d.b.a., UNIVERSAL PICTURES, a California limited liability company; and DOES 1-20, inclusive,<br><br>　　　　Defendant, | CASE NO.:  2:22-cv-00459-SVW-AGR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)** |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

1
2
3

# **TABLE OF CONTENTS**

**Page No.**

**I.    INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

**II.   FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . .  2

**III.  ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

   A. Defendant's Anti-SLAPP Motion Challenges the Factual
      Sufficiency of the Pleadings and Should be Denied and
      Discovery Permitted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

   B. Defendant's 12(b)(6) Motion is a Thinly Disguised
      Rule 56 Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

   C. The First Amendment Does Not Insulate Defendant
       from Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   D. California's Anti-SLAPP Statute Should Not be Applied
      in Federal Court or to Woulfe's Maryland Claims . . . . . . . . . . 11

   E. Applying Current Law Which Has Narrowed the
      Applicability of the California Anti-SLAPP Statute
      Substantially, Defendant Fails to Meet its Burden
      Under the Statute Entirely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      The Current Legal Standard Ignored by Defendant . . . . . . . . . . .13

      Defendant's Motion to Strike Fails Because False
      Advertising is Not Protected Speech. . . . . . . . . . . . . . . . . . . . . .15

      Defendants' False Advertising Did Not Further
       Any Public Debate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

   F. Even if Defendant Satisfies Step One of the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

Anti-SLAPP Analysis, Plaintiff's Claims
are not Meritless . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Defendant Makes Numerous Affirmative False
Representations of Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Plaintiffs Possess Article III Standing to
Pursue Injunctive Relief, and Sonner Doesn't
Preclude Plaintiffs' Equitable Relief Claims . . . . . . . . . . . . . . 19

Defendant's Movie Products Are Goods or
Services and Title is Transferred for Goods. . . . . . . . . . . . . . . 24

G. Plaintiffs Have Standing for Same Product
Purchased at Different Stores . . . . . . . . . . . . . . . . . . . . . . . . . 29

H. Plaintiffs' Warranty Claims Survive . . . . . . . . . . . . . . . . . . . . 31

I. Plaintiffs Suffered Economic Loss . . . . . . . . . . . . . . . . . . . . . 34

J. The SCA Meets Federal Rule 9(b) Pleading Standards . . . . . . 35

K. Defendant's Arguments to Dismiss
Plaintiffs' Other Claims Fail . . . . . . . . . . . . . . . . . . . . . . . . . . 36

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION
TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

**TABLE OF AUTHORITIES**

**Page No.**

**FEDERAL CASES**

*Abbas v. Foreign Policy Group, LLC,*
    783 F.3d 1328, 1332 (D.C. Cir. 2015)    11

*Alaei v. Gov't Employees Ins. Co.,*
    2021 WL 1165067 (S.D. Cal. Mar. 25, 2021)    35

*Allen v. ConAgra Foods, Inc.,*
    2018 WL 6460451 (N.D. Cal. Dec. 10, 2018)    21

*Anderson v. Apple Inc.,*
    500 F. Supp. 3d 993 (N.D. Cal. 2020)    30

*Andino v. Apple, Inc.,*
    2021 WL 1549667 (E.D. Cal. Apr. 20, 2021)    21

*Anthony v. Buena Vista Home Ent., Inc.,*
    2016 WL 6836950 (C.D. Cal. Sept. 28, 2016)    25, 26, 27

*Barnum Timber Co. v. EPA,*
    633 F.3d 894 (9th Cir. 2011)    30

*Bates v. United Parcel Serv., Inc.,*
    511 F.3d 974 (9th Cir. 2007)    30

*Bobbs-Merrill Co. v. Straus,*
    210 U.S. 339 (1908)    27

*Bolger v. Youngs Drug Products Corp.,*
    463 U.S. 60 (1983)    7, 8

*Brocato v. Dep't of Corrections,*
    2009 U.S. Dist. LEXIS 100382 (CD. Cal. Sept. 21, 2009)    6

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

*Brooks v. Thompson Reuters Corp.*,
    2021 WL 3621837 (N.D. Cal. Aug. 16, 2021)                    21

*Brown-High v. L'Oreal USA, Inc.*,
    Case No.: GJH-17-276, 9 (D. Md. Nov. 29, 2017)              32

*Carbone v. CNN, Inc.*,
    910 F.3d 1345 (11th Cir. 2018)                              11

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*,
    447 U.S. 557, 100 S.Ct. 2343 (1980)                        6, 16

*Columbia Pictures Industries v. Miramax Films Corp.*,
    11 F. Supp. 2d 1179 (C.D. Cal. 1998)                        7

*Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*,
    576 F. Supp. 312 (D. Md. 1983)                              31

*Cortez v. Glob. Ground Support, LLC*,
    2009 WL 4282076 (N.D. Cal. Nov. 25, 2009)                   37

*Davidson v. Kimberly-Clark Corporation*,
    889 F.3d 956 (9th Cir. 2018)                              21, 35

*Dekker v. Vivint Solar, Inc.*,
    2022 WL 827246 (N.D. Cal. Mar. 18, 2022)                    21

*Disney Enterprises, Inc. v. Redbox Automated Retail, LLC*,
    2018 WL 1942139 (C.D. Cal. Feb. 20, 2018)                  28, 33

*Erie Railroad Co. v. Tompkins*,
    304 U.S. 64 (1938)                                          12

*Ferrington v. McAfee, Inc.*,
    2010 WL 3910169 (N.D. Cal. Oct. 5, 2010)                   29, 31

*Flo & Eddie, Inc. v. Pandora Media, Inc.*,
    2020 WL 6336124 (N.D. Cal. Oct. 22, 2020)                  13, 15

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

*Friedman v. AARP,*
    855 F.3d 1047 (9th Cir. 2017)           36, 37

*Gasperini v. Ctr. for Humanities, Inc.,*
    518 U.S. 415 (1996)           11

*Germain v. J.C. Penney Co.,*
    2009 WL 1971336 (C.D. Cal. July 6, 2009)           35

*Haas v. Travelex Ins. Servs. Inc.,*
    555 F. Supp. 3d 970 (C.D. Cal. 2021)           22, 23

*Hanscom v. Reynolds Consumer Prod. LLC,*
    2022 WL 591466 (N.D. Cal. Jan. 21, 2022)           23

*Harford Mut. Ins. Co. v. Seibels, Bruce and Co.,*
    579 F. Supp. 135 (D. Md. 1984)           28

*Haskins v. Symantec Corp.,*
    2013 WL 6234610 (N.D. Cal. Dec. 2, 2013)           27, 28

*Hauck v. Advances Micro Devices, Inc.,*
    Case No. 18-cv-00447-LHK (N.D. Cal. Oct. 29, 2018)           33

*Heredia v. Sunrise Senior Living, LLC,*
    2021 WL 819159 (C.D. Cal. Feb. 10, 2021)           22

*Howard v. DJI Tech., Inc.,*
    2017 WL 4181119 (E.D. Cal. Sept. 21, 2017)           38

*In re Adobe Sys., Inc. Privacy Litig.,*
    66 F. Supp. 3d 1197 (N.D. Cal. 2014)           35

*In re Hulu Privacy Litigation,*
    No. C 11-03764 LB (N.D. Cal. Apr. 28, 2014)           36

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

*In re MyFord Touch Consumer Litig.*,
　　46 F.Supp.3d 936 (N.D. Cal. 2014)　　　　　　　　　32

*In re Network Equip. Techs, Inc. Litig.*,
　　762 F. Supp. 1359 (N.D. Cal. 1991)　　　　　　　　5

*In re R.M.J.*,
　　455 U.S. 191 (1982)　　　　　　　　　　　　　　16

*In re Trader Joe's Tuna Litig.*,
　　289 F.Supp.3d 1074 (C.D. Cal. 2017)　　　　　　　32

*In re Vizio, Inc., Consumer Privacy Litig.*,
　　238 F. Supp. 3d 1204 (C.D. Cal. 2017)　　　　　　35

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
　　313 F. Supp. 1113 (N.D. Cal. 2018)　　　　　　29, 35

*Jordan-Benel v. Universal City Studios, Inc.*,
　　859 F.3d 1184 (9th Cir. 2017)　　　　　　　　　13

*Ladore v. Sony Computer Ent. Am., LLC*,
　　75 F. Supp. 3d 1065 (N.D. Cal. 2014)　　　　　　27

*La Liberte v. Reid*,
　　966 F.3d 79 (2d Cir. 2020)　　　　　　　　　　　11

*Liberty Synergistics Inc. v. Microflo Ltd.*,
　　718 F.3d 138 (2d Cir.2013)　　　　　　　　　　　13

*Metromedia, Inc v City of San Diego*,
　　453 U.S. 490 (1981)　　　　　　　　　　　　　　11

*Moore v. Mars Petcare US, Inc.*,
　　2020 U.S. App. LEXIS 23747 (9th Cir. 2020)　　24, 30

*Pangilinan v. Downey Sav. & Loan Ass'n*,
　　2011 WL 2837587 (N.D.Cal. July 18, 2011)　　　　37

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION
TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

*Perrine v. Sega of Am., Inc.*,
    2013 WL 6328489 (N.D. Cal. Oct. 3, 2013)               27

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018)             4, 11, 20

*Porsche Cars North America, Inc.*,
    2022 WL 1769120 (2022)           24

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)           12

*Rhynes v. Stryker Corp.*,
    2011 WL 2149095 (N.D. Cal. May 31, 2011)         23

*Robinson v. J.M. Smucker Co.*,
    2019 WL 2029069 (N.D. Cal. May 8, 2019)         22

*Rojas v. Bosch Solar Energy Corp.*,
    386 F. Supp. 3d 1116 (N.D. Cal. 2019)         32

*RRX Ind., Inc. v. Lab-Con, Inc.*,
    772 F.2d 543 (9th Cir. 1985)         28

*Sagent Tech., Inc. v. Micros Sys., Inc.*,
    276 F. Supp. 2d 464 (D. Md. 2003)       28, 29, 33

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)           11

*Shupe v. Nationstar Mortg. LLC*,
    231 F. Supp. 3d 597 (E.D. Cal. 2017)         36

*Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*,
    40 F. Supp. 3d 1191 (N.D. Cal. 2014)        28, 33

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION
TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

*Singh v. Lenovo (United States) Inc.*,
    510 F. Supp. 3d 310 (D. Md. 2021)      30

*Softman Prods. Co., LLC v. Adobe Sys. Inc.,*
    171 F.Supp.2d 1075 (C.D. Cal. 2001)      29

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020)      22, 23

*Sony Corp. of Am. V. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)      25

*Stacy v. Danielsen*,
    609 F.3d 1033 (9th Cir. 2010)      4

*Starr v. VSL Pharm., Inc.*,
    509 F. Supp. 3d 417 (D. Md. 2020)      33

*Sybersound Records, Inv. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008)      38

*United Tactical Systems, LLC v. Real Action Paintball, Inc.*,
    143 F. Supp. 3d 982 (N.D. Cal. 2015)      13

*Universal City Studios Prods. LLLP v. TickBox TV LLC*,
    2018 WL 1568698 (C.D. Cal. Jan. 30, 2018)      25

