UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | 2:22-cv-00459-SVW-AGR | | Date: | December 20, 2022 |
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

Proceedings:   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S SPECIAL MOTION TO STRIKE [44]

### I.    Introduction

The current case presents a novel application of false advertising laws to movie trailers. Plaintiffs were individuals who rented and watched the movie *Yesterday* on Amazon.com. Plaintiffs allege that before they rented the movie, they viewed a trailer, which contained a scene that ultimately never appeared in the final movie. The scene featured the actress Ana De Armas, and the Beatles song *Something*. Plaintiffs further allege that they watched the movie because they wanted to see De Armas and the scene in the movie and Defendant Universal's use of the trailer to promote the movie constitutes false advertising. From these allegations, Plaintiffs bring two class actions alleging a blunderbuss of false advertising, fraud, and misrepresentation claims.

Universal filed the instant joint motion to dismiss and special motion to strike under the California anti-SLAPP statute, challenging every claim asserted by Plaintiffs. ECF No. 44. Plaintiffs oppose, ECF No. 50, and the parties were ordered to provide supplemental briefing on potential First Amendment issues that the case raised. ECF No. 69-71. For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss and anti-SLAPP motion.

### II.    Background

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

### A. *The cast of characters:*

Plaintiffs Peter Michael Rosza and Connor Woulfe (collectively "Plaintiffs") are citizens of California and Maryland respectively. Compl. at ¶¶ 6,9. Both individuals rented and watched ("streamed") the movie *Yesterday* off Amazon.com's online streaming service for $3.99. *Id.* at ¶¶ 7, 10.

Defendant Universal is a limited liability company with its principal place of business in California. *Id.* at ¶13. Universal acquired rights to the movie *Yesterday* and thereafter marketed, advertised, screened, promoted, distributed, licensed, rented, and sold the movie nationally. *Id.* at ¶15.

Ana De Armas is a famous actress who has appeared in multiple films, was the 2020 Golden Globe Nominee for Best Actress in a Comedy or Musical, and has approximately 6.8 million followers on Instagram. *Id.* at ¶¶ 32-37. De Armas played a character that was ultimately cut from the final version of *Yesterday*. *Id.* at ¶40.

### B. *The subject of the dispute:*

*Yesterday* is a film about a failed musician who hits his head during a black-out only to wake up to discover that the world's knowledge of The Beatles has been erased. *Id.* at ¶ 39. Taking advantage of this opportunity, the protagonist adopts The Beatle' songs as his own, and quickly becomes world famous. *Id.* The movie was released in the United States on June 28, 2019. *Id.*

The trailer for the movie featured De Armas in a scene that was not included in the theatrical release of the film ("the Segment") and forms the basis of the present action. *Id.* at ¶40. In the Segment, the protagonist is featured on a talk show and is prompted to write a song about "something." *Id.* In response, the protagonist plays The Beatles' song *Something* seated next to and gazing at De Armas' character. *Id.* De Armas' character appears to be charmed by the protagonist and embraces him at the end of the song. *Id.* The film's female lead witnesses this scene from home and appears to be visibly upset at the embrace. *Id.* The scene comprises fifteen seconds of the about the three-and-a-half-minute trailer and De Armas does not utter any dialogue in the Segment. RJN Ex. 1.[1] Additionally, the trailer

---

[1] The Court may review and consider the trailer since it is incorporated by reference in the Complaint and there is no objection as to its authenticity. Compl. at ¶¶ 40, 53, 83; *Casault v. Fed. Nat. Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1120 (C.D.

Initials of Preparer      PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

stated that the movie was directed by "the Academy Award Winning Director of Slumdog Millionaire," written by "the writer of Love Actually", and that "Hamesh Patel" and "Lily James" would play the roles of the leading actor and actress. *Id.* at 1:31, 1:34, 2:32, 2:35.

### C. The dispute:

Plaintiffs claim to have watched the trailer on Amazon's internet movie streaming service. *Id.* at ¶¶ 7,10. Persuaded by the movie trailer, Plaintiffs rented the movie on Amazon, expecting De Armas to appear in the movie, and were disappointed to discover that De Armas and the Segment were not in the movie. *Id.* Plaintiffs allege that they would not have rented the movie had they known that Ana De Armas would not appear in the actual movie. *Id.* at ¶ 12. Plaintiffs further allege that they had never seen a trailer that featured an actor or actress that didn't also appear in the film being advertised. *Id.* ¶¶ 7,10. Finally, Plaintiffs also include anonymous online posts where individuals who watched the trailer and movie expected to see De Armas and the Segment in the movie and were disappointed to find that neither were in the movie. *Id.* ¶ 79.

Based off these allegations, Plaintiffs bring the following claims: (1) a violation of the California Unfair Competition Law ("UCL"), (2) a violation of the California False Advertising Law ("FAL"), (3) Unjust Enrichment, (4) breach of implied warranty under MD Comm. L. Code § 2-314, 2-315, 2-316, California Commercial Code, and the Song-Beverly Consumer Warranty Act, (5) Violation of Maryland's Consumer Protection Act, (6) breach of express warranty under the Uniform Commercial Code, (7) and a violation of the California Consumers Legal Remedies Act ("CLRA"). *Id.* at ¶¶ 126-216.

Defendants brought the instant anti-SLAPP motion and motion to dismiss. ECF No. 44. Plaintiffs oppose. ECF No. 56. The Court later ordered the parties to file supplemental briefs to address potential First Amendment issues raised by the case. ECF Nos. 69-71.

---

Cal. 2012) ("Under the incorporation by reference doctrine, the court may also consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'"); *see Jones v. Twentieth Century Studios, Inc.*, No. CV 21-5890 PA (SKX), 2021 WL 6752228, at *3 (C.D. Cal. Dec. 7, 2021) (taking judicial notice of the film and trailers).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

### III. Legal Standard

California has a statute designed to discourage "strategic lawsuits against public participation" ("SLAPPs"). The Ninth Circuit has explained that SLAPPs "masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010). California's anti-SLAPP statute is codified under Cal. Civ. Proc. Code § 425.16(a).

Under the statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(a).

In the Ninth Circuit, courts evaluate anti-SLAPP motions in two steps. "The defendant must first make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution." *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016) (internal quotations omitted). Second, if the defendant meets their burden, the plaintiff must demonstrate that their complaint is nevertheless "legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Hilton*, 599 F.3d at 903.

In evaluating the second step, Anti-SLAPP motions in federal court fall into two categories: "motions that challenge the legal sufficiency of complaints and motions that challenge the factual sufficiency of complaints." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021). The former motions are evaluated under a Rule 12 motion to dismiss framework; the latter are evaluated under a Rule 56 motion for summary judgment framework. *Id.* Here, Defendant challenges the legal sufficiency of Plaintiffs' claims under Rule 12(b)(6).

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | | Date: | December 20, 2022 |
|---|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | | |

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).  Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## IV.  Discussion:

### A.  Applicability of the Anti-SLAPP motion

Before the Court performs its anti-SLAPP analysis, the Court must clarify several aspects of the applicability of the statute.  Plaintiffs raise several arguments to limit the applicability of the anti-SLAPP motion to the present case.  None are availing.

First, Plaintiffs contend that Universal's anti-SLAPP motion challenges the factual sufficiency of the pleadings and should be denied outright until discovery is permitted.  But Universal's motion does not challenge the factual sufficiency of Plaintiffs' claims.  Rather, Universal challenges the legal sufficiency of Plaintiffs' allegations.  Defendant's Motion ("Mot.") at 7, 23; Defendant's Reply ("Rep.") at 2.  Accordingly, the Court is not required to deny the motion and permit discovery before making its decision.

Second, to the extent that Plaintiffs argue that the anti-SLAPP statute is inapplicable because the trailer falls under the commercial speech exception to the statute, the Court disagrees.  Although the trailer is commercial speech, *see infra* IV.C. vii, Section 425.17(d)(2) expressly provides that the

|  | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

commercial speech exception does not apply to "advertisement or other similar promotion … of a motion picture." Cal. Civ. Proc. Code § 425.17(d)(2).

