Michael S. Elkin (*pro hac vice*)
melkin@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Thomas J. Kearney (SBN: 267087)
tkearney@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone:  (415) 591-1000
Facsimile:   (415) 591-1400

*Attorneys for Defendant*
*CLOUDFLARE, INC.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION—LOS ANGELES**

|  |  |
|---|---|
| DENIECE WAIDHOFER, an individual; MARGARET MCGEHEE, an individual; and RYUU LAVITZ, LLC, a Massachusetts limited liability company,<br><br>              Plaintiffs,<br><br>      vs.<br><br>CLOUDFLARE, INC., a Delaware corporation; BANGBROS.COM, INC., a Florida corporation; SONESTA TECHNOLOGIES, INC., a Florida corporation; MULTI MEDIA LLC, a California limited liability company; CRAKMEDIA INC., a Canadian corporation; and JOHN DOES 1-21,<br><br>              Defendants. | Case No. 2:20-cv-06979-FMO-AS<br><br>**DEFENDANT CLOUDFLARE'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF LAW IN SUPPORT**<br><br>Judge:   Hon. Fernando M. Olguin<br>Date:    December 17, 2020<br>Time:    10:00 a.m.<br>Place:   Courtroom 6D – 6th Floor<br>          350 W. 1st Street<br>          Los Angeles, CA 90012 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Defendant Cloudflare, Inc. ("Cloudflare") hereby moves to dismiss Plaintiffs' First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds set forth in the accompanying Memorandum of Points & Authorities, other pleadings and papers filed in this action, and upon such other oral and documentary evidence as may be presented at the hearing on this motion as the Court may permit. The motion will be heard on Thursday, December 17, 2020, at 10:00 a.m.,[1] or as soon thereafter as may be, before the Honorable Fernando M. Olguin, in Courtroom 6D, 6th Floor, of this Court located at 350 W. 1st Street, Los Angeles, CA 90012.

This Motion is made following conferences of counsel pursuant to L.R. 7-3, which took place on October 7 and November 12, 2020 pursuant to agreement of the parties.

Cloudflare seeks dismissal of the FAC in its entirety because it fails to state any claim upon which relief can be granted: Plaintiffs fail to adequately allege that Cloudflare acted with the volition required for direct copyright infringement, and fail to adequately allege that Cloudflare knowingly materially contributed to alleged direct infringement by third parties.


Dated: November 18, 2020                    WINSTON & STRAWN LLP

                                            By:  */s/ Jennifer A. Golinveaux*
                                                 Jennifer A. Golinveaux
                                                 Michael S. Elkin
                                                 Erin R. Ranahan
                                                 Thomas J. Kearney

                                                 *Attorneys for Defendant*
                                                 *CLOUDFLARE, INC.*

---

[1] Cloudflare and Defendants Multi Media LLC and Bangbros.com, Inc. are concurrently filing an *ex parte* application to adjust the hearing date and briefing schedule in light of the upcoming holidays.

# TABLE OF CONTENTS

**Page**

I.      **INTRODUCTION** ............................................................................ **1**

II.     **FACTUAL BACKGROUND** ......................................................... **4**

     A.    Cloudflare's Business and Services ........................................ 4

     B.    Plaintiffs and Their Allegations ............................................ 7

III.   **LEGAL STANDARD**................................................................. **9**

IV.   **PLAINTIFFS FAIL TO STATE COPYRIGHT INFRINGEMENT CLAIMS AGAINST CLOUDFLARE**....................................... **10**

     A.    Plaintiffs Fail to Adequately Allege that Cloudflare Directly Infringed Their Copyrights .................................................. 10

     B.    Plaintiffs Fail to Adequately Allege Contributory Infringement.......... 14

V.     **CONCLUSION** ........................................................................ **17**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ALS Scan, Inc. v. Steadfast Networks, LLC*,
  819 Fed. App'x 522 (9thCir. 2020) ..................................................... 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................. 9, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................... 9

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
  536 F.3d 121 (2d Cir. 2008) .............................................................. 11

*Cascades Streaming Techs., LLC v. Big Ten Network, LLC*,
  2016 WL 2344578 (N.D. Ill. May 4, 2016), *aff'd*, 748 F. App'x 338
  (Fed. Cir. 2019)...................................................................... 12

*Cobbler Nevada, LLC v. Gonzales*,
  901 F.3d 1142 (9th Cir. 2018) ................................................... 14, 15, 17

*Field v. Google Inc.*,
  412 F. Supp. 2d 1106 (D. Nev. 2006) ......................................... 11, 13

*Fox Broadcasting Co., Inc. v. Dish Network LLC*,
  747 F. 3d 1060 (9th Cir. 2014) ......................................................... 11

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ......................................................... 10

*Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005)................................................................... 14

*Musero v. Mosaic Media Grp., Inc.*,
  2010 WL 11595453 (C.D. Cal. Aug. 9, 2010) ..................................... 10

*Parker v. Google, Inc.*,
  422 F. Supp. 2d 492 (E.D. Pa. 2006).................................................... 11

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F. 3d 1146 (9th Cir. 2007) ......................................................... 14

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ..................................................... 10, 11, 13

*Raisley v. U.S.*,
   2016 WL 1117944 (D.N.J. Mar. 22, 2016) ........................................ 6

