1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Michael T. Zeller (Bar No. 196417)
2    michaelzeller@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
4  Facsimile:  (213) 443-3100

5  Attorney for Defendants
   Multi Media, LLC and Sonesta Technologies, Inc.
6  (f/k/a BangBros.com Inc.)

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11
   DENIECE WAIDHOFER, an              Case No. 2:20-cv-06979
12 individual; MARGARET MCGEHEE,
   an individual; and RYUU LAVITZ,    **DEFENDANTS MULTI MEDIA,**
13 LLC, a Massachusetts limited liability **LLC AND SONESTA**
   company;                           **TECHNOLOGIES, INC.'S (f/k/a**
14                                     **BANGBROS.COM INC.)**
                Plaintiffs,            **NOTICE OF MOTION AND**
15                                     **MOTION TO DISMISS THE FIRST**
          vs.                          **AMENDED COMPLAINT;**
16                                     **MEMORANDUM OF POINTS AND**
   CLOUDFLARE, INC., a Delaware       **AUTHORITIES IN SUPPORT**
17 corporation; BANGBROS.COM, INC.,
   a Florida corporation; SONESTA
18 TECHNOLOGIES, INC., a Florida      Date:      December 17, 2020
   corporation; MULTI MEDIA LLC, a    Time:      10:00 a.m.
19 California limited liability company; Judge:     Fernando M. Olguin
   CRAKMEDIA INC., a Canadian         Courtroom: 6D
20 corporation; and JOHN DOES 1-21, as-
   yet unidentified individuals,
21
                Defendants.
22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 17, 2020 at 10:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 6D of the United States District Court for the Central District of California, located at First Street Courthouse, 350 W. 1st Street, 6th Floor, Los Angeles, California 90012, defendants Multi Media, LLC and Sonesta Technologies, Inc. (f/k/a BangBros.com Inc.)[1] (collectively, the "Advertisers" or "Advertiser Defendants") will and hereby do move for an order dismissing this action in its entirety as to the Advertiser Defendants under Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 12, 2020.  Advertiser Defendants' Motion is and will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the records and file herein, and upon such other oral and documentary evidence as may be presented at the hearing on this motion.

DATED:  November 18, 2020      QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____
Michael T. Zeller
Attorney for Defendants Multi Media, LLC and Sonesta Technologies, Inc. (f/k/a BangBros.com Inc.)

---

[1]   Although plaintiffs have named Sonesta Technologies, Inc. and BangBros.com Inc. as purportedly different defendants, they are the same entity. BangBros.com Inc., a Florida corporation formed on December 13, 2002, changed its name to Sonesta Technologies, Inc. pursuant to Articles of Amendment filed with the Florida Secretary of State on October 7, 2014.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................. 1

PROCEDURAL HISTORY ...................................................................... 3

PLAINTIFFS' ALLEGATIONS ................................................................ 3

    A.    Allegations Against Thothub And The "Operator" Defendants............. 4

    B.    The Alleged Copyrighted Works ................................................. 4

    C.    The Advertiser Defendants ........................................................ 5

    D.    The Purported RICO Enterprise ................................................. 6

    E.    The Causes Of Action ............................................................... 7

LEGAL STANDARD ............................................................................ 7

ARGUMENT ...................................................................................... 8

I.    PLAINTIFFS' CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM IN COUNT 5 FAILS ............................................................ 8

    A.    Two Plaintiffs Did Not Have Copyright Registrations Prior To Filing The Original Complaint, Which Requires Dismissal .................. 9

    B.    All Three Plaintiffs Fail to Properly Plead Contributory Infringement .......................................................................... 10

        1.    Plaintiffs Once Again Fail To Plead Requisite Knowledge To Support Their Contributory Liability Claim ......................... 11

        2.    Plaintiffs Fail To Plead A Material Contribution ..................... 15

II.    PLAINTIFFS STILL FAIL TO STATE VIABLE RICO CLAIMS ............. 17

    A.    Plaintiffs Fail to Allege Facts As Required By Rule 9(b) .................. 17

    B.    Plaintiffs Lack Standing To Assert Their RICO Claims ..................... 18

    C.    Plaintiffs Fail To Allege Any Proper RICO Claim On The Merits ...... 19

        1.    Plaintiffs State No Substantive Violation of § 1962(a) .............. 19

        2.    Plaintiffs State No Substantive Violation of § 1962(d) ............. 20

III.    THE FAC FAILS TO STATE AN UNFAIR COMPETITION CLAIM ....... 22

CONCLUSION ................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>CASES</u>

*A&M Records, Inc. v. Napster, Inc.* (*Napster*),
   239 F.3d 1004 (9th Cir. 2001)................................................................. 11, 12

*ALS Scan, Inc. v. Steadfast Networks, LLC*,
   819 Fed. App'x 522 (9th Cir. 2020)............................................................... 11

*ALS Scan, Inc. v. Cloudflare, Inc.*, Case No. 2:16-cv-05051-GW (AFMx),
   ECF No. 53 (C.D. Cal. Oct. 3, 2016) ............................................................. 16

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) ........................................................................................ 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 7, 15

*Baumer v. Pachl*,
   8 F.3d 1341 (9th Cir. 1993)............................................................................. 21

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................. 7, 14, 15

*Boost Beauty, LLC v. Woo Signatures, LLC*,
   2019 WL 2122984 (C.D. Cal. May 14, 2019) ................................................... 9

*British Broad. Corp. v. Stander*,
   2017 WL 1807592 (C.D. Cal. Mar. 18, 2017) ................................................... 8

*Canyon Cty. v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008)........................................................................... 18

*Chagby v. Target Corp.*,
   2008 WL 5686105 (C.D. Cal. Oct. 27, 2008).................................................. 22

*David v. CBS Interactive, Inc.*,
   2012 WL 12884914 (C.D. Cal. July 13, 2012) ............................................... 12

*Elsevier Ltd. v. Chitika, Inc.*,
    826 F. Supp. 2d 398 (D. Mass 2011) ............................................................. 16

*Emery v. Visa Int'l Serv. Ass'n*,
   116 Cal. Rptr. 2d 25 (Cal. Ct. App. 2002) ..................................................... 23

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996)............................................................................. 16

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com*, LLC, 139 S.Ct. 881
   (2019) ................................................................................................................ 9

*Gomez v. Guthy-Renker, LLC,*
  2015 WL 4270042 (C.D. Cal. July 13, 2015) ................................................22

*Hemi Group LLC. v. City of New York,*
  559 U.S. 1 (2010) ..........................................................................................19

*Hennessy v. Infinity Ins. Co.,*
  358 F. Supp. 3d 1074 (C.D. Cal. 2019) .........................................................17

