KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
VIRGINIA GRACE DAVIS (State Bar No. 336732)
grace.davisfisher@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:  (415) 512-4000
Facsimile:  (415) 512-4077

BETHANY W. KRISTOVICH (State Bar No. 241891)
bethany.kristovich@mto.com
BENJAMIN G. BAROKH (State Bar No. 318629)
benjamin.barokh@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Attorneys for Defendant
UNIVERSAL CITY STUDIOS LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONOR WOULFE and PETER MICHAEL ROSZA,<br><br>Plaintiffs,<br><br>vs.<br><br>UNIVERSAL CITY STUDIOS LLC, d.b.a., UNIVERSAL PICTURES,<br><br>Defendant. | Case No. 2:22-cv-00459-SVW-AGR<br><br>**DECLARATION OF KELLY M. KLAUS IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS UNDER CAL. CIV. PROC. CODE § 425.16**<br><br>**Filed Concurrently:** Notice of Motion and Motion; [Proposed] Order<br><br>Date:    February 27, 2023<br>Time:    1:30 p.m.<br>Judge:   Hon. Stephen V. Wilson<br>Courtroom:  10A |

## DECLARATION OF KELLY M. KLAUS

I, Kelly M. Klaus, hereby declare:

1. I am a lawyer in the law firm of Munger, Tolles & Olson LLP ("MTO"), counsel for Defendant Universal City Studios LLC ("Universal" or "Defendant") in the above-captioned matter. I am admitted to practice before all of the Federal and State courts in the State of California, including the United States District Court for the Central District of California. I submit this declaration in support of Universal's Motion for Attorney's Fees and Costs under Cal. Civ. Proc. Code § 425.16. The facts set forth in this declaration are based on my personal knowledge. If called as a witness, I could and would testify competently to the contents of this declaration.

2. MTO has served as counsel for Universal from the inception of this litigation. In this Motion, Universal seeks a total of $200,298.25 in fees for 260.55 hours of attorney and staff time, and $152.28 in costs. With the Reply, Universal will submit a supplemental declaration of additional fees and costs incurred in preparing this Motion and responding to Plaintiffs' Opposition.

**MTO's Experience**

3. MTO maintains active practices in litigation and corporate matters. The firm's clients include many of the largest corporations in California and the nation, as well as other law firms and international incorporations. MTO has earned a reputation for handling particularly complicated litigation matters. For example, in July 2022, we were ranked number one on the *American Lawyer's* "A-List," a ranking of the top 20 of the nation's most elite law firms. MTO also has well-reputed consumer class action and entertainment practices. Chambers and Partners ranks our practice group as Band 1 in Media & Entertainment: Litigation. In 2020, *Law360* named the group as one of the Media & Entertainment Groups of the Year.

**MTO's Team of Lawyers and Staff**

4. Universal seeks compensation for the work of four attorneys who worked on this matter. In order of seniority, they are myself, Bethany W. Kristovich, Grace Davis Fisher (whose name appears as Virginia Grace Davis on pleadings), and Benjamin G. Barokh. True and correct copies of these attorneys' biographies are attached hereto as **Exhibit A.** Universal does not seek compensation for several other attorneys who worked on this matter, including some who consulted on the anti-SLAPP motions but have not formally appeared in this matter.

5. Universal also seeks compensation for the work of three paralegals, Jennifer Galindo, Martha Larraondo-Klipper, and Nneka Umoh, who worked on this matter. These paralegals have substantial experience in complex commercial litigation.

6. I am a partner with MTO and serve as lead trial counsel in this case. I received my J.D., Order of the Coif, in 1992 from Stanford Law School. Following graduation, I clerked for Judge William H. Orrick, Jr. of the United States District Court for the Central District of California; Judge Pamela Ann Rymer of the United State Court of Appeals for the Ninth Circuit; and Justice Anthony M. Kennedy of the Supreme Court of the United States. I joined MTO in 1996. I specialize in complex litigation and have extensive experience representing media and entertainment clients. In addition to many other clients in the media, entertainment, and other industries, I have previously represented Universal and related entities in other matters. I have extensive experience in litigating motions under California Code of Civil Procedure § 425.16 (the "anti-SLAPP statute"), the First Amendment, and consumer class actions.

7. In every case I manage, I take steps to ensure that attorneys and staff perform their work efficiently and that efforts are not duplicated. I also expect the same of myself, and to the best of my ability perform my work efficiently and seek

to avoid duplicative efforts. This case was no different. In consultation with our clients, I have been responsible for deciding how this case should be staffed. For this case, I determined that the best model on a pre-trial basis would be the team of lawyers mentioned above, with the understanding that additional lawyers would be needed if the matter was appealed or proceeded to trial.

