UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DENIECE WAIDHOFER, an
individual; MARGARET MCGEHEE,
an individual; and RYUU LAVITZ,
LLC, a Massachusetts limited liability
company,

    Plaintiffs,

 v.

CLOUDFLARE, INC., a Delaware
corporation; BANGBROS.COM, INC.,
a Florida corporation; SONESTA
TECHNOLOGIES, INC., a Florida
corporation; MULTI MEDIA LLC, a
California limited liability company;
CRAKMEDIA INC., a Canadian
corporation; and JOHN DOES 1-21, as-
yet unidentified individuals,

    Defendants.

Case No. 2:20-cv-06979-FMO-AS

**PLAINTIFFS' RESPONSE TO
DEFENDANT CLOUDFLARE'S
MOTION TO DISMISS (DKT 84)**

Date Filed: Nov. 18, 2020
Hearing: Jan. 21, 2021
Time:  10:00 AM
Courtroom: 6D

Judge: Hon. Fernando Olguin

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................... 1

LEGAL STANDARD ............................................................................................... 2

PROCEDURAL ISSUES .......................................................................................... 2

MERITS ISSUES ...................................................................................................... 5

  I. The Complaint Plausibly Alleges Direct Infringement ...................................... 5

  II. The Complaint Plausibly Alleges Contributory Infringement. ....................... 14

CONCLUSION ........................................................................................................ 21

# TABLE OF AUTHORITIES

Page(s)

## CASE LAW

*A. Farber & Partners, Inc. v. Garber,*
  234 F.R.D. 186 (C.D. Cal. 2006) ................................................................ 4

*A&M Records, Inc. v. Napster, Inc.,*
  239 F.3d 1004 (9th Cir. 2001) .................................................... 5, 16, 19, 21

*ALS Scan, Inc. v. Cloudflare, Inc.,*
  No. 2:16-cv-05051, Dkt 60 (C.D. Cal. Oct. 24, 2016) ........................ *passim*

*American Broadcasting Cos., Inc. v. Aereo, Inc.,*
  573 U.S. 431 (2014) ................................................................................... 6

*Arista Records LLC v. Usenet.com, Inc.,*
  633 F. Supp. 2d 124 (S.D.N.Y. 2009).................................................. 12–13

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................... 2

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................... 2

*BWP Media USA, Inc. v. Polyvore, Inc.,*
  922 F.3d 42 (2d Cir. 2019) ..................................................................... 6–9

*Capitol Records, LLC v. ReDigi Inc.,*
  934 F. Supp. 2d 640 (S.D.N.Y. 2013)...................................................... 12

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.,*
  536 F.3d 121 (2d Cir. 2008) ............................................................ 6, 9, 13

*Cobbler Nevada, LLC v. Gonzales,*
  901 F.3d 1142 (9th Cir. 2018) ................................................................. 17

*Columbia Pictures Industries, Inc. v. Fung,*
  710 F.3d 1020 (9th Cir. 2013) ................................................................. 13

*CoStar Grp., Inc. v. LoopNet, Inc.,*
  373 F.3d 544 (4th Cir. 2004) ..................................................................... 7

*DCD Programs, Ltd. v. Leighton,*
    833 F.2d 183 (9th Cir. 1987) .......................................................... 4

*DISH Network LLC v. Jadoo TV, Inc.,*
    2020 WL 5816579 (N.D. Cal. Sept. 30, 2020)................................ 2, 7, 9, 11

*Ellison v. Robertson,*
    357 F.3d 1072 (9th Cir. 2004) ...................................................... 16

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC,*
    844 F.3d 79 (2d Cir. 2016) ........................................................ 7, 9

*Fox Broadcasting Co., Inc. v. Dish Network LLC,*
    747 F.3d 1060 (9th Cir. 2014) ................................................... 8, 13

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,*
    443 F.2d 1159 (2d Cir. 1971) ....................................................... 15

*Hellon & Assocs., Inc. v. Phoenix Resort Corp.,*
    958 F.2d 29 (9th Cir. 1992) .......................................................... 3

*In re Aimster Copyright Litig.,*
    334 F.3d 643 (7th Cir. 2003) ...................................................... 14

*In re Cathode Ray Tube (CRT) Antitrust Litigation,*
    2014 WL 1305040 (N.D. Cal. Mar. 28, 2014) ............................... 3

*Louis Vuitton Malletier, S.A. v. Akonic Solutions, Inc.,*
    658 F.3d 936 (9th Cir. 2011) ...................................................... 16

*Matthews Metal Prods., Inc. v. RBM Precision Metal Prods., Inc.,*
    186 F.R.D. 581 (N.D. Cal. 1999).................................................. 3

*MGM, Inc. v. Grokster, Ltd.,*
    545 U.S. 913 (2005) ................................................................. 20

*Mon Cheri Bridals, LLC v. Cloudflare, Inc.,*
    2019 WL 3245740 (N.D. Cal. July 11, 2019) ................................ 17, 21, 22

*Parker v. Google, Inc.,*
    422 F. Supp. 2d 492 (E.D. Pa. 2006) .......................................... 10

*Peguese v. PNC Bank, N.A.,*
    306 F.R.D. 540 (E.D. Mich. 2015) ................................................................. 3

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007) ........................................................... *passim*

*Perfect 10, Inc. v. Giganews, Inc.,*
    2014 WL 8628034 (C.D. Cal. Nov. 14, 2014) ............................................. 6

*Perfect 10, Inc. v. Giganews, Inc.,*
    847 F.3d 657 (9th Cir. 2017) ..................................................................... 6–7

*Perfect 10, Inc. v. Visa International Service Association,*
    494 F.3d 788 (9th Cir. 2011) ...................................................................... 16

*Raisly v. United States of America*
    2016 WL 1117944 (D.N.J. Mar. 22, 2016) ................................................ 19

*Rel. Tech. Center v. Netcom On-Line Commc'n Servs., Inc.,*
    907 F. Supp. 1361 (N.D. Cal. 1995) ................................................ 6, 10, 16

