KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
STEPHANIE G. HERRERA (State Bar No. 313887)
stephanie.herrera@mto.com
VIRGINIA GRACE DAVIS (State Bar No. 336732)
grace.davisfisher@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:   (415) 512-4077

BETHANY W. KRISTOVICH (State Bar No. 241891)
bethany.kristovich@mto.com
BENJAMIN G. BAROKH (State Bar No. 318629)
benjamin.barokh@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Defendant
UNIVERSAL CITY STUDIOS LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONOR WOULFE and PETER MICHAEL ROSZA,<br><br>              Plaintiffs,<br><br>       vs.<br><br>UNIVERSAL CITY STUDIOS LLC, d.b.a., UNIVERSAL PICTURES,<br><br>              Defendant. | Case No. 2:22-cv-00459-SVW-AGR<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION FOR CLARIFICATION**<br><br>Judge:  Hon. Stephen V. Wilson<br><br>Filed Concurrently:  Declaration of Kelly M. Klaus |

Plaintiffs say their *ex parte* application requests "clarification of [the] Court's orders."  Ex Parte Application for Clarification of Court's Orders ("App."), Dkt. 113.  In reality, the application consists of two time-barred and baseless motions: (1) to reconsider this Court's <u>December 20, 2022</u> ruling that Plaintiffs do not have Article III standing to pursue claims based on alleged misrepresentations they did not see; and (2) to review and reverse Magistrate Judge Rosenberg's <u>February 15, 2023</u> ruling that numerous of Plaintiffs' discovery requests were overbroad and disproportionate to the present needs of the case, pursuant to well-established Ninth Circuit law regarding limits on pre-certification discovery.

Moreover, Plaintiffs do not even discuss—much less attempt to show they can satisfy—the high standards for obtaining *ex parte* relief, which is reserved for extraordinary circumstances.  *See Mission Power Eng'g Co. v. Cont'l Cas. Co*., 883 F. Supp. 488, 492 (C.D. Cal. 1995).  Defendant respectfully requests that the Court deny the application.

### A.    Plaintiffs Fail To Satisfy The High Standards For *Ex Parte* Relief

"[E]x parte applications are solely for extraordinary relief and should be used with discretion."  *Grasshopper House LLC v. Accelerated Recovery Centers LLC*, 2010 WL 11549385, at *2 (C.D. Cal. Oct. 12, 2010).  The applicant must show not only good cause but also that they are "without fault in creating the crisis that requires ex parte relief."  *Id.* (quoting *Mission Power Eng'g*, 883 F. Supp. at 492). Plaintiffs do not even mention these standards—because they plainly cannot satisfy them.

Plaintiffs suggest they only recently became aware of the need to seek "clarification" because of positions that Defendant stated in recent discovery correspondence, namely, a March 21, 2023 meet-and-confer letter.  App. at 5-6. (Plaintiffs did not submit that letter with their application; it is attached as Exhibit A to the accompanying Declaration of Kelly M. Klaus ("Klaus Decl.").)

The record actually shows that for the last several months, Plaintiffs have known about and even litigated before the Magistrate Judge the very issues that Plaintiffs now claim have given rise to an emergency need for "clarification":

- <u>On December 20, 2022</u>, this Court issued the Order that Plaintiffs now seek to "clarify," holding, *inter alia*, that Plaintiffs lack standing to challenge alleged misrepresentations they did not see.  Order Granting in Part and Denying in Part Defendant's Special Motion to Strike ("Order"), Dkt. 83 at 13 n.7, 26 n.14.

- On <u>January 17, 2023</u>, Defendant served RFP and RFA responses objecting to every request that concerned alleged misrepresentations Plaintiffs did not see, including on the ground that Plaintiffs lack standing to base claims on or seek discovery regarding such statements.  Dkt. 98-3 (Responses to RFAs 21, 23-26 (objections to requests regarding VUDU)); Dkt. 98-2 (Responses to RFPs 16, 20-21, 23 (objections to requests regarding VUDU and imdb.com)).

- On <u>January 31</u>, Defendant's counsel reiterated this position in a meet-and-confer with Plaintiffs' counsel.  Klaus Decl. ¶ 2.

