1  KELLY M. KLAUS (State Bar No. 161091)
   kelly.klaus@mto.com
2  STEPHANIE G. HERRERA (State Bar No. 313887)
   stephanie.herrera@mto.com
3  VIRGINIA GRACE DAVIS (State Bar No. 336732)
   grace.davisfisher@mto.com
4  **MUNGER, TOLLES & OLSON LLP**
   560 Mission Street, 27th Floor
5  San Francisco, California 94105-2907
   Telephone:  (415) 512-4000
6  Facsimile:  (415) 512-4077

7  BETHANY W. KRISTOVICH (State Bar No. 241891)
   bethany.kristovich@mto.com
8  BENJAMIN G. BAROKH (State Bar No. 318629)
   benjamin.barokh@mto.com
9  **MUNGER, TOLLES & OLSON LLP**
   350 South Grand Avenue, 50th Floor
10 Los Angeles, California 90071-3426
   Telephone:  (213) 683-9100
11 Facsimile:  (213) 687-3702

12 Attorneys for Defendant
   UNIVERSAL CITY STUDIOS LLC

13

14            **UNITED STATES DISTRICT COURT**

15            **CENTRAL DISTRICT OF CALIFORNIA**

16

| | |
|---|---|
| 17  CONOR WOULFE and PETER | Case No. 2:22-cv-00459-SVW-AGR |
| 18  MICHAEL ROSZA, | **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR** |
| 19          Plaintiffs, | **CLASS CERTIFICATION** |
| 20          vs. | |
| 21 | |
| 22  UNIVERSAL CITY STUDIOS LLC, | Date:  April 17, 2023 |
|     d.b.a., UNIVERSAL PICTURES, | Time: 1:30 p.m. |
| 23 | Judge:  Hon. Stephen V. Wilson |
| 24          Defendant. | |

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND .................................................................................. 2

      A.   Factual Background ................................................................... 2

            1.   *Yesterday* Was Promoted in a Variety of Channels, Through Different Media—Almost None of Which Featured de Armas ................................................................ 2

            2.   It Has Been Publicly Known for Years That de Armas Is Not in the Movie—and Also That the Scene Is Available for Viewing ................................................................ 4

            3.   Plaintiffs' Allegations ..................................................... 5

      B.   Procedural History ................................................................... 6

III.  LEGAL STANDARD .......................................................................... 7

IV.   ARGUMENT ....................................................................................... 8

      A.   Plaintiffs Do Not Satisfy Any of Rule 23(a)'s Mandatory Requirements ............................................................................... 8

            1.   Plaintiffs Fail to Prove Numerosity .................................. 8

            2.   Plaintiffs' Claims Are Not Typical of the Classes' ........... 9

            3.   Plaintiffs Fail to Prove Commonality .............................. 12

            4.   Plaintiffs Fail to Show They Are Adequate Class Representatives ................................................................ 14

      B.   Plaintiffs Lack Standing and Do Not Satisfy the Requirements to Certify a Class Under Rule 23(b)(2) ....................................... 15

            1.   Plaintiffs Lack Standing to Certify a Class Under Rule 23(b)(2) ......................................................................... 15

            2.   Even If Plaintiffs Had Standing, the Rule 23(b)(2) Classes Fail ..................................................................... 16

      C.   Plaintiffs' Proposed Classes Do Not Satisfy Rule 23(b)(3) ......... 17

            1.   Plaintiffs Do Not Show Predominance .............................. 17

            2.   Plaintiffs Do Not Propose a Viable Damages Model ......... 20

      D.   Even If Plaintiffs' Putative Classes Complied with Rule 23, They Are Vastly Overbroad ............................................................... 22

        E.      Plaintiffs' Alternative Classes Also Fail..................................................23

        F.      Plaintiffs Cannot End-Run the Fatal Flaws in Their Proposed
                Classes Through Rule 23(c)(4) .........................................................24

V.      CONCLUSION ...........................................................................................25

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**FEDERAL CASES**

*Amador v. Baca*,
    2016 WL 6804910 (C.D. Cal. July 27, 2016) ................................................24, 25

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................17

*Anderson v. Cent. Refrigerated Serv., LLC*,
    2017 WL 11635450 (C.D. Cal. July 6, 2017) ....................................................8

*B.C. v. Plumas Unified Sch. Dist.*,
    192 F.3d 1260 (9th Cir. 1999)....................................................................22

*Berger v. Home Depot USA, Inc.*,
    741 F.3d 1061 (9th Cir. 2014)................................................12, 17, 18

*Block v. eBay, Inc.*,
    747 F.3d 1135 (9th Cir. 2014) ....................................................................9

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) ..........................................................................6, 22

*Boardley v. Household Fin. Corp. III*,
    39 F. Supp. 3d 689 (D. Md. 2014)................................................................9

*Bowerman v. Field Asset Servs., Inc.*,
    60 F.4th 459 (9th Cir. 2023)......................................................................19

*Bruno v. Quten Rsch. Inst.*,
    LLC, 280 F.R.D. 524 (C.D. Cal. 2011) ..........................................................9

*Bruton v. Gerber Prod. Co.*,
    2018 WL 1009257 (N.D. Cal. Feb. 13, 2018)..................................................15

*Caldera v. J.M. Smucker Co.*,
    2014 WL 1477400 (C.D. Cal. Apr. 15, 2014) ..................................................20

*Castillo v. Bank of Am., NA*,
    980 F.3d 723 (9th Cir. 2020) ....................................................................19

*Cholakyan v. Mercedes-Benz, USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012)..........................................................................17

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...........................................................................................16

*Cochoit v. Schiff Nutrition Int'l, Inc.*,
  326 F.R.D. 631 (C.D. Cal. 2018)..........................................................................14

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .....................................................................................passim

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) .......................................................................15, 16

*Dealertrack, Inc. v. Huber*,
  460 F. Supp. 2d 1177 (C.D. Cal. 2006) ...................................................................9

*Diacakis v. Comcast Corp.*,
  2013 WL 1878921 (N.D. Cal. May 3, 2013) ........................................................23

*In re Ditropan XL Antitrust Litig.*,
  529 F. Supp. 2d 1098 (N.D. Cal. 2007)................................................................22

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .........................................................9, 10, 13, 14

*Fine v. ConAgra Foods, Inc.*,
  2010 WL 3632469 (C.D. Cal. Aug. 26, 2010) .......................................................11

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu
  Stainless USA, LLC*,
  140 S. Ct. 1637 (2020)........................................................................................12

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
  141 S. Ct. 1951 (2021).........................................................................................18

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) .................................................................................1, 2, 18

*Khasin v. R. C. Bigelow, Inc.*,
  2016 WL 1213767 (N.D. Cal. Mar. 29, 2016) ......................................................21

*Konik v. Time Warner Cable*,
  2010 WL 8471923 (C.D. Cal. Nov. 24, 2010) ...............................................10, 11

*Lawson v. Grubhub, Inc.*,
   13 F.4th 908 (9th Cir. 2021) ................................................................ 12

*LSIMC, LLC v. Am. Gen. Life Ins. Co.*,
   2022 WL 4596597 (C.D. Cal. Aug. 4, 2022) ................................... 24, 25

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
   341 F.R.D. 128 (D. Md. 2022) .............................................................. 11

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ..................................................... 9, 12, 18

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) .................................................................. 8

*Microsoft Corp. v. Baker*,
   582 U.S. 23 (2017) ................................................................................ 12

*Miller v. RP On-Site, LLC*,
   2020 WL 6940936 (N.D. Cal. Nov. 25, 2020) ........................................ 8

*Moheb v. Nutramax Laboratories Inc.*,
   2012 WL 6951904 (C.D. Cal. Sept. 4, 2012) ....................................... 17

