KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
STEPHANIE G. HERRERA (State Bar No. 313887)
stephanie.herrera@mto.com
VIRGINIA GRACE DAVIS (State Bar No. 336732)
grace.davisfisher@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:  (415) 512-4000
Facsimile:   (415) 512-4077

BETHANY W. KRISTOVICH (State Bar No. 241891)
bethany.kristovich@mto.com
BENJAMIN G. BAROKH (State Bar No. 318629)
benjamin.barokh@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONOR WOULFE and PETER MICHAEL ROSZA, <br><br> Plaintiffs, <br><br> vs. <br><br> UNIVERSAL CITY STUDIOS LLC, d.b.a., UNIVERSAL PICTURES, <br><br> Defendant. | Case No. 2:22-cv-00459-SVW-AGR <br><br> **NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE § 425.16; AND [2] MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1), (6), THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [Filed Concurrently:  Request for Judicial Notice; [Proposed] Order] <br><br> Date:  June 5, 2023 <br> Time:  1:30 p.m. <br> Judge:  Hon. Stephen V. Wilson <br> Courtroom:  10A |

## **NOTICE OF MOTIONS AND MOTIONS**

TO THE COURT AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 5, 2023, at 1:30 p.m., or as soon thereafter as the matter may be heard in the First Street Courthouse, located at 350 West 1st Street, Courtroom 10A, Los Angeles, California, before the Honorable Stephen V. Wilson, Defendant Universal City Studios LLC ("Universal"[1]) will and hereby does move:

(1) to strike under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, and to dismiss with prejudice under Rule 12(b)(6), Plaintiffs' claims and allegations in the Third Amended Complaint, Dkt. 130 ("TAC") based on alleged statements other than those contained in the specific *Yesterday* trailer that Plaintiffs allege they viewed before paying to view *Yesterday* on Amazon Prime in 2021, because Plaintiffs cannot allege they relied on such other "non-trailer statements," which they viewed after the fact; Plaintiffs do not have standing to allege claims or seek relief based on the non-trailer statements; and Woulfe's allegations fail to comply with Federal Rule of Civil Procedure 9;[2]

(2) to strike under the anti-SLAPP statute, and to dismiss with prejudice under Rule 12(b)(1), Plaintiffs' request for injunctive relief, because Plaintiffs lack Article III standing to seek injunctive relief; and

(3) to strike under the anti-SLAPP statute, and to dismiss with prejudice under Rule 12(b)(6), Plaintiff Rosza's claim for violation of the "unlawful" prong of the

---

[1] Abbreviations used in this Notice of Motions and Motions are also used in the accompanying Memorandum of Points and Authorities.

[2] The non-trailer statements that should be stricken are alleged in TAC ¶¶ 14, 22-33, 54-56, 69-70, 72, 84, 89-90, 94, 100-101, 105, 113-114, and 145.  In addition, Plaintiff Woulfe alleges that non-trailer statements returned through a Google search result support his claims for relief and request for an injunction.  Those claims and request should be stricken/dismissed as well.

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL") based on alleged common law violations.[3]

These Motions are based on this Notice of Motions and Motions, the attached Memorandum of Points and Authorities, the Request for Judicial Notice ("RJN"), any papers filed in reply, all other papers and records on file in this matter, and any other materials or argument the Court may receive at or before the hearing on these Motions.

These Motions are made following the conference of counsel, pursuant to Civil L.R. 7-3, which took place on April 20, 2023.

DATED:  April 27, 2023          Respectfully submitted,

                                MUNGER, TOLLES & OLSON LLP


                                By:    _/s/ Kelly M. Klaus_
                                      KELLY M. KLAUS
                                Attorneys for Defendant
                                UNIVERSAL CITY STUDIOS LLC

---

[3] Universal reserves the right to seek recovery for its additional attorney's fees and costs in connection with this anti-SLAPP motion. *See* Cal. Civ. Proc. Code § 425.16(c)(1).

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    BACKGROUND ................................................................................. 3

      A.     The *Yesterday* Trailer ............................................................ 3

      B.     Plaintiffs' Prior Complaints And This Court's Orders .......................... 4

      C.     Plaintiffs' TAC ..................................................................... 6

III.   LEGAL STANDARDS GOVERNING UNIVERSAL'S MOTIONS ............. 7

      A.     Universal's Anti-SLAPP Motion To Strike ........................................... 7

      B.     Universal's Rule 12(b)(1) And Rule 12(b)(6) Motions ......................... 7

IV.   THE ANTI-SLAPP STATUTE APPLIES TO THE TAC ............................. 8

      A.     Universal Meets Its Step-One Burden ................................................. 8

      B.     The Allegations And Claims That Are The Subject Of These Motions Cannot Survive Step Two ............................................... 9

V.     PLAINTIFFS' ALLEGATIONS AND CLAIMS BASED ON NON-TRAILER STATEMENTS FAIL ................................................................. 9

      A.     This Court Has Twice Held That Plaintiffs Lack Standing To Assert Claims Based On, Or Otherwise Challenge, Non-Trailer Statements ................................................................. 9

      B.     Plaintiff Woulfe's Attempt To Base His Claims On A "Recent" Payment To View *Yesterday* On Google Play Fails .......................... 11

VI.   PLAINTIFFS LACK ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF ................................................................. 15

VII.   PLAINTIFF ROSZA CANNOT STATE A UCL CLAIM BASED ON PURPORTED "COMMON LAW" VIOLATIONS ................................... 19

VIII.   LEAVE TO AMEND IS UNWARRANTED ............................................. 19

IX.   THE COURT SHOULD PROCEED TO RESOLVE, AND GRANT, UNIVERSAL'S PENDING MOTION FOR ATTORNEY'S FEES ............. 19

X.     CONCLUSION ................................................................. 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4

