CODY R. LEJEUNE (CSB No. 249242)
cody@lejeunelawfirm.com
**LEJEUNE LAW, P.C.**
445 S. Figueroa St.
Suite 3100
Los Angeles, CA 90071
Telephone: (985) 713-4964

MATTHEW A. PEQUIGNOT (admitted *pro hac vice*)
mpequignot@pmiplaw.com
**PEQUIGNOT + MYERS**
2585 Ala Namahana Pkwy, #1007
Kilauea, HI 96754
Telephone: 202-328-1200

Attorneys for Plaintiffs
CONOR WOULFE, an individual, and PETER
MICHAEL ROSZA, an individual

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONOR WOULFE, an individual, and PETER MICHAEL ROSZA, an individual,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNIVERSAL CITY STUDIOS LLC, d.b.a., UNIVERSAL PICTURES, a California limited liability company; and DOES 1-20, inclusive,<br><br>　　　　　Defendant, | CASE NO.:  2:22-cv-00459-SVW-AGR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS [DKT. 131]** |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................1

II.     BACKGROUND ................................................................................6

III.    THE ANTI-SLAPP STATUTE ............................................................6

IV.     LEGAL STANDARDS ......................................................................6

V.      ARGUMENT ....................................................................................7

    A.   DEFENDANT'S ARGUMENTS REGARDING NON-TRAILER STATEMENTS ARE DISINGENUOUS AND SHOULD BE REJECTED.....................................7

        1.   ALLEGATION IN THE TAC SHOULD NOT BE STRICKEN, AND UNIVERSAL'S POSITION ON THIS COURT'S PRIOR RULINGS IS WRONG............................7

        2.   PLAINTIFF WOULFE WAS DECEIVED AGAIN BY DEFENDANT'S FALSE ADVERTISING, THIS TIME ON GOOGLE PLAY ........................................10

    B.   PLAINTIFFS POSSESS ARTICLE III STANDING TO PURSUE INJUNCTIVE RELIEF........13

    C.   DEFENDANT'S ARGUMENT CONCERNING PLAINTIFF ROSZA'S UCL CLAIM IS WITHOUT MERIT BECAUSE IT WAS WAIVED .................................18

    D.   LEAVE TO AMEND SHOULD BE GRANTED .............................................20

    E.   DEFENDANT'S ATTORNEY'S FEES MOTION SHOULD BE DENIED..........................20

VI.     CONCLUSION ................................................................................21

1

## TABLE OF AUTHORITIES

2

**Cases**

3  *Allen v. ConAgra Foods, Inc*., 2018 WL 6460451, at *13 (N.D. Cal. Dec. 10, 2018)......18

4  *Baral v. Schnitt*, 1 Cal.5th 376, 394, 205 Cal.Rptr.3d 475, 376 P.3d 604 (2016)..............10

5  Brady v. Bayer Corp., 26 Cal. App. 5th 1156 (2018).........................................................17

6  *Brown v. Stackler* (7th Cir.1980) 612 F.2d 1057, 1059 ....................................................21

7  *C.F. v. Capistrano Unified School District*, 654 F.3d 975, at 985 (9th Cir. 2011) ............20

8  *Christian Research Inst. v. Alnor*, 81 Cal. Rptr. 3d 866, 871–72 (Cal. App. 4th Dist.

9    2008)..............................................................................................................................20

10  *Clapper v. Amnesty Intern. USA*, 568 U.S. 398 (2013)......................................................11

11  *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 962 (9th Cir. 2018) ...............12, 14, 18

12  *Garrett v. Hine*, 1:21-CV-0845-DAD-BAK, 2022 WL 2791236, at *5 (E.D. Cal. July 15,

13    2022)..............................................................................................................................21

14  *Henderson v. Gruma Corp*., No. 10–04173, 2011 WL 1362188 at *7 (C.D. Cal. Apr. 11,

15    2011)..............................................................................................................................18

16  *Hernandez v. Radio Sys. Corp.*, EDCV221861JGBKKX, 2023 WL 2629020, at *6 (C.D.

17    Cal. Mar. 9, 2023)........................................................................................................17

18  *Lilly v. Jamba Juice Co*., 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015) ..............18

19  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 565 n.2 (1992).........................................11

20  *Mann v. Quality Old Time Service, Inc.*(2006) 42 Cal. Rptr. 3d 607, 618.......................20

21  *National Rural Telecomms. Coop. v. DIRECTV, Inc.,* 319 F.Supp.2d 1059, 1074-75 (C.D.

22    Cal. 2003) ......................................................................................................................20

23  *Newport Harbor Ventures LLC v. Morris Cerullo World Evangelism*, 4 Cal.5th 637, 645,

24    230 Cal.Rptr.3d 408, 413 P.3d 650 (2018)..........................................................5, 8, 19

25  *Olmos v. T. Marzetti Co*., LACV2103159JAKMRWX, 2022 WL 18358950, at *5 (C.D.

26    Cal. Oct. 11, 2022) .......................................................................................................18

27

28

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) .................................................................................................... 7

*Robinson v. J.M. Smucker Co.*, 2019 WL 2029069, at *4 (N.D. Cal. May 8, 2019) ........ 18

*Robinson v. U-Haul Co. of California*, 4 Cal.App.5th 304, 317 (Cal. Ct. App. 2016). ...... 14

*Saunders v. Superior Court,* 27 Cal.App.4th 832, 838–39, 33 Cal.Rptr.2d 438 (Cal.Ct.App.1994) ................................................................................................. 19

*Serrano v. Unruh*, 652 P.2d 985, 988 (Cal. 1982) ......................................................... 20

*Sharpe v. GT's Living Foods, LLC*, CV1910920FMOGJSX, 2021 WL 1035119, at *3 (C.D. Cal. Feb. 1, 2021) ....................................................................................... 16

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ..... 19

*Sinatro v. Barilla Am., Inc.,* 2022 WL 10128276, at *10 (N.D. Cal. Oct. 17, 2022). ....... 15

