# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

KRISTEN LESORGEN, individually
and on behalf of all others similarly
situated,

        Plaintiff,

    v.

MONDELĒZ GLOBAL, LLC,

        Defendant.

Case No. 3:22-cv-50375

Honorable Iain D. Johnston

## MEMORANDUM OPINION AND ORDER

When gum gets stuck somewhere it does not belong, conventional wisdom provides a host of remedies: ice cubes, peanut butter, vinegar, or olive oil. When a federal case gets stuck somewhere it does not belong, the Federal Rules of Civil Procedure provide a different, cleaner remedy: Rule 12.

Before the Court is Defendant Mondelēz Global, LLC's ("MDLZ") Rule 12(b)(1) and 12(b)(6) motion to dismiss. Dkt. 24. MDLZ manufactures and sells Trident "Original Flavor" gum. Dkt. 22, ¶ 1. Plaintiff Kristen Lesorgen alleges that she was deceptively lured into buying a pack of the "Original Flavor" gum after seeing the image of an unnaturally blue leaf with condensation bubbles on it. *Id.* at ¶¶ 1, 56–57, 59. Because of the image, she thought she would be chewing on gum with actual mint or peppermint in it, rather than gum with artificial mint flavor. *Id.* To her dismay, that was not the case. *Id.* at ¶ 58. Ms. Lesorgen's disappointment ballooned into a federal lawsuit, and she now brings sprawling allegations of consumer fraud and

1

seeks to create a class of those similarly situated both in Illinois and in eight[1] other states. (Technically, seven states and one commonwealth.) *See generally id.* at ¶ 65.

To get out of this sticky situation, MDLZ filed a motion to dismiss, arguing that no reasonable consumer would expect the gum to contain actual mint or peppermint as an ingredient. *See generally* Dkt. 25. The Court agrees, and for the following reasons, Ms. Lesorgen's claims are dismissed with prejudice.[2]

### STATEMENT OF ALLEGATIONS

Trident's "Original Flavor" packaging contains an image "identical" to a peppermint leaf. Dkt. 22, at ¶¶ 1, 10, 14. The "small bubbles" on the leaf, "presumably due to condensation," represent the "cooling sensation" consumers associate with mint products. *Id.* at ¶ 16 (internal quotations omitted).



---

[1] Ms. Lesorgen lists Virginia twice. The Court does not know if she accidentally copied Virginia twice, or if she meant to include West Virginia. The Court's analysis is not impacted by this ambiguity.

[2] Ms. Lesorgen appears to withdraw her request for injunctive relief. Dkt. 27, at 7 n. 1. But even if she did not intend to withdraw her request for injunctive relief, her request is denied because she is unlikely to succeed on the merits. *See Holbrook v. Rhyno Manufacturing, Inc.*, 497 F. Supp. 3d 319, 327 (N.D. Ill. 2020).

Ms. Lesorgen purchased the "Original Flavor" gum because, based on the packaging, she thought that the gum's mint "flavor was from mint or peppermint ingredients and not from artificial flavoring." *Id.* at ¶ 56, 57.

Ms. Lesorgen explains that "[e]ven though the labeling of the 'Original' does not contain the words 'mint' or 'peppermint,' the picture of the leaf and overall context of chewing gum products and flavors tells purchasers its flavor is mint." *Id.* at ¶ 15. According to the ingredient list on the back of the pack, the mint comes from "Natural and Artificial Flavor." *Id.* at ¶ 27. With respect to the natural flavor, according to "flavor expert" Robert Holmes, "because the ingredient list fails to identify any form of mint or peppermint ingredient, i.e., peppermint oil or peppermint extract, any mint would be de minimis or negligible as part of the 'natural flavor.'" *Id.* at ¶ 28.

