1  KELLY M. KLAUS (State Bar No. 161091)
   kelly.klaus@mto.com
2  STEPHANIE G. HERRERA (State Bar No. 313887)
   stephanie.herrera@mto.com
3  VIRGINIA GRACE DAVIS (State Bar No. 336732)
   grace.davisfisher@mto.com
4  **MUNGER, TOLLES & OLSON LLP**
   560 Mission Street, 27th Floor
5  San Francisco, California 94105-2907
   Telephone:  (415) 512-4000
6  Facsimile:   (415) 512-4077

7  BETHANY W. KRISTOVICH (State Bar No. 241891)
   bethany.kristovich@mto.com
8  BENJAMIN G. BAROKH (State Bar No. 318629)
   benjamin.barokh@mto.com
9  **MUNGER, TOLLES & OLSON LLP**
   350 South Grand Avenue, 50th Floor
10 Los Angeles, California 90071-3426
   Telephone:  (213) 683-9100
11 Facsimile:   (213) 687-3702

12 Attorneys for Defendant
   UNIVERSAL CITY STUDIOS LLC

13

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16

| | |
|---|---|
| CONOR WOULFE and PETER MICHAEL ROSZA, | Case No. 2:22-cv-00459-SVW-AGR |
| Plaintiffs, | **SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER CAL. CIV. PROC. CODE § 425.16 [DKT. 88]** |
| vs. | |
| UNIVERSAL CITY STUDIOS LLC, d.b.a., UNIVERSAL PICTURES, | Judge:  Hon. Stephen V. Wilson Courtroom:  10A |
| Defendant. | |

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ..........................................................................................1

II.   SECTION 425.17 DOES NOT IMPLICATE THE FIRST
      AMENDMENT ..............................................................................................2

      A.    Section 425.17 Is A Rule Of Civil Procedure, Not A Content-
            Based Regulation Of Speech Or Petitioning Activity ...........................2

      B.    California's Decision Not To Subsidize Plaintiffs' Frivolous
            Claims Does Not Infringe Their Speech Or Petitioning Rights ............4

      C.    Plaintiffs' Authority Is Inapposite; Threats And Defamation Are
            Analyzed Differently From Other Speech Under The First
            Amendment ...........................................................................................6

III.  IN ANY EVENT, CONTENT-BASED REGULATIONS OF
      COMMERCIAL SPEECH ARE SUBJECT TO INTERMEDIATE
      SCRUTINY, NOT STRICT SCRUTINY .....................................................7

IV.   CONCLUSION ............................................................................................8

## I.     INTRODUCTION

The Court has asked Universal to address whether "the First Amendment is implicated by fee-shifting statutes like the anti-SLAPP statute" and, if so, whether section 425.17 of the anti-SLAPP statute is constitutional under the appropriate level of scrutiny.  Dkt. 140.

The cases that have addressed these issues have uniformly held that fee-shifting statutes generally, and California Code of Civil Procedure section 425.17 in particular, do not implicate the First Amendment.  *See Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 373 (7th Cir. 1987) ("[T]he proposition that the first amendment … has anything to say about fee-shifting statutes in litigation seems too farfetched to require extended analysis.").  Indeed, every court to consider a First Amendment challenge to section 425.17 has rejected it, because the statute is a rule of civil procedure, not a content-based regulation of anyone's speech.  *See, e.g.*, *Brenton v. Metabolife Int'l, Inc.*, 116 Cal. App. 4th 679, 692 (2004) (holding that section 425.17 "does not violate any protection embodied in the First Amendment"); *accord Physicians Comm. for Responsible Med. v. Tyson Foods, Inc.*, 119 Cal. App. 4th 120, 130-31 (2004); *Metcalf v. U-Haul Int'l, Inc.*, 118 Cal. App. 4th 1261, 1266-67 (2004) (explaining in rejecting equal protection challenge that "[s]ection 425.17 does not create impermissible classifications among those who utter constitutionally protected speech").  Plaintiffs cite no contrary authority because there is none.  Instead, Plaintiffs rely on inapposite cases concerning the regulation of threats or defamatory speech, which are analyzed differently than other speech under the First Amendment.  *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 387-90 (1992).

