CODY R. LEJEUNE (CSB No. 249242)
cody@lejeunelawfirm.com
**LEJEUNE LAW, P.C.**
445 S. Figueroa St.
Suite 3100
Los Angeles, CA 90071
Telephone: (985) 713-4964

MATTHEW A. PEQUIGNOT (admitted *pro hac vice*)
mpequignot@pmiplaw.com
**PEQUIGNOT + MYERS**
2585 Ala Namahana Pkwy, #1007
Kilauea, HI 96754
Telephone: (202) 328-1200

Attorneys for Plaintiffs
CONOR WOULFE, an individual, and PETER
MICHAEL ROSZA, an individual

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONOR WOULFE, an individual, and PETER MICHAEL ROSZA, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>UNIVERSAL CITY STUDIOS LLC, d.b.a., UNIVERSAL PICTURES, a California limited liability company; and DOES 1-20, inclusive,<br><br>    Defendant, | Case No.:  2:22-cv-00459-SVW-AGR<br><br>**PLAINTIFFS' RESPONSE IN REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF MOTION FOR ATTORNEYS' FEES AND COSTS** |

# **TABLE OF CONTENTS**

I.     INTRODUCTION             1

II.    ARGUMENT            6

      A.    Section 425.17 is Unconstitutional Viewpoint    6
           (or Content) Based Regulation that Fails Strict
           Scrutiny

      B.    Section 425.17's Fee Shifting Provision is also   11
           Invalid for its Other Constitutional Infirmities

III.   CONCLUSION            15

## **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Barr v. American Assn. of Political Consultants, Inc*.,        4, 7, 8, 11, 17
140 S. Ct. 2335 (2020)

*BE & K Const. Co. v. N.L.R.B.*,        14
536 U.S. 516 (2002)

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*,        10
447 U.S. 557 (1980)

*Chambers v. Baltimore & Ohio R.R. Co.*,        4
207 U.S. 142 (1907)

*Harrison v. Springdale Water & Sewer Comm'n*,        6
780 F.2d 1422 (8th Cir. 1986)

*In re Workers Compensation Refund*,        6, 12
842 F.Supp. 1211 (D. Minn. 1994)

*In re R.M.J.*,        10
455 U.S. 191 (1982)

*Legal Services Corporation v. Velazquez*,        14, 15
531 U.S. 533 (2001)

*Lockheed Missiles & Space Co.*,                                         9
190 F.3d 963 (9th Cir. 1999)

*Matal v. Tam*,                                                          4, 6
137 S. Ct. 1744 (2017)

*Miller v. Bonta,*                                                       1, 2, 6, 12, 16
22cv1446-BEN (JLB), 2022 WL 17811114 (S.D. Cal. Dec. 19,
2022)

*Plevin v. City and County of San Francisco*,                           16
No. C 11–02359 CW, 2011 WL 3240536 (N.D. Cal. July 29,
2011)

*Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*,     2
814 F.2d 358 (7th Cir. 1987)

*Reed v. Town of Gilbert*,                                              8
576 U.S. 155 (2015)

*S. Bay Rod & Gun Club v. Bonta*,                                       1, 2, 6, 12, 16,
22cv1461-BEN (JLB), 2022 WL 17811113 (S.D. Cal. Dec. 19,                17
2022)

*Turner Broad. Sys. v. FCC*,                                            11
512 U.S. 622 (1994)

*United Mine Workers, Dist. 12 v. Illinois State Bar Ass'n*,                          10
389 U.S. 217 (1967)

*United States v. O'Brien*,                                                          11
391 U.S. 367 (1968)

*United States v. Playboy Ent. Group, Inc.*,                                    5, 8, 11
529 U.S. 803 (2000)

*United States v. Treasury Employees*,                                            9, 10
513 U.S. 454 (1995)

*Van v. LLR, Inc.*,                                                                  13
61 F.4th 1053 (9th Cir. 2023)

*Yim v. City of Seattle*,                                                             3
63 F.4th 783 (9th Cir. 2023)

**STATE CASES**

*Brenton v. Metabolife Internat., Inc.*,                                              2
116 Cal.App.4th 679 (Cal. Ct. App. 2004)

*Exline v. Gillmor*,                                                                   9

281 Cal. Rptr. 3d 858 (Cal. App. 4th Dist. 2021)

*Metcalf v. U-Haul Int'l, Inc.*,                                                                 2
118 Cal. App. 4th 1261 (2004)

*People ex rel. Gascon v. HomeAdvisor, Inc.*,                                           10
49 Cal. App. 5th 1073, 263 Cal. Rptr. 3d 438 (2020)

*Physicians Com. for Responsible Medicine v. Tyson Foods, Inc.*,                2, 7
119 Cal. App. 4th 120 (Cal. Ct. App. 2004)

