CODY R. LEJEUNE (CSB No. 249242)
cody@lejeunelawfirm.com
**LEJEUNE LAW, P.C.**
445 S. Figueroa St.
Suite 3100
Los Angeles, CA 90071
Telephone: (985) 713-4964


Attorneys for Plaintiffs
CONOR WOULFE, an individual, and PETER
MICHAEL ROSZA, an individual

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONOR WOULFE, an individual, and PETER MICHAEL ROSZA, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>UNIVERSAL CITY STUDIOS LLC, d.b.a., UNIVERSAL PICTURES, a California limited liability company; and DOES 1-20, inclusive,<br><br>    Defendant, | Case No.:  2:22-cv-00459-SVW-AGR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY FROM DEFENDANT**<br><br>Date: November 9, 2023<br>Time: 11:00 a.m.<br>Judge: Hon. Alicia G. Rosenberg<br>Courtroom: 550 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that pursuant to Local Rule 37, on November 9, 2023, at 11:00 a.m. in the courtroom of the Honorable Alicia G. Rosenberg, located at 255 E. Temple St., Los Angeles, CA, 90012, Courtroom 550, 5th Floor, Plaintiffs will and hereby does move for an order granting its Motion to Compel Defendant Universal City Studios LLC to provide substantive responses to Plaintiffs' discovery requests, produce documents responsive to Plaintiffs' document requests, and to produce a Rule 30(b)(6) designee to testify regarding the topics in Plaintiffs' notice.

This Motion is based on this Notice and Motion, the concurrently filed Memorandum in support, exhibits, and any pleadings and files in this action.

Respectfully submitted,
**LEJEUNE LAW, P.C.**

Dated: October 19, 2023           By:    /s/ Cody R. LeJeune
                                          Cody R. LeJeune
                                          445 S. Figueroa St.
                                          Suite 3100
                                          Los Angeles, California 90071
                                          Telephone: (985) 713-4964


                                          Attorneys for Plaintiffs
                                          CONOR WOULFE, an individual, and
                                          PETER MICHAEL ROSZA, an individual

**Table of Contents**

I.     INTRODUCTION ................................................................................................ 1

II.    THE CATALYST THEORY ............................................................................. 3

III.   ARGUMENT ...................................................................................................... 4

    A.   The Court Should Compel the Discovery So It Can Decide the Catalyst Issue

        on a Complete Record .................................................................................... 4

        1.   Interrogatories .................................................................................. 6

        2.   Document Requests .......................................................................... 7

        3.   Rule 30(b)(6) Deposition Notice .................................................... 12

    B.   Plaintiffs Are Successful Parties and Have Prevailed in Compelling

        Defendant to Change the Trailer ............................................................... 12

        1.   This Lawsuit Was a Catalyst ......................................................... 13

        2.   This Lawsuit Had Merit .................................................................. 14

        3.   Plaintiffs Satisfied the Pre-Litigation Demand Requirement ............. 14

    C.   Plaintiffs Meet the Requirements for Catalyst Fees ................................... 15

IV.    CONCLUSION .............................................................................................. 17

**Table of Authorities**

**Cases**

*AEG Holdco, LLC. v. Vazquez*, No. CV2105290VAPAGRX, 2022 WL 19076641, at *3 (C.D. Cal. Nov. 15, 2022) ......................................................................4

*Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1418 (1991)................................16

*Cates v. Chiang*, 213 Cal. App. 4th 791, 817 (2013) ......................................................15

*Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1114 (C.D. Cal. 2012)...........16

*Evans v. DSW, Inc*. 216CV03791JGBSPX, 2018 WL 6920674, at *10–11 (C.D. Cal. Aug. 17, 2018)........................................................................................15

*Furgatch v. San Diego Unified Port Dist.*, No. D047872, 2006 WL 3292631, at *11 (Cal. App. 4th Dist. Nov. 14, 2006) ...........................................................3, 5

*Graham v. DaimlerChrysler Corp.,* 34 Cal.4th 553, 566 (2004) .2, 3, 4, 5, 6, 12, 13, 14, 15

*Grodensky v. Artichoke Joe's Casino*, 171 Cal. App. 4th 1399, 1437 (2009) ..............3, 12

*Henderson v. J.M. Smucker Co*., No. CV 10-4524-GHK VBKX, 2013 WL 3146774, at *3 (C.D. Cal. June 19, 2013) ..........................................................2, 3, 4, 15

*Heston v. Taser Int'l., Inc*., 431 Fed. Appx. 586, 589 (9th Cir. 2011) ............................16

*In re Conservatorship of Whitley*, 50 Cal. 4th 1206, 1215 (2010) ....................................17

*Keith v. Volpe,* 858 F.2d 467, 486 (9th Cir. 1988) ............................................................17

*Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 508 (2003)..........................14, 16

*Lazar v. Super. Ct*., 12 Cal. 4th 631, 646 (1996)................................................................16

*Lyons v. Chinese Hosp. Assn.*, 136 Cal. App. 4th 1331 ....................................................16

*MacDonald v. Ford Motor Co.,* 142 F. Supp. 3d 884, 890 (N.D. Cal. 2015) .............13, 15

