1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3              **WESTERN DIVISION**

4                  -oOo-

5    **HONORABLE STEPHEN V. WILSON, UNITED STATES DISTRICT JUDGE**

6

7

8    CONOR WOULFE and PETER MICHAEL
     ROSZA,
9
                    Plaintiffs,
10
         vs.                        Case No. 2:22-cv-00459-SVW
11
     UNIVERSAL CITY STUDIOS LLC,
12   d.b.a., UNIVERSAL PICTURES,

13                  Defendant.

14

15

16          **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

17              **LOS ANGELES, CALIFORNIA**

18                **OCTOBER 23, 2023**

19   _____

20

21              SUZANNE M. McKENNON, CRR, RMR
                UNITED STATES COURT REPORTER
22
                UNITED STATES COURTHOUSE
23              350 W 1st STREET, ROOM 3411
                LOS ANGELES, CALIFORNIA 90012
24                  (213) 894-3913
                 suzanne@ears2hands.com
25

1    APPEARANCES:

2

3    On Behalf of the Plaintiff:

4         CODY R. LEJEUNE, Attorney at Law
               LeJeune Law, PC
5               445 South Figueroa Street, Suite 3100
               Los Angeles, California 90071

6

7

8

9    On Behalf of the Defendants:

10        KELLY M. KLAUS, Attorney at Law
          VIRGINIA GRACE DAVIS, Attorney at Law
11             Munger Tolles and Olson LLP
               560 Mission Street, 27th Floor
12             San Francisco, CA 94105

13

14

15

16

17

18

19

20

21

22

23

24

25

1     (Proceedings commenced on October 23, 2023, at 1:46 p.m.)

2          THE COURTROOM DEPUTY:  Calling Item 2, CV 22-459-SVW,

3   Conor Woulfe, et al., versus Universal City Studios, LLC,

4   et al.

5       Counsel, please state your appearances.

6          MR. LEJEUNE:  Good afternoon, Your Honor.  Cody

7   LeJeune for plaintiffs.

8          MR. KLAUS:  Good afternoon, Your Honor.  Kelly Klaus,

9   and I'm joined my colleague, Grace Davis Fisher, for the

10  defendant.

11         THE COURT:  Okay.  This is a further status

12  conference, because I understand there were some discovery

13  dispute that still hasn't been resolved by the Magistrate; is

14  that correct?  Or has it been resolved?

15         MR. LEJEUNE:  That's correct, Your Honor.

16         THE COURT:  How long has that dispute been ongoing?

17         MR. LEJEUNE:  We just filed a Motion to Compel on

18  Thursday.

19         THE COURT:  But the issue -- I mean, I already issued

20  an order saying that didn't the -- or didn't I issue an order

21  about the attorney fees?

22         MR. KLAUS:  Your Honor, you did issue an order saying

23  Universal was a prevailing party.

24         THE COURT:  I can't hear you.

25         MR. KLAUS:  Sorry.  You issued an order that said

 1     Universal was the prevailing party.

 2              THE COURT:  Yes, that's what I remember.  And so the

 3     dispute that is the subject of the Motion to compel is whether

 4     the plaintiff was the driving force behind Warner's or someone

 5     taking down the trailer.  Is that it?

 6              MR. LEJEUNE:  Yes, Your Honor.  So the Motion to

 7     Compel is -- it deals with the larger motion, which is under

 8     California Code of Civil Procedure 1021.5.

 9              THE COURT:  What is that about?

10              MR. LEJEUNE:  It's known as the motivating catalyst

11     theory for attorney's fees.  It basically says if a plaintiff's

12     lawsuit is the catalyst behind the ultimate -- its ultimate

13     objective or a goal of the lawsuit, then it can be considered a

14     prevailing party and get attorney's fees for the lawsuit.

15              THE COURT:  Let me just see if I understand this

16     properly.  The prevailing party issue that you're concerned

17     with is prevailing party on the lawsuit as a whole, not the

18     Anti-SLAPP motion; correct?

19              MR. LEJEUNE:  Well, Your Honor, it's actually the

20     prevailing party, as it relates to this specific statute.

21              THE COURT:  Well, I already ruled on the Anti-SLAPP

22     motion.

