KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
STEPHANIE G. HERRERA (State Bar No. 313887)
stephanie.herrera@mto.com
VIRGINIA GRACE DAVIS (State Bar No. 336732)
grace.davisfisher@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:  (415) 512-4000
Facsimile:   (415) 512-4077

BETHANY W. KRISTOVICH (State Bar No. 241891)
bethany.kristovich@mto.com
BENJAMIN G. BAROKH (State Bar No. 318629)
benjamin.barokh@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Defendant
UNIVERSAL CITY STUDIOS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONOR WOULFE and PETER MICHAEL ROSZA,<br><br>             Plaintiffs,<br><br>      vs.<br><br>UNIVERSAL CITY STUDIOS LLC, d.b.a., UNIVERSAL PICTURES,<br><br>             Defendant. | Case No. 2:22-cv-00459-SVW-AGR<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 26(g)(3); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Filed Concurrently:  Declaration of Stephanie G. Herrera; [Proposed] Order<br><br>Date:   April 30, 2024<br>Time:  10:00 am<br>Judge:  Hon. Alicia G. Rosenberg |

## NOTICE OF MOTIONS AND MOTIONS

TO THE COURT, PLAINTIFFS, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 30 2024, at 10:00 am, or as soon thereafter as the matter may be heard in the Edward R. Roybal Federal Building and Courthouse, located at located at 255 East Temple Street, Los Angeles, California, 90012, Courtroom 550, 5th Floor, before the Honorable Alicia G. Rosenberg, Defendant Universal City Studios LLC ("Universal"[1]) will and hereby does move under Federal Rule of Civil Procedure 26(g)(3) for sanctions against Plaintiffs' counsel, Cody LeJeune, for certifying discovery requests that were unreasonable and interposed for improper purposes in violation of Federal Rule of Civil Procedure 26(g)(1) ("Motion").

Specifically, Mr. LeJeune certified (1) a Rule 30(b)(6) deposition notice seeking substantially the same information as a Rule 30(b)(6) notice as to which this Court had denied a motion to compel just a month earlier; and (2) a set of requests for production of documents that was facially inconsistent with rulings of this Court and the District Court (Judge Wilson). Mr. LeJeune forced Universal to meet and confer repeatedly on these improper requests and pressed them all the way to an unnecessary discovery conference at which this Court sustained Universal's objections and denied further discovery. Universal seeks reimbursement of $43,381.60 in fees incurred by its counsel Munger, Tolles & Olson LLP ("MTO") as a direct result of Mr. LeJeune's above-described conduct. Universal also reserves its right to seek attorney's fees incurred seeking these fees and will document such fees on reply if sought.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Stephanie G. Herrera and exhibits thereto ("Herrera Decl."), any reply papers, all

---

[1] Abbreviations used in this Notice of Motion are also used in the accompanying Memorandum of Points and Authorities.

1   other papers and records on file in this matter, and any other materials or argument

2   the Court may receive at or before the hearing on this Motion.

3        This Motion is made following the conference of counsel, pursuant to Civ.

4   L.R. 37-1, which took place on March 21, 2024.[2]  Herrera Decl. ¶ 2.

5

6   DATED: March 29, 2024           Respectfully submitted,

7                      MUNGER, TOLLES & OLSON LLP

8

9

10                  By:      */s/ Stephanie G. Herrera*

11                    STEPHANIE G. HERRERA
                      Attorneys for Defendant

12                    UNIVERSAL CITY STUDIOS LLC

13

14

15

16

17

18

19

20

21

22

23

24

---

25  [2] Universal does not understand this to be a "discovery motion" for purposes of the

26  Court's Procedures, but nevertheless satisfied the meet-and-confer requirements of
    Local Civil Rule 37-1 and the Court's Procedures.  In addition, the parties and the

27  Court discussed Universal's intent to seek discovery sanctions as to at least some of

28  Mr. LeJeune's conduct at the February 22 discovery conference.  Dkt. 195.

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 2

   A.  Plaintiffs' Allegations Regarding The Amazon Trailer ......................... 2

   B.  Universal Denies Involvement In Replacing The Amazon Trailer ........ 2

   C.  Plaintiffs Lose Key Motions—And Respond By Serving More Discovery Regarding Universal's Alleged Involvement In Replacing The Amazon Trailer ................................................................. 4

   D.  This Court Holds That Further Discovery Into Whether Universal Replaced The Amazon Trailer Is "Unreasonably Cumulative" ....................................................................................... 5

   E.  Mr. LeJeune Certifies *More* Discovery Regarding Universal's Alleged Involvement In The Replacement Of Amazon Trailer ........... 6

   F.  Plaintiffs Serve Even More Facially Irrelevant Discovery .................... 7

   G.  Amazon And Deluxe Media Confirm That Plaintiffs' Trailer-Replacement Discovery Is Baseless ..................................................... 8

   H.  Mr. LeJeune's Former Co-Counsel Threatens Universal ..................... 9

   I.  Plaintiffs Demand Another Discovery Conference, And The Court Again Denies Their Discovery Demands .................................. 10

III.  ARGUMENT .................................................................................................. 11

   A.  Universal Is Entitled To Reasonable Attorney's Fees Incurred As a Result Of Mr. LeJeune's Violations Of Rule 26(g)(1) ..................... 11

      1.  The Second 30(b)(6) Notice Flouted The Court's November 20 Order .................................................................... 12

      2.  The December RFPs Were Indefensibly Overbroad ................. 13

      3.  The Court Should Sanction Mr. LeJeune For Propounding Discovery For The Improper Purpose Of Driving Up Universal's Litigation Costs ................................................... 14

   B.  Universal's Requested Fees Are Reasonable ....................................... 15

      1.  Summary of Fees and Costs Requested .................................... 15

      2.  The Number of Hours Claimed Is Reasonable ......................... 17

      3.  The Requested Hourly Rates Are Reasonable .......................... 18

IV.  CONCLUSION ............................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Aevoe Corp. v. AE Tech. Co.*,
No. 2:12-CV-00053-GMN-NJK, 2013 WL 5324787 (D. Nev. Sept. 20, 2013) ................................................................................ 15