*UMG Recordings, Inc. v. Augusto*,
    628 F.3d 1175 (9th Cir. 2011)      26

*Vinluan-Jularbal v. Redbubble, Inc.*,
    2:21-cv-00573-JAM-JDP (E.D. Cal. Sep. 20, 2021)      31

*Walling v. Beverly Enterprises,*
    476 F.2d 393 (9th Cir. 1973)      36

*Wisdom v. Easton Diamond Sports*, *LLC*,
    2019 WL 580670 (C.D. Cal. Feb. 11, 2019)      22

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

*Zaragoza v. Apple, Inc.,*
    2019 WL 1171161 (N.D. Cal. Mar. 13, 2019)          29

*Zeiger v. WellPet LLC,*
    526 F.Supp.3d 652 (N.D. Cal. 2021)          21

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

## STATE CASES

*Burton v. Artery Co.,*
    367 A.2d 935 (1977)    28

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.,*
    169 Cal.App.4th 116 (2008)    32

*Communications Groups, Inc. v. Warner Communications, Inc.,*
    527 N.Y.S.2d 341 (Civ. Ct. 1988)    28

*Consumer Justice Center v. Trimedica International, Inc.,*
    107 Cal.App.4th 595 (2003)    17

*Day v. AT&T Corp.,*
    63 Cal. App. 4th 325 (1998)    35

*Deming v. CH NOVI, L.L.C.,*
    2013 WL 5629814 (Mich. Ct. App. Oct. 15, 2013)    11

*Dyer v. Childress,*
    147 Cal.App.4th 1273 (2007)    15

*FilmOn.com Inc. v. DoubleVerify Inc.,*
    7 Cal. 5th 133 (2019)    14

*Guglielmi v. Spelling–Goldberg Productions,*
    25 Cal.3d 860 (1979)    10

*Keimer v. Buena Vista Books, Inc.,*
    75 Cal.App.4th 1220 (Cal. Ct. App. 1999)    5, 8, 9, 10

*Kwikset Corp. v. Superior Court,*
    51 Cal.4th 310 (Cal. 2011)    34

*McGill v. Citibank, N.A.,*
    2 Cal.5th 945 (Cal. 2017)    20

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

*McKell v. Wash. Mut., Inc.,*
    142 Cal. App. 4th 1457 (2006)      37

*Mirkin v. Wasserman,*
    5 Cal. 4th 1082, 858 P.2d 568 (1993)      37

*Naveliier v. Sletten,*
    29 Cal.4th 82 (2002)      13

*People ex rel. Gascon v. HomeAdvisor, Inc.,*
    49 Cal.App.5[th] 1073, 263 CalRptr.3d 438 (2020),
    as modified (June 5, 2020)      16

*Rand Resources,*
    6 Cal. 5th 610 (2019)      13, 14

*Rezec v. Sony Pictures Ent., Inc.,*
    116 Cal.App.4th 135 (Cal. Ct. App. 2004)      7

*Serova v. Sony Music Entm't,*
    44 Cal. App. 5th 103 (2020)      17

*Stop Youth Addiction, Inc.* v. *Lucky Stores, Inc.,*
    17 Cal.4th 553 (1998)      10

*Tenet Healthsystem Desert, Inc. v. Blue Cross of California,*
    199 Cal. Rptr. 3d 901 (Cal. App. 4th Dist. 2016)      18

*Thrifty-Tel, Inc. v. Bezenek,*
    54 Cal. Rptr. 2d 468 (Cal. App. 4th Dist. 1996)      18

*Universal By-Products, Inc. v. City of Modesto,*
    43 Cal.App.3d 145 (1974)      19

*Veera v. Banana Republic, LLC,*
    6 Cal.App.5th 907 (Cal. Ct. App. 2016)      34

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION
TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

*Wilson v. Cable News Network*, Inc.,
    7 Cal. 5th 871 (2019)                                                    14, 18

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION
TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

## FEDERAL STATUTES

17 U.S.C. § 107(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
17 U.S.C. § 109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
17 U.S.C. § 109(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26
17 U.S.C. § 109(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26
17 U.S.C. § 202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26
18 U.S.C. § 2710 (a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## CALIFORNIA STATUTES

Cal. Bus. & Prof. Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20
Cal. Bus. & Prof. Code § 17500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 20
Cal. Civ. Code § 1573. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37
Cal. Civ. Code § 1750 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20
Cal. Civ. Code § 1791.2(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34
Cal. Civ. Proc. Code § 425.16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11,12
Cal. Civ. Proc. Code § 425.17(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Cal. Comm. Code § 2313 (1)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 34

## OTHER STATE STATUTES

MCL 445.903(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

## FEDERAL RULES

Fed. R. Civ. P. 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23, 35
Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 11, 12
Fed. R. Civ. P. 56(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

## LOCAL RULES

None

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION
TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

## **LEGISLATIVE MATERIALS**

None

## **OTHER MATERIALS**

None

PLAINTIFFS' OPPOSITION TO DEFENDANT'S [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE 425.16; AND [2] MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6)

2:22-cv-00459-SVW-AGR

## I.   __INTRODUCTION__

The movie *Top Gun: Maverick* – starring Tom Cruise – recently premiered in the United States on May 24, 2022, thirty-six years after the debut of its iconic and wildly successful predecessor *Top Gun*. Cruise is now a megastar, whose rise was aided by the original 1986 film. It is therefore no surprise that Paramount Pictures engaged Cruise to reprise his role in the sequel, or that he is featured in the movie's advertising previews, known as "trailers". Indeed, at least one source credits Cruise as one of the top "money making" actors of all time. Given his status, most would concede that Cruise's affiliation with a movie sells tickets and that his inclusion in the *Maverick* trailers communicated to prospective movie consumers that Cruise would appear in the film.

Evincing the importance of a movie trailer, the featured actor in a movie sequel is not always the same as the star in the original film. Actors Tom Skerritt and Kelly McGillis were Cruise's co-stars in *Top Gun*, for example, but neither appear in the new sequel. Normally resolving such questions, a trailer is supposed to portray a sample of the actual movie being advertised by – among other things – informing which actors will appear in the film. Second Amended Complaint ("SAC") ¶¶ 55-56, Dkt. No. 36.

Given Tom Cruise's appearance in the *Maverick* trailer, consumer uproar would have been palpable if he did not actually appear in the released film.  Most would likewise agree that the deceived movie ticket buyers were harmed and entitled to a ticket refund (or similar remedy). Consumers expected Mr. Cruise but did not get him. Rejecting this logic, Defendant Universal asks for this Court to create precedent that would go beyond the facts of this case, and prevent redress for this or any similar movie advertising deception. Defendant's efforts to achieve that result should be rejected.

## II.   __FACTUAL BACKGROUND__

Like the *Maverick* example, Defendant began advertising the movie *Yesterday* using promotional trailer advertisements (or "previews") (equivalent to samples under the U.C.C. and Song-Beverly Act) which featured the actress Ana de Armas ("ADA") prior

to the film's release, despite *knowing* for certain that ADA would never appear in the film. (SAC ¶¶ 2-3, 39, 43-47, 50-54). Evincing that Defendant wasn't merely burdened with pre-existing trailer advertisements – created before Defendant knew ADA would be cut from the film - Director Danny Boyle and lead actor Himesh Patel went on national television on June 25, 2019 and used a scene with ADA scene to promote the movie's upcoming June 28, 2019 release. (SAC¶¶ 39, 53-54). Mr. Boyle, backed by the resources of one of Hollywood's most powerful studios, could have chosen any scene without ADA to feature during his national television interview, but he instructively chose the scene with ADA which he had previously described as "fantastic" and in which he had labelled ADA as "brilliant" and "radiant". (SAC ¶¶ 41-46, 54, 59). At the time, lead actor Himesh Patel had never appeared in or starred in a movie, hence the motivation for using clips of ADA instead. (SAC ¶¶ 43-46).

Further underscoring Defendant's intent to deceive consumers, Defendant continued to advertise the movie *Yesterday* as including ADA for three years. Defendant did this by continuing to feature ADA in trailer advertisements for the movie on digital movie stores; by listing her as a cast member on NBCUniversal's VUDU movie purchase platform; and by keyword linking her to the movie so that the movie would appear when consumers searched for her name.  (SAC ¶¶ 3, 27, 52, 62-73, 81, 86). Ultimately, it was on a similar digital video platform, Amazon Prime, that Plantiffs each encountered Defendant's false advertisements, which Plaintiffs relied upon when making their decision to purchase *Yesterday.* (SAC ¶¶ 7, 10)

Typical false advertising cases are more open to debate. In this case, however, there is no dispute that ADA was not in the movie *Yesterday*, or that Defendant knew this. Defendant attempts to spin the dearth of case law addressing this precise issue as undermining this action's merits. But the answer to that question is that no other movie can be identified that has been advertised in this same, literally false way (the cited Psycho advertisement, explains textually that the director is showing you around movie

sets (Motion at 3). Lacking typical defenses, Defendant accordingly argues that its trailers do not contain affirmative misrepresentations and that consumers don't rely on their content; that trailers are not commercial speech; and that the First Amendment fully shields Defendant because it was advertising a movie. Defendant's arguments are wrong.

Plaintiffs' SAC makes clear that Plaintiffs did interpret Defendant's trailers as representing that ADA would appear in *Yesterday* and, moreover, relied upon these representations when making their movie purchases. (SAC¶¶ 7, 10). It is black letter law that the Court is required to accept these pleaded allegations as true when deciding Defendant's motion to dismiss. At best, Defendant's inappropriate submission of unauthenticated evidence pertaining to other movie trailers raises an issue of fact, and one that is only relevant to class certification - not a motion to dismiss. (Motion at 3-4) (see Plaintiffs' Opposition to Defendant's Request for Judicial Notice ("Opp. RJN")).

Although Defendant argues that movies are fully protected by the First Amendment and that trailers enjoy the same protections as adjuncts thereof (Motion at 32), this argument ignores the whole point of this case.  The trailer for the movie *Yesterday* is not a mere summary of the film because it includes an actress and other scene elements which aren't in the movie, logically undermining an argument which was nevertheless legally flawed at the start. Contrary to Defendant's assertions, First Amendment rights have limits, and despite its attempt to rely on inapposite, defendant-friendly "rights-of-publicity" case law, neither the United States or California Supreme Courts protect false or misleading representations of fact. In this case, it was a false representation of fact that ADA was in the movie *Yesterday*, wholly undermining any First Amendment defense Defendant claims it has.

While Defendant also seeks to dismiss this case using California's much maligned anti-SLAPP procedure, Defendant's anti-SLAPP motion fatally ignores recent case law narrowing the application of the California anti-SLAPP statute.  It accordingly makes no serious attempt to meet even the first prong of Defendant's anti-SLAPP burden which

requires that Defendant tie its false claims about ADA into an issue of existing public debate. *See* Motion at 10 (alleging generally the fame of ADA and the Beatles). Likewise, Defendant cannot credibly claim that *intentional* false statements of fact further its free speech rights.