Third, Plaintiffs contend that the anti-SLAPP motion should not be applied in federal court or to Woulfe's Maryland claims. The Court disagrees. Plaintiffs contend that Defendant's combined anti-SLAPP and 12(b)(6) motion create a conflict between both, because the combined motions "ask this court to answer the same question *in the same motion*." Plaintiff's Opposition ("Opp.") at 11. (emphasis in original). But the Court is puzzled as to how this creates a *conflict* between the Federal Rules of Civil Procedure and the anti-SLAPP statute, especially given that precedent states that "a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard" when an anti-SLAPP motion challenges the legal sufficiency of a claim. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), amended, 897 F.3d 1224 (9th Cir. 2018). Indeed, it seems perfectly logical to use the same arguments for an Anti-SLAPP motion and Rule 12(b)(6) motion, when the same standard applies to both. *See Anthony v. Buena Vista Home Ent. Inc.*, 2016 WL 6836950, at *9-10 (C.D. Cal. Sept. 28, 2016) (granting an anti-SLAPP motion and motion to dismiss in the same order).

As to Plaintiffs' argument that the anti-SLAPP statute should not be applied to Woulfe's Maryland claims, Plaintiffs cite no caselaw to support this proposition. Indeed, a review of the relevant case law supports a contrary conclusion. *See United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1000 (N.D. Cal. 2015) ("the Court agrees with the Second Circuit and holds that California's anti-SLAPP law can be applied to Real Action's counterclaims brought pursuant to Indiana law"); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 157 (2d Cir. 2013) ("the District Court erred in its choice-of-law analysis by concluding that California's anti-SLAPP rule could not apply following the forum transfer because New York law governed the plaintiff's cause of action.").

Plaintiffs attempt to distinguish these cases by contending that *Liberty Synergistic* is no longer good law, because of *La Liberte v. Reid*, 966 F.3d 79, 88 (2d Cir. 2020). But there, the Second Circuit's opinion did not address the portion of *Liberty Synergistic* dealing with the anti-SLAPP statute's application to non-California claims. There, the Second Circuit distinguished *Liberty Synergistics* because it did not address the specific issue that was before the Second Circuit in that case– "whether California's anti-SLAPP statue is applicable in federal court." *See Id.* at 87 n.3. The Ninth Circuit has reaffirmed that "[t]he special motion to strike provision of California's anti-SLAPP statute applies in

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | | Date: | December 20, 2022 |
|---|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | | |

federal court." *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1146 (9th Cir. 2022). And nonetheless, the Court is convinced by *Liberty Synergistics*'s reasoning.

Accordingly, the anti-SLAPP motion may apply to the present case.

### B. Step 1: Act in Furtherance of Defendant's Right to Speech in Connection with a Public Issue.

Section 425.16(e) sets out four categories of acts that may constitute an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Here, Universal argues their conduct is protected speech under section 425.16(e)(4)'s "catchall" provision. To fit in this definition, a defendant "must show that they were engaged in conduct (1) in furtherance of the right of free speech, and (2) in connection with an issue of public interest." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013).

### i. Act in Furtherance of Defendant's Right to Speech

In this step of the inquiry, courts are required to pinpoint the exact conduct at issue in the case and determine "whether the cause of action is based on the defendant's protected free speech or petitioning activity." *Flo & Eddie, Inc. v. Pandora Media, Inc.*, No. CV147648PSGGJSX, 2020 WL 6336124, at *3 (C.D. Cal. Oct. 22, 2020) (quoting *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1190 (9th Cir. 2017)).

Here, all of Plaintiffs' claims arise out of Defendant's creation and dissemination of the *Yesterday* trailer. The "gravamen or principal thrust" of the complaint is that Defendant included a scene in the trailer, which they ultimately did not include in the movie, and such acts constitute a misrepresentation. *See* Compl. at ¶¶ 10, 40, 102-115.

Defendant contends that their creation and dissemination of the trailer qualify as an "act in furtherance of the right to free speech," because: (1) the trailer furthers Universal's free speech rights regarding the movie, and (2) the trailer itself is a protected expressive work. The Court agrees with Universal on the first ground.

| | | : | |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

Defendant's creation and release of *Yesterday* is an exercise of free speech. *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143 (2011) ("The creation of a television show is an exercise of free speech."). Moreover, the trailer furthers this exercise of free speech by increasing public engagement with the movie–drumming up public interest in the movie. *Id.* ("Here, defendants' acts helped to advance or assist in the creation, casting, and broadcasting of an episode of a popular television show."). Accordingly, the trailer is an "act in furtherance of the right to free speech."[2]

### ii.     In Connection with a Public Issue

In evaluating this prong, courts apply a two-part inquiry. First, courts ask what public issue or issue of public interest the speech in question implicates. *See FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149–50 (2019). Courts look to the content of the speech in making this determination. *Id.* Second, Courts ask what functional relationship exists between the speech and the public conversation about some matter of public interest. *Id.*

In determining what constitutes a matter of public interest, a court must review the specific context in which the statements were made, "such as whether the subject of the speech or activity was a person or entity in the public eye or could affect large numbers of people beyond the direct participants; and whether the activity occur[red] in the context of an ongoing controversy, dispute or discussion, or affect[ed] a community in a manner similar to that of a governmental entity." *Id.* at 145–46 (internal quotation marks and citations omitted). "[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate." *Id.* at 150 (quoting *Wilbanks v. Wolk*, 121 Cal. App. 883, 898 (2004)). "'[C]ontribute to the public debate' means a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." *Id.* at 150–51 (citations omitted).

Here, Universal sets forth three reasons why the trailer is in connection with a public issue. First, Universal contends that the trailer is a statement concerning a person or entity in the public eye, "because it previews a story about what the world would be like if the Beatles—one of the most popular

---

[2] This result is not contradicted by the Court's determination that the trailer is commercial speech. The anti-SLAPP statue covers conduct that is *in furtherance* of the right to free speech. Moreover, Section 425.17(d)(2) exempts advertisements for movies from the commercial speech exception to the anti-SLAPP statute. Thus, the anti-SLAPP statute may apply to movie trailers, despite not receiving full First Amendment protection.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

bands in history—did not record their music but someone else did." Mot. at 10. Second, Universal argues that the trailer is in connection with a public issue, because there is widespread public interest in the process of making movies and trailers. Finally, Universal asserts that the trailer is in connection with a public issue, because the trailer features De Armas who is the subject of immense public interest. The Court agrees with Universal on all three bases.

The Beatles and De Armas are figures in the public eye and the trailer advances public discourse regarding their notoriety. The Beatles and their music are central to the plot of the movie and discussion of the movie and trailer would necessarily involve discussing The Beatles and their music. *See Symmonds v. Mahoney*, 31 Cal. App. 5th 1096, 1109 (2019) (holding that famous musician's decision to replace his drummer was an issue in connection with a public issue, because defendants had made a prima facie showing to establish that his music and concerts were of interest to the public).

In terms of De Armas, Plaintiffs contend that the trailer is a representation that De Armas will be in the movie, and De Armas derives her notoriety from her acting career. Thus, the trailer furthers public discourse of De Armas by representing what her next role is.

Finally, the creation and dissemination of *Yesterday* is a matter of public interest itself as demonstrated by user reviews, ratings, and the interview regarding the omission of De Armas from the movie. Compl. at ¶23. *Tamkin* ("[h]ere, the creation and broadcasting of CSI episode 913 is an issue of public interest because the public was demonstrably interested in the creation and broadcasting of that episode, as shown by the posting of the casting synopses on various Web sites and the ratings for the episode."). Accordingly, the Court finds that the trailer is in connection with an issue of public interest.

**C. Step 2: Failure to State a claim**

Having established that the trailer is an act in furtherance of the right of free speech in connection with an issue of public interest, the Court moves on to step two of the analysis: whether Plaintiffs have established a likelihood of success on their claims.

**i. Misrepresentation**

Despite the myriad claims that Plaintiffs assert, at the center of this case is the issue of whether Universal made some actionable misrepresentation of the movie by including a scene in the trailer that

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | | Date: | December 20, 2022 |
|---|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | | |

ultimately did not appear in the movie.[3]  Accordingly, Universal's primary argument is that there is no actionable misrepresentation.

Though distinct causes of action, the UCL, FAL, and CLRA are consistently analyzed together under the "reasonable consumer standard."  *See e.g. Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (analyzing claims under the UCL, FAL, and CLRA under the reasonable consumer standard).  Under the "reasonable consumer" standard, a plaintiff must show the alleged misrepresentation is "'likely to deceive' the consumer."  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *accord Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 343 (2010).  As elaborated by the California courts:

> "Likely to deceive" implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.  Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.