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995) ....................................... 11

*In re Rigel Pharm., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ..................................................... 9

*Softcard Sys., Inc. v. Target Corp.*,
   2005 WL 6225163 (N.D. Ga. Jan. 11, 2005) ............................ 12, 13

*Swarmify, Inc. v. Cloudflare, Inc.*,
   2018 WL 4680177 (N.D. Cal. Sept. 28, 2018) ............................ 4, 5, 18

*Tarantino v. Gawker Media, LLC*,
   2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) ............................ 14, 17

*Teknowledge Corp. v. Akamai Techs., Inc.*,
   2004 WL 2042864 (N.D. Cal. Sept. 11, 2004) ........................... 6

*U.S. v. Goodyear*,
   795 F. App'x 555 (10th Cir. 2019) .......................................... 6

**Statutes**

17 U.S.C. § 512(h) ....................................................................... 7

**Other Authorities**

Fed. R. Civ. P. 11 ....................................................................... 16

Fed. R. Civ. P. 11(b)(2) ............................................................. 16

Fed. R. Civ. P. 12(b)(6) ............................................................. 9

Fed. R. Civ. P. 15(d) .............................................................. 2, 3

iv

## I.   INTRODUCTION

Defendant Cloudflare provides infrastructure support and security services that protect millions of websites around the world. Through its security services and worldwide pass-through content delivery network ("CDN") services, Cloudflare supports more than 25 million web properties in virtually every industry, from technology, to banking and finance, to retail, to healthcare, to media and entertainment, to first responders. In keeping with its goal of making the Internet better for everyone by increasing security and efficiency and enhancing reliability for all, Cloudflare offers its core DDoS attack mitigation and global CDN caching services at no charge, while also offering services at different tiers for paying customers.[2] Cloudflare's customers include IBM; Sony Music Group; L'Oréal; Politico; LabCorp; the Library of Congress; state, county, and municipal governments; and nearly one in six of the Fortune 1,000. As one current example, Cloudflare's Athenian Project offers free, Enterprise-level security and performance services to state and local election websites, to ensure their constituents have secure, reliable access to election information and voter registration. Cloudflare's mission to help build a better, safer Internet has garnered it widespread recognition and a host of awards. Ironically, given Plaintiffs' narrow and disparaging mischaracterization of Cloudflare's services, both Plaintiff Ryuu Lavitz LLC and Patreon.com (one of the two so-called "Licensed Sites" that each of the Plaintiffs rely on for their businesses) *themselves* use Cloudflare's security services in exactly the same way that Plaintiffs alleges the Thothub.tv website ("Thothub") did.[3]

Plaintiff Deniece Waidhofer ("Waidhofer"), an online model, filed this suit on August 3, 2020, after her self-published adult images were allegedly leaked by her own

---

[2] *See* Cloudflare Plans, at https://www.cloudflare.com/plans/.
[3] The publicly available Whois database shows that both Ryuu Lavitz and Patreon use Cloudflare "name servers" for their websites—just as Thothub allegedly did. *Compare* https://www.whois.com/whois/lavitznation.com                    *and* https://www.whois.com/whois/patreon.com) (both last visited Nov. 10, 2020) *with*, *e.g.*, FAC ¶¶ 79-80 (describing "Lavitz Nation" website), 201, 202, 211, 233 (describing use of Cloudflare's name servers). Because Plaintiffs rely on the publicly available whois.com website in the FAC, *id.*, the Court may take judicial notice of it.

subscribers and fans and posted on the Thothub.tv website by persons unknown. ECF 1 ("Complaint" or "Compl."). Waidhofer's initial Complaint attempted to spin these vague allegations of copyright infringement by unidentified third parties into multiple federal racketeering claims based on a fanciful "conspiracy" between Cloudflare; the Thothub.tv website domain; two separate and apparently unrelated media companies, Bangbros, Inc. and Multi Media LLC; and twenty-one Doe defendants, who Waidhofer identified only by online pseudonyms. Compl. ¶ 17. She also brought direct and secondary copyright infringement claims, as well as a hodgepodge of state law unfair competition and negligence claims, against various constellations of named and unnamed defendants. Waidhofer's Complaint was riddled with unfounded speculation, much of it false. Notably, although she initially speculated that Thothub.tv was a legal entity capable of being sued, Compl. ¶ 16, she subsequently conceded that, as far as she could tell, it was "simply a web domain," ECF 67 at 2. (Thothub has been dropped from the First Amended Complaint.)