*Holmes v. Sec. Inv'r Prot. Corp.,*
  503 U.S. 258 (1992) ..................................................................................18, 19

*Howard v. Am. Online, Inc.,*
  208 F.3d 741 (9th Cir. 2006) ...................................................................20, 21

*Imageline, Inc. v. CafePress.com, Inc.,*
  2011 WL 1322525 (C.D. Cal. Apr. 6, 2011) ...........................................12, 14

*In re GlenFed, Inc. Sec. Litig.,*
  42 F.3d 1541 (9th Cir. 1994) ...........................................................................8

*In re Toyota Motor Corp.,*
  785 F. Supp. 2d 883 (C.D. Cal. 2011) ...........................................................20

*Izmo, Inc. v. Roadster, Inc.,*
  2019 WL 2359228 (N.D. Cal. June 4, 2019) ..............................................9, 10

*Jubelirer v. MasterCard Int'l, Inc.,*
  68 F. Supp. 2d 1049 (W.D. Wis. 1999) ..........................................................22

*Kodadek v. MTV Networks, Inc.*
  152 F.3d 1209 (9th Cir. 1998) .......................................................................23

*Korea Supply Co. v. Lockheed Martin Corp.,*
  63 P.3d 937 (Cal. 2003) .................................................................................23

*Kristensen v. Credit Payment Servs. Inc.,*
  2015 WL 4477425 (D. Nev. July 20, 2015) ....................................................14

*Livnat v. Lavi,*
  1998 WL 43221 (S.D.N.Y. Feb. 2, 1998) .......................................................16

*Luvdarts, LLC v. AT & T Mobility, LLC (Luvdarts),*
  710 F.3d 1068 (9th Cir. 2013) ....................................................11, 12, 13, 15

*Malibu Media, LLC v. Doe,*
  2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019) ...............................................9, 10

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
  521 F.3d 1097 (9th Cir. 2008) .........................................................................8

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
  545 U.S. 913 (2005) .......................................................................................10

*Moore v. Kayport Package Exp., Inc.,*
   885 F.2d 531 (9th Cir. 1989)................................................17

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.,*
   981 F.2d 429 (9th Cir. 1992)................................................20

*Oki Semiconductor Co v. Wells Fargo Bank*, Nat. Ass'n,
   298 F.3d 768 (9th Cir. 2002)..........................................19, 21

*People v. Toomey,*
   203 Cal. Rptr. 642 (Cal. Ct. App. 1984................................23

*Perfect 10, Inc. v. Amazon.com, Inc.,*
   508 F.3d, 1146 (9th Cir. 2007)......................................14, 15

*Perfect 10, Inc. v. Visa Int'l Servs. Ass'n* (*Visa*),
   494 F.3d 788 (9th Cir. 2007)...........................10, 14, 15, 22

*Stewart v. Wachowski,*
   2004 WL 2980783 (C.D. Cal. Sept. 28, 2004)......................17

*Sybersound Records, Inc. v. UAV Corp.,*
   517 F.3d 1137 (9th Cir. 2008)......................................19, 20

*Thinket Ink Info. Resources, Inc. v. Sun Microsystems, Inc.,*
   368 F.3d 1053 (9th Cir. 2004).................................................8

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003).................................................8

*Zhai v. Zhang,*
   2018 WL 6137609 (C.D. Cal. Nov. 5, 2018)........................13

## STATUTES

17 U.S.C. § 106........................................................................23

17 U.S.C. § 411(a) .....................................................................9

17 U.S.C. § 506(a)(1) ...............................................................21

18 U.S.C. § 1964(c). .................................................................18

## RULES

California's Business & Professions Code section 17200 ........................22

Fed. R. Civ. P. 12(b)(6) ..........................................................7

## **PRELIMINARY STATEMENT**

As with the original, defective Complaint, plaintiffs' First Amended Complaint ("FAC") fails to state a claim against the Advertiser Defendants and should be dismissed.  Though the FAC identifies two new plaintiffs, deletes some allegations and adds others, plaintiffs' FAC remains, at its core, the same 88 pages of conclusory allegations that some unknown third parties uploaded plaintiffs' images to a website called thothub.tv ("Thothub"), which is owned and operated by yet other third parties, without plaintiffs' permission.  The Advertiser Defendants have never owned or operated thothub.tv or copied, distributed, or displayed any of plaintiffs' images. Plaintiffs do not allege otherwise.  Instead, just as with the original Complaint, plaintiffs' FAC offers various implausible—and indeed rejected—theories under RICO and secondary copyright liability as to why the Advertiser Defendants are somehow responsible for the alleged conduct of these third parties because the Advertiser Defendants' own websites were advertised through a third-party marketing company on thothub.tv.

The FAC not only fails to cure the glaring defects in the original Complaint, but introduces new ones.  For instance, the FAC adds two new plaintiffs, Margaret McGehee ("McGehee") and Ryuu Lavitz, LLC.  Both of these plaintiffs, however, registered their works *after* the original Complaint was filed on August 3, 2020.  That lack of a copyright registration *prior* to filing suit cannot be cured through amendment and requires dismissal of these two new plaintiffs' copyright claims.

Untimely registrations aside, all three plaintiffs' claims for contributory copyright infringement fail under binding Ninth Circuit precedent.  Once again, plaintiffs make the bald assertion that the Advertiser Defendants were major players in the adult entertainment industry and therefore they therefore somehow and some way *must* have known about the purported infringement by a third-party website. Courts in this Circuit routinely reject this type of generalized allegation as insufficient to state a claim of contributory copyright infringement.  To the contrary, they

repeatedly have held that a defendant's *specific* knowledge of the infringement of a plaintiff's works is required to satisfy the knowledge prong necessary to state a contributory copyright infringement claim. Plaintiffs do not plead such allegations. They instead insist that yet another separate, third party known as CrakRevenue—a marketing platform that transmitted Advertiser Defendants' ads—was a purported "agent" of the Advertisers. But plaintiffs do not even come close to properly pleading any such agency relationship. Plaintiffs also fail to allege facts to establish the necessary second element of contributory infringement, namely, that the Advertisers materially contributed to the infringement of plaintiffs' works by advertising on thothub.tv. Case law confirms that the Advertiser Defendants' conduct does not meet this materiality standard, which independently requires dismissal of plaintiffs' contributory copyright infringement claim.

Plaintiffs' two RICO claims—one asserted under section 1962(a) for supposed reinvestment of racketeering income and the other under section 1962(d) for conspiracy—have even less merit. Although they are subject to Rule 9(b)'s heightened pleading standards because they sound in fraud, plaintiffs do not even attempt to plead the specific facts—the who, when, what or where—as required. Far from it. Plaintiffs rely on vague, conclusory allegations, many of which are also made on mere "information and belief" by plaintiffs.