8.  For the majority of time this case has been pending, the core team of MTO lawyers managed and performed the day-to-day work on this case. This yielded efficiencies in communication, avoided duplication of efforts, and effectively and efficiently responded to actions by Plaintiffs that made the litigation of the anti-SLAPP motion complicated. For example, Ms. Davis Fisher and Mr. Barokh both spent significant time researching and drafting the anti-SLAPP briefing, but for the sake of efficiency their tasks were split by subject matter. We also minimized duplicative work on Universal's two anti-SLAPP motions by incorporating many of our arguments from the first anti-SLAPP motion into the second. *Compare* Dkt. 31 *with* Dkt. 44.

**MTO Invoices to Universal**

9.  Universal agreed at the beginning of the representation that it would pay MTO for the services of its attorneys, paralegals, and other litigation support professionals on an hourly basis. That agreement has remained in place throughout the representation.

10.  The MTO attorneys and paralegals who worked on this representation were instructed to, and to the best of my knowledge and belief did, follow MTO's timekeeping and billing policies. As a partner at MTO, I am familiar with those policies. Those policies require every timekeeper at the firm to keep careful records of the time spent working on matters, including this matter. Specifically, the policies require each timekeeper to maintain a log of time entries containing a description of the task performed, the amount of time worked by task (in six minute increments), and the "task code" applicable to the task performed.

11. MTO invoiced Universal monthly for its work. I oversaw preparation of those invoices. Each month a detailed billing report was generated from MTO's computerized time keeping system with time entries entered by MTO attorneys and paralegals the preceding month. I reviewed the entries to ensure that the recorded time related to MTO's representation of Universal was reasonable. I exercised judgment in that review to exclude or write down time entries as I believed fair and appropriate. MTO's invoices to Universal were net of these exclusions and write downs.

12. Universal has paid MTO's invoices for fees and expenses incurred through the end of September 2022. We have sent or will soon be sending invoices to Universal for fees and expenses incurred through December 2022, which I anticipate will be paid by Universal in the near future. With the Reply, Universal will submit a supplemental declaration of additional fees incurred in preparing this Motion.

**MTO Hourly Rates**

13. MTO sets hourly rates for its timekeepers based on, among other considerations, information concerning the prevailing market rates for similar services offered by lawyers and paralegals of reasonably comparable skill and experience who practice in other large law firms with national practices. Rates reflect the complexity and difficulty of the matters MTO is retained to handle.

14. Each year I and other lawyers in the firm are involved in setting our firm's billing rates. As part of that process, our firm compares our rates to information that publicly available sources (e.g., public filings or other published information) show about the rates charged by our peer firms in California. Based on this knowledge and experience, I believe that the rates MTO charged Universal in this matter are reasonable and on par with (if not generally lower than) prevailing market rates for attorneys and support staff at comparable law firms.

15. MTO's 2022 billing rates, described further below, are justified based upon attorneys' and staff members' background, experience, and seniority. As reflected on **Exhibit A**, each attorney on our team has excellent academic credentials and significant professional experience. Each of the paralegals who worked on this case also has substantial experience in complex commercial litigation.

16. The rates that MTO charged in this case were lower than our market rates because we provided Universal, a longstanding client of the firm, with a discount pursuant to negotiated agreement. Below is a chart comparing the market and discounted rates in 2022 for the attorneys and paralegals working on this matter:

| Timekeeper | Market Rate (2022) | Discounted Rate for this Matter (2022) |
|---|---|---|
| Kelly M. Klaus | $1,605 | $1,158 |
| Bethany W. Kristovich | $1,370 | $988 |
| Grace Davis Fisher | $1,065 | $676 |
| Benjamin G. Barokh | $1,005 | $676 |
| Jennifer Galindo | $520 | $374 |
| Martha Larraondo-Klipper | $520 | $374 |
| Nneka Umoh | $340 | $245 |

17. The rates MTO charged in this case are comparable to MTO rates that have been approved by courts in other cases. For example, Judge Fahey of the Los Angeles Superior Court awarded fees to MTO's client in *Monster LLC v. Beats Electronics LLC*, Case No. BC595235 (L.A. Super. Ct. Oct. 12, 2017). I have attached, as **Exhibit B**, Judge Fahey's fee order in that case, in which he found that the hourly rates charged by six MTO attorneys were reasonable. Judge Fahey opined that "[t]his Court is very familiar with the hourly rates of attorneys in Los Angeles, including those of the most experienced business litigation firms such as Munger Tolles. The rates charged here are well within the current range of those in

similarly situated firms for litigation of this nature." *Id.* at 1-2. Below is a chart setting forth the 2016 hourly rates that Judge Fahey found reasonable in *Monster LLC*. These rates are also set forth in **Exhibit C**, the relevant pages from a declaration filed in that case by an MTO attorney which set forth the hourly rates for attorneys in that case.

| MTO Rates Approved in *Monster LLC*[1] | | |
|---|---|---|
| **MTO Attorney** | **J.D. Year** | **2016 Rate** |
| Ron Olson | 1966 | $1,245 |
| Mark Epstein | 1985 | $995 |
| Rob Dell Angelo | 1992 | $885 |
| Kevin Masuda | 1992 | $875 |
| Sean Eskovitz | 1995 | $910 |
| Dan Levin | 2002 | $750 |
| Eric Tung | 2009 | $660 |