*SOS, Inc. v. Payday, Inc.,*
    886 F.2d 1081 (9th Cir. 1989) ..................................................................... 5

*Stinson v. BNSF Railway Co.,*
    2014 WL 12843826 (C.D. Cal. Nov. 24, 2014) .......................................... 4

*United States v. Reiten,*
    313 F.2d 673 (9th Cir. 1963) ....................................................................... 4

*VHT Inc. v. Zillow Group, Inc.,*
    918 F.3d 723 (9th Cir. 2019) ...................................................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# RULES

Fed. R. Civ. P. 1 ................................................................................... 4

Fed. R. Civ. P. 15(a)(2) ......................................................................... 4

# OTHER AUTHORITIES

17 U.S.C. § 106 ..................................................................................... 5

S. Rep. No. 94-473 (1975) ..................................................................... 6

S. Rep. 105-190 (1998) ....................................................................... 14

H.R. Rep. 105-551(II) (1998) ............................................................. 14

Dobbs, THE LAW OF TORTS § 1 (2000) ........................................... 13

Keeton *et al.*, PROSSER & KEETON ON TORTS § 42
(5th ed. 1984) ......................................................................................... 6

Robert C. Denicola, "Volition and Copyright Infringement," 37 CARDOZO L.
REV. 1259 (2016) ................................................................................... 6

PLAINTIFFS' RESPONSE TO CLOUDFLARE'S MOTION TO DISMISS
*Waidhofer et al. v. Cloudflare, Inc., et al.*, Case No. 2:20-cv-06979

Plaintiffs Deniece Waidhofer ("Waidhofer"), Margaret McGehee ("McGehee"), and Ryuu Lavitz LLC ("Lavitz") (collectively, "Plaintiffs") submit this response to the motion to dismiss (Dkt 84) the First Amended Complaint (the "Complaint") filed by Defendant Cloudflare, Inc. ("Cloudflare").[1]

## **INTRODUCTION**

Thothub was a pirate site devoted to illegally copying works published by OnlyFans.com and Patreon.com creators on the creators' paid subscriber accounts. At its peak, Thothub received about one million visitors each day and had over 1.1 million "members." Cloudflare is an Internet service provider (ISP) that enabled Thothub's distribution of infringing works to millions of users. As a service provider for Thothub, Cloudflare distributed copies of Plaintiffs' works to Thothub users across the United States, stored copies for extended periods on its servers, and even made selection decisions about works to copy. Cloudflare also largely ignored numerous infringement notices from Plaintiffs and other complainants, while continuing to provide infringement-enabling services to Thothub.

Cloudflare easily could have limited Thothub's infringement simply by terminating service, or by not delivering URLs that it had already been notified contained infringing content. But Cloudflare stood behind Thothub instead, as it does regularly for pirates everywhere. Indeed, Cloudflare has made a cottage industry out of indulging pirates. Not by accident, according to a recent European Commission report, 62% of the world's top 500 infringing domains, about 40% of all pirate sites, and about 44.7% of all copyright-infringing URLs reported to Google in 2019, were using Cloudflare's services. The Complaint identifies nearly two dozen other pirate sites—all Cloudflare clients—that are Thothub copycats, including one called Thothub.ru that is nearly a direct clone. Cloudflare

---

[1] Cloudflare's memorandum in support of its motion is referenced herein as "Cl. Br."

distinguishes itself from more scrupulous competitors by making clear to pirates through words and actions that it is a willing facilitator of piracy.

As such, the Complaint well pleads claims of direct and contributory infringement. Regarding direct infringement, the Complaint alleges that Cloudflare made copies other than at the users' direction, selected works to copy or not copy, and continued copying works after notice of infringement—all showing volitional conduct under Ninth Circuit law. *Cf. DISH Network LLC v. Jadoo TV, Inc.*, 2020 WL 5816579, *6 (N.D. Cal. Sept. 30, 2020). Regarding contributory infringement, Cloudflare repeats the same arguments this Court rejected in *ALS Scan, Inc. v. Cloudflare, Inc.*, No. 2:16-cv-05051, Dkt 60 (C.D. Cal. Oct. 24, 2016). As in *ALS Scan*, Cloudflare's CDN and security services materially expanded the scale of infringement on Thothub, and Cloudflare concedes that the knowledge requirement is adequately pled. Thus, here too, Cloudflare's motion should be denied.

## LEGAL STANDARDS

A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Assessing plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## PROCEDURAL ISSUES

Plaintiff Waidhofer filed the original complaint on August 3, 2020. (Dkt 1). The original complaint asserted claims on behalf of Waidhofer alone against

Cloudflare, Inc.; BangBros, Inc.; Multi Media, LLC; Thothub.tv; and certain John Doe operators of Thothub. On October 14, 2020, Cloudflare and the Advertiser Defendants (BangBros and MultiMedia) filed motions to dismiss. (Dkts 57 & 59). On November 4, 2020, Waidhofer amended the complaint once as a matter of right, pursuant to Rule 15(a)(1)(B), within twenty-one (21) days of the Defendants' filing of the motions to dismiss. (*See* Dkt 68). Among other changes, the amended complaint added two additional plaintiffs (McGehee and Lavitz) and two additional defendants (Sonesta Technologies, Inc. and CrakMedia Inc.) and removed Thothub.tv (now believed not to be a legal person) as a defendant.