- On <u>February 6</u>, Defendant served interrogatory responses, again objecting to every request that concerned alleged misrepresentations Plaintiffs did not see on the ground that "Plaintiffs do not have standing to assert any claim or seek any relief relating to any advertisements for *Yesterday* that they did not see and on which they did not rely. (ECF No. 83 at 13 n.7 (holding that Plaintiffs do not have standing to challenge alleged misrepresentations they did not see and did not rely on).)."  Dkt. 113-1 (Responses to ROGs 3, 7, 8, 9).

- On <u>February 10 and 15</u>, the parties appeared before Judge Rosenberg at Plaintiffs' request regarding Defendant's objections based on Plaintiffs' lack of standing and based on the fact that many requests were overbroad and disproportionate to the needs of the case.  Dkts. 91, 98, 101.

- On <u>February 15</u>, Judge Rosenberg issued her discovery order, which limited the discovery Plaintiffs could seek prior to certification. Dkt. 103. The same order directed Defendant to respond to certain of Plaintiffs' requests. Defendant has done that and produced documents. Klaus Decl. ¶ 5. Plaintiffs' motion for class certification (Dkt. 109-1) does not cite *any* of this evidence.

- On <u>March 10</u>, Plaintiff sent a letter regarding interrogatory responses served more than a month earlier. Defendant's March 21 letter reiterated the same position on standing that Defendant has taken since January 17. Klaus Decl., Ex. A.

Plaintiffs do not explain why they waited until <u>March 24</u> to seek emergency relief regarding issues they have known about for months and that they argued unsuccessfully before Judge Rosenberg. *See* Section C, *infra*. At a minimum, if Plaintiffs were genuinely concerned about the potential consequences of including dismissed allegations in a third amended complaint, Plaintiffs could have sought "clarification" in the 11 days between the Court's March 9 order that contemplated Plaintiffs filing an amended complaint (Dkt. 107), and Plaintiffs' March 20 motion for leave to amend (Dkt. 111). There is no emergency and no cause for *ex parte* relief. *See Mission Power Eng'g*, 883 F. Supp. at 492.

### B. The Court Should Deny Plaintiffs' Time-Barred Request For Reconsideration Of Its Ruling That Plaintiffs Lack Standing To Challenge Alleged Misrepresentations They Did Not See

The Court's Order granting Defendant's motion to strike/dismiss was clear that Plaintiffs do not have standing to seek relief based on statements that they did not see, i.e., statements other than the trailer that Plaintiffs allege they did watch:

> Plaintiffs do not have standing to challenge the listing [of *Yesterday*'s cast on Vudu], since they did not watch the movie on Vudu, nor did they watch the movie on the basis of Vudu's listing.

Order at 13 n.7; *id.* at 26 n.14 (same).

If Plaintiffs believed they had grounds to seek reconsideration of this ruling under Civil L.R. 7-18, Plaintiffs had to file that motion by January 17, 2023. Dkt. 86. Their failure to do so is all the more notable given that Plaintiffs *did* move for reconsideration of the Order—but *not* on the question of their standing to complain about statements they did not see. Dkts. 89, 108. The Court denied the reconsideration motion Plaintiffs did file, holding that it was an "attempt[] to recycle arguments that the Court already considered and rejected." Dkt. 108 at 2.

In this application, Plaintiffs likewise recycle arguments the Court considered and rejected. On Defendant's motion to strike/dismiss, the parties extensively briefed whether Plaintiffs have Article III standing to complain about any statements *other than* the trailer that Plaintiffs watched,[1] when Plaintiffs admit *they did not see any such statements*—including on the VUDU platform—before deciding to pay to view *Yesterday*. Second Amended Complaint ("SAC"), Dkt. 36 ¶¶ 7, 10, 85. Defendant argued:

> "Plaintiffs do not have Article III standing to assert claims based on alleged statements they did not see and on which they do not and cannot allege having relied: 'If a defendant makes a misrepresentation and the plaintiff, without knowing of that misrepresentation,

---

[1] These include: allegations about *Yesterday* webpages on VUDU and IMDb, purportedly listing de Armas as a cast member; VUDU and other streaming platforms "key word linking" de Armas's name to *Yesterday*; and CBS featuring an image of de Armas on "CBS This Morning." SAC ¶¶ 23-31, 52-53, 86-87. After more than a year of litigation and three iterations of their complaint, Plaintiffs have never alleged that they viewed or relied on any of these statements before paying to view *Yesterday* in July and October 2021, respectively. In the proposed third amended complaint, Plaintiff Woulfe alleges he "<u>*recently*</u> paid to rent *Yesterday* on Google Play" based on statements on that platform. Dkt. 111-3, ¶ 145 (emphasis added). Defendant will explain in opposing the motion to amend why this transparent attempt to manufacture Article III standing where none exists fails as a matter of law. For present purposes, the important point is that neither Plaintiff alleges they saw any such statement on Google (or any other platform) before making the decision to pay to view *Yesterday* that has been the basis for this lawsuit for more than a year.

coincidentally purchases the product in question, *her injury is not traceable to the misrepresentation*'" as required by Article III.