*O'Connor v. Uber Techs., Inc.*,
   904 F.3d 1087 (9th Cir. 2018) .............................................................. 12

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) .......................................................... passim

*Ono v. Head Racquet Sports USA, Inc.*,
   2016 WL 6647949 (C.D. Cal. Mar. 8, 2016) .................................... 9, 18

*In re POM Wonderful LLC*,
   2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ........................... 2, 20, 21

*Poulos v. Caesars World, Inc.*,
   379 F.3d 654 (9th Cir. 2004) ................................................................ 21

*Quinonez v. Pharm. Specialties, Inc.*,
   2017 WL 4769436 (C.D. Cal. Aug. 10, 2017) ...................................... 15

*Red v. Kraft Foods, Inc.*,
   2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) ....................................... 21

*Robinson v. Fountainhead Title Grp. Corp.*,
  252 F.R.D. 275 (D. Md. 2008) ............................................................... 11

*Saavedra v. Eli Lilly & Co.*,
  2015 WL 9916598 (C.D. Cal. July 21, 2015) ....................................... 1

*Saavedra v. Eli Lilly & Co.*,
  2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ................................ 24, 25

*Samet v. Proctor & Gamble Co.*,
  2019 WL 13167115 (N.D. Cal. Jan. 15, 2019) ..................................... 21

*Siles v. ILGWU Nat. Ret. Fund*,
  783 F.2d 923 (9th Cir. 1986) ................................................................ 23

*Silva v. B&G Foods, Inc.*,
  2022 WL 4596615 (N.D. Cal. Aug. 26, 2022) ................................ 18, 19

*Sinatro v. Barilla Am., Inc.*,
  2022 WL 10128276 (N.D. Cal. Oct. 17, 2022) ..................................... 16

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) .............................................................. 18

*Torrez v. Infinity Ins. Co.*,
  2022 WL 6819848 (C.D. Cal. Oct. 11, 2022) ....................................... 20

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ..................................................................... 18, 19

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ......................................................................... 17, 18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................................... passim

*Walker v. Life Ins. Co. of the Sw.*,
  953 F.3d 624 (9th Cir. 2020) ....................................................... 11, 23, 24

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) ................................................................ 15

*Wheeler v. Estee Lauder Companies, Inc.*,
  2013 WL 12121543 (C.D. Cal. Feb. 12, 2013) .................................... 15

*Williams v. Apple, Inc.*,
    338 F.R.D. 629 (N.D. Cal. 2021) ................................................................. 15, 16

**STATE CASES**

*Citaramanis v. Hallowell*,
    328 Md. 142 (1992) .......................................................................................... 20

*Golt v. Phillips*,
    308 Md. 1 (1986) .............................................................................................. 20

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009) .......................................................................... 20

**STATE STATUTES**

Cal. Civil Code § 1709 ....................................................................................... 6, 9

Cal. Bus. & Prof. Code § 17200 ............................................................................. 6

Cal. Bus. & Prof. Code § 17500 ............................................................................. 6

Md. Code, Com. Law § 13-301 .............................................................................. 6

**FEDERAL RULES**

Fed. R. Civ. P. 15(a)(3) ........................................................................................... 5

Fed. R. Civ. P. 23 ........................................................................................... passim

**OTHER AUTHORITIES**

Johnston, et al., *Watching the trailer: Researching the film trailer*
    *audience*, 13 Journal of Audience & Reception Studies 69 (2016),
    https://tinyurl.com/5n6mm7ye ........................................................................ 21

*Missing Trailer Scene*, tvtropes, https://tinyurl.com/bdfrujhd (last
    visited March 30, 2023) ..................................................................................... 5

Terms and Policies § 1, *Fandango*, https://tinyurl.com/mt86jbnx (last
    visited April 4, 2023) ....................................................................................... 12

Vudu Policy, *Fandango*, https://tinyurl.com/4vr6t3fn (last visited April
    4, 2023) ............................................................................................................. 12

*Yesterday Deleted Scene - "Something" on James Corden Show*,
      YouTube, https://www.youtube.com/watch?v=0TmCjQJvZ8c (last
      accessed April 3, 2023) ............................................................................. 4

Case No. 2:22-cv-00459-SVW-AGR

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## I.     INTRODUCTION

Plaintiffs seek to certify stunningly overbroad classes without a shred of supporting evidence on key elements.  As the Court has explained, "[a] party seeking to certify a class may not merely rest on his pleadings."  *Saavedra v. Eli Lilly & Co.*, 2015 WL 9916598, at *2 (C.D. Cal. July 21, 2015) (Wilson, J.).  "[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).  Plaintiffs have not done that, and their Motion to Certify, Dkt. 109 ("Mot."), should be denied on that ground alone.

Plaintiffs' lack of evidence is unsurprising because their proposed classes (and their own claims) are facially untenable.  Plaintiffs claim, in unsworn assertions by their counsel, that they paid to view *Yesterday* based on an approximately 15-second clip in a movie trailer in which the actress Ana de Armas appears and says nothing. Plaintiffs further claim the movie was *valueless* to them and every class member because de Armas did not make the movie's final cut.  Plaintiffs' proposed classes— everyone in California or Maryland who paid to watch the movie *Yesterday*, in any format or medium, for any reason—are wholly untethered from these claims and therefore fail each of Rule 23's "rigorous" requirements.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Besides having paid to see *Yesterday*, putative class members do not share anything in common with each other or with Plaintiffs.  Some did not see the trailer Plaintiffs challenge; some saw other promotional materials that did not include de Armas; some undoubtedly saw no promotional materials at all; some may have learned from press accounts that de Armas was not in the movie before seeing it; some—including those who bought the DVD or watched on Apple, Comcast, Movies Anywhere, and Verizon Stream TV—were able to watch the full scene featuring de Armas; and some of those who saw the single trailer at issue paid to see the movie for reasons other than de Armas' fleeting appearance in that trailer, e.g., the Beatles'

music, the innovative story, favorable reviews, or any one of a virtually unlimited list of reasons someone chooses to see a movie.

Plaintiffs address none of these obvious dissimilarities and fail to prove that classwide proceedings could "generate common *answers*" to any of Plaintiffs' claims, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); that Plaintiffs' claims are typical of the proposed classes'; and that individualized questions of exposure, reliance, injury, and standing would not predominate. *See* Fed. R. Civ. P. 23(a), (b)(3). Plaintiffs' motion further fails because they have no viable damages model. Plaintiffs offer a "full refund" model, pursuant to which they say that "not a single consumer received a single benefit" from watching *Yesterday* without de Armas. *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 & n.2 (C.D. Cal. Mar. 25, 2014). That claim is absurd, and Plaintiffs do not offer any evidence to support it. Plaintiffs also vaguely claim they will, at some undefined time, submit what they call a "price premium" model. But Plaintiffs must satisfy Rule 23's requirements—with "evidentiary proof," *Comcast*, 569 U.S. at 33—"*before* class certification," *Halliburton*, 573 U.S. at 276 (emphasis added). Plaintiffs also have no standing to pursue a Rule 23(b)(2) (injunctive relief) class. And even if they did, Plaintiffs have failed to prove injunctive relief is "'appropriate respecting the class *as a whole*.'" *Dukes*, 564 U.S. at 365.

Plaintiffs' proposed alternative classes and "liability" class under Rule 23(c)(4) fail for the same reasons that doom their proposed (b)(2) and (b)(3) classes.

## II.   BACKGROUND

### A.   Factual Background

1. <u>*Yesterday* Was Promoted in a Variety of Channels, Through Different Media—Almost None of Which Featured de Armas</u>

*Yesterday* tells the story of struggling musician Jack Malik (played by Himesh Patel), who awakens after a bicycle accident during a worldwide power outage to discover that the world's knowledge of The Beatles and their music has been erased.