*Anderson v. Apple Inc.*,
5
   500 F. Supp. 3d 993 (N.D. Cal. 2020)......................................................... 10, 11, 13

6

*Anthony v. Buena Vista Home Ent. Inc.*,
7
   2016 WL 6836950, at *2 (C.D. Cal. Sept. 28, 2016) ............................................ 8

8

*Ashcroft v. Iqbal*,
9
   556 U.S. 662 (2009) ................................................................................................ 8

10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 8

11

12

*Bonin v. Calderon*,
   59 F.3d 815 (9th Cir. 1995) .................................................................................. 19

13

*Clapper v. Amnesty Int'l USA*,
14
   568 U.S. 398 (2013) .............................................................................................. 11

15

*Davidson v. Kimberly-Clark Corp.*,
16
   889 F.3d 956 (9th Cir. 2018) ....................................................................... 7, passim

17

*Doe v. Gangland Prods., Inc.*,
18
   730 F.3d 946 (9th Cir. 2013) ............................................................................. 7, 9

19

*Garlough v. FCA US LLC*,
20
   2021 WL 4033177 (E.D. Cal. Sept. 3, 2021) ...................................................... 16

21

*Jovel v. Boiron Inc.*,
   2013 WL 12164622 (C.D. Cal. Aug. 16, 2013) .................................................. 16

22

23

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ............................................................................. 19

24

25

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ................................................................................. 8

26

*Palmer v. CVS Health*,
27
   2019 WL 6529163 (D. Md. Dec. 4, 2019) .......................................................... 16

28

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) .............................................................................. 14

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828, *amended* by 897 F.3d 1224 (9th Cir. 2018) .................................. 7

*Radoff v. Elavon, Inc.*,
    No. CV 14-03527-SVW-JC, 2014 WL 12966424 (C.D. Cal. Sept.
    24, 2014). ......................................................................................................... 2, 19

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ................................................................................ 7

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ............................................................................ 19

*Sinatro v. Barilla Am., Inc.*,
    2022 WL 10128276 (N.D. Cal. Oct. 17, 2022) ................................................... 17

*Spaulding v. Wells Fargo Bank, N.A.*,
    714 F.3d 769 (4th Cir. 2013) .............................................................................. 15

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................................................ 8

**STATE STATUTES**

Cal. Civ. Proc. Code § 425.16 ..................................................................... 2, 7, 8, 20

**FEDERAL RULES**

Fed. R. Civ. P. 9 ............................................................................................... 15, 16

Fed. R. Civ. P. 12 .......................................................................................... 7, passim

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.     INTRODUCTION**

This Court has made clear in two different Orders that Plaintiffs lack standing to assert claims based on alleged statements that Plaintiffs did not see, and thus did not rely on, in deciding to pay to view *Yesterday*.  Dkt. 83 at 13 n.7; Dkt. 115.  From the outset of this case, Plaintiffs alleged the *only* statements they saw and relied on were in the single specific trailer they say they viewed on Amazon Prime.

Notwithstanding the Court's clear Orders, Plaintiffs have filed a TAC that not only repeats their prior allegations about statements that were not in the trailer or on Amazon Prime, but that doubles down with *even more allegations* about statements outside the trailer.  Plaintiffs cannot smuggle these "non-trailer statements" into the case by characterizing them as "background facts," or as matters that relate to "materiality, intent, and similar issues."  TAC ¶ 130.  Plaintiffs are refusing to comply with the Court's Orders.  The non-trailer statement allegations should be stricken.

Plaintiff Woulfe tries to shoehorn into the case a particular non-trailer statement.  Specifically, Woulfe alleges he "recently" paid to view *Yesterday* again, this time on the Google Play platform, because a search he says he ran on Google's search engine—*not* on Google Play—returned Ana de Armas's name and image in a cast listing.  Plaintiff cannot use the alleged Google search response to expand the case beyond the trailer and the Amazon Prime platform.  Through five different versions of his complaint, Woulfe has alleged repeatedly that he knows de Armas "is not and was never in" the full-length version of *Yesterday*.  *See, e.g.*, Second Amended Complaint, Dkt. 36 ("SAC") ¶¶ 12, 47, 136.  Woulfe now says that he will keep paying over and over to watch *Yesterday* on internet platforms based on the speculative possibility that one day he might see a version of the movie with de Armas in it.  The Court should not countenance this transparent effort to manufacture an injury for purposes of attempting to create standing where none

exists.  Woulfe's Google search/Google Play allegations are utterly implausible, and they should be stricken along with the TAC's multiple other allegations of non-trailer statements.

The Court also previously held that Plaintiffs failed to show a "certainly impending" injury that would establish standing to seek injunctive relief.  Dkt. 83 at 26 (citation omitted).  Plaintiffs now allege they have standing to pursue injunctive relief because they might watch *other* Universal movies, or Universal *might* covertly release a new version of *Yesterday*.  TAC ¶¶ 147-148.  This Court said these allegations were insufficient to establish standing to seek injunctive relief the first time around.  Dkt. 83 at 26-28.  The TAC alleges nothing to change the result here.

Finally, Plaintiff Rosza alleges that Universal violated the UCL's "unlawful" prong by allegedly violating the common law.  As this Court has held in another case, alleged common law violations do not satisfy the UCL's unlawful prong. *Radoff v. Elavon, Inc.*, No. CV 14-03527-SVW-JC, 2014 WL 12966424, at *5 (C.D. Cal. Sept. 24, 2014).  The Court should strike and dismiss Rosza's UCL claim to the extent it is again based on alleged violations of the common law.