*Stacy v. Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010) ................................................ 7

*Tran v. Sioux Honey Association, Cooperative*, 2020 WL 905571, *8 (C.D. Cal. 2020). 11

*Walker v. Nestle USA, Inc.*, 3:19-CV-723-L-BGS, 2020 WL 3317194, at *3 (S.D. Cal. June 17, 2020) ...................................................................................................... 16

Williams v. Gerber Prods. Co., 552 F.3d 934, 939 (9th Cir. 2008) .................................. 16

*Wisdom v. Easton Diamond Sports, LLC*, 2019 WL 580670, at *3 (C.D. Cal. Feb. 11, 2019) ...................................................................................................................... 18

**Statutes**

Cal. Civ. Proc. Code § 425.16 ............................................................................... 7, 8, 20

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 7

## I.    INTRODUCTION

Precipitating this action, Defendant began advertising the movie *Yesterday* using promotional trailer advertisements which featured the actress Ana de Armas ("ADA") prior to the film's release, despite *knowing* for certain that ADA would never appear in the film. Third Amended Class Action Complaint ("TAC") ¶¶ 2-3, 41, 45-49, 52-56. Likewise, Defendant has persisted with these false advertisements for more than four (4) years.  Id., ¶41.

On December 20, 2022, Plaintiffs prevailed in defending against Defendant's combined motion to dismiss and strike, with the Court holding that Plaintiffs' false advertising claims would go forward. *See* Dkt. 83. Despite Plaintiffs' victory, Defendant thereafter filed a motion seeking attorney fees under California's anti-SLAPP statute on the alleged basis that it prevailed because Plaintiffs' alternatively pleaded claims – required by a split in law pertaining to whether movies are goods – were dismissed (but not stricken) and because the Court held that Plaintiffs had no standing to seek an injunction. *See* Dkt. 83 at p. 26-28. According to this Court's Order, Plaintiffs' allegations that they might be "interested" in renting (or purchasing) a future version of the film did not raise a sufficiently imminent threat because it "was not concrete enough to establish an intention to watch the movie again." Dkt. 83 at p. 27.

In opposition to Defendant's motion for attorney fees, Plaintiffs (*inter alia*) properly argued that a dismissal *without* prejudice, such as occurred with Plaintiffs' injunction claim, did not support an attorney fee award under the anti-SLAPP statute. *See* Dkt. 102 at p. 6-7. In response to this argument, the Court *ordered* Plaintiffs to file an amended complaint, prior to close of discovery and prior to Defendant providing any meaningful discovery answers pertaining to most of the important issues being litigated in this case. *See* Dkt. 107. In the process of preparing an amended complaint to comply with this Court's Order, Plaintiffs sought to amicably resolve a disagreement among the parties pertaining to whether a footnote in this Court's earlier December 20, 2022, Order held that Plaintiffs had no standing to represent class members for persons that paid for the movie *Yesterday*

1

on VUDU and other non-Amazon movie platforms. Unable to resolve the disagreement otherwise, Plaintiffs filed an *ex parte* application seeking clarification from the Court. *See* Dkt. 113. In particular, Plaintiffs did not wish to file an amended complaint which might inadvertently include claims that the Court had already dismissed, and which might subject Plaintiffs to further efforts by Defendant to obtain anti-SLAPP attorney fees. In response to Plaintiffs' *ex parte* application, the Court clarified that Plaintiffs did not have standing to represent class members unless they paid for movie views or purchases on Amazon Prime.[1] *See* Dkt. 115.

Subsequent to the Court's clarification of its earlier Order, Plaintiffs prepared further amendments to the TAC to make it clear that Plaintiffs were not asserting claims which this Court had already dismissed. Indeed, this is precisely what Plaintiffs advised the Court it would do in Plaintiffs' *ex parte* application. *See* Dkt. 113 at p. 6-7. Specifically, Plaintiffs included the following language in the TAC eliminating all doubt about the scope of the pleadings:

> These claims are asserted pertaining to Defendant's rentals and sales of movies on Amazon Prime …. Claims pertaining to VUDU and other non-Amazon Prime movie vendors have been dismissed, and factual allegations pertaining to such vendors relate to background facts, materiality, intent, and similar issues only, without forming the basis of any legal claim.

(TAC ¶¶ 130, 154, 162, 170).

Moreover, since this Court's original March 9, 2023, Order directing Plaintiffs to file the TAC only addressed injunctive relief, Plaintiffs proposed to Defendant that it would file a motion for leave to file the TAC, so that it could make the further required

---

[1] Plaintiffs object to this holding, for purposes of appeal, because it is believed to be in error. A finding that a plaintiff can only represent class members that purchased a product from the exact same store (e.g., Amazon, Vudu, Google, Apple, etc.) nullifies entire class certification doctrines and pathways, such as permitted by *Tobacco II* and its progeny.

amendments, in order to comply with Fed. R. Civ. P. 15. In response to this proposal, Defendant threatened to attempt to strike the motion for leave and to independently seek an order entering the TAC so that it could thereafter file an anti-SLAPP motion to strike, instead of an opposition to Plaintiffs' motion for leave.[2] Indeed, Defendant preferred this procedural route because anti-SLAPP attorney fees are not available under Rule 15 but can be awarded under Code Civ. Pro. §425.16.

In short, despite Plaintiffs' various attempts to minimize burdens on the parties, and to comply with this Court's orders, every step that Defendant takes in this litigation is strategically designed either to delay or to try to invoke anti-SLAPP sanctions against Plaintiffs, as punishment for exposing Defendant's false advertising and to deter other plaintiffs from ever bringing suit against Universal Pictures again.