Ms. Lesorgen would not have purchased the gum, or would have paid less for it, had she known the mint flavor was a product of artificial flavoring as opposed to mint ingredients. *Id.* at ¶¶ 58, 61.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 requires only that a plaintiff's complaint contain a short and plain statement establishing the basis for the claim and the Court's jurisdiction, as well as prayer for the relief sought. Fed. R. Civ. P. 8(a). According to the Supreme Court, this means that the complaint's factual assertions, rather than any legal conclusions, must raise the plausible inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Reasonable inferences are drawn in favor of the plaintiff. *St. John v.*

*Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016). The defendant, as the moving party, bears the burden of establishing that the complaint's allegations, taken as true, are insufficient. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## ANALYSIS

**I. Ms. Lesorgen has standing to bring her claims and the Court defers judgment on whether Ms. Lesorgen has standing to bring claims on behalf of the proposed class members.**

Federal courts are courts of limited jurisdiction. *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021). Article III of the United States Constitution limits federal courts' jurisdiction to resolving "Cases" and "Controversies." U.S. Const. art. III § 2. This has come to mean that a plaintiff must have "standing" to sue, which requires a plaintiff to "have suffered an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Markakos*, 997 F.3d at 780 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

MDLZ's first argument is that Ms. Lesorgen lacks standing to sue in her own right. Dkt. 25, at 5–6. MDLZ specifically focuses on the injury-in-fact requirement. MDLZ argues that "[a]n injury based on Plaintiff's subjective belief that 'Original Flavor' meant the gum contained real mint, however, constitutes no injury at all." *Id.* at 6.

"An injury in fact is an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Markakos*, 997 F.3d at 780 (cleaned up). "A financial injury creates standing." *Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011). Although

4

MDLZ narrowly focuses on Ms. Lesorgen's subjective belief, the standing inquiry is not as limited. A simple statement that Ms. Lesorgen would not have purchased the Trident "Original Flavor," or would have paid less for it, if not for MDLZ's alleged misrepresentations is sufficient to confer standing. *Aqua Dots Prods. Liab. Litig.*, 954 F.3d at 751; *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 825 (N.D. Ill. 2021); *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 986 (N.D. Ill. 2013). Ms. Lesorgen alleges just that. Dkt. 22, at ¶ 56 ("Plaintiff bought the Product because she saw and relied on the picture of the leaf which looked like a mint leaf, and in the context of a pack of gum, this seemed reasonable to her because she knew most gums were mint flavored."); *Id.* at ¶ 61 ("Plaintiff paid more for the Product than she would have had she known the representations were false and misleading, as she would not have bought it or paid less."). Accordingly, Ms. Lesorgen has standing to bring her claims in her own right.

MDLZ's argument concerning Ms. Lesorgen's standing to represent the out-of-state proposed class members is more complicated. Courts in this district are "split as to the appropriate time to consider a challenge to a named plaintiff's ability to represent a class with respect to claims under laws of states in which the named plaintiff does not reside." *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 U.S. Dist. LEXIS 44875, at *12–14 (N.D. Ill. Mar. 28, 2017) (collecting cases). The Court, however, believes this question to be "best deferred to the class certification stage." *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015). The standing issue "would not exist but for" Ms. Lesorgen's "assertion of

state law claims on behalf of class members in those states." *Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 U.S. Dist. LEXIS 104114, at *25 (N.D. Ill. Nov. 5, 2009). Thus, "any standing issues arise from plaintiff's attempts to represent the proposed class." *Id.* (internal quotations omitted). The class certification issue is "logically antecedent" to the standing concerns. *Id.*; *Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002). The Court, therefore, defers judgment on this issue.

## II.   Ms. Lesorgen's fails to state claims upon which relief could be granted.

Ms. Lesorgen alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, and similar "State Consumer Fraud Acts." Dkt. 22, at ¶¶ 73-77. She also alleges breaches of express warranty, implied warranties of merchantability/fitness for a particular purpose, and the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq. Id.* at ¶¶ 78–89. To top it off, she adds claims of negligent misrepresentation, fraud, and unjust enrichment. *Id.* at ¶¶ 90–98.  In other words, she pleads the proverbial kitchen sink. This type of blunderbuss pleading leaves the reader wondering if any of the claims have merit.