Because section 425.17 does not implicate the First Amendment, the Court need not decide what level of scrutiny to apply.  But Plaintiffs are wrong that strict scrutiny would apply in all events.  Plaintiffs challenge section 425.17 as a content-based regulation of commercial speech, which would be subject to intermediate scrutiny.  *See Yim v. City of Seattle*, 63 F.4th 783, 793 n.14 (9th Cir. 2023).  The anti-

SLAPP statute would easily pass muster under that standard: It directly advances and is drawn to achieve California's substantial interest in *protecting the exercise of First Amendment rights*. Plaintiffs are subject to fee-shifting under the anti-SLAPP statute because they targeted *Universal's* acts in furtherance of First Amendment rights, *see* Dkt. 83 at 5-9 (holding that the anti-SLAPP statute applies to Plaintiffs' claims); they cannot escape responsibility by claiming *their* rights were somehow infringed.

Universal therefore respectfully requests that the Court reject Plaintiff's First Amendment argument and, under the mandatory provisions of section 425.16(c)(1), grant Universal's motion for attorney's fees and costs and award $321,497.55 in attorney's fees and $152.28 in costs, reflecting the work incurred for Universal's successful anti-SLAPP motion to strike. *See* Dkts. 88 ("Motion"), 88-2, 104, 104-1.

## II.   SECTION 425.17 DOES NOT IMPLICATE THE FIRST AMENDMENT

Plaintiffs contend that section 425.17 is a "content-based regulation of speech" subject to strict scrutiny because the statute "targets and restricts free speech … 'spoken' against movie (and similar) companies, while leaving all other forms of similar speech free from the anti-SLAPP provisions." Opp. at 15-17. This argument has been uniformly rejected by the courts because the anti-SLAPP statute is a rule of procedure, not a content-based regulation of speech or petitioning activity.

### A.   Section 425.17 Is A Rule Of Civil Procedure, Not A Content-Based Regulation Of Speech Or Petitioning Activity

On its face, the anti-SLAPP statute "does not purport to regulate, restrict, condition or penalize" speech or petitioning rights. *Brenton*, 116 Cal. App. 4th at 692. It "merely regulates or restricts [*a defendant's*] ability as a litigant to seek dismissal of certain lawsuits at a particular stage of the litigation." *Id*. Specifically, the anti-SLAPP statute provides a "procedure for the early dismissal, before trial or discovery, of meritless cases aimed at chilling first amendment rights." *Physicians Comm.*, 119 Cal. App. 4th at 127. This is a "rule of procedure" that provides a "screening

mechanism for determining whether a plaintiff can demonstrate sufficient facts" to establish certain causes of action "at an early stage of the litigation process." *Id.* (citations omitted).

The California legislature has chosen to make this "specialized procedural remed[y]" available in certain private lawsuits and not others. *Id.* at 130 (quoting *Brenton*, 116 Cal. App. 4th at 692). As relevant here, the anti-SLAPP remedies are available in lawsuits based upon the promotion of a dramatic, literary, musical, political, or artistic work, including motion pictures such as *Yesterday*,[1] Cal. Civ. Proc. Code § 425.17(d), but are generally not available in lawsuits arising from competitive commercial speech promoting other goods and services, *id.* § 425.17(c).

These provisions regulate the procedural remedies available to *defendants*, *Physicians Comm.*, 119 Cal. App. 4th at 127, 130, not speech or petitioning activity by *plaintiffs*. Plaintiffs have in fact freely exercised their speech and petitioning rights by pursuing claims of their choosing against defendants of their choosing. *See Selene v. Legislature of Idaho*, 514 F. Supp. 3d 1243, 1260 (D. Idaho 2021) ("It is axiomatic that the right to petition is not violated when a party can in fact petition."). Their claims are simply subject to the anti-SLAPP statute's procedural screening mechanism. The fact that other claims based on different activities are subject to different procedural rules does not implicate the First Amendment any more than different screening mechanisms for different claims under Federal Rules of Civil Procedure 8 and 9. There is no "constitutional imperative" to provide the same procedures in all private civil suits. *Brenton*, 116 Cal. App. 4th at 692.

---

[1] Contrary to Plaintiffs' inaccurate arguments, Opp. at 15, 19, this provision applies to a broad swath of creative works and parties, not just movies and not just motion picture studios.

### B.   California's Decision Not To Subsidize Plaintiffs' Frivolous Claims Does Not Infringe Their Speech Or Petitioning Rights

Plaintiffs claim that the application of section 425.17(d) in this case "penalize[s]" their "free speech" because they will incur costs for bringing "meritorious" claims "against movie … companies" that they would not have incurred for bringing "meritless" claims against a company in a different industry.  Opp. at 15. This argument fails for two reasons.