*Rand Res., LLC v. City of Carson*,                                                             15
6 Cal.5th 610 (Cal. 2019)


**STATE STATUTES**

California Code of Civil Procedure § 425.16                                              2, 9

California Code of Civil Procedure § 425.17                                              1-5, 7-15

California Code of Civil Procedure § 1021.11                                            1, 12, 16


**OTHER AUTHORITIES**

2003 Cal. Legis. Serv. Ch. 338 (S.B. 515)                                               2, 11

# I.    INTRODUCTION

In response to the Court's Order [Dkt. 140] directing Defendant Universal City Studios LLC ("Defendant" or "Universal") to address how Cal. Civ. Proc. Code § 425.17, and similar fee shifting statutes, implicate the First Amendment, Universal makes a limited number of arguments addressing Plaintiffs' (Conor Woulfe and Peter Michael Rosza ("Plaintiffs")) numerous contentions that the California anti-SLAPP attorney fee provision infringes Plaintiffs' constitutional rights. All are wrong and either misstate the facts, omit citation of relevant law, or misapply existing law.

Contrary to Defendant's contention that there is no authority supporting a First Amendment challenge to fee shifting statutes (Def. Brief [Dkt. 144] at 1), the Southern District of California recently enjoined the enforcement of California Code of Civil Procedure §1021.11 precisely because *its fee shifting provisions* were found to be unconstitutional. *Miller v. Bonta,* 22CV1446-BEN (JLB), 2022 WL 17811114, at *8 (S.D. Cal. Dec. 19, 2022) ("The Court declares California Civil Code § 1021.11 to be unconstitutional and permanently enjoins the Defendants from bringing any action or motion under § 1021.11 to obtain an award of attorney's fees and costs."). *See*, also, *S. Bay Rod & Gun Club v. Bonta*, 2022 WL 17811113 at *8 (S.D. Cal. Dec. 19, 2022). Likewise, the California Attorney General, despite his obligation to defend California's laws, expressly declined to defend the constitutionality of the statute. *See*, Attorney General's Supplemental Brief (Dkt. 29) at p. 9  ("In light of…constitutional concerns that this type of fee shifting provision interferes with the right of access to the courts, [] the Attorney General is not in a position to defend SB 1327's fee-shifting provision on its merits.").

Although Defendant cites numerous cases purporting to support Defendant's argument that previous challenges to California's anti-SLAPP fee shifting provision have failed, all of the cases relied upon presented fundamentally different issues and facts not now before this Court. Indeed, in the *Brenton*, *Physicians Comm.*, and *Metcalf* cases cited by Universal, the defendants were challenging the constitutionality of California Code of Civil Procedure § 425.17 because the effect of its amendment to § 425.16 was to *take away* a defendant's right to use California's anti-SLAPP early dismissal procedures and

1

accompanying right to seek attorney fees. More specifically, prior to the enactment of § 425.17, the anti-SLAPP statute was broadly available to any defendant, but after its enactment, use of the extraordinary special privileges conferred by the statute was left only to movie (and similarly situated) companies like Defendant Universal. *See*, e.g., *Physicians Com. for Responsible Medicine v. Tyson Foods, Inc.*, 119 Cal.App.4th 120, 131 (Cal. Ct. App. 2004) (referring to anti-SLAPP statute as "exceptional statutory privilege"). Finding that it was not unconstitutional to take away something which was only a special privilege in the first place, the decisions correctly noted that the defendants in those cases retained the ability to seek dismissal of unmeritorious cases under the different procedures. *Id.* ("By holding that Tyson is not entitled to invoke the anti-SLAPP remedy, we do not compromise or prejudice its right to raise First Amendment issues in defense of PCRM's suit."); *see also, Brenton v. Metabolife Internat., Inc*., 116 Cal.App.4th 679, 692 (Cal. Ct. App. 2004) (same); *Metcalf v. U-Haul Intl., Inc.*, 118 Cal.App.4th 1261, 1267 (Cal. Ct. App. 2004) (same).[2] Accordingly, the defendants were not constitutionally deprived of anything, unlike the Plaintiffs (and prospective future plaintiffs) in this case which could be forced to pay attorney fees, even for issues which Plaintiffs' have already won. *See*, Pl. Opp. [Dkt. 102] at p. 3-6, 11-13, 15-21 (explaining that granting Defendant's motion in this case would result in a punitive award and not merely fee 'shifting', for various enumerated factual and legal reasons). Constituting further harm, Plaintiffs have been strategically handcuffed by fears of the applicability of the fee shifting provision, unable to make potentially meritorious arguments or claims because, if they fail, they might owe more fees. Similarly, counsel has been unable to join (as yet) unnamed plaintiffs who purchased rentals on other platforms because of the same deterrent effect of § 425.17. The unconstitutional provision has also inserted unavoidable conflicts of interest between Plaintiffs and their counsel,