*McIntosh v. McAfee, Inc*., No. C06-07694 JW (HRL), 2008 WL 4078408, at *2–3 (N.D. Cal. Aug. 29, 2008) ............................................................................2, 5

*Parkinson v. Hyundai Motor Am*., 796 F.Supp.2d 1160, 1169 (C.D.Cal.2010)......3, 15, 16

Ryan v. Cal. Interscholastic Fed'n, 94 Cal. App. 4th 1033, 1044 (2001) ........................16

*Sablan v. Dept. of Fin. of Com. Of N. Mariana Islands*, 856 F.2d 1317, 1322-23, 1326 (9th Cir. 1988) ....................................................................................6

*StreamCast Networks, Inc. v. IBIS LLC*, No. CV05-04239MMM(EX), 2006 WL
  5720345, at *1 (C.D. Cal. May 2, 2006) ..................................................16

*Topton–Whittingham v. City of Los Angeles*, 34 Cal.4th 604, 608, 21 Cal.Rptr.3d 371,
  101 P.3d 174 (2004) ..........................................................................13

*Trew v. Volvo Cars of N.A.*, LLC, No. S-05-1379 RRB EFB, 2007 WL 2239210, at *4
  (E.D. Cal. July 31, 2007) ....................................................................14

*Unocal Corp. v. United States*, 222 F.3d 528, 544 (9th Cir. 2000)................................16

*Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971)................................................16

*Vitt v. Apple Computer, Inc.*, 469 Fed.Appx. 605, 607 (9th Cir. 2012) ..........................14

*Williams v. Superior Court,* (2017) 3 Cal. 5th 531................................................2

**Statutes**

Fed. R. Civ. P. 26(b)(1) ..........................................................................4

# I.   INTRODUCTION

Plaintiffs seek discovery from Defendant regarding a specific issue: the details and circumstances regarding the fact that, prior to Plaintiffs filing this lawsuit, the trailer for the *Yesterday* movie at issue in this matter appeared on Universal's product page for the *Yesterday* movie on Amazon, and now the trailer no longer appears on Amazon.

Plaintiffs filed this lawsuit because the actress Ana De Armas did not appear in the movie *Yesterday* despite the fact that the *Yesterday* trailer ("Trailer") that Plaintiffs watched on Amazon advertised and promoted Ana de Armas as an actress that would appear in *Yesterday. See* Third Amended Complaint ("TAC"), Dkt. No. 130, at ¶7.

Critically, ***Defendant has confirmed that the Trailer was removed from Amazon at some point after Plaintiffs filed this lawsuit and replaced with a trailer that does not advertise Ana De Armas***. See Defendant's RFA Responses, Ex. A, No. 10 ("Defendant admits that the original trailer is not on the product page for *Yesterday* on the Amazon Prime Video website"); Ex. B., No. 15 ("Defendant admits that…it appears that at some point after this lawsuit was filed, Amazon Prime Video included on its website a trailer for the motion picture *Yesterday* that is not the same trailer that Plaintiffs claim to have viewed on Amazon Prime Video before allegedly paying to view the movie.").

Further, Plaintiffs' investigation from Amazon into the specifics regarding the Trailer's removal uncovered that, "***under the arrangement between Amazon and Universal, Universal uploads the film, trailers, and artwork through an Aspera account that was set up for this purpose.***" Email from Amazon Counsel, Ex. C, at 1. However, Defendant has provided evasive responses to Plaintiffs' discovery request, and, in doing so, denied responsibility for the Trailer's removal and/or replacement. *See* Ex. A, at No. 11 (when asked to admit that it removed the Trailer, Defendant's objection construed the term "removed" to mean that "Universal itself removed the Trailer.").

Nonetheless, because "a chronology of events can give rise to the inference that [Plaintiffs first filing this lawsuit and the Trailer's subsequent removal from Amazon] are causally related," Plaintiffs intend to file a motion for attorneys' fees under the "Catalyst Theory," codified in Cal. Civ. P. Code §1021.5 ("Section 1021.5"). *Henderson v. J.M.*

*Smucker Co*., No. CV 10-4524-GHK VBKX, 2013 WL 3146774, at *3 (C.D. Cal. June 19, 2013) 4-5 ("When, after litigation is initiated, a defendant has voluntarily provided the relief a plaintiff is seeking, the chronology of events may raise an inference that the litigation was the catalyst for the relief."); *see also*, *Graham v. DaimlerChrysler Corp.,* 34 Cal.4th 553, 566 (2004). The Catalyst Theory allows plaintiffs to seek attorneys' fees where their lawsuit was a "motivating catalyst" in achieving the relief sought by the lawsuit. *Id*.

However, based on Defendant's refusal to provide meaningful discovery concerning the Trailer's removal, Plaintiffs thus seek discovery from Defendant to confirm the circumstances surrounding the removal of the Trailer from Amazon. Plaintiffs' requested discovery is relevant to the elements required to prove that Plaintiffs are entitled to catalyst fees, and, as a result, the discovery sought is proportional to the needs of the case.