23              MR. LEJEUNE:  No.  I understand that, Your Honor.

24     This is separate and apart from the Anti-SLAPP.

25              THE COURT:  That's what I asked.

```
 1            MR. LEJEUNE:  Yes, Your Honor.
 2            THE COURT:  In other words, you're basically saying
 3   that you are the prevailing party in the lawsuit
 4   notwithstanding any ruling on who was the prevailing party on
 5   the Anti-SLAPP motion, because you compelled the trailer to be
 6   taken down, which entitles you to that conclusion.
 7            MR. LEJEUNE:  More or less, Your Honor.  That's is
 8   correct.
 9            THE COURT:  All right.
10            MR. LEJEUNE:  And there's a line of cases that, you
11   know, even though a Motion to Dismiss is granted --
12            THE COURT:  Let me ask --
13            MR. LEJEUNE:  -- it's a different standard than --
14            THE COURT:  Let me ask you this.  We're at the point
15   now where the fraud claims remain.  That was what I allowed,
16   the Commonwealth fraud claim.
17        Do you intend to file a class motion?
18            MR. LEJEUNE:  So, Your Honor, we've -- we've already
19   briefed class certification.
20            THE COURT:  I see.  So I haven't addressed that yet.
21            MR. LEJEUNE:  You have, Your Honor.  You denied that
22   class certification.
23            THE COURT:  I did, but I -- maybe I was asking
24   whether that is the end of it?
25            MR. LEJEUNE:  I'm not sure what you mean by that,
```

1   Your Honor.

2           THE COURT:  I mean, you made a motion for preliminary

3   class certification?

4           MR. LEJEUNE:  Correct, Your Honor.

5           THE COURT:  And this case has so many tentacles, I

6   sometimes lose track.  So in other words, you have not

7   prevailed, as the record stands, now on the class motion.  You

8   had some success on the Anti-SLAPP motion, but I found that the

9   defendant was the prevailing party on that issue.

10       So at this point, your position seems to be that, if you

11  were the driving force behind Warner's -- I think it was

12  Warner's or Universal.

13          MR. KLAUS:  Universal, Your Honor.

14          THE COURT:  Universal taking down the trailer, that

15  would be a sufficient catalyst to -- under that code section to

16  find you to be the prevailing party?

17          MR. LEJEUNE:  Pursuant to that particular section,

18  Your Honor, that's correct.

19          THE COURT:  Is that where we are now, Mr. Klaus?

20          MR. KLAUS:  After the cases before us, I hesitate to

21  say, Your Honor, that there's another side to the story, but

22  there is another side to the story.

23          THE COURT:  No.  But first, is that where we are now?

24          MR. KLAUS:  We are.

25          THE COURT:  And I've issued so many orders over a

1  substantial number of months, so it appears that the last piece
2  of litigation concerns whether the plaintiff was the catalyst,
3  if that is sufficiently important to justify the fees, as
4  prevailing party.  Is that it?
5           MR. KLAUS:  That is one motion that is currently
6  pending.  We still have, with respect to our motion, the Court
7  asked us to provide affidavits.
8           THE COURT:  I have that, and I have already prepared
9  a draft order on that, so I will issue that shortly.
10      But aside from that, is this the one loose thread?
11          MR. KLAUS:  With respect to -- there is also a second
12  motion for attorney's fees, because Mr. LeJeune filed a
13  lawsuit -- filed yet another Amended Complaint that was struck
14  in its entirety by the Court.  And so we filed another fee
15  motion on that as the prevailing party.  So that issue is
16  there.
17          THE COURT:  And so is that part of your fee motion?
18          MR. KLAUS:  We have two separate fee motions, Your
19  Honor.  There was the one for the original --
20          THE COURT:  For the Anti-SLAPP motion.  This is not
21  related to the Anti-SLAPP motion?
22          MR. KLAUS:  The catalyst -- so there --
23          THE COURT:  You're very confusing here.  I'm asking
24  you simple questions, I think.
25      The issue of attorney's fees on the Anti-SLAPP motion,

I've told you that I found defendant to be the prevailing party.  The parties -- defendant has submitted the backup, I have considered it, and I will issue an order.

You're saying that there is another fee motion which doesn't relate to the Anti-SLAPP issue but relates to the Second Amended Complaint.

MR. KLAUS:  Let me try to be -- I apologize for being unclear, Your Honor.

The second pending fee motion relates to the Anti-SLAPP motion as to what was the Third Amended Complaint.  So it is -- there have been two Anti-SLAPP motions in the case, both of which were granted, one of which was granted in part.  That's the one that we've been talking about.