*Crestmont Cap., LLC v. P.A.R. Consulting, LLC*,
No. SACV 19-1349 JVS(ADSx), 2020 WL 6528418 (C.D. Cal. Sept. 17, 2020) ................................................................................ 16

*Deuss v. Siso*,
No. 14-CV-00710-YGR(JSC), 2014 WL 4275715 (N.D. Cal. Aug. 29, 2014) ........................................................ 11, 13, 14

*District of Columbia v. Carter*,
409 U.S. 418 (1973) ................................................................................ 9

*Fleming v. Coverstone*,
No. 08cv355 WQH (NLS), 2009 WL 764940 (S.D. Cal. Mar. 18, 2009) ................................................................................ 16

*Grant & Eisenhofer, P.A. v. Brown*,
No. CV 17-5968 PSG, 2018 WL 4945303 (C.D. Cal. May 14, 2018) ............... 16

*Herring Networks, Inc. v. Maddow*,
No. 3:19-cv-1713-BAS-AHG, 2021 WL 409724 (S.D. Cal. Feb. 5, 2021) ................................................................................ 18

*Isaacs v. USC Keck Sch. of Med.*,
No. 2:19-cv-08000-DSF-RAO (C.D. Cal. May 15, 2020) ................................. 18

*Lauderdale v. City of Long Beach*,
No. CV08-979 ABC, 2010 WL 11570514 (C.D. Cal. Jan. 11, 2010) ............... 18

*Or. RSA No. 6, Inc. v. Castle Rock Cellular of Or. Ltd. P'ship*,
76 F.3d 1003 (9th Cir. 1996) ................................................................... 11

*Ramos v. Swatzell*,
No. ED CV 12-1089-TJH, 2018 WL 6113093 (C.D. Cal. Feb. 15, 2018) ................................................................................ 17

*United States v. Bayley*,
No. 3:20-CV-05867-DGE, 2022 WL 4320939 (W.D. Wash. Sept. 19, 2022) ................................................................................................ 13

*Vasquez v. Rackauckas*,
No. SACV09-1090 VBF(RNBx), 2011 WL 3320482 (C.D. Cal. July 29, 2011) ................................................................................................ 18

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
556 F.3d 815 (9th Cir. 2009) ................................................................. 16

*Youth Just. Coal. V. City of L.A.*,
No. 2:16-cv-07932-VAP-RAOx, 2021 WL 9731621 (C.D. Cal. June 8, 2021) ................................................................................................ 18

**STATE CASES**

*Monster LLC v. Beats Elecs. LLC*,
No. BC595235 (L.A. Sup. Ct. Oct. 12, 2017) ..................................... 19

*Radiological Specialists, Inc. v. Wells Fargo Bank, N.A.*,
No. 20STCV03336 (L.A. Super. Ct. Dec. 16, 2021) .......................... 18

*Raining Data Corp. v. Barrenechea*,
175 Cal. App. 4th 1363 (2009) ............................................................ 16

**FEDERAL RULES**

Fed. R. Civ. P. 26 ......................................................................... passim

Case No. 2:22-cv-00459-SVW-AGR

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

Universal does not lightly file this motion for sanctions.  But the conduct of Plaintiffs' counsel, Cody LeJeune, has crossed the line separating zealous advocacy and improper harassment.  While Universal believes it was also entitled to seek its reasonable expenses incurred between October 20 and November 20, 2024 opposing Plaintiffs' unsuccessful motion to compel, Fed. R. Civ. P. 37(a)(5)(B), Universal followed the Court's guidance at the February 22, 2024 discovery conference and assessed whether Universal believed it had a motion based on Mr. LeJeune's more recent conduct.  Having reviewed the record, Universal believes this Motion under Rule 26(g)(3) for unnecessary expenses incurred between December 19, 2023 and the February 22 discovery conference is more than justified.  The events and actions detailed in this Motion make clear that, absent Court intervention, Mr. LeJeune will continue harassing Universal and driving up its costs unnecessarily.

Most glaring, Mr. LeJeune certified a Rule 30(b)(6) deposition notice seeking substantially the same information as a Rule 30(b)(6) deposition notice the Court had denied just a month earlier.  Dkt. 185 ("November 20 Order").  The Court denied that deposition because, over several rounds of discovery, Universal had unequivocally denied any involvement in the replacement of the *Yesterday* trailer on Amazon Prime Video.  Thus, the Court ruled a Rule 30(b)(6) deposition and other requests regarding that topic would be "unreasonably cumulative or duplicative." *Id.* at 2.  In the face of this clear order, Mr. LeJeune certified a second Rule 30(b)(6) notice with 19 topics on that subject, some ***identical*** to the notice the Court had just rejected.  The same day, Mr. LeJeune certified facially overbroad document requests (e.g., about movies other than the film subject of this lawsuit, *Yesterday*), despite this Court's repeated instructions to narrow any further discovery in light of the District Court's rulings and the proportionality factors in Rule 26(b)(1).  *Id.* at 3; Dkt. 173.  When Universal objected, Mr. LeJeune doubled down, insisting that

"Judge Rosenberg agreed that plaintiffs could seek this discovery," and demanding another discovery conference on issues the Court had resolved in November; in reality, the November 20 Order says the exact opposite.  At the February 22 discovery conference, this Court again rejected Mr. LeJeune's arguments.  The Court found the requested discovery "duplicative and redundant," exactly as it had a few months earlier.  Dkt. 195.

Mr. LeJeune's objectively unreasonable conduct caused Universal to incur tens of thousands of dollars in unnecessary attorney's fees between December 19, 2023 and the February 22 discovery conference; Universal now seeks to recoup those fees as sanctions.  *See* Fed. R. Civ. P. 26(g)(3).