## III.   ARGUMENT

### A.   Defendant's Anti-SLAPP Motion Challenges the Factual Sufficiency of the Pleadings and Should be Denied and Discovery Permitted

When considering an Cal. Civ. Proc. Code § 425.16 anti-SLAPP motion, which tests the *legal* sufficiency of pleadings, a district court should apply the Fed. R. Civ. P. 12(b)(6) standard and consider whether a claim is properly stated. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). The Court must "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy v. Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010). Thus, the Court is required to accept as true: 1) each Plaintiff interpreted the *Yesterday* trailer as making affirmative false representations that ADA (and other omitted content) was in the movie; that they relied in the misrepresentation; and that they paid money for the movie in such reliance (SAC¶¶ 7, 10, 49, 89). Instead of conceding this point, Defendants request judicial notice, to test the *factual* sufficiency of Plaintiffs' claims, for a half dozen unauthenticated evidentiary exhibits, largely consisting of extrinsic evidence not relied on in the SAC. Defendant not only requests that the Court accept its evidence as true, but also as refuting Plaintiffs' well-pled claims. *See* Plaintiffs' Opposition to Defendant's Request for Judicial Notice (Opp. RJN).

As explained by the Ninth Circuit in *Planned Parenthood,* in federal court, a party opposing an anti-SLAPP motion challenging the factual sufficiency of its claims must be permitted to conduct discovery. *Planned Parenthood,* 890 F.3d at 834 ("[W]hen an anti-SLAPP motion to strike challenges the factual sufficiency of a claim ...[D]iscovery must

be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court.").

Here, since there has been no discovery and because Defendant is challenging the *factual* sufficiency of the claims while simultaneously contending to only challenge the legal sufficiency of the claims (see discussion *infra* and generally Plaintiffs' Opp. RJN), Defendant's Motion should be denied for this reason alone, to be decided later after limited discovery. *Planned Parenthood,* 890 F.3d at 834. In support of this purpose, Plaintiffs' have submitted a declaration herewith prepared in accordance with Fed. R. Civ. P. 56(d), setting forth the discovery which is needed. For other reasons (discussed herein), however, Defendant's motion should be denied outright, since it fails to carry Defendant's anti-SLAPP burden, or to identify any defect in Plaintiffs' pleadings.

## B. <u>Defendant's 12(b)(6) Motion is a Thinly Disguised Rule 56 Motion</u>

Defendants' Rule 12(b)(6) motion relies on the same arguments and request for judicial notice as its anti-SLAPP motion. Accordingly, Defendant's motion to dismiss also seeks to test the factual sufficiency of Plaintiffs' pleadings. But, a motion to dismiss is not a vehicle for a one-sided presentation of evidence. *In re Network Equip. Techs, Inc. Litig.*, 762 F. Supp. 1359, 1363 (N.D. Cal. 1991) ("The Court should not use judicial notice to generate an evidentiary record and then weigh evidence — which plaintiffs have not had the opportunity to challenge — to dismiss plaintiffs complaint.").

As noted in Plaintiffs' Opp. RJN, the SAC does not "necessarily rely" on any of the documents Defendants cite; they are not properly authenticated or comprise hearsay; and/or the issues to which they relate are class certification issues which are premature to address now. Accordingly, Defendant's request that the Court rely on these documents to prove disputed facts, excuse blatant false advertising and disprove Plaintiffs' pleadings, is inappropriate and should not be entertained. *Keimer v. Buena Vista Books, Inc.*, 75 Cal.App.4th 1220, 1229 (Cal. Ct. App. 1999) (denying motion to dismiss because

required to interpret advertising campaign for books and videotape as a proposal for a commercial transaction, which was a fact issue, which could not be contradicted by judicially noticed materials); *see also*, *Brocato v. Dep't of Corrections*, No. CV 06-00575 CJC (JEM), 2009 U.S. Dist. LEXIS 100382, at *7 (CD. Cal. Sept. 21, 2009) ("[Under] 12(b)(6), the Court…may not consider facts presented in briefs or extrinsic evidence."). Instead, Plaintiff's Opposition to Defendants' Request for Judicial Notice should be granted.

## C. <u>The First Amendment Does Not Insulate Defendant from Liability</u>

The movie *Yesterday* is a movie about a musician taking advantage of the world's failure to remember the Beatles. (SAC ¶ 39). It is styled as a comedy and intended to entertain and not contribute to any societal debate. Defendant didn't make *Yesterday*, but purchased it from Working Title Pictures so it could be re-sold much like Walmart sold movies on VUDU before NBCUniversal acquired the platform for its own commercial purposes. (SAC ¶ 15) Thus, to the extent that there is speech in *Yesterday*, it isn't even Defendant's. The *Yesterday* trailer also takes no political or social stance but merely serves as an advertisement to entice consumers to spend pay for the movie. SAC ¶¶ 7, 10, 55-74, 81-83, 90. Regardless, Plaintiffs take no issue with Defendant's right to express itself even in the realm of comedy. Instead, Plaintiffs assert that Defendant's false advertisement that an actress is in a movie, when she is not, is unlawful and is properly addressed by Plaintiff's claims in this case. (SAC¶¶1-5)

All First Amendment rights to free speech have limits. A movie cannot include illegal pornography and a news agency cannot publish a news story it knows to be false. Commercial speech itself enjoys less protection, and knowingly false speech is not protected at all. *Central Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n* 447 U.S. 557, 563 (1980) (the constitution affords no protection to false or misleading commercial speech). Even so, Defendant's motion advances the argument that movie-speech, and any

6

advertising related to a movie, is fully immunized from legal scrutiny. These and similar arguments, and Defendant's motion which relies upon them, should be rejected as unsupported in law.

Establishing the commercial character of Defendant's trailer advertisements, Defendant's trailers are offered on screens alongside an opportunity to purchase or rent the movie *Yesterday.* (SAC ¶¶ 23-25, 49, 52, 73, 91-95) *Id.* at ¶ 49 (also discussing weblink for purchase at trailer end). The *Yesterday* trailer was also featured on Defendant's website www.universal.com next to a NBCUniversal Fandango link, allowing consumers to buy movie tickets. (SAC ¶¶ 14, 91) In fact, the *Yesterday* trailer is the sole advertisement used to entice movie consumers to pay for a movie on platforms such as Amazon Prime, or NBCUniversal's VUDU, leading consumers to make the binary decision to purchase the movie (or not) based solely on the content of the trailer. (SAC¶¶ 23-25, 66-71). The trailer was created and is controlled by Defendant (SAC ¶¶ 90-92), which profited when additional movie tickets were sold, and profits when consumers buy or rent *Yesterday* in DVD or digital form from online or brick and mortar stores. (SAC ¶¶ 25, 30-1, 52-53). The audience for the *Yesterday* trailer is movie consumers that may choose to buy or rent the movie based on the content of the trailer. (SAC ¶¶55-74, 71); Motion at 3 ("Trailers generate interest in and excitement for a movie."). The trailer itself even identifies the date of the release of the movie so that consumers know when they can purchase tickets to see it, and Defendant's own improper extrinsic evidence calls itself a "preview".  (SAC ¶ 49, 88). In short, there is no question that Defendant's trailers meet the settled legal criteria that establish when particular speech is properly classified as commercial. *Rezec v. Sony Pictures Ent., Inc.*, 116 Cal.App.4th 135, 140 (Cal. Ct. App. 2004) ("[w]hen a communication takes the form of an advertisement, refers to a specific product, and the communicator has an economic motivation in publishing the advertisement, there is 'strong support' for the conclusion that the advertisement is commercial speech") (citing *Bolger v. Youngs Drug Products*

*Corp.,* 463 U.S. 60, 66-67 (1983). *Columbia Pictures Industries v. Miramax Films Corp.*, 11 F.Supp.2d 1179, 1187 (C.D. Cal. 1998). ("The TBO Poster and Trailer are part of an advertising campaign intended to attract viewers to see the film. Thus, ads for 'The Big One' have a commercial, rather than nonprofit or educational purpose." (citing 17 U.S.C. § 107(1)). *See*, also, SAC ¶¶ 92-95.

Although Defendant claims its trailer contains expressive elements, the portions of the trailer which *aren't* in the movie express nothing except a false statement. Likewise, since they aren't in the movie – these "false affirmative statements" (e.g. the inclusion of ADA) – cannot logically inherit any umbrella of First Amendment protection otherwise enjoyed by the movie itself. To the contrary, as soon as Defendant's ostensible "speech" crossed the line to be false and misleading, as Plaintiffs have unequivocally pleaded, it lost "any hope of constitutional protection under *Central Hudson's* very first prong." *Keimer v. Buena Vista Books, Inc.*, 75 Cal.App.4th 1220, 1230 (Cal. Ct. App. 1999) Defendant's half-hearted attempt to link the *Yesterday* trailer to a "public interest" – such as by making reference to the fame of the Beatles or ADA, also does not shield it. *Bolger,* 463 U.S. at 66-67 ( "[A]dvertising which `links a product to a current public debate' is not thereby entitled to the constitutional protection afforded noncommercial speech. . . . Advertisers should not be permitted to immunize false or misleading product information from government regulation simply by including references to public issues.") –See also, *Keimer*, 75 Cal.App.4th at 1230.

Illustratively, in *Keimer* - similar to the case here - a Defendant book publisher sought to shield itself from liability by claiming that its book and videotape covers were fully immunized from liability because of their affiliation with the underlying work. The opinion, discussing *Bolger*, rejected this argument and denied the defendant's motion to dismiss. *Keimer*, 75 Cal.App.4th at 1230 (commercial speech claims made on book and videotape covers, alleged as false, not entitled to First Amendment protections.")

Similarly, in *Rezec*, Sony Pictures was accused of false advertising for its use of a fictitious movie reviewer to promote its films. Wholly rejecting Sony's argument that its advertisements were protected by the First Amendment merely because the underlying film being advertised was noncommercial speech, the court explained: "Under Sony's absolutist approach, every film advertisement, no matter how false, would be outside the scope of consumer protection laws. We reject that position." *Rezec*, 116 Cal.App.4th at 142. Faced with facts like in this action where ADA is falsely advertised as appearing in a film, the *Sony* court reasoned that the fictitious critic's opinions could not be shielded by any constitutional protection that Sony's film enjoyed, because they were not themselves in the film. *Id.* at 142-43 ("[T]he advertisements did not reflect any character or portion of the films…As such, the advertisements constitute commercial speech and are subject to regulation under consumer protection laws.") (citing *Keimer ,* 75 Cal.App.4th at pp. 1230-1233)).[1]

The cases that Defendant relies upon are irrelevant, inapposite, or support maintaining Plaintiffs' claims. They either involved news agencies, subjective opinions (as opposed to the objective falsity), or rights-of-publicity, which are rights that the Supreme Court has found less deserving of protection than the right of consumers to be free from false advertising.

"Rights of publicity" cases cited by Defendant are plainly different. The court has denied relief in such cases because the plaintiffs were not entitled to strong rights of

---

[1] "[A]s a practical matter, Sony's position would shield all sorts of mischief. For example, a film could be advertised as having garnered "Three Golden Globe Nominations" when it had received none. An advertiser of a biography could use the word "autobiographical" even though the subject of the work had nothing to do with its creation and had renounced it from the beginning. And a newspaper or magazine could promote itself to customers who run ads by grossly inflating its circulation numbers." *Id.* at 144.

publicity. Having no legal right to stop a film maker from portraying the plaintiff in a film, it was also not unlawful to include the plaintiff in advertising materials. But here, no one is asserting rights to ADA persona in a movie, and no one could, because she was not in the film. *See Id.* at 142 (citing *Guglielmi* v. *Spelling-Goldberg Productions* (1979) 25 Cal.3d 860, 872-873, explaining, "Both were right of publicity cases, a right which "has not been held to outweigh the value of free expression. [] By contrast, the right of California consumers to be free from deceptive or misleading advertising has been held to be sufficiently important to outweigh the unfettered right to free expression." (citations omitted)). Even in the cases which are most protective of speech – such as pertinent to news organizations -  if false or misleading statements are made with knowledge of falsity as pleaded in this case, any First Amendment protections are stripped away. *See* First Amendment Section *infra*.