*Lavie*, 105 Cal. App. 4th at 508.  The "reasonable consumer" is the "ordinary consumer acting reasonably under the circumstances," unless the advertisement is targeted to a particular group or type of consumer.[4]  *Id.* at 498.

While "determining whether a practice is deceptive will usually be a question of fact," *Williams*,

---

[3] *See Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1186–88 (N.D. Cal. 2021) (dismissing UCL, FAL, CLRA, and unjust enrichment claims "because plaintiff alleges no facts showing an affirmative misrepresentation"); *Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1423 (1988) (an unjust enrichment claim fails if the defendant made no actionable misrepresentation); *Rice v. Sunbeam Prods., Inc.*, 2013 WL 146270, at *12 (C.D. Cal. Jan. 7, 2013) (dismissing an express warranty claim absent an "unequivocal statement" constituting a representation); *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 765 (D. Md. 2012) (dismissing an express warranty claim because "the statement alone [did] not represent" what the plaintiffs said it did); *Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*, 2016 WL 6583892, at *16 (Md. Ct. Spec. App. Nov. 4, 2016) (under the MCPA "statements are not actionable as a matter of law … where the claim depends on an objectively unreasonable interpretation of the statement"); Md. Code, Com. Law § 2-314(2)(f) (requiring "promises" or "affirmations" for an implied warranty claim); Cal. Com. Code § 2314(2)(f) (same); Cal. Civ. Code § 1791.1(a)(4) (same).

[4] "Where the advertising or practice is targeted to a particular group or type of consumers, either more sophisticated or less sophisticated than the ordinary consumer, the question whether it is misleading to the public will be viewed from the vantage point of members of the targeted group, not others to whom it is not primarily directed." *Id.*

|  |  | : |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

552 F.3d at 938, a plaintiff must still present sufficient allegations to assert a plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (citation omitted); *Werbel ex rel. v. Pepsico*, Inc., No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) ("where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate.").

Thus, Plaintiffs' burden is to plausibly allege that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" that De Armas or the Segment would be in the movie. *Lavie*, 105 Cal. App. 4th at 508. On this record, Plaintiffs have satisfied this burden.

Universal's first argument is that the trailer made no actionable misrepresentation because it made no factual representation that De Armas or the Segment would be in the movie. Universal contends that because the trailer never explicitly stated that De Armas or the Segment would be in the movie and that De Armas and *Something* appeared for 10-15 seconds, the alleged misrepresentation is too vague and non-specific to definitely represent that viewers will see De Armas or the Segment in the movie. The Court disagrees.

To the extent that Universal contends that an affirmative misrepresentation requires an explicit misrepresentation, the Court finds this view too narrow. Even an implied assertion may be sufficient to deceive a reasonable consumer. *See Doe v. Roblox Corp.*, No. 3:21-CV-03943-WHO, 2022 WL 1459568, at *10 (N.D. Cal. May 9, 2022) ("Under California law, a cause of action based in fraud may arise from conduct that is designed to mislead, and not only from verbal or written statements") (quotations and citations omitted); *Thrifty–Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1567 ("A misrepresentation need not be oral; it may be implied by conduct."); *Williams*, 552 F.3d 934, 939 (9th Cir. 2008) ("the packaging pictures a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product.").

Universal relies on a variety of cases to contend that the alleged misrepresentation is too vague or generalized to be actionable. Those cases are distinguishable. In each of the cases, the alleged misrepresentations were exaggerations or "puffery" that would be too difficult to quantify. *See Glen Holly Ent., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003) (holding that statements "generally

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

describing the 'high priority' Tektronix placed on product development and alluding to marketing efforts […] do not state an actionable fraud or negligent misrepresentation claim."); *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 861 (N.D. Cal. 2015) (holding that claims that Uber is "GOING THE DISTANCE TO PUT PEOPLE FIRST" and "BACKGROUND CHECKS YOU CAN TRUST" were exaggerated, and general, subjective statements that were not actionable); *Singh v. Lenovo (United States) Inc.*, 510 F. Supp. 3d 310, 330 (D. Md. 2021) (holding that statements that a laptop would "transition seamlessly" from laptop to tent to stand to tablet were too vague and general to be actionable).

By contrast, the present, alleged misrepresentation is more concrete. Plaintiffs allege that Universal made a representation that De Armas and the Segment would be in the movie by featuring them in the trailer for the movie. In other words, Plaintiffs are alleging that Universal made a factual representation that a scene and actress that showed up in the advertisement of the movie would appear in the movie. While not express, the Court finds that under these circumstances this representation could be viewed as "a specific measurable claim, capable of being proved false or of being proved false or of being reasonably interpreted as a statement of objective fact." *Vitt v. Apple Computer, Inc.*, 469 Fed.Appx. 605, 607 (9th Cir.2012) (internal quotation marks omitted).

Second, Universal contends that it is implausible that consumer would be misled, because Plaintiffs' interpretation of the trailer is unreasonable. Universal contends that Plaintiff's interpretation is implausible because: 1) the trailer did not make explicit statements stating that De Armas would be in the movie; 2) De Armas only appeared for 15 seconds in the trailer and uttered no speaking lines; and 3) judicially noticed facts demonstrate some trailers include scenes that do not appear in the final movie. RJN Ex. 2, 3.[5] Additionally, Universal contends that Plaintiffs' allegations that they have never seen a movie trailer that featured an actor or actress that did not also appear in the film being advertised, and Plaintiffs' inclusion of internet posters claiming they expected the scene in the movie are insufficient to establish a probability that a significant portion of the general consuming public could be misled.

While this is a close question, Universal's arguments do not bring Plaintiffs' claims outside the

---

[5] The Court takes judicial notice of Exhibits 2 and 3. "[A] court may take judicial notice of publicly available newspaper and magazine articles and web pages that 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *Tarantino v. Gawker Media, LLC*, No. CV 14-603-JFW FFMX, 2014 WL 2434647, at *1 (C.D. Cal. Apr. 22, 2014) (citing *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir.2010)).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | | Date: | December 20, 2022 |
|---|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | | |

realm of plausibility. Here, Plaintiffs allege several facts to support their argument that a significant portion of reasonable consumers could be led to believe that De Armas and the Segment would be in the movie. As a starting point, Plaintiffs allege that "[m]ovie trailers are understood by movie viewers and consumers to convey what actors will appear in the advertised film." Compl. at ¶ 56. Additionally, Plaintiffs allege that De Armas is a "famous" actress who has starred in several other movies and has a substantial social media following. *Id.* at ¶¶ 32-38. While De Armas only appeared in the trailer for 15 seconds, it is plausible that a consumer could interpret De Armas' appearance as more than de minimas. In the scene that De Armas appears in, she is sung to by the main character, is the only person in view for several seconds, and embraces the main character. *Id.* at ¶¶ 40, 82.

The trailer further shows that the main love interest in the movie sees this embrace and becomes/is visibly upset by it. *Id.* at ¶ 40. As Universal recognizes in its supplemental brief, the scene "conveys a key part of the overall story arc in the trailer: [the protagonist's] meteoric rise to fame and how it undoes the life he knew." Defendant's Supplemental Brief ("Def. Supp.") at 12. These facts suggest that De Armas could be viewed as more than a fleeting background extra, and as a character that viewers would expect to see in the movie. Finally, although weak evidence,[6] Plaintiffs' inclusion of additional comments by consumers stating that they expected to see the Segment and De Armas in the movie assists the plausibility of Plaintiffs' claims.[7] *Id.* at ¶¶ 7,10, 79.

In sum, given the allegations that viewers of movie trailers expect to see the featured actors in

---

[6] Universal contends that the consumer comments devoid of detail to assist Plaintiffs in establishing that a significant portion of consumers would be misled. The Court agrees that this evidence is weak and straddles the line between reasonable inference and improper speculation. The consumer comments seem to be a conversation thread, but the complaint does not include how the conversation was prompted, which website this conversation appeared from, and how many different individuals were involved in the conversation. Nonetheless, the Court need not rely on this evidence, since Plaintiffs' other allegations are sufficient to establish the plausibility of their claim.