When Cloudflare and the other named defendants moved to dismiss Waidhofer's Complaint in its entirety, she did not defend her claims: instead, after letting the response deadline pass without comment, she filed a First Amended Complaint ("FAC"), dropping all of her far-fetched RICO claims and her state law negligence claim against Cloudflare, and dropping the thothub.tv web domain as a named defendant. ECF 68. The FAC also added two new Plaintiffs (neither of whom would have had standing under the Copyright Act at the time the original Complaint was filed), and two new Defendants (neither of which has any connection whatsoever to Cloudflare).[4]

---

[4] Plaintiffs' so-called "amended" complaint is properly a supplemental Complaint, as it attempts to shoe horn in allegations regarding new facts and occurrences that happened after the date of the initial pleading, which technically may only be filed after seeking leave from the Court, which Plaintiffs failed to seek "[o]n motion and reasonable notice[.]" Fed. R. Civ. P. 15(d) (a supplemental pleading is one that that "set[s] out any transaction, occurrence, or event that happened after the date of the [initial] pleading[.]"). Based on Cloudflare's initial investigation, it appears likely the FAC raises certain issues, including whether the two new Plaintiffs have standing to bring copyright claims in light of their untimely copyright registrations, that could profitably

Plaintiffs' attempt to restate Waidhofer's copyright claims against Cloudflare, and assert thousands of additional copyright claims on behalf of the two new Plaintiffs, suffer from all the same defects as Waidhofer's original claims: namely, Plaintiffs fail to plausibly allege that Cloudflare had anything whatsoever to do with the alleged infringement, much less that it acted with the requisite volition in infringing Plaintiffs' alleged works. But the FAC, which relies heavily on rank speculation, conclusory assertions lacking any factual basis, unsourced allegations not even made on "information and belief," and hearsay statements quoted from anonymous online commenters, unidentified bloggers, and "advocacy groups," fails to plead even the basic required elements of Plaintiffs' copyright claims. Indeed, the FAC's allegations against Cloudflare are even more tenuous than in the original Complaint.

Plaintiffs' effort to hold Cloudflare liable for copyright infringement that allegedly occurred on the thothub.tv website, simply because Cloudflare provided content-neutral infrastructure and security services, lacks any basis.

Cloudflare's only alleged connection to the alleged infringement is based on Plaintiffs' speculation that Cloudflare provided unidentified "services" for the thothub.tv website. FAC ¶ 194.[5] Plaintiffs themselves emphasize that Cloudflare merely "offers … infrastructure support, content delivery networking, DDoS mitigation, and distributed domain-name-server services" (FAC ¶ 24) and "rout[es] and filter[s] … content through its network of servers" (FAC ¶ 209). These allegations are insufficient to state a claim of direct copyright infringement because they fail to plead the requisite volitional conduct by Cloudflare; indeed, they are inconsistent with it. Similarly, Plaintiffs' allegations that Cloudflare provided lawful services pursuant to a run-of-the-mill business arrangement fail to state a claim for contributory infringement, as they are insufficient to show that Cloudflare knowingly materially contributed to infringement

have been explored on a Rule 15(d) motion to the Court—or even earlier, during the required pre-filing meet and confer process.

[5] Plaintiffs also seek to impose copyright infringement liability on defendants—none of which are alleged to have any connection whatsoever to Cloudflare—that allegedly merely advertised on Thothub's website.

3

through purposeful, culpable conduct, as Ninth Circuit law requires. The "contribution" Plaintiffs allege—based on a unilateral action by an unidentified person, in signing up through an automated online system to order Cloudflare's standard services for a single website—cannot, as a matter of law, support their contributory infringement claim.

Because Plaintiffs cannot plead around these fundamental deficiencies—Waidhofer has already had one chance to do so—the direct and contributory copyright infringement claims against Cloudflare should be dismissed with prejudice.

## II. FACTUAL BACKGROUND

### A. Cloudflare's Business and Services

A basic understanding of Cloudflare's services is fundamental to the appropriate resolution of this case. As Plaintiffs acknowledge, Cloudflare provided "content delivery" (CDN) and security services for Thothub. FAC ¶¶ 9, 24, 322, 327; *see Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 4680177, at *1 (N.D. Cal. Sept. 28, 2018) ("Cloudflare … uses a network of data centers to offer reverse-proxy and content delivery services to other companies …"). Plaintiffs do not allege that Cloudflare is an Internet access provider—nor is it: Cloudflare's customers do not rely on it for their connection to the "network of networks" that comprises the Internet.[6] Nor does Plaintiff allege that Cloudflare hosts websites for its customers—as it does not. Rather, Cloudflare acts strictly as an intermediary. Its CDN network consists of data centers around the world that maintain temporary, "cache" copies of data from customers' websites. As this Court explained in *Rosen v. eBay*, websites and "service providers across the internet" contract with third-party CDN providers, using their "network[s] of multiple servers … to ensure smooth operation of the internet generally and a [website] service provider's services in particular." 2015 WL 1600081, at *20 (C.D. Cal. Jan. 16,

---

[6] Plaintiffs' conclusory allegations that the thothub.tv website was protected by Cloudflare's Argo Tunnel security service are both unsupported, and false: Thothub never subscribed to that service. Nor is it remotely plausible that Cloudflare could cut off a website from the Internet merely by withdrawing its Argo Tunnel service from the website: of course, nothing prevents websites from connecting to the Internet without the benefit of an Argo Tunnel subscription.

4

2015). CDNs are "a crucial part of maintaining not only internet commerce, but the efficient operation of the internet generally," and any copying and distribution they perform is "wholly incidental" to that purpose. *Id.* at \*21. So too here: as Plaintiff acknowledges, Cloudflare's computer systems and servers operated in response to "user requests to access or view Thothub". FAC ¶ 201; *and see, e.g.*, *id.* ¶ 195 (Cloudflare provided "content" "when a user… sought to access … pages" from the Thothub.tv website); ¶ 200 (Cloudflare retrieved content and provided it to users "where a user sought Thothub content" or "[i]f another user requested the content [.]").