In addition to failing to meet basic federal pleading standards, plaintiffs' RICO claims fail to state a claim on the merits. The FAC does not allege with facts that the Advertisers' actions were the *direct* cause of plaintiffs' purported injuries, which is fatal to their standing to assert any RICO claims under blackletter law. Nor do plaintiffs properly allege that they were directly injured by the use or investment of racketeering income, let alone articulate any injury allegedly separate and apart from a racketeering injury as binding precedent requires for a claim under section 1962(a). As for their RICO conspiracy claim under 1962(d), plaintiffs have failed to allege a substantive violation of the RICO statute or that the Advertisers Defendants engaged

in the predicate act of criminal copyright infringement.   Indeed, the Advertiser Defendants conducted ordinary arms-length business transactions, which dooms any claim that they illicitly conspired or laundered funds derived from a RICO enterprise.

Lastly, plaintiffs' tacked-on state law claims for common law and statutory unfair competition fail because the law has rejected these theories of secondary liability, and the claims are preempted by the federal Copyright Act.

The FAC against the Advertiser Defendants should be dismissed.

## **PROCEDURAL HISTORY**

On August 3, 2020, plaintiff Deniece Waidhofer filed her Complaint against the Advertiser Defendants, among others.  Dkt. 1.  The Complaint generally alleged the website thothub.tv had infringed Waidhofer's copyrighted photographs.  Plaintiff Waidhofer sued the Advertiser Defendants for secondary copyright infringement, RICO violations, and a grab bag of other alleged torts.  *Id.*  She expressly alleged in the Complaint that, at the time of its filing, some of her purported copyright registration applications were merely "pending," and not issued by the U.S. Copyright Office.  *Id.*  ¶ 69.

On October 14, 2020, the Advertiser Defendants filed a Motion to Dismiss the original Complaint.  Dkt. 59.  In response, on November, 4, 2020, Waidhofer, along with two entirely new plaintiffs unrelated to Waidhofer, filed the FAC.  Dkt. 68.  The FAC also added Crakmedia Inc. as a defendant and, remarkably, dropped from the case entirely Thothub—the site that supposedly actually infringed plaintiffs' images.  Dkt. 67 at 1.

## **PLAINTIFFS' ALLEGATIONS[2]**

Plaintiffs each allege they are content creators on www.onlyfans.com ("Only Fans") and www.patreon.com ("Patreon") (together, "Licensed Sites").   These two

---

[2]   As required and solely for purposes of this motion to dismiss, the Advertiser Defendants assume the truth of the well-pled allegations of the Complaint as

social media platforms allow content creators to sell access to their digital content to paid subscribers. FAC ¶¶ 32-52. Plaintiff s claim their published content consists of artistic photographs of themselves. *Id.* ¶¶ 52-80.

### A.   Allegations Against Thothub And The "Operator" Defendants

According to plaintiffs, thothub.tv was a pirate website found at *https://thothub.tv*. *Id.* ¶ 1. Plaintiffs claim that Doe Defendants 1-21 allegedly operated thothub.tv (the "Operators") and, with the purported support of other defendants, caused plaintiffs' works to be published on thothub.tv. *Id.* ¶ 3.

The Operators are unidentified individuals who managed and otherwise controlled thothub.tv. *Id.* ¶¶ 148-151. Plaintiffs claim the thothub.tv site "bills itself as 'the home of daily free leaked nudes'" (*id.* ¶ 135) and the Operators looked for "leaked" content that is "scraped behind paywalls of the Licensed Sites (*id.* ¶ 5).[3] Plaintiffs allege Thothub knowingly acquired such stolen content by pressuring, and even extorting, other users to provide stolen content from those sites in order to be granted access to additional content and features on the thothub.tv site. *Id.* ¶¶ 163-81.

### B.   The Alleged Copyrighted Works

Plaintiff Waidhofer set up her Patreon and OnlyFans accounts around 2017 and 2018, respectively. *Id.* ¶¶ 57, 59. She alleges various sets of her photos began to appear on thothub.tv under various headings and forum posts on or before May 2019. *Id.* ¶¶ 82-85. Although she alleges that she sent copyright infringement notices to others (*id.* ¶¶ 96-98), she does not and cannot claim she provided any such notice as to the Advertiser Defendants.

---

described herein, even though the Complaint is riddled with frivolous allegations and elementary errors as to the Advertiser Defendants and their operations.

[3]   Plaintiff apparently assumes the term "leaked" is interchangeable with "stolen" content from the Licensed Sites. *Id.* ¶ 5.

Margaret McGehee, who works under the pseudonym "OMGcosplay," was named as a plaintiff for the first time in the FAC. McGehee alleges that she set up Patreon and OnlyFans accounts in 2016 and 2019, respectively, and that her works began appearing on thothub.tv on or before September 2019. *Id.* ¶¶ 68, 70, 99-111. Plaintiff McGehee alleges the Copyright Office registered her relevant works on September 7, 2020 (*id.* ¶ 100), which is well after the August 3, 2020 filing of the original Complaint.

Ryuu Lavitz, LLC also was named as a plaintiff for the first time in the FAC and alleges to own the rights to the copyrights of an individual named Ryuu Lavitz. *Id.* ¶ 73. Lavitz opened her Patreon account in 2015, and Ryuu Lavitz, LLC opened its OnlyFans account in 2020. *Id.* ¶¶ 76-77. Ryuu Lavitz, LLC alleges it registered its copyrights on September 7, 2020 (*id.* ¶ 117), which again is after the filing date of the original Complaint.

Like plaintiff Waidhofer, both plaintiffs McGehee and Ryuu Lavitz, LLC allege they sent copyright infringement notices to others (*id.* ¶¶ 112, 122), but do not and cannot allege that they ever sent any copyright infringement notices to the Advertiser Defendants.

## C. The Advertiser Defendants

The Advertiser Defendants are adult entertainment companies. Plaintiffs generally allege the Advertiser Defendants provided financial and managerial support for Thothub by way of a so-called "affiliate marketing" relationship through CrakRevenue, a Canadian-based Internet advertising platform owned by Crakmedia Inc. *Id.* ¶ 27, 260. According to plaintiffs, through CrakRevenue, the Advertiser Defendants paid commissions to Thothub. *Id.* Alleging that Thothub had increased costs for content hosting and delivery, plaintiffs assert that the Advertiser Defendants' revenue was required for Thothub to operate. *Id.* ¶¶ 252, 259. The only facts alleged for this, however, are a post from an unidentified person called "Teller," who purportedly wrote: "I know ads are a love and I'm sorry but I don't know any other

way." *Id.* ¶¶ 253-55.  From this statement, plaintiffs extrapolate that, absent the financial support of the Advertiser Defendants, Thothub could not have continued to operate. *Id.* ¶ 259.