18. In 2017, Judge Pregerson of the U.S. District Court for the Central District of California granted an award of attorney's fees to MTO's client, finding that MTO's billing rates of $530 (for an associate, J.D. 2013) and $865 (for a partner, J.D. 1996) were reasonable. *See Amusement Art, LLC v. Life is Beautiful, LLC*, Case No. 2-14-cv-08290-DDP-JPR, 2017 WL 2259672, at *5-6 (C.D. Cal. May 23, 2017), *vacated in part on other grounds*, 768 Fed. App'x 683 (9th Cir. 2019).

19. In my opinion, the hourly rates for the MTO attorneys and support staff in this case are reasonable in light of each individual's experience and skill level.

---

[1] *See* **Exhibits B-C**.

**MTO Hours Expended**

20. Under my direction and supervision, Mr. Barokh compiled the time and fee entries in this matter from the contemporaneous records included in the bills sent to Universal. After reviewing the compilation in the form of a Microsoft Excel spreadsheet, Mr. Barokh took the following steps with the assistance of our document processing team, and under my supervision:

   a. Mr. Barokh removed all entries for work done after the September 12, 2022 hearing, including entries related to the supplemental briefing on First Amendment issues.

   b. Mr. Barokh removed all entries submitted by attorneys and staff other than the four attorneys and three paralegals for whom Universal seeks compensation.

   c. Mr. Barokh, in conjunction with Ms. Galindo, deleted any remaining entries to the extent they reflected work done on tasks unrelated to the anti-SLAPP motions.

21. Attached as **Exhibit D** is the detailed spreadsheet Mr. Barokh produced using the methodology just described, which I have also reviewed. Subject to the supplemental declaration that Universal will file with its Reply of additional fees incurred in preparing this Motion and responding to Plaintiffs' Opposition, this spreadsheet describes the work for which Universal seeks fees.

22. The spreadsheet includes time spent on tasks directly related to the two anti-SLAPP motions Universal filed in this case, including, for example, the accompanying requests for judicial notice and a notice of supplemental authority related to the applicability of the anti-SLAPP statute. *See, e.g.*, Dkts. 31-33, 44-46, 57-59. The spreadsheet also includes time spent on tasks related to Universal's Rule 12 motions to dismiss, which were filed jointly with the anti-SLAPP motions, and the arguments for which overlapped with the arguments for anti-SLAPP relief. *See, e.g.*, Dkt. 83 at 6; Dkts. 31, 44. As noted, however, the spreadsheet does not include

all the time billed to Universal in this matter. Specifically, it excludes all time spent on non-SLAPP related activity. For example, the spreadsheet does not include time relating to general case management; discovery; or any analyses of issues unrelated the anti-SLAPP motion (e.g., class certification).

23. To account for Universal's partial success striking Plaintiffs' claims, Universal seeks recovery for only half of the time incurred in litigating the anti-SLAPP motions. A summary of total fees sought is attached as **Exhibit E** to this declaration.

24. Based on my more than 20 years of experience litigating entertainment-related and other cases, the number of attorneys and support staff assigned this case was reasonable, necessary to meet the needs of the case, and consistent with the staffing by MTO and other peer firms in comparable cases. Indeed, based on my experience, the number of lawyers on the MTO team in this case was lower than many if not all our peer firms would have assigned to a comparable case. This case, and in particular the anti-SLAPP motions, involved a substantial amount of work. The amount of work was increased because Plaintiffs employed an aggressive litigation posture. These factors are described in greater detail in the accompanying memorandum of points and authorities. In light of all these factors, I believe it was reasonable for MTO to utilize the number of lawyers we did in connection with this case.

25. The number of hours the MTO attorneys and paralegals worked on Universal's anti-SLAPP motions is also reasonable based on my experience. Those motions involved the litigation of numerous complex legal and factual issues, as the Court recognized. *See* Dkt. 83 at 1 (recognizing that this case presents "a novel application of false advertising laws to movie trailers"). Litigating these matters required significant work, which is reflected in the hours that MTO performed.

**Costs**

26. Universal also seeks recovery of the out-of-pocket costs it has incurred in connection with the anti-SLAPP motions and this Motion. Attached as **Exhibit F** is a true and correct spreadsheet of costs directly related to the two anti-SLAPP motions Universal filed. As with fees, to account for Universal's partial success striking Plaintiffs' claims, Universal seeks recovery for only half of the costs incurred in litigating the anti-SLAPP motions.

27. On Reply, Universal will submit a supplemental declaration of additional costs incurred in preparing this Motion and responding to Plaintiffs' Opposition.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I executed this declaration this 17th day of January 2023, at San Francisco, California.

/s/ Kelly M. Klaus
Kelly M. Klaus