Cloudflare contends, in a footnote only (Cl. Br. at 2, n.4), that the amended complaint required leave of court under Rule 15(d). Cloudflare cites no authority that restricts allegations permitted in a Rule 15(a)(1) amendment of right. And courts typically find that amendments that otherwise require leave do not when made under Rule 15(a)(1). *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 1305040, *4 (N.D. Cal. Mar. 28, 2014) (holding that Rule 15(a)(1), not Rule 21, governs joinder when done through amendment as a matter of right); *Peguese v. PNC Bank, N.A.*, 306 F.R.D. 540, 545–46 (E.D. Mich. 2015) (collecting cases). This interpretation is consistent with the principle that specific rules control over more general ones. *See Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992); *cf. Matthews Metal Prods., Inc. v. RBM Precision Metal Prods., Inc.*, 186 F.R.D. 581, 583 (N.D. Cal. 1999) (holding that Rule 21 "can correctly be viewed as a general provision dealing with adding and dropping parties, while Rule 15(a) is a more specific provision dealing with the particular means by which a party may do so by an amendment to the pleadings"). Here, because the amendment was made as a matter of right under Rule 15(a)(1), Plaintiffs did not need to seek leave.

This interpretation also accords with the broad mandate of Rule 1, which directs that the Federal Rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1; *see also A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[a]ll discovery and federal litigation generally, is subject to Rule 1"). Even if Cloudflare's view of Rule 15 were right, the point is immaterial because both the letter and spirit of the Rules provide that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) ("[R]ule 15's policy of favoring amendments to pleadings should be applied with extreme liberality."). Although Cloudflare vaguely suggests that "certain issues" could "profitably have been explored on a Rule 15(d) motion" (Cl. Br. at 2 n.4), it does not object to the joinder of parties effectuated by the Complaint, nor does it move to strike anything.

Cloudflare's argument amounts to "empty formalism" that cuts against the Rules' purpose "to minimize technical obstacles to a determination of the controversy on its merits." *United States v. Reiten*, 313 F.2d 673, 674 (9th Cir. 1963) (reversing dismissal of amended complaint containing allegations post-dating original complaint where appellees did not identify any prejudice); *see also Stinson v. BNSF Ry. Co.*, 2014 WL 12843826, *2 (C.D. Cal. Nov. 24, 2014) ("Supplemental pleadings are generally favored because they promote judicial economy and convenience by permitting courts to dispose of related claims and issues in one matter."). Here, the amended complaint was an efficient way to accomplish the joinder of parties consistent with copyright law and the Rules. Cloudflare raises no substantive objection to the joinder of parties. The Court should disregard Cloudflare's not-really-asserted, footnoted point of procedure.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MERITS ISSUES**

## I.   The Complaint Plausibly Alleges Direct Infringement.

Cloudflare insists that it merely operates a "pass-through" service (Cl. Br. at 1), "acts strictly as an intermediary" (*id.* at 4), and takes only "automated, non-volitional actions in response to requests from Internet users" (*id.* at 13). Based on these disputed facts, Cloudflare argues it lacked "volitional conduct" for direct infringement. Cloudflare's brief ignores the allegations that it made and stored additional, unrequested copies for lengthy periods <u>not</u> at the direction of users (Compl. ¶¶ 195–97, 200); that it selected, via a non-automated process, which works would be copied and stored on its systems after notice of infringement (*id.* ¶¶ 223–28); and that it has "carved out a competitive niche by serving illegal pirate sites" that other large CDNs would not, and thereby established itself for business reasons as the go-to CDN for copyright pirates (*id.* ¶¶ 208–15, 229–33). These and other allegations plausibly show volition under the Ninth Circuit's cases.

To show direct copyright infringement, a plaintiff must establish ownership of copyrighted material and that the defendant "copied" this material. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019) (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)); *see also SOS, Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n. 3 (9th Cir. 1989) ("The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights" under 17 U.S.C. § 106). Cloudflare does not dispute that the Complaint well pleads Plaintiffs' ownership of registered copyrights and that Cloudflare copied these works in servicing Thothub. (*See* Compl. ¶¶ 194–207, describing services).

Instead, Cloudflare bases its argument on what is "commonly referred to as the 'volitional-conduct requirement.'" *VHT*, 918 F.3d at 731 (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017)). "The so-called 'volition'

element of direct infringement is not a judicially-created element of intent or knowledge; it is a basic requirement of causation." *Giganews*, 847 F.3d at 666. As this Court put it, "*direct* liability must be premised on conduct that can reasonably be described as the *direct* cause of the infringement." *Perfect 10, Inc. v. Giganews, Inc.*, 2014 WL 8628034, *7 (C.D. Cal. Nov. 14, 2014). "After all, the purpose of any causation-based liability doctrine is to identify the actor (or actors) whose 'conduct has been so significant and important a cause that [he or she] should be legally responsible.'" *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 132 (2d Cir. 2008) (quoting Keeton *et al.*, PROSSER & KEETON ON TORTS § 42, at 273 (5th ed. 1984)). In short, the "question is *who* made this copy." *Id.* at 130.[2]

The volitional conduct requirement arose out of the law's long recognition that rote application of classical copyright doctrine to the workings of the Internet threatens "unreasonable liability" for ISPs, an especially salient concern in the pre-DMCA era before safe harbors were enacted. *See Rel. Tech. Center v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1368 (N.D. Cal. 1995); *see also Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 454 (2014) (Scalia, J., dissenting) (discussing potential liability of "a defendant who does nothing more than operate an automated, user-controlled system"). For decades, courts have wrestled with the vexing question of what constitutes "volitional conduct" for purposes of finding that an ISP directly "caused" an infringing copy to be made. *See, e.g., BWP Media USA, Inc. v. Polyvore, Inc.*, 922 F.3d 42 (2d Cir. 2019).[3]

---

[2] *But see* Robert C. Denicola, "Volition and Copyright Infringement," 37 CARDOZO L. REV. 1259, 1273 (2016) ("There is no rule of copyright law that would preclude the imposition of direct liability on both parties [*i.e.*, ISP and user]"); S. Rep. No. 94-473, at 162 (1975) (legislative history of the original 1976 Copyright Act: "where the work was infringed by two or more tortfeasors, the bill would make them jointly and severally liable").

[3] Reflecting the unsettled state of the law, the Second Circuit's recent decision in *BWP Media* fractured into three separate concurring opinions. However, as explained below, all three judges agreed that the defendant ISP in that case could be liable for direct infringement. *Id.* at 44.