Dkt. 44 at 15-16 (quoting *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1005 (N.D. Cal. 2020) (citing cases)).

In opposition, Plaintiffs argued, among other things, that the question of who had standing to complain about statements the putative class representatives did not see was not ripe for decision and should await the class certification stage.  Dkt. 56 at 28-29.  Plaintiffs repeat the same argument in the current application.  App. at 4 (standing issue "not ripe for decision" until "class certification stage").

The Court's rejection of Plaintiffs' standing to allege a misrepresentation based on statements they did not see is clear.[2]  Indeed, the Court reiterated this holding from footnote 7 later in the Order:  "Plaintiffs lack standing to challenge Vudu's listing."  Order at 26 n.14.  Plaintiffs try to limit the consequences of that holding on the ground the Court "only mention[ed] VUDU and not other third-party vendors."  App. at 5.  But the substance of the Court's Order was and remains clear: Plaintiffs lack standing to challenge statements they did not see or rely on in making their decisions to pay to watch *Yesterday*.

Even if Plaintiffs had timely moved for reconsideration of the Court's ruling on their (lack of) standing—which they did not do—that motion would have been subject to denial on the same basis the Court denied the reconsideration motion

---

[2] Plaintiffs' argument (App. at 4) that the Court must wait for class certification to address standing was and remains meritless.  S*ee, e.g.*, *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) ("The district court correctly addressed the issue of standing before it addressed the issue of class certification."); *Lee v. State of Or.*, 107 F.3d 1382, 1390 (9th Cir. 1997) ("Standing 'is a jurisdictional element that must be satisfied prior to class certification.'").

Plaintiffs actually filed.  Plaintiffs should not be permitted to obtain a different result by attacking the Court's Order through this *ex parte* application.[3]

Plaintiffs have Article III standing to challenge only the statement they saw—the trailer they watched.  Plaintiffs do not have standing to challenge statements *other than that trailer*.  There is no ambiguity to "clarify."

### C.   The Court Should Deny Plaintiffs' Time-Barred Request For Reconsideration Of Judge Rosenberg's Discovery Rulings

Also under the guise of seeking "clarification," Plaintiffs ask the Court to rule that they may take "discovery related to merits issues," and not simply related to "the issue of class certification."  App. at 7-8.  They further ask the Court to consider the substance of their discovery requests and conclude that these requests are in fact relevant to class certification.  *Id.* at 8-9.

This request is not about whether this Court has or has not issued an order that per se bifurcates discovery.  The request actually is an attempt to challenge Judge Rosenberg's discovery rulings that numerous of Plaintiffs' discovery requests were overbroad, burdensome, and disproportionate to the needs of the case at this juncture.

The background that Plaintiffs omit from their application is as follows.  Plaintiffs served more than 80 discovery requests, many of which were facially overbroad and sought information on far-flung topics that were not even relevant to

---

[3] In a footnote, Plaintiffs claim that because "VUDU or other non-Amazon claims are not listed as dismissed with the other dismissed claims" in the "Conclusion" of the Court's Order, those "claims" were not dismissed with prejudice.  App. at 5 n.2.  The conclusion of the Court's Order summarizes its disposition of the *causes of action* Defendant moved to strike.  Plaintiffs did not assert a "VUDU" or "non-Amazon" "claim."  They alleged that statements other than the trailer that Plaintiffs did not see or rely on supported the claims for relief Plaintiffs did allege.  The Conclusion of the Order did not have to list every statement Plaintiffs had no standing to challenge to make that ruling effective.  The Court's Conclusion did not list every predicate for the UCL violations that the Court found to be without merit, but Plaintiffs obviously cannot rely on that fact to pursue those dismissed predicates.

the merits of the case.[4]  Defendant objected to many of these requests as burdensome and disproportionate to the needs of the case, especially before a class has been certified.  *See* Dkts. 98-2, 98-3.  Following the meet-and-confer process, Plaintiffs requested a discovery conference with the Magistrate Judge to discuss dozens of Defendant's responses, raising issues including Defendant's above-described standing objection and the objection that certain requests were not proportionate to the needs of the case at this juncture.  *See* Dkt. 91 (setting conference "[a]t the request of the plaintiffs"); Dkt. 98 (listing discovery disputes).