Third Amended Complaint ("TAC"), Dkt. 111-3 ¶ 41.[1]  Malik takes advantage of this opportunity to adopt The Beatles' songs as his own.  TAC ¶ 41.  Malik struggles to navigate his newfound fame and his relationship with longtime, hometown friend, and eventual love interest, Ellie (played by Lily James).  TAC ¶ 42.  The movie includes numerous well-known figures, including Kate McKinnon and Ed Sheeran.

*Yesterday* was released in theaters on June 28, 2019.  Declaration of Matt Apice ("Apice Decl."), Ex. 1 (UNI000815).  Before then, *Yesterday* was promoted in a variety of channels, including theatrical previews (i.e., trailers that play in theaters before the feature film), on network and cable TV, on digital and social media platforms, on the radio, and in physical media including billboards.  Apice Decl., Ex. 1 (UNI000816-UNI000818, UNI000836-UNI000840).  Dozens of different trailers, TV spots, teasers, and other digital and physical media were created to introduce audiences to *Yesterday*.  Apice Decl. ¶ 2, Exs. 4-72 (UNI000744-UNI000747, UNI000748,  UNI000749-UNI000760,  UNI000761-UNI000773,  UNI000776-UNI000808, UNI000809-UNI000814).  All told, there were over 75 different pieces of creative content designed to increase awareness of the movie.  *See id.*

This lawsuit is about a single digital trailer (the "Subject Trailer").  The Subject Trailer includes a clip approximately 15 seconds long (the "Clip"), in which Malik appears on the set of *The Late Late Show with James Corden*, seated on a couch next to an unidentified woman (played by de Armas).  *See* Apice Decl., Ex. 2 (UNI000774); TAC ¶ 42.  Corden says to Malik:  "We would like you to write something, right now," and Malik responds by performing The Beatles' song "Something."  Apice Decl., Ex. 2 (UNI000774); TAC ¶ 42.  As Plaintiffs admit, de

---

[1] For this Opposition, Universal assumes the proposed TAC (Dkt. 111-3) the Court granted leave to file (Dkt. 115) is the operative complaint.  Universal has not had an opportunity to depose Plaintiffs about that pleading (or any other).  Universal agreed to postpone the depositions noticed for March 20 in reliance on Plaintiffs' counsel's representation that the depositions would "be rescheduled to take place after the pleadings are amended."  Declaration of Stephanie G. Herrera ("Herrera Decl.") ¶ 11.

Armas does not speak a word and does not otherwise appear in the trailer, nor does her name.  *See* Apice Decl., Ex. 2 (UNI000774); Declaration of Stephanie G. Herrera ("Herrera Decl."), Exs. A-B (Responses to Requests for Admission Nos. 4 & 5).

The Clip does not appear in any other trailer or teaser for the film (including the theatrical trailer that played in theaters before other movies), nor in any still displays or TV spots, which comprised the bulk of promotional material for the film.  *See* Apice Decl. ¶ 6, Ex. 1 (UNI000816).  De Armas does not appear in any other digital or physical promotional material for the movie, all of which feature the film's leads, Patel and/or James.  *See* Apice Decl., Exs. 51-68 (UNI000749-UNI000760, UNI000809-UNI000810, UNI000812-UNI000814, UNI000811).

> ## 2.   It Has Been Publicly Known for Years That de Armas Is Not in the Movie—and Also That the Scene Is Available for Viewing

The scene from which the Clip was taken (the "Scene") was not in the theatrically released version of the movie.  *See* TAC ¶ 44.  The Scene is, however, available to the public on Youtube.com,[2] and is included with purchase as bonus content for consumers who pay to view *Yesterday* in any format that allows the inclusion of bonus material, including on DVD and on Apple TV, Comcast, Movies Anywhere, and Verizon Stream TV.  Apice Decl. ¶ 12 & Ex. 73 (UNI000212).

None of this has been a secret.  As Plaintiffs admit, *Yesterday*'s director, Danny Boyle, gave a published interview *before the movie was released* that discussed the fact that "*Yesterday Cut An Entire Character From The Film That Would Have Changed The Plot.*"  TAC ¶¶ 43-44; Herrera Decl., Ex. C (UNI000207-211).

Moreover, it is well known to consumers that movie trailers, from *Frozen* to *Jurassic Park* to installments in the *Spider-Man* and *Star Wars* franchises, often contain clips that ultimately are not included in the film's final cut.  *See* Herrera Decl.,

---

[2] The Scene has been viewed at least 2.5 million times since September 29, 2019. *See Yesterday Deleted Scene – "Something" on James Corden Show*, YouTube, https://www.youtube.com/watch?v=0TmCjQJvZ8c (last accessed April 3, 2023).

Exs. D-I (UNI000008-UNI000206).   Indeed, as one industry commentator has explained, "almost every movie with a sufficient amount of promotional material will feature at least some shots not in the final movie," which usually happens because, as here, "the trailers are released while the film itself is still being edited."  *Missing Trailer Scene*, tvtropes, https://tinyurl.com/bdfrujhd (last visited March 30, 2023).

### 3.   Plaintiffs' Allegations

Plaintiffs Woulfe (of Maryland) and Rosza (of California) allege that in July and October 2021, respectively—more than two years after *Yesterday*'s release—they each watched the Subject Trailer on "Amazon.com's internet movie streaming service."  TAC ¶¶ 7, 10.  Plaintiffs allege that they each paid $3.99 to stream the movie on Amazon because they wanted to see the Scene.  TAC ¶¶ 7-8, 10-11.

In the TAC, Woulfe alleges for the first time that, in addition to Amazon, he "recently paid to rent *Yesterday* on Google Play, based upon the reasonable presumption that the current cast listing that identifies Ms. de Armas as a cast member would be accurate."  TAC ¶ 145.  Woulfe does not specify to which "cast listing" this allegation refers to, but the implication is that it refers to the image in the prior paragraph, which the TAC refers to as a "Google advertisement."  TAC ¶ 144.  This image is not an "advertisement."   Instead, the image reflects search results on Google—a service not owned or controlled by Universal—after typing "yesterday movie" into the search bar.  Herrera Decl. ¶ 13.  Google Play, the content arm of Google, does not mention de Armas.  Herrera Decl. ¶ 14.[3]

Plaintiffs include allegations about promotional material and information about

---

[3] Universal will move to dismiss the TAC and will move to strike several aspects, including Woulfe's new allegations concerning Google search results and Google Play.  *See* Fed. R. Civ. P. 15(a)(3).  Woulfe's allegations are a transparent attempt to manufacture standing; among other things, it is simply implausible that, more than a year into this litigation, Woulfe reasonably expected the Scene to appear in the movie. For purposes of this Opposition, Universal assumes Woulfe may seek to certify a Maryland class on the basis of the search results and his alleged Google Play purchase.

the movie that Plaintiffs admit they did not see or rely on before paying to view *Yesterday*. TAC ¶¶ 24-33, 90; Herrera Decl., Exs. A-B (Responses to Requests for Admission Nos. 7-13, 16-17). The Court has ruled that Plaintiffs "do not have standing to pursue claims challenging alleged false advertising on platforms which Plaintiffs did not use to view the movie." Dkt. 115. Universal therefore does not address these allegations. *See Blum v. Yaretsky*, 457 U.S. 991, 1001 & n.13 (1982).

## B. Procedural History

Plaintiffs filed this action on January 21, 2022. Dkt. 1. After several amendments, Plaintiffs filed a Second Amended Complaint ("SAC"), asserting 11 claims under Maryland and California law. Dkt. 36. On December 20, 2022, the Court issued an Order striking from the SAC:

- Six claims with prejudice, leaving only those under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200;[4] the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law § 13-301; and for unjust enrichment under both states' laws. Dkt. 83.