The TAC is Plaintiffs' sixth iteration of their complaint.  It does not fix the defects that led the Court to strike multiple claims and Plaintiffs' request for injunctive relief.  The record shows that further amendment would be futile, and that Plaintiffs, if given the opportunity, will continue to re-plead allegations this Court has found deficient.  Universal therefore respectfully requests that the Court strike and dismiss with prejudice the improper and implausible allegations and claims as set forth herein.

In addition, because the TAC does not cure Plaintiffs' failure to allege standing to seek injunctive relief, Universal requests that the Court proceed to decision on Universal's pending motion for attorney's fees, Dkt. 88, and grant that motion in full.  Universal also reserves the right to seek recovery for its additional attorney's fees and costs in connection with this anti-SLAPP motion.  *See* Cal. Civ.

Proc. Code § 425.16(c)(1).

## II.    BACKGROUND

The Court is familiar with the background of this case, so Universal briefly summarizes the allegations and procedural background most relevant to the instant Motions to strike and dismiss.

### A.    The *Yesterday* Trailer

This lawsuit is about a single trailer for online platforms for the motion picture *Yesterday*.  TAC ¶¶ 2, 7, 10.  The trailer includes a segment, approximately 15 seconds long, in which the protagonist, Jack Malik, plays the Beatles' song "Something" during an appearance on *The Late Late Show with James Corden*, while seated on a couch next to an unidentified woman (played by de Armas).  *See* TAC ¶ 42.  As Plaintiffs admit, de Armas does not speak a word in the segment or otherwise appear in the trailer, and the trailer does not list her name.  TAC ¶ 42; RJN Ex. 1 (*Yesterday* trailer).[4]  The scene from which the segment was taken is and has been publicly available on YouTube,[5] and is included as bonus content for consumers who pay to view *Yesterday* in formats that allow for bonus material, including on DVD and Blu-ray disc.  *See* RJN Ex. 4 (DVD of film).

Plaintiffs Woulfe and Rosza allege that in July and October 2021, respectively, they each paid $3.99 to watch *Yesterday* on Amazon Prime; they allege they did so because they believed, based on having viewed the trailer on Amazon Prime, they would see de Armas and the "Something" scene in the movie.  TAC ¶¶ 7-8, 10-11.  The fact that the scene with de Armas and the "Something" joke is

---

[4] This Court has held that it "may review and consider the trailer since it is incorporated by reference in the Complaint and there is no objection as to its authenticity."  Dkt. 83 at 2 n.1.

[5] The scene has been viewed at least 2.5 million times since September 29, 2019.  *See Yesterday Deleted Scene – "Something" on James Corden Show*, YouTube, https://www.youtube.com/watch?v=0TmCjQJvZ8c (last accessed Apr. 6, 2023).

not in the full-length version of *Yesterday* has never been a secret.  Indeed, Plaintiffs allege that *Yesterday*'s director gave a published interview *before the movie was released* entitled "*Yesterday Cut an Entire Character from the Film That Would Have Changed the Plot*."  TAC ¶¶ 43-44; RJN Ex. 2 (*CinemaBlend* article).  Moreover, it is well known to consumers that movie trailers often contain content that ultimately is not included in the film's final cut.[6]

### B.   Plaintiffs' Prior Complaints And This Court's Orders

In January 2022, Plaintiffs filed their original complaint, which alleged six claims under California and Maryland law.  Dkt. 1.

In March 2022, Plaintiffs filed a First Amended Complaint ("FAC"), adding another claim under California law.  Dkt. 17.

In May 2022, following a Local Rule 7-3 meet and confer on Universal's anticipated motions to strike/dismiss, Plaintiffs applied *ex parte* for leave to file the SAC.  Dkt. 28.  On May 26, the Court granted Plaintiffs' request for leave to file the SAC appended to their *ex parte* application.  Dkt. 35.  On June 6, 2022, in violation of Local Rule 15-1, Plaintiffs filed a different version of the SAC, with multiple pages of new allegations and two new claims.  Dkt. 36.

On July 15, 2022, Universal moved to strike and dismiss Plaintiffs' SAC.  Dkt. 44.

On December 20, 2022, the Court granted Universal's motion in part and struck/dismissed multiple claims in the SAC.  The Court also struck and dismissed Plaintiffs' request for injunctive relief on the ground they lack Article III standing to seek an injunction.  Dkt. 83.  The Court also held that Plaintiffs lacked standing to assert claims based on alleged representations that Plaintiffs did not see and on

---

[6] *See, e.g.*, David Houghton, *30 Scenes from Trailers that Never Appeared in the Movie*, gamesradar+ (Feb. 6, 2019), https://www.gamesradar.com/30-trailer-scenes-not-in-the-finished-films/; Mark Harrison, *25 Films That Hid What They Were in the Trailer*, Den of Geek (Apr. 2, 2019), https://www.denofgeek.com/movies/25-films-that-hid-what-they-were-in-the-trailer/.

which they did not rely in deciding to pay to view *Yesterday*. *Id.* at 13 n.7.

On January 17, 2023, Universal moved for attorney's fees under the anti-SLAPP statute for the claims on which Universal had prevailed.  Dkt. 88.

On February 13, 2023, Plaintiffs claimed for the first time that they intended "to move the Court for leave" to file a TAC to allege a claim for injunctive relief, in an attempt to avoid or minimize a fee award.  Dkt. 102 at 6-7.

On March 9, 2023, the Court issued an Order deferring decision on Universal's fees motion and ordering Plaintiffs to "submit an amended complaint within 10 days."  Dkt. 107.  The Court said that "Plaintiffs' amended complaint may impact the Court's determination of whether Defendant is a prevailing party or the amount of fees that Defendant should receive" under the anti-SLAPP statute.  *Id.*

On March 20, Plaintiffs filed a motion for leave to file the TAC.  Dkt. 111, 111-2 (proposed TAC).  The motion was unnecessary, because the Court had already issued an Order requiring Plaintiffs to file the TAC.  Dkt. 107.