Defendant's latest anti-SLAPP motion should be denied for at least the following reasons. As now set forth more clearly in the TAC, and eliminating the perceived standing infirmities identified in this Court's December 20, 2022, Order, Plaintiffs intend to purchase and/or rent the *Yesterday* movie in the future, because they desire to see a version of the movie that ADA is in, and Defendant continues to advertise that ADA is in the film across various platforms. TAC, ¶¶ 145, 146, 147. It is plausible for Plaintiffs to believe Defendant's existing advertising of the movie, because footage exists to add ADA to the film, *see* TAC ¶ 147, and it is implausible to believe that Defendant would continue to violate various state laws, particularly after a court decision rejecting Defendant's First Amendment and other defenses. See TAC ¶ 146.[3]

---

[2] Although Defendant originally tried to insist that Plaintiff file an amended complaint, *without* a motion for leave, which extended beyond that contemplated by this Court's March 9, 2023, Order (Dkt. 107), when Plaintiffs did this before, Defendant filed a motion to strike the complaint paired with a request for monetary sanctions.

[3] Plaintiffs have no way to determine whether ADA is included in movie versions where she appears in the trailer (or is expressly listed as a cast member) except by renting or purchasing the movie. TAC, ¶¶145-151.

Although Defendant has since edited the *Yesterday* trailer on Amazon Prime specifically, the trailer still includes images of ADA with her back turned to the camera, wearing the same white dress as the original trailer. Accordingly, because Plaintiffs Woulfe and Rosza saw the original trailer featuring ADA's face and the same white dress, it is reasonable for Plaintiffs to believe that ADA is in the advertised film because they are still able to recognize her (even with her back turned). *See* TAC ¶ 88.

Eliminating speculation about plausibility of future conduct, Plaintiff Woulfe paid to rent *Yesterday* for a second time on a different platform and has again been deceived, having relied on the Google advertising material for the film expressly listing ADA as a cast member. TAC, ¶145. Because Defendant has control over its trailer and marketing materials that are used on third-party platforms websites such as Google, it is clear that Defendant has not utilized the control it possesses over these websites to remove the false and misleading advertisements that show ADA in *Yesterday.* As a result, if Defendant is not enjoined, it will continue to engage in the unlawful, unfair and fraudulent conduct described throughout the TAC. Indeed, Defendant has refused Plaintiffs' requests for an agreement that Defendant will not falsely advertise the movie *Yesterday* in the future, underscoring the likelihood that it will continue its deceptions unless enjoined by the Court. TAC, ¶145.

Defendant's claims that Google Play is separable from the advertising that Plaintiff Woulfe viewed fall flat. Google owns Google Play, and the advertising that Mr. Woulfe viewed was not a typical 'Google search result' as Defendant claims but instead was a targeted advertisement for the film which provided pricing and a link to Google Play to rent the film, all on the same screen and in proximity to the advertisement with the cast listing. TAC, ¶145. The advertisement also listed a rental opportunity on YouTube television, which is also owned by Google. *Id*. Finally, Defendant urges the Court to go beyond the pleadings and view a specific page of Google Play today, however, (1) that is outside the four corners of the TAC; and (2) there is no evidence that Google Play appears the same way today as it did when Mr. Woulfe rented the movie there (the content

accessible at a weblink can be edited at any time). Indeed, both Amazon and Apple have changed their *Yesterday* movie advertising recently demonstrating this point. Regardless, the trailer which exists today on Google Play shows ADA in various scenes. *See* Motion, at 12, fn 9, link at 1:50-2:10.

Defendant's efforts to strike various factual statements and Plaintiff's Rosza's UCL claims based on common law violations are each untimely. Twenty-five of the twenty-nine paragraphs in question, and the common law claim, were present in the Second Amended Complain. But a motion to strike must be brought within 60 days. *See Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 413 P.3d 650, 651 (Cal. 2018). If the time period for striking facts or claims in an original complaint has already expired, a motion to strike filed against an amended complaint can only be brought against the new claims that didn't exist in the original complaint. *Id.* Accordingly, Defendant's attempt to strike twenty-five factual paragraphs and Plaintiff's Rosza's UCL claims based on common law violations more than a year after the prescribed period for bringing an anti-SLAPP motion has already expired (Plaintiffs filed their SAC in June 2022) is objectively baseless and should be denied. Because it is objectively baseless, intended solely for delay or other improper purpose, Plaintiffs reserve the right to seek attorney fees for this disallowed portion of the motion. *See Workman v. Colichman,* 245 Cal. Rptr. 3d 636, 652 (Cal. App. 2d Dist. 2019) (attorneys' fees awarded where motion to strike filed solely for delay and where no reasonable attorney could have concluded that motion was well taken).

For similar reasons, because the twenty-five factual paragraphs and Plaintiff Rosza's UCL claims existed in the Second Amended Complaint filed on June 7, 2022 (Dkt. 36), and because Defendant did not seek to dismiss them in its original motion (*see*, generally, Dkt. 44), Defendant waived the right to strike (or dismiss) the factual allegations and Plaintiff Rosza's claims. Consequently, Defendant's motion to dismiss or strike Plaintiffs' factual statements and Plaintiff Rosza's UCL claims based on common law is untimely and objectively baseless for this additional reason, for which Plaintiffs also reserve the right to seek attorney fees.

## II.    BACKGROUND[4]

On December 20, 2022, the Court issued its Order on Defendants' Motion to Dismiss the Second Amended Complaint, dismissing (but not striking): Plaintiffs' CLRA, Express Warranty, and Implied Warranty claims with prejudice and Injunctive Relief without prejudice. Dkt. 83, at 32. The Court denied Defendants' Motion to Dismiss with regard to Plaintiffs' FAL, UCL and Unjust Enrichment claims. The Court, however, did not specifically strike any paragraphs or facts from the SAC.

The Court granted Plaintiffs an opportunity to file a Third Amended Complaint to address its Order dismissing their injunctive relief claims. Dkt. 107, 115. Plaintiffs then filed the Third Amended Complaint on April 14, 2023. Dkt. 130.