### 1.   ICFA and Similar State Law Claims

The ICFA is a "regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). To state a claim under the ICFA, the plaintiff must allege four elements: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff

rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Id.*

Ms. Lesorgen challenges an allegedly "deceptive" practice. *See generally* Dkt. 22, at ¶¶ 56, 73–75. "[A] statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). "[I]t is not enough to allege that the product misled a particular plaintiff." *Matthews v. Polar Corp.*, No. 22-cv-649, 2023 U.S. Dist. LEXIS 48467, at *14 (N.D. Ill. Mar. 22, 2023). Rather, the statement must be "likely to deceive a *reasonable* consumer." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972–73 (7th Cir. 2020) (emphasis added). In other words, there must be a "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474 (7th Cir. 2020) (internal quotations and citation omitted). This is *not* the least sophisticated consumer test. *Cf. Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012).

Whether a statement is deceptive is usually a question of fact. *Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1158 (N.D. Ill.2022). However, a court may dismiss a ICFA claim "if the challenged statement was not misleading as a matter of law." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015). "Where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Rudy*, 583 F. Supp. 3d at 1158–59 (cleaned up).

7

At most, Trident "Original Flavor" packaging hints that its flavor is mint, *not* that its ingredients include mint or peppermint. Ms. Lesorgen's case is just like that in *DeMaso v. Walmart, Inc.*, No. 21-cv-06334, 2023 U.S. Dist. LEXIS 20316 (N.D. Ill. Feb. 7, 2003), also filed by Ms. Lesorgen's counsel. *DeMaso* involved Great Value brand's Fudge Mint Cookies. *Id.* at *1. The packaging of the box of cookies was green, included the words "fudge *mint*," and had pictures of two green mint leaves next to the word "mint." *Id.* at *1–2 (emphasis added). The plaintiff alleged that he expected the cookies to include mint ingredients as opposed to mint artificial flavor. *Id.* at *2–3. The court, in granting the motion to dismiss, explained that the "front label makes no specific ingredient claim at all." *Id.* at *4. Rather, "[i]t simply describes the entire product as "Fudge Mint Cookies." *Id.* at *10. What's more, "like ice cream, mint products are routinely identified by their flavor, not by their ingredients." *Id.* at *10–11 (internal quotations and citation omitted).

Like the packaging in *DeMaso*, the Trident "Original Flavor" gum does not include a "specific ingredient claim." *Id.* at *4; *see* Dkt. 22, at ¶1. The packaging explicitly states that the gum is Trident's "Original *Flavor*" Dkt. 22, at ¶2 (emphasis added). The packaging doesn't even use the word "mint." Further, mint leaves in a garden are green, and the mint leaves on the Trident packaging are blue. *Id.* And, even assuming a reasonable person could somehow believe "Original Flavor" combined with a blue leaf equated to "mint," mint products, including gum, "are routinely identified by their flavor, not by their ingredients." *DeMaso*, 2023 U.S. Dist. LEXIS 20316, at *10–11. Thus, it is "unreasonable" and "fanciful" to think that a

8

reasonable consumer would expect there to be mint ingredients as opposed to mint flavor based on MDLZ's packaging. *Id.* at *4–5; *Rudy*, 583 F. Supp. 3d at 1158–59.

Ms. Lesorgen's ICFA claim is dismissed with prejudice. Dkt. 22, at ¶¶ 73–75. Because Ms. Lesorgen concedes that the "Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to" the ICFA, and that the members of the proposed class were harmed in the same way as Ms. Lesorgen, the State Consumer Fraud Acts claims are also dismissed with prejudice. *Id.* at ¶¶ 76–77.

### 2. Breaches of warranty and Magnuson Moss Warranty Act ("MMWA"), negligent misrepresentation, fraud, and unjust enrichment

The Court can make short order of Ms. Lesorgen's state-law and MMWA claims because they are based on the same theory of deception as that alleged in the ICFA claim. *See DeMaso*, 2023 U.S. Dist. LEXIS 20316, at *11–13.