First, the Court has not "already decided" Plaintiffs' claims are "meritorious." *Id.*  As detailed in Universal's moving papers, the Court found a majority of Plaintiffs' claims and allegations meritless and struck them with prejudice.  Mot. at 7.  The claims that did survive have not been found "meritorious"—they have merely survived the pleading stage.  The fact that the Court permitted some claims to proceed does not excuse Plaintiffs' pleading of numerous meritless claims and allegations that unnecessarily multiplied Universal's fees and costs.  Such "baseless" claims are "not immunized by the First Amendment right to petition" and may be regulated consistent with the Constitution.  *McDonald v. Smith*, 472 U.S. 479, 484 (1985) (quoting *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 743 (1983)).

Second, even if the anti-SLAPP statute were not a regulation of baseless litigation, fee shifting in litigation does not implicate the First Amendment.  As the Seventh Circuit put it:  "[T]he proposition that the first amendment … prohibits or even has anything to say about fee-shifting statutes in litigation seems too farfetched to require extended analysis." *Premier Elec. Constr.*, 814 F.2d at 373; *see Legal Aid Soc'y of Haw. v. Legal Servs. Corp.*, 961 F. Supp. 1402, 1411 (D. Haw. 1997) (finding no "authority that fee-shifting provisions . . . implicate the First Amendment").  Fee shifting simply "requir[es] a person to pay the costs incurred in exercising a right." *Premier Elec. Constr.*, 814 F.2d at 373; *accord Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 62 (2002) (discussing constitutional challenge to the anti-SLAPP statute's fee-shifting provision).  "This is no more a violation of the first amendment

1    than is a requirement that a person who wants to publish a newspaper pay for the ink,

2    the paper, and the press." *Premier Elec. Constr.*, 814 F.2d at 373.  Likewise, the anti-

3    SLAPP statute's fee-shifting provisions merely require a plaintiff who "burdens free

4    speech with an unsubstantiated claim" to bear the costs.  *Equilon Enters.*, 29 Cal. 4th

5    at 63.

6         Plaintiffs complain that "hypothetical plaintiffs" would not have to bear these

7    costs for filing "meritless" claims against a defendant in a different industry, Opp. at

8    15, but a state has no obligation to subsidize the exercise of constitutional rights and

9    may elect to impose fee shifting in certain cases and not others consistent with the

10   First Amendment.  *See Brenton*, 116 Cal. App. 4th at 692 (collecting cases); *see also*

11   *Physicians Comm.*, 119 Cal. App. 4th at 130-31.

12        On this point, the Supreme Court's decision in *Regan v. Taxation with*

13   *Representation of Wash.*, 461 U.S. 540 (1983) is instructive.  In *Regan*, the Supreme

14   Court rejected a First Amendment challenge to a provision of the Internal Revenue

15   Code that restricted the lobbying activity of organizations qualifying for tax exempt

16   status, reaffirming the "scarcely novel principle[]" that "a legislature's decision not

17   to subsidize the exercise of a fundamental right does not infringe the right." *Id.* at

18   549.  For this reason, the courts that have addressed the issue have repeatedly held

19   that the California legislature's decision to subject certain claims to an early

20   adjudication procedure and fee shifting "does not impose a burden on constitutional

21   freedoms." *Physicians Comm.*, 119 Cal. App. 4th at 130-31 (relying on *Regan* in

22   rejecting First Amendment challenge to section 425.17); *Brenton*, 116 Cal. App. 4th

23   at 692 (relying on quotation from *Regan* in *Watson v. California Fair Political*

24   *Practices Committee*, 217 Cal. App. 3d 1059, 1072 (1990) in rejecting First

25   Amendment challenge to section 425.17).

26

27

28

### C.   Plaintiffs' Authority Is Inapposite; Threats And Defamation Are Analyzed Differently From Other Speech Under The First Amendment

Plaintiffs have not cited a single decision that contradicts the above-cited authority and holds that section 425.17, or any other fee-shifting statute, implicates the First Amendment.  Instead, they rely on inapposite cases concerning the regulation of threatening or defamatory speech: *Watts v. United States*, 394 U.S. 705, 707 (1969) (addressing constitutionality of 18 U.S.C. § 871, which makes it a crime to threaten to kill or inflict bodily harm on the President, the President-elect, the Vice President or other officer next in succession to the office of President, or the Vice President-elect); *Walker v. Kiousis*, 93 Cal. App. 4th 1432, 1448 (2001) (analyzing First Amendment challenge to Cal. Civ. Code § 47.5, which regulates defamatory speech against police officers); *Haddad v. Wall*, 107 F. Supp. 2d 1230, 1234 (C.D. Cal. 2000), *vacated*, 48 F. App'x 279 (9th Cir. 2002) (same); and *Gritchen v. Collier*, 73 F. Supp. 2d 1148, 1152-53 (C.D. Cal. 1999), *rev'd*, 254 F.3d 807 (9th Cir. 2001) (same).  Opp. at 16-18.