---

[2] *Premiere Elec.* was decided in 1987 and is irrelevant to the the anti-SLAPP statute as amended in 2003. *See Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc*., 814 F.2d 358, 373 (7th Cir. 1987) *See*, 2003 Cal. Legis. Serv. Ch. 338 (S.B. 515).

including because counsels' interests in prevailing in this litigation are not possible to align with Plaintiffs' interests in avoiding crippling attorney fee awards.[3]

Addressing the issue of which level of scrutiny applies (*see* Dkt. 140, ¶2), Universal inexplicably contends that Plaintiffs have challenged "section 425.17 as a content-based regulation of *commercial* speech" (emphasis added), arguing that the intermediate scrutiny standard therefore applies. (Def. Brief [Dkt. 144] at 1) (citing *Yim v. Seattle*). However, to Plaintiffs' knowledge, no one (including Plaintiffs) has ever made a serious claim that the right to access the courts is *commercial* in nature, and this is simply a misrepresentation of the posture of this case.[4]

To the contrary, Plaintiffs' right to petition this Court is a non-commercial speech right afforded the highest levels of protection of the First Amendment. *See*, *e.g.*, *S. Bay Rod*, 2022 WL 17811113, at *6 ("[T]he right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship") (citing *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907)). Indeed, there could not be more contrast between Plaintiffs' right to petition the courts and Universal's commercial speech which is given little protection and its false speech which is entitled to none. *See*, Order [Dkt. 83] at p. 28-30; Pl. Opp. [Dkt. 102] at p. 15-21. This disparity in protections, in fact, is one of the precise constitutional infirmities which arises in this case, because California's anti-SLAPP statute (at least in this action)

---

[3] The potential financial gain to Plaintiffs is nominal compared to the potential fee award against them. Plaintiffs have nevertheless been fully informed and counseled as to all legal issues and options at every stage of this litigation.

[4] The *Yim* decision, nevertheless, arguably supports Plaintiffs, even if intermediate scrutiny applies. In *Yim*, the Ninth Circuit held that a regulation was unconstitutional, because not narrowly tailored, because the ban of the type of speech in that case was not justified in proportion to the interest served. *Yim v. City of Seattle*, 63 F.4th 783, 796-797 (9th Cir. 2023). Likewise, in this case, deterring citizens access to the judicial system is not proportional, particularly where the speech of Universal being 'protected' in this action is false and not constitutionally protected.

favors Universal's (unprotected) false advertising "speech" at the expense of Plaintiffs' (protected) right to access the judicial branch. *See*, Pl. Opp. [Dkt. 102] at p. 15-21.

The Supreme Court recently reiterated what constitutes viewpoint (or content) based regulation. *Barr v. American Assn. of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (describing content-based regulation as "a law that 'singles out specific subject matter for differential treatment.'"). *See*, also, *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017) (Kennedy, J. concurring) ("[V]iewpoint discrimination [if] the government has singled out a subset of messages for disfavor based on the views expressed."). Like in the *Barr* case, where a law treating robocalls differently, depending upon the message communicated, was deemed a content-based regulation (unfairly favoring government collections), § 425.17 singles out cases pertaining to advertising of movies (and limited other subject matter) and treats them differently than others. *See*, Pl. Opp. [Dkt. 102] at p. 14-15. Crystallizing how this favoritism to movie studios operates in this case, § 425.17 ostensibly provides attorney fees to defendants for merely winning (even if on a technicality or if the issue is a close call) whereas a plaintiff can only be awarded fees if a defendant's motion is frivolous or solely intended to cause unnecessary delay. See, Cal. Code Civ. Pro. § 425.16(c)(1). No one can credibly argue that this does not tilt the odds in favor of movie studios like Universal, even though Universal's false speech is not First Amendment protected in this case. *See*, Miller, 2022 WL 1781114 at *2 (invalidating a "lopsided, unorthodox attorney's fee-shifting scheme"). Ignoring these facts and precedent, and Plaintiffs' explicit arguments establishing that 425.17 is a content (or viewpoint) based regulation entirely (*See* Pl. Opp. [Dkt. 102] at p. 15-18), Universal's supplemental brief also fails to address the applicable strict scrutiny standard other than by incorrectly alleging that Plaintiffs' speech is commercial and therefore that it doesn't apply.[5] In fact, Plaintiffs

---

[5] Even if Universal's argument that the intermediate scrutiny standard applies in this case was true (though it is not), in the facts of this *as-applied* constitutional challenge, the government does not have a substantial interest in protecting Universal's false speech, and the regulation is not narrowly tailored to only protect truthful speech. Nor is it narrowly tailored to avoid trampling on Plaintiffs' right to access the courts. To the extent

made these same arguments opposing Universal's motion for attorney fees. Pl. Opp. [Dkt. 102] at p. 15-19. Universal did not address the arguments in its reply brief, and this is grounds alone to deny Defendant's motion. *See De Martinez v. CRST Expedited, Inc*., CV231593MWFMAAX, 2023 WL 4247701, at *12 (C.D. Cal. May 10, 2023.