In refusing to provide the requested discovery, Defendant has taken the position that Plaintiffs must prove that they are entitled to attorneys' fees under the Catalyst Theory ***before*** Defendant responds to any discovery that will help Plaintiffs prove that they are entitled to attorneys' fees. However, the Court should not decide the substantive issue of Plaintiffs' forthcoming motion for attorneys' fees pursuant to Section 1021.5 on an incomplete factual record. *See Williams v. Superior Court,* (2017) 3 Cal. 5th 531, 559 (holding that "a discovery motion is not the right vehicle to litigate the appropriate scope of an action"). Indeed, "[d]oubts as to whether particular matters will aid in a party's preparation…should generally be resolved in favor of permitting discovery." *Id*, at 551; *see also, Graham*, 34 Cal. 4th at 576 ("some development of the factual record is required in order to prevail on a catalyst theory.")

Both federal and state courts have also allowed parties to take discovery specifically concerning a catalyst fee award. *See, e.g., See Graham,* 34 Cal. 4th at 563 (allowing discovery for a year after the case was dismissed and holding an evidentiary hearing in order to determine plaintiffs' entitlement to attorneys' fees); *McIntosh v. McAfee, Inc*., No. C06-07694 JW (HRL), 2008 WL 4078408, at *2–3 (N.D. Cal. Aug. 29, 2008) (allowing discovery regarding catalyst fees even though discovery deadline passed because determination of whether plaintiffs are entitled to attorneys' fees considers whether

plaintiffs' claims have merit); *see also, Furgatch v. San Diego Unified Port Dist.*, No. D047872, 2006 WL 3292631, at *11 (Cal. App. 4th Dist. Nov. 14, 2006) (In granting motion to compel, court held that the role of plaintiff's lawsuit as a motivating catalyst to defendant's conduct, including factual inconsistencies, raised questions "sufficient to warrant further factual exploration."). Nonetheless, Plaintiffs also provide analysis below showing that they are indeed entitled to an award of attorneys' fees under the Catalyst Theory.

As a result, the Court should compel Defendant to: (1) provide responses to Plaintiffs' discovery requests set forth herein; (2) produce documents responsive to Plaintiffs' Requests for Production of Documents ("RFPs"); and (3) allow Plaintiffs to depose a Universal representative concerning the topics outlined in Plaintiffs' Rule 30(b)(6) notice.

## II.   THE CATALYST THEORY

Pursuant to Section 1021.5, "the court may award fees to a 'successful party' in any action that has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." *Smucker*, 2013 WL 3146774, at *3, *citing Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d 1160, 1169 (C.D.Cal.2010) (quoting Section 1021.5)).

The critical factor, however, in determining whether a party is a "successful party" for the purposes of Section 1021.5 "is the impact of the action, not the manner of the resolution." *Smucker,* 2013 WL 3146774, at *4, citing *Graham,* 34 Cal.4th at 566. "Under this broad, pragmatic view of what constitutes a successful party within the meaning of section 1021.5, a plaintiff need not obtain a judgment in its favor to be a successful party." *Id*. "[A] party need not prevail on every claim to be considered a successful party within the meaning of the statute." *Grodensky v. Artichoke Joe's Casino*, 171 Cal. App. 4th 1399, 1437 (2009) (citation omitted). "Rather, a plaintiff is a successful party whenever it obtains

3

the relief sought in its lawsuit, regardless of whether that relief is obtained through a voluntary change in the defendant's conduct, through a settlement, or otherwise." *Smucker,* 2013 WL 3146774, at *4, citing *Graham,* 34 Cal.4th at 566.

Under California law, courts use a pragmatic approach and consider the following factors to analyze whether a party is successful: "(1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense ... and, (3) that the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit." *Smucker,* 2013 WL 3146774, at *4, citing *Graham,* 34 Cal.4th at 566.

## III.   ARGUMENT

"'Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *AEG Holdco, LLC. v. Vazquez*, No. CV2105290VAPAGRX, 2022 WL 19076641, at *3 (C.D. Cal. Nov. 15, 2022), citing Fed. R. Civ. P. 26(b)(1).

### A.   The Court Should Compel the Discovery So It Can Decide the Catalyst Issue on a Complete Record

To properly show that all elements of a fee award do exist, pursuant to Section 1021.5 and *Graham*, Plaintiffs have a right to propound discovery on the fee issue. Defendant admits that the Trailer was removed after Plaintiffs filed this lawsuit, but refuses to produce documents and answer interrogatories regarding the details surrounding the Trailer's removal. In addition, Defendant provided evasive objections in its responses to Plaintiffs' RFAs. *See* Defendant's RFA Responses, Ex. A, No. 11 ("Defendant construes the term 'removed' to mean Universal itself removed" the Trailer).

Defendant's refusal to comply with Plaintiffs' limited discovery requests prohibits Plaintiffs from developing specific facts that would disprove its claims or affirmatively

4

prove all elements specified in *Graham*, i.e.: (1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense; and (3) the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit. *Graham*, 34 Cal. 4th at 561. Accordingly, Plaintiffs are entitled to discovery specifically tailored towards proving the requirements of *Graham*.