Then there was the Motion to Strike -- the Anti-SLAPP motion to Strike the Third Amended Complaint, which was granted in its entirety.  And we have a motion for fees on that.

THE COURT:  And has that been -- that I haven't addressed.

MR. KLAUS:  It's fully briefed, Your Honor.  The document number on that is 163, and that motion is fully briefed.

THE COURT:  All right.  Then I'll consider that.  I haven't prepared a draft order.  I have to look at that.

MR. KLAUS:  Okay.

THE COURT:  What about this discovery dispute?  What

1   is it about?

2         MR. KLAUS:  The discovery dispute is that the

3   plaintiff has said that it thinks it's entitled to fees as a

4   catalyst, because it believes that the trailer that prompted

5   the filing of the lawsuit is not the trailer that is currently

6   running on Amazon.

7         And the plaintiff believes that -- it's taken the position

8   that, if it can show that the lawsuit is the reason that we,

9   Universal --

10        THE COURT:  I see.

11        MR. KLAUS:  -- removed the trailer.  Yeah, now,

12  there's two important points on the catalyst theory, Your

13  Honor.

14        THE COURT:  Forget the -- oh, I guess I should know

15  about that.  But fast-forward to the discovery dispute, and

16  then we can back up.

17        What is it that plaintiff has demanded that is being

18  resisted?

19        MR. KLAUS:  The plaintiff has -- the plaintiff served

20  a -- the plaintiff is demanding interrogatory responses and

21  document requests regarding Universal's dealings with Amazon

22  and a whole host of third-party platforms, who are out of the

23  case, regarding the trailer.

24        The plaintiff is asking for discovery regarding the

25  production of the trailer, to begin with.  The argument that

```
 1    plaintiff has made to the Magistrate --
 2              THE COURT:  Let me just understand that.  The
 3    plaintiff, in an effort to prove that defendant instructed --
 4              MR. KLAUS:  Amazon.
 5              THE COURT:  -- Amazon to take down the trailer, is
 6    seeking discovery about how the defendant dealt with other
 7    platforms on other issues?
 8              MR. KLAUS:  Yes
 9              THE COURT:  Okay.
10              MR. KLAUS:  And --
11              THE COURT:  The answer's "Yes."  Okay.
12              MR. KLAUS:  May I say one other thing --
13              THE COURT:  Yes.
14              MR. KLAUS:  -- Your Honor?  Which is the plaintiff
15    served written discovery on us, and we told them we did not
16    take the trailer down.  They are using the catalyst --
17              THE COURT:  When you say, "us," meaning Universal?
18              MR. KLAUS:  Universal did not -- Universal didn't
19    remove it.  They served it.
20         The Magistrate Judge, when we had a preliminary hearing on
21    this, said to us -- said to Mr. LeJeune, they've answered the
22    question.  You don't like the answer to the question, but they
23    have given you the answer to the question.
24         She also said that the plaintiff should go back and review
25    Your Honor's orders in the case, precisely on this point about
```

```
 1   all of the other platforms besides Amazon, before filing a
 2   Motion to Compel.  Mr. LeJeune, nevertheless, filed a motion --
 3           THE COURT:  I remember one of my earlier orders I had
 4   a footnote to that effect.
 5           MR. KLAUS:  You had a footnote to that effect, Your
 6   Honor, and you then issued a follow-up order when the
 7   plaintiffs asked you for clarification as to whether they
 8   could -- whether they could state a claim based on platforms
 9   other than Amazon.
10           THE COURT:  Let's try to just keep this as simple as
11   we can.
12       Now, so that is the issue that the Magistrate Judge is
13   having to issue an order on?
14           MR. KLAUS:  That is what the Magistrate Judge said to
15   Mr. LeJeune, yes, that is the issue.
16           THE COURT:  That is the issue.  Okay.
17           MR. KLAUS:  Yes, that is the issue.
18           THE COURT:  And so how long has that been pending
19   with the Magistrate Judge?
20           MR. KLAUS:  The motion -- we had a hearing with Judge
21   Rosenberg two weeks ago.
22           THE COURT:  I see.
23           MR. KLAUS:  She tried to resolve this informally.
24           THE COURT:  I understand.
25           MR. KLAUS:  And she then said -- she urged
```

1    Mr. LeJeune to --

2              THE COURT:  Well, just --

3              MR. KLAUS:  -- continue meeting and conferring with

4    us.