## II.    BACKGROUND

### A.    Plaintiffs' Allegations Regarding The Amazon Trailer

Plaintiffs initiated this lawsuit on January 21, 2022.  Dkt. 1.  Plaintiffs asserted what the District Court called a "blunderbuss of false advertising, fraud, and misrepresentation claims," Dkt. 83 at 1, all revolving around contentions that they paid $3.99 to watch a movie, *Yesterday*, on Amazon Prime Video, because they saw a trailer for the movie that led them to believe Ana de Armas and the Beatles' song "Something" would be in the movie.  Plaintiffs alleged the movie was valueless to them because neither de Armas nor "Something" was in the full-length version of the movie they allegedly watched.  *See generally* Dkt. 1.  Plaintiffs purported to bring suit on behalf of large classes of similarly situated consumers in California and Maryland and initially sought damages and injunctive relief.  *Id.*

### B.    Universal Denies Involvement In Replacing The Amazon Trailer

At some point, the trailer Plaintiffs allegedly viewed on Amazon Prime Video was replaced with a different trailer that does not feature de Armas or "Something." In September and October 2022, Plaintiffs propounded requests for admission and requests for production concerning Universal's involvement in, or knowledge about,

the replacement of the trailer on Amazon.  Herrera Decl. ¶¶ 3-4, Exs. 1 (RFPs Sept. 23, 2022), 5 (RFAs Oct. 13, 2022).  For example, Plaintiffs asked Universal to:

- Produce "[a]ll documents relating to or discussing or instructing Amazon.com's (a.k.a. Amazon Prime Video's) replacement of the Yesterday movie trailer subsequent to January 21, 2022."  *Id.*, Ex. 1 (RFP No. 22).

- Admit that "the original trailer for the movie Yesterday, which was featured on Amazon Prime Video, was replaced by a substitute trailer because of [this lawsuit]."  *Id.*, Ex. 5 (RFA No. 16).

- Admit that Universal "instructed Amazon Prime Video to replace the original trailer for the movie Yesterday, with a substitute trailer, because of [this lawsuit]."  *Id.*, Ex. 5 (RFA No. 17).

In response, Universal unequivocally "[d]enied" instructing Amazon to replace the trailer.  Herrera Decl., Ex.7 (Suppl. Resp. to RFA No. 17).  Universal also stated that it could not "speculate about the actions and state of mind of a third party" and lacked sufficient information to say when or why the trailer was replaced. *Id.*, Ex. 7 (Suppl. Resp. to RFA Nos. 15, 16).  Following a discovery conference on February 15, 2023, *see* Dkt. 103, Universal also conducted a good-faith, reasonably diligent search, and identified no documents relating to or discussing or giving instructions to replace the trailer.  Herrera Decl., ¶ 3.

Plaintiffs also subpoenaed Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon") in November 2022, requesting "[a]ll documents and communications relating to all instructions you received from Universal Pictures regarding any changes to the Yesterday trailer(s) appearing on your platform." Herrera Decl., ¶ 5, Ex. 8  (Request No. 12); Ex. 9 (Request No. 12).  Universal's understanding is that Amazon did not produce any documents in response to this request.  *Id.* ¶ 5.

### C.   Plaintiffs Lose Key Motions—And Respond By Serving More Discovery Regarding Universal's Alleged Involvement In Replacing The Amazon Trailer

After Plaintiffs served discovery regarding the Amazon trailer, the District Court dismissed their injunctive relief claim (the only claim even marginally related to the replacement of the Amazon trailer) for lack of standing.  The District Court also dismissed/struck multiple other claims in the Second Amended Complaint ("SAC").  Dkt. 83.  Plaintiffs amended their complaint ("TAC").  Dkt. 130.

On August 28, 2023, the District Court again dismissed their injunctive relief claim and struck and dismissed multiple others, this time without leave to amend.  Dkt. 147.  On the same day, the District Court denied Plaintiffs' motion for class certification as "patently inadequate."  Dkt. 148 at 1.  The District Court also ruled that Universal was entitled to recover a portion of its attorney's fees under the anti-SLAPP statute and indicated it would issue a separate order specifying the amount owed.  Dkt. 146.  Thus, by the end of August 2023, Plaintiffs knew: (1) they did not have standing to seek injunctive relief, with respect to the trailer on Amazon Prime Video or anywhere else; (2) the most Plaintiffs could recover in damages was less than $8 (total); and (3) Plaintiffs would be ordered to pay fees under the anti-SLAPP statute in an amount to be determined.[3]

Plaintiffs could have responded to these orders by dismissing their complaint.  They also could have responded to Universal's multiple overtures regarding potential resolution of the case.  *See* Herrera Decl., ¶¶ 9, 13.  Instead, in fall 2023, Plaintiffs served a barrage of duplicative discovery regarding replacement of the Amazon trailer, including 16 more RFAs focused on whether Universal, directly or indirectly, "removed" or "replaced" the trailer, and a Rule 30(b)(6) deposition notice

---

[3]  On February 8, 2024, Judge Wilson awarded Universal $126,705.46 in fees and costs.  Dkt. 192 at 25.  Plaintiffs have not yet satisfied this award.

listing *31 topics*—all variations on questions related to Universal's involvement in the replacement of the trailer from Amazon Prime Video. *Id.* ¶¶ 6-7, Exs. 10, 12.

Universal again unequivocally denied involvement in removing or replacing the trailer on Amazon.   Herrera Decl., Ex. 11.  And Universal objected to all this discovery as irrelevant, not proportional to the needs of this case as narrowed by the District Court's rulings, and unreasonably cumulative and duplicative of the numerous requests on this topic that Universal had already answered.  *Id.*, Ex. 11.

### D.   This Court Holds That Further Discovery Into Whether Universal Replaced The Amazon Trailer Is "Unreasonably Cumulative"

On October 19, 2023, Plaintiffs moved to compel the Rule 30(b)(6) deposition and other requests regarding Universal's alleged involvement in the replacement of the Amazon trailer.  Dkt. 178.  This Court denied the motion, holding, as relevant here:

> To the extent relevant to the issue of Universal's alleged removal or replacement of the trailer for *Yesterday* on Amazon Prime Video, Plaintiffs' motion seeks to compel Universal to respond to additional discovery that is unreasonably cumulative or duplicative within the meaning of Fed. R. Civ. P. 26(b)(2). Universal's position is abundantly clear, and asking the same or substantially identical questions would not likely produce different answers.