Defendant's trailer is a for-profit commercial which does not enjoy such strong deference as news. The portions of the trailer which were not in the movie – the so-called gravamen of Plaintiffs' claims - enjoy none at all. Plaintiffs have pleaded that these omitted scenes were used for the sole purpose of intentionally deceiving consumers – which the Court must accept as true at this stage – which dictates that Defendant's motion based on First Amendment rights must be denied.[2]

_____

[2] *See*, e.g., *Keimer v. Buena Vista Books, Inc.*, 75 Cal.App.4th 1220, 1233 (Cal. Ct. App. 1999) "Our Supreme Court has recently reaffirmed the viability and strength of the Unfair Trade Practices Act, and has noted that each time the Legislature has amended the Act, "it has done so only to *expand* its scope, never to narrow it."; *Deming v. CH NOVI, L.L.C.*, No. 309989, 3 (Mich. Ct. App. Oct. 15, 2013) ("Plaintiff further asserts that *Drive's* trailer is not speech protected by the First Amendment because the state can regulate misleading commercial speech. It is well-settled that the state can regulate misleading commercial speech. See *Metromedia, Inc v City of San Diego*, 453 US 490, 507; 101 S Ct 2882; 69 L Ed 2d 800 (1981). In fact, the MCPA does just that. See MCL 445.903(1).").

**D. <u>California's Anti-SLAPP Should Not Be Applied in Federal Court or to Woulfe's Maryland Claims</u>**

The Supreme Court made clear in *Shady Grove* that if a state law attempts to answer the same questions as a Federal Rule of Civil Procedure, the Federal Rules govern. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). Raising that issue here, Defendant's *combined* motion asks this Court to answer the same question *in the same motion* – whether Plaintiffs have pleaded a "plausible" claim under both FRCP 12(b)(6) and California's anti-SLAPP statute.[3] (Motion at 7-8 (citing *Planned Parenthood* plausibility standard); Motion at 11 ("[A]ll of the arguments set forth in Sections V–VII **apply to both the anti-SLAPP and Rule 12 motions**[.]" (emphasis added)). Accordingly, Cal. Civ. Proc. Code § 425.16 conflicts with Federal Rule 12, and therefore does not apply. *See*, also, *Abbas v. Foreign Policy Group, LLC,* 783 F.3d 1328, 1332 (D.C. Cir. 2015) (then-Judge Kavanaugh rejecting the applicability of an anti-SLAPP statute because it conflicted with the Federal Rules); *Carbone v. CNN, Inc*. 910 F.3d 1345 (11th Cir. 2018) ; *La Liberte v. Reid*. 966 F.3d 79, 83 (2d Cir. 2020).[4]

Although the Ninth Circuit in *Newshem* reached a different result, the *Newshem* decision (decided before *Shady Grove*) did not consider Defendant's strategy here of *concurrently* seeking dismissal of a plaintiff's claims - *using identical arguments*, in a *combined motion*, relying on different pleading standards - which is the "direct collision" between § 425.16 and Rule 12 avoided in that case. *U.S. ex rel. Newsham v. Lockheed*

---

[3] A more dire issue is presented if a probability standard is applied to Defendant's California law motion (as required by some decisions).

[4] Alternatively, if § 425.16 is treated as substantive, then Maryland's anti-SLAPP law would apply, but Defendant has brought no motion under such statute. *Gasperini v. Ctr. for Humanities, Inc*. 518 U.S. 415, 427 (1996) (Federal Courts sitting in diversity apply state substantive law and federal procedural law.) (citing *Erie R. Co.* v. *Tompkins,* 304 U. S. 64).

*Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir. 1999) ("*If unsuccessful* [under § 425.16], the litigant remains free to bring a Rule 12 motion to dismiss, or a Rule 56 motion for summary judgment. We fail to see how the *prior* application of the anti-SLAPP provisions will directly interfere with the operation of Rule 8, 12, or 56…[T] here is no 'direct collision' here."(emphasis added)). Further, unlike the counterclaimant in *Newshem*, Plaintiffs can identify the federal interests that would be undermined by applying § 425.16.

Specifically, § 425.16 quells Plaintiffs' free speech by threatening Plaintiffs with an attorney fee award, in the process of improperly elevating Defendant's inferior interests in false commercial advertising above Plaintiffs' superior First Amendment right to petition the courts in this case. Adding fuel to the fire, Plaintiffs could owe these fees even if they lose this case on a technicality, such as because of a split in authority over the interpretation of "goods" under the CLRA. [5]

Although Defendant cites *United Tactical* alleging that § 425.16 applies to Plaintiff Woulfe's Maryland law claims, the court in *United Tactical* reached its decision by erroneously following the Second Circuit's decision in *Liberty Synergistics*. (Motion at 6, n.8) *United Tactical Systems, LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1000 (N.D. Cal. 2015) (citing Second Circuit law). The Second Circuit Court of Appeals

---

[5] Cal. Civ. Proc. Code § 425.16 also violates the Noerr-Pennington doctrine which shields all but objectively baseless litigation – brought solely to harass and hinder – from liability under the First Amendment. *Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). Plaintiffs object to the Constitutionality of § 425.16 on this basis, at least as applied in this case. Applying §425.16 to Woulfe also violates Woulfe's and Maryland's rights to have its own laws applied to its citizens. If the Court is inclined to grant Defendant's anti-SLAPP motion under § 425.16, Plaintiffs respectfully request the opportunity to fully brief these and similar Constitutionality issues raised, so that Plaintiffs' First Amendment rights may be preserved.

has recently clarified the *Liberty* mistake, holding that § 425.16 does not apply in Federal Court *at all*, let alone in diversity cases. *La Liberte v. Reid*, 966 F.3d 79, 83 (2d Cir. 2020) (also denying that it ever reached the decision relied on by United Tactical). *Id*. at 87 n.3.

**E.** **Applying Current Law Which Has Narrowed the Applicability of the California Anti-SLAPP Statute Substantially, Defendant Fails to Meet Its Own Burden**

**1.** **The Current Legal Standard Ignored by Defendant**

Although Defendant asks this Court to apply older, more liberal standards for interpreting anti-SLAPP applicability (Motion at ____), recent Ninth Circuit case law has raised the bar for a defendant to succeed with an anti-SLAPP defense. As explained in *Flo & Eddie* when it applied the new, more stringent standard, a court must determine the precise conduct at issue as well as "whether the cause of action is based on the defendant's protected free speech or petitioning activity." Flo & Eddie, Inc. v. Pandora Media, Inc., 2020 WL 6336124, at *3 (C.D.Cal. October 22, 2020) citing *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1190 (9th Cir. 2017) quoting Naveliier v. Sletten, 29 Cal. 4th 82, 89 (2002) ([T]he conduct from which the claim arises is the conduct that constitutes the specific act of wrongdoing challenged by the plaintiff.").

Responding to widespread abuse of the anti-SLAPP statute, the California Supreme Court, likewise, substantially narrowed the applicability of the statute in a trinity of cases issued in 2019. For example in February of 2019, in *Rand Resources*, the Supreme Court rejected Defendant's argument that its burden under the statute is "not a particularly demanding one" (Motion at 9), explaining "to prevail on an anti-SLAPP motion, a defendant must do more than identify some speech touching on a matter of public interest," because "[a]t a sufficiently high level of generalization, any conduct can appear rationally related to a broader issue of public importance." *Rand Resources* 6 Cal 5th 610, 625 (2019).

Three months later in May, the Supreme Court once again stepped in to reverse a trial court's grant of an anti-SLAPP motion. Rejecting prior decisions, the court outlined a *new* two-part analysis. First, courts must "ask what 'public issue or issue of public interest' the speech in question implicates ... by looking to the content of the speech." *FilmOn.com Inc. v. DoubleVerify Inc*, 7 Cal. 5th 133, 149-150 (2019).  "Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest," (a nexus test) using context to address "the specific nature of defendants' speech and its relationship to the matters of public interest."[6] *Id* at 152.  "[I]t is not enough that the statement refer to a subject of widespread public interest; **the statement must in some manner itself contribute to the public debate**." *Id* at 150. (emphasis added).  Thus, a court must "examine whether a defendant -- through public or private speech or conduct -- **participated in, or furthered, the discourse that makes an issue one of public interest**." *Id.* at 151. (Emphasis added.)

Two months later again in July, the Supreme Court reiterated and further tailored its holding in *FilmOn*, while also rejecting the lower court's synecdoche theory of public issue analysis. *Wilson v. Cable News Network*, Inc., 7 Cal. 5th 871, 900 (2019) (confirming need to contribute to public debate,

rejecting defendant's argument that the discussion of Wilson's alleged plagiarism "is equivalent to a conversation about the ethical lapses of all journalists everywhere.").

**2.**     <u>**Defendant's Motion to Strike Fails Because False Advertising is Not Protected Speech**</u>

As explained by this Court in *Flo & Eddie*, the Court must "determine the precise claim at issue" when analyzing an anti-SLAPP motion. *Flo & Eddie, Inc. v. Pandora*

---

[6] In other words, *FilmOn* added an additional two-part analysis (beyond the existing two step standard) to determine whether an anti-SLAPP motion is rightfully treated under the catch-all provision of § 425.16(e)(4).

*Media, Inc.*, No. CV147648PSGGJSX, 2020 WL 6336124, at *4 (C.D. Cal. Oct. 22, 2020), aff'd sub nom. Flo & Eddie, Inc. v. Pandora Media, LLC, No. 20-56134, 2022 WL 1800780 (9th Cir. June 2, 2022). The Court does so by considering the claims in the complaint and the specific conduct on which they are based. *Id*. Here, much like the unprotected conduct in *Flo & Eddie*, the precise claim asserted by Plaintiffs does not take issue with Universal's "editorial discretion" in determining what movie scenes to include in movie trailers or the *Yesterday* movie itself. Motion at 9. Instead, the gravamen of Plaintiffs' claim is that Defendant affirmatively advertises that the actress ADA (and other content) is in a movie when she (and it) is not. SAC ¶¶1-5. *Compare Flo & Eddie* at 4. ("Flo & Eddie takes no issue with Pandora broadcasting its songs, it takes issue with Pandora's 'failure to pay for its exploitation of intellectual property.' Thus, [] the 'overall thrust of the complaint' is Pandora's failure to pay[.]" (Citations omitted)). Accordingly, Plaintiffs only take issue with *the portion of* Defendant's commercial movie trailers featuring ADA; its listings of ADA as a cast member; and the keyword linking of ADA's name to the movie to deceive consumers performing movie searches. (*See* SAC generally).