[7] Plaintiffs include an additional allegation that Universal explicitly misrepresented that De Armas was in the trailer, because the streaming service VUDU listed De Armas as a cast member. The Court does not consider this allegation in its analysis. To the extent that Plaintiffs argue that the listing is an explicit misrepresentation, Plaintiffs do not have standing to challenge the listing, since they did not watch the movie on Vudu, nor did they watch the movie on the basis of Vudu's listing. Moreover, to the extent that Plaintiffs use the listing as evidence to support their argument that reasonable consumers could be misled, the Court declines to draw that inference. Plaintiffs' contention that Vudu listed De Armas as a cast member because Vudu was deceived into believing De Armas was in the movie based on the trailer is too speculative. The Court is unaware of how Vudu determines cast members, and to infer that Vudu made this determination based off of watching the trailer would force the Court to engage in impermissible speculation.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

the movie, that De Armas was a relatively "famous" actress, the way De Armas was portrayed in the trailer, and that Plaintiffs and others expected to see De Armas and the Segment in the movie, the Court cannot say as a matter of law that Plaintiff's misrepresentation claims are implausible.

Finally, Universal contends that Plaintiffs' theory lacks a principled limit. Universal posits a host of "what if" scenarios contending that if the Court were to permit Plaintiffs' theory that they were misled as to the presence of De Armas and the Segment in the movie, Plaintiffs could assert that they were led to believe that De Armas would appear for a certain amount of time, occupy a specific role, or receive a speaking role. In Universal's words, permitting Plaintiffs to move forward with this theory "would open the floodgates to claims like these, where answers depend purely on subjective judgements." Mot. at 15. But the Court is not convinced by this argument either.

The limiting principle that Defendant seeks is the reasonable consumer test which "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Kasky*, 27 Cal. 4th at 951. The Court's holding is limited to representations as to whether an actress or scene is in the movie, and nothing else. While the Court understands Universal's policy concerns, this Court cannot alter California substantive law or the federal pleading standard to accommodate for those concerns. Accordingly, the Court cannot dismiss all of Plaintiffs' claims on this basis.

## ii.     Monetary Restitution

Universal next challenges Plaintiffs' ability to receive monetary restitution under the UCL, FAL, and Unjust Enrichment. The UCL and FAL are equitable in nature. *See Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*, 462 P.3d 461, 488 (Cal. 2020) ("civil causes of action authorized by the UCL and FAL must properly be considered equitable, rather than legal, in nature."). Thus, to be entitled to monetary restitution, Plaintiffs' claims must adhere to the principles of equity. Here, Universal contends that monetary restitution is not warranted because: 1) Plaintiffs have failed to plead that they lack an adequate remedy at law, and 2) Plaintiffs have received the benefit of what they paid for. The Court will address each in turn.

### 1.     *Sonner* – Adequate Remedy at Law

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | | Date: | December 20, 2022 |
|---|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | | |

In *Sonner v. Premier Nutrition Corp.*, a consumer brought a putative class action against a company that marketed and sold a liquid dietary supplement.  971 F.3d 834 (9th Cir. 2020).  Similar to the present action, the plaintiff in *Sonner* brought claims under the UCL and CLRA, contending that the defendant made statements about the dietary supplement that constituted false advertising.  *Id.* at 838. Two months before trial was set to begin, the plaintiff amended her complaint dropping her CLRA claim and moving forward only with her UCL claim.  *Id.*  Apparently, the plaintiff performed this maneuver to convert the set jury trial to a bench trial.  *Id.*  This plan backfired, as the district dismissed the UCL claim, since the plaintiff failed to establish that she lacked an adequate remedy at law.  *Id.*

The Ninth Circuit affirmed the dismissal, holding that the plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA."  *Id.* at 844.  First, the court noted that the operative complaint did not allege that the plaintiff lacked an adequate remedy at law.  *Id.*  Second, and more importantly, the plaintiff conceded that she was seeking the same sum in equitable restitution as she sought in damages.  *Id.*  And because, the plaintiff "fail[ed] to explain how the same amount of money for the exact same harm is inadequate or incomplete, and nothing the records supports that conclusion" dismissal was appropriate.  *Id.*

In the wake of *Sonner*, questions have arisen as to its applicability in the pleading stage.  Some courts have distinguished *Sonner* on its procedural posture, holding that "*Sonner* has limited applicability to the pleading stage because it pertained to circumstances in which a plaintiff dropped all damages claims on the eve of trial."  *Jeong v. Nexo Fin. LLC*, No. 21-CV-02392-BLF, 2022 WL 174236, at \*27 (N.D. Cal. Jan. 19, 2022).  Others court have applied *Sonner* at the pleading stage noting that in affirming the district court's ruling, "the Ninth Circuit pointed out that the operative complaint did not allege that the plaintiff lacked an adequate legal remedy [...] suggest[ing] that a plaintiff must plead inadequate legal remedies in the operative pleading to allege claims for equitable relief under the UCL and CLRA."  *Shay v. Apple Inc.*, No. 20CV1629-GPC(BLM), 2021 WL 1733385, at \*4 (S.D. Cal. May 3, 2021).

To the extent that there is an intra-circuit split on this issue, this Court has previously held that *Sonner* applies at the pleading stage.  *See e.g. Sprewell v. Fed. Express Corp.*, No. 220CV11612SVWAGR, 2021 WL 6103057, at \*5 (C.D. Cal. Sept. 30, 2021).  And indeed, the applicability of *Sonner* to the pleading stage makes logical sense.  While the pleading standard only requires a plaintiff to plead a "plausible" claim of relief, when a plaintiff pleads a plausible claim

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

seeking damages (a legal remedy) alongside a claim seeking equitable restitution, the plaintiff has essentially defeated their claim for equitable restitution. *See Hubmer v. Walmart, Inc.*, No. EDCV201369JGBKKX, 2021 WL 1537206, at *5 (C.D. Cal. Feb. 16, 2021) ("Because Plaintiffs explicitly seek an adequate remedy at law – damages – in their first cause of action, the Court finds that they do not qualify for restitution under Sonner."); *Sprewell*, No. 220CV11612SVWAGR, 2021 WL 6103057, at *5 ("Here, Plaintiff has not even attempted to allege that his remedies at law would be inadequate, and indeed, Plaintiff cannot do so because he seeks the exact same legal damages remedy on the § 2802 claim that he seeks on the UCL claim: compensation for the purchase of his unreimbursed expenses."). After all, how can one plead a plausible claim seeking equitable restitution, when they have pleaded a plausible claim seeking damages at the same time?

But, as will be discussed below, Plaintiffs have failed to plead a plausible claim for legal damages and the Court dismisses these claims without leave to amend. Recognizing the weaknesses in their claims for legal damages, Plaintiffs allege that "[t]here is no adequate remedy at law for any unlawful, unfair, or fraudulent advertising, for any Yesterday movie sale, movie display, rental, or viewership right sold which the Court determines is not a good or service for which remedies are available under California Consumers Legal Remedies Act." Compl. at ¶¶ 127, 143, 150. Thus, Plaintiffs have sufficiently alleged that they lack an adequate remedy at law.

Universal relies on several cases to contend that dismissal is nonetheless warranted, because Plaintiffs' "inability to obtain damages here results from those claims' failure on the merits, not from an inherent limitation of the legal remedy that renders it inadequate." Mot. at 19-20 (cleaned up and citations omitted). But these cases are distinguishable. In *Hanscom*, the Court rejected the argument that a plaintiff would lack an adequate remedy at law if she was *unable to prove* certain elements of claims seeking legal damages. Similarly, in *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *7 (N.D. Cal. May 31, 2011), the court rejected the argument that a plaintiff would have no adequate remedy at law if their other claims fail, noting that "[w]here the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable." *Id.* These cases[8] stand for

---

[8] Universal additionally cites *Durkee v. Ford Motor Co.*, 2014 WL 4352184, at *3, *9 (N.D. Cal. Sept. 2, 2014), where the Court dismissed a UCL claim because the plaintiffs had an adequate remedy at law for the alleged Song-Beverly Act Violation, even though the court went on to dismiss the Song-Beverly Act claim on the merits. This case is also distinguishable, because there the court dismissed plaintiffs' claims for failing to provide sufficient facts to assert a plausible claim and granted plaintiffs leave to amend. *Id.* at *5. In other words, the plaintiffs could have asserted a plausible claim

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

the proposition that the fact that a plaintiff may ultimately fail in *proving* their claims for legal damages does not mean that a plaintiff would lack an adequate remedy at law. Thus, where a plaintiff may assert a plausible claim for legal damages, they do not lack an adequate remedy at law.