A third-party CDN operator like Cloudflare cannot control what material is on its subscribers' websites, and has no power to remove a website, or its content, from the Internet. Nor can Cloudflare sever an alleged infringer's ability to go online by withdrawing its services: even if Cloudflare terminates all access to its CDN and security services, and deletes all cached content from its servers, the customer's website remains online and fully accessible to users, and the customer itself continues to have unfettered access to the Internet—although the website and its users will now be exposed to increased threats.[7] Moreover, it would make no material difference if Cloudflare had withdrawn its CDN service from the thothub.tv website, since its operators could simply have obtained the same services from one of Cloudflare's competitors. Plaintiffs fail to allege otherwise.

Cloudflare's CDN network is key to its security services, including its DDoS mitigation services. A DDoS ("Distributed Denial of Service") attack occurs when a malicious attacker "uses multiple computers simultaneously to request information

---

[7] This is apparently what happened to the violent neo-Nazi group Daily Stormer, whose website was temporarily knocked offline after the withdrawal of Cloudflare's services left it exposed to massive DDoS attacks by online vigilantes. Contrary to Plaintiffs' conclusory statement that Cloudflare has "the ability to kick customers off the Internet" (FAC ¶ 241, cleaned up), the Daily Stormer website is online to this day. *See* https://dailystormer.su/ (last visited November 18, 2020). Plaintiffs' lone, conclusory allegation concerning the Daily Stormer website lacks any factual basis and is irrelevant here: among other things, nowhere do Plaintiffs allege that Thothub would have been the subject of similar DDoS attacks had Cloudflare withdrawn its services. And the mere allegation that Cloudflare withdrew its services once from a particular website is immaterial to Plaintiffs' claims here.

from a website. If done on a large enough scale, the requests overwhelm the website, take the victim server offline, and render the site inaccessible." *Raisley v. U.S.*, 2016 WL 1117944, at *1 (D.N.J. Mar. 22, 2016). Cloudflare's DDoS mitigation services employ a technique known as a "reverse proxy": by routing incoming traffic through a Cloudflare IP address, instead of letting it pass directly to the customer's "origin" web server, Cloudflare can analyze incoming traffic for threats, blocking malicious traffic while letting legitimate traffic "pass through." This protection secures websites, applications, and entire networks from malicious attackers.[8] Cloudflare's network blocks an average of 72 billion threats *per day*, and has thwarted some of the largest DDoS attacks in history.[9] Plaintiffs makes much of allegations that Cloudflare routes some traffic (including traffic to Thothub) through Cloudflare "name servers" (FAC ¶¶ 201, 233) as a security measure. They fail to mention that, as shown by publicly available "Whois" records, Plaintiff Ryuu Lavitz *herself uses Cloudflare name servers* for her "Lavitz Nation" website.[10] And Patreon.com, one of the two so-called "Licensed Sites" that all the Plaintiffs rely on for their businesses, *also uses Cloudflare's name servers in the same way.*[11]

   Leaving customers' IP addresses open to public view exposes them to attack by hackers and cybercriminals—as Ryuu Lavitz and Patreon.com, at least, appear to know.[12] Yet Plaintiffs, ignoring the obvious, attempt to mischaracterize Cloudflare's DDoS mitigation service as primarily a means of "obfuscat[ing]" the IP addresses of "pirate sites" in order to "create[e] obstacles to enforcement." FAC ¶¶ 213 (internal quotation marks omitted). This bald claim, quoted from a self-interested opinion

---

[8] *See, e.g., U.S. v. Goodyear*, 795 F. App'x 555, 560 (10th Cir. 2019) (describing use of Cloudflare's services to protect against DDoS attacks on website); *Teknowledge Corp. v. Akamai Techs., Inc.*, 2004 WL 2042864, at *9 (N.D. Cal. Sept. 11, 2004) (describing defendant's "Reverse Proxy mode," in which a "server acts as an intermediary … [that] accepts requests from clients and forwards these requests to the origin server, which is located inside a firewall.")
[9] *See* https://www.cloudflare.com/ddos/.
[10] *See* publicly available Whois database at https://www.whois.com/whois/lavitznation.com (last visited Nov. 18, 2020).
[11] *See* https://www.whois.com/whois/patreon.com) (last visited Nov. 18, 2020).
[12] *See* https://www.cloudflare.com/learning/cdn/what-is-a-cdn/.