Plaintiffs allege the Advertiser Defendants' ads appeared on Thothub alongside Thothub's content that allegedly infringed plaintiffs' copyrights and the site's owners received a commission for each lead and/or sale generated through ads on Thothub. *Id.* ¶ 243.  Plaintiffs allege—"on information and belief"—that these commissions were paid "via CrakRevenue in the form of cryptocurrency to prevent detection and inhibit enforcement related to copyright infringement on Thothub." *Id.*

Plaintiffs allege the Advertiser Defendants "knew, or are willfully blind to the fact, that Thothub was a pirate site."  *Id.* ¶ 287.  According to the FAC, this "knowledge is attributable to them because their agent CrakRevenue, acquired such knowledge while working on their behalf," although no facts are alleged in connection with this naked allegation. *Id.*  Plaintiffs elsewhere allege, also in vague, conclusory terms, the Advertiser Defendants had a quid pro quo relationship with Thothub whereby they "supported Thothub not only to drive their own sales, but also as a means of devaluing their competition by helping leak creators' competing paid content from Licensed Sites." *Id.* ¶ 294.[4]

### D.    The Purported RICO Enterprise

According to the FAC, Thothub, by and through its Operators and other members, constitutes an association-in-fact enterprise (which plaintiffs name the "Thothub Enterprise").  *Id.* ¶ 302.  Plaintiffs allege the Thothub Enterprise was a RICO enterprise because its members had a common purpose to steal, copy, use, distribute and profit from copyrighted works from the Licensed Site. *Id.*  They claim

---

[4]    The Complaint speculates for example, without pleading a shred of underlying facts, that "[o]n information and belief, the Advertisers (either directly or via their agents) required that their own stolen content not appear on Thothub as part of their participation in an affiliate relationship with Thothub."  FAC ¶ 295.

Thothub's Operators engaged in acts of racketeering, including criminal copyright infringement.

Plaintiffs allege the Advertiser Defendants conspired with the Operators and CrakRevenue to facilitate the Thothub Enterprise's criminal behavior. *Id.* ¶ 311. Plaintiffs also allege the Advertiser Defendants and CrakRevenue, either directly or via an agent, received income derived from the Thothub Enterprise's pattern of racketeering activity and used the income to acquire or invest in the Thothub Enterprise. *Id.* ¶ 315. Plaintiffs vaguely allege, without any facts, that the Advertiser Defendants paid commissions to Thothub in cryptocurrency to "prevent detection, inhibit enforcement and collections, and minimize paper trails." *Id.* ¶ 317.

**E.     The Causes Of Action**

In the FAC, plaintiffs allege the following five claims against the Advertiser Defendants: violations of RICO under section 1962(d) in Count 2 and under section 1962(a) in Count 3; contributory copyright infringement in Count 5; and common law and statutory unfair competition in Counts 6 and 7.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a court must generally accept all factual allegations as true on a motion to dismiss, the court does not accept all legal conclusions as true. *Id.*; *see also Twombly*, 550 U.S. at 555. Dismissal for failure to state a claim is "warranted based on either a lack of a

cognizable legal theory or the absence of factual support for a cognizable legal theory." *British Broad. Corp. v. Stander*, 2017 WL 1807592, at *4 (C.D. Cal. Mar. 18, 2017) (Olguin, J.) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Moreover, claims sounding in fraud are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). A party alleging fraud must "set forth more than the neutral facts necessary to identify the transaction." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds.*

Where a plaintiff has failed to properly amend its complaint despite the opportunity, as is the case here, a court may dismiss the amended complaint with prejudice. "A district court does not err in denying leave to amend where the amendment would be futile." *Thinket Ink Info. Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

## ARGUMENT

## I. PLAINTIFFS' CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM IN COUNT 5 FAILS

The FAC alleges that a third-party website, thothub.tv, directly infringed plaintiffs' copyrighted works (*see* FAC ¶¶ 1, 319-23), for which the Advertisers purportedly are secondarily liable (*id.* at ¶¶ 12-18, 242-59, 324-29). Plaintiffs' claim of contributory infringement in Count 5 of the FAC against the Advertiser Defendants fails to meet even the most basic pleading requirements for such a claim for several reasons.

### A.   Two Plaintiffs Did Not Have Copyright Registrations Prior To Filing The Original Complaint, Which Requires Dismissal

Plaintiffs McGehee and Ryuu Lavitz, LLC's copyright registrations *post-date* the filing of the complaint by nearly a month, and accordingly their copyright claim must be dismissed for this reason alone.

As the Copyright Act states in plain terms:  "[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a).  As the Supreme Court has held, this statutory requirement is met "not when an application for registration is filed," but only "when the Register has registered a copyright after examining a properly filed application." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com*, LLC, 139 S.Ct. 881, 892 (2019).

A complaint cannot be amended to include subsequently registered works and instead must be dismissed.  *See Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019).  The *Izmo* court relied on *Malibu Media, LLC v. Doe*, which held that "legal proceedings are *instituted* [per § 411(a)] by the origination of formal proceedings, such as the filing of an initial complaint."  2019 WL 1454317, at *2-3 (S.D.N.Y. Apr. 2, 2019) ("[A]ccepting the Amended Complaint as though it 'instituted' a new action for purposes of Section 411(a) will not do . . . .  Indeed, doing so would fly in the face of Section 411(a)'s text . . . ."); *see also Boost Beauty, LLC v. Woo Signatures, LLC*, 2019 WL 2122984, at *2-3 (C.D. Cal. May 14, 2019).

Here, the FAC concedes that the alleged works of plaintiffs McGehee and Ryuu Lavitz, LLC were not registered with the Copyright Office until September 7, 2020. FAC ¶¶ 100, 117.  This registration date is nearly a month *after* the original Complaint was filed on August 3, 2020—the date when legal proceedings were instituted for this matter.  *See Fourth Estate*, 139 S.Ct. at 891 (describing registration as a "prerequisite to suit"); *Izmo*, 2019 WL 2359228, at *2; *Malibu Media*, 2019 WL 1454317, at *3. McGehee and Ryuu Lavitz's copyright claim thus must be dismissed for failure to

have issued copyright registrations as of the time of the filing of this action.  *Malibu Media*, 2019 WL 1454317, at *2; *Izmo*, 2019 WL 2359228, at *2.

**B.     All Three Plaintiffs Fail to Properly Plead Contributory Infringement**

All three Plaintiffs' cause of action for contributory copyright infringement should be dismissed for the independent reason that it fails to state a claim against the Advertiser Defendants.  *See, e.g.*, FAC  ¶¶ 1-3, 16-18, 58-73, 242-59, 287-96, 324-29.