Under Ninth Circuit law, "[t]o demonstrate volitional conduct where the defendant operates an automated, user-controlled system, the plaintiff must show that the defendant exercised control by either 'selecting material for upload, download[,] transmission, or storage' or by 'instigating any copying, storage, or distribution' of the copyrighted material." *DISH Network LLC v. Jadoo TV, Inc.*, 2020 WL 5816579, *5–6 (N.D. Cal. Sept. 30, 2020) (quoting *VHT*, 918 F.3d at 732). This approach distinguishes pass-through automated systems that act strictly as intermediaries, from those where the system operator selects works or makes copies <u>not</u> at the direction of users. *Compare Giganews*, 847 F.3d at 668 (finding no volitional act where defendant was "'passively storing material *at the direction of users* in order to make that material available to other users *upon request*'") (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004)) (emphases added), *with Jadoo*, *supra* (denying motion to dismiss where "infringing transmissions [] were not 'instigated by' JadooTV users but instead were provided at [defendant's] direction" and defendant's "failure to remove infringing content from a website [was] a 'conscious choice that amounts to volitional conduct'") (quoting *VHT*, 918 F.3d at 733–34); *Polyvore*, 922 F.3d at 44 (reversing summary judgment where defendant "created multiple copies of [plaintiff's] photos that were not requested by [ ] users"); *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 96 (2d Cir. 2016) (affirming direct-infringement finding where defendant's "system retrieved a copyrighted item *that a user did not request*") (emphasis added).

Applying these principles here, the Complaint adequately pleads volitional conduct by Cloudflare based on three primary sets of factual allegations.

<u>*First*</u>, the Complaint alleges that Cloudflare itself instigated the copying and storage of copyrighted works, not at the direction of users, when it made *additional*

copies on its servers for *other* users after delivering a single copy at a *different* user's request. *See Polyvore*, 922 F.3d at 50–51 (Walker, J., concurring) ("ISPs that provide additional unrequested copies of copyrighted material in response to a user's request for a single copy … may be liable for direct infringement."); *cf. Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060, 1067 (9th Cir. 2014) (finding no volitional act for direct infringement because defendant's "program creates the copy *only in response to the user's command*") (emphasis added).

According to the Complaint's allegations, "where a user sought Thothub content not already stored on Cloudflare's servers, Cloudflare retrieved the content from Thothub's servers then provided it to the user." (Compl. ¶ 200). Then, after serving as a "pass-through" conduit for that original user, Cloudflare made *additional* copies that "remained on Cloudflare's servers." (*Id).* "If another user requested the [same] content, Cloudflare delivered it directly without having to retrieve the content from Thothub again." (*Id).* These additional copies were stored "for extended periods on [Cloudflare's] servers across the country." (*Id.* ¶ 195). As a result, "[a]t all or nearly all times that Cloudflare provided services for Thothub, the most commonly accessed pages—such as the homepage, the A-Z glossary, and the infringing content (including Plaintiffs' works) that appeared on Thothub's main and featured pages—were stored on Cloudflare servers." (*Id.* ¶ 197).

These additional copies—in contrast to the single copy that Cloudflare delivered to the original user—were not requested by the original user. Cloudflare's initial act of "simply serv[ing] as a 'conduit'" and, "[a]t the user's direction … simply display[ing] the image its user directed it to display," may not have been volitional because "the user, who selected the item to be copied, and not [Cloudflare], 'caused the copy to be made.'" *See Polyvore*, 922 F.3d at 51 (Walker, J., concurring) (quoting *Cartoon Network*, 536 F.3d at 131). But, as in *Polyvore*,

Cloudflare then "made additional unrequested copies." *Id.* at 51–52. Cloudflare's additional "copying, like the copying in *MP3tunes*, was triggered regardless of whether the user knew about, let alone asked for, the additional images." *Id.* at 52 (citing *MP3tunes, LLC*, *supra*, finding direct infringement because defendant's "system retrieved a copyrighted item that a user did not request"). On these facts, a Second Circuit panel held unanimously that "the district court's grant of summary judgment to Polyvore on the direct infringement claim was error because there [was] a dispute of material fact regarding whether Polyvore created multiple copies of [plaintiff's] photos that were not requested by Polyvore users." *Id.* at 44.

So, too, here. Cloudflare's creation of additional, *unrequested* copies constitutes "instigating any copying, storage, or distribution" of copyrighted works, which the Ninth Circuit's test recognizes as a volitional act. *See VHT*, 918 F.3d at 732; *Jadoo TV*, *supra*, at 6. Rather than simply being like a brick-and-mortar copy shop that makes a copy for a customer on request, Cloudflare is akin to a copy shop that secretly makes numerous additional copies for its own uses and then distributes those copies to *other* persons unknown to the person who requested the first copy. The unwitting user who requested only a single copy for his own personal use did not cause these additional copies. Cloudflare did.

*Second*, the Complaint alleges that, after receiving notice of infringement, Cloudflare deliberately deleted, through a non-automated process, some infringing works from its servers and continued to make infringing copies. (Compl. ¶¶ 223–28). In particular, the Complaint alleges that, on or about July 10, 2020, Waidhofer, through her attorneys, "notified Cloudflare in writing about Thothub's ongoing infringement of her copyrights" and "other facts showing that Thothub was a pirate site that existed for the express purpose of committing copyright infringement." (*Id.* ¶¶ 223, 97). After receiving this notice, "on or about July 29,

2020," Cloudflare "intentionally deleted" stored copies of Waidhofer's works from its own servers "through a non-automated process." (*Id.* ¶ 225). Cloudflare then falsely claimed in a letter to Waidhofer (as it does here) that it only "provides services 'on a pass-through basis.'" (*Id.* ¶ 226). Although it deleted copies of Waidhofer's works from its servers (and apparently also disabled caching for those works), "Cloudflare continued to enable the infringement by delivering the same content from the same URLs to users via its proxy service." (*Id.* ¶ 227).