Judge Rosenberg held two lengthy conferences on February 10 and 15, at which the parties argued their respective positions.  Dkts. 91, 101.  Judge Rosenberg considered and resolved the disputes regarding each request.  Judge Rosenberg's February 15 Order sets forth her ruling on all of these points.  That order relies on well-established Ninth Circuit authority, which places "'the burden . . . on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations,'" Dkt. 103 at 1 (quoting *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)), and holds that "'[a]bsent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion,'" *id.* (quoting *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)).  Judge Rosenberg then considered each discovery request Plaintiffs placed at issue to differentiate between those "relevant to substantiate class allegations" (to which Universal had to respond) and those not so relevant (to which Universal did not).  *Id.* at 2.

Judge Rosenberg compelled Defendant to respond to a number of requests she concluded were "likely to produce evidence relevant to substantiation of the class

---

[4] *See, e.g.*, Dkt. 73-3, Nos. 18 (requesting "all . . . trailers," for any movie, "which were edited subsequent to the theatrical release of the movie advertised by the trailer"), 34 (requesting any "opinion of counsel" about *Yesterday*), 43 (requesting documents regarding "disputes between actors and Defendant" on any movie).

allegations," but refused to compel Defendant to respond to requests that she found "d[id] not meet that standard." *Id.* Defendant produced all the documents Judge Rosenberg ordered. Despite arguing that this evidence was needed for class certification, Plaintiffs cite *none of the evidence Defendant produced* in their pending motion for class certification. Dkt. 109-1. (Indeed, Plaintiffs cite no evidence whatsoever in that motion.).

If Plaintiffs wanted to challenge Judge Rosenberg's order, the rules obligated Plaintiffs to file an objection in this Court within 14 days of the order. Fed. R. Civ. P 72(a); Civ. L.R. 72-2.1. Plaintiffs did not file any such objection. They cannot use this *ex parte* application to seek the same relief now. Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."); *Glenbrook Homeowners Ass'n v. Tahoe Reg'l Plan. Agency*, 425 F.3d 611, 619-20 (9th Cir. 2005) ("appeal of the discovery denial is foreclosed by the … failure to object to the magistrate's [ruling] within the time period established by Federal Rule of Civil Procedure 72(a)").

Even if Plaintiffs' objection were timely—which it is not—Plaintiffs have not shown a "clear error," which is necessary for reversal of a Magistrate Judge's order. *See* Fed. R. Civ. P 72(a); Civ. L.R. 72-2.1. Plaintiffs argue that this Court "effectively denied" Defendant's earlier request to "bifurcate discovery." App. at 3 n.1; *see id.* at 8. Plaintiffs made this same argument to Judge Rosenberg, and she rejected it. *See* Klaus Decl. ¶ 3. Although Defendant asked this Court to bifurcate discovery on November 2, 2022 (Dkt. 73), the Court did not grant or deny that request; it simply "order[ed] that discovery be stayed pending resolution of the joint motion to strike and motion to dismiss." Dkt. 76; *see* Dkt. 84 ("In light of the Court[']s ruling on Defendants motion to strike, the stay on discovery is lifted."). And the Court certainly did not rule on the substance of Defendant's burden and proportionality objections, which are discovery matters the Court has expressly "REFERRED TO A UNITED STATES MAGISTRATE JUDGE." Dkt. 12 at 2. As

discussed above, that Magistrate Judge appropriately considered and ruled on Plaintiffs' discovery requests, Defendant has complied with those rulings, and Plaintiffs have not provided any support for their argument that this order should reversed, or even reviewed.

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' *ex parte* application.


DATED: March 27, 2023              Respectfully submitted,


By:  _____/s/ Kelly M. Klaus_____
          KELLY M. KLAUS
      Attorneys for Defendant
      UNIVERSAL CITY STUDIOS LLC