- All of Plaintiffs' claims to the extent they were based on promotional material Plaintiffs did not see. The Court reasoned: "Plaintiffs do not have standing to challenge" such material because they "did not watch the movie . . . on the basis of" it. *Id.* at 13 n.7. The Court reiterated this ruling recently: "Plaintiffs do not have standing to pursue claims challenging alleged false advertising on platforms which Plaintiffs did not use to view the movie." Dkt. 115.

- Plaintiffs' request for injunctive relief for want of Article III standing, without prejudice. Dkt. 83 at 26-28.

On March 9, 2023, the Court ordered "Plaintiffs to submit an amended complaint" to "reassert injunctive relief." Dkt. 107.

On March 20, 2023, Plaintiffs moved for leave to file their TAC, which the Court granted on March 28. Dkt. 115. The TAC reasserts the six surviving claims from the SAC, plus a renewed request for an injunction. The TAC also adds Woulfe's allegations concerning Google. TAC ¶¶ 144-145.

---

[4] The Court struck the majority of predicate violations that Rosza had alleged to form the basis of his claim under the UCL's "unlawful" prong, leaving only "1) other prongs of the UCL, 2) the FAL, and 3) Section 1709." Dkt. 83 at 20-23.

Before moving for leave to amend, Plaintiffs filed the instant Motion for class certification on March 15, 2023.  Dkt. 109.  They seek to certify two classes under Rule 23(b)(2) and (b)(3), one for California residents and another for Maryland residents, of "[a]ll persons" in those states "who purchased . . . any tickets for theater viewership, or who rented or purchased physical or electronic copies of the movie . . . for personal use."  *Id.* at 1-2.[5]  Plaintiffs propose two "alternative" classes and, if all else fails, a liability class under Rule 23(c)(4).  Mot. at 7-8, 14.  Aside from counsel's unauthenticated CVs, Plaintiffs did not submit *any* evidence in support of their Motion:  no expert testimony, no declarations (not even their own), and no materials Universal produced in discovery (which Plaintiffs insisted were relevant to class certification, *see* Dkt. 103).

## III.  LEGAL STANDARD

To certify a class, Plaintiffs must "'affirmatively demonstrate [their] compliance' with Rule 23."  *Comcast*, 569 U.S. at 33.  Plaintiffs must satisfy Rule 23(a)'s four requirements, *proving*, not merely *pleading*, "'there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation."  *Id.*; *see* Fed. R. Civ. P. 23(a).

Plaintiffs "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."  *Comcast*, 569 U.S. at 33.  The Motion seeks certification under two provisions:  Rule 23(b)(2), which requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole"; and Rule 23(b)(3), which requires proof that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods" to resolve the claims.

---

[5] Plaintiffs ask for Woulfe and Rosza to be appointed class representatives for the California and Maryland classes, respectively.  Dkt. 109 at 2.  They apparently have it backwards:  Woulfe is from Maryland and Rosza is from California.  TAC ¶¶ 6.9.

Plaintiffs "must carry their burden of proof 'before class certification.'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (citation omitted).  "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis,'" that Plaintiffs did so.  *Comcast*, 569 U.S. at 33 (citation omitted). Universal "is not required to present evidence to defeat class certification." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012).

The failure to prove even one of these requirements compels the denial of class certification, but here, Plaintiffs have not proven *any*.  Accordingly, no class can be certified, and their Motion should be denied.

## IV.  ARGUMENT

### A.  Plaintiffs Do Not Satisfy Any of Rule 23(a)'s Mandatory Requirements

#### 1.  Plaintiffs Fail to Prove Numerosity

"As with all of Rule 23's requirements, the party seeking certification has the burden of establishing that numerosity is met."  *Anderson v. Cent. Refrigerated Serv., LLC*, 2017 WL 11635450, at *3 (C.D. Cal. July 6, 2017).  Plaintiffs offer no evidence to satisfy this burden, just a conclusory allegation that Universal "has sold at least hundreds of thousands of *Yesterday* tickets, or online or physical rentals or purchases," which Plaintiffs wrongly say Universal "fail[ed] to dispute."  Mot. at 2; *cf.* Dkt. 87 ¶ 120 (denying allegation).  Plaintiffs "cannot rely on conclusory allegations . . . to prove numerosity." *Anderson*, 2017 WL 11635450, at *3; *see Miller v. RP On-Site, LLC*, 2020 WL 6940936, at *4 (N.D. Cal. Nov. 25, 2020) ("failure to present evidence to show numerosity precludes class certification").  And, even if Plaintiffs' unsupported assertion were accurate, Plaintiffs do not address how many purchases occurred in *California* or *Maryland*—the only states at issue here.  Indeed, despite subpoenaing Amazon, Best Buy, Apple, and Barnes & Noble for information regarding the number of *Yesterday* purchases in those states, Herrera Decl., Exs. J-O, Plaintiffs failed to introduce any such data.

## 2. Plaintiffs' Claims Are Not Typical of the Classes'

Typicality serves as a "guidepost[]" for determining whether "maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 350 n.5. Typicality asks "whether other members have the same or similar injury" as Plaintiffs, "whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).

Plaintiffs' claims require proof of reliance on a material misrepresentation.[6] Reliance requires that the misrepresentation be an "immediate cause" of a consumer's "injury-producing conduct such that in its absence" he or she "'in all reasonable probability' would not have engaged in the injury-producing conduct." *Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014) (citation omitted). Thus, Plaintiffs must prove all class members were exposed to, misled by, and paid to view the film because of the alleged misrepresentation. Plaintiffs do not show their claims are cohesive or "interrelated," *Dukes*, 564 U.S. at 350 n.5, with class members' in these respects.

***Exposure.*** Plaintiffs introduce no evidence that all putative class members saw the Subject Trailer (or the newly-alleged Google search results)[7], let alone the Clip. *See Bruno v. Quten Rsch. Inst.*, LLC, 280 F.R.D. 524, 534 (C.D. Cal. 2011) ("Plaintiff has failed to show she is typical of those class members" who were not "exposed to" the same alleged misrepresentation). It is highly unlikely Plaintiffs could ever make

---

[6] *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (UCL and FAL), *overruled on other grounds by Olean*, 31 F.4th at 682 n.32; *Ono v. Head Racquet Sports USA, Inc.*, 2016 WL 6647949, at *15 (C.D. Cal. Mar. 8, 2016) (unjust enrichment); *Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 712 (D. Md. 2014) (MCPA); *Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1182-83 (C.D. Cal. 2006) (Cal. Civil Code § 1709).

[7] If those new allegations survive. *Supra* at 5 n.3.

such a showing because the 15-second clip does not appear in *any promotional content* other than the Subject Trailer.  *See* Apice Decl., Exs. 3-68 (UNI000775, UNI000748, UNI000761-UNI000773, UNI000776-UNI000808, UNI000749-UNI000760, UNI000809-UNI000810, UNI000812-UNI000814, UNI000811).  As noted, of the more than 75 different pieces of creative content designed to increase awareness of the movie, the Clip appeared only in the Subject Trailer.  Plaintiffs' failure to prove classwide exposure to "the same course of conduct" makes Plaintiffs' claims atypical.  *Ellis*, 657 F.3d at 984.