On March 24, Plaintiffs filed an *ex parte* motion to clarify the Court's Order striking part of the TAC.  Dkt. 113.  Plaintiffs said they needed "clarification" of whether they could challenge non-trailer statements "on platforms such as VUDU, Google Play, and others."  *Id.* at 3.  The Court held the Order was "clear on its face," and reaffirmed that "Plaintiffs do not have standing to pursue claims challenging alleged false advertising on platforms which Plaintiffs did not use to view the movie."  Dkt. 115.  Thus, "if Plaintiffs did not view alleged false advertising on VUDU or other platforms, Plaintiffs do not have standing to pursue alleged false advertising occurring on those platforms."  *Id.*

On March 28, the Court again granted Plaintiffs leave to file the TAC attached to their motion for leave.  Dkt 115.  Pursuant to the Court's Local Rules, Plaintiffs were thus required to "promptly" file the TAC as a separate document with the Court.  Civ. L.R. 15-1.

On April 14, 2023, Plaintiffs filed the TAC.  Dkt. 130.  As was the case with

the SAC, Plaintiffs' filed TAC differed from the proposed TAC attached to their motion for leave to amend. *Compare* Dkt. 111-2 (proposed TAC) *with* Dkt. 130 (filed TAC). In the interest of conserving judicial and party resources, Defendant stipulated to Plaintiffs' filing of the modified TAC. *See* Dkt. 125.

### C. Plaintiffs' TAC

Plaintiffs' TAC repeats all of the SAC's allegations, including the allegations about the non-trailer statements. TAC ¶¶ 14, 22, 24-32, 54-56, 69-70, 72, 84, 89-90, 94, 100-101, 105, 113-114. The TAC then adds still more allegations regarding non-trailer statements. *E.g.*, TAC ¶ 23 (adding allegations regarding representations "on platforms such as VUDU"); *id.* ¶ 33 (adding allegations regarding representations "on websites such as www.bestbuy.com and www.barnesandnoble.com"); *id.* ¶ 105 (adding allegations regarding representations on "Apple TV" and "key word linking of Ms. De Armas to *Yesterday*" on "numerous platforms").

Plaintiff Woulfe alleges for the first time in the TAC that he is entitled to damages and an injunction because he "recently" paid to watch *Yesterday*, this time on Google Play. Woulfe says that, based on the results of a Google search (not a search through Google Play), he expected to see de Armas and the "Something" scene in the movie on Google Play. Woulfe alleges he will keep paying to watch *Yesterday* again and again because he might someday see de Armas and the "Something" scene in the movie. TAC ¶ 146.

Plaintiffs also reassert their claims for injunctive relief based on the same allegations that they might watch other Universal movies, or Universal might covertly release a new version of *Yesterday*. *See* SAC ¶¶ 124, 141, 148, Request for Relief ¶ C; *see also* TAC ¶¶ 147-148, 152, 160, Request for Relief ¶ C.

Plaintiff Rosza alleges that Universal is liable for violating the UCL's "unlawful" prong based on, among other alleged legal violations, claimed violations of the common law. TAC ¶ 134.

### III.   LEGAL STANDARDS GOVERNING UNIVERSAL'S MOTIONS

#### A.   Universal's Anti-SLAPP Motion To Strike

The anti-SLAPP statute was "enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Sarver v. Chartier*, 813 F.3d 891, 896 (9th Cir. 2016) (citation omitted). A defendant may file a "special motion to strike" any claim that arises "from any act … in furtherance of the … right of petition or free speech … in connection with a public issue."  Cal. Civ. Proc. Code § 425.16(b)(1).

Courts "evaluate anti-SLAPP motions in two steps." *Sarver*, 813 F.3d at 901. First, a defendant must "make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution." *Id.* (citation omitted).  "Second, if the defendant has made such showing, [courts] evaluate whether the plaintiff has established a reasonable probability that the plaintiff will prevail on his or her … claim." *Id.* (citation omitted) (internal quotation marks omitted).  At this second step, "the burden shifts to [the] plaintiff to demonstrate a probability of prevailing on the merits of each" claim. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013).  At the dismissal stage in federal court, the prong two standard is Rule 12(b)(6)'s plausibility standard. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833, *amended by* 897 F.3d 1224 (9th Cir. 2018).

#### B.   Universal's Rule 12(b)(1) And Rule 12(b)(6) Motions

*First*, Plaintiffs' request for injunctive relief must be dismissed for lack of standing.  Under Rule 12(b)(1), Plaintiffs must show their alleged injury-in-fact is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citation omitted).  "For injunctive relief, which is

a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "In other words, the 'threatened injury must be *certainly impending*'" and "allegations of *possible* future injury are not sufficient." *Id.* (citation omitted).

*Second*, Plaintiffs' claims predicated on non-trailer statements, as well as Plaintiff Rosza's claim under the UCL's "unlawful" prong, must be dismissed under Rule 12(b)(6), because Plaintiffs have not alleged well-pleaded facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint's "factual content" and reasonable inferences therefrom must be "plausibly suggestive of a claim entitling the plaintiff to relief"; conclusory allegations must be disregarded. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 968-69 (9th Cir. 2009). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Anthony v. Buena Vista Home Ent. Inc.*, 2016 WL 6836950, at *2 (C.D. Cal. Sept. 28, 2016) (Wilson, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV.  THE ANTI-SLAPP STATUTE APPLIES TO THE TAC

This Court already held at step one of the anti-SLAPP analysis that the anti-SLAPP statute applies to all of Plaintiffs' claims. Dkt. 83 at 8-9. Plaintiffs thus bear the step-two burden of showing they have stated a plausible claim for relief. Plaintiffs again fail to meet that burden. *See id.* at 13 n.7, 26.