## III.    THE ANTI-SLAPP STATUTE

Plaintiffs understand that the Court already held that step one of the Anti-SLAPP statute applies to Plaintiffs' claim. *See* Dkt. 83. Plaintiffs understand that the Court held that Defendant's Motion tests the legal, not the factual sufficiency of their claims. As a result, Plaintiffs incorporate all arguments set forth in this case regarding the applicability of the Anti-SLAPP statute to their claims herein as if they were fully set forth. *See, e.g.,* Dkt. Nos. 50, 71, 89, 102.

## IV.    LEGAL STANDARDS

When considering a Cal. Civ. Proc. Code § 425.16 anti-SLAPP motion, which tests the legal sufficiency of pleadings,[5] a district court should apply the Fed. R. Civ. P. 12(b)(6) standard and consider whether a claim is properly stated. *Planned Parenthood*

---

[4] Plaintiffs incorporate the Background section of their Opposition to the Motion to Strike/Dismiss its Second Amended Complaint as if fully set forth herein. *See* Dkt. 56. In addition, Plaintiffs reserve all rights regarding rulings in the Court's Orders.

[5] Plaintiffs reserve all rights regarding whether Defendants' Motions to Dismiss test the legal or factual sufficiency of their Complaints and incorporate section III(A) and (B) of their Opposition to the Motion to Strike/Dismiss its Second Amended Complaint as if fully set forth herein. *See* Dkt. 56.

6

*Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). The Court must "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy v. Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010). Thus, the Court is required to accept as true that Plaintiffs interpreted the *Yesterday* trailer and advertising as making affirmative false representations that ADA (and other omitted content) was in the movie; that they relied in the misrepresentation; and that they paid money for the movie in such reliance. TAC at ¶¶ 7, 10, 51, 92.

## V.   ARGUMENT

### A.   Defendant's Arguments Regarding Non-Trailer Statements Are Disingenuous and Should be Rejected

#### 1.   Allegation in the TAC Should Not Be Stricken, and Universal's Position on this Court's Prior Rulings is Wrong

Defendant contends "Plaintiffs' TAC does not remove any of the allegations regarding non-trailer statements that the Court held Plaintiffs lack standing to assert." Motion at 10. Defendant asserts that numerous allegations, which were in the SAC and repeated in the TAC, should be stricken – specifically, Defendant says "[t]he non-trailer statements that should be stricken are alleged in TAC ¶¶ 14, 22-33, 54-56, 69-70, 72, 84, 89-90, 94, 100-101, 105, 113-114, and 145." Motion at 2 n.2. However, Defendant waived this argument because it failed to seek relief in its prior Motion to Strike/Dismiss (Dkt. 44) that was filed July 15, 2022. Of the 29 paragraphs Defendant asks the Court to strike, at least 25 of them were in the SAC, and Defendant never requested the Court strike those paragraphs in its prior motion. Even if Defendant had made such a request – which it didn't – the Court nevertheless did not strike the allegations.

In *Newport Harbour*, the California Supreme Court interpreted Code Civ. Proc. § 425.16(f) "to permit an anti-SLAPP motion against an amended complaint if it could not have been brought earlier, but to prohibit belated motions that could have been brought earlier." *Newport Harbor Ventures LLC v. Morris Cerullo World Evangelism*, 4 Cal.5th

637, 645, 230 Cal.Rptr.3d 408, 413 P.3d 650 (2018). Accordingly, Defendant is prohibited from asking the Court to strike allegations in the TAC that Defendant failed to address with respect to the SAC. The remaining paragraphs that Defendant complains about are not subject to being stricken or dismissed because they are only included for the purpose of providing context, or are related to materiality, liability, or similar issues, and do not form the independent basis of any claim. For example, ¶23 of the TAC alleges that Defendant (and not Amazon.com, for example) is responsible for the advertisements, helping establish that they are material to Defendant and consumers and that Defendant (and not Amazon.com) is the responsible party. ¶33 of the TAC alleges that ADA's is also software encoded in association with the movie *Yesterday*, and ¶105 further details the consistency, uniformity, and widespread nature of the advertising which Defendant would not orchestrate country-wide if it were not material. And, ¶145 details Defendant's refusal to agree to refrain from future false advertising as well as reproduces the Google advertisement for the movie that was viewed prior to Mr. Woulfe's most recent *Yesterday* rental. Each of these facts is relevant to the injunctive relief requested. *See* additional discussion *infra*.

This Court never ruled that specific allegations or paragraphs were stricken from Plaintiffs' pleadings, and Defendant's improper characterization of the Court's prior rulings vis-à-vis the content of the TAC must be rejected. This Court did not order that certain allegations be removed from the Plaintiffs' complaint or that Plaintiffs were prohibited from including allegations from the SAC in the TAC (with the exception of dismissed claims). This Court concluded in its Order (Dkt. 83) dated December 20, 2022, that Defendant's "Motion to Dismiss" was granted with prejudice as to "Plaintiffs' CLRA Claim" (SAC Count VII), "Plaintiffs' Express Warranty Claim" (SAC Count VI), and "Plaintiffs' Implied Warranty Claim" (SAC Count IV). Order (Dkt. 83) at p. 32. Those dismissed claims were not included in the TAC. Nowhere in the December 20, 2022 Order did the Court strike any allegations of the SAC that are repeated in the TAC. For that

matter, the Court's Order also did not strike any of Plaintiffs' claims or causes of action – rather, the Court simply dismissed certain claims from the SAC.

Pursuant to the Order (Dkt. 115) dated March 28, 2023, the Court clarified its December 20, 2022, ruling as follows:

> Plaintiffs do not have standing to pursue claims challenging alleged false advertising on platforms which Plaintiffs did not use to view the movie. Thus, if Plaintiffs did not view alleged false advertising on VUDU or other platforms, Plaintiffs do not have standing to pursue alleged false advertising occurring on those platforms.