Ms. Lesorgen's remaining claims are for breach of express and implied warranties, violation of the MMWA, negligent misrepresentation, common law fraud, and unjust enrichment. Dkt. 22, at 78–98. Like Ms. Lesorgen's ICFA claim, each claim is premised on the argument that MDLZ's packaging of Trident "Original Flavor" gum is false, deceptive, and misleading. *See* Dkt. 22, at ¶ 88 (alleging breach of express warranty, implied warranty, and violation of the MMWA because the gum "did not conform to its affirmations of fact and promises"); ¶ 90 (alleging negligent misrepresentation because MDLZ "had a duty to truthfully represent" its product, which it breached); ¶ 96 (alleging fraud because MDLZ "misrepresented and/or omitted the attributes and qualities" of the gum, "that it contained mint or

9

peppermint ingredient and not artificial flavoring"); ¶ 98 (alleging unjust enrichment because the product "was not as represented and expected").

The Court's conclusion that MDLZ's labeling was not deceptive, misleading, or false as a matter of law is fatal to these claims. *See Wach v. Prairie Farms Dairy, Inc.*, No. 21 C 2191, 2022 U.S. Dist. LEXIS 90233, at \*15–16. Therefore, such claims are dismissed with prejudice.

### III. Ms. Lesorgen's counsel is reminded of his obligations under Rule 11.

The Court is aware of Judge Seeger's recent warning to Ms. Lesorgen's counsel. The Court echoes Judge Seeger's sentiment, and reminds Ms. Lesorgen's counsel of his obligations under Federal Rule of Civil Procedure 11.

Spaghetti is best eaten, not thrown at walls. Ms. Lesorgen's counsel is instructed to file and email the Court a copy of the spreadsheet that Judge Seeger requested in *Guzman v. Walmart Inc.*, No. 22-cv-3465 (N.D. Ill. 2023) with this Court by June 1, 2023.

## CONCLUSION

For the foregoing reasons, MDLZ's motion to dismiss [24] is granted. Ms. Lesorgen's complaint is dismissed with prejudice. She has already amended her complaint once before. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 518-19 (7th Cir. 2015). Further amendments are futile. The Court thereby terminates this civil case.

Date: May 19, 2023

Honorable Iain D. Johnston
United States District Judge

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JEREMY GUZMAN,          )
individually and on behalf of    )
all others similarly situated,    )
                        )
        Plaintiff,        )     Case No. 22-cv-3465
                        )
        v.            )     Hon. Steven C. Seeger
                        )
WALMART INC.,         )
                        )
        Defendant.     )
_____)

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jeremy Guzman filed a consumer fraud case because he was unhappy with the amount of olive oil in a jar of mayonnaise that he bought at Walmart. The theory of the case is *not* that the mayonnaise didn't contain olive oil. It did. Instead, the theory is that the mayo didn't contain *as much* olive oil as Guzman had expected.

The shelf life of the complaint has long since expired. In fact, the theory of the case was past its prime from the very moment that it arrived in the federal courthouse. Plaintiff's counsel has peddled this theory time and again, in case after case, without much success in this district. The complaint joins a warehouse of complaints filed by Plaintiff's counsel that are not fit for public consumption.

This purported class-action lawsuit is about the olive oil in reduced-fat mayonnaise. *See* Cplt., at ¶ 1 (Dckt. No. 1). The jar's label states that it is "Mayo with Olive Oil." *Id.* at ¶¶ 1, 26. A picture of a bowl of mayonnaise with a wooden spoon appears nearby, not far from a half-eaten sandwich. The label uses a lively green backdrop. *Id.*

Guzman claims that the label misleads consumers by creating the false "impression" that the product "has a greater absolute and relative amount of olive oil compared to traditional vegetable oil ingredients than it does." *Id.* at ¶ 2. He points out that the label says "with Olive Oil," and the text appears against a green backdrop, "evocative of the color of olives." *Id.* at ¶ 26. He claims that consumers "expect a significant, non-de minimis amount of olive oil, in relative and absolute amounts to all oils used." *Id.*

After purchasing the product, and maybe making an unsatisfactory sandwich, Guzman went to the federal courthouse. He filed suit against Walmart, the product's manufacturer. The complaint raises a host of claims, including a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and similar statutes in other states. *Id.* at ¶¶ 82–92. Walmart, in turn, moved to dismiss.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Claims of common-law fraud or deceptive practices under the ICFA require the plaintiff to meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.