Plaintiffs do not explain why these cases are relevant to the Court's analysis of section 425.17, and they are not relevant.  Unlike the statutes at issue in *Watts*, *Walker*, *Haddad*, and *Gritchen*, section 425.17 does not regulate speech on its face.[2]  And, in any event, content-based restrictions of threatening or defamatory speech are analyzed differently from other speech under the First Amendment.  *See R.A.V.*, 505 U.S. at 387-90 (explaining that the First Amendment's "prohibition against content discrimination … is not absolute" and "applies differently in the context of proscribable speech" such as defamation); *id.* at 388 (reaffirming the constitutionality

---

[2] For this reason, Plaintiffs' passing citation to *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), Opp. at 17, is likewise misplaced.  *Reed* involved a municipal code concerning outdoor signs that, on its face, distinguished between categories of signs based on their messages.  576 U.S. at 164.  The anti-SLAPP statute does no such thing.

of 18 U.S.C. § 871 under the standard that governs content-based restrictions of proscribable speech).

The Court should ignore Plaintiffs' inapt citations and follow the uniform authority holding that section 425.17 does not implicate the First Amendment.

## III.   IN ANY EVENT, CONTENT-BASED REGULATIONS OF COMMERCIAL SPEECH ARE SUBJECT TO INTERMEDIATE SCRUTINY, NOT STRICT SCRUTINY

Even if section 425.17 implicated the First Amendment (it does not), Plaintiffs are wrong that strict scrutiny would apply.  The gist of Plaintiffs' complaint is that section 425.17 distinguishes between causes of action that arise from different types of *commercial speech*,[3] yet Plaintiffs openly invoke the standard that applies to *noncommercial speech*.  See Opp. at 17 (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65 (1983) for the proposition that "[w]ith respect to noncommercial speech, this Court has sustained content-based restrictions only in the most extraordinary circumstances").  Content-based restrictions of commercial speech are subject to intermediate scrutiny, not strict scrutiny.  *See Yim*, 63 F.4th at 793 n.14 ("our precedent … holds that content-based restrictions of commercial speech are subject to intermediate scrutiny").

To satisfy intermediate scrutiny, a content-based speech regulation need only "directly advance[] a substantial governmental interest and … [be] drawn to achieve that interest."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 572 (2011).  There is no question that California has a substantial interest in protecting the public's exercise of First Amendment rights by providing a mechanism "to allow early dismissal of meritless first amendment cases aimed at chilling expression," *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001); *United States ex rel. Newsham v.*

---

[3] Universal maintains that Plaintiffs' challenges to the movie trailer at issue in this suit attack *noncommercial speech* and reserves all rights in that regard, see Dkts. 44, 70, but the Court has found to the contrary at the pleading stage, Dkt. 83 at 28-32.

*Lockheed Missiles & Space Co.*, 190 F.3d 963, 970 (9th Cir. 1999) (California enacted anti-SLAPP statute "in response to [its] concern about civil actions aimed at private citizens to deter or punish them for exercising their political or legal rights")*; see Am. Life League, Inc. v. Reno*, 47 F.3d 642, 651 (4th Cir. 1995) (protecting the public's exercise of constitutional rights is a substantial interest that satisfies intermediate scrutiny under the First Amendment).   Section 425.17(d) directly advances and is drawn to achieve that interest:   It provides a mechanism to obtain an early and inexpensive dismissal of nonmeritorious claims arising from, *inter alia*, dramatic, literary, musical, political, or artistic works—i.e., core expressive and creative activities the statute was expressly enacted to protect.   Cal. Civ. Proc. Code § 425.17(d).

## IV.   CONCLUSION

For these reasons and those set forth in Universal's prior briefs and supporting papers, Dkts. 88, 88-2, 104, 104-1, the Court should award $321,497.55 in attorney's fees and $152.28 in costs under the mandatory provisions of section 425.16(c)(1).

DATED: July 5, 2023                 Respectfully submitted,

                                    MUNGER, TOLLES & OLSON LLP


                                    By:      */s/ Kelly M. Klaus*
                                         KELLY M. KLAUS
                                    Attorneys for Defendant
                                    UNIVERSAL CITY STUDIOS LLC