Specifically, as established in Plaintiffs' opposition to Universal's motion for attorney fees, less intrusive regulation is available as an alternative to existing §425.17. *See*, Pl. Opp. [Dkt. 102] at p. 19.  *See*, also Section II(A) *infra*.  Having less intrusive regulatory options means that §425.17 fails the rigid tests of 'strict scrutiny', which requires that the *least* restrictive regulations be adopted. *See U.S. v. Playboy Ent. Group, Inc*., 529 U.S. 803 (2000) (Statute violated First Amendment rights where the Government could not prove that it was "least restrictive means.").  Moreover, Universal has tacitly conceded this infirmity by failing to address the strict scrutiny standard, including the alternative available regulatory options at all. The anti-SLAPP statute also does not advance its legislative purpose, let alone any compelling government interest, where its purpose in this case has been flipped on its head, in that one of the world's wealthiest companies is now wielding the statute to bully and silence private citizens.

Universal's final argument is that Plaintiffs' rights have not been encroached upon because they were not denied access to the courts entirely. But this argument too has been soundly rejected. *See*, *In re Workers Compensation Refund*, 842 F.Supp. 1211, 1219 (D. Minn. 1994) ("Defendants' contention that the commencement of this litigation is proof that the provision lacked any chilling effect is a sophistry… Section 10 was intended to chill the plaintiffs. The fact that it failed will not be considered in its defense.") (internal citation omitted) (citing *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422,

_____

it is designed to insulate protected speech from meritless litigation, it is not directly and materially advancing these interests in this case, where Universal's unprotected false speech is being shielded from meritorious claims. *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 100 S. Ct. 2343 at 566, 100 S.Ct. 2343. Moreover, and ironically demonstrating that California has no substantial interest in protecting Universal's speech here, California has legislated against false speech in the CLRA and UCL and FAL.

1427 (8th Cir. 1986). *See*, also *Miller*, 2022 WL 17811114 at *3 ("It is true that §

1021.11 does not completely deny access to the courts, yet it threatens to impose a very

high price through an unfair procedure for which there are no adequate state remedies.");

and *Matal v. Tam*, 137 S. Ct. 1744, 1765 (2017) (holding a federal trademark law

unconstitutional for viewpoint based discrimination, even though applicants were not

wholly prevented from applying for registration); *Id*. at 1754 (describing Tam's application

for registration and subsequent denial).

For all of these reasons, and as further established below, this Court should find

that the fee shifting and/or the exception-to-the-exception provisions of California's anti-

SLAPP statute, which provide special privileges to Universal, are invalid.

## II.   ARGUMENT

### A.  SECTION 425.17 IS UNCONSTITUTIONAL VIEWPOINT (OR CONTENT) BASED REGULATION THAT FAILS STRICT SCRUTINY

The Supreme Court's recent decision in *Barr v. American Association of Political

Consultants, Inc.* serves as a useful primer for what constitutes content (or viewpoint) based

regulation of speech:

> [A] law is content-based if "a regulation of speech 'on its face' draws
> distinctions based on the message a speaker conveys." *Reed,*576 U.S.,
> at 163, 135 S.Ct. 2218. ***That description applies to a law that "singles
> out specific subject matter for differential treatment." Id.***, at 169, 135
> S.Ct. 2218. For example, ***"a law banning the use of sound trucks for
> political speech—and only political speech—would be a content-
> based regulation***[.]

*Barr at* 2346 (emphasis added).

In *Barr*, the Supreme Court was confronted with a challenge to the constitutionality

of a statute which was originally enacted with broad applicability, but which was later

amended to provide special privileges to some, to the exclusion of others. *Id*. at 2344-45.

Specifically, the statute being challenged in *Barr* originally prohibited all robocalls

regardless of the content of the calls but was later amended to (only) permit calls by entities

collecting debt owed to the government. *Id*. Standing on all fours with *Barr*, California's

anti-SLAPP statute was broad upon original enactment, permitting its early dismissal procedures to be used by defendants of any variety. Like in *Barr*, however, the statute was later amended (effective January 1, 2004) to "curb abuse of the anti-SLAPP statute" and, now provides special treatment to defendants advertising movies, television programs, newspapers or magazines. *Physicians Com. for Responsible Med. v. Tyson Foods Inc.*, 13 Cal. Rptr. 3d 926, 929 (Cal. App. 1st Dist. 2004); see Cal. Code Civ. Proc. § 425.17(d)(2).