And though Plaintiffs still have three (3) causes of action that survived motion to dismiss, the inquiry should not be limited to those claims or the catalyst fee requirements. "Although the catalyst rule is sometimes formulated to permit an award of attorney fees as long as a lawsuit can survive a motion to dismiss or for judgment on the pleadings…, we see no reason to limit a trial court's inquiry regarding the merits of the case to an examination of whether the pleadings state a cause of action." *Graham*, 34 Cal. 4th at 576.

In *McIntosh*, the court compelled defendant to produce relevant discovery regarding catalyst fees even though the discovery deadline passed. *McIntosh,* 2008 WL 4078408, at *2–3. The Court reasoned that plaintiffs were entitled to discovery concerning all causes of action because determination of whether plaintiffs are entitled to attorneys' fees considers whether plaintiffs' claims have merit. *McIntosh v. McAfee, Inc*., No. C06-07694 JW (HRL), 2008 WL 4078408, at *2–3

In *Furgatch,* the court provided extensive analysis concerning a plaintiff's request for catalyst fees. *See Furgatch*, 2006 WL 3292631. The trial court dismissed plaintiff's case and refused to allow plaintiff the opportunity to propound discovery from defendant. *Id*., at *1. The appellate court reversed, finding that the trial court abused its discretion by refusing to compel defendant to provide discovery regarding plaintiff's catalyst fee motion. *Id*., at *1. The appellate court ordered the trial court to conduct a hearing to determine whether plaintiff was a prevailing party, including an evidentiary hearing on whether plaintiff's lawsuit was a substantial factor or significant catalyst in compelling defendant's actions. *Id*., at *1.   As support for its decision, the appellate court relied on "factual inconsistencies" that "raise[d] questions sufficient to warrant further factual exploration." *Id*., at 11.

Under California law involving the catalyst theory issue, such discovery has been found to be relevant: "[R]elevant inquiries might include inquiries designed to obtain 'evidence of malice [or] prosecution ... [the factual background] may generally be established during the attorney fee proceeding by declarations, or, at the discretion of the trial court, by an abbreviated evidentiary hearing." *Graham*, 34 Cal.4th at 576; *see also*, *Sablan v. Dept. of Fin. of Com. Of N. Mariana Islands*, 856 F.2d 1317, 1322-23, 1326 (9th Cir. 1988) ("Like a trial, the purpose of an evidentiary hearing is to resolve disputed issues of fact, or to provide the district court with a sufficient factual basis for deciding an issue"; "the inquiry into causal connection [in the catalyst context] is, at bottom … an intensely factual, pragmatic one…") (internal citations omitted). A court may properly review the factual background established by the evidence presented "to determine the lawsuit's catalytic effect." *Graham*, 34 Cal.4th at 576.

Here, Plaintiffs request that the Court compel discovery that is narrowly tailored to proving the elements and requirements for its forthcoming motion for fees under the catalyst theory. As a result, the discovery is proportional to the needs of the case. *See ALS Scan, Inc. v. Cloudfare, Inc*., No. 16-cv-05051-GW-AFM, 2017 WL 3575279, at *1 (C.D. Cal. July 13, 2017) ("This discovery is proportional to the needs of the case; it is relevant to the issue of statutory damages and directly corresponds to the number of copyrighted works for which ALS seeks damages.").

### 1. Interrogatories

The Court should compel Defendant to provide complete and substantive responses to Interrogatory Nos. 6 and 8 (Ex. D), as set forth below.

> <u>Interrogatory No. 6</u>: Describe and identify all instructions, guidelines, requirements, and/or other information issued (or otherwise communicated) to third parties pertaining to the advertising or promotion of the movie *Yesterday*, including the content and date of such instructions (or guidelines, requirements, or other information), the person(s) that drafted them, the person(s) that issued them, and the person(s) that received them. The requirement to identify documents in this interrogatory means to identify them by bates number.

Interrogatory No. 6 is directly relevant to whether this lawsuit was a motivating catalyst to Defendant's removal of the Trailer from Amazon. As confirmed by Amazon, Defendant is responsible for the content on the *Yesterday* product page on Amazon Prime. *See* Ex. C, at 1. Discovery, including all communications, regarding any of the following would further confirm that Plaintiffs filing this lawsuit was a motivating catalyst that caused removal of the Trailer: if Defendant removed the Trailer, if Defendant instructed Amazon to remove the Trailer, or if Defendant instructed a third party to remove the Trailer. Plaintiffs are also entitled to contracts or agreements that govern control of Defendant's *Yesterday* product page on the Amazon Prime website.

> Interrogatory No. 8: Explain in detail any and all reasons (regardless of whether factual or legal), and identify the persons who formulated such reasons, that Defendant did not stop using advertising which associated Ana de Armas with the movie Yesterday or which otherwise featured Ana de Armas in Yesterday promotions or advertisements, after Defendant became aware that Ana de Armas would not be in the movie Yesterday. For the purposes of this interrogatory, the terms "advertising" (or "advertisements") and promotion include (but are not limited to) cast listings, software encoding, or keyword linking.