5              THE COURT:  Do you have a hearing?

6              MR. LEJEUNE:  The hearing is November 9th.

7              THE COURT:  The answer was "two weeks."  Okay.

8         Now, I'm peeling back.  And what is your position

9    regarding the code section, because the relevance of discovery

10   all depends upon whether it's likely to produce evidence which

11   will shape an issue that could be dispositive.  So let me start

12   with this premise, which you won't agree with but just as a

13   premise.  It's not my conclusion.

14        Let's assume that the evidence turned out that Universal

15   absolutely instructed Amazon to take down the trailer.  I

16   understand that is not your position.

17        In your view, how would that affect this code section?

18             MR. KLAUS:  It would affect it not at all, Your

19   Honor, because there is under -- the California Supreme Court

20   has authority directly on point that says a plaintiff cannot

21   file a motion on a catalyst theory unless, before filing the

22   lawsuit, they attempted to resolve it.

23        And that was not done before the filing of this lawsuit.

24   So the entire catalyst theory fails --

25             THE COURT:  Attempt to resolve what?

1          MR. KLAUS:  The plaintiff seeking attorney's fees

2    under a catalyst theory must reasonably attempt to settle the

3    matter short of litigation.

4          THE COURT:  Meaning settle the issue of whether or

5    not you were a catalyst?

6          MR. KLAUS:  Yes.

7          THE COURT:  Universal.  What does it mean?

8          MR. KLAUS:  It means to try to settle the dispute.

9    The Plaintiff is claiming --

10          THE COURT:  What dispute?

11          MR. KLAUS:  The underlying lawsuit.

12          THE COURT:  The dispute as to whether or not

13    Universal was a catalyst?

14          MR. KLAUS:  No, Your Honor.  The dispute as to

15    whether or not the trailer was misleading and should have come

16    down from Amazon.

17          THE COURT:  Is that -- I don't know the case that

18    you're referring to.

19      What is the name of the case?

20          MR. KLAUS:  The name of the case, Your Honor, is

21    Graham against DaimlerChrysler Corp.

22          THE COURT:  What is the cite?

23          MR. KLAUS:  The cite is 34 Cal.4th 553, 577, 2004

24    decision.

25          THE COURT:  And does that case say that the -- you

1    know, you're awfully antsy, Mr. LeJeune.

2        Have you ever been denied an opportunity to speak here?

3           MR. LEJEUNE:  No, Your Honor.

4           THE COURT:  You'll get the opportunity.  Relax.

5           MR. LEJEUNE:  I'll sit down.

6           THE COURT:  You may suffer from an old Roman illness.

7    Did you ever hear of the illness called "shpilkes"?

8           MR. LEJEUNE:  No, Your Honor.

9           THE COURT:  You ought to look it up in the

10    dictionary.  You may suffer from it.

11        But go ahead.

12           MR. KLAUS:  Your Honor, it says that "A plaintiff

13    seeking the attorney's fees under the catalyst theory must,

14    first, reasonably attempt to settle the matter short of

15    litigation."

16           THE COURT:  Well, that's my question.  When first, I

17    mean, at the outset of the litigation?  At some point in the

18    litigation?  What unless -- what teaching does the case give us

19    in terms of when?

20           MR. KLAUS:  Before filing the lawsuit, Your Honor.

21           THE COURT:  Before filing the lawsuit.

22           MR. KLAUS:  Before filing the lawsuit.  That's what

23    the California Supreme Court says is that the -- is that,

24    before filing the lawsuit, you have to take a run at trying to

25    settle it.

```
 1              THE COURT:  This whole catalyst theory may have been
 2    somewhat lost on me, because my concern in the first go-around
 3    was with Anti-SLAPP and actually the fraud claim itself, which
 4    was not easily resolved.  Although, I did resolve it in favor
 5    of the plaintiff.
 6         And so in the complaint itself, is there an allegation of
 7    catalyst?
 8              MR. KLAUS:  There is not, Your Honor.
 9              THE COURT:  Well, isn't that significant or not?
10              MR. KLAUS:  I think that -- I believe that -- I don't
11    know whether --
12              THE COURT:  Well, I mean, maybe it isn't, because the
13    fraud claim has not been resolved.  And so the catalyst theory
14    would only be a theory if the plaintiff was a catalyst in
15    helping take down something that was fraudulent.  In other
16    words, at this point, I only ruled on the pleading or summary
17    judgment; I forgot which.  But anyway, I felt it was triable.
18         And so how can there even be consideration of a catalyst
19    theory without a determination about fraud?
20              MR. KLAUS:  We believe that is the case, Your Honor,
21    and the decision that you've made today --
22              THE COURT:  What did you say?  What?  Take the
23    lectern.
24              MR. KLAUS:  Your Honor, may I go here?
25              THE COURT:  Go ahead.  I don't know why you didn't.
```