November 20 Order at 2.

At the hearing on the motion to compel, Plaintiffs raised a new issue that had not been briefed or ever mentioned to Universal: the supposed involvement of a third party called Deluxe Media in the replacement of the Amazon trailer.  Plaintiffs claimed that, "according to information received from Amazon," Deluxe Media was involved and asked the Court to order discovery concerning Deluxe Media they had never sought.  November 20 Order at 3.  In response to this newly raised issue, the Court clarified that its order did not foreclose Plaintiffs from serving discovery only on a narrow topic that had not been the subject of prior discovery: "the agreement between Universal and Deluxe Media as applicable to the removal or replacement of

Case No. 2:22-cv-00459-SVW-AGR

the trailer for *Yesterday* on Amazon Prime Video after January 21, 2022." *Id.* However, the Court "again urged [Plaintiffs] to focus any discovery request in light of the proportionality factors in Rule 26(b)(1)-(2)." *Id.*

### E.    Mr. LeJeune Certifies *More* Discovery Regarding Universal's Alleged Involvement In The Replacement Of Amazon Trailer

On December 19, 2023, Plaintiffs served a *second* 30(b)(6) deposition notice, which Mr. LeJeune certified under Rule 26(g)(1).  Herrera Decl. ¶ 10, Ex. 15 ("Second 30(b)(6) Notice").  The Second 30(b)(6) Notice sought substantially the same information as the 30(b)(6) deposition notice addressed in the November 20 Order, including some literally identical topics.  To highlight a few examples:

| 12/19/2023 30(b)(6) Notice | 9/25/2023 30(b)(6) Notice |
|---|---|
| Topic 5:  The Person(s) or entity(ies) responsible for the content (including trailers and movies) for *Yesterday* on the Amazon Prime Video website. | Topic 16:  The Person(s) or entity(ies) responsible for the content (including trailers and movies) for Universal movies on the Amazon Prime Video website. |
| Topic 6:  The Person(s) or entity(ies) responsible for removing or replacement of the original *Yesterday* trailer (i.e., the trailer that contains Ana de Armas, and as the term "original *Yesterday* trailer" is used in Your Response to RFA No. 10). | Topic 17:  The Person(s) or entity(ies) responsible for removal of the original *Yesterday* trailer (i.e., the trailer that contains Ana de Armas, and as the term "original *Yesterday* trailer" is used in Universal's response to Request For Admission No. 10) from the Amazon Prime Video website. |
| Topic 7:  The Person(s) or entity(ies) responsible for the fact that the original *Yesterday* trailer (i.e., the trailer that contains Ana de Armas, and as the term "original *Yesterday* trailer" is used in Your Response to RFA No. 10) no longer appears on the *Yesterday* product page on the Amazon Prime Video website. | Topic 20:  The Person(s) or entity(ies) responsible for the fact that the original *Yesterday* trailer (i.e., the trailer that contains Ana de Armas, and as the term "original *Yesterday* trailer" is used in Universal's response to Request For Admission No. 10) no longer appears on the *Yesterday* product page on the Amazon Prime Video website. |
| Topic 8:  Communications Related To removing or replacement of the original *Yesterday* trailer (i.e., the trailer that contains Ana de Armas, | Topic 27:  Communications Related To removal of the original *Yesterday* trailer (i.e., the trailer that contains Ana de Armas, and as the term "original |

| | |
|---|---|
| and as the term "original *Yesterday* trailer" is used in Your Response to RFA No. 10). | *Yesterday* trailer" is used in Universal's response to Request For Admission No. 10) from the Amazon Prime Video website. |

Herrera Decl., Ex. 15 (Topics 5-8); *id.*, Ex. 12 (Topics 16-17, 20, 27).

Universal objected to the Second 30(b)(6) Notice on the same grounds as the first notice—and an additional ground: that this Court had found that a deposition on these topics would be unreasonably cumulative and duplicative and that the Second 30(b)(6) Notice contravened that order.  Herrera Decl., Ex. 17.  Mr. LeJeune still pursued the deposition, forcing Universal to spend time and resources meeting-and-conferring repeatedly to make the point that this exact issue had been settled by this Court's November 20 Order.  *Id.* ¶ 11, Ex. 19 (dozens of emails between January 10 and February 16 and two telephonic conferences).  Mr. LeJeune nevertheless sought a second discovery conference with the Court on the same issue.  Dkt. 194 (agenda).

### F.    Plaintiffs Serve Even More Facially Irrelevant Discovery

On the same day he certified the Second 30(b)(6) Notice, Mr. LeJeune also certified and served another round of requests for production ("December RFPs").  Herrera Decl., ¶ 10, Ex. 16.  One request in this set was related to Universal's agreement with Deluxe Media—the topic left open by the November 20 Order.  The others were facially overbroad and disproportionate, seeking discovery regarding third parties other than Deluxe Media, movies other than *Yesterday*, and agreements with Deluxe Media unrelated to *Yesterday*.  *Id.*, Ex.16.

Universal asserted these and other objections in written responses and met and conferred repeatedly on them.  Herrera Decl., ¶¶ 10-11, Ex. 19.  Mr. LeJeune never offered to narrow the requests or to compromise—even as to requests that sought information about movies or streaming platforms not at issue here—and he would not respond to Universal's repeated questions why the discovery sought was relevant to the narrow, remaining damages claims.  *See id.*, Ex. 19.  Mr. LeJeune pressed these requests too all the way to a discovery conference.  Dkt. 194 (agenda).