Defendant does not meet its burden to demonstrate that it has free speech right in the pleaded false advertising elements – the gravamen of Plaintiffs' claims - because it cannot.[7] False advertising enjoys no "free speech" Constitutional protection. *See People*

_____

[7] Likewise, simply because Plaintiff's claim touches upon protected activity – motion pictures – that by itself does not make an anti-SLAPP defense available to  Defendant as it alleges. Motion 9-10 (citing § 425.17(d)(2)). It is still Defendant's burden to demonstrate its entitlement to an anti-SLAPP defense – a burden which it does not and cannot meet. *See  Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1284 [55 Cal.Rptr.3d 544] (rejecting defendant's arguments "that motion pictures are more deserving of protection" and confirming that the exception of section 425.17, subdivision (d)(2) *does not eliminate the need to show significant public interest in the conduct at the heart of the*

*ex rel. Gascon v. HomeAdvisor, Inc.*, 49 Cal. App. 5th 1073, 1085, 263 Cal. Rptr. 3d 438, 448 (2020), <u>as modified</u> (June 5, 2020) (inherently or actually deceptive speech unprotected) (Citing  In re R.M.J. (1982) 455 U.S. 191, 202, 102 S.Ct. 929, 71 L.Ed.2d 64.). *See* also *Central Hudson* at 566, 100 S.Ct. 2343 ("Once it is determined that commercial speech is inherently likely to deceive, our inquiry ends because there is no First Amendment interest at stake."). Since Defendant's intentional false advertising cannot further its right of *protected free speech* as a matter of law, its motion must be denied for this reason alone.

### 3.   <u>Defendants' False Advertising Did Not Further Any Public Debate</u>

Defendant's Motion also fails because it does not demonstrate that its purported speech was *in connection with* and *contributed to* any public debate or conversation. Defendant instead alleges that its trailer concerns the Beatles and ADA, noting their respective fame. (Motion at 10-11).[8] Simply listing names of famous people is not enough.  Indeed, *FilmOn* made clear that defendants have the burden of showing that their speech in fact *contributed to a public conversation. See FilmOn.com*, 7 Cal. 5th at 150 (for anti-SLAPP protection, "it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the

_____

*plaintiff's complaint* or expand the scope of the anti-SLAPP law to provide protection to motion picture defendants in every context." (emphasis added).

[8] With no tangible thread connecting the issues - Defendant also alleges that "there is 'widespread, public interest' in the process of making movies and trailers". *Id*. But these unconnected, generalized allegations do not crystallize into a credible anti-SLAPP defense. They do not identify an existing public debate or controversy. They do not explain how they contribute to or advance the "conversation".

public debate." (citations omitted)); *see*, *also*, *Serova v. Sony Music Entm't*, 44 Cal. App. 5th 103, 116 (2020).[9]

Considering Defendant's argument a movie trailer is protected as an adjunct of the movie, Universal did not create or author the movie *Yesterday*, and therefore it is not Defendant's speech. Defendant merely purchased the movie to re-sell to consumers, just like WalMart sold movies on the VUDU platform before it was purchased by Defendant's parent NBCUniversal. (SAC¶¶ 14-15). Accordingly, following this Court's reasoning in Flo & Eddie, Defendant's speech is not protected because it was made for commercial purposes and defendant was not the "speaker". *Flo & Eddie* at 5 ("[E]ven though (1) Pandora's speech was broadcasted publicly, it is not protected activity because (2) it was made for commercial purposes, and (3) the speaker, Pandora, was not involved in creating the content of the speech."). Moreover, ADA was not in the *Yesterday* movie at all (nor was other deleted content). Therefore, Defendant can't rely on the First Amendment protections the movie itself might enjoy – *because she is not part of the movie which is protected* - which is precisely the point of Plaintiffs' case. *Consumer Justice Center v. Trimedica International, Inc.*, 107 Cal.App.4th 595, 602 (Cal. Ct. App. 2003) ("No logical interpretation…suggests that 'matters of public significance' includes specific advertising statements about a particular commercial product, absent facts which truly make that product a matter of genuine public interest").

---

[9] The court in *Serova v. Sony* only granted Sony's anti-SLAPP motion because it determined that Sony's statements – which it determined were only opinion – contributed to the debate about whether the Jackson music tracks where authentic (versus whether they were performed by an imitator). Unlike in the *Sony* case, neither ADA or any facsimile thereof appear in *Yesterday*. Accordingly, there is no "public debate" about ADA's authenticity and Universal is not expressing an *opinion* concerning whether an appearance of ADA is genuine or not.

The applicability of the anti-SLAPP statute is the exception and not the rule, and the nexus between the complained of conduct and Defendant's free speech rights cannot be tangential. *Wilson*, 7 Cal.5th at 890, 894 (Defendants "must show that the complained-of adverse action, in and of itself, is an act in furtherance of its speech or petitioning rights." The nexus must "bear[] a sufficiently substantial relationship to the organization's ability to speak....".). "Cases that fit that description are the exception, not the rule." (*Id*., at 890.) This case is no such exception.

## F.  EVEN IF DEFENDANT SATISFIES STEP ONE OF THE ANTI-SLAPP ANALYSIS, PLAINTIFFS' CLAIMS ARE NOT MERITLESS

### 1.  Defendant Makes Numerous Affirmative False Representations of Fact

Contrary to Defendant's assertions, Plaintiffs plead that Defendant has made numerous affirmative misrepresentations of fact, including expressly in writing (SAC ¶¶ 2-3, 7, 10, 23, 27-31, 49-74, 81-83, 88-89, 102, 110-111). But affirmative misrepresentations need not be express. *See Tenet Healthsystem Desert, Inc. v. Blue Cross of California,* 199 Cal. Rptr. 3d 901, 916 (Cal. App. 4th Dist. 2016) (verbal or written statements not required; misleading conduct suffices) (citing *Thrifty-Tel, Inc. v. Bezenek*, 54 Cal. Rptr. 2d 468 (Cal. App. 4th Dist. 1996)).

Although at best a triable "fact' issue (see Opp. RJN), typical movie consumers (including Plaintiffs) construe trailers themselves as making affirmative representations pertaining to the cast (and other content) of a movie. (SAC ¶¶ 7, 10, 49, 55-56, 88-89). Moreover, Defendant's other advertising and promotional conduct informs the purpose of including ADA in the trailer. ADA is *expressly* listed (in writing) as a movie cast member; her name is keyword-linked to the movie; and when Defendant promoted the movie on T.V., clips of ADA were used. (SAC ¶¶ 3, 23-30, 52, 141). This conduct viewed as a whole, the purpose of including ADA in the *Yesterday* trailer is clear. Defendant wanted

consumers to believe that she was in the movie. *See Universal By-Products, Inc. v. City of Modesto* (1974) 43 Cal.App.3d 145, 151 [117 Cal.Rptr. 525] ["A misrepresentation need not be express but may be implied by or inferred from the circumstances."].)

While Defendant insinuates that it is not responsible for the VUDU false advertising (Motion at 16, FN 10), even if that is accepted as true, it only bolsters Plaintiffs' claims that the trailer was misleading. If Defendant did not instruct VUDU to do it, then VUDU itself must have been deceived by the trailer, leading it to *inter alia* list ADA as a cast member. (SAC¶¶ 23-30). Under either interpretation, Plaintiffs' allegations that Defendant made affirmative misrepresentations of fact meet and exceed the *Planned Parenthood* plausibility standard.

### 2. Plaintiffs Possess Article III Standing to Pursue Injunctive Relief, and Sonner Doesn't Preclude Plaintiffs' Equitable Relief Claims

Plaintiffs' SAC seeks both *future* private and public injunctive relief, as well as monetary restitution. Monetary restitution, as distinguished from Plaintffs' claims for future injunctive relief, is requested for Defendant's products which this Court determines (if any) are not "goods" or "services" under the CLRA (or for warranty purposes). For example, for Plaintiffs' UCL claims, Plaintiffs state that, "[t]here is no adequate remedy at law for any unlawful, unfair, or fraudulent advertising, for any *Yesterday* movie sale, movie display, rental, or viewership right sold **which the Court determines is not a good or service** for which remedies are available under California Consumers Legal Remedies Act." SAC ¶127. This alternative pleading is because of this circuit's split in authority pertaining to whether a movie, such embodied in a DVD, is a "good", and addresses a subject matter eligibility question, not a merits question. *See* section discussing goods herein. More specifically, Plaintiffs seek injunctive relief for all products, whether or not they are determined to be "goods" or "services", and seek monetary restitution only for products which are found *not* to be "goods" or "services".

First, Defendant's motion fails to address Plaintiffs' request for public injunction *at all*. Plaintiffs' request for public injunctive relief was expressly and plausibly pleaded. SAC 141, 148, Request for Relief ¶C (seeking "on behalf of the general public…a public injunction…prohibiting Defendant **from continuing and further engaging** in its unlawful, unfair and fraudulent conduct[.]"). The relief requested would put an end to Defendant's existing and future false advertising, which remains in circulation (including as cast listings in store(s) not identified in the pleadings), and thereby prevent future confusion for the benefit of the general public. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951, 393 P.3d 85, 87 (2017) ("[T]he statutory remedies available for a violation of the Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.), the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.), and the false advertising law (*id.*, § 17500 et seq.) include public injunctive relief, i.e., injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public.). Since the Motion does not seek dismissal of this relief, Plaintiffs' claim should be sustained for this reason alone.[10]

Plaintiffs' private injunction relief should remain for similar reasons. Contrary to Defendant's misstatement of Plaintiffs' claims (Motion at 29), the SAC explains that because movie stores *currently* expressly name (and otherwise advertise) ADA as a cast member, Plaintiffs could be deceived again *in the future*. SAC ¶¶ 3, 26-30, 52, 141, 194. This is a real threat because it is plausible for Plaintiffs to believe that a version of the movie featuring ADA will be released in the future. Her footage exists (Motion at 5), and it is common for studios to release "Director's Cuts" (or similar alternate movie versions)

---

[10] It is no longer Plaintiffs' burden to "prove its case" if Defendant satisfies its burden under the anti-SLAPP statute. *Planned Parenthood* at 833–34. (Plaintiffs not required to present prima facie evidence supporting Plaintiffs' claims).

after an initial movie release. Thus, if Defendant continues to claim she is in the movie – but does not release a full version with ADA footage - Plaintiffs could be deceived again.[11] Because monetary damages (or even monetary restitution) cannot compensate for this future harm, Plaintiffs' claims for a private injunction should also be sustained. *See Andino v. Apple, Inc.,* 2021 WL 1549667, at *5 (E.D. Cal. Apr. 20, 2021) ("Money damages are an inadequate remedy for future harm, as they will not prevent Defendant from continuing the allegedly deceptive practice."); *Zeiger,* 2021 WL 756109, at *22-23.