By contrast, the Court holds that Plaintiffs *cannot* assert a claim under the CLRA or breach of warranties as a matter of law, because such conduct is not covered by either statute. Thus, Plaintiffs have sufficiently pled that they lack an adequate remedy at law. *See Stemmelin v. Matterport, Inc.*, No. C 20-04168 WHA, 2022 WL 3226973, at *3 (N.D. Cal. Aug. 10, 2022) ("if the SAMP Act does not cover some of the alleged misconduct, then it leaves Stemmelin without a remedy as to such misrepresentations."). Accordingly, the Court cannot dismiss Plaintiffs' restitution claims on this basis.

### 2. Economic Damages - Full Value

Turning to Universal's second argument, the Court finds that it cannot determine as a matter of law that Plaintiffs had received the full benefit of what they paid for. The goal of restitution is to "[restore] money wrongfully taken as a result of the defendant's unlawful, unfair or fraudulent practices." *Korea Supply Co.*, 29 Cal. 4th at 1147-48. Thus, to prevail on a claim for restitution a plaintiff must show: "(1) the defendant obtained something to which it was not entitled and (2) the plaintiff gave up something which he or she was entitled to keep." *See Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 340 (1998). Thus, where a plaintiff has paid full value for what they obtained, even if fraudulently induced, there is no need to make them "whole." *See Alaei v. Gov't Emps.Ins.*, 2021 WL 1165067, at *8 (S.D. Cal. Mar. 25, 2021).

From these principles, Universal argues that Plaintiffs have suffered no damages. According to Universal, the price of the stream, $3.99, would not have changed regardless of whether De Armas or the Segment were in the movie or not. Thus, because Plaintiff "got what they paid for," a stream of the movie Yesterday, they are not entitled monetary restitution.

Yet, Plaintiffs allege that they "were not provided with the movie product that they were promised by Defendant, [and] they were effectively provided with no value at all." Compl. at ¶ 113. And in the alternative, that "at best, Plaintiffs and the class members were provided with a movie product having less value than the product they were advertised and promised." *Id.* Such allegations are

---

seeking legal damages.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

sufficient to establish damages at the pleading stage. *Inga v. Bellacor.com, Inc.*, No. 219CV10406MWFMRW, 2020 WL 5769080, at *4 (C.D. Cal. July 17, 2020) ("to survive the pleading stage as to his prayer for restitution, Plaintiff need only allege adequate facts to support that he made a purchase 'on the basis of false price information' and 'that he would not have made the purchase but for the misrepresentation.'") (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106-07 (9th Cir. 2013)); *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965–66 (9th Cir. 2018) ("a consumer's allegation that 'she would not have bought the product but for the misrepresentation ... is sufficient to allege causation ... [and ] to allege economic injury.'") (citing *Kwikset Corp. v. Superior Court*, 120 Cal.Rptr.3d 741, 246 P.3d 877, 890 (2011)).

The cases that Universal relies on for this principle are both distinguishable and instructive on this point. In both cases that Universal relies on, the Courts were able to determine, as a matter of law, that the plaintiffs had received the full value of what they paid for by utilizing the filed-rate doctrine.[9] In *Day*, plaintiffs had brought an action against providers of telephone services and prepaid phone card retailers alleging that AT&T was engaged in misleading and deceptive advertising. 63 Cal. App. 4th at 328. Specifically, plaintiffs alleged that AT&T failed to disclose that telephone call made with prepaid cards would be charged by rounding up to the next full minute. *Id.* In rejecting plaintiff's restitution claims, the court wrote:

The offending party must have obtained something to which it was not entitled and the victim must have given up something which he or she was entitled to keep. *Because the filed rates charged by respondents are presumptively correct, a consumer who uses a prepaid phone card obtains the full value of what was paid for and therefore has given up nothing, regardless of whether he or she was improperly induced to purchase the card in the first place.* Any attempt to calculate a monetary amount to be paid on behalf of those who purchased the cards would necessarily result in a refund or rebate of properly collected fees for services. *This would enmesh*

---

[9] "The filed-rate doctrine provides that rates duly adopted by a regulatory agency are not subject to collateral attack in court." *MacKay v. Superior Court*, 188 Cal. App. 4th 1427, 1449 (2010); *see Day*, 63 Cal. App. 4th at 335 ("[Under the] filed rate doctrine […] common carriers who file their rates with the FCC, as they are required to do by law, are insulated from lawsuits challenging those rates and from court orders having the effect of imposing a rate other than that filed with the FCC."). "Though the filed-rate doctrine originated in federal courts, it has been held to apply equally to rates filed with state agencies by every court to have considered the question." *Alaei v. Gov't Emps. Ins. Co.*, No. 3:20-CV-00262-L-WVG, 2021 WL 1165067, at *7 (S.D. Cal. Mar. 25, 2021) (citations and quotations omitted).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

*the court in the rate-setting process and directly contravene the filed rate doctrine.* Appellants are not entitled to seek restoration of any money under section 17203.

*Id.* at 343 (emphasis added).

Likewise, in *Alaei v. Gov't Emps. Ins. Co.*, plaintiffs brought a putative class action alleging the defendants' conduct in the sale of insurance violated various California laws. No. 3:20-CV-00262-L-WVG, 2021 WL 1165067, at *1 (S.D. Cal. Mar. 25, 2021). After determining that the plaintiff was not entitled to a full refund, because he received some value from the defendant, the Court went on to discuss why the plaintiff was not entitled to a partial refund:

Plaintiff claims that he and the Class are entitled to an amount equal to the difference between what they actually paid and what they would have paid if they had known that the "Full Comprehensive Package" did not include collision coverage. Stated differently, Plaintiff claims that he and other putative class members were duped into paying more than the policy was worth, given the absence of collision coverage, due to the misrepresentation by the GEICO phone agent. *To the extent Plaintiff is seeking restitution on the basis that he overpaid for his policy, there is a presumption that the rate is not excessive because the policy was set by the Department of Insurance based on the services covered.* […]

In addition, in order to award restitution to Plaintiff, the Court must ask whether Defendants have obtained something which they are not entitled to keep. *Day v. AT&T Corp.*, 63 Cal.App. 4th 325, 340 (1998)("[t]he offending party must have obtained something to which it was not entitled and the victim must have given up something which he or she was entitled to keep.") However, *a consumer who purchases a comprehensive policy that does not include collision coverage, "obtains the full value of what was paid for and therefore has given up nothing, regardless of whether he or she was improperly induced to purchase the [policy] in the first place."*

*Id.* at * 7-8 (emphasis added). In sum, these cases are distinguishable because the courts in those cases were able to determine, as a matter of law, the full value of what the plaintiffs had paid for through the "filed-rate" doctrine. As far as the Court is aware, there is no such equivalent in the present case.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

Accordingly, the Court cannot rule as a matter of law that Plaintiffs received the full value of what they paid for and did not suffer an economic injury.

### iii.   UCL

Next, Universal challenges Plaintiff's UCL claim. The UCL prohibits "unfair competition," which is broadly defined to include "three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs. *See Lozano v. AT & T Wireless Servs.*, Inc., 504 F.3d 718, 731 (9th Cir.2007). Here, Plaintiffs allege that Universal violated all three prongs, but the Court will only consider Universal's challenge as to the unlawful prong.[10]

Under the UCL's "unlawful" prong, an advertisement must violate another "borrowed law" to be actionable. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). Thus, a plaintiff must establish a predicate legal violation to establish liability under the unlawful prong. Plaintiffs assert predicate legal violations under: 1) the UCL; 2) FAL; 3) the CLRA; 4) the Lanham Act; and 5) California Civil code sections 1572, 1573, 1709, and 1711. Defendant contends that Plaintiffs fail to state a claim under the unlawful prong, because they cannot establish a violation under each of the "borrowed" statutes. The Court will address these in turn.

*UCL, FAL, and CLRA:*

Universal's only challenge to these claims is that there is no misrepresentation, and that Plaintiffs cannot recover monetary restitution. The Court has already rejected those arguments. Accordingly, Plaintiffs may establish a predicate violation on other prongs of the UCL and the FAL.