statement by a self-interested copyright industry advocacy group is unsupported by a single factual allegation: it is not only manifestly implausible, but flatly inconsistent with Plaintiffs' own pleading—since, as they acknowledge, Cloudflare *provides* customer information in response to valid legal process. *See* FAC ¶ 217. As Plaintiffs are well aware, there are legal processes by which copyright owners (like Plaintiffs) can require an online service provider (like Cloudflare) to identify alleged infringers. *See* Compl. ¶ 243 (initial Complaint, describing in detail the DMCA subpoena procedure set forth in 17 U.S.C. § 512(h)). And even absent formal legal process, when Cloudflare receives a facially valid copyright complaint through its online abuse page, its policy is to provide identifying and contact information for the origin hosting provider to the complainant—which it does thousands of times per week. Plaintiffs apparently made no attempt to seek information about the owners, operators, or registrants of the thothub.tv website, or any of the Doe Defendants, or even the IP address of the thothub.tv website, by these readily available means, or any other means. No facts support Plaintiffs' speculation that Cloudflare "concealed Thothub's true ownership and server locations." FAC ¶ 10. Indeed, the only facts Plaintiffs plead are to the contrary: in Cloudflare's own words, which the FAC quotes (and does not dispute), Cloudflare "'provide[s] the names of the applicable hosting providers as well as their contact information to the extent that they are using Cloudflare's services'" and that information is available to Cloudflare. FAC ¶ 98 (quotation marks and alterations in original). Finally, and tellingly, Plaintiffs fail to explain what possible use they could have made of Thothub's IP address information, even if they had bothered to request it or attempted to obtain it through available means—neither of which they allege.

### B.    Plaintiffs and Their Allegations

Plaintiffs' First Amended Complaint asserts various causes of action against four different entities in addition to Cloudflare:

- BangBros.com, Inc. ("Bangbros"), an online adult content business that allegedly purchased advertising that appeared on the thothub.tv website. FAC ¶ 12.
- Sonesta Technologies, Inc. ("Sonesta"), which, confusingly, is allegedly another name for Bangbros.com, Inc—although Plaintiffs treat them as separate entities. FAC ¶ 25.
- Multi Media LLC, another (but apparently unrelated) online adult content business that also allegedly purchased advertising that appeared on the thothub.tv website. Plaintiffs refer to Multi Media as "Chaturbate," apparently after one of the company's websites—though confusingly, Plaintiffs also allege that Chaturbate is a company in its own right. FAC ¶ 26.
- Crakmedia, Inc. ("CrakRevenue"), a Canadian marketing firm that allegedly acted as an advertising agent for BangBros/Sonesta and Multi Media. FAC ¶ 27.

The FAC also list pseudonyms of 21 Doe Defendants who allegedly "operated" the thothub.tv website in some undefined manner. FAC ¶ 23.

Plaintiffs are two Internet models, together with an LLC that allegedly owns copyrights for a third: Deniece Waidhofer ("Waidhofer"); Maggie McGehee ("McGehee"); and Ryuu Lavitz LLC ("Ryuu Lavitz"). FAC ¶¶ 20-22.[13]

All of the Plaintiffs' claims stem from their allegations that adult-oriented images of themselves, which each of them made available online through the Patreon and OnlyFans platforms, were "leaked" or copied by Plaintiffs' fans and subscribers, then posted on the Thothub.tv website. FAC ¶¶ 68-71, 101-11 (McGehee); 76-77, 119-20 (Ryuu Lavitz); 83-95 (Waidhofer).

---

[13] The FAC and Plaintiffs' pleadings are contradictory concerning the ownership of Plaintiff Ryuu Lavitz. While the FAC states that "Ryuu Lavitz" is a pseudonym for the owner of Ryuu Lavitz LLC, Plaintiffs' notice of interested parties states that an individual named Ryuu Lavitz is the "sole member of Ryuu Lavitz LLC." *Compare* FAC ¶ 73 *with* ECF 69.

Plaintiffs do not allege that Cloudflare owns or operates Thothub, and acknowledge that Cloudflare "offers a variety of web-based services, including infrastructure support, content delivery networking, DDoS mitigation, and distributed domain-name-server services" to the general public. *Id.* ¶ 24. Their copyright infringement allegations consist of vague, general allegations that unspecified Cloudflare services "enabled the distribution of copyrighted works, stored copyrighted works on Cloudflare's network, off-loaded huge amounts of traffic from Thothub's home servers (thus allowing wider distribution and preventing crashing), shielded Thothub from discovery by copyright owners and law enforcement, and protected Thothub from cyberattacks." *Id.* ¶ 187. Plaintiffs allege, in general terms, that in performing unspecified services for the Thothub.tv website, Cloudflare "copied, stored, and distributed copies of the Plaintiffs' copyrighted works." *Id.* ¶ 194. They provide no specific factual allegations about how or when Cloudflare's services infringed or encouraged or materially contributed to third party infringement. Nor do they provide any factual allegations to identify which of Plaintiffs' works were allegedly infringed, when, or by whom, or which alleged direct infringements form the basis of their contributory infringement claims against Cloudflare.

## III.   LEGAL STANDARD

A complaint is subject to dismissal if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The pleaded facts must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal

quotation marks and citation omitted). If the complaint only permits the court to infer the "mere possibility of misconduct," it should be dismissed. *Id.* at 679.

On a motion to dismiss, the court may consider the complaint, any "materials incorporated into the complaint by reference, and matters of … judicial notice." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 875-76 (9th Cir. 2012). "The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## IV. PLAINTIFFS FAIL TO STATE COPYRIGHT INFRINGEMENT CLAIMS AGAINST CLOUDFLARE

The FAC fails to allege facts sufficient to state a claim for either direct or contributory copyright infringement against Cloudflare. It merely alleges, in conclusory fashion, that Cloudflare directly infringed unidentified works "by reproducing and storing copies of the Works on its servers and distributing copies of the Works to the public through its content delivery network," ¶ 322, but fails to allege the requisite volition to state a claim for direct copyright infringement. It also fails to allege facts sufficient to support contributory infringement by Cloudflare, as it fails to adequately allege that Cloudflare knowingly materially contributed to infringement.