Contributory copyright infringement is a form of secondary liability predicated on conduct which intentionally and materially assists direct copyright infringement. *Perfect 10, Inc. v. Visa Int'l Servs. Ass'n* (*Visa*), 494 F.3d 788, 794-95 (9th Cir. 2007); *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement . . . ."). The Ninth Circuit has synthesized the contributory infringement tests to explain that "one contributorily infringes when he (1) has knowledge of another's infringement[,] and (2) either (a) materially contributes to or (b) induces that infringement." *Visa*, 494 F.3d at 794-95.

Plaintiffs' contributory liability allegations against the Advertiser Defendants are based on the absurd theory that, because the third-party advertising platform CrakRevenue purportedly placed the Advertiser Defendants' ads for their own websites on thothub.tv (FAC  ¶¶ 242-43) the Advertisers "effectively funded Thothub's operations" (*id.* at ¶ 16).  *See also id.* at ¶¶ 324-29.  Such allegations fail as a matter of law to meet the necessary elements for a contributory infringement claim under binding Ninth Circuit precedent because they do not establish the required actual knowledge of the specific acts of purported infringement or a material contribution to that infringement by the Advertisers.

1. **Plaintiffs Once Again Fail To Plead Requisite Knowledge To Support Their Contributory Liability Claim**

"To be liable for contributory copyright infringement, the knowledge required is 'more than a generalized knowledge . . . of the possibility of infringement.'" *ALS Scan, Inc. v. Steadfast Networks, LLC*, 819 Fed. App'x 522, 524 (9th Cir. 2020) (quoting *Luvdarts, LLC v. AT & T Mobility, LLC* (*Luvdarts*), 710 F.3d 1068, 1072 (9th Cir. 2013)). Rather, "'actual knowledge of specific acts of infringement' is required for contributory infringement liability.'" *Luvdarts*, 710 F.3d at 1071 (quoting *A&M Records, Inc. v. Napster, Inc.* (*Napster*), 239 F.3d 1004, 1021 (9th Cir. 2001)).

Plaintiffs attempt to ascribe knowledge to the Advertisers based on a smorgasbord of vague and conclusory theories: (1) the Advertisers' general knowledge of the adult entertainment industry; (2) Thothub's supposed open and notorious infringement; (3) the Advertisers supposed "select[ion]" of Thothub for ads due to its high user traffic; (4) CrakRevenue's purported knowledge of infringement, as attributed to the Advertisers; and (5) willful blindness. FAC ¶¶ 287-96. None of these allegations can survival dismissal under Ninth Circuit precedent.

*First*, plaintiffs allege the Advertiser Defendants have knowledge of Thothub's infringement through their general knowledge of the industry. FAC ¶¶ 288-90. But these are exactly the type of generalized allegations of knowledge that the Ninth Circuit has found unavailing. *See, e.g.*, *ALS Scan, Inc.*, 819 Fed. App'x at 524; *Luvdarts*, 710 F.3d at 1072.

*Second*, the allegedly "open and notorious" infringement by the third-party site thothub.tv fails to plead the requisite knowledge by the Advertiser Defendants as well. *See* FAC ¶ 291. For example, plaintiffs make allegations as to how this third-party site "billed itself," such as its banner stating it was "the home of daily free leaked nudes from the hottest Onlyfans … and [P]atreon models." FAC ¶ 5. But binding Ninth Circuit precedent confirms knowledge is not properly alleged or imputed simply because a system or website permits the exchange of copyright material; actual

knowledge of the specific acts of infringement by the defendant is required. *Luvdarts*, 710 F.3d at 1072 (citing *Napster*, 239 F.3d at 1021); *David v. CBS Interactive, Inc.*, 2012 WL 12884914, at *3 (C.D. Cal. July 13, 2012) (same). Plaintiffs' allegations—that unknown, third-party individuals allegedly infringed plaintiffs' copyrights on the third-party thothub.tv website where a third-party advertising platform, CrakRevenue, had placed the Advertisers' ads—utterly fail to properly allege that the Advertisers themselves had actual knowledge of the specific acts of infringement of plaintiffs' works on thothub.tv.

*Third*, plaintiffs allege "the Advertisers (either directly or through their agents) selected Thothub for advertisements because they knew the type of content that was displayed on the site and that the site generated a high volume of traffic." FAC ¶ 292. This circular allegation, even if assumed true, also fails to plead that the Advertisers had knowledge of the specific infringement of *plaintiffs'* works at issue, as the law requires.[5]

*Fourth*, plaintiffs' attempt to ascribe knowledge to the Advertiser Defendants via a supposed agency relationship with CrakRevenue fails. *See id.* ¶ 296. "To sufficiently plead an agency relationship, a plaintiff must allege facts demonstrating the principal's control over its agent." *Imageline, Inc. v. CafePress.com, Inc.*, 2011 WL 1322525, at *4 (C.D. Cal. Apr. 6, 2011). "The essential elements of an agency relationship are: (1) that the agent or apparent agent holds power to alter legal relations between the principal and third persons and between the principal and himself; (2) that the agent is a fiduciary with respect to matters within the scope of

---

[5]   As part of these knowledge allegations, plaintiffs claim the Advertisers used Thothub to devalue their competition (FAC ¶ 294), and speciously assert the Advertisers' content was not featured on Thothub (*id.* ¶ 295). Neither of these conclusory contentions are supported by any plausible factual allegations, nor in any event do they satisfy the requirement that to establish contributory infringement, a plaintiff must plead facts showing specific knowledge of acts of infringement of plaintiff's works.

the agency; and (3) that the principal has right to control the conduct of the agent with respect to matters entrusted to him." *Id.*

As an initial matter, plaintiffs' attempt to bootstrap knowledge in this fashion fails because they fail to allege facts that CrakRevenue *itself* had sufficient specific knowledge of any underlying direct copyright infringement of plaintiffs' works. Plaintiffs cite, for example, CrakRevenue's promotional blurb that "Affiliate programs and networks have very advanced tools to distinguish legit sources from less than desirable ones. We know." *Id.* ¶ 266. But knowledge that a website permits the exchange of copyrighted material is not enough to plead contributory liability, and there is no allegation that CrakRevenue was aware of specific acts of infringement of plaintiffs' works at issue here. *See Luvdarts*, 710 F.3d at 1072. Thus, even if plaintiffs' agency allegations held water (and they do not), there simply is no properly pled knowledge to impute to the Advertiser Defendants.