These allegations of deliberate, *non-automated* conduct in selecting works to copy, as well as the allegations of *continued copying* after notice, are fatal to Cloudflare's volition argument. In marked contrast to these facts, the cases that Cloudflare relies on involved defendant ISP systems that operated entirely "without any human intervention." *See Netcom*, 907 F. Supp. at 1369; *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 497 (E.D. Pa. 2006) ("[w]hen [an ISP] automatically and temporarily stores data *without human intervention* … the necessary element of volition is missing") (emphasis added); *Giganews*, 2013 WL 2109963, at *8 ("An allegation that Defendants control the content on their servers, *without a good-faith allegation specifying how Defendants exercised that control to directly create copies*, cannot alone create an inference that Defendants engaged in a volitional act directly causing infringement.") (emphasis added).

Cloudflare's purposeful conduct in selecting works to store is similar to the allegations in *Jadoo*, which the Northern District of California held months ago (in reliance on the Ninth Circuit's recent guidance in *VHT*) were sufficient to defeat a motion to dismiss. 2020 WL 5816579, *5–6 (N.D. Cal. Sept. 30, 2020). In that case, plaintiff DISH alleged that Jadoo and its founder infringed copyrights in certain television channels. *Id.* at 1. Rejecting defendant's argument that it merely "set[] up a server that responds to user requests," the court relied on allegations of

defendant's "'conscious decision' not to remove Protected Channels from Jadoo set-top boxes after DISH sent infringement notices." *Id.* at 5–6 (quoting complaint). The court explained that "failure to remove infringing content from a website is a 'conscious choice that amounts to volitional conduct.'" *Id.* at 6 (quoting *VHT*). Therefore, the court held, "DISH plausibly alleged that [defendant's] actions satisfy the volitional requirement of a direct infringement claim." *Id.*; *see also Amazon.com*, 508 F.3d at 1172 (explaining that "a service provider's knowing failure to prevent infringing actions could be the basis for imposing contributory liability").

Similarly, here, the Complaint alleges that, on a particular date, Cloudflare "intentionally deleted copies of Waidhofer's [works] on Thothub after receiving Waidhofer's letter [notifying Cloudflare of infringement] in order to conceal the true nature of its activities and services with respect to Thothub." (Compl. ¶ 226; *see also id.* ¶ 97). Even as to intentionally deleted works, "Cloudflare continued to enable infringement by delivering the same infringing content from the same URLs to users via its proxy service." (*Id.* ¶ 227). Moreover, the Complaint alleges that Cloudflare also received notice from McGehee, Lavitz, and hundreds of others regarding infringement on Thothub. (*Id.* ¶¶ 113–15, 122–23, 219–22). Despite having received these notices, Cloudflare "continued to make and distribute unlawful copies of the works identified in those notices" as well. (*Id.* ¶ 222).

Cloudflare's *non-automated selection* of material to store on its servers, as well as its *continuation of copying* even after notice about infringement, constitutes "select[ing] any material for upload, download, transmission, or storage," another type of volitional conduct recognized by the Ninth Circuit. *See VHT*, 918 F.3d at 732. This "deliberate" conduct—"choos[ing] copyrighted content"—"transform[s] [Cloudflare] from a passive provider of a space in which infringing activities

happened to occur to an active participant in the process of copyright infringement." *See Cap. Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 656–57 (S.D.N.Y. 2013), *aff'd* 910 F.3d 649 (2d Cir. 2018) (citing *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009)). Cloudflare's selection of specific works to copy raises a plausible inference of its volition.

*Third*, the Complaint alleges that Cloudflare deliberately markets to pirate sites, provides vital (infringing) content-delivery services for most of the world's leading pirate sites, and is a "key player in the piracy ecosystem" due to its blatant disregard for copyrights and willingness to serve plainly illegal pirate sites "that other leading CDNs would not." (Compl. ¶¶ 10, 208–15, 229–33). Stunningly, according to a recent European Commission report, "[o]ut of the top 500 infringing domains based on global Alexa rankings, 62% (311) are using Cloudflare's services," as are "approximately 40% of the pirate websites in the world" and "approximately 44.7% of all copyright-infringing URLs reported to Google" in 2019. (*Id.* ¶¶ 209, 212, citing the report). The Complaint also discusses a "non-exhaustive list" of other obvious pirate sites "similar to Thothub"—each a Cloudflare customer—that infringe Plaintiffs' copyrighted works. (*Id.* ¶¶ 229–33). Moreover, it alleges that Cloudflare continues to serve these pirate sites, despite having notice of their rampant ongoing infringement. (*Id.* ¶¶ 234–41).

Courts have left open that "one's contribution to the creation of infringing copies may be so great that it warrants holding that party directly liable for the infringement." *Cartoon Network*, 536 F.3d at 133; *see also Fox*, 747 F.3d at 1067 (positing that activities that do not themselves "establish that [defendant] made the copies" may nevertheless be "relevant" to direct infringement) (citing *Cartoon Network*); *Usenet*, 633 F. Supp. 2d at 148–49 (finding direct infringement due to the extent of defendant ISP's involvement). Classical tort doctrine supports that

liability attaches where defendant's "conduct has been so significant and important a cause that [he or she] should be legally responsible.'" Keeton *et al.*, PROSSER & KEETON ON TORTS § 42, at 273 (5th ed. 1984) (quoted in *Cartoon Network*, 536 F.3d at 132); *see also* Dobbs, THE LAW OF TORTS § 1, at 2 (2000) (explaining that "torts are traditionally associated with wrongdoing in some moral sense").