*Falsity.*  Plaintiffs also introduce no evidence, and thus fail to satisfy their burden, to show "that the challenged statements were actually false as applied to all (or even most) classmembers."  *Konik v. Time Warner Cable*, 2010 WL 8471923, at *9 (C.D. Cal. Nov. 24, 2010) (Wilson, J.).  As explained above, putative class members who paid to view the movie on DVD, Apple, Comcast, Movies Anywhere, or Verizon Stream TV received the Scene as part of their film content in the bonus materials, and others who had any interest in the Scene or de Armas have likely seen the Scene on YouTube, where it is publicly available for free and has been viewed millions of times.  "Plaintiffs' claims cannot be typical of" these putative class members "for whom the statements in question were actually correct and not deceptive."  *Id.*  Plaintiffs' failure of proof on this score is another failure of typicality.

*Reliance.*  Most egregiously, Plaintiffs introduce no evidence showing that a single class member actually *relied* on the alleged misrepresentation and was "injured by the same course of conduct" and "have the same or similar injury" as Plaintiffs.  *Ellis*, 657 F.3d at 984.  Plaintiffs offer no proof that:

- All class members knew who de Armas was or cared whether she was in the movie;

- Those who saw the Subject Trailer and Clip were not aware that de Armas was not in the final movie (e.g., from press);

- Those who saw the Subject Trailer and Clip were not aware of the well-known fact that trailers often include clips or songs not in the final movie;

- No class members would have seen the movie for another reason, such as to hear the Beatles' music, interest in the concept and plot, and/or a desire to see other famous actors and musicians in the movie (e.g., Ed Sheeran, Lily James, or Kate McKinnon).

Plaintiffs' failure to present evidence on these points is not surprising:   All persons who pay to see the same movie—and even all persons who viewed the Subject Trailer (or Google search results)—will have different entertainment preferences and experiences and thus "varying rationales behind their purchases."  *Konik*, 2010 WL 8471923, at *6.  Exit polls of moviegoers on *Yesterday*'s opening weekend confirm that individuals have widely varying reasons for seeing the movie.  *See* Apice Decl., Ex. 74 (UNI000742) (summarizing viewers' top reasons).  Unsurprisingly, de Armas was not reported as a reason exiting movie-goers reported for seeing the movie.  *Id.* This diversity of reasons for seeing the movie is yet another reason Plaintiffs' claims are atypical.  *See Konik*, 2010 WL 8471923, at *6 ("when reliance is required to prove plaintiff's claim, plaintiff is not typical where the class includes individuals with varying rationales behind their purchases").[8]

Plaintiffs' vague suggestion that actual reliance may be presumed, Mot. at 7, fails.  A limited presumption of reliance under the UCL, FAL and MCPA arises only when "the defendant so pervasively disseminated material misrepresentations that all plaintiffs *must have been exposed to them*."  *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630-31 (9th Cir. 2020) (emphasis added); *see In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 160 (D. Md. 2022).  Plaintiffs offer *zero* evidence of classwide exposure.  And given the Clip's limited reach, Apice Decl., Ex. 1 (summarizing audience delivery by media vehicle), it is "unreasonable to

---

[8] *See also Fine v. ConAgra Foods, Inc.*, 2010 WL 3632469, at *3 (C.D. Cal. Aug. 26, 2010) ("Plaintiff fails to establish that she is a typical representative of the class" because she "seeks to certify a class that would likely include people with varying rationales behind their purchases."); *Robinson v. Fountainhead Title Grp. Corp.*, 252 F.R.D. 275, 289 (D. Md. 2008) ("there are sufficient variances between Robinson's claims and the claims of the class to defeat typicality," including that "individual class members may have chosen to procure this enhanced policy" anyway).

Case No. 2:22-cv-00459-SVW-AGR

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

assume that all class members viewed" it. *Mazza*, 666 F.3d at 596 (rejecting presumption and reversing certification); *see Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014) (affirming denial of certification and rejecting presumption because not "all of the members of his proposed class were exposed to Home Depot's alleged deceptive practices"), *overruled on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017).

**Arbitration.** Plaintiffs' claims are atypical for another reason: As currently defined to include everyone who paid to see the movie on any platform, their proposed classes "include[] [members] who entered into agreements to arbitrate their claims and to waive their right to participate in a class action with regard to those claims." *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018); *see, e.g.*, *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 913 (9th Cir. 2021). For example, members who watched the movie on VUDU are bound by that platform's class-action waiver.[9] Vudu Policy, *Fandango*, https://tinyurl.com/4vr6t3fn (last visited April 4, 2023); Terms and Policies § 1, *Fandango*, https://tinyurl.com/mt86jbnx (last visited April 4, 2023). As a third-party beneficiary to those agreements,[10] Universal is entitled to enforce them against absent class members. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643-44 (2020). This is yet another reason why Plaintiffs are "neither typical of the class nor [] adequate representative[s], and because the proceedings would be unlikely to generate common answers." *Lawson*, 13 F.4th at 913.

### 3.   Plaintiffs Fail to Prove Commonality

To show commonality, Plaintiffs must demonstrate issues of law or fact

---

[9] As noted above, the Court repeatedly has held that Plaintiffs do not have standing to assert claims based on VUDU, but Plaintiffs persist in including such individuals in their class definition.

[10]  Vudu Policy, https://tinyurl.com/4vr6t3fn ("Each content provider shall be deemed an intended third party beneficiary to this Vudu Policy with respect to any rights that Vudu may have").

"capable of classwide resolution." *Dukes*, 564 U.S. at 349-50. "What matters . . . is not the raising of common 'questions' . . . but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350. The Court must conduct a "'rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the class-wide evidence to [answer]' the common question in one stroke." *Olean*, 31 F.4th at 666.

In this case, the "assessment" is straightforward: Plaintiffs present no classwide evidence and no methods. Plaintiffs simply assert, *ipse dixit*, that class members' claims depend on a common "contention" that "De Armas' promotion in *Yesterday* misled movie viewers to expect she appeared in the film." Mot. at 2. Plaintiffs do not explain with what evidence or methods they propose to establish the truth or falsity of this contention on a classwide basis—or even as to themselves (they submit no declarations). *See Dukes*, 564 U.S. at 350 (to be a common contention, "determination of its truth or falsity" must "resolve an issue that is central to the validity of each one of the claims in one stroke"). This evidentiary failure alone precludes commonality. *See Ellis*, 657 F.3d at 981, 983 ("If there is no evidence that the entire class was subject to the same [challenged conduct], there is no question common to the class.").

Plaintiffs' evidentiary failure is particularly glaring because their proposed classes are not limited to consumers who were exposed to the Clip in the Subject Trailer or the Google search results (the only alleged misrepresentations they claim to have standing to pursue, *see* Dkt. 115). Plaintiffs take it as a given that every person who saw the Subject Trailer or Google search results expected to see de Armas in the movie, cared whether she was in the film, were not already aware that she was not in certain versions, and would not have seen the movie for any number of other reasons anyway. These points are far from obvious given that:

- The Clip does not appear in other trailers, TV spots, teasers, or digital or physical promotions for the movie, *see* Apice Decl., Exs. 3-68;

- It was publicly reported *before the movie's release* that de Armas was not in the final cut, Herrera Decl., Ex. C;

- Trailers often include scenes and actors who are not in the theatrical release, Herrera Decl., Exs. D-I (UNI00008-UNI000206);

- Not every person who saw the Subject Trailer or Google search results would have known who de Armas was; and

- Exit polls of consumers confirm many reasons for viewing that had nothing to do with the Subject Trailer or de Armas.   Apice Decl., Ex. 74 (UNI000742).

Given these core dissimilarities, any inquiry into class members' expectations about de Armas' appearance in *Yesterday* will necessarily be individualized, as discussed *infra* with respect to Rule 23(b)(3), and will yield no "common answer." *See Dukes*, 564 U.S. at 350 ("[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers").