### A.  Universal Meets Its Step-One Burden

This Court held that Universal satisfied its step-one burden by showing that Plaintiffs' claims "aris[e] from any act … in furtherance" of (1) the right to free speech (2) in connection with a public issue. Cal. Civ. Proc. Code § 425.16(b)(1); Dkt. 83 at 7-9. In particular, the Court held that the challenged *Yesterday* trailer "furthers Universal's free speech rights regarding the movie" by "increasing public engagement with the movie" and "drumming up public interest in" it. Dkt. 83 at 7-

-8-

8.  The Court also determined that the trailer was "in connection with" multiple issues of public interest, including the Beatles, de Armas, and the process of making movies and trailers.  *Id.* at 9.[7]  Plaintiffs thus bear the burden at step two of the anti-SLAPP analysis to show they have stated a plausible claim for relief.

## B. The Allegations And Claims That Are The Subject Of These Motions Cannot Survive Step Two

Plaintiffs fail to meet their burden of demonstrating "a probability of prevailing on the merits of":  (1) all of their claims and allegations predicated on non-trailer statements, because they lack standing to challenge such statements, and Plaintiff Woulfe's allegations and claims premised on his alleged Google Play payment, because those allegations and claims are implausible; (2) Plaintiffs' request for injunctive relief, because they lack Article III standing to seek such relief; and (3) Plaintiff Rosza's claim for violations of the UCL's "unlawful" prong based on alleged common law violations, because such allegations are insufficient to establish unlawful conduct under the UCL.  *Gangland Prods.*, 730 F.3d at 953. Because all of the arguments set forth in Sections V–VIII apply to both the anti-SLAPP and Rule 12 Motions, those arguments constitute Universal's step-two arguments for purposes of the anti-SLAPP Motion.

## V. PLAINTIFFS' ALLEGATIONS AND CLAIMS BASED ON NON-TRAILER STATEMENTS FAIL

## A. This Court Has Twice Held That Plaintiffs Lack Standing To Assert Claims Based On, Or Otherwise Challenge, Non-Trailer Statements

This Court has twice made clear that Plaintiffs lack standing to base their claims on non-trailer statements.  Dkt. 83 at 13 n.7; Dkt. 115.  These holdings

---

[7] In its March 9 Order, the Court denied Plaintiffs' motion for reconsideration and reaffirmed that "the trailer was in furtherance of the right to free speech … in connection with a public issue."  Dkt. 108 at 2-3.

followed from the well-established principle that "a consumer's injury cannot be 'fairly traceable' to the defendant's alleged misrepresentation unless that consumer actually relied on the misrepresentation." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1005 (N.D. Cal. 2020) (citation omitted).

Plaintiffs' TAC does not remove any of the allegations regarding non-trailer statements that the Court held Plaintiffs lack standing to assert. In fact, the TAC adds *even more* allegations regarding non-trailer statements. *E.g.*, TAC ¶ 23 (adding allegations regarding Universal's "advertising content on platforms such as VUDU"); TAC ¶ 33 (adding allegations regarding representations "on websites such as www.bestbuy.com and www.barnesandnoble.com"); TAC ¶ 105 (adding allegations regarding cast listings on "Apple TV" and "key word linking of Ms. De Armas to *Yesterday*" on "numerous platforms"). Plaintiffs also repeat their allegation that CBS showed an image of de Armas on one of their morning programs. TAC ¶¶ 55-56. Plaintiffs still do not (and presumably cannot within the confines of Rule 11) allege that they saw or relied on any of these statements in deciding to pay to view the movie on Amazon Prime. The allegations should be stricken.[8]

Plaintiffs try to excuse their defiance of the Court's Orders by asserting that the allegations about non-trailer statements "relate to background facts, materiality, intent, and similar issues only, without forming the basis of any legal claim." TAC ¶¶ 130, 154, 162, 170. That is absurd. "[M]ateriality" and "intent" are central to Plaintiffs' asserted theories of liability. *See, e.g.*, TAC ¶¶ 134, 136, 139-143 (UCL claim based on allegations that Universal intentionally misrepresented "material facts"); TAC ¶ 158 (False Advertising Law claim based on allegations that Universal "intentionally ma[de] literally false and misleading representations");

---

[8] The portions of the TAC with non-trailer statements are summarized in footnote 1 of the Notice of Motions and Motions, *supra*.

1    TAC ¶ 166 (unjust enrichment claim based on allegations that Universal

2    "intentionally sought" to profit from purported misrepresentations, which would

3    deceive a "reasonable consumer"); TAC ¶¶ 173, 178 (Maryland Consumer

4    Protection Act claim predicated on alleged "misrepresentation … of any material

5    fact with the intent that a consumer rely on the same").  Plaintiffs cannot smuggle in

6    allegations this Court has twice held they lack standing to assert by contending that

7    they will rely on those allegations to prove disputed claims at the heart of the TAC.

8    The Court should strike Plaintiffs' claims to the extent they rely on such allegations.

9    *See* Dkt. 83 at 13 n.7; Dkt. 115.