Once again, the Court in its March 28, 2023, Order did not strike any allegations from Plaintiffs' pleadings but rather clarified that it was the Court's determination that Plaintiffs did "not have standing to pursue claims challenging alleged false advertising on platforms which Plaintiffs did not use to view the movie." Dkt. 115. Plaintiffs have not included any claims in the TAC for false advertising on platforms which Plaintiffs did not use to view the movie. In each count of the TAC, Plaintiffs made it clear that the claims comply with the Court's rulings as to the scope of the claims. The TAC provides in each of its four claims:

> These claims are asserted pertaining to Defendant's rentals and sales of movies on Amazon Prime ….[6] Claims pertaining to VUDU and other non-Amazon Prime movie vendors have been dismissed, and factual allegations pertaining to such vendors relate to background facts, materiality, intent, and similar issues only, without forming the basis of any legal claim.

TAC at ¶¶ 130, 154, 162 170.

---

[6] With respect to Counts III and IV that include claims under Maryland law by Conor Woulfe, paragraphs 162 and 170 include the following additional statement: "and Google Play only." This additional factual statement is included in the aforementioned claims because Plaintiff Woulfe has been deceived on the Google Play platform.

Plaintiffs are not prohibited from including contextual matters in their pleading. The courts have explained that allegations which "merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." *Baral v. Schnitt*, 1 Cal.5th 376, 394, 205 Cal.Rptr.3d 475, 376 P.3d 604 (2016). The allegations in the TAC, which are questioned by Defendant, explicitly do not "support a claim for recovery" in the TAC because Plaintiffs unequivocally acknowledge that "[c]laims pertaining to VUDU and other non-Amazon Prime movie vendors have been dismissed, and factual allegations pertaining to such vendors relate to background facts, materiality, intent, and similar issues only, without forming the basis of any legal claim'" TAC at ¶¶ 130, 154, 162 170. Further, Defendant's other advertising conduct is certainly relevant to issues such as materiality. For example, it is logical to conclude that Defendant would not include cast listings at all, if they were not material to consumer rental or purchase decisions. Likewise, given that Defendant universally falsely advertises that ADA is in *Yesterday* in essentially all advertising forms, a jury could be persuaded to reasonably believe that ADA's presence herself in a movie is material to movie consumer decisions. Otherwise, why would Defendant continue to do it four years after she was cut from the movie and after this Court's Order rejecting Defendant's First Amendment and other liability defenses?

Defendant's untimely request for the Court to strike allegations in the TAC is without any merit. Moreover, Defendant's attempt to smuggle non-existent rulings into this Court's prior orders is disingenuous and must be rejected.

### 2.     Plaintiff Woulfe was Deceived Again by Defendant's False Advertising, This Time on Google Play

Just because Defendant does not like the fact that Plaintiff Woulfe relied on false advertising for *Yesterday*, watched the film again and was deceived a second time, does not mean it is inappropriate to include those facts in the allegations of the TAC. The facts underlying Plaintiff Woulfe's claims have changed since the filing of the SAC and he is permitted to include those facts in his pleading. Plaintiff Woulfe "expected … the full-

length movie he … paid to see [on Google] would have de Armas [and] the 'Something'
joke-scene in it" because the advertising for the movie, which was created and controlled
by Defendant, continues to include ADA and the "Something" scene. Motion to
Strike/Dismiss, at 14. The only way for Plaintiff Woulfe (or any other consumer) to know
whether ADA and the "Something" segment are in the film – as advertised by Defendant
in its trailer and other marketing – is to watch the film.

Defendant's reliance on *Clapper v. Amnesty Intern. USA*, 568 U.S. 398 (2013) to
contend that Plaintiff Woulfe attempted to "manufacture standing" ignores most of the
standing analysis in *Clapper*. Among other things, the Court explained that an injury must
be "concrete, particularized, and actual or imminent" for Article III standing purposes and
"[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched
beyond its purpose, which is to ensure that the alleged injury is not too speculative for
Article III purposes—that the injury is *certainly* impending." *Id.* at 409 (quoting *Lujan v.
Defenders of Wildlife*, 504 U.S. 555, 565 n.2 (1992)). The Court in *Clapper* determined
that the parties challenging the subject law lacked standing because their injury was not
imminent and instead was "based on their fears of hypothetical future harm that is not
certainly impending." *Id.* at 416. That is the context for the quote that Defendant relies on
from *Clapper*, and when the entirety of the *Clapper* analysis is considered – as opposed to
lifting a few choice words from the opinion – it is clear *Clapper* demonstrates that Plaintiffs
do indeed have standing, including because their injuries are "concrete, particularized, and
actual or imminent" not based on "hypothetical future harm." *Id.* at 409 and 416.

Defendant's claims that the Google cast listing of ADA is not an advertisement and
allegations about purported distinctions between Google and Google Play are unserious
and similarly unavailing. "Google Play is a service provided by Google LLC" and the cast
listing in question was part of an advertisement on Google.com, complete with pricing
information, for movie rentals on Google Play and YouTube, both of which Google LLC

owns.[7] Moreover, the Google Play weblink Defendant relies on in its motion leads to a page which can be altered at any time (though still accessible by the same weblink), and therefore may not include the same information as when Mr. Woulfe used the platform (and, indeed, may not include the same information today, as when Defendant filed its motion). Nevertheless, the trailer accessible on the webpage accessed by Defendant's weblink – at least as of the date of this opposition - also advertises that ADA is in the movie *Yesterday*.[8]

### B.    Plaintiffs Possess Article III Standing to Pursue Injunctive Relief

As this Court previously held, "the fact that Plaintiffs currently know that the movie does not contain De Armas or the Segment does not categorically deprive them of standing to seek an injunction." Order, at 27. Plaintiffs' additional allegations included in the TAC sufficiently address the Court's ruling in the Order regarding injunctive relief, thus meeting the standard set forth in the *Davidson* case, the Ninth Circuit and this District. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 962 (9th Cir. 2018) (allegations that plaintiff "continues to desire to purchase wipes that are suitable for disposal in a household toilet" and "would purchase truly flushable wipes manufactured by Kimberly-Clark if it were possible to determine prior to purchase if the wipes were suitable to be flushed" were