*See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). Rule 9(b) requires a party alleging fraud to "state with particularly the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b). The plaintiff must allege the "who, what, when, where, and how" of the alleged fraud. *See Vanzant*, 934 F.3d at 738.

To state a deception claim under the ICFA, a plaintiff must allege with particularity: (1) a deceptive act or practice, (2) an intent for the consumer to rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage that was (5) proximately caused by the deception. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005); *see also Sneed v. Ferrero U.S.A., Inc.*, 2023 WL 2019049, at *2 (N.D. Ill. 2023); Fed. R. Civ. P. 9(b). The statutes in other states share the same basic requirements.

At this point, this Court has gone round and round the carousel a number of times with Plaintiff's counsel in cases about deceptive product labeling. Most recently, this Court dismissed two other cases alleging that a label was deceptive because the consumer expected a certain amount of an ingredient in a product. *See Matthews v. Polar Corp.*, 2023 WL 2599871 (N.D. Ill. 2023); *Gardner v. Ferrara Candy Co.*, 2023 WL 2599857 (N.D. Ill. 2023).

In each case, the plaintiff unsuccessfully alleged that the product misled consumers because they expected it to contain more than a *de minimis* amount of an ingredient advertised on the label. The same attorney filed each case.

The case at hand is yet another spin on an increasingly unpleasant ride. It is time for the carousel to come to a halt.

For the reasons articulated in this Court's earlier rulings, as well as countless other cases, the Court finds that the product's label is not misleading as a matter of law. *See Gardner v.*

*Ferrara Candy Co.*, 2023 WL 2599857, *5 (N.D. Ill. 2023) ("Courts widely dismiss claims that a product contained only a *de minimis* amount of an ingredient when the packaging itself did not promise more.") (citing cases); *Matthews v. Polar Corp.*, 2023 WL 2599871, at *7 (N.D. Ill. 2023) ("A statement about the presence of an ingredient is not a promise about the amount of the ingredient. . . . A claim cannot rest on a mere reference to an ingredient that is, in fact, an ingredient unless something else makes that statement misleading.") (citing cases); *see also Hamidani v. Bimbo Bakehouse LLC*, 2023 WL 167513, at *3 (N.D. Ill. 2023) (Coleman, J.) ("Packaging that merely depicts or asserts the presence of an ingredient typically cannot lead a reasonable consumer to conclude that the product contains a certain amount of that ingredient."); *Rudy v. D.F. Stauffer Biscuit Co., Inc.*, 2023 WL 2711612, at *6 (N.D. Ill. 2023) (Wood, J.) ("Viewing the representations on the packaging in their entirety, none of the text or images give any indication as to the amount of lemon ingredients the product will contain."); *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *5 (N.D. Ill. 2022) (Aspen, J.) ("Chiappetta has not identified any 'untruths on the packaging' or a plausible deception. The front of the Product packaging does not state or suggest anything about the amount of strawberries in the Product's filling or guarantee that the filling contains only strawberries, and Chiappetta concedes that the filling contains some strawberries."); *Ledezma v. Upfield US Inc.*, 2022 WL 16553039, at *5 (N.D. Ill. 2020) (Feinerman, J.) (holding that a spread labeled "With Olive Oil" did "not even obliquely suggest that the product contains a particular amount of olive oil, let alone [an] unspecified greater amount of olive oil expected by [plaintiff]").

That collection is a small sampling of the courts in this district that have rejected the theory put forward by Plaintiff's counsel here. Frankly, this Court doesn't have time to write the

full string cite of cases where the theory of the case by Plaintiff's counsel didn't get off the ground.