Section 425.17 is, accordingly, a content-based regulation on its face and subject to the same strict scrutiny as the robocalling statute in *Barr*. *Barr,* 140 S. Ct. at 2347. Apart from being content-based for providing special dismissal and fee-shifting privileges to Universal to the exclusion of other companies (that aren't advertising movies or books), see, § 425.17(d)(2), it is also a viewpoint (or content) based regulation because – as enacted – § 425.17 discourages *particular types* of speech of citizens that wish to petition the courts for redress of grievances. More specifically, it allows plaintiffs with legal grievances against companies other than movie studios (or book publishers) to exercise their speech rights unencumbered but, conversely, chills the right-to-petition speech of citizens wishing to 'speak out' against companies like Universal. It does so by awarding attorney fees to movie studio defendants for wins of *any* variety (even for alternatively pleaded claims, according to Universal) but only awards fees to plaintiffs for *objectively frivolous* anti-SLAPP motions, unfairly placing a thumb on the scales of justice in favor of these state-selected industries. *See*, Cal. Code Civ Pro. § 425.16(c)(1); *Miller*, 2022 WL 17811114 at *2 (invalidating a "lopsided, unorthodox attorney's fee-shifting scheme which ensures the citizen cannot win and may be forced to pay for the government's attorney's fees."). In short, regardless of which perspective the statute is viewed from (i.e., as providing special privileges to Universal or as disfavoring speech against movie companies), § 425.17 is a content (or viewpoint) based regulation and must be rigorously tested with strict scrutiny standards. *See Barr,* 140 S. Ct. at 2346 ("Content-based laws are subject to strict scrutiny."). *Id* at 2347 ("Indeed, the Court has held that '"laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a

content preference.'") (citation omitted). It is also presumptive invalid. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (content-based laws presumptively unconstitutional).

Under the strict scrutiny test, the government must show that its law serves a compelling governmental interest *and* is narrowly tailored to advance that interest. *Reed* 576 U.S. at 163 ("Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.").[6] *See also, United States v. Playboy Entt Grp.*, 529 U.S. at 813 (same). California's anti-SLAPP statute, particularly as amended, and *as Universal seeks to apply it in this case*, cannot satisfy either of these standards. *See United States v. Treasury Employees*, 513 U.S. 454, 477-78 (1995) (as-applied challenges more favored and allege that a statute or regulation is unconstitutional in a specific context).

As Universal's own brief explains, California passed its anti-SLAPP statute "in response to [its] concern about civil actions aimed at *private citizens* to deter or punish them for exercising their political or legal rights." (Def. Brief at 8) (emphasis added) (citing *Lockheed Missiles & Space Co*., 190 F.3d 963, 970 (9th Cir. 1999)). More specifically, as the legislative history itself likewise confirms, § 425.16 was enacted to prevent abuse of private citizens by wealthy corporate types wielding meritless legal claims as retaliatory swords. *See* Wilcox v. Superior Court, 33 Cal. Rptr. 2d 446, 450 (Ct. App. 1994) (describing SLAPP suits as "generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so."); *see*, also, CCP §425.16(a). However, after its original enactment, § 425.16 was quicky abused by the very corporate types it was designed to shield from. Consequently, California's anti-SLAPP was amended for the express purpose of curtailing such abuse. *See* CCP §425.17(a). But, as this case and others demonstrate, the amendment did not fully

---

[6] *Id*. at 164 (explaining that facially content neutral laws can also be categorized as content-based regulations).

8

work, and the legislature made the mistake of leaving the door open for continued exploitation by wealthy companies like Defendant Universal.

As its history demonstrates, California's anti-SLAPP statute serves neither the legislature's stated purpose or any compelling governmental interest at all, where (at least in the facts of this case) Universal (a subsidiary of Comcast, one of the world's wealthiest companies) is wielding the new and amended anti-SLAPP sword to inflict exorbitant and crippling attorney fees on two private citizen plaintiffs in retaliation for their protected speech. Indeed, here, the anti-SLAPP statute is not being utilized to protect private citizens; it's not being used to shield protected speech; and it's not being used to prevent meritless claims as the denial of dismissal of Plaintiffs' false advertising claims self-demonstrates. *See* Order Granting in Part and Denying in Part Defendant's Special Motion to Strike, Dkt. No. 83, at 32 ("Because Plaintiffs have plausibly alleged that the trailer is false, commercial speech, Plaintiffs may proceed with their claims without offending the First Amendment.").

Instead, Universal's speech at issue is unprotected, intentionally false speech. Worse, this false speech has paradoxically been elevated by § 425.17, through its placement of a thumb on the scale in favor of a fee award to Universal, above the ordinarily well-protected right to petition the judicial branch held by the private citizen Plaintiffs in this case. *United Mine Workers, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967) ("The right to petition for redress of grievances is among the most precious of the liberties safeguarded by the Bill of Rights…[It is] intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press"). Compare *People ex rel. Gascon v. HomeAdvisor, Inc.*, 49 Cal. App. 5th 1073, 1085, 263 Cal. Rptr. 3d 438, 448 (2020), as modified (June 5, 2020) (false advertising unprotected) (*Citing In re R.M.J.* (1982) 455 U.S. 191, 202, 102 S.Ct. 929, 71 L.Ed.2d 64).