Interrogatory No. 8 is directly relevant to whether Plaintiffs would be considered a successful party, i.e., the merits of the case. For instance, Plaintiffs' Unfair Competition claim requires an underlying wrong, one of which is the fraudulent prong. *See* TAC, Dkt. No. 130, ¶139-152. As Plaintiffs alleged in the TAC, Defendants "misrepresent[ed] that Ana De Armas would appear in the publicly released film when Defendant knew she would not." TAC, at ¶139. Plaintiffs make the same allegations regarding their claim for false advertising. *See* TAC, at ¶156. Therefore, discovery confirming the truth of these allegations would go toward Plaintiffs' claim that this case has merit and thus Plaintiffs were successful.

The Court should compel Defendant to provide substantive responses to these interrogatories.

7

## 2. Document Requests

The Court should compel Defendant to provide complete and substantive responses, and produce documents responsive to, RFP Nos. 10, 11, 14-16, 22, 24, 25, 27 (Ex. E), as set forth below:

> RFP No. 10: All documents comprising Defendant's internal communications pertaining to the inclusion of Ana de Armas in the Yesterday trailer despite being omitted from the movie Yesterday.

RFP No. 10 is directly relevant to whether Plaintiffs would be considered a successful party, i.e., the merits of the case. For instance, Plaintiffs' Unfair Competition claim requires an underlying wrong, one of which is the fraudulent prong. *See* TAC, Dkt. No. 130, ¶139-152. As Plaintiffs alleged in the TAC, Defendants "misrepresent[ed] that Ana De Armas would appear in the publicly released film when Defendant knew she would not." TAC, at ¶139. Plaintiffs make the same allegations regarding their claim for false advertising. *See* TAC, at ¶156. Therefore, discovery confirming the truth of these allegations would go toward Plaintiffs' claim that this case has merit and thus Plaintiffs were successful.

> RFP No. 11: All documents comprising Defendant's internal communications pertaining to the inclusion of Ana de Armas in the Yesterday trailer.

RFP No. 11 is directly relevant to whether Plaintiffs would be considered a successful party, i.e., the merits of the case. For instance, Plaintiffs' Unfair Competition claim requires an underlying wrong, one of which is the fraudulent prong. *See* TAC, Dkt. No. 130, ¶139-152. As Plaintiffs alleged in the TAC, Defendants "misrepresent[ed] that Ana De Armas would appear in the publicly released film when Defendant knew she would not." TAC, at ¶139. Plaintiffs make the same allegations regarding their claim for false advertising. *See* TAC, at ¶156. Therefore, discovery confirming the truth of these allegations would go toward Plaintiffs' claim that this case has merit and thus Plaintiffs were successful.

In addition, RFP No. 11 is directly relevant to whether this lawsuit was a motivating catalyst to Defendant's removal of the Trailer from Amazon. As confirmed by Amazon, Defendant is responsible for the content on the *Yesterday* product page on Amazon Prime. *See* Ex. C, at 1. Discovery, including all communications, regarding any of the following would further confirm that Plaintiffs filing this lawsuit was a motivating catalyst that caused removal of the Trailer: if Defendant removed the Trailer, if Defendant instructed Amazon to remove the Trailer, or if Defendant instructed a third party to remove the Trailer. Plaintiffs are also entitled to contracts or agreements that govern control of Defendant's *Yesterday* product page on the Amazon Prime website.

> RFP No. 14:   All communications between Defendant and Danny Boyle, Richard Curtis, and/or John Harris pertaining to this litigation.

As set forth in the TAC, these individuals were integral players in the decision-making for the movie *Yesterday:* Danny Boyle directed *Yesterday* and promoted the movie *Yesterday,* Richard Curtis was the screenwriter for the movie *Yesterday,* and John Harris was the editor for the movie *Yesterday.*[1] See TAC, at ¶43-44, 48, 50, 55,

RFP No. 14 is directly relevant to whether this lawsuit was a motivating catalyst to Defendant's removal of the Trailer from Amazon. As confirmed by Amazon, Defendant is responsible for the content on the *Yesterday* product page on Amazon Prime. *See* Ex. C, at 1. Discovery, including all communications with Boyle, Curtis and/or Harris, regarding any of the following would further confirm that Plaintiffs filing this lawsuit was a motivating catalyst that caused removal of the Trailer: if Defendant removed the Trailer, if Defendant instructed Amazon to remove the Trailer, or if Defendant instructed a third party to remove the Trailer.

> RFP No. 15:   All communications between Defendant and Working Title Pictures pertaining to this litigation.

---

[1] https://en.wikipedia.org/wiki/Yesterday_(2019_film), last accessed October 19, 2023.

As alleged in the TAC, Working Title is a production company that created the movie *Yesterday*. TAC, at ¶15. Defendant acquired the rights to the movie *Yesterday* from Working Title. Id. Working Title may have relevant information concerning Defendant's removal of the Trailer from Amazon. As a result, RFP No. 15 may be relevant to whether this lawsuit was a motivating catalyst to Defendant's removal of the Trailer from Amazon. As confirmed by Amazon, Defendant is responsible for the content on the *Yesterday* product page on Amazon Prime. *See* Ex. C, at 1. Discovery, including all communications, between Defendant and Working Title regarding this litigation and/or removal of the Trailer is relevant to Plaintiffs' claims. Plaintiffs are also entitled to contracts or agreements that govern control of Defendant's *Yesterday* product page on the Amazon Prime website, including those with Working Title.