1   I mean, you're bending over.

2         MR. KLAUS:  Okay.  I'm not normally -- am I

3   projecting loud enough, Your Honor?

4         THE COURT:  Yes, yes, yes.

5         MR. KLAUS:  The decision that you made was on the

6   context of a pleading motion.  And I think Your Honor's order

7   was very careful to say that it was a close question whether

8   they made it past the pleading.

9         THE COURT:  Well, regardless, that's what I did.

10         MR. KLAUS:  Yes.

11         THE COURT:  And at this point, at least as I think

12   about it now, the fraud claim is alive, and unless something

13   happens, it's there.

14      So what I'm trying to get at is:  Is the plaintiff's

15   motion ahead of itself?  Because how can there be a catalyst

16   without a determination that the trailer was fraudulent to

17   begin with?

18         MR. KLAUS:  We agree completely, Your Honor.  It's a

19   premature motion.  First of all, we don't think it can prevail,

20   and we think it's premature, in any event.  And we also think

21   that the discovery that is being requested before the

22   Magistrate Judge is completely disproportionate --

23         THE COURT:  Leave that alone.

24         MR. KLAUS:  Yeah.

25         THE COURT:  Let me ask -- now, it's your turn, Mr. --

```
1              MR. LEJEUNE:  LeJeune.
2              THE COURT:  -- Mr. LeJeune.
3         With regard to the fraud claim, what is your intent?  Do
4    you plan to the try that case?  You have a right to a jury
5    trial on the common law fraud claim.
6              MR. LEJEUNE:  Yes, Your Honor.  We're still
7    considering that at the moment.  We haven't reached a decision.
8    I think we -- yeah, we'd like the Court to decide the --
9              THE COURT:  How would there be jurisdiction over the
10   claim, because the claim, aside from the potential of a class
11   action, was brought by one person who claimed that that person
12   streamed this movie, which I've forgotten the name of, and the
13   trailer was in the -- oh, no.
14        That the plaintiff saw the trailer and, as a result of
15   seeing the trailer, observed that an actress that the plaintiff
16   thought much of was going to be in the movie.  And then on that
17   basis, streamed the movie, which I forgot what it was, $5 or
18   $8.  And in the movie, that actress was not in the movie.
19        So I mean, the loss is $8, unless you argue to a jury that
20   the plaintiff was so distraught and bedridden with that
21   disappointment that it was over 75,000.
22        Would you argue that?
23             MR. LEJEUNE:  I don't think so, Your Honor.
24             THE COURT:  I'm glad you said you don't think so
25   because I wouldn't hear it.  I mean, even in this world of the
```

1  jury tells everything, and it's absurd.  You know, there's

2  sensitivity, but it has its limits, you know?

3      So right now, how do I even have jurisdiction over this

4  case, aside from attorney's fees?

5              MR. LEJEUNE:  Yeah --

6              THE COURT:  I mean, how do I even have jurisdiction

7  over this thing?  It's about $8, a class action is no longer,

8  and I have these two attorney fee things I can issue.  I guess

9  I should consider it because judicial efficiency would require

10  me to view it as some supplemental jurisdiction, right, at this

11  point?  That's probably right?

12              MR. LEJEUNE:  Yes, Your Honor.  I think that's right.

13  I think at the very least with, you know, plaintiff's fee

14  motion is forthcoming.  And so, yeah, I think the Court has

15  jurisdiction.

16              THE COURT:  Let me tell you this.  Would you -- I'll

17  send an e-mail to Judge Rosenberg.  She is a very accomplished

18  Magistrate Judge, very experienced, and I know she is very

19  efficient, but she is probably overwhelmed.  And I'll ask her

20  if she can, within her schedule, resolve this in a week, and

21  then we'll see where we are.

22      Although, let me ask you this, Mr. LeJeune:  You have

23  taken a 32(b) deposition of somebody?