### G.     Amazon And Deluxe Media Confirm That Plaintiffs' Trailer-Replacement Discovery Is Baseless

In parallel, Plaintiffs subpoenaed Deluxe Media for documents and to produce its own Rule 30(b)(6) deponent.  Plaintiffs requested, among other things, "[a]ll documents and communications relating to all instructions" Deluxe Media "received from Universal Pictures regarding any changes to, or replacement of, the *Yesterday* trailer(s) appearing on the Amazon Platform."  Herrera Decl., ¶ 12, Ex. 20 (Request No. 6).  On January 11, 2024, Deluxe Media told Plaintiffs that a diligent search and reasonable inquiry revealed "no documents related to the removal or replacement of the trailer for *Yesterday* on Amazon Prime Video after January 21, 2022."  *Id.*, ¶ 12, Exs. 21 (Deluxe responses to subpoena), *id.*, Ex. 23 at 3 (Email from Hawkinson to LeJeune).[4]  On January 16, Deluxe Media elaborated it "delivered the *Yesterday* trailer to Amazon on or around June 12th, 2019"—long before this suit was filed in January 2022.  *Id.*, at 1 (Email from Hawkinson to LeJeune) (Jan. 16, 2024).  Deluxe Media further confirmed that it "took no actions whatsoever with regard to the trailer after June 12th, 2019" and "***never received any instructions, from Universal or any other party, to edit, remove, or replace the trailer***."  *Id.* (emphasis added).  Deluxe Media also produced documents showing it was asked to transmit a *Yesterday* trailer to Amazon and did so in June 2019.[5]  *Id.*, Ex. 22.

---

[4] Deluxe Media initially designated its produced documents and certain information it conveyed to Plaintiffs by email "Highly Confidential—Attorney's Eyes Only" under the Protective Order (Dkt. 99).  Universal's counsel met and conferred with Deluxe Media's counsel pursuant to Civ. L.R. 79-5.2.2; Deluxe Media's counsel confirmed these materials could be publicly disclosed in connection with Universal's motion for sanctions subject to limited redactions.  Herrera Decl., ¶ 12.

[5] Plaintiffs have repeatedly made representations to this Court and the District Court regarding emails with third parties and have submitted such emails as exhibits.  *E.g.*, Dkt. 178-4.  Plaintiffs have voluntarily disclosed only a handful of these emails and some of the documents produced by third parties to Universal, so Universal served requests for production of ***all*** documents produced to Plaintiffs by third parties and

On January 29, 2024, Amazon informed Universal that it, too, had produced to Plaintiffs (on November 17, 2023, the Friday before the November 20 motion to compel hearing before this Court), a log showing that neither Universal, nor Deluxe Media, nor any other party had transmitted a *Yesterday* trailer to the platform after 2019.[6]  Herrera Decl., ¶ 8, Ex. 14.  At the November 20 motion to compel hearing, Mr. LeJeune made representations to this Court about "information received from Amazon last Friday," but omitted his receipt of a log showing no actions (by any entity) regarding the trailer ***since 2019***.  *Id.*

### H.      Mr. LeJeune's Former Co-Counsel Threatens Universal

In the midst of these discovery exchanges, Mr. LeJeune's former co-counsel, Matthew Pequignot, sent a letter threatening frivolous Section 1983 lawsuits against Universal and its counsel for pursuing anti-SLAPP fees in this private civil litigation in federal court.[7]  Herrera Decl., ¶ 13, Ex. 24; *see District of Columbia v. Carter*,

---

***all*** Plaintiffs' communications with third parties regarding this litigation.  Herrera Decl., ¶ 14, Ex. 25.  In response to the request for Plaintiffs' communications with third parties, Mr. LeJeune certified responses stating that Plaintiffs "d[id] not have documents relevant to this request," which is contradicted by the emails described above.  *Id.*, Exs. 26-27.  During meet and confer, Mr. LeJeune offered no explanation for this response; he agreed to supplement Plaintiffs' written responses and produce all responsive documents by March 29, 2024.  *Id.*, ¶ 14.  If Plaintiffs do not supplement and produced as agreed, Universal will seek a discovery conference.

[6] Amazon initially designated this log "Confidential" under the Protective Order (Dkt. 99).  Universal's counsel met and conferred with Amazon's counsel pursuant to Civ. L.R. 79-5.2.2; Amazon's counsel confirmed this document could be publicly disclosed in connection with Universal's motion for sanctions.  Herrera Decl., ¶ 8.

[7] This letter reprised the same First Amendment arguments Plaintiffs asserted *in this litigation* that the District Court thoroughly considered and rejected in awarding anti-SLAPP fees.  *See* Dkt. 102 (Plaintiffs' opposition asserting First Amendment challenge to application of California anti-SLAPP statute); Dkt. 140 (Court ordering supplemental briefing on same); Dkt. 144 (Universal's supplemental brief on same); Dkt. 192 at 9-11 (Court rejecting same).

409 U.S. 418, 424 (1973) (§ 1983 "does not reach purely private conduct" or "actions of the Federal Government").  Mr. Pequignot withdrew from representing Plaintiffs in this matter in September 2023, Dkts. 149-152, and is a non-resident attorney who does not currently have *pro hac vice* status with respect to this litigation.  Herrera Decl., ¶ 13.  Mr. Pequignot nevertheless purported to make and respond to settlement offers on Plaintiffs' behalf, tried to intervene in the discovery disputes described above, and threatened various other actions in this litigation.  Herrera Decl., ¶ 13, Ex. 24.  Mr. Pequignot's letter made explicit what had been implicit in Plaintiffs' failure to respond to Universal's settlement overtures and their months of vexatious discovery tactics:  The attorneys who filed and sunk two years into this frivolous case are trying to pressure Universal into making a huge monetary payment (with no legal or factual basis) to end a case that is now worth $7.98.  *Id.*

## I.   Plaintiffs Demand Another Discovery Conference, And The Court Again Denies Their Discovery Demands

On February 20, 2024, Plaintiffs requested a discovery conference seeking to compel Universal to produce a witness in response to the Second 30(b)(6) Notice and to produce documents in response to the December RFPs.  *See* Dkts. 193 (setting discovery conference), 194 (agenda).  The Court denied further discovery from Universal without formal motion practice, finding (again) that the discovery sought was "duplicative and redundant."  Dkt. 195.