Defendant cites *Sonner* in its support*,* however, "courts have declined to apply *Sonner* to bar UCL claims for injunctive relief, recognizing that the prospect of paying damages is sometimes insufficient to deter a defendant from engaging in future unlawful, unfair, or fraudulent business practice." *See Brooks v. Thompson Reuters Corp*., 21-CV-01418-EMC, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021); *see Zeiger*, 2021 WL 756109, at *21 ("[[P]laintiff] has shown that monetary damages for past harm are an inadequate remedy for…future harm…An injunction would ensure that he (and other consumers) can rely on [defendant's] representations in the future."); "Injunctive relief was explicitly not at issue in *Sonner*." *Dekker v. Vivint Solar, Inc.*, No. C 19-07918 WHA, 2022 WL 827246, at *3 (N.D. Cal. Mar. 18, 2022).  For reasons explained, Plaintiffs' restitution claims for injunctions are factually distinct from its requests for monetary relief (mooting *Sonner*), which resolves Defendants standing objections as well. *Andino*, 2021 WL 1549667, at *3 ("[A] plaintiff's allegation that they will not be able to rely on a product's advertising or labeling is sufficient to demonstrate a future threatened injury, conferring standing to seek injunctive relief.") (citing *Davidson v. Kimberly-Clark Corporation,* 889 F.3d 956, 961 (9th Cir. 2018)). *See*, also, *Allen v. ConAgra Foods, Inc*., 2018 WL 6460451,

---

[11] Heightening the future risk to Plaintiffs' and not-already- deceived consumers, Defendant effectively even insinuates that deceiving movie consumers is acceptable. (Motion at 3).

at *13 (N.D. Cal. Dec. 10, 2018); *Wisdom v. Easton Diamond Sports*, *LLC*, 2019 WL 580670, at *3 (C.D. Cal. Feb. 11, 2019); *Robinson v. J.M. Smucker Co.*, 2019 WL 2029069, at *4 (N.D. Cal. May 8, 2019).

Defendant's request to dismiss Plaintiffs' monetary restitution claims based on *Sonner* should also be denied. Motion at 19-20. Plaintiffs expressly plead that legal remedies are not available for products not construed as goods or services. *See*, e.g., SAC ¶127. Resolving this issue 1) requires a factual determination of subject matter eligibility, 2) is not a "merits" issue, and 3) has been necessitated by a split in the circuit's jurisprudence (pertaining to how to classify movies and similar products, based on factual differences in their physical characteristics). Nevertheless, this *factual* distinction amongst Plaintiffs' claims is all that is required. This is clear enough alone to sustain Plaintiffs' claims, but Plaintiffs' claims are also pleaded "in the alternative" as permitted by Fed. R. Civ. P. 8.[12]  *See Haas v. Travelex Ins. Servs. Inc.,* 555 F. Supp. 3d 970, 980 (C.D. Cal. 2021) ("[Sonner] cannot be read as reversing a clearly established circuit practice allowing plaintiffs to plead in the alternative at the earliest stages of litigation.") (citations omitted).

*Heredia* (Motion at 19) is inapposite for similar reasons to those explained *supra*. Plaintiffs' DVD based claims are factually different than its digital download claims, because of 1) the factual differences between the two technologies which the two products embody; 2) the factual differences pertaining to where the products were obtained; and 3) how the products were advertised at the "stores" where they were obtained. Recognizing these factual predicate differences in *inter alia* physical qualities,

---

[12] It is possible that some of Defendant's products will be deemed goods (or services), while others are treated with restitution remedies. A variety of product formats are at issue in this case – though the product itself is the same – because it is a class case. Accordingly, legal remedies may be maintained for the goods, and restitution remedies maintained for the other movie forms, raising no conflict with *Sonner*.

the pleadings expressly explain that the "goods" should be treated under the CLRA and the products which are not goods should be treated with equitable remedies (i.e., in the alternative). *See*, e.g., SAC ¶ 127. This, again, is a factual distinction – and not a merits issue - determinable only upon evaluating the physical qualities of the products. In *Durkee*, cited by Defendant, plaintiff's claims for legal remedies were dismissed without prejudice, for failing to sufficiently plead their claims (*inter alia*, under Rule 9(b), a merits issue). In other words, the court recognized that the Plaintiff had a potential legal remedy.

Otherwise distinguishing this case from *Sonner,* the *Sonner* plaintiff's legal and restitution remedies co-existed until the eve of trial. It was only because the plaintiff voluntarily dismissed valid legal remedy claims that the court foreclosed his right to seek restitution. In contrast to *Sonner*, Plaintiffs do not yet know – for factual reasons – whether movies are goods (which are therefore entitled to legal remedies). Accordingly, Defendant's *Sonner* objection is premature. *Haas at 980 (*plaintiff must be provided with opportunity to demonstrate no damages remedy available at early stage). No case cited addresses similar facts, and they are therefore inapposite to the Court's evaluation here.[13]

---

[13] *Hanscom*, cited by Defendant, doesn't preclude pleading in the alternative, if there is a factual predicate for doing so, or pleading a claim for public injunctive relief to prevent *future* harm, while also seeking *past* damages. Hanscom v. Reynolds Consumer Prod. LLC, 2022 WL 591466, at *3 (N.D. Cal. Jan. 21, 2022). *Rhynes* is also distinguishable because Plaintiffs in this action do not say they "may" have a remedy at law. They expressly plead that they do not have such remedy for products determined factually not to be goods. Moreover, this is a subject matter eligibility question, and not a merits issue like addressed in *Rhynes*. Plaintiffs claims also involve different predicate facts, unlike in *Rhymes* where the underlying facts were the same. *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *3 (N.D. Cal. May 31, 2011).

*Moore*, decided one week after *Sonner*, also warrants sustaining Plaintiffs' claims. Addressing the very same issue, the Ninth Circuit explained, "Defendants' argument that Plaintiffs cannot seek equitable relief under the UCL or FAL, given an adequate legal remedy under the CLRA, is foreclosed by statute. The UCL, FAL and CLRA explicitly provide that remedies under each act are cumulative to each other." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 FN 11 (9th Cir. 2020) Although trial courts are split between following *Sonner* and *Moore*, Plaintiffs urge the Court to follow the decisions of the Central District, such as in *Haas*, that do not mandate premature dismissal of alternatively pleaded claims. *Haass* at 980 ("[T]he Court is unpersuaded that *Sonner* compels dismissal of this equitable claim at the pleading stage. *Sonner* had a unique procedural posture[.]" (explaining voluntary dismissal of damages claim) (denying motion to dismiss)). *See*, also, *Porsche Cars North America, Inc.*, 2022 WL 1769120 *5 (correcting misconceptions that *Moore* was *dicta* because *resulted in* rejection of argument to dismiss).

### 3. Defendant's Movie Products Are Goods or Services and Title is Transferred for Goods

Defendant contends that none of its movie products are "goods" or "services" under the CLRA, principally relying on this Court's decision in *Anthony*. Defendant's arguments, however, are inconsistent with even its own position, taken in other litigation, where it was necessary for movies – including digital movies - to be construed as "tangible" things to enforce copyright rights. Defendant has also availed itself of statutory trademark protections for movies and streaming services, which required that it represent its products as "goods" or "services". (SAC ¶¶ 98-100); *see*, also, *Id*. at ¶¶ 22, 97 (VUDU calling itself a service; VUDU warranty); *Id.* at ¶¶ 19-22.

The Copyright Act itself is instructive, as is Defendant's use of the Act for enforcement. As the Supreme Court explained in *Sony Corp. of Am.,* "Copyright protection 'subsists ... in original works of authorship fixed in any *tangible* medium of

expression.'" (citing 17 U.S.C. § 102(a) (emphasis added)). <u>Sony Corp. of Am. V. Universal City Studios, Inc.</u>, 464 U.S. 417, 432, 104 S. Ct. 774, 784, 78 L. Ed. 2d 574 (1984). Availing itself of this interpretation of the Copyright Act, Defendant has sought and obtained injunctive relief for "streaming" of digital copies of Defendant's copyrighted works. *Universal City Studios Prods. LLLP v. TickBox TV LLC*, No. CV 17-7496-MWF (ASX), 2018 WL 1568698, at *2 (C.D. Cal. Jan. 30, 2018) ("Plaintiffs…own…the exclusive U.S. rights to reproduce, distribute, and publicly perform their copyrighted works, including by means of streaming those works over the internet. Plaintiffs authorize the distribution and public performance of their copyrighted works in various formats …, including, for example: (1) for exhibition in theaters; (2) through cable and satellite television services; (3) through authorized internet video-on-demand services, including those operated by iTunes, Google Play, Hulu, VUDU, Netflix, and Amazon (affiliates of Plaintiffs Netflix and Amazon); (4) on DVDs and Blu-ray discs; and (5) for broadcast on television." (also recognizing applicability to DVDs and theatrical presentations, and also recognizing the streaming as "services')). Because Defendant has availed itself of an interpretation of "tangible" and "services" for its benefit in California courts, as well as at the U.S. Trademark Office (also for "goods"), Defendant should be estopped from asserting a different construction here. (SAC ¶¶ 98-100).

Although Defendant leans heavily on this Court's decision in *Anthony*, differentiating between the expressive conduct on a DVD and the physical disc itself, the decision in *Anthony* relates only to purchases of certain California class members under the Beverly-Song Act. *Anthony v. Buena Vista Home Ent., Inc.,* 2016 WL 6836950, at *3 (C.D. Cal. Sept. 28, 2016) (dismissing plaintiff's CLRA claims, only for failing to adequately plead likely deception). In contrast, Rosza *leased* his digital movie copy – which is covered expressly by the CLRA - which was obtained with a download, therefore neither the "sale" nor the physical disc versus "expressive content" distinction in *Anthony* have any effect on

his personal (as opposed to class) claims. (SAC ¶ 7).  *Anthony* also appears to have overlooked the First Sale Doctrine governed by 17 U.S.C. §109. According to *Anthony*, a consumer purchasing a DVD "only purchases a license to view the expressive content" consequently "there has been no sale with respect to the expressive video content because title has not been passed." *Anthony* at 4, *2016 WL 6836950)* (citing 17 U.S.C. §202). While the issue is admittedly nuanced, §109 of the Copyright Act, and the doctrine it spawned, sheds further light. Under §109 - where the First Sale Doctrine finds its origins - a purchaser of a DVD (or its VHS predecessor or similar good) obtains essentially complete ownership of the physical object (DVD) *and* the underlying work.[14] (SAC ¶ 21); 17 U.S.C. §109 (owner entitled "without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy"). *Compare* to 17 U.S.C. §202 (using the phrase "not of itself").

This doctrine birthed an entire industry – most famously represented by companies such as Blockbuster, Netflix, and Redbox. Because these companies were able to buy DVDs (or VHS tapes) and rent them to anyone on an unlimited basis, despite the protests of the movie distributors, they were able to thrive.[15] *See*, e.g, *Disney Enterprises, Inc. v. Redbox Automated Retail, LLC*, No. CV1708655DDPAGRX, 2018 WL 1942139, at *5 (C.D. Cal. Feb. 20, 2018) (rejecting language purporting to nullify a sale, explaining, "that the owner of a particular [DVD] copy 'is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy.'") (citing 17 U.S.C. § 109(a)); *Id.* at 9 (also construing a digital download as a physical copy); *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1180 (9th Cir. 2011) (holding that title was transferred);

---

[14] 17 U.S.C. §109 otherwise distinguishes sound recordings and computer programs from other Copyright copies, providing a purchaser of the former with inferior rights. *See*, e.g., 17 U.S.C. §109(b)(1)(A). This perhaps provided the reasoning for *Anthony* which - in actuality - addressed musical recordings, which merely happened to be on DVDs.

[15] The industry unsuccessfully sought to change the laws to stop this practice.