In terms of Plaintiffs' CLRA claim, the Court holds below that they cannot maintain this action. Accordingly, Plaintiffs may not use the CLRA as a predicate violation for their UCL claim.

---

[10] The Court will only address the analysis of the unlawful prong. Defendant's arguments as to the fraud prong are the same as their arguments as to misrepresentation. Moreover, Defendant's argument as to the unfair prong relies on the Court finding that there is no violation under the unlawful prong and fraud prong.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | | Date: | December 20, 2022 |
|---|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | | |

*Lanham Act:*

Defendant next argues that Plaintiffs have failed to establish a Lanham Act violation because: 1) Plaintiffs have not explained how Universal violated it, and 2) Plaintiffs lack standing to bring a violation of the Lanham Act.[11]

The Court agrees with Universal that Plaintiffs have failed to establish a Lanham Act violation, but for slightly different reasons. Plaintiffs' complaint states the Universal violated the Lanham Act under a theory of false advertising. Compl. at ¶ 130. Thus, Plaintiffs must provide sufficient allegations to assert a false advertising claim under the Lanham Act. Plaintiffs have failed to do so.

To state a false advertising claim under the Lanham Act, a plaintiff must establish: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)

While Plaintiffs' allegations as to their UCL and FAL claims may be sufficient to satisfy the first four elements of a Lanham Act false advertising claim, Plaintiffs have failed to plead sufficient fact satisfying the fifth element. Plaintiffs have made no allegation that they or any other entity have been injured "either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Id.*; *See Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169, at *16 (N.D. Cal. Oct. 5, 2010) (holding that plaintiffs had not made a plausible showing that the defendant's acts are unlawful under the false advertising prong of the Lanham Act, where they failed to plead sufficient facts to establish a likelihood of injury by direct diversion of sales or a lessening of goodwill.); *Vinson v. J.M. Smucker Co.*, No. CV 12-4936-GHK VBKX, 2013 WL 6987087, at *4 (C.D. Cal. Mar. 25, 2013) (holding that plaintiffs could not predicate their UCL unlawful claim on a violation of the Lanham Act because they "cannot plausibly allege any diversion of their sales or the lessening of

---

[11] Universal also argues that the Lanham Act cannot serve as predicate violation, because there is no misrepresentation. But the Court has already rejected this argument.

| | | : | |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

any goodwill."). Accordingly, Plaintiffs have failed to allege sufficient facts to plausibly maintain a Lanham Act false advertising claim, and may not predicate a violation of the UCL unlawful prong on the Lanham Act.[12]

*California Civil Code Sections:*

Section 1572 requires a contractual or precontractual relationship between Plaintiffs and Universal. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997) ("Clearly, the fraud allegations in LiMandri's complaint do not fall within the purview of section 1572, as they establish no contractual or precontractual relationship between LiMandri and Judkins"). Plaintiffs have failed to allege any contractual or precontractual relationship between them and Defendant. Thus, they cannot establish liability under Section 1572. Accordingly, Section 1572 cannot serve as a predicate violation for Plaintiffs' UCL claim.

Section 1573 requires a plaintiff to plead a "fiduciary or confidential relationship." *Gilles v. Wineteer*, No. 3:19-CV-1492-GPC-BGS, 2019 WL 6037422, at *5 (S.D. Cal. Nov. 14, 2019). "[A] confidential relationship exists for the purposes of constructive fraud where one person 'has gained the confidence of the other and purports to act or advise with the other's interest in mind.'" *Petrosyan v. AMCO Ins. Co.*, No. CV1206876SJOCWX, 2012 WL 12884920, at *6 (C.D. Cal. Oct. 9, 2012) (citing *Davies v. Krasna*, 14 Cal. 3d 502, 510 (1975)). Plaintiffs have failed to make any allegation that Plaintiffs and Defendants are in a fiduciary or confidential relationship. Plaintiffs' argument that the Video Privacy Protection Act ("VPPA") establishes a confidential relationship misses the mark completely. A statutory requirement to protect personally identifiable information is not the same as gaining the confidence of another. Moreover, even if the VPPA did apply, the confidential relationship would be between Amazon and Plaintiffs, *not* Universal and Plaintiffs. Accordingly, Section 1573 cannot serve as a predicate violation for Plaintiffs' UCL claim.

Finally, as to Section 1711, Universal is correct that the section does not independently proscribe any conduct. *See Valencia v. Merck & Co.*, 2009 WL 3365848, at *8 (E.D. Cal. Oct. 16, 2009) (Section

---

[12] The Court's determination that Plaintiffs have failed to plausibly allege a violation of the Lanham Act should not be construed as a holding that Plaintiffs' status as consumers precludes them from using the Lanham Act as a predicate violation for the UCL.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

1711 "concerns only the intent to defraud, and simply points out that one who makes false representations with fraudulent intent need not have any particular victim in mind.") (cleaned up). But Universal has not addressed Section 1709, which can be the basis for liability. *Shay v. Apple Inc.*, 512 F. Supp. 3d 1066, 1071 (S.D. Cal. 2021) ("On a motion to dismiss, it is the defendant's burden to demonstrate that plaintiff has failed to state a claim."). Accordingly, Plaintiffs may use section 1709 as a predicate violation for their UCL claim.

In sum, Plaintiffs may establish a claim under the UCL's unlawful claim based on violations of: 1) other prongs of the UCL, 2) the FAL, and 3) Section 1709.

### iv.    CLRA

The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ.Code § 1770(a). "Goods" are defined as "tangible chattels bought or leased for use primarily for personal, family, or household purposes." Cal. Civ. Code § 1761(a) (emphasis added). "Services" are defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b).

Here, Universal contends that Plaintiffs cannot establish a violation of the CLRA, because Plaintiffs' purchase of a limited-time license to stream a digital copy of *Yesterday* is neither a good nor service under the CLRA. The Court agrees.

First, Plaintiffs' time-limited license to access the stream of *Yesterday* is not a tangible good under CLRA. Courts have held that software and licenses to access software are intangible goods outside of the reach of the CLRA. *See Ferrington v. McAfee, Inc.*, 2010 WL 3910169, at *19 (N.D. Cal. Oct. 5, 2010) ("The CLRA's express limitation of goods to 'tangible chattels' must be given meaning, and current California law suggests that these words exclude software from the Act's coverage."); *Lazebnik v. Apple*, No. 5:13-CV-04145-EJD, 2014 WL 4275008, at *5 (N.D. Cal. Aug. 29, 2014) (holding that a "Season Pass" to access episodes of Season 5 of Breaking Bad on the iTunes platform was "'not a 'good' within the meaning of the CLRA because […] it is either software or a license, not a 'tangible chattel.'"); *In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *13 (N.D. Cal. July 23,

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

2013) (collecting cases).  Likewise, the limited-time license to access (stream) a digital copy of *Yesterday* is not a tangible good covered by the CLRA.

In response, Plaintiffs contend that the movie is a tangible good and that Universal has admitted this by asserting copyright ownership over the movie.  Specifically, Plaintiffs argue that because a copyright requires fixation into a tangible medium of expression, the movie is a tangible good.  But the fact that *Yesterday* was fixed into a tangible medium at some point, does not change the fact that what Plaintiffs purchased was an intangible good.

Second, although the limited-time license could be interpreted as a provision of video streaming services, the video streaming services provided by Amazon are irrelevant to Plaintiffs' claim.  Plaintiffs' CLRA claim relates to the underlying content of the movie, *not* Amazon's provision of video streaming services or display of the trailer or movie.  Accordingly, Defendant's motion is GRANTED.  Moreover, dismissal is granted with prejudice, because amendment by Plaintiffs would be futile.

### v. Warranty Claims

Universal next challenges Plaintiffs' breach of warranty claims on multiple grounds.  Specifically, Universal contends that the warranty claims fail because: 1) Plaintiffs did not acquire title to a movable item, 2) Plaintiffs did not provide pre-suit notice, 3) Plaintiffs and Universal are not in privity, and 4) in the case of the implied warranty for a particular purpose, Plaintiffs lack a particular purpose that Universal knew.

Plaintiffs' warranty claims fail, because Plaintiffs have failed to allege a transaction of consumer goods that would invoke either express or implied warranties.  Express and implied warranties are limited to "transactions of goods."  *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1333 (C.D. Cal. 2013) ("California Commercial Code § 2313, which defines express warranty, applies to "transactions in goods."); *Anthony*, No. 215CV09593SVWJPR, 2016 WL 6836950, at *4 ("The [implied] warranties asserted by the Plaintiffs apply to 'sale[s] of consumer goods.'").