### A. Plaintiffs Fail to Adequately Allege that Cloudflare Directly Infringed Their Copyrights

Plaintiffs allege that Cloudflare provided caching and reverse proxy services to Thothub—which Cloudflare's systems performed automatically, just as when providing the same services to tens of millions of websites and Internet properties that subscribe to Cloudflare's services.[14] But these allegations are insufficient to show that Cloudflare engaged in any volitional conduct that caused the infringement of Plaintiffs' copyrights.

---

[14] Plaintiffs also speculate, albeit falsely and without any factual support, that Cloudflare provided its Argo Tunnel security services to Thothub. FAC ¶ 206. This allegation, even if it were true (and it is not) adds nothing to Plaintiffs' deficient allegations, since Cloudflare's Argo Tunnel services, like any other computerized online electronic communications system, are also automated.

To allege direct copyright infringement, a plaintiff must allege ownership of a valid copyright, and that it was copied without authorization. *Musero v. Mosaic Media Grp., Inc.*, 2010 WL 11595453, at *2 (C.D. Cal. Aug. 9, 2010). Fundamental to the second prong, stating a claim for direct infringement "requires the plaintiff to show … 'volitional conduct'[] by the defendant" that *caused* the infringement. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). Merely "operating a system used to make copies at [a] user's command does not mean that the system operator, rather than the user, caused copies to be made." *Fox Broadcasting Co., Inc. v. Dish Network LLC*, 747 F. 3d 1060, 1067 (9th Cir. 2014); *Giganews*, 847 F.3d at 670 ("[A]utomatic copying, storage, and transmission of copyrighted materials, when instigated by others, does not render an Internet service provider strictly liable for copyright infringement.") (alterations and citation omitted). Rather, "[i]n determining who actually 'makes' a copy, a significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct." *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008). "[T]he so-called 'volition' element of direct infringement … is a basic requirement of causation[,]" since "*direct* liability must be premised on conduct that can reasonably be described as the *direct* cause of the infringement." *Giganews*, 847 F.3d at 666 (quoting district court, emphases in original).

Specifically, a service provider's automatic creation of "cache" copies of information in the ordinary course of its business does not constitute direct copyright infringement. *See, e.g.*, *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1369 (N.D. Cal. 1995) (system operator was not liable for direct copyright infringement due to "[its] act of designing or implementing a system that automatically and uniformly creates temporary copies of all data sent through it" "without any human intervention."); *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1114 (D. Nev. 2006) (online service provider did not directly infringe "by operating its cache

and presenting … links to works within it"); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 497 (E.D. Pa. 2006) ("When [an online service provider] automatically and temporarily stores data without human intervention so that the system can operate and transmit data to its users, the necessary element of volition is missing."). In such cases, "it is the user, not [the service provider], who creates and downloads a copy" of the requested content. *Field*, 412 F. Supp. 2d at 1115.

Still less is there any volitional conduct when data is merely *transmitted* through a CDN network. "The widespread use of CDNs means that most content is passed from a service provider to one or more third parties before reaching an end user." 2015 WL 1600081, at *21. In this respect, a CDN like Cloudflare's is just like any other network connected to the broader Internet. Indeed, the same holds true of the Internet itself, which works by "allow[ing] computers to communicate without being directly connected …. [because] it routes … communications through a sequence of intermediate computers, like a game of telephone." *Cascades Streaming Techs., LLC v. Big Ten Network, LLC*, 2016 WL 2344578, at *26 (N.D. Ill. May 4, 2016), *aff'd*, 748 F. App'x 338 (Fed. Cir. 2019); *see also, e.g.*, *Softcard Sys., Inc. v. Target Corp.*, 2005 WL 6225163, at *5 (N.D. Ga. Jan. 11, 2005) (data transmitted across the Internet "travel[s] from one network to another network, since the Internet connects many smaller networks to each other… Each [data] packet is sent toward its destination by the best available route according to the table, taking into consideration the current Internet traffic and other factors."). To hold Cloudflare liable for direct copyright infringement for the non-volitional conduct of operating an automated computer system that transmits data across the Internet in response to user requests would be unprecedented. Under Plaintiffs' wildly expansive theory of liability, the owner of *any* computer connected to the Internet could potentially be exposed to unlimited liability, merely for participating in the ordinary, technically necessary routing of information through the "network of networks" that comprises the Internet. That is not, and cannot be, the law.

Not only does the FAC lack any allegation that Cloudflare acted with volition to infringe Plaintiffs' alleged copyrights, but Plaintiffs repeatedly concede that Cloudflare took automated, non-volitional actions in response to requests from Internet users:

- "When a user in the United States sought to access these pages [from the Thothub.tv website], Cloudflare delivered the content … to the user[.]" FAC ¶ 195.
- "In circumstances where a user sought Thothub content not already stored on Cloudflare's servers, Cloudflare retrieved the content from Thothub's servers then provided it to the user." FAC ¶ 200.
- "If another user requested the content, Cloudflare delivered it[.]" *Id.*
- "Cloudflare servers … received … user requests to access or view Thothub." FAC ¶ 201.