Moreover, plaintiffs have not properly alleged facts to establish any agency relationship. Nowhere in the FAC have plaintiffs made any factual allegations (nor could they) regarding CrakRevenue's power to alter legal relationships between the Advertiser Defendants and third parties. Also absent is any factual allegation that CrakRevenue was the Advertiser Defendants' fiduciary, and thus had a duty to "act loyally for the principal's benefit in all matters connected with the agency relationship." *See, e.g., Zhai v. Zhang,* 2018 WL 6137609, at *7 (C.D. Cal. Nov. 5, 2018).

Plaintiffs instead offer only vague, misdirected allegations regarding agency that do not meet federal pleading standards. Plaintiffs, for example, rely on marketing puffery on CrakRevenue's website as supposedly demonstrating a principal/agent relationship. *See generally* FAC ¶ 260-76. They cite a sales pitch on CrakRevenue's website (applicable to all of its customers, of course) that the "Affiliate Manager is acting on behalf of the advertiser or merchant," and that CrakRevenue provides "the ability to unlock deep customization options within the platform." *Id.* at ¶ 267, 270.

None of these marketing claims regarding CrakRevenue's platform, however, describes control sufficient by the Advertiser Defendants here to establish a principal/agent relationship. Indeed, the FAC does not even allege that the Advertiser Defendants used the services CrakRevenue generically describes on its website.

Plaintiffs' FAC also attempts to suggest the Advertisers had the right of control over CrakRevenue because the Advertisers Defendants directed CrakRevenue to cease showing the Advertisers' ads on Thotub once the Advertisers became aware of plaintiff Waidhofer's suit alleging copyright infringement. *See id.* at ¶¶ 281-86. This allegation, too, fails to establish agency as a matter of law. *See, e.g.*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d, 1146, 1173-74 (9th Cir. 2007) (declining to find defendant Google had a right to control allegedly infringing site even though it could cancel an advertising partnership with the sites because the agreement "does not give Google the right to stop direct infringement by third-party websites"); *Visa*, 494 F.3d at 803 ("[T]he mere ability to withdraw a financial 'carrot' does not create the 'stick' of 'right and ability to control' that vicarious infringement requires."); *Kristensen v. Credit Payment Servs. Inc.*, 2015 WL 4477425, at *6 (D. Nev. July 20, 2015) ("Merely having the contractual right to stop receiving benefits of the infringement is not enough; the defendant must have direct legal and practical control over the infringing activity itself.").

Plaintiffs' rote, threadbare recitations of purported legal elements—such as the "Advertisers have the right and ability to direct and control CrakRevenue" and that "CrakRevenue has actual authority to act on behalf of the Advertisers with respect to advertising placements and affiliate marketing services" (FAC ¶ 281)—thus are insufficient to impute CrakRevenue's ostensible knowledge to the Advertiser Defendants for purposes of secondary copyright infringement liability. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557; *see also Imageline*, 2011 WL 1322525, at *4.

Lastly, plaintiffs' oblique, singular allegation of willful blindness likewise fails to satisfy the knowledge requirement for contributory copyright infringement. In the

absence of actual knowledge, a plaintiff can plead willful blindness to specific acts of infringement, if the defendant took active steps to avoid knowledge of infringement. *Luvdarts*, 710 F.3d at 1073. "[T]o allege willful blindness, [plaintiff] must allege that [defendant] (1) subjectively believed that infringement was likely occurring on their networks and that they (2) took deliberate actions to avoid learning about the infringement." *Id.* Here, plaintiffs merely claim that the "Advertisers knew, or are willfully blind to the fact, that Thothub was a pirate site." FAC ¶ 287. This naked parroting of elements is precisely the type of conclusory allegation that fails to meet federal pleading standards. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. Nor is alleging willful blindness to allegedly pirated material on some third-party site *in general* sufficient to meet the willful blindness requirements as set forth by the Ninth Circuit. *See Luvdarts*, 710 F.3d at 1073 (requiring willful blindness of "specific acts"). Plaintiffs' willful blindness theory thus cannot salvage their contributory copyright infringement claim as a matter of law.

## 2. Plaintiffs Fail To Plead A Material Contribution

As an independent basis for dismissal, plaintiffs again fail to allege in the FAC any facts plausibly demonstrating that the Advertiser Defendants materially contributed to the underlying infringing conduct. *See Visa*, 494 F.3d at 796.

In *Perfect 10, Inc. v. Visa Int'l Servs. Ass'n*, the Ninth Circuit held that credit card companies cannot be contributorily liable for processing payments for access to websites that had displayed unauthorized copies of the plaintiff's claimed copyrighted images. *Visa*, 494 F.3d at 796-800. Evaluating the defendants' alleged material contribution, the court explained that "the issue here is reproduction, alteration, display and distribution, which can occur without payment. Even if infringing images were not paid for, there would still be infringement." *Id.* at 796 (citation omitted).

Here, too, the alleged infringement on Thothub still would have occurred even if Advertiser Defendants' ads had not allegedly been placed by CrakRevenue on thothub.tv. In fact, the purported connection here is far more attenuated than in *Visa*,

where the credit card companies themselves had allegedly processed payments of website users for access to infringing content.  *See id.* at 794.  In the instant case, plaintiffs allege that the Advertiser Defendants' ads were placed by an ad platform, CrakRevenue, and merely appeared near alleged infringing images.  *See, e.g.*, FAC ¶ 243.  Under no plausible set of circumstances could the Advertiser Defendants' acts somehow materially contribute to the reproduction, alteration, display and distribution of the infringing images in question.  Nor, as in *Visa*, are the Advertiser Defendants' ads the "'site and facilities' for the infringing activity."  *Visa*, 494 F.3d at 798 (quoting *Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259, 264 (9th Cir. 1996)).

In *Elsevier Ltd. v. Chitika, Inc*., the court reached a similar conclusion in a case where Elsevier sued an advertising platform that had placed ads on an allegedly infringing site.  826 F. Supp. 2d 398, 399-400 (D. Mass 2011).  The court stated that "the materiality standard has not been met" under such circumstances and dismissed the action against the advertising platform.  *Id.* at 406; *see also ALS Scan, Inc. v. Cloudflare, Inc.*, Case No. 2:16-cv-05051-GW (AFMx), ECF No. 53 (C.D. Cal. Oct. 3, 2016) (dismissing claim against advertising broker for contributory infringement).

Here, the claimed material contribution by the Advertiser Defendants is also even more indirect than in *Elsevier* and *ALS Scan*, including because plaintiffs allege that a third-party ad platform placed their ads on thothub.tv.  *See* FAC ¶¶ 242-43; *see also Livnat v. Lavi*, 1998 WL 43221, at *4 (S.D.N.Y. Feb. 2, 1998) ("Merely advertising in an issue which carries an article containing infringing photographs cannot constitute a material contribution to that infringement.").  If the advertising platforms themselves do not engage in the type of conduct considered to materially contribute to infringement, then without question, the advertisers whose ads are placed by those platforms and are even more remote could not materially contribute under the relevant standards, either.