In this case, the Complaint alleges that Cloudflare routinely made additional copies not requested by users, selected works to copy, continued to infringe even after being notified many times by aggrieved copyright holders (including Plaintiffs), obstructed Plaintiffs' and others' efforts to protect their rights, and misrepresented the nature of its services to obscure its role. Cloudflare did this all for its "paying customer." (Compl. ¶ 189). And by catering to such pirates that other CDNs will not, Cloudflare occupies a profitable niche. *See Grokster*, 545 U.S. at 940 (explaining that evidence that "the commercial sense of [defendant]'s enterprise turns on high-volume use, which the record shows is infringing … alone would not justify an inference of unlawful intent, but viewed in the context of the entire record its import is clear"); *Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020, 1036–37 (9th Cir. 2013) (in finding intent, relying on evidence regarding defendant's business interests in infringement). [4]

Cloudflare's claim that Plaintiffs' theory would expose "the owner of *any* computer connected to the Internet … to unlimited liability" (Cl. Br. at 12) is beyond hyperbole. Cloudflare's conduct does not remotely resemble one who merely "participates in the ordinary, technically necessary routing of information"

---

[4] In a related context, the legislative history of the DMCA states that the term "repeat infringer" refers to those "who repeatedly or flagrantly abuse their access to the Internet through disrespect for the intellectual property rights of others." S. Rep. 105-190, at 52 (1998); H.R. Rep. 105-551(II), at 61 (1998); *see also In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) (explaining that "repeat infringer" refers to persons who are "ignorant or more commonly disdainful of copyright").

(*id.*) on the Internet, or even ISPs that make reasonable efforts to follow the law. It is no accident that so many pirates the world over have decided to do business with Cloudflare. If this record does not show "volitional conduct" and "proximate causation," those concepts have become totally unmoored from their doctrinal foundation in tort. Because the Complaint adequately pleads specific volitional acts demonstrating that Cloudflare is a significant and direct cause of infringement, the Court should deny Cloudflare's motion on direct infringement.

## II.    The Complaint Plausibly Alleges Contributory Infringement.

Cloudflare rolls out the same arguments it previously made and lost in this Court under nearly identical circumstances. *See ALS Scan, Inc. v. Cloudflare, Inc.*, No. 2:16-cv-05051, Dkt 60 (C.D. Cal. Oct. 24, 2016) (Wu, J.) ("*ALS Scan*") (denying Cloudflare's motion to dismiss contributory claim). In particular, it argues that "Plaintiffs fail to plausibly allege that Cloudflare could have taken simple measures, or that it *failed* to take available simple measures, to 'prevent further damage to Plaintiffs' copyright works'"; and that "nothing in Plaintiffs' allegations plausibly suggests that Cloudflare materially contributed" to infringement. (Cl. Br. at 14–17). These arguments did not carry the day in *ALS Scan*, nor do they here. [5]

The elements of contributory infringement are that defendant (1) had knowledge of infringing conduct and (2) "induce[d], cause[d], or materially contribute[d] to the infringing conduct." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007) (citing *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). As applied to ISPs, "a computer system can be held contributorily liable if it has actual knowledge that specific

---

[5] As in *ALS Scan*, Cloudflare does not dispute the sufficiency of allegations that it had knowledge about infringement of Plaintiffs' works. (*See* Compl. ¶¶ 97–98, 113–15, 122–23, 223–28).

infringing material is available using its system and can take simple measures to prevent further damage to copyrighted work, yet continues to provide access to infringing works." *Id.* at 1158 (citations and quotations omitted). The Ninth Circuit has held that "services or products that facilitate access to [infringing] websites throughout the world can significantly magnify the effects of otherwise immaterial infringing activities," and therefore such services or products can be "material contributions." *Id.* at 1172 (quotations and citations omitted).

The allegations against Cloudflare—and attendant legal analysis—in *ALS Scan* are mirror images of this case. In *ALS Scan*, the owner of adult-oriented works alleged that Cloudflare provided services to certain infringing websites. According to the plaintiff's complaint in that case, Cloudflare's CDN "allows consumers seeking to access a website of Cloudflare's client to retrieve the website from the closest Cloudflare data center, rather than accessing the site from the primary host," and this "results in a client's website loading twice as fast for its visitors, regardless of where they are located." The plaintiff also alleged that "Cloudflare's DNS service 'allows pirate sites and their hosts to conceal their identity from copyright owners" and that Cloudflare "refuses to disclose the identity of the primary host and site owner," thereby "act[ing[] as a firewall protecting pirate sites and their hosts from legal recourse by copyright owners." Plaintiff also alleged "it sent numerous notices to Cloudflare of infringement of its copyrighted works by Cloudflare clients," yet Cloudflare "continued to offer its CDN and related services to these clients, despite the infringement notifications." *ALS Scan, supra*, at 3.

This Court found that plaintiff "sufficiently alleged contributory liability against Cloudflare pursuant to a material contribution theory." *Id.* The Court's

analysis is quoted at length because it is equally applicable here (and for convenience because the opinion can be found only on the Court's docket):

> Unlike the credit card companies in *Visa* [494 F.3d 788 (9th Cir. 2007)], which did not help consumers access infringing websites, **Plaintiff alleges that Cloudflare's CDN service makes it faster and easier … for consumers across the world to access infringing websites and load infringing images from any location. Moreover, Plaintiff alleges that consumers seeking access to infringing websites retrieve the website and load the infringing images from the closest Cloudflare data center, rather than from the primary host. These allegations are sufficient to state a claim for material contribution under Ninth Circuit precedent.** [citing *Amazon.com*, 508 F.3d at 1172; *Louis Vuitton Malletier, S.A. v. Akonic Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011); *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001); *Netcom*, 907 F. Supp. at 1375] …
>
> In addition, with respect to Cloudflare's DNS service, **Plaintiff alleges that Cloudflare 'allows pirate sites and their hosts to conceal their identity from copyright owners,' thereby preventing copyright holders from stopping the pirate sites' infringing activities. These allegations also support a material contribution claim.** …
>
> Cloudflare contends that it cannot be liable for material contribution because there are no 'simple measures' Cloudflare could take to prevent further damage to Plaintiff's copyrighted works. Cloudflare argues that 'there are no measures of *any* kind that Cloudflare could take to prevent this alleged infringement, because the termination of Cloudflare's CDN services would have no impact on the existence and ability of these allegedly infringing websites to continue to operate.' **However, a defendant may still be liable for material contribution regardless of whether it is able to completely halt infringing activity, so long as it is able to take measures to 'prevent further damage' to the copyrighted works.** ***See Amazon.com*, 508 F.3d at 1172. Here, terminating Cloudflare's services would likely have at least [had] some impact on the infringing activity of Cloudflare's clients, in that it would take users twice as long to access and load the infringing images.** …

In sum, because Plaintiff has alleged that Cloudflare's services facilitate access to its clients' infringing websites, the Court would find that Plaintiff has sufficiently alleged material contribution.