### 4.   Plaintiffs Fail to Show They Are Adequate Class Representatives

To satisfy Rule 23(a)'s adequacy requirement, Plaintiffs must show that they and their counsel will "fairly and adequately represent the class." *Cochoit v. Schiff Nutrition Int'l, Inc.*, 326 F.R.D. 631, 635 (C.D. Cal. 2018).  This is not a *pro forma* prerequisite; it "ensures that the constitutional protections of due process and full faith and credit are afforded to absent class members."  *Id.*   Adequacy turns on two questions:  "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Ellis*, 657 F.3d at 985.

Plaintiffs make no showing regarding their own adequacy.  They conclusorily assert that they are seeking relief "identical to what they seek for the Class," and that they and their counsel "will continue to prosecute the action vigorously on behalf of the Class." Mot. at 3 (quotation marks and citation omitted).  This recitation does not satisfy Plaintiffs' burden.

Plaintiffs' counsels' failure to submit any evidence alongside their Motion— not even Plaintiffs' own declarations or the expert analysis necessary to prove a

common damages methodology, *see infra* at 20-22—undermines their adequacy to represent absent class members. *See Quinonez v. Pharm. Specialties, Inc.*, 2017 WL 4769436, at *4 (C.D. Cal. Aug. 10, 2017) (counsel's failure "to attach any substantive evidence at all to support this Motion for certification," not "even a declaration from [the named] representative" or "evidence in support of a common mechanism for calculation of damages," "strongly shows Counsel's inadequacy"); *Wheeler v. Estee Lauder Companies, Inc.*, 2013 WL 12121543, at *5 (C.D. Cal. Feb. 12, 2013) (finding counsel inadequate because "[s]he did not submit any evidence along with the Motion" and "attempted to rely on mere factual allegations from the FAC to support her Motion," which shows "[s]he was either unaware of Plaintiffs' burden to provide evidence at class certification or she was aware of the burden and ignored it").

## B. Plaintiffs Lack Standing and Do Not Satisfy the Requirements to Certify a Class Under Rule 23(b)(2)

Plaintiffs cannot certify their Rule 23(b)(2) classes because they do not satisfy Rule 23(a). Plaintiffs' patently deficient showings on adequacy and typicality are particularly problematic, as these requirements "take on special resonance . . . because Rule 23(b)(2) classes are non-opt-out classes.'" *Williams v. Apple, Inc.*, 338 F.R.D. 629, 657 (N.D. Cal. 2021). Even setting Rule 23(a) aside, Plaintiffs' proposed classes cannot satisfy Rule 23(b)(2).

### 1. Plaintiffs Lack Standing to Certify a Class Under Rule 23(b)(2)

To certify a Rule 23(b)(2) class, the named plaintiffs must have standing to pursue injunctive relief. *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013); *Bruton v. Gerber Prod. Co.*, 2018 WL 1009257, at *5 (N.D. Cal. Feb. 13, 2018). Plaintiffs do not. *See* Dkt. 83 at 26-28. As Universal will explain in more detail in its forthcoming motions to strike and dismiss the TAC, Plaintiffs have not alleged a risk of future injury that is "*certainly impending.*" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). Plaintiffs' claimed intention to re-watch *Yesterday* over and over because Universal "*might*" someday release a version

with de Armas, TAC ¶ 147 (emphasis in original); *see, e.g.*, TAC ¶¶ 145-146, 151, "invites the Court to engage in improper speculation" about whether Universal will "release[] another version" and, if so, whether that version "would again omit the deleted scene." Dkt. 83 at 27-28; *see Sinatro v. Barilla Am., Inc.*, 2022 WL 10128276, at *10 (N.D. Cal. Oct. 17, 2022). Without a reasonable basis to believe Universal will do this (Plaintiffs offer none), Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves" by re-watching versions of the movie they know de Armas is not in. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *see Davidson*, 889 F.3d at 970 (plaintiff's intention to "purchase the product in the future" is insufficient unless she "may reasonably . . . assume the product was improved"). To the extent anyone truly cares about seeing the Scene, it is available free of charge on YouTube. *See* note 2, *supra*.

> 2.   Even If Plaintiffs Had Standing, the Rule 23(b)(2) Classes Fail

Even if Plaintiffs had standing to certify Rule 23(b)(2) classes (they do not), they have not shown that (1) Universal "acted or refused to act on grounds that apply generally to the class," or that (2) "final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs do not identify the specific injunctive relief they are seeking, let alone explain why it is appropriate regarding the class as a whole. Mot. at 4. Their entire affirmative argument is set forth in a single sentence that merely quotes the Rule and asserts—without any evidence—that Universal has refused to "commit[] to refrain from misleading movie promotion activities beyond *Yesterday*." Mot. at 4. The Court can and should hold that the "injunctive class has been waived" by Plaintiffs' "failure to meaningfully analyze the injunctive class in [a] motion for class certification." *Williams*, 338 F.R.D. at 657 (collecting cases).

In any event, Plaintiffs have not proven that even a single class member intends to watch *Yesterday* again or could benefit from an injunction. *See Dukes*, 564 U.S. at 365 (class "should not be certified under Rule 23(b)(2)" where many members "have

-16-

no more need for prospective relief" and "'final injunctive relief'" is therefore not "'appropriate respecting the class *as a whole*'").[11]   What is more, Plaintiffs suggest that their request for Rule 23(b)(2) certification is intended primarily to secure "damages," Mot. at 4—but "claims for monetary relief may [not] be certified under that provision," *Dukes*, 564 U.S. at 360.

### C.   Plaintiffs' Proposed Classes Do Not Satisfy Rule 23(b)(3)

Plaintiffs' proposed classes seeking monetary relief fail because they do not satisfy Rule 23(a).  Even if they did, they cannot survive under Rule 23(b)(3).

#### 1.   Plaintiffs Do Not Show Predominance

To satisfy Rule 23(b)(3), Plaintiffs must prove that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  *Comcast*, 569 U.S. at 34.  Plaintiffs' claims present many "individual question[s]" of exposure, reliance, and standing that require "evidence that varies from member to member." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

***Exposure.***  Plaintiffs have not introduced any evidence of uniform exposure. *Supra* at 9-10.  Given the vast array of promotional material that did not include de Armas, *see* Apice Decl., Exs. 3-72, assessing exposure would require looking at whether each class member saw the Subject Trailer (or the newly-alleged Google search results).  These individual questions would overwhelm any common ones.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997); *Berger*, 741 F.3d at 1070; *Ono*, 2016 WL 6647949, at *15.

---

[11] *See also, e.g.*, *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 559 (C.D. Cal. 2012) ("the class includes former owners of class vehicles who will not benefit from declaratory or injunctive relief"); *Moheb v. Nutramax Laboratories Inc.*, 2012 WL 6951904, at *6 (C.D. Cal. Sept. 4, 2012) (many "consumers in the Class . . . will not benefit from injunctive relief" because they "will likely continue" their conduct "regardless of [the defendant's] advertising").

*Reliance.*   Without uniform exposure, Plaintiffs cannot invoke a classwide presumption of reliance to prove that element of their claims.  *Berger*, 741 F.3d at 1069; *Mazza*, 666 F.3d at 596.  "And without the presumption of reliance," their "suit cannot proceed as a class action: Each plaintiff would have to prove reliance individually, so common issues would not 'predominate' over individual ones." *Halliburton*, 573 U.S. at 281-82;[12] *see supra* at 10-11 (noting the many individual components of reliance in this case).  For this reason alone, Plaintiffs cannot certify a Rule 23(b)(3) class.  Even if Plaintiffs were able to invoke a classwide presumption of reliance, the only evidence on this point—the exit polls—would rebut that presumption, demonstrating (as one would expect) a diversity of reasons for seeing the movie.  *See* Apice Decl., Ex. 74 (UNI000742).