10       **B.    Plaintiff Woulfe's Attempt To Base His Claims On A "Recent"**
            **Payment To View *Yesterday* On Google Play Fails**
11

12       Plaintiff Woulfe tries to evade the Court's ruling by alleging that he paid to

13   view *Yesterday* on Google Play, allegedly after seeing a Google search result that

14   allegedly listed de Armas as a cast member.  TAC ¶¶ 145-146.  This transparent

15   attempt to create standing to complain about non-trailer statements fails.  Woulfe

16   has no reasonable basis to believe the version of *Yesterday* he allegedly viewed on

17   Google Play would include content that "is not and was never in the publicly

18   released version" of the movie.  SAC ¶ 47.  Woulfe "cannot manufacture standing

19   merely by inflicting harm on [himself]" by re-watching versions of the movie he

20   knows de Armas is not in.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013);

21   *see Davidson*, 889 F.3d at 970 (a plaintiff's intention to "purchase the product in the

22   future" is insufficient unless she "may reasonably . . .  assume the product was

23   improved"); *see also Anderson*, 500 F. Supp. 3d at 1005.

24       Woulfe alleges that he initially watched *Yesterday* on July 12, 2021 in

25   reliance on the trailer, which featured a fleeting image of de Armas.  TAC ¶ 10.

26   Prior to filing the TAC, Woulfe (like Rosza) alleged that, after viewing the movie on

27   Amazon Prime, he knew "Ms. De Armas is not and was never in the publicly

28   released version" of *Yesterday* and that he therefore would not pay to see it again,

SAC ¶¶ 12, 47, 136.  Woulfe nevertheless alleges in the TAC that on some unspecified "recent[]" date, he "paid to rent *Yesterday*" again—this time "on Google Play"—"based upon the reasonable presumption that the current cast listing that identifies Ms. de Armas as a cast member would be accurate."  TAC ¶ 146.

The TAC misleadingly suggests Woulfe saw the cast listing on Google Play, where he paid to watch the movie.  TAC ¶ 145-146.  But the TAC includes the following screenshot of what Plaintiff claims to be the "advertisement," at least as of March 17, 2023:



TAC 145 (as altered in TAC).

The cast listing Woulfe pastes in his complaint is not an advertisement.  It is not on Google Play.  (In fact, Google Play does not mention de Armas in its cast listing.)[9]  The screenshot Woulfe includes in the TAC is from a *Google search* result for "Yesterday movie":

---

[9] *See Yesterday*, Google Play, https://play.google.com/store/movies/details/Yesterday?id=bGjHcqOphww&hl=en_US&gl=US (last visited Apr. 24, 2023).  Indeed, the Google Play listing does not even include the *Yesterday* trailer in issue here.  *See id.*



RJN Ex. 3 (Google screenshot).

Woulfe cannot assert claims against Universal based on his alleged purchase through Google Play for two reasons.  First, Woulfe cannot plausibly allege that he relied on the search results he alleges he saw to believe the movie available through Google Play would include de Armas or the "Something" scene.  *See Anderson*, 500 F. Supp. 3d at 1005 (a consumer lacks standing to challenge a "defendant's alleged misrepresentation unless that consumer actually relied on that misrepresentation" (citation omitted)).  Woulfe knows that the full-length version of *Yesterday* does not include de Armas or the "Something" joke-scene.  He has admitted as much in every version of the complaint.  *See* Compl. ¶¶ 33-34; FAC ¶¶ 33-34; LeJeune Decl. ISO Ex Parte Appl. for Leave to File SAC, Ex. B (Dkt. 28-1) ¶¶ 47-48; SAC ¶¶ 47-48; Dkt. 111-3 ¶¶ 49-50; TAC ¶ 10.  Moreover, Woulfe has been in this litigation since January 2022.  The idea that Universal would release a full-length version of *Yesterday* including the scene whose absence is the basis for Plaintiffs' claims—and

that Plaintiff Woulfe would not know about that—is beyond fantastical.[10]  It is obvious that Woulfe cannot plausibly have expected that the full-length movie he allegedly paid to see would have de Armas or the "Something" joke-scene in it. Indeed, Woulfe can view de Armas and the "Something" joke-scene any time he wants—both for free on YouTube and on the bonus features available on the *Yesterday* DVD.  *See* RJN Ex. 4.  What he cannot do is create standing by willfully re-watching versions of the movie that he knows do not include that material.

Second, even if Woulfe could plausibly allege that he reasonably expected to see a version of the movie with the "Something" scene in it (he cannot), Woulfe's claims predicated on his alleged payment to view it on Google Play are implausible. Woulfe baldly alleges that Universal "controls or dictates the advertising of its movies which are offered on such platforms" as Google Play.  TAC ¶ 23.  But Woulfe's support for the statement he allegedly saw before again paying to see the movie is not from Google Play.  It is from Google search results.  Universal does not "control[]" Google search results.  Even if Woulfe alleged he saw de Armas's name on Google Play (he does not), his allegation that the statement would be attributable to Universal's control is "too speculative," as this Court has held.  *See* Dkt. 83 at 13 n.7 (finding it "too speculative" to assume how a third-party platform "determines cast members").  The fact that Woulfe bases his allegations on his purported *Google search* results takes his claim from the speculative to the ridiculous, as it is well known that Google is responsible for its (non-sponsored) search results (and Plaintiffs do not allege otherwise).  *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 803 (9th Cir. 2007) (discussing "Google's ability to control its own index, search results, and webpages"); *see also* Google Ads Help,

---

[10] Plaintiff Woulfe's allegation is even more absurd in light of the fact that Universal provided sworn discovery responses to Plaintiffs months ago confirming that de Armas and the "Something" scene do not appear in the full-length movie.

https://support.google.com/google-ads/answer/1722080?hl=en (last visited Apr. 24, 2023) (Google searches generate "two types of results:  search results and ads," with "[a]ds appear[ing] under an 'Ads' label," while "search results … aren't part of Google's advertising programs").