---

[7] Google Play Terms of Service dated March 15, 2023.
https://play.google.com/intl/en_us/about/play-terms/index.html.
[8] In passing in a footnote, Defendant also suggests that the TAC provides insufficient detail pertaining to the date that Mr. Woulfe watched the movie *Yesterday* on Google Play. *See*, Motion at 15, fn. 11 (objecting only to the use of the word "recently"). Defendant evidently asserts that a specific date must be identified in the TAC but cites no case which supports such a conclusion. Nevertheless, Defendant's own Motion implicitly acknowledges that Mr. Woulfe must have purchased the rental from Google Play between the date of the Plaintiffs' discovery answers (March 9, 2023) and the TAC (April 14, 2023), which is sufficient to put Defendant on notice of the claims at issue in this case. However, if the Court decides otherwise, leave to add the specific date of Mr. Woulfe's Google Play rental is respectfully requested.

1   sufficient to allege standing to seek injunctive relief.).

2       Here, Plaintiffs pleaded additional allegations in the TAC that support a finding that

3   Plaintiffs have standing to pursue injunctive relief. Indeed, Plaintiffs' additional allegations

4   (TAC, ¶¶145-151) and the facts here result in a circumstance that is far greater than the

5   standard for injunctive relief set forth in *Davidson*.

6       For instance, Defendant continues to advertise *Yesterday* using trailers that feature

7   ADA, she is still listed as a cast member alongside her photograph, and her name is still

8   software encoded to the movie. TAC, at ¶144. In addition, rather than simply alleging that

9   the plaintiff "continues to desire" and will purchase *if* certain conditions exist, like in

10  *Davidson*, Plaintiffs here assert that they "intend to and will pay to view *Yesterday* again,

11  based upon the reasonable presumption that no rational actor would continue to falsely

12  advertise" that ADA is in fact in the movie. TAC, at ¶145. Moreover, Plaintiff Woulfe has

13  paid to rent *Yesterday* for a second time on a different platform and has again been

14  deceived, having relied on the Google advertising for the film expressly listing ADA as a

15  cast member. *Id*.

16

17

18

19

20

21

22

23



24  He, likewise, intends to continue trying to pay for a version of *Yesterday* with ADA,

25  based on the reasonable presumption that a party would not continue to falsely advertise a

26  product, after an adverse decision (finding the activity to be deceptive) was issued by a

27  Court of law. *Id*. at ¶ 144.

28

13

Moreover, in February and March of 2023, Plaintiffs requested that Defendants agree to only truthfully advertise the movie *Yesterday* in the future. TAC, at ¶145. Defendant declined the first inquiry, claiming that Plaintiffs had no standing to ask for such a voluntary agreement, and ignored the second. *Id*. Defendant's stated basis for refusing to agree to correct its advertising was that the Court had dismissed the injunctive relief remedy. The Court now has the opportunity to restore that remedy, by permitting Plaintiffs to maintain the injunction remedy, which would thus also provide Defendant with an impetus to stop its false advertising. Defendant's discovery misconduct pertaining to its advertising practices is another reason to allow Plaintiffs to maintain their claim for injunctive relief, paired with Defendant's four years of continuous false advertising of *Yesterday*, and its false advertising of other movies during the last 30 years. *Id*. Allowing Plaintiffs to pursue an injunction will assist in "[eliminating] a practice that is now shrouded in uncertainty and plagued by a troubling past." *Robinson v. U-Haul Co. of California*, 4 Cal.App.5th 304, 317 (Cal. Ct. App. 2016).

The fact that Defendant included the "Something" scene as a deleted scene makes it plausible for Plaintiffs to expect a director's cut that could include the "Something" scene. *See* TAC, at ¶147. Defendant could release that version with advertising that includes the scene or without advertising at all. *Id*. Either way, directors' cuts are common, and Plaintiffs would have no way of knowing whether the "Something" scene was included in the Director's Cut. In fact, that situation has already happened to Mr. Woulfe. *See* TAC, ¶147 ("it was reasonable for Mr. Woulfe to rely on cast listings representing that Ana de Armas would be in the version of *Yesterday*  that he paid to rent on the second rental occasion."). Directors' cuts are often different from the original versions of movies.[9]

---

[9] See, e.g., Ben Travis, *22 Director's Cuts That Massively Changed Their Original Movies* (March 18, 2021), https://www.empireonline.com/movies/features/best-directors-cuts/; Evadne Hendrix, *Here are 5 Movies with Incredibly Different Director's Cuts* (February 14, 2022), https://movieweb.com/movies-with-different-directors-cuts/

Importantly, "a Director's Cut – or an Extended Cut, Special Edition, or Anniversary (or other release type) – could be released to add scenes which don't include ADA, but since Defendant refuses to stop advertising that ADA is in the movie *Yesterday,* Plaintiffs and other members of the movie consuming public are likely to be confused and deceived." TAC, at ¶147.

As further support that it is reasonable for consumers to believe that a version of *Yesterday* would be released with the "Something" scene, misled consumers on bestbuy.com hoped that an alternative version that included the "Something" scene would be released over three (3) years ago. *See* TAC, ¶148. It is thus entirely plausible for Plaintiffs to reasonably believe that Defendant will release a version of *Yesterday* that includes the "Something" scene.

Defendant cites the *Barilla* case which held that the plaintiffs there did not have standing for injunctive relief because they knew that defendant's products were made in the United States, despite defendant's prior advertisements to the contrary. *See Sinatro v. Barilla Am., Inc.,* 2022 WL 10128276, at *10 (N.D. Cal. Oct. 17, 2022). The facts here are distinguishable: as alleged above, Plaintiffs have no way of knowing whether ADA will be included in a future version of the movie. Perhaps if Defendant and ADA had a contract dispute that precluded her from being in the movie or if there was another reason why she could never be in *Yesterday,* then that situation might preclude injunctive relief. But Defendant has obstructed Plaintiffs' attempts to discover any facts that would result in Plaintiffs knowing one way or another whether ADA could be featured in a future version of the movie. *See* TAC, at ¶149-150.