Simply put, the complaint at hand does not state a claim under the ICFA. The product's front label states that it contains "Mayo with Olive Oil," in text set against a green backdrop. *See* Cplt., at ¶ 1 (Dckt. No. 1). A reasonable consumer could not interpret that representation to mean that the mayo contains a particular amount of olive oil. And a reasonable consumer could not read that label to mean that there is a certain percentage of olive oil compared to other ingredients. That is, a reasonable consumer could not interpret the label to guarantee anything about the amount of olive oil in the mayo, in absolute or relative terms.

The product says nothing about the amount of olive oil in the jar. The label says that the mayo is made "*with* olive oil." It does not say "mostly olive oil," or "more olive oil than other oils," or anything of that sort. It says something about the presence of olive oil. It says nothing about the amount of olive oil.

The product promises olive oil, and the product delivers olive oil. Plaintiff does not claim that the product lacks olive oil. In fact, Plaintiff concedes that the mayo contains olive oil. *Id.* at ¶ 27; *see also* Pl.'s Statement, at 1 (Dckt. No. 14) ("Plaintiff does not deny the Product contains olive oil."). Olive oil is the third ingredient. *See* Cplt., at ¶ 27.

The jar of mayo contains oil olive, and doesn't contain deception. Without any deception, the complaint cannot survive. "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020).

Plaintiff's remaining claims depend on the allegation that the mayo's label is false, deceptive, or misleading. *See* Cplt., at ¶¶ 93–120 (Dckt. No. 1) (asserting a warranty claim under the Magnuson Moss Warranty Act, and state law claims for express and implied warranties of merchantability, negligent misrepresentation, fraud, and unjust enrichment). Because the complaint does not sufficiently allege that a reasonable consumer would be misled by the product's labeling, those claims likewise fail. *See Matthews*, 2023 WL 2599871, at *9–11.

This Court sees no reason why the complaint at hand should not suffer the same fate as so many other complaints with the same theory in this courthouse. If Guzman believes that there is something unique about his claims in this case, he may file a motion for leave to file an amended complaint by May 18, 2023. In the meantime, Defendant's motion to dismiss (Dckt. No. 16) is granted.

The dismissal of the complaint is not the end of the matter. There is one other piece of unfinished business.

Plaintiff's counsel has developed a fair bit of notoriety for filing cases about consumer labeling. Many of the complaints have suffered the judicial equivalent of a crash landing, or perhaps an explosion on the launch pad. They haven't survived for long.

Lawyers have an obligation to file cases in good faith. *See* Fed. R. Civ. P. 11. Filing cases imposes significant costs on opposing parties, and on the judiciary itself. Courts have an institutional interest in protecting themselves from frivolous cases, because it is not fair to the countless other litigants in countless other cases that deserve a court's attention. When a party files a frivolous case, and consumes the Court's attention, everyone else foots the bill.

For now.  This Court is increasingly curious about which side of the line Plaintiff's counsel is on.  To that end, Plaintiff's counsel must file and email a spreadsheet that is similar, but not identical, to the spreadsheets that this Court ordered him to file in *Matthews v. Polar Corp.*, 22-cv-649 (N.D. Ill. 2023), and *Gardner v. Ferrara Candy Co.*, 22-cv-1272 (N.D. Ill. 2023).

The spreadsheet must identify every case filed by Plaintiff's counsel since 2020 where the theory of the case is similar to the case at hand.  That is, the spreadsheet must identify every case where the theory was that the consumer expected more than a *de minimis* amount of "Ingredient X" in a product.  Plaintiff's counsel must provide the case name, the case number, the district, the date of the filing, the name of the judge, and the outcome of any motion to dismiss.

Plaintiff's counsel has become a wrecking ball when it comes to imposing attorneys' fees on other people.  And this Court is starting to wonder who should pay for the cleanup.  At some point, even lawyers have to internalize the costs of their own behavior.