In short, while California may have intended its anti-SLAPP statute to have a compelling government interest, that interest is not served *at least under the facts of this action*. And it is this failure which is enough to support Plaintiffs' as-applied challenge to

9

the constitutionality of the statute. *See United States v. Treasury Employees*, 513 U.S. at 477-78 (as-applied challenges are more favored as only challenging constitutionality in a specific factual context).

As a second (and independent) reason that § 425.17 is unconstitutional, Plaintiffs' opposition to Defendant's motion for attorney fees enumerated various less restrictive alternatives to § 425.17 which highlighted the statute's infirmity of not being narrowly tailored, and certainly not tailored to be the *least restrictive* alternative. *See U.S. v. Playboy*, 529 U.S. at 803. For example, § 425.17 could have been drafted to punish only objectively baseless litigation; tailored to only protect truthful advertising; drafted to keep its early dismissal and stay provisions while omitting the punitive fee shifting provision; or drafted so that plaintiffs could seek attorney fees under the same legal standard as plaintiffs. *See*, *S. Bay Rod*, 2022 WL 17811113, at *8. It likewise could have been tailored to more clearly define a prevailing party to avoid the scenario which exists here where Universal claims it has prevailed (Defendant's Motion for Fees [Dkt. 88]) but where worldwide media is reporting that it has suffered a monumental loss. Importantly, Defendant did not address – much less dispute – Plaintiff's proposed less restrictive alternatives to § 425.17. See generally Reply in Support of Motion for Attorney's Fees [Dkt. 104]; *see*, also Def. Brief [Dkt. 144]. Particularly since a content (or viewpoint) based regulation is *presumptively* invalid, Defendant's failure to meet its burden, or to even address Plaintiffs' opposition arguments in its reply, should result in a failure of the statute. Just as well, the availability of each of the enumerated less restrictive regulatory possibilities forecloses a finding that § 425.17 is the *least* restrictive alternative and thus that it passes constitutional muster. *See United States v. Playboy*, 529 U.S. at 813 ("If a less restrictive alternative would serve the [g]overnment's purpose, the legislature must use that alternative."); *see also, Turner Broad. Sys. v. FCC*, 512 U.S. 622, 662 (1994) ("[T]he incidental restriction on alleged First Amendment freedoms [must be] no greater than is essential to the furtherance of that interest.") (*quoting United States v. O'Brien*, 391 U.S. 367, 376 (1968).

## B. 425.17's Fee Shifting Provision Is Also Invalid for its Other Constitutional Infirmities

Plaintiffs' opposition to Defendant's motion for attorney fees raised numerous bases supporting a finding that California's anti-SLAPP is unconstitutional (or otherwise invalid), including for violation of the Noerr-Pennington doctrine, violation of the Equal Protection clause, failure to meet strict scrutiny standard,  unlawful application to Plaintiff Woulfe (a Maryland resident), and for conflicting with Federal Rule 8 in this case. *See* Opposition to Defendant's Motion for Attorneys' Fees and Costs, Dkt. 102; *see also*, Opposition to Motion to Strike, Dkt. No. 50, at 12 (anti-SLAPP violates Plaintiffs' First Amendment rights, including Noerr-Pennington violation and improper application to non-California resident).

Adopting the same or similar reasons urged by Plaintiffs in their opposition and other papers, Judge Benitez, sitting in the Southern District, agreed that a nearly identical fee shifting statute was constitutionally invalid earlier this year. *See*, *S. Bay Rod*, 2022 WL 17811113, at *8 and *Miller*, 2022 WL 17811114 at *8 ("The Court declares California Civil Code § 1021.11 to be unconstitutional and permanently enjoins the Defendants from bringing any action or motion under § 1021.11 to obtain an award of attorney's fees and costs.").[8] While Judge Benitez did not specifically address whether § 1021.11 was a content-based regulation or whether it met strict scrutiny standards, he nevertheless held that the fee shifting provision's entrenchment upon a citizen's constitutional rights to access the courts was a fatal flaw in the statute. *Id.* at *4 ("Because the state fee-shifting statute undermines a citizen's constitutional rights, it is this Court's role to declare its invalidity and enjoin its threat.").

Explaining his reasoning, Judge Benitez held that it was an intolerable burden to add an "unaffordable price to be heard in a court of law[.]" *Id.* at *3; *see*, also, *Id.* at *2 ("By

---

[8] *See, also, In re Workers Compen. Refund*, 842 F. Supp. 1211, 1219 (D. Minn. 1994), aff'd sub nom. *In re Workers' Compen. Refund*, 46 F.3d 813 (8th Cir. 1995) (fee shifting provision unconstitutional).