> RFP No. 16:  All communications between Defendant and any online movie store, including but not limited to Amazon.com, Apple, VUDU, or Google, pertaining to this litigation.

RFP No. 16 is directly relevant to whether this lawsuit was a motivating catalyst to Defendant's removal of the Trailer from Amazon. As confirmed by Amazon, Defendant is responsible for the content on the *Yesterday* product page on Amazon Prime. *See* Ex. C, at 1. Defendant's communications with Amazon regarding this litigation would further confirm that Plaintiffs filing this lawsuit was a motivating catalyst that caused removal of the Trailer: if Defendant removed the Trailer, if Defendant instructed Amazon to remove the Trailer, or if Defendant instructed a third party to remove the Trailer. Plaintiffs are also entitled to contracts or agreements that govern control of Defendant's *Yesterday* product page on the Amazon Prime website.

> RFP No. 22:   All documents relating to or discussing or instructing Amazon.com's (a.k.a. Amazon Prime Video's) replacement of the Yesterday movie trailer subsequent to January 21, 2022.

RFP No. 22 is directly relevant to whether this lawsuit was a motivating catalyst to Defendant's removal of the Trailer from Amazon. As confirmed by Amazon, Defendant is responsible for the content on the *Yesterday* product page on Amazon Prime. *See* Ex. C, at 1. Discovery, including all communications with Amazon, regarding any of the following would further confirm that Plaintiffs filing this lawsuit was a motivating catalyst that caused removal of the Trailer: if Defendant removed the Trailer, if Defendant instructed Amazon to remove the Trailer, or if Defendant instructed a third party to remove the Trailer. Plaintiffs are also entitled to contracts or agreements that govern control of Defendant's *Yesterday* product page on the Amazon Prime website.

> RFP No. 24:  All documents relating to Defendant's control of advertising of the movie Yesterday on online movie stores, including (but not limited to) on Amazon Prime and Apple TV. In addition to any other related documents, this request seeks disclosure of Defendant's instructions given to such stores pertaining to the advertising and promotion of the movie Yesterday.

RFP No. 24 is directly relevant to whether this lawsuit was a motivating catalyst to Defendant's removal of the Trailer from Amazon. As confirmed by Amazon, Defendant is responsible for the content on the *Yesterday* product page on Amazon Prime. *See* Ex. C, at 1. Discovery, including all communications with Amazon, regarding any of the following would further confirm that Plaintiffs filing this lawsuit was a motivating catalyst that caused removal of the Trailer: if Defendant removed the Trailer, if Defendant instructed Amazon to remove the Trailer, or if Defendant instructed a third party to remove the Trailer. Plaintiffs are also entitled to contracts or agreements that govern control of Defendant's *Yesterday* product page on the Amazon Prime website.

> RFP No. 25:  Copies of contracts between Defendant and online movie stores (e.g., Amazon Prime, Apple, VUDU, Google) pertaining to the movie stores' offers for rent or sale of Defendant's movies.

RFP No. 25 is directly relevant to whether this lawsuit was a motivating catalyst to Defendant's removal of the Trailer from Amazon. As confirmed by Amazon, Defendant is

11

responsible for the content on the *Yesterday* product page on Amazon Prime. *See* Ex. C, at 1. Defendants' contracts or agreements that govern control of Defendant's *Yesterday* product page on the Amazon Prime website are relevant to Defendant's control of the product page on Amazon for the movie *Yesterday.*

> RFP No. 27:  All documents evincing that it was not possible to create a new trailer omitting Ana de Armas.

RFP No. 27 is directly relevant to whether Plaintiffs would be considered a successful party, i.e., the merits of the case. For instance, Plaintiffs' Unfair Competition claim requires an underlying wrong, one of which is the fraudulent prong. *See* TAC, Dkt. No. 130, ¶139-152. As Plaintiffs alleged in the TAC, Defendants "misrepresent[ed] that Ana De Armas would appear in the publicly released film when Defendant knew she would not." TAC, at ¶139. Plaintiffs make the same allegations regarding their claim for false advertising. *See* TAC, at ¶156. Therefore, discovery confirming the truth of these allegations would go toward Plaintiffs' claim that this case has merit and thus Plaintiffs were successful.

### 3.    Rule 30(b)(6) Deposition Notice

All topics in the Rule 30(b)(6) deposition notice concern the Trailer from the *Yesterday* product page on Amazon, including its appearance, removal, and the circumstances surrounding its removal. *See* Ex. F. As a result, all topics are directly relevant to whether this lawsuit was a motivating catalyst to Defendant's removal of the Trailer from Amazon. As confirmed by Amazon, Defendant is responsible for the content on the *Yesterday* product page on Amazon Prime. *See* Ex. C, at 1. Therefore, deposition testimony regarding any of the following would further confirm that Plaintiffs filing this lawsuit was a motivating catalyst that caused removal of the Trailer: if Defendant removed the Trailer, if Defendant instructed Amazon to remove the Trailer, or if Defendant instructed a third party to remove the Trailer.

The Court should compel Defendant to designate a representative to testify regarding the topics.