24              MR. LEJEUNE:  So that --

25              THE COURT:  Have you deposed anybody at Universal

1    about who at Universal dealt with Amazon?

2           MR. LEJEUNE:  So that's part of this discovery

3    motion, Your Honor.  It's all we're seeking.  There's 31 topics

4    in this deposition notice, but they all deal with how Universal

5    handled this trailer.  That's everything that we're seeking.

6           THE COURT:  Let me turn, now -- you can answer from

7    the seat, just speak into the microphone Mr. Klaus.

8     Was there some person or persons who deals with Amazon or

9    someone who would be in a position to testify as to how, if at

10    all, Universal deals with Amazon regarding streaming?

11           MR. KLAUS:  There are, yes, of course.

12           THE COURT:  Is there -- is it -- is there someone who

13    specifically dealt with this movie?

14           MR. KLAUS:  There is no one who specifically dealt

15    with this movie.  But there are persons who know how the

16    procedure works and who have access to the records.

17           THE COURT:  Well, let me ask you this:  In terms of

18    instructing and a site like Amazon to take down a trailer or do

19    something for Universal in the film area, is there some person

20    who deals with that?

21           MR. KLAUS:  There is not a particular person.  There

22    was no instruction given, Your Honor, to the -- let me make two

23    things clear.  To the extent there were the need to find a

24    deponent, we could find a deponent who would be educated on the

25    subject.

```
1              THE COURT:  Who would that be?

2              MR. KLAUS:  I don't know the person's --

3              THE COURT:  But I mean, is there any written

4    correspondence between Universal and Amazon regarding this

5    trailer?

6              MR. KLAUS:  No.  Those documents were requested, we

7    looked for them, and we found none, and we told the plaintiffs

8    that.

9              THE COURT:  Aside from someone at Universal telling

10   Amazon to take down the trailer, what other basis for a

11   catalyst theory would you have?

12             MR. LEJEUNE:  Well, we don't know yet, Your Honor.

13   Universal has admitted that the trailer that the plaintiffs

14   watched and relied upon, as a basis for this lawsuit --

15   Universal has admitted that that trailer is no longer on

16   Amazon.  But what they've done, and I -- it may be that they're

17   being evasive with their answers, but they've denied that they

18   took it down.

19        And so we've -- subsequently, we've also issued a subpoena

20   to Amazon.  And we've talked to Amazon, who said that

21   there's -- via e-mail and over the phone.  And Amazon has told

22   us specifically as it relates to this trailer, as it relates to

23   "Yesterday," that Universal and Amazon have an agreement that

24   allows Universal to -- they have access to load films and

25   trailers, and they have access to take them down.  They have
```

1   what's called an Aspera account, A-S-P-E-R-A.  That's what

2   Amazon has represented to us.

3           THE COURT:  But if Amazon represented that to you,

4   that could be understood to mean that Universal has a means of

5   putting on and taking off the trailer.

6       But your theory is that Universal instructed Amazon to

7   take it off?

8           MR. LEJEUNE:  That's not our theory.  We know what

9   Universal did.  We don't know if they instructed Amazon.  We

10  don't know if there is another third party that they hired that

11  they instructed this third party to then take the trailer down.

12  We don't know because they haven't provided any discovery.  So

13  if there's discovery --

14          THE COURT:  They have told you that there is no

15  document in their record.

16          MR. LEJEUNE:  They haven't said that, Your Honor.

17          THE COURT:  They just said it now.  He's just said it

18  now.  And Mr. Klaus just said they have no written

19  correspondence or e-mail of any kind where Universal is

20  instructing Amazon to take down the trailer.

21          MR. LEJEUNE:  Well, then maybe there was a phone

22  call, but we just -- at this point Amazon has told us that

23  Universal has that access.  That Amazon didn't do it.  They

24  said it was Universal.

25          THE COURT:  Well, I'm going to --

1          MR. LEJEUNE:  And so all we want to know is what

2    happened?  Because if Universal is saying, "We didn't put the

3    trailer up on Amazon.  We didn't take it down," then how is it

4    their speech that's being infringed upon as a part of the

5    Anti-SLAPP motion?

6          THE COURT:  Let me ask you.

7          MR. LEJEUNE:  We just -- we want to get to the bottom

8    of it.

9          THE COURT:  In terms of the trailer at Amazon, did

10   Universal have any role in putting it on Amazon, forgetting

11   taking it down?