At the same conference, Universal sought leave to file a motion for fees incurred in defending against Plaintiffs' motion to compel that had been denied in the November 20 Order.  While the Court suggested that Universal reconsider seeking fees on that motion, it also indicated that Universal could consider a motion based on Plaintiffs' more recent conduct.  *See id.*

## III.   ARGUMENT

### A.   Universal Is Entitled To Reasonable Attorney's Fees Incurred As a Result Of Mr. LeJeune's Violations Of Rule 26(g)(1)

"[A]n attorney" who signs a discovery request "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" that the request (1) is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and (2) is not "unreasonable." Fed. R. Civ. P. 26(g)(1)(B)(iii).  If an attorney violates this requirement "without substantial justification, the court … *must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3) (emphasis added).  The sanction "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." *Id.*

The purpose of this rule is "to curb discovery abuse by explicitly encouraging the imposition of sanctions" and "oblig[ing] each attorney to stop and think about the legitimacy of a discovery request" before propounding it.  Fed. R. Civ. P. 26(g) advisory committee's note (1983).

Courts apply an "objective" standard to determine whether conduct violates Rule 26(g)(1).  *Or. RSA No. 6, Inc. v. Castle Rock Cellular of Or. Ltd. P'ship*, 76 F.3d 1003, 1007 (9th Cir. 1996).  "[T]here is no required showing of bad faith." *Deuss v. Siso*, No. 14-CV-00710-YGR(JSC), 2014 WL 4275715, at *5 (N.D. Cal. Aug. 29, 2014) (citation omitted).  However, courts consider an attorney's conduct after an improper certification is brought to their attention in determining whether the conduct was objectively reasonable. *See id.* at *6-7.

Mr. LeJeune's certification of both the Second Rule 30(b)(6) Notice and the December RFPs—and his unreasonable conduct forcing those requests to a redundant and unnecessary discovery conference—was objectively unreasonable and warrants an award of Universal's resulting expenses.

**1.    The Second 30(b)(6) Notice Flouted The Court's November 20 Order**

A month after this Court denied a Rule 30(b)(6) deposition on Universal's alleged involvement in the replacement of the Amazon trailer as "unreasonably cumulative and duplicative," Mr. LeJeune certified the Second 30(b)(6) notice that sought substantially the same information.  The Second Notice included three new topics related to Deluxe Media, but **<u>19 topics</u>** sought the same information that had been the subject of Plaintiffs' October 20 motion to compel and the November 20 Order denying that motion.  *Compare* Herrera Decl., Ex. 15 *with id.*, Ex. 12.  Some topics were identical.  *See* Section II.E *supra*.  Mr. LeJeune had no objectively reasonable justification or proper purpose for serving another Rule 30(b)(6) notice seeking the same discovery the Court had just ruled Plaintiffs could not obtain.

Making matters worse, Mr. LeJeune continued pursuing a deposition even after Universal repeatedly reminded counsel of the November 20 Order and other issues with the putative deposition topics.  Herrera Decl., ¶¶ 10-11 & Exs. 17, 19.  Instead of admitting error and withdrawing the Second 30(b)(6) Notice, or even offering to narrow the proposed scope to only new topics relating to Deluxe Media, Mr. LeJeune specifically pushed a deposition "to ascertain the identity of the person or entity responsible for the trailer change on Amazon.com, which would include exploration of whether Universal (or any affiliated companies or agents) were responsible for directing (or otherwise effecting) that change." *Id.*, Ex. 19 at 13-14.

Mr. LeJeune further took the objectively unreasonable position that "Judge Rosenberg agreed that plaintiffs could seek this discovery" and "recognized[ that] plaintiffs are entitled to discovery to ascertain the responsible party for the removal/replacement of the trailer featuring ADA on the Amazon.com platform." *Id.*, Ex. 19 at 18.  In fact, the November 20 Order states the opposite: "discovery" regarding "Universal's alleged removal or replacement of the trailer for *Yesterday*

on Amazon" is "unreasonably cumulative or duplicative" because "Universal's position is abundantly clear, and asking the same or substantially identical questions would not likely produce different answers."  November 20 Order at 2.

Mr. LeJeune's Rule 26(g)(1) certification of the Second 30(b)(6) Notice and his follow-on conduct were objectively unreasonable and warrant sanctions under Rule 26(g)(3).  *See Deuss*, 2014 WL 4275715, at *7 (awarding sanctions under Rule 26(g)(3) because "any competent attorney would have acknowledged and followed the Rule when it was brought to the attorney's attention through an objection to the discovery"); *see also United States v. Bayley*, No. 3:20-CV-05867-DGE, 2022 WL 4320939, at *10 (W.D. Wash. Sept. 19, 2022) (awarding sanctions under Rule 26(g)(3) where discovery responses were inconsistent with court's prior ruling).

## 2. The December RFPs Were Indefensibly Overbroad

Mr. LeJeune's certification of the December RFPs was likewise objectively unreasonable.  One RFP was arguably related to Universal's agreement with Deluxe Media; but the others swept far beyond what the November 20 Order contemplated. Those RFPs sought, *inter alia*, discovery regarding third parties other than Deluxe Media, Universal movies other than *Yesterday*, and agreements with Deluxe Media that have nothing to do with *Yesterday*.  *See* Herrera Decl., Ex. 16.  There was no objectively reasonable justification for Plaintiffs to seek discovery about movies other than *Yesterday*, platforms other than Amazon Prime Video, or third parties that have nothing to do with Plaintiffs' remaining claims for a maximum of $3.99 each regarding a trailer for *Yesterday* they claim to have viewed on Amazon.  During meet and confer, Mr. LeJeune never offered to narrow these requests or compromise in any way and, in response to repeated questions by Universal, could not articulate how any of the requested discovery was relevant to the narrow claims remaining in this case.  *Id.* ¶ 11, Ex. 19.