26

and Bobbs-Merrill Co. v. Straus, 210 U.S. 339, 350-51 (1908). Also negating a construction that a DVD is merely licensed when it is purchased, it need not be returned. Instructively, even VUDU itself believes digital movie purchasers own the movies they pay for, as evinced by a version of VUDU's warranty itself. (SAC ¶ 22) (also evincing that VUDU provides services and that the digital movies are goods because providing a warranty).[16]

Although the opinion in *Anthony* concludes that "there is no way to characterize [music and lyrics] as an aspect of the physical item, such as the DVD itself", data comprising a movie is physically written onto a DVD disc, and is therefore integral and intact in the aluminum layers (just not yet "expressed" until operated). (SAC ¶ 21) It is not evident that *Anthony* considered this factor (possibly because it was not presented to the Court), or the plethora of conflicting cases finding that software and video game content do qualify as goods, including under the CLRA. *See Ladore v. Sony Computer Ent. Am., LLC*, 75 F. Supp. 3d 1065, 1073 (N.D. Cal. 2014). ("[B]y slicing things that thinly, many of even the most tangible commodities could be characterized as delivery mechanisms for the transmission of intangible things. No one would seriously dispute that a book is a 'tangible chattel,' despite the fact that the physical object itself is merely a delivery mechanism for the transmission of information."); *Perrine v. Sega of Am., Inc*., No. C 13-01962 JSW, 2013 WL 6328489, at *4 (N.D. Cal. Oct. 3, 2013) (denying a motion to dismiss on basis that a video game "is not a "good" for purposes of CLRA, and noting that the California tax and commercial code, including the California Supreme Court, have accepted digital computer products as "tangible goods" and "tangible personal property."); *Haskins v. Symantec Corp*., No. 13-CV-01834-JST, 2013 WL 6234610, at *9 (N.D. Cal.

---

[16] This section also resolves Defendant's claims that its products are not "sold" (for warranty or similar claims).

Dec. 2, 2013) ("Defendant's software is often purchased in physical form. Moreover, **no matter how the software is delivered**, it works a physical change on a physical hard drive. It possesses corporeal form in a way that credit or insurance inherently cannot. A consumer can purchase Norton Antivirus in a store, pick it up in her hands, and carry it home. It is in that way the same as most commodities considered to be "goods" under the CLRA[.]" (emphasis added). *Compare* to (SAC ¶¶ 19-22, 97-99).[17]

For the reasons stated, Defendant's products – including Rosza's 30 day lease of a physical, moveable digital copy of the movie *Yesterday* (termed a "purchase" by Amazon itself) - are asserted to be goods for Plaintiffs' Expresss Warranty, Implied Warranty, and U.C.C. Claims. [18]

---

[17] Like in *Haskins,* Amazon Prime members can download movies to their own physical devices. (SAC ¶¶22, 31, 97); *Haskins,* 2013 WL 6234610, at *9. These downloaded movies can be moved, or the movie can be downloaded again on a different device within 30 days, and the digital movie itself is a physical thing. *See, also, Disney Enterprises, Inc.at 9* (digital movie download, but not a code for accessing, is a *physical* copy under the Copyright statute). Also, movies exist in physical form originally, before they are converted to different physical forms, or transmitted and stored on different physical, moveable devices, so that they can be leased or sold. (SAC ¶¶ 19-22, 97-99, 211).

[18] "[I]t seems clear that computer software…is considered by the courts to be a *tangible*, and *movable* item, not merely an intangible idea or thought and therefore qualifies as a 'good' under Article 2 of the UCC." *Commc'ns Grps., Inc. v. Warner Commc'ns, Inc.,* 527 N.Y.S. 2d 341, 344 (Civ. Ct. 1988) (citing *RRX Indus. Inc. v. Lab–Con Inc.*, 772 F.2d 543 (9th Cir.1985)); Moreover, in Maryland, "the U.C.C. applies to more than simply 'sales' of goods." *Sagent Tech., Inc. v. Micros Sys., Inc.*, 276 F. Supp. 2d 464, 467 (D. Md. 2003), quoting *Burton v. Artery Co.,* 279 Md. 94, 113–14, 367 A.2d 935, 945–46 (1977); see also, *Harford Mut. Ins. Co. v. Seibels, Bruce and Co.*, 579 F. Supp. 135, 138 (D. Md. 1984). Relying on California law, *Sagent* held the "U.C.C. should apply to a transaction that, although labeled as a license, is for all practical purposes a sale of computer software." *Sagent,* 276 F. Supp 2d at 467, citing *Softman Prods. Co., LLC v. Adobe Sys. Inc.,* 171 F.Supp.2d 1075, 1084-85 (C.D. Cal. 2001). Although Defendant's goods are not software, software and digital movies share physical similarities.

Even if digital download copies are not goods, Amazon's services in storing, managing, performing, monitoring, providing technical support, and displaying Defendant's movies are "services" under the CLRA. (SAC ¶¶97, 202) Amazon tailors the playback of the movie to the bandwidth of individual consumers (if it did not do this, if the resolution exceeded the bandwidth, the movie would freeze). *Id.* It also provides technical support during playback and during the 30 days of a rental (or in perpetuity for a purchase). *Id*. VUDU, co-owned by Defendant's parent, also considers digital movies stores as providing services, as does the United States Trademark Office (also pertaining to Amazon) (and its California counterpart), the Copyright Act, and courts entertaining Defendant's copyright suits. (SAC ¶¶ 97-100); *Universal City Studios Prods. LLLP* at 2 (describing Defendant's streaming of movies on Amazon and VUDU services)).[19] This Court should not disagree. [20]

### G. Plaintiffs Have Standing For Same Product Purchased at Different Stores

Defendant asserts that Plaintiffs do not have standing for their claims pertaining to sales (or "leases") of the movie at other stores, citing *Anderson v. Apple, Inc.*[21] But *Anderson* held that there was adequate standing, and the quotation relied on is *dicta*

---

[19] Plaintiffs object to the introduction of Amazon's terms of use (Dkt. No. 45-5) through judicial notice (*see* Opp. RJN), but they refer to Prime Video as a "service" approximately sixty-five (65) times. Dkt. No. 45-5, at 1 (PID#668). *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.,* 313 F. Supp. 1113, 1142 (N.D. Cal. 2018) (Yahoo mail as a service supported "by the fact that Yahoo itself has Terms of Services and defines Yahoo! Services as including" several services). *See, also Zaragoza v. Apple, Inc.,* 18-CV-06139-PJH, 2019 WL 1171161, at *5 (N.D. Cal. Mar. 13, 2019).

[20] Defendant's arguments pertaining to *Ferrington et al.* are merely a restatement of its arguments that movies cannot be goods. Motion at 22. These cases do say that "temporary licenses" are not covered by the CLRA, which expressly covers "leases".

[21] Plaintiffs make no claims based on the IMDB listing as alleged by Defendant's motion.

29

(discussing a different case, where no party viewed *any* of the false advertisements). *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1007 (N.D. Cal. 2020) (finding no need to identify a specific false statement for reliance purposes)*.

Although Anderson is inapposite, Plaintiffs identified specific false statements and relied on them to their detriment, when deciding to purchase *Yesterday*. (SAC ¶¶ 7, 10). This is adequate to confer standing at this stage. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020) (standing even though plaintiffs did not purchase every single type of prescription pet food (citing *In re Tobacco II Cases*, 207 P.3d at 40–41 (class standing despite differences in advertisements on class relied)). At the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. EPA,* 633 F.3d 894, 899 (9th Cir. 2011). In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007); *Singh v. Lenovo (United States) Inc.*, 510 F. Supp. 3d 310, 320 (D. Md. 2021) (finding standing, explaining that defendant's motion raised a class certification issue).

Although there is tension pertaining to the standard to apply, Plaintiffs' claims survive under any of the three prevailing standards. Under one approach, if the *products* purchased are not the same, there is no standing. In the second approach, if the *products* are sufficiently similar, standing requirements are satisfied. In the third approach, the issue is treated as a class certification issue, premature to address in a motion to dismiss. *Id.* at 319. Concluding the matter under any of the standards, all of the *products* in the SAC are *exactly* the same. *The* product is the same *Yesterday* movie simply bought (or

leased) at different "stores". The advertising likewise all communicated the same false message – that ADA was in the movie.[22]

Defendant separately argues that Plaintiffs cannot use the Lanham Act, because of standing issues, for UCL claims (Motion at 17). This is also incorrect. *See*, e.g., *Vinluan-Jularbal v. Redbubble, Inc.*, 2:21-cv-00573-JAM-JDP, 10 (E.D. Cal. Sep. 20, 2021) (being a consumer does not preclude party from bringing a claim under the UCL for violations of the Lanham Act) (citing *Ferrington v. McAfee, Inc.,*No. 10-cv-01455-LHK, 2010 WL 3910169, at *15 (N.D. Cal. Oct. 5, 2010).

### H. Plaintiffs' Warranty Claims Survive

**Privity:** Defendant is a direct seller of the movie *Yesterday* to consumers, therefore there is privity of contract for those purchasers. (SAC ¶¶ 14, 73, 91, 162). Plaintiffs also allege that Amazon formed a contract with Defendant for the benefit of Plaintiffs. (SAC ¶¶ 31, 161, 192, 202). It is common knowledge that Amazon – in many instances – is simply an online tool for third party entities (like Defendant) to sell their own wares. Accordingly, the class claims for direct purchases from Defendant, and Plaintiffs' individual purchases through intermediary (and Defendant's agent) Amazon, should be maintained. *See*, also, *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.,* 576 F. Supp. 312, 323-25 (D. Md. 1983) (principal liable for damages arising from a contract of an agent). (discussing exception to direct privity requirement)). At minimum, Amazon's relationship with Universal is a fact issue for which discovery would be required. *See* Opp. RJN. There is no privity requirement under the Song–Beverly Warranty Act. *See In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 982 (N.D. Cal. 2014). Privity is

---

[22] Whether the advertising was sufficiently similar such as to satisfy "typicality" or "commonality" requirements is an issue reserved for the class certification stage.

generally not required for liability on an *express* warranty. *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 143–44, 87 Cal. Rptr. 3d 5, 27 (2008). A privity exception also applies, because Defendant placed advertisements next to the goods, and provided samples of the goods. *See* discussion *supra*. *See*, also, Section establishing that Defendant's products are goods.

**Notice:** Plaintiffs' February 9, 2022 letter put Defendant on notice of their various false advertising and warranty (and CLRA) claims over a month before Plaintiffs served the original Complaint on Defendant. *See* Motion at 26; ¶168; Dkt. No. 16. Both the notice letter, and attached *unserved* complaint, mention Woulfe by name (as did counsel's earlier courtesy notice email to Defendant). *Id.* Having attached the *unserved* complaint (Dkt. No. 1), sufficient detail was provided to serve the public policy purpose of permitting Defendant to take steps to mitigate liability (where required). *Brown-High v. L'Oreal USA, Inc.*, Case No.: GJH-17-276, 9 (D. Md. Nov. 29, 2017) (the underlying policy has been satisfied with pre-suit notice to the manufacturer, enabling defect corrections to minimize any damages) (citations omitted)).

Plaintiff Woulfe qualifies for at least two exceptions under Maryland's privity law with regard to implied warranties – agency and intended beneficiary. (SAC ¶¶161, 162). Plaintiff Woulfe pleaded both exceptions in the Complaint and is thus exempt from Maryland's privity requirement.