"Goods" are "all things […] which are movable at the time of identification to the contract for sale."  Cal. Civ.Code § 1761(a).  "Courts commonly distinguish between the expressive content of movies and other intellectual property with the tangible media that conveys that content, finding that

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

only the tangible products are subject to product liability regulations." *Anthony*, No. 215CV09593SVWJPR, 2016 WL 6836950, at \*4; *See Winter v. G. P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991) (finding that products liability law does not govern the ideas and expression in a book).

This distinction is crucial because in most sales of movies, books, or music, two types of "property" are implicated: the intangible intellectual property such as the underlying story or music and the tangible media that embodies the intellectual property such as the DVD or CD. These "properties" exist independent of one another and, accordingly, the warranties that apply to each also exist independently from one another. A "warranty" that the DVD is without scratches that render the movie unplayable is different from a warranty that makes a representation about the underlying contents of the movie.

Here, Plaintiffs' claims do not relate to a tangible media that embodies the intellectual property, but the underlying intellectual property itself. Thus, for Plaintiffs to assert warranty claims for the contents of the movie, Plaintiffs must have alleged some transaction involving the underlying intellectual property.[13] *See Anthony*, No. 215CV09593SVWJPR, 2016 WL 6836950, at \*4 ("it is that content that must have been sold in order to be subject to the regulations of the Act."). Specifically, a transaction that transferred or leased the underlying rights of the movie. Plaintiffs cannot do so. As Universal notes, Plaintiffs only purchased the right to stream *Yesterday* for a limited time. This transaction in no way implicated the rights to the underlying movie itself. *See Id.* ("In the case of DVDs and streaming services, the title to the video content remains with the copyright owner."); 17 U.S.C. § 202 ("Transfer of ownership of any material object" in which a copyrighted work is embodied "does not of itself convey any rights in the copyrighted work embodied in the object....").

Thus, Plaintiffs have failed to allege a transaction of the underlying intellectual property that would give rise to a warranty. Moreover, dismissal is granted with prejudice, because amendment by

---

[13] The Court additionally notes that it is questionable whether the underlying intellectual property qualifies as "good" in the first place. *See Anthony*, No. 215CV09593SVWJPR, 2016 WL 6836950, at \*5 ("any claims involving the content of the movies and shows, including the claims in this case, do not involve a consumer good and consequently are not subject to the regulations of the Beverly–Song Act."). But the Court need not answer that question, because at a minimum, Plaintiffs cannot allege a transaction involving the underlying contents of the movie.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

Plaintiffs would be futile.  Plaintiffs do not and cannot assert that they entered into a transaction with regards to the rights of *Yesterday*.  Accordingly, the Court GRANTS Defendant's motion with prejudice.

       **vi.**       **Injunctive Relief**

Next, Universal challenges Plaintiffs' ability to bring request injunctive relief.  Specifically, Universal contends that Plaintiffs lack standing to seek injunctive relief, because that cannot establish an actual or imminent injury.  The Court agrees.

Article III of the U.S. Constitution authorizes the judiciary to adjudicate only "cases" and "controversies."  The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To have Article III standing, a plaintiff must demonstrate: (1) an injury-in-fact, (2) causation, and (3) redressability.  *Id.*  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'"  *Id.* (quotations and citations omitted).

"For injunctive relief, which is a prospective remedy, the threat of injury must be actual and imminent, not conjectural or hypothetical."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  "In other words, the threatened injury must be certainly impending to constitute injury in fact and allegations of possible future injury are not sufficient."  *Id.*  Where standing is premised entirely on the threat of repeated injury, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way."  *Id.*

Plaintiffs contend that they have standing to seek an injunction for "corrective advertising," because: 1) Plaintiffs anticipate buying or renting movies advertised with a movie trailer by Universal again; 2) Plaintiffs would be interested in viewing a version of *Yesterday* which includes De Armas; and 3) Plaintiff could be deceived again if another version of the movie (such as a director's cut) could be "switched" or released.[14]

---

[14] Plaintiffs also include an allegation that they would be at risk to be deceived again, through Universal's advertising on Vudu which includes Vudu's keyword linking of De Armas.  As mentioned earlier, the Court will not consider this allegation because Plaintiffs lack standing to challenge Vudu's listing.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

In response, Universal argues that Plaintiff cannot seek an injunction because Plaintiffs cannot show that they are likely to be harmed again. Universal contends that because Plaintiffs know that the scene is not in the movie they cannot be misled in the future. But the Ninth Circuit has already foreclosed this argument, holding that:

> A previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm.

*Id.* Thus, the fact that Plaintiffs currently know that the movie does not contain De Armas or the Segment does not categorically deprive them of standing to seek an injunction.

Regardless, Plaintiffs must still allege sufficient facts to show that they face an imminent or actual threat of future harm. *Id.* Plaintiffs have failed to do so. First, Plaintiffs' allegations that they would be "interested" in watching a version of *Yesterday* with De Armas is not concrete enough to establish an intention to watch the movie again. *See Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (holding that the plaintiff's "would 'consider buying'" allegations and a mere intent to purchase the defendant's products in the future were insufficient to sustain Article III standing); *Loomis*, 420 F. Supp. 3d at 1077 (finding that vague "would consider purchasing" allegations coupled with the speculative nature of the at-issue product ever achieving its claimed representations was insufficient to sustain Article III standing).

Second, Plaintiffs' anticipation of buying or renting *other* movies advertised by Universal is insufficient to confer standing to seek injunctive relief. Plaintiffs' complaint is limited only to alleged misrepresentations with respect to *Yesterday* and does not include any allegations that Universal has provided misrepresentations as to *other* movies. Put differently, Plaintiffs have not provided sufficient allegations connecting Universal's alleged misrepresentation with respect to *Yesterday* to its advertising of *other* movies.

Finally, Plaintiffs' contention that they could be harmed again if Universal releases another version of *Yesterday* invites the Court to engage in improper speculation. Although it is plausible that Universal could release a director's cut of *Yesterday*, Plaintiffs' theory of harm rests on speculation that

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

the director's cut would again omit the deleted scene featuring De Armas – which would defeat the purpose of a director's cut. Such a theory of harm is too "conjectural or hypothetical" to confer standing to Plaintiffs. Accordingly, Plaintiffs lack standing for injunctive relief.[15]

### vii.    First Amendment Defense

Universal's final argument relies on the First Amendment to contend that application of consumer protection laws to the trailer would result in a violation of the First Amendment. The Court ordered supplemental briefing on this argument, and now holds that the First Amendment is not applicable, because Plaintiffs have sufficiently alleged that the trailer is false, commercial speech.

"Commercial speech enjoys a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression." *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) (internal quotation marks and alterations omitted). "[W]hile commercial speech is generally subject to intermediate scrutiny, the Constitution affords no protection to false or misleading commercial speech." *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1271 (9th Cir. 2017); *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) ("[T]here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it....") (internal citations omitted).

Here, Plaintiffs have sufficiently alleged that the trailer contains a misrepresentation: that it is false. Thus, the central question is whether the trailer constitutes commercial speech.

"The core notion of commercial speech is that it does no more than propose a commercial transaction." *Hoffman*, 255 F.3d at 1184 (cleaned up). "Where the facts present a close question,

---

[15] Plaintiffs additionally argue that the Court should nonetheless find that they have standing to seek an injunction, because they are also seeking a "public injunction." But as Universal points out, the distinction between a private and public injunction does not alter the standing analysis. Regardless of whether the injunction is public or private, a plaintiff must still have standing to seek injunctive relief in general. *See Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1087 (9th Cir. 2020) ("to seek public injunctive relief in federal court, [a plaintiff] must also allege that she has Article III standing.").

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

'strong support' that the speech should be characterized as commercial speech is found where [1] the speech is an advertisement, [2] the speech refers to a particular product, and [3] the speaker has an economic motivation." *Hunt v. City of L.A.*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66-67(1983)). These factors are important guideposts, but they are not dispositive. *See Bolger*, 463 U.S. at 67 n.14 ("Nor do we mean to suggest that each of the characteristics present in this case must necessarily be present in order for speech to be commercial.").