Such "automated, non-volitional conduct … in response to a user's request does not constitute direct infringement under the Copyright Act." *Field*, 412 F. Supp. 2d at 1115 (collecting cases). And Plaintiffs provide no other allegations to *support* the required volition. Their *only* allegation that even mentions volition is a conclusory, fact-free statement that "Cloudflare committed volitional acts by, among other things, selecting works to store on its server network and by continuing to make and distribute infringing copies after notice of infringement." FAC ¶ 322. But this entirely conclusory allegation is plainly insufficient to state a claim for multiple reasons. First, Plaintiffs' mere reciting the phrase "volitional acts" is precisely the sort of "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," that is insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Second, the claim is manifestly impossible: no CDN operator, let alone one like Cloudflare that operates on a global scale, could conceivably "select" the specific content that moves through its network. Finally, Plaintiffs' perfunctory attempt to locate volition in Cloudflare's allegedly "continuing to make and distribute infringing copies after notice of infringement" mistakes a contributory infringement theory for a theory of direct infringement. As the

Ninth Circuit has explained, "volition" is a doctrine of causation, and requires "conduct that can reasonably be described as the *direct* cause of the infringement." *Giganews*, 847 F.3d at 666 (quoting district court, emphases in original). Nothing in this perfunctory, conclusory allegation (or any other allegation in the FAC) comes close to meeting this standard.

Because Plaintiffs fail to allege any volitional conduct by Cloudflare that directly caused the alleged direct infringement of their works, the direct infringement claim against Cloudflare should be dismissed. Because this is Plaintiff Waidhofer's second attempt to plead the claim and the two new plaintiffs' claims closely track her claims, and because further amendment (or supplementation) would be futile in any event, dismissal should be with prejudice.

### B.    Plaintiffs Fail to Adequately Allege Contributory Infringement

The FAC also fails to adequately allege facts sufficient to hold Cloudflare liable for contributory infringement. It is a bedrock requirement that contributory infringement requires showing that the defendant acted with "culpable intent." *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 934 (2005); *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1148 (9th Cir. 2018) ("Nothing in [the] complaint alleges, or even suggests, that [defendant] actively induced or materially contributed to the infringement through purposeful, culpable expression and conduct.") (internal quotation marks and citation omitted). "An allegation that a defendant merely provided the means to accomplish an infringing activity is insufficient to establish [the] claim." *Tarantino v. Gawker Media, LLC*, 2014 WL 2434647, at *3 (C.D. Cal. Apr. 22, 2014). Where (as here) the defendant is "[a] computer system operator," showing the requisite intent requires showing that the defendant "has *actual* knowledge that *specific* infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F. 3d 1146, 1172 (9th Cir. 2007) (emphases in original; citations and quotation marks omitted).

Plaintiffs' allegations are insufficient to show that Cloudflare had the requisite intent, as *Grokster* and its progeny require. Plaintiffs do not (and could not) allege that Cloudflare's services played any role when Plaintiffs' own fans and subscribers allegedly "leaked" copies of their images, or when they were posted on Thothub.

And Plaintiffs fail to plausibly allege that Cloudflare could have taken simple measures, or that it *failed* to take available simple measures, to "prevent further damage to [Plaintiffs'] copyrighted works." The only relevant fact pleaded in the FAC is to the contrary: Plaintiffs, relying on an allegation posted online by a third party, note that when that individual sent an infringement notice to Cloudflare about Thothub, Cloudflare responded by "pass[ing] [her] details and complaints onto the true host of the site." FAC ¶ 221. In other words, Cloudflare *took* the only simple measure available to it in attempting to address claims of infringement. Indeed, the Ninth Circuit, in *ALS Scan, Inc. v. Steadfast Networks, LLC*, 819 Fed. App'x 522, 524 (9thCir. 2020), recently held that a computer system operator that leased servers to an allegedly infringing website could not be held liable for contributory infringement when it took the "simple measure" of forwarding notices of claimed infringement to the website, and there was no evidence defendant had "other simple measures at its disposal." Nothing in the FAC is to the contrary. This case thus presents an easier question than the motion to dismiss the district court denied earlier in that same *ALS Scan* case. *See* Case No. 16-cv-05051-GW-AFM, Dkt. No. 60 (C.D. Cal. Oct. 24, 2016). Plaintiffs' own allegations and the Ninth Circuit's recent decision make clear that Cloudflare took all appropriate steps consistent with the nature of its services to address complaints alleging infringing content on a website using those services. And, at a minimum, nothing in Plaintiffs' allegations suggest that Cloudflare "materially contributed to the infringement through 'purposeful, culpable expression and conduct.'" *Cobbler Nevada, LLC*, 901 F.3d at 1148. Further, Plaintiffs fail to identify any simple measures available to Cloudflare that it did *not* take. Plaintiffs' vague, conclusory allegation that Cloudflare "does not take reasonable action after being notified about repeat infringement," FAC ¶ 239, is

insufficient to support their contributory infringement claim.

Key to Plaintiffs' contributory infringement claims against Cloudflare are their newly-added, speculative (and false) allegations that the thothub.tv website used Cloudflare's "Argo Tunnel" services. FAC ¶¶ 203-207. Tellingly, these allegations were not present in Waidhofer's initial Complaint, but were added after Cloudflare moved to dismiss. Waidhofer opted not to attempt to defend her contributory infringement claim: instead, she (and her co-Plaintiffs) simply added half a dozen new allegations in an apparent attempt to bolster a weak contributory infringement claim before the Court could dismiss it. In pertinent part, the FAC alleges:

- That "Cloudflare set up an Argo Tunnel for Thothub." FAC ¶ 206.
- That when the Argo Tunnel service was in place, "[a]ll public traffic accessing Thothub was directed through Cloudflare[,]" ¶ 206, and "[u]sers could not access Thothub except through Cloudflare[,]" ¶ 203.
- That "[i]f Cloudflare had 'closed' the Thothub tunnel (and ceased delivering Thothub content that Cloudflare already had stored on its servers), as a practical matter, Thothub would no longer have been available on the Internet." ¶ 207.

The first allegation, purportedly made "on information and belief," is simply false. The second is based on the false premise that the thothub.tv website used Argo Tunnel services. The third allegation is not only based on the false premise that Cloudflare provided Argo Tunnel services to Thothub when it did not, but is patently speculative, manifestly implausible, and consequently insufficient to support Plaintiffs' contributory infringement claim. Even if the thothub.tv website had used the Argo Tunnel service (and it did not), Plaintiffs' speculative claim that withdrawing that service would have made Thothub "no longer… available on the Internet" is patently wrong: millions upon millions of websites connect to the Internet every minute, without the benefit of *any* of Cloudflare's services, including the Argo Tunnel service.[15]

---

[15] Plaintiffs have a notable appetite for making false allegations lacking any factual

In any event, nothing in Plaintiffs' allegations plausibly suggests that Cloudflare "materially contributed to the infringement through 'purposeful, culpable expression and conduct.'" *Cobbler Nevada, LLC*, 901 F.3d at 1148. Instead of attempting to allege that Cloudflare had the requisite intent for contributory infringement, Plaintiff simply seeks to hold Cloudflare liable for providing its ordinary services pursuant to a services agreement. FAC ¶ 189-92. This is precisely the type of conduct—"merely provid[ing] the means to accomplish an infringing activity"—that "is insufficient to establish a claim for copyright infringement." *Tarantino*, 2014 WL 2434647 at *3. Not only do Plaintiffs fail to allege the required purposeful conduct by Cloudflare, but their only allegations are to the contrary: they concede that, to the extent Cloudflare's servers "copied, stored, and distributed copies of the Plaintiffs' copyrighted works," it was in response to "user requests to access or view Thothub." FAC ¶¶ 194, 201. The Complaint fails to allege that Cloudflare acted intentionally or made any causal contribution to the alleged direct infringement, and Cloudflare concededly took the only simple measure available to it, forwarding notices of claimed infringement to the alleged infringer. Plaintiffs' contributory infringement claim, like its direct infringement claim, should be dismissed. Because repeated amendment of this claim would be futile, dismissal should be with prejudice.

## V.   CONCLUSION

Plaintiffs' so-called First Amended Complaint is properly a supplemental pleading, for which they should have sought leave of court to file. More fundamentally, Plaintiffs have failed to plead the required volitional conduct by Cloudflare to state a claim for direct copyright infringement, and have failed to plausibly plead that Cloudflare knowingly materially contributed to infringement by third parties. For these

support, many of which are not even made "on information and belief." *See* FAC ¶¶ 203-207 (baseless allegations concerning Argo Tunnel); ¶¶ 218, 226, 236-237 (baseless allegations that Cloudflare made false statements, lacking a statement of "information and belief"). Waidhofer's original Complaint similarly contained false allegations that were promptly dropped after Cloudflare called them out in its motion to dismiss. *See, e.g.*, ECF 57 (Cloudflare's motion to dismiss initial Complaint) at 12:28-13:1-4; 16 n.13.

1   reasons, the Court should dismiss Counts Four and Five against Cloudflare. Because

2   Plaintiff Waidhofer has already once attempted to save these claims, and the other two

3   plaintiffs are admittedly similarly situated factually, dismissal should be with prejudice,

4   as further amendment (or supplementation) would be futile.

5

6   Dated: November 18, 2020            WINSTON & STRAWN LLP

7                                       By:  */s/ Jennifer A. Golinveaux*
8                                            Jennifer A. Golinveaux
                                             Thomas J. Kearney
9                                            WINSTON & STRAWN LLP
                                             101 California Street, 35th Floor
10                                           San Francisco, CA 94111-5840
                                             (415) 591-1000 (telephone)
11                                           jgolinveaux@winston.com
                                             tkearney@winston.com
12
                                             Michael S. Elkin
13                                           WINSTON & STRAWN LLP
                                             200 Park Avenue
14                                           New York, NY 10166
                                              (212) 294-6700 (telephone)
15                                           melkin@winston.com

16                                           Erin R. Ranahan
                                             WINSTON & STRAWN LLP
17                                           333 S. Grand Avenue
                                             Los Angeles, CA 90071
18                                           (213) 615-1700 (telephone)
                                             eranahan@winston.com
19
                                             *Attorneys for Defendant*
20                                           *CLOUDFLARE, INC*

21

22

23

24

25

26

27

28