## II.   PLAINTIFFS STILL FAIL TO STATE VIABLE RICO CLAIMS

Plaintiffs no longer plead a RICO enterprise count against the Advertiser Defendants, apparently belatedly recognizing that the claim never had any factual or legal viability.   The two RICO counts plaintiffs attempt to pursue—as set forth in Counts 2 and 3—fail to state a claim and should be dismissed.   Both of these Counts fail because plaintiffs do not comply with Rule 9(b) as required and because plaintiffs lack standing to sue under RICO.   Moreover, plaintiffs have not properly pled violations of either sections 1962(a) or 1962(d).

### A.   Plaintiffs Fail to Allege Facts As Required By Rule 9(b)

As a threshold matter, plaintiffs fail to meet the heightened pleading standards of Rule 9(b), which are necessary for their RICO claims because they sound in fraud. Money laundering claims under section 1962(a), such as those  asserted by plaintiffs in Count 3, require pleading with specificity.   *See Stewart v. Wachowski*, 2004 WL 2980783, at \*4 (C.D. Cal. Sept. 28, 2004) ("Most courts have held that allegations of money laundering must also satisfy Rule 9(b)'s requirements, since money laundering involves an element of fraud.").   Likewise, plaintiffs' Count 2 under section 1962(d) alleges the Advertiser Defendants conspired in a "criminal endeavor" that included "steal[ing]" content from the plaintiffs, avoiding "detection" and "inhibiting enforcement."   FAC ¶¶ 243, 287-296.   Such allegations are subject to the standards of Rule 9(b) pleading as well.   *Id.* at \*5; *see also Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) ("We have applied the particularity requirements of rule 9(b) to RICO claims.") (citations omitted); *Hennessy v. Infinity Ins. Co.*, 358 F. Supp. 3d 1074, 1082 (C.D. Cal. 2019) ("Under binding Ninth Circuit precedent, a RICO claim must satisfy the heightened pleading requirements of Rule 9(b).").

There can be no reasonable dispute that the FAC fails to meet Rule 9(b) requirements.   Plaintiffs do not allege any specific dates, times, incidents or transactions that constitute money laundering, fraud or any other such activity.

1    Worse, plaintiffs frame even these already conclusory allegations as also being merely

2    "on information and belief." *E.g.*, FAC ¶ 13.  Plaintiffs' RICO claims should be

3    dismissed under Rule 9(b).

4            **B.**     **Plaintiffs Lack Standing To Assert Their RICO Claims**

5          As a further, independent basis for dismissal, plaintiffs lack standing to pursue

6    their RICO claims.  RICO "standing" is defined under 18 U.S.C. § 1964(c).  In order

7    to allege RICO standing, a plaintiff "must show: (1) that his alleged harm qualifies as

8    injury to his business or property; and (2) that his harm was 'by reason of' the RICO

9    violation." *Canyon Cty. v. Syngenta Seeds, Inc*., 519 F.3d 969, 972 (9th Cir. 2008).

10   The Supreme Court has held the phrase "by reason of" in 18 U.S.C. § 1964(c)

11   requires, as elements for a civil RICO recovery, *both* proximate and but-for causation.

12   *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992).  "When a court evaluates

13   a RICO claim for proximate causation, the central question it must ask is whether the

14   alleged violation led directly to plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.,*

15   547 U.S. 451, 461 (2006).

16         Here, the Advertiser Defendants' actions did not lead "directly" to plaintiffs'

17   claimed injuries.  As the FAC concedes, the Advertiser Defendants did not post any

18   of the allegedly infringing materials on thothub.tv; did not own or operate the accused

19   thothub.tv website; and did not themselves place the ads on the thothub.tv site.

20   Indeed, in the rare instances the FAC even tries to address plaintiffs' ostensible RICO

21   injury, it makes clear the harm plaintiffs allege is indirect and remote at best with

22   regard to the Advertiser Defendants.  For example, Count 3 of the FAC alleges the

23   Advertiser Defendants' "payments" to the Thothub Enterprise "impaired" the

24   plaintiffs' "efforts to enforce their legal rights".  FAC ¶ 318.  Elsewhere, plaintiffs

25   assert even more remotely that the Advertiser Defendants supposedly "devalu[ed]

26   their competition by helping leak creators' competing paid content from Licensed

27   Sites." *Id.* ¶ 294.

28

As they show on their face, plaintiffs' allegations are far too strained, speculative and indirect as a matter of law to support RICO standing.  As both Supreme Court and Ninth Circuit precedent hold, when a defendant's purported role is removed from the conduct that actually caused plaintiffs' injury, a RICO claim cannot be sustained.  *Holmes*, 503 U.S. at 276 (holding in determining proximate cause, court should consider whether it will need to "ascertain damages caused by some remote action" and finding alleged conspiracy to manipulate did not proximately cause the injury claimed).  *See also Hemi Group LLC. v. City of New York*, 559 U.S. 1, 15 (2010) (rejecting plaintiff's RICO claim on the grounds that "multiple steps . . . separated the alleged fraud from the asserted injury"); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1148 (9th Cir. 2008) (no RICO standing where "speculative and complicated analysis" would be required to determine what portion of plaintiffs' injuries attributable to defendant's conduct); *Oki Semiconductor Co v. Wells Fargo Bank*, Nat. Ass'n, 298 F.3d 768, 774 (9th Cir. 2002).

### C.    Plaintiffs Fail To Allege Any Proper RICO Claim On The Merits

Independently, plaintiffs' RICO claims should be dismissed for failure to state a substantive violation of either section 1962(a) or section 1962(d).

### 1.    Plaintiffs State No Substantive Violation of § 1962(a)

Plaintiffs' allegations do not satisfy a § 1962(a) claim.  Section 1962(a) prohibits a person who receives "any income derived, directly or indirectly, from a pattern of racketeering activity" from "us[ing] or invest[ing], directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise" engaged in interstate commerce.

Plaintiffs do not identify an injury that is "separate and distinct" from the economic loss they claim flowed from the predicate acts of copyright infringement themselves, as required by the statute.  Specifically, plaintiffs allege that the Advertisers and CrakRevenue, "either directly or via an agent, received income

derived from Thothub's Enterprise's pattern of racketeering activity and used the income to acquire or invest in the Thothub Enterprise." FAC ¶ 315. Plaintiffs allege that "Operators committed volitional acts by, among other things, selecting works of particular creators from the Licensed Sites to be infringed." *Id.* ¶ 321. "As a result of these infringements, plaintiffs have suffered actual damages, including lost subscription fees and royalties." *Id.* ¶ 323.

A "plaintiff seeking civil damages for violation of [§] 1962(a) must allege facts tending to show that he or she was directly injured by the use or investment of racketeering income." *Sybersound Records*, 517 F.3d at 1149 (quoting *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992)). The "investment" of racketeering income must be the proximate cause of the injury. *Id.* It is not enough to allege that the reinvestment of proceeds from the alleged racketeering activity went back into the enterprise to continue the racketeering activity. *Id.* "Otherwise, almost every pattern of racketeering activity by a corporation would be actionable under § 1962(a), and the distinction between § 1962(a) and § 1962(c) would become meaningless." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 920 (C.D. Cal. 2011) (internal citations and quotation marks omitted).

Here, plaintiffs admit their purported injuries flow directly from the same claimed acts of criminal copyright infringement. Because plaintiffs do not allege they suffered independently and distinctly from the reinvestment of the enterprise's income, Count 3 under section 1962(a) should be dismissed.

### 2. Plaintiffs State No Substantive Violation of § 1962(d)

Count 2 of the FAC alleges a RICO conspiracy against the Advertiser Defendants, among others, under section 1962(d). To establish a violation of section 1962(d), "Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2006)

(citation omitted).  Under § 1962(d), while a defendant need not have personally committed a predicate act, or even an overt act in furtherance of the RICO conspiracy, the defendant must be "aware of the essential nature and scope of the enterprise and intended to participate in it."  *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (citation omitted).

The FAC makes no factual allegations that the Advertiser Defendants knowingly agreed to participate in a RICO conspiracy with CrackRevenue or Thothub or that they otherwise had knowledge of the essential nature and scope of the alleged enterprise, directly or through principles of agency.  For the reasons stated previously, plaintiffs' allegations that CrakRevenue is an agent of the Advertiser Defendants fail as a matter of law.  Indeed, to the extent plaintiffs allege the Advertiser Defendants should be held liable for the actions of CrakRevenue insofar as CrakRevenue was acting as the Advertiser's purported agent, plaintiffs' claim cannot be sustained under the law.  Ninth Circuit case law holds that if CrackRevenue is not an employee of the Advertisers Defendants, then it cannot be said the Advertisers' stood to benefit from CrakRevenue's purported relationship with Thothub.  *See Oki Semiconductor Co.* 298 F.3d at 777 (concluding Wells Fargo "reaps no benefits from non-employee RICO conspirators, and it cannot monitor their activities to ensure compliance with the law. To extend an employer's liability to cover the acts of non-employee RICO conspirators would demolish the equitable balance the doctrine of respondeat superior seeks to achieve.").  Thus, the law plainly rejects applying the doctrine of respondeat superior in this instance.

Furthermore, plaintiffs here fail to allege facts that the Advertiser Defendants agreed to a substantive violation of RICO under § 1962(a), or that they engaged in any underlying predicate acts, in this case, criminal copyright infringement under 17 U.S.C. § 506(a)(1).  *See* FAC ¶ 313.  Without a substantive violation, plaintiffs' claims cannot be sustained.  *Howard*, 208 F.3d 741, 751.

Finally, participation in ordinary business transactions with a third-party marketer such as CrakRevenue does not rise to the level of a RICO conspiracy. In *Gomez v. Guthy-Renker, LLC*, for example, the court granted a motion to dismiss on the grounds that plaintiff "has done no more than describe the ordinary operation of a garden-variety marketing arrangement" and that "that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client." 2015 WL 4270042, at *8-11 (C.D. Cal. July 13, 2015). Here, when stripped of its conclusory language and rhetoric as required by federal pleading standards, the FAC provides no facts to indicate that the ads involved here were anything other than ordinary, common marketing arrangements for advertising on the Internet. *Id.*; *see also Chagby v. Target Corp.*, 2008 WL 5686105, at *2 (C.D. Cal. Oct. 27, 2008) ("Plaintiff alleges no facts that could lead someone to believe that Defendants' relationship with its advertising agency was anything more than a typical client of the advertising agency."), *aff'd*, 358 F. App'x 805 (9th Cir. 2009); *Jubelirer v. MasterCard Int'l, Inc.,* 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999) ("Accepting plaintiff's allegations as sufficient to allege a RICO enterprise would lead to the absurd conclusion that each of the many million combinations of merchant, MasterCard and lender is a RICO enterprise."). This ground, too, requires dismissal.

For all of these reasons, plaintiffs' RICO claims should be dismissed.

## III.   THE FAC FAILS TO STATE AN UNFAIR COMPETITION CLAIM

Plaintiffs allege unfair competition both under the common law and under California's Business & Professions Code section 17200 *et seq*. in Counts 6 and 7, respectively. Both claims should be dismissed.

At the outset, these claims are little more than a regurgitation of the same legally erroneous and factually deficient allegations asserted in plaintiffs' other causes of action. They accordingly fail for the same reasons.

Moreover, California law precludes unfair competition liability under secondary liability and aiding and abetting theories. *Visa*, 494 F.3d at 808. Rather, a

defendant's liability must be based on its own "personal participation in the unlawful practices and unbridled control over the practices that are found to violate section 17200 or 17500." *Emery v. Visa Int'l Serv. Ass'n*, 116 Cal. Rptr. 2d 25, 33 (Cal. Ct. App. 2002) (citing *People v. Toomey,* 203 Cal. Rptr. 642, 651 (Cal. Ct. App. 1984) (internal quotation marks omitted)).   Plaintiffs assert only secondary theories of liability and on this ground, as well, their claims fail as a matter of law.  Indeed, flying directly in the face of controlling precedent, plaintiffs even improperly seek damages. *Korea Supply Co. v. Lockheed Martin Corp.,* 63 P.3d 937, 943 (Cal. 2003) (citation omitted) ("A UCL action is equitable in nature; damages cannot be recovered.").

Lastly, plaintiffs' unfair competition claims are preempted by the Copyright Act. The Copyright Act grants rights "to reproduce the copyrighted work in copies," "to prepare derivative works based upon the copyrighted work," "to distribute copies . . . to the public," and "to display the copyrighted work publicly."  17 U.S.C. § 106. Thus, plaintiffs' state law unfair competition claims assert rights equivalent to those protected by the federal copyright laws and must be dismissed as a result.  *See Kodadek v. MTV Networks, Inc.,* 152 F.3d 1209, 1213 (9th Cir. 1998).

## CONCLUSION

For the foregoing reasons, plaintiffs' claims as to the Advertiser Defendants in the First Amended Complaint should be dismissed.

DATED:  November 18, 2020

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____

Michael T. Zeller
Attorney for Defendants Multi Media, LLC and Sonesta Technologies, Inc. (f/k/a BangBros.com Inc.)