*Id.* at 7–9 (emphases added; some citations omitted); *see also Mon Cheri Bridals, LLC v. Cloudflare, Inc.*, 2019 WL 3245740, *1 (N.D. Cal. July 11, 2019) (Chhabria, J). (denying Cloudflare's motion to dismiss due to "[a]llegations that Cloudflare knew its customer-websites displayed infringing material and continued to provide those websites with faster load times and concealed identities").

For obvious reasons, Cloudflare does not even try to distinguish *ALS Scan*, instead simply asserting, without explanation, that this case "presents an easier question than the motion to dismiss the district court denied" in *ALS Scan*. (Cl. Br. at 15).[6] On this Plaintiffs agree, although not (one supposes) in the sense that Cloudflare intended. In fact, this case presents an *even stronger complaint* than *ALS Scan* because it includes the same type of allegations as *ALS Scan*, plus additional factual allegations that show in even more stark relief Cloudflare's material contributions to the rampant copyright infringement on Thothub.

As in *ALS Scan*, the Complaint details Cloudflare's central role in facilitating infringement for its client site, including that Cloudflare "stored much of Thothub's site, including pages featuring Plaintiffs' copyrighted works, for extended periods on its servers across the country" (Compl. ¶¶ 195, 197); "retrieved the content from Thothub's servers then provided it to the user" or

---

[6] Cloudflare deflects by misleadingly quoting a line from *Cobbler Nevada, LLC v. Gonzales* that "[n]othing in [plaintiff]'s complaint alleges, or even suggests, that [defendant] actively induced or materially contributed to the infringement through purposeful, culpable expression and conduct." 901 F.3d 1142, 1148 (9th Cir. 2018) (quotation omitted). Out of context, this confuses the standards for induced infringement (which requires showing intent) versus material contribution (which does not). *See VHT Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745–46 (9th Cir. 2019). *Cobbler* also involved *very* different facts, turning on "whether the bare allegation that a defendant is the registered subscriber of an Internet Protocol ('IP') address associated with infringing activity is sufficient to state a claim for direct or contributory infringement." 901 F.3d at 1144.

PLAINTIFFS' RESPONSE TO CLOUDFLARE'S MOTION TO DISMISS
*Waidhofer et al. v. Cloudflare, Inc., et al.*, Case No. 2:20-cv-06979

"delivered it directly without having to retrieve the content from Thothub" (*id.* ¶ 200); and "received all user requests to access or view Thothub," including for Plaintiffs' works (*id.* ¶ 201–02). Absent these services, "Thothub would not have been able to operate effectively, and certainly not on such a large scale." (*Id.* ¶ 196). In addition, the Complaint alleges that, "[b]y interposing itself between copyright holders and Thothub, Cloudflare inhibited copyright enforcement." (*Id.* ¶¶ 210–19). And Cloudflare disregarded the flood of infringement notices received from Plaintiffs and hundreds of other creators. (*Id.* ¶¶ 219–23). Such allegations are aligned with, and substantially similar to, those in *ALS Scan*.

Above and beyond those allegations, the Complaint here also alleges that Cloudflare offloaded heavy data traffic from Thothub's servers, without which those servers would have "overrun and crashed" (*id.* ¶ 196); that "[u]sers could not access Thothub except through Cloudflare" due to the Argo Tunnel service, which ensured that the "only way in or out of Thothub's server(s) was via Cloudflare, except one port (Port 8443) reserved for administrators" (*id.* ¶¶ 203–06); and that a Cloudflare engineering executive testified under oath that Cloudflare's CEO "decided to kick [a customer] off the Internet" because he was "in a bad mood" and thought they were "assholes" (*id.* ¶¶ 216, 241). Given these specific facts, the Complaint plausibly alleges that, "[i]f Cloudflare had 'closed' the Thothub tunnel (and ceased delivering Thothub content that Cloudflare already had stored on its servers), as a practical matter, Thothub would no longer have been available on the Internet." (*Id.* ¶ 207). [7] These allegations knock down a purported factual pillar of

---

[7] Consistent with these allegations, Cloudflare states that "Cloudflare's CDN network is key to its security services, including its DDoS mitigation services"; that "a DDoS ('Distributed Denial of Service') attack occurs when a malicious attacker uses *multiple computers simultaneously to request information from a website*"; and that "*[i]f done on a large enough scale, the* requests *overwhelm the website, take the victim server offline, and render the site inaccessible.*" (Cl. Br. at 5–6, quoting *Raisly v. U.S.*, 2016 WL 1117944, *1 (D.N.J. Mar. 22, 2016)) (emphases added).

Cloudflare's defense: the faulty idea that "the customer's website remains online and fully accessible to users," even if Cloudflare terminates service. (Cl. Br. at 5).

Even if this pillar could stand as a factual matter, it cannot bear the weight Cloudflare puts on it. Indeed, this Court rejected the very same argument by Cloudflare in *ALS Scan*. There, as here, Cloudflare argued that it could not be held liable because (it claimed) the "infringing activity would continue to exist without Cloudflare's services." *ALS Scan,* at 7, n. 5 (citing Cloudflare's brief). The Court rejected this "misplaced" theory as contrary to Ninth Circuit law. The Court noted that, "[i]n *Amazon.com*, the infringing websites would clearly have continued to exist even without Google's services"; even still, "the Ninth Circuit held that Google's services made it 'faster and easier' for users to access infringing images, thereby making [Google] liable for material contribution." *Id.* As the Court explained, the "defendant may still be liable for material contribution regardless of whether it is able to completely halt infringing activity, so long as it is able to take measures to 'prevent further damage' to the copyrighted works." *Id.* (citing *Amazon.com*, 508 F.3d at 1172). The same applies in this case.

Setting aside the underlying factual disputes (which must favor Plaintiffs at this stage), Cloudflare's all-or-nothing theory ignores that "services or products that facilitate access to websites throughout the world can significantly magnify the effects of otherwise immaterial infringing activities." *Amazon.com*, 508 F.3d at 1172 (citing *Napster*, 239 F.3d at 1022; *Netcom*, 907 F. Supp. at 1375). And it contravenes the Supreme Court's and Ninth Circuit's practical admonition that "copyright holders cannot protect their rights in a meaningful way unless they can hold providers of such services or products accountable for their actions." *Id.* (citing *MGM, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929–30 (2005)). Here,

Cloudflare enabled Thothub to be operated securely on a vast scale. The law recognizes this as a material contribution that, with knowledge, creates liability.

Although intent is not a required element of a material contribution theory, actual or circumstantial evidence of intent may be relevant to contributory liability. *See Grokster*, 545 U.S. at 934–35 (explaining that courts should not "ignore evidence of intent if there is such evidence" and should apply "rules of fault-based liability derived from the common law"). In *Grokster*, the Supreme Court identified three types of "evidence of intent" that are "particularly notable" in evaluating liability for contributory infringement. *Id.* at 939–40. Each type applies here (though at this stage only well-pled allegations, not evidence, are needed).

*First*, the Court cited evidence that defendant "showed itself to be aiming to satisfy a known source of demand for copyright infringement." *Id.* at 939. Here, the Complaint alleges that Cloudflare is a singular world leader in supporting online piracy and "specifically markets" to pirates. (Compl. ¶¶ 208–12, 214, 231–33). *Second*, the Court cited evidence that defendant did not "attempt[] to develop filtering tools or other mechanism to diminish the infringing activity using their [service]." 545 U.S. at 939. Here, the Complaint alleges that Cloudflare "does not have reasonably adequate protocols, policies, or metrics for addressing repeat infringement by its customers," "takes no steps to prevent the infringing content from continuing to be copied and distributed on its servers even after notice," and has "*never* voluntarily terminated services … to a customer for repeat copyright infringement." (Compl. ¶¶ 239–41). *Third*, the Court cited evidence that "the commercial sense of [defendant's] enterprise turn[ed] on high-volume use." 545 U.S. at 939–40. Here, the Complaint alleges that Cloudflare "has carved out a competitive niche by serving illegal pirate sites that other large CDN companies" do not, and that its fees are usage-based. (Compl. ¶¶ 190, 205; *see also id.* ¶¶ 255–

58). Such facts "alone would not justify an inference of unlawful intent, but viewed in the context of the entire record its import is clear." *Grokster*, 545 U.S. at 940.

As for simple measures, Cloudflare could have simply terminated service to Thothub. *Cf. ALS Scan*, *supra*, at 6 (finding that "terminating Cloudflare's services would likely have at least [had] some impact on the infringing activity of Cloudflare's clients") (citing *Napster*, 239 F.3d at 1021–22). Or it could have stopped serving requests for noticed infringing URLs. *Cf. Mon Cheri Bridals*, 2019 WL 3245740, at 1 (holding that "[a]llegations that Cloudflare knew its customer-websites displayed infringing material and continued to provide those websites with faster load times and concealed identities are sufficient to state a claim") (citing *Giganews*, 847 F.3d at 67). "In any event, the extent to which reasonable measures exist for Cloudflare to prevent further damage to Plaintiff[s'] copyrighted works appears to be a factual issue to be resolved at a later stage in these proceedings." *ALS Scan*, *supra*, at 7; *see also Amazon.com*, 508 F.3d at 1172–73 (remanding to district court to resolve "factual disputes over whether there are reasonable and feasible means for Google to refrain from providing access to infringing images").

Because the Complaint adequately alleges that Cloudflare knowingly and materially contributed to infringement of Plaintiffs' works on Thothub in much the same way courts deemed sufficient under Ninth Circuit law to state contributory claims against Cloudflare in *ALS Scan* and *Mon Cheri Bridals*, the Court should deny Cloudflare's motion to dismiss the contributory infringement claim.

## CONCLUSION

The Court should deny Cloudflare's motion to dismiss in its entirety.[8]

---

[8] However, if the Court finds that any part of Cloudflare's motion should be granted, it should grant Plaintiffs leave to amend the Complaint to allege additional facts that may cure any perceived defects. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

By:     Brett S. Rosenthal

REESE MARKETOS LLP
Brett S. Rosenthal (*pro hac vice*)
Sean F. Gallagher (*pro hac vice*)
Joel W. Reese (*pro hac vice*)
Joshua M. Russ (*pro hac vice*)
750 N. Saint Paul Street, Ste. 600
Dallas, Texas 75201-3202
Telephone: (214) 382-9810
Brett.rosenthal@rm-firm.com

REITER GRUBER LLP
Charles Reiter (SBN 306381)
Robert Gruber (SBN 301620)
100 Wilshire Blvd, Suite 700
Santa Monica, California 90401-3602
Telephone: (310) 496-7799
creiter@reitergruber.com

*Counsel for Plaintiffs*

PLAINTIFFS' RESPONSE TO CLOUDFLARE'S MOTION TO DISMISS
*Waidhofer et al. v. Cloudflare, Inc., et al.*, Case No. 2:20-cv-06979

# CERTIFICATE OF SERVICE

I hereby certify that the above document will be served at the time of filing on all counsel of record via the Court's electronic filing system.

/s/_____

Brett S. Rosenthal

PLAINTIFFS' RESPONSE TO CLOUDFLARE'S MOTION TO DISMISS
*Waidhofer et al. v. Cloudflare, Inc., et al.*, Case No. 2:20-cv-06979