*Injury/Standing.*   Individual questions of injury and standing likewise preclude certification.  "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021); *see Tyson Foods*, 577 U.S. at 457 (rejecting notion that class members may be "absolve[d] . . . from proving individual injury").  That is true even if state law imposes an "objective reasonable consumer standard" under which an absent class member's *statutory* injury may be presumed in certain narrow circumstances. *Silva v. B&G Foods, Inc.*, 2022 WL 4596615, at *3 (N.D. Cal. Aug. 26, 2022).  The state-law standard raises "different questions from whether class members suffered the economic injury that forms the basis of Plaintiffs' claims," for under Article III, "[u]ninjured class members cannot recover individual damages, even if there has been

---

[12] *See also, e.g.*, *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1959 (2021) ("without the . . . presumption, individualized issues of reliance ordinarily would defeat predominance and 'preclude certification'"); *Mazza*, 666 F.3d at 596 ("common questions of fact do not predominate where an individualized case must be made for each member showing reliance"); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1023-24 (9th Cir. 2011) (affirming denial of class certification given "myriad reasons" for class members' conduct).

1    a statutory violation." *Id.*

2         Rule 23 "requires a district court to determine whether individualized inquiries

3    into this [Article III] standing issue would predominate over common questions."

4    *Olean*, 31 F.4th at 668 n.12; *see Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459,

5    469 (9th Cir. 2023).[13]   A class "fails predominance" absent a "common method of

6    proving the fact of injury"—that is, where "many of its members were never exposed

7    to the challenged [statements] or, if they were, were never injured by them." *Castillo*

8    *v. Bank of Am., NA*, 980 F.3d 723, 732 (9th Cir. 2020).

9         "Plaintiffs have failed to put forth any evidence in this case—survey or

10   otherwise—by which economic injury could be determined by common proof." *Silva*,

11   2022 WL 4596615, at *3.   Nor have they shown that all putative class members were

12   exposed to, or otherwise injured by, the Subject Trailer (or alleged Google search

13   results). *See Castillo*, 980 F.3d at 732.   Indeed, the opposite is true: "the vast majority

14   of class members more likely than not suffered no economic harm." *Silva*, 2022 WL

15   4596615, at *3.   Some class members paid to see *Yesterday* after seeing trailers or

16   marketing without de Armas, or no marketing at all.   Others did not know who de

17   Armas was, did not care whether the Scene was in the movie, and/or would have seen

18   the movie anyway for myriad other reasons. *See* Apice Decl., Ex. 74 (UNI000742)

19   (exit polls summarizing viewers' top reasons for attending).   And still others saw the

20   Scene, as Universal allegedly promised. *Supra* at 4.   Absent a classwide mechanism

21   to distinguish these uninjured class members from any injured ones, "individualized

22   questions over whether class members suffered concrete harm would overwhelm

23   common questions." *Id.*; *see Olean*, 31 F.4th at 668 n.12.

24

25   _____

26   [13] It is an open question "whether every class member must demonstrate standing
     *before* a court certifies a class." *TransUnion*, 141 S. Ct. at 2208 n.4.   But the time
27   each class member must "demonstrate" an injury sufficient to confer standing is
     irrelevant to whether those demonstrations (whenever they happen) will overwhelm
28   any common questions.

2.   <u>Plaintiffs Do Not Propose a Viable Damages Model</u>

Plaintiffs also must propose a damages model that "measure[s] only those damages attributable to [their] theory" of liability.  *Comcast*, 569 U.S. at 35.  Neither of Plaintiffs' suggested models are viable here.  Mot. at 9-13.  A full refund model is inconsistent with their theory of liability, and they have not actually proposed a price premium model for this case (nor could they in light of the economics here).

**Full Refund Model.**   "[A] model purporting to serve as evidence of damages in this class action must measure only those damages" to which Plaintiffs "would be entitled" if they succeeded.  *Comcast*, 569 U.S. at 35.  For their UCL, FAL, and unjust enrichment claims, Plaintiffs would be entitled to restitution.  *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009); *Torrez v. Infinity Ins. Co.*, 2022 WL 6819848, at *5 (C.D. Cal. Oct. 11, 2022) (Wilson, J.).  For his MCPA claim, Woulfe would be entitled to actual damages.  *Citaramanis v. Hallowell*, 328 Md. 142, 155-56 (1992).  Both restitution and actual damages depend on "the difference between what the plaintiff paid and the value of what the plaintiff received."  *POM Wonderful*, 2014 WL 1225184, at *3; *see Golt v. Phillips*, 308 Md. 1, 12 (1986).

Plaintiffs' full refund "model does not even attempt to" calculate that difference, and thus "cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."  *Comcast*, 569 U.S. at 35.  Their model assumes that the difference between what class members paid to view *Yesterday* and the value they received from viewing the movie is 100%—i.e., "not a single consumer received a single benefit."  *POM Wonderful*, 2014 WL 1225184, at *3 & n.2; *see Caldera v. J.M. Smucker Co.*, 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014) ("a full refund would only be appropriate if not a single class member received any benefit from the products").  Plaintiffs offer no evidence to support the untenable assumption that no class member derived *any value* from the movie.  Exit polls for *Yesterday*'s opening weekend confirm Plaintiffs' assumption is wrong:   Moviegoers gave the film high ratings and reported high levels of

satisfaction.[14]   Apice Decl., Ex. 74 (UNI000741).  Plaintiffs' full refund model "is invalid" because "it fails to account for any value consumers received."  *POM Wonderful*, 2014 WL 1225184, at *3.[15]

**Price Premium Model.**  Plaintiffs say that at some future point, they will present an "expert survey" to "isolate the role of De Armas in *Yesterday*."  Mot. at 13.  This will not do:  Plaintiffs "must carry their burden of proof '*before* class certification.'"  *Olean*, 31 F.4th at 664 (emphasis added).  A hypothetical survey by a hypothetical expert in the future does not suffice to "satisfy *through evidentiary proof* . . . the provisions of Rule 23(b)."  *Comcast*, 569 U.S. at 33 (emphasis added).  Without the model as actually designed and applied to this case, Plaintiffs cannot show, for example, that it measures only damages attributable to their theory of liability, that its analysis is reliable, or that the expert who created it is qualified to do

---

[14] To the extent they can be considered applicable at all, the surveys Plaintiffs cite— which do not discuss *Yesterday* or the Subject Trailer and predate the movie's release—do not suggest otherwise.  *See* Mot. at 10-11; *cf.* Apice Decl., Ex. 74 (UNI000741).  To the contrary, the surveys tend to show consumers *did* derive value from the movie.  One survey, for example, reveals that 68% of moviegoers did *not* find the cast to be even a "memorable element" of the last movie trailer they viewed, while many other respondents found the "narrative," "[a]esthetic," "[s]oundtrack," and "comedy" to be memorable.  Johnston, et al., *Watching the trailer: Researching the film trailer audience*, 13 Journal of Audience & Reception Studies 69 (2016), https://tinyurl.com/5n6mm7ye.  And even amongst the 32% who found the cast of the last trailer they viewed to be memorable, there is no evidence that they would consider a movie valueless based on the omission of a particular cast member.

[15] *See also, e.g.*, *Khasin v. R. C. Bigelow, Inc.*, 2016 WL 1213767, at *3 (N.D. Cal. Mar. 29, 2016) (rejecting full refund model because it "assumes that consumers gain no benefit in the form of enjoyment," which "is too implausible to accept"); *Samet v. Proctor & Gamble Co.*, 2019 WL 13167115, at *9-10 (N.D. Cal. Jan. 15, 2019) (rejecting full refund model because plaintiffs "enjoyed" the product); *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at *11 (C.D. Cal. Apr. 12, 2012) ("awarding class members full refunds on their purchases would constitute nonrestitutionary disgorgement," which "is not an available remedy"); *see also Poulos v. Caesars World, Inc.*, 379 F.3d 654, 668 (9th Cir. 2004) (noting the "entertainment value" of slot machines to some class members).

so.  Indeed, it is difficult to conceive of a model that could accurately calculate the price premium on a classwide basis in this case, since all movies (no matter their quality or star power) are typically priced at a standard rate (e.g., $3.99) across each distribution channel.  Plaintiffs certainly have adduced no such model.  Their request for Rule 23(b)(3) certification should be denied for this reason alone.

### D.    Even If Plaintiffs' Putative Classes Complied with Rule 23, They Are Vastly Overbroad

Even if Plaintiffs' proposed classes could satisfy Rule 23 (they do not), they are vastly overbroad in that they include class members who did not watch the movie on Amazon or Google Play and thus whose claims Plaintiffs lack standing to pursue.

To represent a class, Plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Blum*, 457 U.S. at 1001 n.13; *see B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) ("A class of plaintiffs does not have standing to sue if the named plaintiff does not have standing.").  Thus, "at least one named plaintiff must have standing with respect to each claim the class representatives seek to bring." *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007).

These principles foreclose Plaintiffs from certifying a class of "[a]ll persons" in California or Maryland who paid to see *Yesterday* in *any* venue or on *any* platform. TAC ¶ 120.  Just last week, this Court clarified that "Plaintiffs do not have standing to pursue claims challenging alleged false advertising on platforms which Plaintiffs did not use to view the movie."  Dkt. 115; *see* Dkt. 83 at 13 n.7.  Accordingly, this Court would "exceed[] its authority in adjudicating" the claims of class members who did not watch the movie on Amazon or Google Play. *Blum*, 457 U.S. at 1001-02.[16]

---

[16] If Woulfe's new allegations concerning Google are stricken or dismissed, *supra* at 5 n.3, he would also lack standing to represent a Maryland class of individuals who watched *Yesterday* on Google Play.

1

### E.    Plaintiffs' Alternative Classes Also Fail

Recognizing the flaws in their facially-overbroad classes, Plaintiffs propose two alternatives.  Neither resolves the laundry list of deficiencies above.

Plaintiffs' alternative Class I is limited to consumers "who were exposed to Defendant's advertising representing that the actress Ana de Armas was in the movie Yesterday," and who paid to view the movie in California or Maryland.  Mot. at 7. This attempt to cure defects in Plaintiffs' overbroad classes still fails to satisfy Rule 23's requirements, as it does not correct the typicality, commonality, numerosity,[17] adequacy, predominance, and damages deficiencies detailed above.  Alternative Class I is still overbroad because it is not limited to consumers whom Plaintiffs claim to have standing to represent:  those who (1) relied on the Subject Trailer or Google's search results, and (2) watched the movie on Amazon or Google Play.  *See* Dkt. 115; *supra* at 22.  Most problematically, Plaintiffs propose no mechanism to ascertain which viewers were exposed to the Clip—which appeared only in the Subject Trailer, and not in the dozens of other pieces of creative content designed to promote the movie—or which viewers based their viewing decision on the Clip, and are thus class members, raising serious doubts about whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see Walker*, 953 F.3d at 633 (finding "no legal error" where, "[i]n the context of superiority," district court noted "the logistical difficulties inherent in identifying class members by establishing plaintiff-by-plaintiff exposure").

---

[17] Numerosity poses an even greater hurdle because Plaintiffs do not even attempt to show there are sufficiently numerous consumers who were exposed to the Clip (or Google search results).  *See Siles v. ILGWU Nat. Ret. Fund*, 783 F.2d 923, 930 (9th Cir. 1986) (numerosity not met because, even though "31,000 employees covered by the plan lost their jobs," there was "no evidence regarding how many of these employees" were injured like named plaintiffs); *Diacakis v. Comcast Corp.*, 2013 WL 1878921, at *5 (N.D. Cal. May 3, 2013) (numerosity not met because, although "there were 649,576 Triple Play subscribers," "Plaintiff offers no evidence regarding the number . . . allegedly misled" in same way as Plaintiff).

Case No. 2:22-cv-00459-SVW-AGR

Plaintiffs' alternative Class II—everyone who paid to watch *Yesterday* on "vendors that listed Ana de Armas as a cast member" or who "keyword search[ed]" her name, Mot. at 7—fails on its face because it has nothing to do with the Subject Trailer or Google search, the only alleged misrepresentations Plaintiffs claim they have standing to challenge. Dkt. 115. Moreover, because Plaintiffs have not proven that they searched de Armas' name or that Amazon or Google Play (the only two platforms Plaintiffs used) ever listed de Armas as a cast member, Plaintiffs are themselves not members of alternative Class II. *See Dukes*, 564 U.S. at 348 ("a class representative must be part of the class"). Alternative Class II also presents the same commonality, typicality, adequacy, numerosity, predominance, and damages issues discussed above, and Plaintiffs have not suggested any mechanism to identify class members. *See Walker*, 953 F.3d at 633.

### F.    Plaintiffs Cannot End-Run the Fatal Flaws in Their Proposed Classes Through Rule 23(c)(4)

Failing all else, Plaintiffs ask the Court to certify a liability class under Rule 23(c)(4), to determine "whether promoting *Yesterday* with De Armas even though she had no role in the movie[] was misleading." Mot. at 14. Plaintiffs argue such a liability class is appropriate because "Defendant's liability for [misleading movie viewers] based on . . . the interpretation" of the Subject Trailer is "common across all [viewers]," relying on *LSIMC, LLC v. Am. Gen. Life Ins. Co.*, 2022 WL 4596597 (C.D. Cal. Aug. 4, 2022). Mot. at 14 (alterations in original).

Plaintiffs cannot use Rule 23(c)(4) "as an end-run around Rule 23(b)(3)'s predominance requirement." *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930, at *10 (C.D. Cal. Dec. 18, 2014); *see Amador v. Baca*, 2016 WL 6804910, at *3 n.4 (C.D. Cal. July 27, 2016) (Wilson, J.) ("the predominance requirement" applies to "liability classes for the issues certified"). Plaintiffs are flatly wrong that liability can be determined on a classwide basis. As explained above, not all class members even saw the Subject Trailer (much less entered the same alleged Google search), and class

members' interpretations of and reliance on these sources will depend on many other things. *See supra* at 9-12, 17-18. *LSIMC* is inapposite; that case concerned the uniform breach of an insurance contract as to all class members. 2022 WL 4596597, at *1-3, 13.

In any event, Plaintiffs cannot certify a Rule 23(c)(4) liability class because that provision "does not obviate the need to meet the requirements of Rules 23(a) and (b)." *Amador*, 2016 WL 6804910, at *3. Because Plaintiffs fail those requirements, including Rule 23(a), they cannot certify a Rule 23(c)(4) class either.

Even if Plaintiffs could meet those requirements (they cannot), a Rule 23(c)(4) liability class would be inappropriate because Plaintiffs offer no plausible method for calculating damages and submit no damages evidence of any kind. *See supra* at 20-22. A liability class would therefore "not advance the resolution of this litigation" because Plaintiffs "fail to show that damages can be determined even on an individual basis once liability is decided." *Saavedra*, 2014 WL 7338930, at *10.

## V.   CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion in its entirety.

DATED:  April 4, 2023                    Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By:    */s/ Bethany W. Kristovich*
BETHANY W. KRISTOVICH
Attorneys for Defendant
UNIVERSAL CITY STUDIOS LLC