In short, Woulfe cannot now avoid this Court's repeated rulings by way of belated and highly implausible allegations concerning internet search results that Universal does not control.  The Court should strike and dismiss all of Plaintiffs' claims and allegations based on purported non-trailer statements.[11]

## VI.   PLAINTIFFS LACK ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF

The TAC again requests injunctive relief on a number of claims, including requiring Universal "to engage in a corrective advertising campaign."  *E.g.*, TAC ¶¶ 152, 160, Request for Relief ¶ C.  But as this Court previously held, "Plaintiffs lack standing to seek injunctive relief, because [they] cannot establish an actual or imminent injury."  Dkt. 83 at 26.

A plaintiff has standing to seek injunctive relief only if he risks suffering "an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson*, 889 F.3d at 969 (citation omitted); Dkt. 83 at 26 (same).  "In other words, the 'threatened injury must be *certainly impending*'" and "allegations of *possible* future injury are not sufficient."  *Davidson*, 889 F.3d at 967; Dkt. 83 at 26 (same).

This Court previously dismissed Plaintiffs' request for injunctive relief because Plaintiffs "failed" to "allege sufficient facts to show that they face an

---

[11] Even if Woulfe's allegations were plausible (and they are not), they do not satisfy Federal Rule of Civil Procedure 9(b), which requires Woulfe to allege in detail the circumstances of his purchase, including, among other things, when he watched *Yesterday* on Google Play and when he saw the Google search results.  *See* TAC ¶ 146 (alleging merely that Woulfe "recently" watched the movie on Google Play); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (a claim under the Maryland Consumer Protection Act that "sounds in fraud … is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)").

imminent or actual threat of future harm."  Dkt. 83 at 27; *see, e.g.*, *Davidson*, 889 F.3d at 969 n.5; *Palmer v. CVS Health*, 2019 WL 6529163, at *4 (D. Md. Dec. 4, 2019); *Jovel v. Boiron Inc.*, 2013 WL 12164622, at *6 (C.D. Cal. Aug. 16, 2013) (Wilson, J.).  As the Court explained, Plaintiffs could not manufacture standing simply because they alleged that (1) "they would be 'interested' in watching a version of *Yesterday* with De Armas"; (2) they anticipated "buying or renting *other* movies advertised by Universal"; or (3) Universal might "release[] another version of *Yesterday*," such as a director's cut, that "would again omit the deleted scene featuring De Armas."  Dkt. 83 at 27-28.

Plaintiffs' TAC recycles the same arguments the Court already rejected. Plaintiffs repeat their allegation "that a movie version with Ana de Armas actually appearing *might* eventually be released."  TAC ¶ 148; TAC ¶ 147 (alleging that Universal might possibly release an "alternative version" of *Yesterday* such as a "Director's Cut"); *see* SAC ¶ 141 (alleging that Plaintiffs had standing because Universal might release "a version of *Yesterday* which did include Ana De Armas"). Plaintiffs thus allege that they will not know whether any future release of *Yesterday* will include de Armas or not, TAC ¶ 147, so they "intend to pay to view the movie *Yesterday* again" and again, "to continue to attempt to see the scene with Ms. De Armas."  TAC ¶ 152; *see* TAC ¶ 146 ("because Plaintiff's wanted to see Ana de Armas in the movie Yesterday, both Plaintiffs intend to and will pay to view *Yesterday* again").[12]

---

[12] Plaintiff Woulfe alleges that he assumes "no rational actor would continue to falsely advertise a movie's content, after a Court of law has already determined that the false advertising is unlawful conduct."  TAC ¶ 146.  But Woulfe does not allege that he is relying on *Universal*'s advertising (or advertising at all).  *See id.*  Nor, notably, has this Court determined there has been *any* false advertising.  He instead claims to rely on statements made on third-party websites, which he cannot plausibly allege are subject to Universal's control.  *See id.*; *see also Garlough v.*

To have standing on this theory, Plaintiffs must plead facts showing not only that they intend to "purchase the product in the future," but also that they will do so because they "*reasonably*, but incorrectly, assume the product was improved." *Davidson*, 889 F.3d at 970 (emphasis added) (citation omitted).  To that end, Plaintiffs must show that it is "[]plausible to expect" Universal to release a version of *Yesterday* with de Armas.  *Sinatro v. Barilla Am., Inc.*, 2022 WL 10128276, at *10 (N.D. Cal. Oct. 17, 2022) (an allegation that the plaintiffs intend to purchase a product again in hopes that it has conformed to the defendant's representations "holds no water because it is implausible to expect such facts to come to pass"); Dkt. 83 at 27 (noting the "speculative nature of the at-issue product ever achieving its claimed representations").

Plaintiffs' allegations do not meet that standard.  The Court already held that the possibility that Universal "*might*" release another version of the movie, TAC ¶ 148, "invites the Court to engage in improper speculation."  Dkt. 83 at 27. Plaintiffs have alleged no cause to *reasonably* believe that Universal had released an alternative version, particularly when Universal has already released a DVD version of the movie with the deleted scene included as bonus material.

Plaintiffs' theory is all the more unreasonable given that this case has been pending for more than a year and has received a significant amount of publicity.[13] Plaintiffs do not, and cannot, allege any facts suggesting that Universal could or would stealthily release an "alternative" version of *Yesterday* that included de Armas or the "Something" scene without generating significant publicity.

---

*FCA US LLC*, 2021 WL 4033177, at *2-3 (E.D. Cal. Sept. 3, 2021), *appeal dismissed*, 2022 WL 1004888 (9th Cir. Jan. 14, 2022).

[13] *See, e.g.*, Gene Maddaus, *Ana de Armas Fans Sue Because She Was Cut Out of* Yesterday, Variety (Jan. 21, 2022), https://variety.com/2022/film/news/ana-de-armas-yesterday-deceptive-marketing-lawsuit-1235160293/; *Ana de Armas fans told they can sue over Yesterday trailer*, BBC News (Dec. 23, 2022), https://www.bbc.com/news/entertainment-arts-64076747.

Plaintiffs also contend that they somehow have standing because Universal "has falsely advertised numerous *other* movies," none of which Plaintiffs identify. TAC ¶ 151 (emphasis added).  But the Court already held that "Plaintiffs' anticipation of buying or renting *other* movies advertised by Universal is insufficient to confer standing to seek injunctive relief."  Dkt. 83 at 27.  As the Court noted, Plaintiffs' TAC is "limited only to alleged misrepresentations with respect to *Yesterday*," so its vague invocation of other, unnamed movies cannot manufacture standing here.  *See id.*[14]

Plaintiffs also baselessly allege that Universal's discovery responses and refusal to stipulate to Plaintiffs' demands for an injunction themselves give Plaintiffs standing to seek injunctive relief.  TAC ¶¶ 145, 149-150.  This is nonsense.  Plaintiffs never explain why Universal's discovery responses regarding third-party platforms like VUDU—which this Court has twice held Plaintiffs lack standing to challenge—have any bearing on the standing analysis.  TAC ¶¶ 149-150; Dkt. 83 at 13 n.7; Dkt. 115.  And Plaintiffs cannot explain why Universal's refusal to stipulate to an injunction (that this Court has already rejected) would itself permit Plaintiffs to seek the same injunction without meeting the Article III requirements for standing.  *See* TAC ¶ 145.  Universal is under no obligation to stipulate to an injunction that Plaintiffs lack standing to seek.

In short, Plaintiffs do not come close to satisfying the high bar for standing to seek an injunction.  *See Davidson*, 889 F.3d at 967 ("the 'threatened injury must be *certainly impending*'" and "allegations of *possible* future injury are not sufficient" (citation omitted)); Dkt. 83 at 26 (same).  The Court must therefore dismiss Plaintiffs' request for injunctive relief.

---

[14] In their reply in support of their motion for class certification, Plaintiffs argue that they seek an injunction related not to *Yesterday* at all, but rather to Universal's allegedly "misleading movie promotion activities beyond Yesterday."  Dkt. 124 at 5.  To the extent the TAC includes a request for injunctive relief on that basis, this Court's Order has already foreclosed it.  *See* Dkt. 83 at 27.

## VII. PLAINTIFF ROSZA CANNOT STATE A UCL CLAIM BASED ON PURPORTED "COMMON LAW" VIOLATIONS

Finally, Plaintiff Rosza appears to again assert a claim under the UCL's "unlawful" prong based on alleged common law violations.  TAC ¶ 134.  But "'a common law violation … is insufficient' to establish unlawful conduct" under the UCL.  *Radoff*, 2014 WL 12966424, at *5 (quoting *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010)).  The Court should strike and dismiss Plaintiff Rosza's UCL claim to the extent it is based on alleged violations of the common law.  *See id.*

## VIII. LEAVE TO AMEND IS UNWARRANTED

Plaintiffs have now submitted six different complaints to the Court, including two "proposed" complaints that they later abandoned and three amended complaints that Plaintiffs framed in response to Universal's motions to strike and dismiss. Having repeatedly failed to fix known defects that "persisted in every prior iteration of the" complaint, Plaintiffs do not deserve yet another bite at the apple.  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (noting "particularly broad" discretion to deny leave where the "plaintiff has previously amended the complaint" (citation omitted)).  For the reasons stated above, further amendment would be futile.  *See Bonin v. Calderon*, 59 F.3d 815, 845-46 (9th Cir. 1995).

## IX. THE COURT SHOULD PROCEED TO RESOLVE, AND GRANT, UNIVERSAL'S PENDING MOTION FOR ATTORNEY'S FEES

The Court's March 9, 2023 Order deferred consideration of Universal's motion for attorney's fees based on the Court's Order on Universal's prior anti-SLAPP motion.  Dkt. 107.  The Court said that "ruling on the fees motion would be premature, as Plaintiffs' amended complaint may impact the Court's determination of whether Defendant is the prevailing party or the amount of fees that Defendant should receive."  *Id.*

It is now clear that the TAC does not change Universal's status as the

-19-

prevailing party or the amount of fees Universal should receive in connection with the SAC.  Universal therefore respectfully requests that the Court proceed to decision on that fees motion, Dkt. 88, and grant the requested fees in full.  Universal also reserves the right to seek recovery for its additional attorney's fees and costs in connection with this anti-SLAPP motion.  *See* Cal. Civ. Proc. Code § 425.16(c)(1).

## X.     CONCLUSION

For the foregoing reasons, Universal respectfully requests that the Court enter an Order (1) striking Plaintiffs' claims and allegations based on purported non-trailer statements under Cal. Civ. Proc. Code § 425.16 and dismissing those claims and allegations with prejudice under Rule 12(b)(6); (2) striking Plaintiffs' request for injunctive relief under Cal. Civ. Proc. Code § 425.16 and dismissing that request with prejudice under Rule 12(b)(1); and (3) striking Plaintiff Rosza's UCL claim based on purported violations of the common law under Cal. Civ. Proc. Code § 425.16 and dismissing that claim with prejudice under Rule 12(b)(6).  Universal reserves its right to seek fees and costs in connection with these motions.  Cal. Civ. Proc. Code § 425.16(c)(1).

DATED:  April 27, 2023                    Respectfully submitted,

                                          MUNGER, TOLLES & OLSON LLP



                                          By:    _/s/ Kelly M. Klaus_
                                                 KELLY M. KLAUS
                                          Attorneys for Defendant
                                          UNIVERSAL CITY STUDIOS LLC