Furthermore, Defendant's allegation that Plaintiffs have not alleged that it has control over third-party movie sites is false. Motion, at 16, n. 12. As the Complaint alleges, this claim is "not merely implausible but is contradicted [by] the representations of Amazon," which represented that "Defendant uploads movie versions and trailer versions using a platform termed "Aspera." TAC, at ¶150.

Defendant's claim that Plaintiff Woulfe is not relying on Universal's advertising is

15

false and misleading. Motion, at 16. Indeed, the TAC makes clear that *Yesterday* is still being advertised with ADA as part of the cast and that Plaintiff would rely and has relied on this advertisement. See TAC, ¶145. Further, the Court held that Plaintiffs' misrepresentation claims are plausible, and whether Defendant actually mispresented that "an actress or scene is in the movie" is one of fact that cannot be decided at this stage, much like the amount of control that Defendant asserts over the advertisements. Order, at 14.

Defendant also claims that this case's publicity should somehow give Plaintiffs' notice that Defendant would release a different version of *Yesterday.* Motion, at 17. But this logic is flawed, as the content of any future publicity is speculative and, moreover, Plaintiffs do not have a duty to further investigate beyond Defendant's advertisements. *See Walker v. Nestle USA, Inc.*, 3:19-CV-723-L-BGS, 2020 WL 3317194, at *3 (S.D. Cal. June 17, 2020), quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); *see also Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (2018).

Plaintiffs' allegations in the TAC are sufficient to advance their injunctive relief remedy under the UCL, as numerous Courts in this District have held. *See, e.g., Sharpe v. GT's Living Foods, LLC*, CV1910920FMOGJSX, 2021 WL 1035119, at *3 (C.D. Cal. Feb. 1, 2021) (holding that allegations that plaintiffs "continue[ ] to purchase kombucha products," and would "like to" purchase products "in the future" are "sufficient to allege a threat of future harm"); *see also, Tran v. Sioux Honey Association, Cooperative*, 2020 WL 905571, *8 (C.D. Cal. 2020) (finding plaintiff had standing despite allegation that "she ceased purchasing [defendant's] products because [defendant] was labeling [its] products as pure when it wasn't" since she also alleged that "she continues to purchase honey, but does not currently purchase [defendant's honey] and she plans to continue to purchase honey in the future" because "absent the injunctive relief sought, [plaintiff] will be unable

to rely on [defendant's] advertising and labeling in the future") (internal quotation and alteration marks omitted).

As another recent example, and similar to the facts here, plaintiff in the *Radio Systems* case alleged that he "continues to have use" for defendant's products and "would want to purchase them in the future." *Hernandez v. Radio Sys. Corp.*, EDCV221861JGBKKX, 2023 WL 2629020, at *6 (C.D. Cal. Mar. 9, 2023). There, a court in this District, held that the plaintiff "faces the similar injury of being unable to rely on [Defendant's] representations of its product in deciding whether or not [he] should purchase the product in the future." *Id.; see also Lilly v. Jamba Juice Co*., 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015) (stating that "unless the manufacturer or seller has been enjoined from making the same misrepresentation," the "consumer won't know whether the label is accurate" and "won't know whether it makes sense to spend her money on the product"); *see also*, *Olmos v. T. Marzetti Co*., LACV2103159JAKMRWX, 2022 WL 18358950, at *5 (C.D. Cal. Oct. 11, 2022) ("Because it has been alleged that Plaintiff wants to purchase the Products in the future but will not do so if she continues to find Defendants' representations unreliable, there is a sufficient allegation as to a cognizable threat of future harm.").

Numerous courts following *Davidson* have held that similar allegations are sufficient to confer Article III standing to pursue injunctive relief. *See, e.g*., *Allen v. ConAgra Foods, Inc*., 2018 WL 6460451, at *13 (N.D. Cal. Dec. 10, 2018); *Wisdom v. Easton Diamond Sports, LLC*, 2019 WL 580670, at *3 (C.D. Cal. Feb. 11, 2019); *Robinson v. J.M. Smucker Co*., 2019 WL 2029069, at *4 (N.D. Cal. May 8, 2019).

If the Court were to disallow Plaintiffs to advance their remedy of injunctive relief, the result would be the Court's acceptance of the suggestion that Plaintiffs' recognition of Defendant's misrepresentation operates to defeat standing for an injunction - which means that injunctive relief would never be available in false advertising cases, a wholly unrealistic result. *See, e.g., Henderson v. Gruma Corp*., No. 10–04173, 2011 WL 1362188 at *7 (C.D. Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing for …

UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing.").

For the reasons set forth above, the Court should find that Plaintiffs have Article III standing to pursue injunctive relief.

## C.   Defendant's Argument Concerning Plaintiff Rosza's UCL Claim is Without Merit Because It Was Waived

Defendant argues the Court should "strike and dismiss" Plaintiff Rosza's UCL claim to the extent it is based on common law violations. Motion at 19. Defendant cites paragraph 134 of the TAC as the subject of its argument on this point. Paragraph 134 of the TAC is precisely the same as paragraph 130 of the SAC, except that Plaintiff Rosza did not include allegations concerning CLRA violations and Lanham Act violations (from the SAC) in the TAC based on the Court's ruling in its December 20, 2022 Order (Dkt. 83). Defendant never raised the argument it raises now with respect to paragraph 130 of the SAC, and Defendant failed to previously request for the Court to strike paragraph 130 of the SAC. *See Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 413 P.3d 650, 651 (Cal. 2018) ("a defendant must move to strike a cause of action within 60 days of service of the earliest complaint that contains that cause of action."). Similar to the other allegations that Defendant has requested the Court strike from the TAC (but failed to include in its prior Motion to Strike/Dismiss and never requested be struck from the SAC) – Defendant has waived any argument that paragraph 134 of the TAC should be dismissed or struck. Defendant's Motion to Strike/Dismiss as to this issue should be rejected on this basis alone, as well as being beyond the 60-day deadline.

Indeed, Defendant's motion to strike should be rejected as untimely. California's anti-SLAPP statute requires that an anti-SLAPP motion be brought within 60 days of service of the earliest pleading that contains the claim in question. *See Newport Harbor Ventures,* 413 P.3d at 651. The claim of Plaintiff Rosza's that Defendant now seeks to

strike was originally presented in the SAC on June 7, 2022, far more than the time limit of 60 days.  Accordingly, Defendant's motion to strike this claim is frivolous and should be denied. Even if not dismissed as waived or untimely, Defendant's arguments to this Court are substantively misleading. While common law violations alone may not be sufficient to support a UCL claim, the case relied on by Defendant recognizes – a point that Defendant ignored – common law violations along with allegations that Defendant "engaged in a business practice 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made'" will satisfy the unlawful prong of § 17200. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (quoting *Saunders v. Superior Court,* 27 Cal.App.4th 832, 838–39, 33 Cal.Rptr.2d 438 (Cal.Ct.App.1994)). Indeed, this Court has previously held that a violation of common law can support a § 17200 claim, provided that the conduct is also unlawful, unfair, or fraudulent. *See, National Rural Telecomms. Coop. v. DIRECTV, Inc.,* 319 F.Supp.2d 1059, 1074-75 (C.D. Cal. 2003). In this instance Plaintiffs have pointed to Defendant's unlawful, unfair, and fraudulent conduct by falsely advertising *Yesterday* including, without limitation, its violation of California Civil Code § 1709. *See, e.g.,* TAC, at ¶¶ 4, 5, 7, 8, 10-12, 51, 82, 104-118.

The Court should reject Defendants' argument.

### D.    Leave to Amend Should be Granted

Defendant asserts that leave to amend is unwarranted. Motion, at 19. However, Defendant does not assert that it would suffer any prejudice by allowing Plaintiffs leave to amend. *Id*. Accordingly, the Court should follow Rule 15's liberal policy by allowing Plaintiffs leave to amend if Defendant's Motion is granted. *See C.F. v. Capistrano Unified School District*, 654 F.3d 975, at 985 (9th Cir. 2011) (Rule 15 should be "applied with extreme liberality…absent prejudice.").

### E.  Defendant's Attorney's Fees Motion Should be Denied

For the reasons stated in Plaintiffs' Opposition to Defendant's Motion for Attorney's Fees and Costs Under Cal. Civ. Proc. Code § 425.16 ("Opposition") (Dkt. 102), Defendant's Attorney's Fees Motion should be denied, and Plaintiffs incorporate the Opposition in its entirety as if it were fully set forth herein. *See* Dkt. 102.

First, Defendant was not the prevailing party as Plaintiff's case is moving forward, thus requiring the Court to consider public policy because Plaintiffs have facially valid claims, and an award fees and costs to Defendant would violate Plaintiffs' constitutional petition rights. *See Mann v. Quality Old Time Service, Inc.*(2006) 42 Cal. Rptr. 3d 607, 618.

Second, Defendants' inflated request for fees constitutes a special circumstance permitting the Court to deny it altogether as granting a lesser award promotes greed and encourages outlandish fee requests. *See Christian Research Inst. v. Alnor*, 81 Cal. Rptr. 3d 866, 871–72 (Cal. App. 4th Dist. 2008), *citing Serrano v. Unruh*, 652 P.2d 985, 988 (Cal. 1982), quoting *Brown v. Stackler* (7th Cir.1980) 612 F.2d 1057, 1059.)

Next, an award would result in an imbalance of equites as Defendant is one of the largest movie studios and companies in the world, while Plaintiffs are individuals. *See Garrett v. Hine*, 1:21-CV-0845-DAD-BAK, 2022 WL 2791236, at *5 (E.D. Cal. July 15, 2022), at *6.

Even if the Court grants this Motion, Defendant's Motion to Strike failed because the majority of Plaintiffs' case is moving forward. *Garrett,* 2022 WL 2791236, at *6. Also, none of Plaintiffs' claims were stricken but instead were merely dismissed under the Federal Rules, which do not provide for attorney fees in these circumstances.

And finally, the attorneys' fee penalty contained in California's anti-SLAPP statue is unconstitutional as applied to the facts of this case. *See* Plaintiffs' Opposition to Defendant's Motion for Attorney's Fees and Costs, III(A)-(G) at pgs. 13-24; Dkt. 102. More specifically, granting Defendant's motion for fees would constitute unconstitutional content based regulation of speech; chill Plaintiffs' free speech rights, as well as the rights

of future plaintiffs in violation of the Noerr-Pennington Doctrine; violate the Equal Protection clause of the U.S. Constitution as well as the provisions of the California Constitution prohibiting the special treatment of classes of litigants; and violate federalism and full faith and credit principles by subjecting Plaintiff Woulfe to the anti-SLAPP laws of California, when Maryland has chosen its own anti-SLAPP framework which does not award attorney fees. *See* full argument and case citations in Plaintiffs' Opposition. *Id.*

## VI.   CONCLUSION

For the reasons stated herein, the Court should deny the Motion in its entirety.

Respectfully submitted,

Dated: May 15, 2023                     By:    /s/ Cody R. LeJeune

**PEQUIGNOT + MYERS**
Matthew A. Pequignot (*Pro Hac Vice*)
PEQUIGNOT + MYERS
2585 Ala Namahana Pkwy, #1007
Kilauea, HI 96754
Telephone: 202-328-1200

**LEJEUNE LAW, P.C.**
Cody R. LeJeune
445 S. Figueroa St.
Suite 3100
Los Angeles, CA 90071
Telephone: (985) 713-4964
Attorneys for Plaintiffs
CONOR WOULFE, an individual, and PETER MICHAEL ROSZA, an individual

21