To put a finer point on it, this Court directs Plaintiff's counsel to show cause why he should not have to pay the attorneys' fees incurred by Defendant in this case.  Plaintiff's counsel is imposing plenty of costs, and someone has to pay them.  Plaintiff's counsel has taken everyone on a ride, and Plaintiff's counsel must show who should pay for the ticket.

Date:   May 15, 2023

Steven C. Seeger
United States District Judge

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1
### Eastern Division

Kianna Gardner

                            Plaintiff,

v.

                                                 Case No.: 1:22–cv–01272
                                                  Honorable Steven C. Seeger

Ferrara Candy Company

                            Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, April 6, 2023:

    MINUTE entry before the Honorable Steven C. Seeger: This Court recently granted a motion to dismiss filed by Defendant Ferrara Candy Co. While reviewing the caselaw in this area, this Court could not help but notice a few common threads. Many of the cases were filed by the same Plaintiff's attorney, Spencer Sheehan. Many of the complaints made the same type of allegations about consumer fraud. And many of the complaints suffered the same fate, exiting the courthouse on motions to dismiss. By the look of things, attorney Sheehan is filing consumer fraud cases over and over again, seemingly covering just about every aisle in the grocery store, without much success. (The case before this Court about butterless butter spray, Strow v. BG Foods, Inc. (21–cv–5104), is a notable exception.) Given that apparent track record, the Court has questions about whether attorney Sheehan's filings comply with the Federal Rules. See Gordon v. Target Corp., 2022 WL 836773, at 19 n.11 (S.D.N.Y. 2022) ("The Court takes a moment to caution Plaintiff's counsel once again that Plaintiff may only file a second amended complaint where she has a good faith basis to do so. As must be clear to Plaintiff's counsel based on the Court's citations in this Opinion & Order, the Court is well aware that Plaintiff's counsel routinely files cases such as these, which bring identical claims, and that they are just as routinely dismissed for failure to state a claim.... This Court will not hesitate to follow the example of a growing number of its sister courts and dismiss Plaintiff's claims with prejudice should Plaintiff present this Court with the same allegations in a second amended complaint.") (citing cases); Boswell v. Bimbo Bakeries USA, Inc., 570 F. Supp. 3d 89, 93 (S.D.N.Y. 2021) ("This case is the latest in a long string of putative class actions brought by the same lawyer alleging that the packaging on a popular food item is false and misleading.") (citing a string of cases in footnote one); Leonard v. Mondelez Global LLC, 2023 WL 2403259, at *3 n.3 (S.D.N.Y. 2023) ("This lawsuit is one of countless other copycat cases all filed by the same attorney challenging the use of the term 'fudge' to describe chocolate–flavored foods.... These lawsuits represent only a fraction of the many cases Plaintiff's counsel has filed against other food manufacturers alleging that packaging on a popular food item is false and misleading.") (citing cases); Hoffman v. Kraft Heinz Foods Co., 2023 WL 1824795, at *6 (S.D.N.Y. 2023) ("For the past several years, Plaintiff's counsel has brought numerous cases in district courts throughout the Second Circuit alleging that various products marketed as containing 'vanilla' are materially misleading because the products allegedly did not

contain naturally derived vanilla extract (collectively, 'the Vanilla Cases').") (citing cases). At some point, a losing streak should tell you something. By all appearances, attorney Sheehan keeps bringing cases about how to read product labels, but he can't seem to read the tea leaves from the judiciary. To get a better look at the playing field, the Court orders the following. By April 30, 2023, attorney Sheehan must prepare and file an Excel spreadsheet that identifies all consumer fraud cases that he has filed in any federal court since January 1, 2020. The cases must appear in chronological order. The spreadsheet must identify the date of filing, the case name, the case number, the district, and whether the complaint survived a motion to dismiss. Again, the spreadsheet must include all districts, not simply the Northern District of Illinois. Plaintiff must email an Excel version of the spreadsheet to the proposed order inbox: proposed_order_seeger@ilnd.uscourts.gov. The Court directs attorney Sheehan to exercise great care in the preparation of the spreadsheet, and ensure that he includes all responsive cases. A failure to comply will lead to appropriate relief. After receiving the spreadsheet, the Court will decide if additional relief is appropriate. Mailed notice. (jjr, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1
### Eastern Division

Jeanne Matthews

                Plaintiff,

v.

                                  Case No.: 1:22−cv−00649

                                  Honorable Steven C. Seeger

Polar Corp.

                Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, April 6, 2023:

       MINUTE entry before the Honorable Steven C. Seeger: This Court recently granted a motion to dismiss filed by Defendant Polar Corp. While reviewing the caselaw in this area, this Court could not help but notice a few common threads. Many of the cases were filed by the same Plaintiff's attorney, Spencer Sheehan. Many of the complaints made the same type of allegations about consumer fraud. And many of the complaints suffered the same fate, exiting the courthouse on motions to dismiss. By the look of things, attorney Sheehan is filing consumer fraud cases over and over again, seemingly covering just about every aisle in the grocery store, without much success. (The case before this Court about butterless butter spray, Strow v. BG Foods, Inc. (21−cv−5104), is a notable exception.) Given that apparent track record, the Court has questions about whether attorney Sheehan's filings comply with the Federal Rules. See Gordon v. Target Corp., 2022 WL 836773, at 19 n.11 (S.D.N.Y. 2022) ("The Court takes a moment to caution Plaintiff's counsel once again that Plaintiff may only file a second amended complaint where she has a good faith basis to do so. As must be clear to Plaintiff's counsel based on the Court's citations in this Opinion & Order, the Court is well aware that Plaintiff's counsel routinely files cases such as these, which bring identical claims, and that they are just as routinely dismissed for failure to state a claim.... This Court will not hesitate to follow the example of a growing number of its sister courts and dismiss Plaintiff's claims with prejudice should Plaintiff present this Court with the same allegations in a second amended complaint.") (citing cases); Boswell v. Bimbo Bakeries USA, Inc., 570 F. Supp. 3d 89, 93 (S.D.N.Y. 2021) ("This case is the latest in a long string of putative class actions brought by the same lawyer alleging that the packaging on a popular food item is false and misleading.") (citing a string of cases in footnote one); Leonard v. Mondelez Global LLC, 2023 WL 2403259, at *3 n.3 (S.D.N.Y. 2023) ("This lawsuit is one of countless other copycat cases all filed by the same attorney challenging the use of the term 'fudge' to describe chocolate−flavored foods.... These lawsuits represent only a fraction of the many cases Plaintiff's counsel has filed against other food manufacturers alleging that packaging on a popular food item is false and misleading.") (citing cases); Hoffman v. Kraft Heinz Foods Co., 2023 WL 1824795, at *6 (S.D.N.Y. 2023) ("For the past several years, Plaintiff's counsel has brought numerous cases in district courts throughout the Second Circuit alleging that various products marketed as containing 'vanilla' are materially misleading because the products allegedly did not

contain naturally derived vanilla extract (collectively, 'the Vanilla Cases').") (citing cases). At some point, a losing streak should tell you something. By all appearances, attorney Sheehan keeps bringing cases about how to read product labels, but he can't seem to read the tea leaves from the judiciary. To get a better look at the playing field, the Court orders the following. By April 30, 2023, attorney Sheehan must prepare and file an Excel spreadsheet that identifies all consumer fraud cases that he has filed in any federal court since January 1, 2020. The cases must appear in chronological order. The spreadsheet must identify the date of filing, the case name, the case number, the district, and whether the complaint survived a motion to dismiss. Again, the spreadsheet must include all districts, not simply the Northern District of Illinois. Plaintiff must email an Excel version of the spreadsheet to the proposed order inbox: proposed_order_seeger@ilnd.uscourts.gov. The Court directs attorney Sheehan to exercise great care in the preparation of the spreadsheet, and ensure that he includes all responsive cases. A failure to comply will lead to appropriate relief. After receiving the spreadsheet, the Court will decide if additional relief is appropriate. Mailed notice(jjr, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.