11

deterring citizens and coercing attorneys from accessing the courts for relief from constitutionally questionable laws, § 1021.11 severely chills both First Amendment rights and Second Amendment rights."). This finding is akin to adopting Plaintiffs' argument that § 425.17 violates the Noerr-Pennington doctrine by exacting a high price, and therefore deterring exercise of important constitutional rights, for unsuccessful legal claims. *See*, Pl. Opp. [Dkt. 102] at p. 19. Indeed, it is certainly an unaffordable burden in this case for a citizen to be liable for hundreds of thousands of dollars, accrued at attorney rates in excess of $1000/hour, to vindicate a claim worth only $3.99 per plaintiff on an individual basis.[9] See Dkt. 88-2 (Attorney Klaus hourly billing rate of $1,158).

Confirming that barring access entirely is not necessary to cause harm, Judge Benitez likewise explained: "The threat of losing discourages the airing of novel claims, even if the claims are substantial. The suppression of novel claims, in turn, does a disservice to the courts[.]" *Id. at 9.* Novel but unsuccessful claims are also protected by the First Amendment and benefit our judicial system. Indeed, as Judge Benitez further opined, "even unsuccessful but substantial claims advance First Amendment interests. 'Like successful suits, unsuccessful suits allow the public airing of disputed facts, and raise matters of public concern. They also promote the evolution of the law by supporting the development of legal theories that may not gain acceptance the first time around. The ability to lawfully prosecute even unsuccessful suits adds legitimacy to the court system as a designated alternative to force.'" *Id. at* 12-13. (citations omitted)

Contrary to these principles and the Constitution, however, Universal in this litigation seeks to exact financial pain on Plaintiffs for dismissal of their alternatively pleaded claims and for obtaining dismissal of a remedy available under a surviving unfair competition claim (Fees Opposition, at 2-3). Apart from being incompatible with Federal Rule 8, which allows for alternative pleadings (MTS Opposition, Dkt. 50, at 19), the Ninth

---

[9] If Section 425.17 is held to be constitutional, the threat of bankruptcy-level attorney fees for bringing individual claims worth less than five dollars warrants granting class certification for this reason alone. No plaintiff will ever pursue Universal for movie false advertising claims individually. *See Van v. LLR, Inc.,* 2023 WL 2469909, at *4.

Circuit's *Sonner* decision required this pleading strategy in view of the uncertainty of whether movies would be classified as goods or services. (Fees Opposition at 1). But even if these unusual and compelling facts were not present to deny Universal's fee request in this case, punishing Plaintiffs for making claims which aren't objectively baseless crosses a constitutional line. *Legal Services Corporation v. Velazquez*, 531 U.S. 533, 545 (2001) ("The disability is inconsistent with the proposition that attorneys should present all the reasonable and well-grounded arguments necessary for proper resolution of the case…[and]…for the proper exercise of the judicial power."). *See*, also, *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 532 (2002). ("Nor does the text of the First Amendment speak in terms of successful petitioning - it speaks simply of 'the right of the people to petition the Government for a redress of grievances.'").

Further impairing important rights in this case, Plaintiffs are and have been limited at every new turn with each new litigation decision which is made. Apart from limiting novel claims, at minimum, this question must be asked by counsel each time – "Will the next step Plaintiffs take result in Universal tactically adding on additional requests for attorney fees?" In fact, even when Plaintiffs took steps to avoid the specter of § 425.17, Universal took counter-steps to try to force motions under its umbrella. Indeed, at one stage, Universal threatened to file an *ex parte* application asking the Court to disregard Plaintiffs' motion for leave to file an amended complaint and enter the new pleading, so that it could file a motion to strike under § 425.17 instead of an opposition under Federal Rule 15. This bullying threat was designed to further burden the private citizens in this case with an additional attorney fee request thereby also deterring them in assertion of their constitutional rights. *See* Declaration of Cody R. LeJeune in Support of Plaintiffs' Supplemental Brief in Opposition to Defendant's Motion for Attorneys' Fees, Ex. A. See *Legal Services Corporation v. Velazquez*, 531 U.S. 533, 544 (2001) ("Restricting LSC attorneys in advising their clients and in presenting arguments and analyses to the courts distorts the legal system by altering the traditional role of the attorneys in much the same

way broadcast systems or student publication networks were changed in the limited forum cases we have cited.").

Making 425.17 yet even more egregious still, legions of decisions have correctly noted that it is nigh impossible to foresee whether California's anti-SLAPP statute will apply. *See*, e.g., *Rand Res., LLC v. City of Carson*, 6 Cal.5th 610, 621 (Cal. 2019) ("Not surprisingly, we have struggled with the question of what makes something an issue of public interest."); *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal.5th 133, 149 (Cal. 2019) (Courts "have struggled—understandably—to articulate the requisite nexus between the challenged statements and the asserted issue of public interest [.]"). Indeed, in this case, Plaintiffs' counsel did not anticipate that Universal would assert that false speech advanced a public interest and, moreover, did not expect the Court to agree. *Rand Res., LLC* 610, 621, 624, 625 (Cal. 2019) (Defendant's lie (similar to the facts here) did not advance public interest); *see also*, Motion for Reconsideration, Dkt. 89, at 4.  Being thusly vague, the statute is also infirm because § 425.17 does not put citizens on adequate notice of when it will apply (or not). Consequently, a party cannot know whether the threat of fee shifting will apply. This, of course, has wide ranging implications and unconstitutionally discourages citizens from bringing meritorious suits when the issue (whether anti-SLAPP applies) is nearly impossible to discern. *NAACP v. Button*, 371 U.S. 415, 432-433 (1963).

Compounding the constitutional issues further, once Universal signaled that it intended to file an anti-SLAPP motion, it was not possible, without substantial risk, for Plaintiffs to withdraw from the litigation by voluntarily dismissing the complaint. *See Plevin v. City and County of San Francisco*, No. C 11–02359 CW, 2011 WL 3240536, *4 (N.D. Cal. July 29, 2011). This California law, if not stricken down here, would hold plaintiffs liable regardless. *Id.* Consequently, § 425.17 gave the Plaintiffs the Hobson's Choice of proceeding forward with the litigation or dismissing it voluntarily, risking that Universal seek fees from Plaintiffs anyway. *See* Declaration of Matthew A. Pequignot, Dkt. 102-5, at ¶¶ 2-4. In short, not only does § 425.17 deter plaintiffs from bringing

14

potential meritorious claims, it also deters plaintiffs from *exiting* litigations, which is yet another entrenchment upon Plaintiffs' constitutional rights.

Beyond finding that the fee shifting provision of § 1021.11 was invalid for chilling the free speech of plaintiffs, Judge Benitez also held that the statute was invalid for violating both the due process and equal protection clause of the United States Constitution. *See*, *S. Bay Rod*, 2022 WL 17811113, at *2 ("Where the financial cost is too high to enable a person to access the courts, there is a violation of Due Process and Equal Protection, as well.").[11] As substantiated in Plaintiffs' opposition to Universal's motion for attorney fees, this Court should likewise (or in the alternative) find that California's anti-SLAPP statute is invalid for violating Plaintiffs' First Amendment petition rights (Pl. Opp [Dkt. 102] at 19) and for depriving Plaintiffs of equal protection (*Id.* at 22), as well as for failure under a strict scrutiny analysis as a content (or viewpoint) based regulation.

## III. CONCLUSION

Echoing Judge Benitez's pronouncements in both *Miller* and *S. Bay Rod and Gun Club*, today California's encroachment upon Plaintiffs rights applies to their access to the courts. "Tomorrow, with a slight amendment, it could be any other constitutional right including the right to speak freely, to freedom of the press, to practice one's religion, to restrict cruel and unusual punishment, and to be free from government takings without compensation." *S. Bay Rod*, 2022 WL 17811113, at *5-6.

California's anti-SLAPP statute should be held invalid in its entirely, or at minimum, its special privilege, fee shifting provisions should be severed as unconstitutional. *Barr,* 140 S. Ct. at 2349 (invalidating the 2015 government-debt exception and severing the exception from the remainder of the statute). *See*, 2003 Cal. Legis. Serv. Ch. 338 (S.B. 515) at § 2 ("The provisions of this act are severable…").

---

[11] The *S. Bay Rod & Gun Club* decision also held § 1021.11 invalid as violative of the Supremacy Clause (*Id.*, at *6), because 42 U.S.C. 1988 conflicted with the state law in question, which supports Plaintiffs' arguments that pleading claims in the alternative under Federal Rule 8 cannot be the basis for deeming Universal a prevailing party. MTS Opposition at 19.

Respectfully submitted,

Dated: July 19, 2023             By:     /s/Matthew A. Pequignot

**PEQUIGNOT + MYERS**
Matthew A. Pequignot (*Pro Hac Vice*)
PEQUIGNOT + MYERS
2585 Ala Namahana Pkwy, #1007
Kilauea, HI 96754
Telephone: 202-328-1200

**LEJEUNE LAW, P.C.**
Cody R. LeJeune
445 S. Figueroa St.
Suite 3100
Los Angeles, CA 90071
Telephone: (985) 713-4964

Attorneys for Plaintiffs
CONOR WOULFE, an individual, and PETER
MICHAEL ROSZA, an individual