**B.    Plaintiffs Are Successful Parties and Have Prevailed in Compelling Defendant to Change the Trailer**

The California Supreme Court has taken a broad, pragmatic view of what constitutes a successful party within the meaning of section 1021.5, a plaintiff need not obtain a judgment in its favor to be a successful party." *Graham,* 34 Cal. 4th at 565. "[A] party need not prevail on every claim to be considered a successful party within the meaning of the statute." *Grodensky,* 171 Ca. App. 4th at 1437.

A party is successful if it establishes "that (1) the lawsuit was a catalyst in motivating the defendants to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, (3) that the plaintiffs reasonably not dint of nuisance; attempted to settle and the litigation prior to filing the lawsuit." *Graham*, 34 Cal. 4th at 553; *Topton–Whittingham v. City of Los Angeles*, 34 Cal.4th 604, 608, 21 Cal.Rptr.3d 371, 101 P.3d 174 (2004). The chronology of the events of this case demonstrates that Plaintiffs satisfy the Catalyst Theory requirements.

**1.    This Lawsuit Was a Catalyst**

First, this lawsuit was a catalyst in motivating Defendant to remove the Trailer. As set forth above, Plaintiffs filed this lawsuit because Ana De Armas did not appear in the movie *Yesterday* despite the fact that the Trailer that Plaintiffs watched on Amazon advertised and promoted Ana de Armas as an actress that would appear in *Yesterday. See* TAC, Dkt. No. 130, at ¶7.  After Plaintiffs filed the lawsuit, Defendant has confirmed that the Trailer was removed from Amazon at some point after Plaintiffs filed this lawsuit and replaced with a trailer that does not advertise Ana De Armas. *See* Defendant's RFA Responses, Ex. A, No. 10 ("Defendant admits that the original trailer is not on the product page for *Yesterday* on the Amazon Prime Video website"); Ex. B., No. 15 ("Defendant admits that…it appears that at some point after this lawsuit was filed, Amazon Prime Video included on its website a trailer for the motion picture *Yesterday* that is not the same trailer

that Plaintiffs claim to have viewed on Amazon Prime Video before allegedly paying to view the movie.").

Further, Plaintiffs' investigation from Amazon into the specifics regarding the Trailer's removal uncovered that, "***under the arrangement between Amazon and Universal, Universal uploads the film, trailers, and artwork through an Aspera account that was set up for this purpose."*** Email from Amazon Counsel, Ex. C, at 1.

As a result, this chronology of events gives rise to the inferences that the two events are causally related. *See MacDonald v. Ford Motor Co.,* 142 F. Supp. 3d 884, 890 (N.D. Cal. 2015) ("Because it can be difficult to prove causation when a plaintiff seeks to recover under this theory and action is taken by the defendant after plaintiff's lawsuit is filed, the chronology of events can give rise the inference that the two events are causally related.").

### 2.  This Lawsuit Had Merit

This lawsuit also had merit. A lawsuit has merit for purposes of Catalyst Theory if it "is not frivolous, unreasonable or groundless." *Graham,* 34 Cal. 4th at 575. Pursuant to this standard, this action had merit. If not, the entirety of the case would have been dismissed at the pleading stage.

The Court denied Defendant's motion to dismiss as to Plaintiffs' false advertising, unfair competition and unjust enrichment claims, holding that Plaintiffs "plausibly alleged that the trailer is false, commercial speech."  Motion to Dismiss Order (Dkt. No. 83), at 32.

In doing so, the Court found that Plaintiffs "plausibly allege[d] that 'a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled' that De Armas or the Segment would be in the movie." Order, at 11, quoting *Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 508 (2003).

The Court also found that Plaintiffs' allegation that Universal's representation that "De Armas and the Segment would be in the movie by featuring them in the trailer" is a factual representation that "could be viewed as 'a specific measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" Order, at 12, quoting *Vitt v. Apple Computer, Inc.,* 469 Fed.Appx. 605, 607 (9th Cir. 2012).

This lawsuit had merit.

### 3. Plaintiffs Satisfied the Pre-Litigation Demand Requirement

Plaintiffs "reasonably attempt[ed] to settle the matter short of litigation," as required by *Graham*. *Graham*, 34 Cal. 4th at 577. On February 9, 2022, Counsel for Plaintiffs sent a Civ. Code §1782 CLRA notice letter to Universal's general counsel offering to resolve Plaintiffs' claims prior to service of any complaints. See Dkt. No. 17-1. Indeed, Courts have found that a CLRA letter sent to a defendant after filing an initial complaint satisfies the pre-litigation demand requirement. *See Trew v. Volvo Cars of N.A.*, LLC, No. S-05-1379 RRB EFB, 2007 WL 2239210, at *4 (E.D. Cal. July 31, 2007) (awarding catalyst attorneys' fees and finding that a CLRA notice letter under Civ. Code §1782 satisfied the pre-litigation demand requirement). In addition to Defendant's denial of any control over the trailer, (not to mention whether they actually removed the trailer), Defendant's ignorance of Plaintiffs' CLRA notice letter confirms that Plaintiffs' attempts to resolve this matter were futile. *See Cates v. Chiang*, 213 Cal. App. 4th 791, 817 (2013) ("[T]his requirement may be waived when attempts to settle the matter would have been futile."); *see also MacDonald*, 142 F. Supp. 3d at 895, *citing Cates,* 213 Cal. App. 4th at 816 (the pre-litigation demand requirement was "judicially-created…to promote the purposes of section 1021.5 and…should not be applied to bar an attorney fees recovery where to do so would defeat the core purpose of the statute."); *see Evans v. DSW, Inc*. 216CV03791JGBSPX, 2018 WL 6920674, at *10–11 (C.D. Cal. Aug. 17, 2018) (finding that pre-litigation demand would have been futile where defendant vigorously defended against the lawsuit).

Plaintiffs' CLRA notice letter satisfies the pre-litigation demand requirements set forth in *Graham*, and regardless, the demand was futile.

### C. Plaintiffs Meet the Requirements for Catalyst Fees

Pursuant to Section 1021.5, "the court may award fees to a 'successful party' in any action that has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private

enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." *Smucker*, 2013 WL 3146774, at *3, *citing Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d 1160, 1169 (C.D.Cal.2010) (quoting Section 1021.5)).

First, Plaintiffs' lawsuit resulted in the enforcement of an important right affecting the public. As a result, Plaintiffs' lawsuit has conferred a significant benefit on the general public "by causing [Universal] to change its…advertising practices." See Colgan, 135 Cal. App. 4th at 703. "[I]n determining the 'importance' of the particular 'vindicated' right, courts should generally realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals." *Woodland Hills*, 23 Cal. 3d at 936. The "enforcement of the California consumer protection laws" qualifies as "an important right affecting the public interest." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 703 (2006) (*citing Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 503 (2003) (evaluating whether an advertisement is deceptive under UCL "has important public policy implications for California consumers and businesses")); *see also Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1418 (1991) (consumer protection actions "have long been judicially recognized to be vital to the public interest" (*citing Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971) ("Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society."))); *StreamCast Networks, Inc. v. IBIS LLC*, No. CV05-04239MMM(EX), 2006 WL 5720345, at *1 (C.D. Cal. May 2, 2006) (noting "the public interest in punishing intentional misrepresentations and in deterring such misrepresentations in the future." (quoting *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 646 (1996))).

Second, the necessity and financial burden of private enforcement makes a fee award appropriate in this case. Individual actions are not feasible. "The purpose of the 'private attorney general' doctrine is to encourage suits of societal importance which private parties would not otherwise have an incentive to pursue." Unocal Corp. v. United States, 222 F.3d 528, 544 (9th Cir. 2000) (citation omitted). "An award is appropriate under this section where the burden of pursuing litigation is out of proportion to the individual plaintiff's

stake in the matter." Parkinson, 796 F. Supp. 2d at 1170 (citing Ryan v. Cal. Interscholastic Fed'n, 94 Cal. App. 4th 1033, 1044 (2001)).

"The key question is 'whether the financial burden placed on the party [claiming fees] is out of proportion to its personal stake in the lawsuit.'" *Heston v. Taser Int'l., Inc*., 431 Fed. Appx. 586, 589 (9th Cir. 2011) (*quoting Lyons*, 136 Cal. App. 4th at 1351); *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1114 (C.D. Cal. 2012) (element met where "the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff out of proportion to his individual stake in the matter" (*quoting In re Conservatorship of Whitley*, 50 Cal. 4th 1206, 1215 (2010))). In short, the necessity and financial burden requirement "seeks economic equalization of representation in cases where private enforcement is necessary." *Whitley*, 50 Cal. 4th at 1214. "This requirement asks the court to examine: (1) the 'adequacy of public enforcement' (necessity prong); and (2) the financial disincentives and incentives of private action (financial burden prong)." *Charlebois*, 993 F. Supp. 2d, at 1114 (quoting Whitley, 50 Cal. 4th at 1215).

This matter satisfies the requirements, as it involves claims that Defendant falsely advertised the movie *Yesterday*. Plaintiffs each spent $3.99 to purchase the movie (see Dkt. No. 130, at ¶8, 11) illustrating the case's low value compared to the cost of its prosecution. Thus, the suit easily satisfies the "financial burden" prong. In addition, no government agency has sought to enforce California's false advertising laws against Defendant. With inadequate public enforcement, the "necessity" prong is thus satisfied. *See, e.g., Keith v. Volpe*, 858 F.2d 467, 486 (9th Cir. 1988) ("necessity" prong satisfied because "no governmental agency was willing to protect [plaintiff's] rights" and thus "to vindicate his rights, [plaintiff] had to bring the suit personally").

Third, no attorneys' fees can be paid out of the recovery in this case because there has been no monetary recovery.

## IV.   CONCLUSION

For all of the above reasons, Plaintiffs request that the Court grant their discovery motion in its entirety.

1

2  Respectfully submitted,

3  **LEJEUNE LAW, P.C.**

4  Dated: October 19, 2023          By:   */s/* Cody R. LeJeune

5  Cody R. LeJeune
   445 S. Figueroa St.

6  Suite 3100
   Los Angeles, California 90071

7  Telephone: (985) 713-4964

8

9

10  Attorneys for Plaintiffs
    CONOR WOULFE, an individual, and

11  PETER MICHAEL ROSZA, an individual

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28