12         MR. KLAUS:  So Universal, as part of its regular

13   process, sent a trailer, more than one trailer, I believe,

14   uploaded it to their Amazon account at some point in time,

15   before this lawsuit was filed.

16         THE COURT:  So let me understand this.  Is it correct

17   that Universal has an account with Amazon that it controls, and

18   it can put material on that account and take it off that

19   account without Amazon's approval?

20         MR. KLAUS:  It is correct that there is an Aspera

21   account that can be uploaded by Universal.  I don't think it is

22   entirely without Amazon's role that, if something is uploaded

23   or replaced, they have some involvement.

24      May I correct, Your Honor, one important point that

25   Mr. LeJeune just made in his representations to you?

1       He said that Amazon told the plaintiffs that Universal did

2   it.  That with respect to this movie, they were the only ones

3   who could have done it.  I can hand you up the e-mail.  That's

4   not what they said.

5            THE COURT:  I can't follow what you're saying,

6   Mr. Klaus.  You say did it.  Did what?

7            MR. KLAUS:  He said that Amazon told the plaintiffs

8   that Universal replaced the trailer.  Amazon told the

9   plaintiffs no such thing.

10            MR. LEJEUNE:  They did on the phone, Your Honor.

11   There was a phone call and an e-mail that Counsel for

12   plaintiffs had with Counsel for Amazon.

13            MR. KLAUS:  Your Honor, we have the e-mail

14   correspondence.  I'm going to hand it up to Your Honor, if you

15   would like to see it.  It was a declaration that was filed.

16            THE COURT:  Same correspondence you have?  Have you

17   seen this?

18            MR. LEJEUNE:  I've seen it, Your Honor.  What I'm

19   telling you is there was a subsequent phone call as well.  And

20   that's when the specific --

21            THE COURT:  Who was on the phone call?  You?

22            MR. LEJEUNE:  Your Honor, Counsel for plaintiffs was

23   on the phone.

24            MR. KLAUS:  Your Honor, they have been making this

25   argument for months.

```
1              THE COURT:  What argument?

2              MR. KLAUS:  This argument that Universal must have

3    taken the trailer down.  They have never put in a declaration,

4    any sworn testimony from any lawyer for the plaintiffs, saying

5    that Counsel for Amazon told them that Universal removed this

6    trailer.  They've never put that under oath.

7              MR. LEJEUNE:  Happy to submit a declaration, Your

8    Honor.

9              THE COURT:  You mean there were two sources of this

10   dispute:  One is Amazon, what they were told or not, and

11   Universal, what they said or didn't say.

12       Let me go back to something I didn't ask you about this

13   Graham case.  How do you read the Graham case?

14             MR. LEJEUNE:  Yes, Your Honor.  Thank you.

15       So there is subsequent federal cases that address this

16   specific issue of --

17             THE COURT:  I don't know those cases.

18             MR. LEJEUNE:  -- a pre-litigation demand letter.

19       So it's MacDonald v. Ford.  It's 142 F.Supp 3d 884.  It's

20   a 2015 case.  And the case says that definitely analyzed the

21   Court's decision as well as subsequent authority and concluded

22   that, because the specific rule, as it relates to a

23   pre-litigation demand letter, was judicially created to promote

24   the purposes of section of 1021.5 and deter attorneys from

25   filing meritless suits to obtain attorney's fees.  It should
```

1  not be applied to bar an attorney fees recovery where to do so

2  would defeat the core purpose of the statute.

3          THE COURT:  What was --

4          MR. LEJEUNE:  In addition, Your Honor, I --

5          THE COURT:  Hold on.  Stop for a minute.  Would you?

6      What statute?

7          MR. LEJEUNE:  The --

8          THE COURT:  The same statute you had just mentioned?

9          MR. LEJEUNE:  Correct, 1021.5.  Correct.

10      In addition, Your Honor, plaintiff sent a demand letter to

11  defendants --

12          THE COURT:  When?

13          MR. LEJEUNE:  Prior to serving defendants with the

14  complaint.  So before service of the complaint.  And there is

15  another case that --

16          THE COURT:  Hold on.

17          MR. LEJEUNE:  -- that says that that was sufficient.

18          THE COURT:  Can't you just stop for a minute?  You

19  keep on going.  Let me get a response on that.

20      Plaintiff is saying that he sent you a demand letter.

21  That seems pretty straightforward.

22      Did you get it or not?

23          MR. KLAUS:  After the lawsuit was filed.

24          THE COURT:  How long after the lawsuit was filed?

25          MR. KLAUS:  The lawsuit was filed on

1  January 21, 2022.  On February 9, 2022, the plaintiffs sent us

2  a CLRA, that's the California state statute letter.  That was

3  their first settlement attempt.

4          THE COURT:  But at that point nothing really happened

5  in the case.  It sounds like it was just a couple of weeks

6  after he filed the complaint.

7          MR. KLAUS:  It was three weeks after -- two and a

8  half weeks after he filed the complaint, they sent a demand

9  letter and -- but the case had already been filed.  And they

10 did that so they could add another claim to the case.  They

11 then filed an Amendment Complaint.

12         THE COURT:  I know, but they sent a demand letter.  I

13 don't know how literal the statute has to be.  It would seem --

14 well, is the Magistrate Judge considering all of these things,

15 as part of what she has before her on the discovery issue?

16         MR. KLAUS:  That will be part of our opposition,

17 which is due this Thursday, Your Honor.

18         THE COURT:  But let me get back to the point that I

19 made earlier.  How would the catalyst theory be viable without

20 a determination but that the trailer was fraudulent?

21         MR. LEJEUNE:  Well, because the trailer was taken

22 down.

23         THE COURT:  I know.

24         MR. LEJEUNE:  That's all.

25         THE COURT:  But catalyst means that something was

1  done that was beneficial, not just catalyst to do something.  I

2  mean, it has to be something that was beneficial.  And if the

3  trailer was not fraudulent and it was taken down -- I mean, let

4  me ask you in a most basic way.

5      Let's say Universal put up a trailer that was not in any

6  way a violation of any law, wasn't fraudulent, and you wrote

7  them a letter and said, "Take it down."

8      You wouldn't be a catalyst, would you?

9          MR. LEJEUNE:  No, Your Honor.

10         THE COURT:  But why is that any different here?

11     Right now there's absolutely no finding that the trailer

12 is a catalyst.  And you're asking the Magistrate and the Court

13 to assume that the trailer was fraudulent and that, by the

14 lawsuit compelling Universal to instruct Amazon to take it

15 down, it prevented other movie watchers from being misled into

16 streaming this movie.

17     And I don't know why we shouldn't be considering the

18 catalyst issue now?

19         MR. LEJEUNE:  Your Honor, in your first Motion to

20 Dismiss order, you held that plaintiffs alleged that the

21 trailer -- that the plaintiffs have alleged that the trailer

22 contained misleading representations.

23         THE COURT:  Misleading is different than fraudulent.

24 I mean --

25         MR. LEJEUNE:  It is, Your Honor.  So we have claims

```
 1    for false advertising and for unfair competition that remain in
 2    the case.
 3              THE COURT:  I see.
 4              MR. LEJEUNE:  So it doesn't have to rise to a
 5    fraudulent level.
 6              THE COURT:  I see.  I see.
 7              MR. LEJEUNE:  Yes, your Honor.
 8              THE COURT:  I see.  I forgot that.  Somebody claimed
 9    that you had nine or ten claims in the Complaint about
10    different statutes.  So I see.
11         So you're saying that, even if it wasn't fraudulent, the
12    statements could be actionable as misleading under the --
13              MR. LEJEUNE:  Under the statutes that survive Motion
14    to Dismiss, Your Honor.
15              THE COURT:  I see.  All right.  Well, then I'll ask
16    the Magistrate to address this as soon as she can.
17              MR. LEJEUNE:  There is a hearing on November 9, Your
18    Honor, as a result of the Motion to Compel.
19              THE COURT:  All right.  Not too far down.  I guess
20    having heard from everybody, I now wonder why I called the
21    status conference, but those things happen.  Okay.  Well, it's
22    over.
23              MR. LEJEUNE:  Thank you, Your Honor.
24              THE COURT:  Thank you.
25              MR. KLAUS:  Thank you, Your Honor.
```

1          (Adjourned at 2:31 p.m.)

2                                -oOo-

3

4                      REPORTER'S CERTIFICATE

5

6

7      I certify that the foregoing is a correct transcript of

8  proceedings in the above-entitled matter.

9

10  /s/ Suzanne M. McKennon, CSR, CRR, RMR
                                              Date:  11/03/2023
11  United States Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25