The overbroad RFPs and Mr. LeJeune's meet-and-confer conduct were doubly unreasonable in light of the District Judge's repeated rulings that Plaintiffs

lack standing to pursue relief based on anything other than the *Yesterday* trailer they claim to have viewed on Amazon Prime Video, Dkt. 83 at 13 n.7; Dkt. 115, and this Court's repeated instructions to Mr. LeJeune to narrow any further discovery in light of the District Court's orders and the proportionality factors in Rule 26(b)(1)-(2), Dkt. 185 at 3; Dkt. 173.   This conduct too is objectively unreasonable and warrants sanctions under Rule 26(g)(3).   *See Deuss*, 2014 WL 4275715, at *6-7 (attorney's refusal to acknowledge conflicting authority was objectively unreasonable).

### 3. The Court Should Sanction Mr. LeJeune For Propounding Discovery For The Improper Purpose Of Driving Up Universal's Litigation Costs

As a direct result of Mr. LeJeune's certification and aggressive pursuit of the improper Second 30(b)(6) Notice and the December RFPs, Universal incurred tens of thousands of dollars in unnecessary attorney's fees.  Herrera Decl., ¶¶ 29-32.  The circumstances surrounding Mr. LeJeune's conduct make it clear that Mr. LeJeune certified the Second 30(b)(6) Notice and December RFPs and pursued them for an improper purpose: to drive up Universal's litigation costs in the hopes of extracting an unreasonably high settlement payment from Universal that would redound to the financial benefit of Mr. LeJeune and quite likely his former co-counsel.

When Mr. LeJeune certified the Second 30(b)(6) Notice and December RFPs, Plaintiffs themselves stood to recover, at most, ***$7.98 total***.  At the same time, it was clear Plaintiffs would owe Universal significant fees and costs on the anti-SLAPP motions.  *See* Section II.C & n.3 *supra*.  (The District Court later awarded more than $125,000; Plaintiffs have yet to satisfy the Court's February 8 order.)

Universal has repeatedly tried to discuss a resolution of this matter with Mr. LeJeune, but Plaintiffs have not engaged.  Herrera Decl., ¶¶ 9, 13.  Instead, Mr. LeJeune certified and pursued improper and harassing discovery all the way to an unnecessary court conference; Mr. LeJeune kept Mr. Pequignot, who withdrew from representing Plaintiffs, abreast of developments in the discovery and the litigation;

and Mr. LeJeune was copied on a letter from Mr. Pequignot to Universal making a baseless threat of new litigation and demanding an outsized monetary payment unsupported by any facts or law to end this case.  *See* Sections II.C, II.H *supra*.

The full record shows that the Second 30(b)(6) Notice and December RFPs, and Mr. LeJeune's continued campaign to enforce them, were not attempts to seek discovery related to the merits of the case—particularly in light of the November 20 order foreclosing the same discovery.  Rather, they were an attempt by Mr. LeJeune, apparently acting in concert with the lawyer who filed this case with him, to make this litigation so expensive and burdensome that Universal would make a significant monetary payment to stop it.  Universal respectfully submits that sanctions are not just warranted, but necessary, under these circumstances to deter future vexatious conduct by Mr. LeJeune (and former co-counsel who apparently remain involved).

## B.     Universal's Requested Fees Are Reasonable

Universal is entitled to "attorney's fees caused by" Mr. LeJeune's violations of Rule 26(g)(3).  Here, Universal requests $43,381.60 in attorney's fees incurred: (1) responding to the Second Rule 30(b)(6) Notice; (2) responding to the December RFPs; (3) in numerous telephonic and email meet and confers regarding these requests and related demands by Plaintiffs between January 10 and February 16; and (4) preparing for and appearing at the February 22 discovery conference, all of which resulted directly from Mr. LeJeune's certification of improper discovery. Herrera Decl., ¶¶ 15, 29-32.  In addition, if the Court awards sanctions under Rule 26(g)(3), Universal reserves its right to seek fees incurred in briefing and arguing this Motion.  *See, e.g.*, *Aevoe Corp. v. AE Tech. Co.*, No. 2:12-CV-00053-GMN-NJK, 2013 WL 5324787, at *7 (D. Nev. Sept. 20, 2013) (holding that "fees on fees" are recoverable on motion for discovery sanctions and collecting cases). If Universal decides to seek fees on fees, it will document those fees on reply.

### 1.     Summary of Fees and Costs Requested

"[A] court assessing attorney fees begins with a touchstone or lodestar

-15-

figure," calculated by multiplying "the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work." *Crestmont Cap., LLC v. P.A.R. Consulting, LLC*, No. SACV 19-1349 JVS(ADSx), 2020 WL 6528418, at *2-3 (C.D. Cal. Sept. 17, 2020) (citations and quotation marks omitted).  "There is a strong presumption that the lodestar figure represents a reasonable fee, and any upward or downward adjustment of that figure is proper only in 'rare and exceptional cases.'"  *Fleming v. Coverstone*, No. 08cv355 WQH (NLS), 2009 WL 764940, at *6 (S.D. Cal. Mar. 18, 2009).

Although not required, Universal's request for fees is supported by detailed time records, which the undersigned personally reviewed to ensure the fees sought resulted directly from Mr. LeJeune's conduct that is the subject of this Motion.[8] Herrera Decl. ¶¶ 28-31, Ex. 30.  As set forth in those records and summarized below, Universal accrued at least $43,381.60 in attorney's fees as a result of Mr. LeJeune's violations of Rule 26(g)(1) detailed in this Motion.  The lodestar fees Universal seeks through this Motion are as follows:

---

[8] *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) (citation and quotation marks omitted) ("[I]n California, …. [t]estimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records."); *Grant & Eisenhofer, P.A. v. Brown*, No. CV 17-5968 PSG (AFMx), 2018 WL 4945303, at *3 (C.D. Cal. May 14, 2018) ("Brown correctly notes that she is not obliged to produce billing records or detailed invoices to support her motion."); *Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 1375 (2009) ("The law is clear ... that an award of attorney fees may be based on counsel's declarations, without production of detailed time records.").

| Attorney | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Kelly M. Klaus | 6.3 | $1,158 | $7,295.40 |
| Bethany W. Kristovich | .4 | $1,133 | $453.20 |
| Stephanie G. Herrera | 26.6 | $880 | $23,408.00 |
| Grace Davis Fisher | 12.1 | $750 | $9,075.00 |
| Benjamin G. Barokh | 4.2 | $750 | $3,150.00 |
| | | | |
| **Total Fees Requested** | | | **$43,381.60** |

Herrera Decl., Ex. 30.

### 2.     The Number of Hours Claimed Is Reasonable

As explained above, Mr. LeJeune's repeated violations of Rule 26(g)(1) required Universal to, among other things, respond to numerous improper discovery requests, meet and confer repeatedly by telephone and email, and prepare for and participate in an unnecessary discovery conference.  Herrera Decl., ¶¶ 10-11, 30 & Exs. 17-19.  Mr. LeJeune made these efforts more difficult and burdensome (and therefore more expensive for Universal) by consistently failing to comply with Local Civil Rule 37-1, including failing to send the required meet-and-confer correspondence, failing to specifically identify the requests at issue, failing to respond to basic relevance questions in the parties' meet and confer, and failing to identify legal or evidentiary support for an evolving quagmire of confusing and baseless assertions.  Herrera Decl., ¶ 32; *see also id.*, Ex. 19 (meet-and-confer emails showing Mr. LeJeune's failure to satisfy Local Civil Rule 37-1, to respond to basic relevance questions, or to identify legal or factual support for his demands).

The number and nature of factual and legal issues raised by Mr. LeJeune, the lack of clarity in his arguments, and his refusal to engage in a meet and confer grounded in fact or law caused Universal's counsel to spend more time on strategy, research, and communications than an ordinary discovery dispute might require, *id.*; in light of these circumstances, all precipitated by Mr. LeJeune, the number of hours expended by Universal's counsel is reasonable.  *See, e.g.*, *Ramos v. Swatzell*, No. ED CV 12-1089-TJH (SPx), 2018 WL 6113093, at *7 (C.D. Cal. Feb. 15, 2018)

1  (considering that "[t]he discovery violations here were numerous" in determining
2  reasonableness of hours).

### 3.  The Requested Hourly Rates Are Reasonable

4  The District Court in this case issued a prior attorney's fee award in this case
5  based on the same rates at issue here.  *See* Dkt. 192 at 21-22, 25 (awarding fees on
6  Universal's anti-SLAPP motion and calculating those fees based on MTO hourly
7  rates).  MTO's hourly rates in this matter are consistent with prevailing market rates
8  for attorneys of comparable skill, experience, and reputation at larger California law
9  firms, and are discounted from the commercial rates Universal's counsel commands
10  in the market for these attorneys.  Herrera Decl., ¶¶ 23-28, Ex. 28; *see, e.g.*, *Herring*
11  *Networks, Inc. v. Maddow*, No. 3:19-cv-1713-BAS-AHG, 2021 WL 409724, at *7
12  (S.D. Cal. Feb. 5, 2021) (approving up to $1,150/hour for partners and up to
13  $720/hour for associates at Gibson, Dunn & Crutcher LLP); Order, *Isaacs v. USC*
14  *Keck Sch. Of Med.*, No. 2:19-cv-08000-DSF-RAO (C.D. Cal. May 15, 2020), ECF
15  No. 112 (approving 2020 hourly rate of $895 for an associate at Gibson, Dunn &
16  Crutcher LLP as reasonable and within the range charged in the local market for
17  attorneys of comparable quality and size).

18  For these reasons, courts have consistently approved MTO's hourly rates as
19  reasonable.  *See, e.g.*, *Youth Just. Coal. V. City of L.A.*, No. 2:16-cv-07932-VAP-
20  RAOx, 2021 WL 9731621, at *6 (C.D. Cal. June 8, 2021) (awarding fees including
21  MTO rates of $765 for associate and $1,050 for partner); *Vasquez v. Rackauckas*,
22  No. SACV09-1090 VBF(RNBx), 2011 WL 3320482, at *1 (C.D. Cal. July 29,
23  2011) ("the rates sought and approved are within the range of reasonable market
24  rates for attorneys of comparable skill, experience and reputation"); *Lauderdale v.*
25  *City of Long Beach*, No. CV08-979 ABC (JWJx), 2010 WL 11570514, at *14 (C.D.
26  Cal. Jan. 11, 2010) (awarding fees and finding MTO's "hourly rates [were]
27  reasonable"); *Radiological Specialists, Inc. v. Wells Fargo Bank, N.A.*, No.
28  20STCV03336, at 5 (L.A. Super. Ct. Dec. 16, 2021) (holding MTO billing rates

were "in line with the general market rates"); *Monster LLC v. Beats Elecs. LLC*, No. BC595235, at 1-2 (L.A. Sup. Ct. Oct. 12, 2017) (affirming MTO fees request with 2016 rate of $1,245 per hour; noting that the court was "very familiar with the hourly rates of attorneys in Los Angeles, including those of the most experienced business litigation firms such as Munger Tolles"); Herrera Decl. ¶ 26 & Ex. 30 (attaching copy of October 12, 2017 order in *Monster LLC v. Beats Elecs. LLC*). This Court should reach the same conclusion in this matter.

## IV.   CONCLUSION

For the foregoing reasons, the Court should award Universal $43,381.60 in sanctions under Federal Rule of Civil Procedure 26(g)(3).

DATED:  March 29, 2024                   Respectfully submitted,

MUNGER, TOLLES & OLSON LLP


By:   ___*/s/ Stephanie G. Herrera*___
        STEPHANIE G. HERRERA
Attorneys for Defendant
UNIVERSAL CITY STUDIOS LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Universal, certifies pursuant to L.R. 11-6.2 that this brief (memorandum of points and authorities) contains 6,575 words, which complies with the word limit of L.R. 11-6.1.

DATED:  March 29, 2024              MUNGER, TOLLES & OLSON LLP


By: _____*/s/ Stephanie G. Herrera*_____
        STEPHANIE G. HERRERA
Attorneys for Defendant
UNIVERSAL CITY STUDIOS LLC