For California express warranty claims, no notice is required, since Rosza did not purchase directly from Defendant. SAC ¶¶7, 10, 202. *Rojas v. Bosch Solar Energy Corp.*, 386 F. Supp. 3d 1116, 1126 (N.D. Cal. 2019); citing *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1092 (C.D. Cal. 2017). Notice was also not required for Woulfe's express warranty claims. *Starr v. VSL Pharm., Inc.*, 509 F. Supp. 3d 417, 451 (D. Md. 2020) (UCC provision nowhere states that pre-suit notice required, also noting more leniency for retail purchasers).

**Defendant's Products are Goods:** *Yesterday* qualifies as a "good" (or need not be goods under Maryland law) for warranty purposes. *See* Section discussing goods. *See*, also, *Gross v. Symantec Corp.*, No. C 12-00154 CRB, 2012 WL 3116158, at *9 (N.D. Cal. July 31, 2012) ("Although Plaintiff purchased and downloaded Symantec's software from the internet, and did not install the software from a CD, the "essence of the agreement" is the same.")

**Transfer of title:**  Title is transferred *See* Section discussing goods ownership.

**Particular Purpose (Motion at 28):** For an implied warranty of fitness in California, a plaintiff must allege that the purchaser intended to use the goods for a particular purpose; the seller had reason to know of this particular purpose; the buyer relied on the seller's skill or judgment to select or furnish goods for the purpose; the seller had reason to know that the buyer is relying on such skill and judgment. *Hauck v. Advanced Micro Devices, Inc.*, Case No. 18-CV-00447-LHK, 16 (N.D. Cal. Oct. 29, 2018). Plaintiffs meet all of those burdens here. Defendant supplied a (purported) sample of the *Yesterday* movie (the trailer); Defendant knew that Plantiffs would rely on this sample when deciding to buy (or not) the movie; Plaintiffs relied on Defendant to provide the movie (including ADA) promised by the sample; and Defendant knew that Plaintiffs would rely on Defendant's skill and judgement to provide a product with included the qualities of the sample.[23] (SAC ¶¶ 7, 10, 23-25, 49, 52, 73, 91-95). The same reasoning applies to Defendant's linking of ADA's name to the movie, and listing of her name as a cast member. (SAC ¶¶ 23-26) The movie was supplied as a search result for ADA's name, so that consumers would purchase the movie for the specific purpose of seeing ADA. Similar law

---

[23] Defendant also chose to show the ADA clips on national television, suggesting that it expected consumers to see the movie for the specific purpose of seeing ADA. (SAC ¶ 53).

applies in Maryland for implied warranties of fitness, in that a consumer must have a unique purpose for the goods – which in this case was to see ADA. Plaintiffs had a particular purpose – apart from seeing any generic movies – to see a movie with ADA, as represented by the "sample" trailer, and as communicated to Defendant by purchasing the movie based on the trailer. *See* Casey, Motion at 28. Accordingly, Plaintiffs Maryland and California claims should survive.

Defendant's supply of a sample of *Yesterday*, in the form of a trailer, is similarly sufficient to support express warranty claims, under the U.C.C. and the Song-Beverly Act. *See*, Cal. Comm. Code § 2313(1)(c) and Cal Civ Code 1791.2(a)(2) (each forming express warranty when sample is provided; whole of goods must conform to sample).

## I.  Plaintiff Suffered Economic Loss

The issue of whether Plaintiff suffered economic loss (raised at Motion 20-21) is fact issue. *See* Opp. RJN. *Veera v. Banana Republic, LLC*, 6 Cal.App.5th 907, 919 (Cal. Ct. App. 2016) (finding the issue of economic loss a triable issue). Nevertheless, UCL claims for restitution are upheld where the plaintiff has pleaded that a particular advertised aspect of a product was valued, but the advertised product did have such feature. For example in *Kwikset Corp.*, the Supreme Court reversed a dismissal of a plaintiff's claims that "Kwikset falsely marketed and sold locksets labeled as 'Made in U.S.A.' that in fact contained foreign-made parts or involved foreign manufacture." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 317 (Cal. 2011) *Id.* at 331. (rejecting an argument that there was no loss because locksets having value were received). *Id.* at 329. (economic harm for each deceived consumer is the same; the consumer *paid more* than if the product had been labeled accurately.") As pleaded in the SAC, Defendant advertised that ADA was in *Yesterday*; Plaintiffs paid for the movie in reliance on such representation; she was not in the movie. (SAC ¶¶ 7, 10). Consequently, Defendant received money from Plaintiffs to which it was not entitled, establishing grounds for restitution. *See, also, In re Vizio, Inc.,*

*Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1213 (C.D. Cal. 2017) (standing adequate under the price premium theory); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1130-31 (N.D. Cal. 2018) (alleged benefit-of-the-bargain losses sufficient for UCL standing); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1224 (N.D. Cal. 2014) (benefit of bargain allegations adequate for standing).[24]

### J. The SAC Meets Federal Rule 9(b) Pleading Standards

Defendant states that Plaintiffs' claims sound in fraud and therefore Federal Rule 9(b) applies. (Motion at 7). But see *Moore* at 1019, FN 11. (Rule 9(b) requirements may not be necessary, given only that only negligence is required for UCL, FAL, and CLRA violations). No dismissal is sought on this basis, but Plaintiff addresses the issue here.

Plaintiffs meet and indeed exceed the Rule 9(b) standard here, including by identifying the false statements made; the agents with knowledge; when the false statements were made; when and how they were relied upon; and how the Plaintiffs were deceived. Accordingly, to the extent Rule 9(b) is applicable, Plaintiffs exceed their burden. A pleading is sufficient under Fed.R.Civ.P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Walling v. Beverly Enterprises,* 476 F.2d 393, 397 (9th Cir.1973).

---

[24] Defendant's citation to *Alaei* and *Benn* are inapposite as they concern insurance policies, which are "transaction(s) in the context of a rate regulated industry, such as auto insurance." *Alaei v. Gov't Employees Ins. Co.,* 3:20-CV-00262-L-WVG, 2021 WL 1165067, at *8 (S.D. Cal. Mar. 25, 2021).  Defendant also cites to *Day* and *Germain*, which were decided after *Davidson. See Day v. AT&T Corp.,* 63 Cal. App. 4th 325, 339 (1998); *Germain v. J.C. Penney Co.,* 2009 WL 1971336, at *6 (C.D. Cal. July 6, 2009); *Davidson,* 889 F.3d at 961.

**K. Defendant's Arguments to Dismiss Plaintiffs' Other Claims Fail**

Rosza, for his UCL claim, pleads numerous violations of federal and California law satisfying the unlawful prong. We have recognized a claim under the "unlawful prong" of the UCL predicated on violation of "virtually any state, federal, or local law." *Friedman v. AARP*, 855 F.3d 1047, 1052 (9th Cir. 2017). Rosza has demonstrated standing (Section ___) and has relied to his financial detriment on Defendant's affirmative misrepresentations of fact (Section _____). *See* also Section ___ (goods/services). Citing *Shupe*, Defendant argues that Rosza is required to explain "what those statutes" are, but *Shupe*, instead, dismissed a UCL claim because the laws were identified but not supported by underlying facts. *Shupe v. Nationstar Mortg. LLC*, 231 F. Supp. 3d 597, 605 (E.D. Cal. 2017) (claims almost completely devoid of facts). Unlike in *Shupe*, Plaintiffs' recitation facts is more than 50 pages long and meets even the heightened pleading standard of Rule 9(b).

**Cal. Civ. Code §1573:** Defendant is a "video tape service provider" much like digital movie store Hulu, as decided in *In re Hulu Privacy Litigation*. Accordingly, The Video Privacy Protection Act of 1988 (18 U.S.C. § 2710) establishes a "confidential relationship" between the class members and Defendant for its direct movie sales and leases. *In re Hulu Privacy Litigation*, Case 3:11-cv-03764-LB, Dkt. No. 68, p. 9.

(quote about requirement of confidentiality). Accordingly, Defendant's case citations pertaining to Cal. Civ. Code §1573 are inapposite.[25] Motion at 18.

---

[25] Defendant does not appear to address Sections 1709 or 1711, or the Lanham Act or FAL claims more specifically (other than as already addressed herein). These claims are self-explanatory in the context of Plaintiffs' facts which include allegations of Defendant's intentional deception and false advertising.

**Cal. Civ. Code § 1711:** Valencia, cited by Defendant, merely clarifies that Defendant did not need to intend to defraud a specific individual with its false advertising of *Yesterday*. It is otherwise provides a basis for Rosza to make a claim, and Rosza has pleaded reliance as required. (SAC ¶ 7). *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092, 858 P.2d 568, 573 (1993) (no particular victim required, but must plead actual reliance.”). *See*, also, *Friedman* at 1052.

**Unfair Prong:** Under the balancing test, courts weight the “harm to the consumer against the utility of the defendant’s practice.” *Pangilinan v. Downey Sav. & Loan Ass’n,* 2011 WL 2837587, at *3 n.1 (N.D.Cal. July 18, 2011); *McKell v. Wash. Mut., Inc.,* 142 Cal. App. 4th 1457, 1473 (2006) (determination of this test “is one of fact which requires a review of the evidence from both parties”). Plaintiffs’ have pleaded that they were deceived by false advertising (SAC ¶¶ 7, 10), and California law places no value of misleading commercial statements.

**Unlawful Prong:** A claim under the “unlawful prong” of the UCL can be predicated on violation of “virtually any state, federal, or local law.” *Friedman v. AARP*, 855 F.3d 1047, 1052 (9th Cir. 2017). Also, contrary to Defendant’s motion, claims can also be based on common law violations. *Cortez v. Glob. Ground Support, LLC*, No. 09-4138 SC, 2009 WL 4282076, at *3 (N.D. Cal. Nov. 25, 2009) (“The case law persuades this Court that common law torts can generally be used as a predicate for a claim under the UCL.” Plaintiffs allege numerous violations of federal and state laws.

**Fraud Prong:** “[A] plaintiff may demonstrate a violation of the ‘fraudulent’ prong of the UCL by showing that reasonable “members of the public are likely to be deceived.” *Howard v. DJI Tech., Inc.*, 2:16-CV-02292 LEK, 2017 WL 4181119, at *6 (E.D. Cal. Sept. 21, 2017) (quoting *Sybersound Records, Inv. v. UAV Corp.,* 517 F.3d 1137, 1151-52 (9th Cir. 2008). Here, Plaintiffs have pleaded that they, and others, were actually deceived. (SAC ¶¶ 7, 10, 89).

## IV.   CONCLUSION

For the reasons stated herein, the Court should deny the Motions in their entirety.


Respectfully submitted,

Dated: August 12, 2022 | By:    /s/ Matthew A. Pequignot

**PEQUIGNOT + MYERS**
Matthew A. Pequignot (*Pro Hac Vice*)
PEQUIGNOT + MYERS
2585 Ala Namahana Pkwy, #1007
Kilauea, HI 96754
Telephone: 202-328-1200

**LEJEUNE LAW, P.C.**
Cody R. LeJeune
445 S. Figueroa St.
Suite 3100
Los Angeles, CA 90071
Telephone: (985) 713-4964

Attorneys for Plaintiffs
CONOR WOULFE, an individual, and PETER
MICHAEL ROSZA, an individual

38