Universal argues that the trailer is a creative expressive work, because it "bears all the hallmarks of noncommercial speech: it is an audiovisual work that uses images, music, and dialogue to express a story, including the themes and story arc that are contained in the full-length motion picture." Def. Supp. at 4. Universal further argues that permitting liability based on the inclusion of the scene would interfere with Universal's editorial choice in violation of *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 257–58 (1974). The Court is not convinced.

As an initial matter, the Court disagrees that an advertisement being "an audiovisual work that uses images, music, and dialogue to express a story" converts the advertisement into non-commercial work. If that were the case, almost any commercial for a product that chooses to entice consumers by telling a story would be considered a non-commercial work. Universal is correct that trailers involve some creativity and editorial discretion, but this creativity does not outweigh the commercial nature of trailer. At its core, a trailer is an advertisement designed to sell a movie by providing consumers with a preview of the movie.

The Court also finds *Tornillo* distinguishable from the present case. *Tornillo* involved the interference of editorial discretion with relation to non-commercial speech, newspapers. *Tornillo*, 418 U.S. at 243. By contrast, the present case involves editorial discretion with respect to commercial speech. Accordingly, the Court looks to the *Bolger* factors to determine whether the trailer is commercial speech.

Applying these factors, the Court finds that the trailer constitutes commercial speech. First, Plaintiffs plausibly plead that the trailer is an advertisement for the movie. Compl. at ¶ 81 ("Defendant's trailer for the movie Yesterday is used to advertise the movie to solicit purchases and rentals of the movie from online movie services such as Amazon Prime, Google Play, and VUDU."); *see also* Mot. at 3 ("Trailers generate interest in and excitement for a movie.").

|  |  | : |  |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

Second, the trailer refers to a specific product: the movie. *See Incarcerated Ent., LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1228 (M.D. Fla. 2017) ("the Amended Complaint alleges that the challenged communications refer to a specific product, the movie War Dog"); *Charles v. City of Los Angeles*, 697 F.3d 1146, 1151 (9th Cir. 2012) ("E! News sign is an advertisement, and it is undisputed that the sign refers to a particular cultural product").

Finally, Plaintiffs allege sufficient facts to show Universal had "an adequate economic motivation so that the economic benefit was the primary purpose for speaking." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1117 (9th Cir. 2021). Plaintiffs allege Universal "creates, distributes, and publishes its movie trailers, including the movie trailer for *Yesterday*, for the purpose of enticing consumers to pay for purchasing or viewing Defendant's films, including the film *Yesterday*." Compl. at ¶ 60.

In response, Universal contends that Plaintiffs "cannot plausibly allege that the primary reason the Segment was included in the *Yesterday* trailer was for economic, as opposed to artistic, reasons." Supp. Brief at 8. The Court disagrees. Universal's frame of reference is too narrow. The commercial speech in question is not the specific segment in question, but the trailer *as a whole*. Viewed in this light, it is a reasonable inference that the trailer as a whole was made for the primary purpose of selling tickets, copies, and rentals of the movie. *Charles*, 697 F.3d at 1151 ("Appellants have an economic motivation in encouraging the public to view the program."). Thus, the Court finds that Plaintiffs have plausibly pled that the trailer is commercial speech. *See Incarcerated Ent., LLC*, 261 F. Supp. 3d at 1228; *Charles*, 697 F.3d at 1151.

But the application of these factors does not end the Court's inquiry. "Commercial speech can lose its commercial character when it is 'inextricably intertwined' with fully protected speech." *Ariix, LLC*, 985 F.3d at 1119 (9th Cir. 2021). "[T]he 'inextricably intertwined' test operates as a narrow exception to the general principle that speech meeting the *Bolger* factors will be treated as commercial speech." *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 958 (9th Cir. 2012) (quotations added). "If '[n]o law of man or of nature makes it impossible' to present the noncommercial aspects of the speech without the commercial aspects, then the noncommercial speech is not inextricably intertwined with the commercial speech." *Ariix, LLC*, 985 F.3d at 1119 (quotations omitted).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | Date: | December 20, 2022 |
| --- | --- | --- | --- |
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | |

Here, Universal contends that even if the trailer is commercial speech, it is inextricably intertwined with protected First Amendment speech. Universal contends that the Segment is inextricably intertwined with the movie itself and the rest of the trailer, entitling it to full First Amendment protection. Defendant's Supp. Brief. 11. The Court disagrees.

At a minimum, there must be some non-commercial speech that is intertwined with the commercial speech to be eligible for the inextricably intertwined exception. As the Court's commercial speech analysis demonstrates, the relevant frame of reference is not individual segments of the trailer, but the trailer as a whole. Thus, the fact that the Segment (commercial speech) is inextricably intertwined with the rest of the trailer (commercial speech) does not result in the conclusion that commercial and non-commercial speech are inextricably intertwined. Moreover, the fact that the trailer uses scenes from the movie does not alter this conclusion. While the scenes from the movie would be non-commercial expressive speech when used as part of the movie, when these scenes are used in the context of the trailer, they become commercial speech. *See Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 637 fn.7 (1985) ("Appellant's advertising contains statements regarding the legal rights of persons injured by the Dalkon Shield that, in another context, would be fully protected speech. That this is so does not alter the status of the advertisements as commercial speech").

Universal relies on *Esch v. Universal Pictures Co.*, No. 6:09-CV-02258-JEO, 2010 WL 5600989, at *6 (N.D. Ala. Nov. 2, 2010) to contend that the non-commercial aspects of the movie are bound up with the commercial aspects of the trailer, but the Court finds *Esch* distinguishable. *Esch* involved a misappropriation of commercial likeness claim. *Id.* at 1. In the context of commercial misappropriation and right of publicity claims, courts have held that "*truthful* advertisements for expressive works are inherently noncommercial speech, because they are accorded the same First Amendment status as the underlying advertised work." *Charles*, 697 F.3d at 1153 (emphasis added). First, Plaintiffs have alleged the speech is false commercial speech, bringing it outside of this principle. Second, the Ninth Circuit has limited the applicability of this principle to certain state law torts. *Id.* ("the cases Appellants rely on concern only liability for particular state law torts, not regulations of general application, such as the Sign Ordinance here. We agree that in the circumscribed context of specific tort actions, such a rule may apply. We decline, however, to extend this limited exception.").

| | : | |
| --- | --- | --- |
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-00459-SVW-AGR | | Date: | December 20, 2022 |
|---|---|---|---|---|
| Title | *Conor Woulfe et al v. Universal City Studios LLC et al* | | | |

In sum, Universal has pointed to no non-commercial speech that could be intertwined with the trailer and, the inextricably intertwined exception to the commercial speech doctrine does not apply. Thus, because Plaintiffs have plausibly alleged that the trailer is false, commercial speech, Plaintiffs may proceed with their claims without offending the First Amendment.[16]

**V.    Conclusion**

For the above reasons, the Court:

- GRANTS Defendants Motion to Dismiss as to:
  - ○ Plaintiffs' CLRA Claim with prejudice
  - ○ Plaintiffs' Express Warranty Claim with prejudice
  - ○ Plaintiffs' Implied Warranty Claim with prejudice
  - ○ Injunctive Relief
- DENIES Defendant's Motion to Dismiss as to:
  - ○ Plaintiffs' FAL Claim
  - ○ Plaintiffs' UCL Claim
  - ○ Plaintiffs' Unjust Enrichment Claim

**IT IS SO ORDERED.**

---

[16] Universal also asks the Court to apply the test from *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), to determine whether the trailer is immune from liability under the First Amendment. Specifically, Universal points to Circuit precedent which have applied the *Rogers* framework to Lanham Act claims, unfair competition claims, and false advertising claims. And because Plaintiffs' claims are based on unfair competition claims – one of which is based on a violation of the Lanham Act – and false advertising claims, the Court should apply the *Rogers* framework. But the Court has already determined that Plaintiffs have failed to plausibly allege a violation of the Lanham Act. Accordingly, there is no need to employ the *Rogers* test, which is "a rule of construction to avoid conflict between the Constitution and the Lanham Act." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018). Additionally, the Court is skeptical that the *Rogers* framework would apply outside of the context of a trademark claim. Thus, to the extent that Universal contends that the Court should apply the *Rogers* test outside of claims involving the Lanham Act or the trademark context, the Court declines to do so.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |